IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| AIMS INSTITUTE, PLLC; SUNIL AGGARWAL; KATHRYN TUCKER; and MATTHEW C. ZORN,<br><br>Plaintiffs,<br><br>v.<br><br>MERRICK GARLAND, in his official capacity as U.S. Attorney General; ANNE MILGRAM, in her official capacity as Administrator of the U.S. Drug Enforcement Administration; U.S. DEPARTMENT OF JUSTICE; and U.S. DRUG ENFORCEMENT ADMINISTRATION.<br><br>Defendants. | Civil Action 4:22-cv-02396 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. This is an action to enjoin the United States Department of Justice's ("DOJ") and the United States Drug Enforcement Administration's ("DEA") Freedom of Information Act ("FOIA") abuse and unlawful diversion of legitimate FOIA requests.

2. On March 14, 2022, one of the Defendants, United States Attorney General Merrick Garland, released a memorandum (the "Garland Memo")[1] to all federal agencies. The Garland Memo establishes principles for agencies to follow in responding to FOIA requests. Among other things, it emphasizes the presumption of openness, that "[t]imely disclosure of records is also essential to the core purpose of FOIA," and that "[a]gencies must have effective systems in place for responding to requests in a timely manner." According to the Garland Memo, "[t]ransparency in government operations is a priority of this Administration and this Department."

---

[1] https://www.justice.gov/ag/page/file/1483516/download.

3. DEA flouts these principles of transparency and good government. It has adopted an unlawful policy and pattern or practice. Specifically, the agency deems any FOIA request that requires the FOIA office to obtain a document from any other office "complex" and, on that basis, categorizes virtually all FOIA requests as raising "unusual circumstances." As a result, DEA treats nearly every FOIA request it receives as exempt from the statute's processing and response deadlines.

4. This policy and pattern or practice rests on a perversion of FOIA's plain language. The statute's "unusual circumstances" exception allows agencies to extend FOIA's time limits where there is a "need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request." 5 U.S.C. § 552(a)(6)(B)(iii). This exception, however, is limited. It applies only "to the extent reasonably necessary to the proper processing of the particular requests." *Id*. It does not apply as a matter of course, let alone to routine requests merely because they require the FOIA processing office to contact another office within the same agency (or another component of an agency).

5. Plaintiffs are attorneys and their clients who have submitted FOIA requests to DEA only to have the agency unlawfully ignore the statute's processing deadlines merely because the requested records were not present at DEA's FOIA office. Plaintiffs seek a declaratory judgment that Defendants Merrick Garland, DOJ, Anne Milgram, and DEA have violated FOIA and an injunction prohibiting Defendants from applying the unlawful policy and pattern or practice and directing Defendants to take immediate corrective action to prevent future FOIA violations.

PARTIES AND STANDING

6. Plaintiff AIMS Institute is an integrative oncology clinic located in Seattle, Washington, and dedicated to providing cutting-edge integrative medical care, research, and education in oncology, psychiatry, neurology, rehabilitation, pain management, and palliative care.

7. Plaintiff Sunil Aggarwal is a physician with specialized expertise in palliative care located in Seattle, Washington. Co-founder and co-director of the AIMS, Dr. Aggarwal is licensed to practice medicine in the State of Washington and is in good standing. Dr. Aggarwal is a Fellow of the American Academy of Physical Medicine and Rehabilitation, board-certified in Physical Medicine and Rehabilitation and Hospice and Palliative Medicine, and the Immediate Past Chair of the Integrative Medicine Special Interest Group at the American Academy of Hospice and Palliative Medicine. Dr. Aggarwal serves as an expert in cannabis and psilocybin medical and religious use in county, state, and federal courts, and he has a special interest in cannabis and psychedelic integrative medicine and spiritual health and well-being. Dr. Aggarwal holds a DEA certificate of registration to prescribe controlled substances for drugs listed in Schedules II-IV of the Controlled Substances Act ("CSA"). Due to the nature of his work and position, Dr. Aggarwal has current and future needs to obtain information from DEA through FOIA.

