# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| AIMS INSTITUTE, PLLC, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action H-22-02396 |
| MERRICK GARLAND, *et al.*, | |
| *Defendants.* | |

## DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

Defendants, Merrick Garland, United States Attorney General, *et al.*, move to dismiss Plaintiffs' complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In the alternative, Defendants move for a more definite statement under Fed. R. Civ.  P. 12(e).  As discussed below, Plaintiffs failed to plead a valid FOIA claim. For these reasons, Plaintiffs' complaint should be dismissed.

## I.  INTRODUCTION

Plaintiffs bring before this Court a type of claim that has never been acknowledged or addressed by the Fifth Circuit: a policy, pattern, or practice ("PPP") claim under the Freedom of Information Action ("FOIA"). Plaintiffs do not seek records that they believe are being wrongfully withheld in response to specific FOIA requests. Rather, they request this Court to enjoin the Defendants from engaging in policies, patterns, or practices that they believe are not compliant with FOIA's procedures. If this request is granted, it would open the floodgates for plaintiffs to file lawsuits based on perceived repeated instances of agency non-compliance with FOIA's procedures—without any substantive records being at issue and without any administrative remedies being exhausted. This Court should not countenance such an extreme request.

The Court should dismiss the claims against the named Defendants[1] for several reasons:

- First, the alleged areas of DEA's non-compliance with FOIA's procedure do not sufficiently support a FOIA PPP claim. The Fifth Circuit has never recognized a FOIA PPP claim, yet the Complaint urges this Court to expand the viability of such a claim past even what the D.C. Circuit has accepted to enjoin perceived procedural shortcomings that do not fundamentally affect a requester's ability to receive non-exempt records in a prompt manner.

- Second, the Complaint fails to plead facts sufficient to support a valid FOIA PPP claim that DEA wrongfully claims "unusual circumstances" when required to contact another office to search for records. Compl. ¶¶ 62-63.  Such a policy would be entirely proper under FOIA and, even if it not, the Complaint fails to allege sufficient facts that DEA wrongfully implements such a policy.

- Third, the Complaint fails to plead facts sufficient to support a valid FOIA PPP claim that DEA wrongfully, when asserting "unusual circumstances," fails to provide an estimated date upon which a determination of the request is expected. Compl. ¶ 64.

## II.  BACKGROUND

### A.  The FOIA requests

#### 1.  The Tucker Requests

On March 31, 2022, Plaintiff Katheryn Tucker, and attorney, submitted a FOIA request seeking records related to the Rescheduling Petition and Exemption Petition from February 2022

---

[1] The Department of Justice is the only proper defendant in this FOIA litigation. FOIA provides a cause of action against federal agencies only. *See Petrus v. Bowen*, 833 F.2d 581, 582-83 (5th Cir. 1987) (affirming dismissal of FOIA claims against an agency head, among others); DEA must be dismissed as well. The statutory definition of "agency" under FOIA extends only to agencies and not to agency components. *See Blackwell v. FBI*, 680 F. Supp. 2d 79, 86 n. 1 (D.D.C. 2010); *see* 5 U.S.C. § 552(f)(1). Consequently, the Court should dismiss the Attorney General, the Administrator, and DEA from this suit.

(the "March 31 Request").  Compl. ¶¶ 30-31; Ex. 6. At some point after May 2, DEA responded

that the request raised "unusual circumstances" and was "complex." *Id.*  at ¶ 33. The Complaint

quotes the response as follows:

> The records you seek require searches in another office or offices, and so your request falls within "unusual circumstances." *See* 5 U.S.C. § 552(a)(6)(B)(i)-(iii). Because of these unusual circumstances, we are extending the time limit to respond to your request beyond the ten additional days provided by the statute. We have not yet completed a search to determine whether there are records within the scope of your request. The time needed to process your request will necessarily depend on the complexity of our records search and on the volume and complexity of any records located. For your information, this office assigns incoming requests to one of three tracks: simple, complex, or expedited. Each request is then handled on a first-in, first-out basis in relation to other requests in the same track. Simple requests usually receive a response in approximately one month, whereas complex requests necessarily take longer. At this time, your request has been assigned to the complex track. You may wish to narrow the scope of your request to limit the number of potentially responsive records or agree to an alternative time frame for processing, should records be located; or you may wish to await the completion of our records search to discuss either of these options.