8. Plaintiff Kathryn Tucker is an attorney who has dedicated her career to advocating on behalf of terminally ill persons. Tucker is admitted to practice in Washington State, before all state and federal courts in Washington, the United States Courts of Appeals for the Ninth and Second Circuits, and the Supreme Court of the United States. She is Special Counsel and co-chair of the Psychedelics Practice Group at Emerge Law Group and regularly works with clients in the controlled and psychedelic substances space. Due to the nature of her work, Tucker, her clients, and clients in her practice at Emerge Law have current and future needs to obtain information from DEA through FOIA.

9. Plaintiff Matthew C. Zorn is an attorney whose residence and principal place of business are in this District. Zorn regularly works with clients in the controlled substances space and has active matters pending before DEA. Zorn is also a journalist who publishes articles on

controlled substances. He intends to continue to use FOIA to seek government documents related to drug policy to facilitate his work as an attorney and journalist.

10. Defendant Anne Milgram is the Administrator of DEA. She is responsible for DEA's compliance with federal laws and regulations, including those at issue in this case.

11. Defendant Merrick Garland is the United States Attorney General. He is responsible for overseeing DOJ's compliance with federal laws and regulations, including those at issue in this case.

12. DOJ is an agency within the meaning of 5 U.S.C. § 552(f) and the parent department to DEA.

13. DEA is an agency within the meaning of 5 U.S.C. § 552(f) and a component of DOJ.

## JURISDICTION AND VENUE

14. This action arises under the laws and Constitution of the United States. The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

15. Venue is appropriate in this District. 28 U.S.C. § 1391(e).

## FACTS GIVING RISE TO THIS ACTION

### AIMS Institute Seeks DEA Guidance Regarding Federal Right To Try

16. AIMS is an integrative oncology clinic that provides care to persons with advanced illness, including end-stage cancer. Many of these persons suffer from debilitating anxiety and depression. To mitigate patients' anxiety and depression, AIMS uses a variety of treatment modalities, including ketamine-assisted psychotherapy. Some patients, however, do not respond to therapy with conventional or even cutting-edge and somewhat-unconventional medications or modalities. Left untreated, this anxiety and depression can accelerate illness, reducing patients' already-short time to live and robbing them of peace and comfort in their final days.

17. Dr. Aggarwal has closely followed ongoing clinical trials studying the investigational drug psilocybin as a tool for the relief of anxiety and depression in patients with life-threatening illnesses. Psilocybin has proven safe and effective in relieving anxiety and depression in this patient population. Indeed, clinical trials have shown that the relief provided is immediate, substantial, and sustained. In 2020, Dr. Aggarwal formed the professional medical opinion that at least some of his patients with advanced-stage cancer would benefit from access to psilocybin therapy and began looking for a legal way to facilitate that access.

18. AIMS and Dr. Aggarwal, on advice of counsel, believe that state and federal Right-to-Try ("RTT") laws permit access to psilocybin for therapeutic use with terminally ill patients suffering debilitating anxiety and depression under certain conditions.

19. In October 2020, Dr. Aggarwal and AIMS retained Tucker to interface with DEA to obtain access to psilocybin for therapeutic use with terminally ill patients under state and federal RTT laws.

20. On January 15, 2021, Tucker submitted a letter on behalf of Dr. Aggarwal and AIMS to DEA's Regulatory Section. Ex. 1 (the "Tucker letter"). The Tucker letter provided background information about RTT and requested guidance regarding how DEA would accommodate Dr. Aggarwal's and AIMS's request for access to psilocybin for therapeutic use with their terminally ill patients under RTT. Tucker followed up with the agency via e-mail on February 2nd and inquired whether, as an alternative solution, the agency might grant Dr. Aggarwal and AIMS an exemption from prosecution.

21. DEA responded in a February 12th letter that disclaimed any authority to entertain a request for access. Ex. 2. Dr. Aggarwal, two of his terminally ill patients, and AIMS sought immediate judicial review of that determination. In their opening brief, petitioners explained that

the plain language and structure of the CSA and the Federal Food, Drug, and Cosmetic Act compel DEA to accommodate their request under RTT.

22. In response, the agency argued that its letter to Tucker was not final agency action subject to judicial review. The Government therefore asked the court to dismiss the case for lack of jurisdiction. And, to encourage dismissal, DEA invited petitioners "to petition the agency for a rescheduling."