*Id.*

On May 31, 2022, Tucker submitted a FOIA request for "[a]ll records related to the receipt

and processing of the [the March 31 Request]" (the "May 31 Request"). *Id.* at ¶ 34.  The Complaint

fails to attach this request. DEA allegedly failed to "timely provide a response" to the May 31

Request, and on July 13, 2022, administratively closed the May 31 Request because "the agency

[was] allegedly still processing [the March 31 Request]." *Id.* at ¶¶ 34, 37.

2. The Zorn Requests

In contrast to the two requests submitted by Tucker, Plaintiff Mathew Zorn has allegedly,

since "early April" 2022, submitted "more than a half dozen FOIA requests to DEA seeking

information relevant to an . . . administrative proceeding that is currently pending before DEA."

*Id.* at ¶ 39.  DEA deemed each of Zorn's "more than a half dozen" requests, except for one,[2] as

raising "unusual circumstances" and did not provide an estimated timeline for responding to them

*Id.* at ¶ 39. In bits and pieces, the Complaint provides some information about the requests:

- A request for a copy of a transcript from 1975 before an Administrative Law Judge.  *Id.* at ¶ 39.

- A request "seeking e-mails involving a single person and five obscure search terms." *Id.* at ¶ 39.

- An April 4 request ("April 4 Request") seeking records that DEA relied on for a technical analysis published in the Federal Register supporting the placement of five chemicals into Schedule I, claiming that it "relies on over two dozen unpublished drug discrimination studies done under a government contract." *Id.* at ¶¶ 40-41. Upon information and belief, this information is in "DEA's rulemaking file." *Id.* at ¶ 43. Zorn "notified the agency that he needed the records for an ongoing administrative proceeding against DEA and specifically identified agency counsel who had possession, custody, or control of the records." *Id.* at ¶ 44. DEA had, "upon information and belief," already collected the records as part of the "public administrative process" by March 28, 2022. *Id.* at ¶¶ 44, 46. In apparent response to the April 4 Request or requests (the Complaint is not clear as to which), DEA then stated that Zorn would need to remit $6,800 to process the request (or requests). *Id.* at ¶ 48.

- A request that "Zorn also submitted a FOIA request seeking the government contracts underlying the drug discrimination studies that DEA cited in the ongoing administrative rulemaking proceeding." *Id.* at ¶ 50.

- A request "seeking one publicly presented DEA poster and one seminar presentation made by a DEA official.'" *Id.* at ¶ 51.  Specifically, a seminar presentation at the University of Arkansas for Medical Sciences from 2021 and a poster presented at the 84th annual college of Problems of Drug Dependence Meeting from 2022. *Id.* On July 12, 2022, DEA allegedly responded that Zorn's request was "complex" and "raised unusual circumstances." *Id.* at ¶ 54.

Allegedly, Zorn called "DEA's FOIA officer" on May 11th to inquire about the agency's

process. *Id.* at ¶ 45.  The FOIA officer allegedly "explained that it was 'DEA policy' to mark all

---

[2] Despite the Complaint's protest of "[w]hat a 'simple' request raising 'usual circumstances' remains to be seen," Compl. ¶ 55, the Complaint fails to identify which Request was not deemed to raise "unusual circumstances."

incoming FOIA requests that required contacting any office within DEA other than the FOIA office as raising 'unusual circumstances.'" *Id.* The Complaint further alleges that DEA has processed 60 percent fewer "simple" requests in the past two years while its docket of "complex" cases has doubled. *Id.* at ¶ 57.

### B. The FOIA Process

The Complaint premises its policy, pattern, or practice claim on the DEA's compliance, or not, with FOIA procedures. Consequently, it is important to lay out the FOIA process.