23. The Ninth Circuit accelerated the petition for review and held oral argument in September 2021. On January 31, 2022, the Ninth Circuit dismissed the petition on jurisdictional grounds as DEA requested, holding that DEA's response to the Tucker letter did not constitute final agency action subject to judicial review. *AIMS v. Garland*, 24 F.4th 1249 (9th Cir. 2022). The court did not reach the merits.

### Plaintiffs Petition DEA for Final Agency Action

24. Days after the Ninth Circuit's decision in *AIMS v. Garland*, Dr. Aggarwal and AIMS submitted two administrative petitions to DEA requesting a final appealable decision on the merits.

25. First, on February 2, 2022, Dr. Aggarwal and AIMS petitioned DEA to initiate proceedings to reschedule psilocybin from Schedule I to Schedule II—just as the agency had suggested in the Ninth Circuit litigation in arguing for dismissal. Ex. 3 (the "Rescheduling Petition").

26. Second, Dr. Aggarwal and AIMS petitioned DEA for a waiver or exemption of the CSA's registration requirements. Ex. 4. Repeating many of the arguments they had made nearly a year ago in *AIMS v. Garland*, Dr. Aggarwal and AIMS sought a waiver or exemption from the

agency so they could access psilocybin for therapeutic use with their terminally ill patients under RTT.

27. More than four months passed without the agency accepting the petitions for filing or even confirming that it had received them.

28. Concerned that DEA was slow walking the processing of its petitions, AIMS sent a letter to Defendant Milgram on April 13th, explaining that more than two months had passed, and the agency had "not informed Petitioners whether their petition has been accepted for filing." Ex. 5. The April 13th letter notes that under DEA regulations, "[w]ithin a reasonable period of time after receipt" of a rescheduling petition, the Administrator "shall notify the petitioner of his acceptance or nonacceptance of the petition, and if not accepted, the reason therefor." 21 C.F.R. § 1308.43. AIMS further noted that in the past, accepting petitions never took more than two months. AIMS reiterated its request that DEA promptly—and in no event later than thirty days from the date of the correspondence—notify it of acceptance or non-acceptance of the rescheduling petition.

29. DEA has not responded to the April 13th letter.

### Plaintiffs' FOIA Requests

30. Unable to confirm that DEA had accepted or even received either of their petitions, on March 31, 2022, Tucker, on behalf of AIMS and Dr. Aggarwal, filed targeted FOIA requests via e-mail (the "AIMS FOIA Request") seeking simply to confirm that the agency had received the petitions and to understand if it had commenced a decision-making process. A true and correct copy of the AIMS FOIA Request is attached as Exhibit 6.[2]

---

[2] Mere days after the AIMS FOIA Request, on April 4th, DEA notified Plaintiff Zorn in reference to a different FOIA request that "to better serve [its] requester community," DEA would "no longer accept FOIA/PA requests via e-mail."

31. The AIMS FOIA request is both narrow in scope and time limited. AIMS and Dr. Aggarwal requested all copies of records, documents, communications, and e-mails related to (1) the rulemaking petition regarding "Rulemaking petition to reclassify psilocybin from a schedule I controlled substance to a Schedule II controlled substance" dated February 2, 2022, and (2) the request for waiver regarding "Access to Psilocybin for Limited Therapeutic Use Under State and Federal Right to Try Laws" dated February 10, 2022. They further limit their request to records created after February 1, 2022.

32. FOIA's 20-day limit for agencies to respond to such requests passed without AIMS and Dr. Aggarwal hearing from DEA. Accordingly, on May 2, 2022, Tucker followed up via e-mail, stating "per below, a FOIA request was submitted on 3/31, generating the reply send from DEA offices on that same date. More than 20 business days have elapsed, and we have yet to receive any reply. Can you advise status?"