Under FOIA, agencies must make "promptly available" to any person records upon submission of a proper request. 5 U.S.C. § 552(a)(3)(A). As a default matter, FOIA directs agencies to "determine within 20 [business] days. . . after the receipt of any such request whether to comply with such request" and then notify the requester of such determination. 5 U.S.C. § 552(a)(6)(A)(i). The twenty business day determination "timeline is not absolute." *Citizens for Responsibility & Ethics in Wash. (CREW) v. Fed. Election Comm'n,* 711 F.3d 180, 184 (D.C. Cir. 2013). It is instead only a "default." *Id.* at 189. After all, "it would be a practical impossibility for agencies to process all FOIA requests completely within twenty days." *Id.*

In "unusual circumstances," an agency can extend the twenty-day time limit for processing a FOIA request by written notice to the requester "setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i). "[U]nusual circumstances" includes, *inter alia,* the need "to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request." 5 U.S.C. § 552(a)(6)(B)(iii). If the required extension exceeds ten days, the agency must allow the requester an opportunity to modify his or her request, or to arrange for an alternative time frame for completion of the agency's processing. 5 U.S.C. § 552(a)(6)(B)(ii).

Consequently, FOIA contemplates that at times determinations will not be made within thirty business days.

A requester receiving a timely and adverse determination in response to a request must, generally before filing suit, appeal it administratively within ninety days. *Voinche v. F.B.I.*, 999 F.2d 962, 963 (5th Cir. 1993) (*per curiam*) ("[FOIA] requires exhaustion of administrative remedies prior to seeking judicial review"); 28 C.F.R. § 16.8(e).  However, if the agency fails to adhere to FOIA's timelines, the "penalty" is that the requester is then "deemed to have exhausted his administrative remedies" and may generally then seek judicial review of the contested action without filing an administrative appeal. 5 U.S.C. § 552(a)(6)(C)(i); 5 U.S.C. § 552(a)(4)(B); *see also CREW,* 711 F.3d 189-90. Failure to adhere to FOIA's timelines does not entitle the requester to judgment in its favor on the merits of the FOIA claim. Indeed, in this Circuit, a suit brought based on failure to comply with FOIA's timelines under 5 U.S.C. § 552(a)(6)(C) "challenges only the timeliness of an agency's response" not "whether the requestor should have ultimate access to the records." *Voinche,* 999 F.2d at 963.

Once in court, the agency may receive additional time to process the request if it shows that its failure to meet the statutory time limits is the result of "exceptional circumstances" and that it has exercised "due diligence" in processing the request. 5 U.S.C. § 552(a)(6)(C)(i). "Exceptional circumstances" can "include a delay that results from a predictable agency workload of requests" if "the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii).

Finally, FOIA expressly authorizes agencies to promulgate regulations providing for "multitrack processing" of their FOIA requests—which allows agencies to process requests on a first-in, first-out basis within each track, and also permits them to respond to relatively simple

requests more quickly than requests involving complex and/or voluminous records. 5 U.S.C. §
552(a)(6)(D). The express permission to create multi-track systems further contemplates that at
times FOIA requests take a substantial amount of time to process.

## III.   ARGUMENT

The Complaint fails to state a claim upon which a relief can be granted because Plaintiffs
have failed to allege that DEA is engaging in a policy, pattern, or practice of such significance that
warrants equitable relief under a FOIA PPP claim to prevent future harm.

**A. The Complaint fails to plead facts sufficient to support a claim that DEA engaged
in in a policy, pattern, or practice that violated FOIA justifying equitable relief to
prevent future harm.**

The Complaint's central claim—that DEA engages in an unlawful policy, pattern, or
practice under FOIA justifying an equitable remedy to prevent future harm[3]—fails to state a claim
upon which relief can be granted for three reasons: (1) the alleged areas of DEA's non-compliance
with aspects of FOIA's procedural requirements under the circumstances set forth in the
Complaint cannot support a FOIA PPP claim; (2) the Complaint fails to set forth facts sufficient
that DEA wrongfully claims "unusual circumstances" when required to contact another office for
a search for records, Compl. ¶¶ 62-63; (3) the Complaint fails to plead facts sufficient to support
a valid FOIA PPP claim that DEA wrongfully, when asserting "unusual circumstances," fails to
provide an estimated date upon which a determination of the request is expected. Compl. ¶ 64.