33. This May 2nd e-mail prompted DEA to send AIMS and Dr. Aggarwal a boilerplate e-mail confirming receipt of the AIMS FOIA Request, advising them that DEA considered the targeted request to raise "unusual circumstances," and deeming it "complex." According to DEA, the AIMS FOIA Request raised "unusual circumstances" because it required a search of another office; and because the AIMS FOIA Request was allegedly "complex," the agency advised that it would take more than a month to respond even though DEA had not yet confirmed whether any documents within the scope of the request existed:

> The records you seek require searches in another office or offices, and so your request falls within "unusual circumstances." *See* 5 U.S.C. § 552(a)(6)(B)(i)-(iii). Because of these unusual circumstances, we are extending the time limit to respond to your request beyond the ten additional days provided by the statute. We have not yet completed a search to determine whether there are records within the scope of your request. The time needed to process your request will necessarily depend on the complexity of our records search and on the volume and complexity of any records located. For your information, this office assigns incoming requests to one

of three tracks: simple, complex, or expedited. Each request is then handled on a first-in, first-out basis in relation to other requests in the same track. Simple requests usually receive a response in approximately one month, whereas complex requests necessarily take longer. At this time, your request has been assigned to the complex track. You may wish to narrow the scope of your request to limit the number of potentially responsive records or agree to an alternative time frame for processing, should records be located; or you may wish to await the completion of our records search to discuss either of these options.

34. On May 31, 2022, Tucker submitted a follow-up FOIA request for "All records related to the receipt and processing of [the AIMS FOIA Request]. (February 1, 2022, and the present)." These records would, of course, be located within the FOIA office processing the request and thus would not be subject to DEA's unlawful policy and pattern or practice. DEA did not timely provide a response to this follow-up FOIA request.

35. On June 2nd, Tucker reached out to DEA's counsel in *AIMS v. Garland*. She explained DEA's "lack of any response to either of our submittals." Tucker also explained that she had filed a FOIA request to determine what had happened to AIMS's and Dr. Aggarwal's petitions. Finally, she explained that, despite its limited nature, DEA had categorized this request as "complex" and therefore not subject to FOIA's timing requirements. DEA's counsel responded that he would follow up with DEA.

36. On June 14th, Tucker reached out to DEA's counsel in *AIMS* again. The next day, DEA's counsel confirmed that he had consulted with DEA and understood that the agency had received AIMS's and Dr. Aggarwal's petitions and that they were "currently under review." Yet, three months after the FOIA request, DEA still has not responded—not even to confirm that it possesses the requested documents.

37. On July 13, 2022, DEA finally responded to Tucker's follow-up FOIA request, notifying her that DEA was *administratively closing* the request for the processing notes because the agency is allegedly still processing the AIMS FOIA Request, which Tucker submitted months

earlier. Ex. 7. DEA further stated that when the AIMS FOIA Request is completed, Tucker should "feel free to resubmit [her] request."

38. In other words, according to the agency, because it is still processing the AIMS FOIA Request due to "unusual circumstances," it cannot provide its processing notes showing why it deemed the rather simple AIMS FOIA Request complex or why the request raises unusual circumstances. Unsurprisingly, DEA's July 13th letter cites no statute or regulation permitting the agency to administratively close a FOIA request under these circumstances, and Plaintiffs are aware of none.

39. Since early April, Plaintiff Zorn has submitted more than a half dozen FOIA requests to DEA seeking information relevant to an unrelated administrative proceeding that is currently pending before DEA. Aside from one recently submitted request, DEA has tagged each as raising "unusual circumstances," including one seeking e-mails involving a single person and five obscure search terms. No request—not even one seeking a *single judicial record*—escaped automatic categorization as raising "unusual circumstances," and none prompted DEA to include even an estimated timeline for response. For example, Zorn requested:

> A copy of the transcript of proceedings of the January 28 through January 30, 1975, hearing before Administrative Law Judge (ALJ) Parker. *See* 40 Fed. Reg. 44163 at 44164 (Sept. 25, 1975). (Date Range for Record Search: From 01/01/1975 To 01/30/1975)

The agency deemed this request for a single transcript "complex" and advised that a response would "necessarily take longer" than a month.

40. The most egregious example of DEA's FOIA abuse and misconduct arose in connection with FOIA requests Zorn made on behalf of clients in connection with an ongoing administrative rulemaking proceeding before DEA entitled *In the Matter of 4-OH-DiPT, 5-MeO-AMT, 5-MeO-MiPT, 5-MeO-DET, and DiPT* in which Zorn is counsel of record.