1. This Court should not interpret FOIA PPP claims to sweep more broadly than the
D.C. Circuit by finding that a valid claim can be premised on alleged policies that do
not result in the ultimate withholding of non-exempt records or prolonged,
unreasonable, and unexplained delays.

---

[3] The Complaint's allegedly unlawful PPPs boil down to DEA (1) wrongfully claiming "unusual
circumstances" when required to contact another office for a search and (2), when asserting "unusual
circumstances," not providing an estimated date upon which a determination of the request is
expected. *See* Compl. ¶¶ 61-64.

The Fifth Circuit has never acknowledged or addressed a FOIA PPP claim. *See Atchafalaya Basinkeeper, Inc. v. United States Army Corps of Engineers*, No 21-317, 2022 WL 219050, *10 (E.D. La. Jan. 25, 2022). No court sitting in the Fifth Circuit should construe FOIA PPP claims to sweep more broadly than the D.C. Circuit has, but that is what Plaintiffs are requesting this Court to do. Specifically, Plaintiffs are requesting that this Court grant equitable relief to prevent claimed future harm due to DEA's perceived non-compliance with two of FOIA's procedural mandates as opposed to being premised on implementing FOIA's central purpose for agencies to make "promptly available" non-exempt records. 5 U.S.C. § 552(a)(3)(A).

Plaintiffs take issue with DEA allegedly improperly invoking the "unusual circumstances" procedure and, when doing so, failing to provide an estimated date upon which a determination will be provided. Compl. ¶¶ 62-64. These alleged policies do not undermine the central purpose of FOIA of providing non-exempt records to parties in a "prompt" manner. Indeed, the FOIA provision vesting district courts with statutory jurisdiction to grant injunctions provides that a court may do so to prevent an agency "from withholding agency records and to order the production of any agency records improperly withheld. . ." 5 U.S.C. § 522(a)(1)(4)(B). Similarly, the one district court in the Fifth Circuit to substantively address a PPP claim observed that, under D.C. Circuit law, a PPP claim may lie where a policy or practice "will impair the party's lawful access to information in the future." *Basinkeeper*, 2022 WL 219050 at *10 (citing *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 895 F.3d 770, 778 (D.C. Cir. 2018).

Under the developed standard for FOIA PPP claims set forth in the D.C. Circuit, the Complaint fails.[4] Specifically, the D.C. Circuit cases addressing FOIA PPP claims support the

---

[4] D.C. Circuit law does not govern this matter and Defendants are not waiving any challenge to the viability of PPP claims in general. Defendants frequently cite to D.C. Circuit law herein because, in part, the D.C. Circuit has the most robust history of adjudicating PPP claims.

conclusion that Plaintiffs' procedural objections are insufficient to support a valid PPP claim. Although each decision concerned different practices or policies, they all dealt ultimately with (1) the denial of non-exempt records or (2) "prolonged, unexplained delays" in providing non-exempt records. *See Judicial Watch,* 895 F.3d at 776, 780, 787 (claim premised on "prolonged, unexplained delays" when, at time of filing, nineteen similar FOIA requests had been pending for up to eighteen months without a single determination); *Newport Aeronautical Sales v. Dep't of the Air Force,* 684 F.3d 160, 164 (D.C. Cir. 2012*)* (claim premised on agency practice of denying FOIA requests based on allegedly erroneous interpretation of FOIA exemption actionable); *Payne Enters., Inc. v. United States,* 837 F.2d 486, 491 (D.C. Cir. 1988) (claim premised on agency's continued withholding of nonexempt materials in response to repeated requests without justification).

Here, Plaintiffs have failed to assert that DEA has a policy, pattern, or practice of ultimately withholding records or of only doing so after "prolonged, unexplained delays." As stated in *Judicial Watch*, "not all agency delay or other failure to comply with FOIA's procedural requirements . . . warrant judicial intervention, much less injunctive relief." *Judicial Watch*, 895 F.3d at 782. Erroneously deeming a request to qualify as raising "unusual circumstances" and not providing an estimated date of a determination does not mean that the records will be withheld or are the subject of a prolonged and unexplained delay. Indeed, the *earliest* of the "more than a half dozen" requests at issue was submitted merely three and a half months before the filing of the lawsuit—not the type of routine, prolonged, unexplained delay that occurred in *Judicial Watch*, which involved delays of up to 18 months of nineteen similar FOIA requests.[5]

---

[5] The Complaint omits the dates of all relevant requests except two. This makes establishing a sufficient delay even more difficult, as, under the terms of the Complaint, an undetermined number of the requests may have been submitted less than twenty business days before the filing on this suit— meaning that DEA would even be within the default twenty-day response window for issuing a determination.