41. On April 4th, Zorn submitted a FOIA request seeking records that DEA relied on for a technical analysis published in the Federal Register supporting the placement of five chemicals into Schedule I. The technical analysis cites and relies on over two dozen unpublished drug discrimination studies done under a government contract:

> Elsken C and Forster MJ (2006a). 4-Hydroxy-N,N-diisopropyltryptamine HCl: Time course (8-h) mouse locomotor activity test. Contract No. N01DA-2-8822.
>
> Elsken C and Forster MJ (2006b). 5-Methoxy-alpha-methyltryptamine HCl: Time course (8-h) mouse locomotor activity test. Contract No. N01DA-2-8822.

42. To inform his advocacy, Zorn requested the references the agency relied on to formulate the analysis:

> The Spokane Medical Examiner's Office report discussed on page 14 of the DEA Report; copies of all non-book references cited on pages 22 to 28 of the DEA Report. 3; copies of the data review document sent to the Assistant Secretary for Health and Human Services (HHS) related to the Five Tryptamines discussed on page 2 of the DEA Report; for each of the Five Tryptamines, all documents relating to drug seizures, medical reports, and anecdotal reports relied on in the HHS Evaluations or DEA Report; all copies of communications or documents showing that "DEA has confirmed with HHS that their 2012 statements are still applicable" in the DEA Report on page 5; and all documents and evidence discussed on page 17 (Factor 4) or page 18 (Date Range for Record Search: From 1/1/2008 To 1/16/2022).

43. On information and belief, these requested records are not difficult for DEA to access. Indeed, on information and belief, the records are in DEA's rulemaking file.

44. Moreover, in an April 4th e-mail to DEA's FOIA liaison, DEA.FOIA@dea.gov, Zorn notified the agency that he needed the records for an ongoing administrative proceeding against DEA and *specifically identified agency counsel who had possession, custody, or control of the records*. Zorn copied that counsel on the communication. In other words, Zorn told the agency exactly where to go to retrieve the records. Collecting and producing these records, which DEA had already collected as part of a public administrative process, could not reasonably have

taken more than several days. Notwithstanding Zorn's assistance, the agency marked the request as raising "unusual circumstances" and delayed.

45. Confused as to how the agency deemed every FOIA request as raising "unusual circumstances," including those described above, Zorn called DEA's FOIA officer on May 11th to inquire about the agency's process. The FOIA officer explained that it was "DEA policy" to mark *all* incoming FOIA requests that required contacting any office within DEA other than the FOIA office as raising "unusual circumstances." In other words, if a request seeks any record that isn't coincidentally in the processing office itself, DEA deems it per se "unusual" and "complex."

46. What's more, on information and belief, DEA had collected the records responsive to Zorn's April 4th request by not later than March 28th. In the course of representing his clients in the ongoing administrative rulemaking proceeding, Zorn eventually received redacted versions of the documents he had requested under FOIA. Metadata from that disclosure shows that by *March 28, 2022*, DEA had collected most of the requested documents.

47. Zorn followed up with agency counsel to confirm receipt of the agency's disclosure and raise concerns about the technical papers the agency had not produced. Zorn then reminded the agency that he currently "ha[s] outstanding FOIA requests for these exact documents. Unless the redacted information falls within a FOIA exemption, the redaction is improper."

48. The very next morning, DEA remitted a letter to Zorn informing him that a search for the records (most of which DEA had already produced to him) had been completed. The letter decision informs Zorn that to process his request, Zorn would need to send the agency *$6,800.00* by check or money order up-front in advance for review time, which includes "processing any records for disclosure" such as "redacting the records and asserting the appropriate FOIA exemption." In other words, the agency demanded that Zorn pay thousands of dollars for a set of

records nearly *identical to those the agency had just disclosed to Zorn a week earlier in the context of the pending administrative proceeding*. DEA emphasized that it would be unable to continue processing the request until Zorn agreed to pay the fee.

49. Zorn called the number for the FOIA representative to alert him to the situation. Rather than receive a representative, he twice received the message: "Your call could not be completed as dialed. Please check the number and dial again." The line then promptly disconnected. Zorn then called the FOIA Public Liaison twice. Both calls went to voicemail.