The insufficiency of the Complaint's PPP claim is further bolstered by the conclusions of the only district court in this Circuit to expressly address a FOIA PPP claim. The *Basinkeeper* Court required a degree of bad faith or lack of due diligence on the part of the agency to support equitable relief and, consequently, a FOIA PPP claim in general. *Basinkeeper*, 2022 WL 219050 at *10-11. In *Basinkeeper,* the agency took longer than twenty days to resolve all eight FOIA requests at issue, never provided estimated dates of completion, and did not provide tracking numbers in four cases. *Id.* at *11. The court held that the evidence, although it showed the agency violated FOIA's procedural requirements, failed to show a "practice or policy" violating FOIA and, even if it did, "nothing in the record" showed a "lack of recalcitrance or due diligence" to warrant injunctive and declaratory relief. *Id.* The court further observed that the agency's conduct did not amount to the "sort of bad faith conduct" that would entitle the plaintiffs to equitable relief. *Id.; see also Rocky Mountain Wild, Inc. v. U.S. Bureau of Land Management*, No. 19-cv-03171, 2020 WL 12675644, *9 (D. Co. Sept. 30, 2020).

Similarly, a complaint, as here, alleging that an agency, with regard to "more than a half dozen requests," improperly invoked "unusual circumstances" and failed to provide no estimated dates of completion fails to support a PPP claim. Even if the Complaint sufficiently alleges instances of non-compliance with FOIA's procedural requirements, the Complaint does not show that DEA acted in bad faith or exhibited a significant lack of diligence, much less ultimately resulted in the withholding or prolonged, unexplained delay of non-exempt records. Consequently, the Complaint must be dismissed.

2.   <u>The Complaint fails to plead a viable PPP claim that DEA wrongfully claims "unusual circumstances" whenever required to contact another office to search for records.</u>

Even if this Court determined that a viable PPP claim permitting equitable relief may be premised on the invocation of "unusual circumstances" on the factual grounds set forth in the

Complaint, Plaintiffs' claims that DEA's alleged practice of invoking "unusual circumstances" too liberally fails for two reasons. First, the claimed unlawful policy of invoking "unusual circumstances" when the processing office is required to contact another office for records would be consistent with FOIA. Compl. ¶¶ 63-64. Second, the Complaint has failed to set forth sufficient facts that DEA carries out such a policy.

> i.    *An agency may deem there to be "unusual circumstances" when there is a need to search another office for records in order to properly process a request.*

FOIA provides that "unusual circumstances" includes "the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request." 5 U.S.C. § 552(a)(6)(B)(iii)(I). Under FOIA's plain language, so long as a facility or establishment that needs to be searched is separate from the specific office processing the request, "unusual circumstances" applies.

The Complaint misinterprets the phrase "only to the extent reasonably necessary to the proper processing of the particular requests" found in 5 U.S.C. § 552(a)(6)(B)(iii) to apply to whether or not the agency invokes "unusual circumstances" at all. Compl. ¶¶ 4, 61, 63. In other words, the Complaint asserts that an agency may invoke the "unusual circumstances" extension only to the extent reasonably necessary to obtain more time. This interpretation is wrong. A plain reading of FOIA shows that the phrase at issue modifies the ensuing three specific scenarios that constitute "unusual circumstances." "Unusual circumstances" exist, *inter alia,* when the agency has a need to search for and collect records from other offices when doing so "is reasonably necessary to the proper processing of the particular request." 5 U.S.C. § 552(a)(6)(B)(iii). Therefore, so long as the agency conducts a search of another office that is reasonably necessary to the proper processing of a request, "unusual circumstances" exist.  It does not matter whether the search of

this additional office could theoretically be done within the default twenty-day time period to issue a determination.

      ii.    *The Complaint fails to plead facts sufficient to establish that DEA improperly and routinely invokes "unusual circumstances" in response to FOIA requests.*

The Complaint has not pleaded sufficient facts that DEA is actually improperly engaged in a policy or practice of finding "unusual circumstances" whenever another office needs to be searched. Rather, the Complaint shows that DEA acted appropriately in claiming "unusual circumstances" concerning the FOIA requests referenced in the Complaint.