50. Zorn also submitted a FOIA request seeking the government contracts underlying the drug discrimination studies that DEA cited in the ongoing administrative rulemaking proceeding. That request, too, was deemed to raise "unusual circumstances" and labeled "complex."

51. As yet another example of DEA's policy and pattern or practice of flagrant FOIA abuse, Zorn recently submitted a FOIA request seeking *one* publicly presented DEA poster and *one* seminar presentation made by a DEA official. In his request, Zorn identified the specific custodian of the records:

- Carbonaro TM, (2021) Evaluating Drug Abuse Liability: Applying Pharmacology Data to Drug Scheduling Actions. Oral Presentation at University of Arkansas for Medical Sciences. (Seminar presentation)

- Carbonaro TM, Tella SR, Boos TL (2022). The Controlled Substances Act Regulations on schedule I researcher registrations and the need to investigate new substances of abuse. Poster to be presented at 84th annual College on Problems of Drug Dependence Meeting.

52. Zorn needs these records for the ongoing administrative proceeding where Dr. Carbonaro (a co-author) will be the government's only witness.

53. Based on its past practices, Zorn anticipated that DEA would unlawfully mark this simple FOIA request as unusual and complex to evade the statute's time limits. He therefore

attempted to preempt DEA's inevitable invocation of its unlawful policy and pattern or practice by adding the following to the body of the FOIA request:

> Teresa Carbonaro has these records. They are two documents. This request is not complex and does not raise unusual circumstances. I need these documents for a hearing.[3]

54. Nonetheless—and perhaps unsurprisingly—on July 12, 2022, DEA responded that Zorn's request, which sought a mere **two documents**, was "complex" and raised "unusual circumstances."

55. What a "simple" request raising "usual circumstances" remains to be seen.

**DEA's Diversion of Legitimate FOIA Requests Constitutes a Policy and Pattern or Practice**

56. FOIA data reveals that DEA has been labeling more and more FOIA requests "complex" over time. According to FOIA.gov, in 2021, DEA took an average of 12 working days to process "simple requests." Complex requests, by contrast, took the agency an average of 170 days—14 times longer—to process. In 2019, DEA processed 449 "simple" requests and handled 79 percent of them within 20 business days. By contrast, DEA processed 631 "complex" requests during the same period and handled just 17 percent of them within 20 business days. In 2020 and 2021, DEA's load of "simple" requests dwindled to just 169, while its "complex" request docket swelled to over 1,130.

---

[3] Zorn has tried, without success, to obtain these public records within the ongoing administrative rulemaking proceeding. DEA has refused to disclose these types of records (such as DEA contracts with scientists conducting the underlying technical studies), and the presiding Administrative Law Judge presiding has declined to order further disclosure. The prejudice DEA's unlawful policy and pattern or practice causes is manifest. FOIA is the preferred discovery tool for formal rulemaking. Charles H. Koch Jr., *Discovery in Rulemaking*, 1977 Duke L.J. 295 at 330 (1977) ("[I]f a rulemaking participant desires information contained in a government file, the FOIA may be the best available discovery tool."). And the purpose of the FOIA's time limits is to permit "prompt access to agency files," to facilitate public access to agency records in (among other contexts) adjudications and hearings. DEA's delay causes irreparable harm to Zorn because it effectively deprives him of agency records he needs for the August 22nd administrative hearing.

57. In other words, over the past two years, DEA has processed 60 percent fewer "simple" requests, while its docket of "complex" requests has doubled. Either filers are submitting increasingly "complex" requests over the past two years, or, far more likely, DEA is engaged in a policy and pattern or practice of categorizing "simple" FOIA requests as "complex"—a systemic evasion of its basic public disclosure obligations under FOIA.

58. Absent court intervention, DEA's unlawful policy and pattern or practice of egregious FOIA abuse is likely to continue and to cause Plaintiffs irreparable harm.

### FIRST CAUSE OF ACTION
### (FOIA—Unlawful Policy and Pattern or Practice)

59. Plaintiffs incorporate the previously alleged paragraphs by reference.

60. DEA's policy and pattern or practice of marking FOIA requests as "complex" and raising "unusual circumstances" as described herein is contrary to law and the principles announced in the Garland Memo.