The Complaint attaches only one FOIA request—the March 31 Request submitted by Tucker. Compl. ¶ 30; Ex. 6. It could hardly be asserted that DEA's invocation of "unusual circumstances" in response was improper. DEA made this determination in response to a request seeking records regarding ongoing formal administrative petitions sent to the Administrator—who is clearly not part of the FOIA processing office. Compl. ¶ Ex. 3, 4. To add to their exceptional nature, the Rescheduling Petition and Exemption Petition arise from the outcome of former litigation in the Ninth Circuit. Compl. ¶ 24. DEA cannot be faulted for not providing a determination on the March 31 Request within twenty business days.[6]

The scant information provided about the remaining FOIA requests cited in the Complaint—Zorn's "more than a half dozen" since "early April" 2022—also fails to connect-the-dots showing improper invocation of "unusual circumstances." A major reason for this is that the Zorn requests are not of the same ilk. *See American Center for Law and Justice v. FBI*, 470 F. Supp. 3d 1, 6 (D.D.C. 2020) ("similarity of the underlying requests is a factor courts take into

---

[6] The May 31 Request was not the subject of any of the claimed prohibited PPPs in the Complaint and is therefore irrelevant.

consideration [for FOIA PPP claims], as it suggests that the agency's behavior stems from a considered decision . . . rather than isolated mistakes").

Because the Complaint fails to attach any of Zorn's requests, it relies on descriptions of varying length and specificity. What is clear is that there were many different types of records being requested and these records were not located in the FOIA processing office. For instance, the Complaint's claims that the undetermined number of requests involve such varying subjects as (1) a 1975 transcript before an Administrative Law Judge (Compl. ¶ 39), (2) emails involving a single person and five search terms (*id.* at ¶ 39), (3) records relied on for a technical analysis published in the Federal Register (*id.* at ¶¶ 41-43), (4) government contracts underlying drug discrimination studies (*id.* at ¶ 50), and (5) a publicly presented poster and training (*id* at ¶ 51). This is not the case of DEA improperly claiming "unusual circumstances" or delaying its response to numerous "similar and straightforward" requests. *See American Center*, 470 F. Supp. 3d at 8. Rather, the requests are so different that it cannot be claimed that the repeated deployment of the "unusual circumstances" extension was improper. *See Id.* at 6 (granting motion to dismiss PPP claim when three example requests "each implicate[d] requests of strikingly different subject matter and scope"). Further based on the limited descriptions provided, it cannot be reasonably claimed that they are simple and easy to retrieve.

Additionally, the Plaintiffs' attempt to rely on DEA statistics to bolster its bare claims falls flat. Compl. ¶¶ 56-67. DEA placing more of its requests on the "complex" track as opposed to the "simple" track over the past two years fails to support Plaintiffs' claims. First, the Complaint does not claim that placing of a request on the "complex" track created by DEA is the same thing as deeming a request to have "unusual circumstances" under FOIA. Indeed, the FOIA statute shows that these are two different things; therefore, the Complaint fails to show how the data is

relevant to Plaintiffs' PPP claims. Second, even if deeming requests "complex" were considered some kind of proxy for DEA's invocation of "unusual circumstances," the unadorned statistics could reflect lawful activity, such as changing a record system such that more requests qualified as invoking "unusual circumstances" or an initiative to more fully assert DEA's privileges under FOIA.