61. Under 21 U.S.C. § 552(a)(6)(B)(iii)(1), "unusual circumstances" means "the need to search for and collect the requested records from field facilities or *other establishments that are separate from the office* processing the request" and can be invoked "only to the extent reasonably necessary to the proper processing of the particular requests." DEA has adopted a policy and pattern or practice with respect to this provision that is unlawful in at least three ways.

62. First, the agency unlawfully labels incoming requests as raising "unusual circumstances" any time they require the processing office to contact any other office. The "unusual circumstances" exception does not apply so indiscriminately. Rather, FOIA's text, structure, and legislative history demonstrate that the exception applies only when the request implicates the need to search for and collect records from *other establishments that are separate*

-15-

*from the office*, such as field facilities.[4] DEA's contrary reading vitiates the exception, since nearly all FOIA requests require the processing office to request records from some other office.

63. Second, DEA's policy and pattern or practice of invoking the exception to defer rote, targeted requests is unlawful because it is not "reasonably necessary to the proper processing of [those] particular requests." The statute requires agencies to consider the particular request before invoking the exception and to tailor its use of the exception "to the extent reasonably necessary."

64. Third, even assuming the incoming requests described above raised "unusual circumstances" (they did not), DEA's policy and pattern or practice is unlawful because the agency does not "set[] forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i). DEA's form e-mails provide no date on which a determination is expected to be dispatched. Presumably, the agency acts under § 552(a)(6)(B)(ii), which, "[w]ith respect to a request for which written notice under clause (i) extends the time limits prescribed under clause (i) of subparagraph (A)," permits the agency to

> notify the person making the request if the request cannot be processed within the time limit specified in that clause and shall provide the person an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request.

---

[4] *See* S. Rep. 93-854 (May 16, 1974) ("The need to search for and collect records from field facilities or 'other establishments that are separate from the office processing the request' does not permit an extension while such an office obtains the records from the agency's own file, records, or administrative division when located in the same city as the processing office. Rather this is intended to cover the collection of records from other cities, or from a federal records center or other facility which is not part of the agency.").

By its terms, this subsection permits the agency to extend the response date past ten working days only after processing the request. DEA, however, invokes this exception *before* it has even completed a search to determine whether there are records within the scope of the request.

65. DEA's flagrant FOIA violations are not isolated incidents but constitute a policy and pattern or practice of disregarding FOIA's most basic requirements.

66. Plaintiffs have been personally and irreparably harmed by DEA's unlawful policy and pattern or practice described herein.

67. DEA's unlawful policy and pattern or practice will impair and/or will likely impair Plaintiffs' lawful access to information under FOIA in the future.

## ATTORNEY FEES

68. Plaintiffs seek reasonable attorney fees as provided for in statute. *See* 5 U.S.C. § 552(a)(4)(E).

## PRAYER FOR RELIEF

For these reasons, Plaintiffs respectfully request that the Court:

1. Declare and hold DEA's policy and pattern or practice unlawful and contrary to FOIA;

2. Declare that 5 U.S.C. § 552(a)(6)(B)(iii) does not permit an agency under 5 U.S.C. § 552(f) to deem all or substantially all requests that require the office processing a FOIA request to contact another office as presenting "unusual circumstances";

3. Preliminarily and permanently enjoin Administrator Milgram and DEA from continuing DEA's unlawful policy and pattern or practice;

4. Order Administrator Milgram to implement a corrective action plan to prevent and correct DEA's FOIA abuse and unlawful diversion of legitimate FOIA requests; and

5. Order all other relief deemed just and proper.

Dated: July 19, 2022	Respectfully submitted,

*/s/ Shane Pennington*
Shane Pennington
VICENTE SEDERBERG LLP
1115 Broadway, 12th Floor
New York, NY 10010
T: (917) 338-5455
F: (303) 860-4505
s.pennington@vicentesederberg.com

Kathryn Tucker
EMERGE LAW GROUP
621 SW Morrison Street, Suite 900
Portland, OR 97205
T: (503) 227-4525
F: (503) 200-1124

Matthew C. Zorn
YETTER COLEMAN LLP
mzorn@yettercoleman.com
811 Main Street, Suite 4100
Houston, TX 77002
T: (713) 632-8000
F: (713) 632-8002

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Shane Pennington*
Shane Pennington