Finally, the Complaint's brief allegation that a DEA official in a phone call "explained that it was 'DEA policy' to mark all incoming FOIA requests that required contacting any office within DEA other than the FOIA office as raising 'unusual circumstances'" is insufficient. Compl. ¶ 45. A recounting of what was remembered to have been said in a brief telephone call with an unnamed official of undetermined authority and rank is insufficient to prove DEA policy in all circumstances, especially, without providing animating facts of multiple wrongful invocations of "unusual circumstances."

In sum, the Complaint fails to provide sufficient factual support that DEA engages in the wrongful designation of requests as raising "unusual circumstances" whenever it needs to search other offices for records in responding to them.

3. The Complaint fails to plead a viable PPP claim that DEA, when asserting "unusual circumstances," wrongfully fails to provide an estimated date upon which a determination of the request is expected.

Even if this Court determined that a viable PPP claim permitting equitable relief may be premised solely on the failure to provide an estimated determination date after claiming unusual circumstances, the Complaint fails to do so sufficiently here. The Complaint premises its claim that DEA has a policy of failing to provide estimated dates of determinations when claiming "unusual circumstances" on two items: (1) the excerpt from DEA's response to the March 31 Request (Compl. ¶ 33) in which an expected date for a determination was not provided, and (2)

14

the claim that DEA failed to provide "an estimated timeline for response" to the "more than half dozen" requests submitted by Zorn since early April 2022. Compl. ¶ 39. These incidences do not sufficiently establish that DEA has a policy, pattern, or practice of failing to provide estimated dates of determination when claiming "unusual circumstances." *See Basinkeeper,* 2022 WL 219050 at *11 (on summary judgment court found insufficient evidence to infer a "practice or policy" of violating FOIA when agency failed to provide estimated completion dates for eight requests and agency submitted declaration that while the agency's "practice [was] to provide an estimated time, such estimates [were] not always feasible due to the level of correspondence between different departments or the subject matter experts involved.").

**B. Alternatively, this Court should order Plaintiffs to amend the Complaint by submitting a more definite statement.**

If a complaint is "so vague or ambiguous that the party cannot reasonably prepare a response," this Court may order a plaintiff to file a more definite statement.  Fed. R. Civ. P. 12(e). Thus, even if this Court decides not to dismiss the Complaint, it should at least require Plaintiffs to file an amended complaint providing a more definite statement due to its lack of detail and specificity.  *See Pinson, v. Dep't of Justice,* 975 F. Supp. 2d 20, 27-30 (D.D.C. 2013) (ordering, *sua sponte*, plaintiff to file amended complaint with more detail when complaint at issue failed to include sufficient details relating to FOIA requests at issue).

Here, Defendants reasonably cannot prepare an answer to the vague Complaint. Plaintiffs have made grand conclusions about DEA's conduct based on its responses to a number of FOIA requests, but the Complaint fails to identity sufficiently what "more than a half dozen" requests to which it is referring and DEA's responses thereto. DEA cannot file an answer when it does not know which requests and responses Plaintiffs is challenging. Thus, Plaintiff should, at a minimum,

be ordered to file an amended complaint that meets standards of pleading so that the Defendants can meaningfully respond.

## IV.    CONCLUSION

For these reasons, this Court should dismiss the Complaint or, alternatively, order Plaintiffs to amend it to provide additional information so that the Defendants can reasonably prepare their responses.

 DATED: August 29, 2022

Respectfully Submitted,

JENNIFER B. LOWERY
UNITED STATES ATTORNEY

*s/ Jimmy A. Rodriguez*
Jimmy A. Rodriguez
Assistant United States Attorney
Southern District of Texas
Attorney in Charge
Texas Bar No. 24037378
Federal ID No. 572175
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9532
Fax: (713) 718-3303
jimmy.rodriguez2@usdoj.gov

Of counsel:
Luke J. Archer
Attorney
Drug Enforcement Administration
Office of Chief Counsel, Administrative and General Law Section
8701 Morrissette Dr., Springfield, VA 22152
Room 12E.323

## CERTIFICATE OF SERVICE

I certify that on August 29, 2022, a true and correct copy of the foregoing was filed with the United States District Clerk for the Southern District of Texas and electronically served on all counsel of record via the District's ECF system.

*s/ Jimmy A. Rodriguez*
Jimmy A. Rodriguez
Assistant United States Attorney