**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| AIMS INSTITUTE, PLLC; SUNIL AGGARWAL; KATHRYN TUCKER; and MATTHEW C. ZORN | § § § § § | |
| Plaintiffs, | § § § | |
| v. | § § | Civil Action H-22-02396 |
| MERRICK GARLAND, in his official capacity as U.S. Attorney General; ANNE MILGRAM, in her official capacity as Administrator of the U.S. Drug Enforcement Administration; U.S. DEPARTMENT OF JUSTICE; and U.S. DRUG ENFORCEMENT ADMINISTRATION. | § § § § § § § § | |
| Defendants. | § § | |

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.      This is an action to declare unlawful and enjoin the United States Department of Justice's ("DOJ") and the United States Drug Enforcement Administration's ("DEA") Freedom of Information Act ("FOIA") abuse and unlawful diversion of legitimate FOIA requests.

2.      On March 14, 2022, one of the Defendants, United States Attorney General Merrick Garland, released a memorandum (the "Garland Memo")[1] to all federal agencies. The Garland Memo establishes principles for agencies to follow in responding to FOIA requests. Among other things, it emphasizes the presumption of openness, that "[t]imely disclosure of records is also essential to the core purpose of FOIA," and that "[a]gencies must have effective systems in place for responding to requests in a timely manner." According to the Garland Memo, "[t]ransparency in government operations is a priority of this Administration and this Department."

---

[1]   https://www.justice.gov/ag/page/file/1483516/download

3.      DEA has implemented a DOJ policy to flout these principles of transparency and good government. It has adopted an unlawful policy and pattern or practice. Specifically, the agency deems any FOIA request that requires the FOIA office to obtain a document from any other office "complex" and, on that basis, categorizes virtually all FOIA requests as raising "unusual circumstances." As a result, DEA treats nearly every FOIA request it receives as exempt from the statute's processing and response deadlines.

4.      This policy and pattern or practice rests on a perversion of FOIA's plain language. The statute's "unusual circumstances" exception allows agencies to extend FOIA's time limits where there is a "need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request." 5 U.S.C. § 552(a)(6)(B)(iii). This exception, however, is limited. It applies only "to the extent reasonably necessary to the proper processing of the particular requests." *Id*. It does not apply as a matter of course, let alone to routine requests merely because they require the FOIA processing office to contact another office within the same agency (or another component of an agency).

5.      According to Defendants' motion to dismiss Plaintiffs' Original Complaint in this case, so long as a FOIA request requires an agency to search for records anywhere outside of the FOIA processing office *itself*, the "unusual circumstances" applies. This is preposterous. Under that reading of the statute, the "unusual circumstances" exception would cover virtually every FOIA request received by every agency across the federal bureaucracy. Whatever "unusual circumstances" includes, it cannot possibly mean the "usual circumstances." Yet, day in, day out, that is precisely how Defendants interpret and apply the "exception."

6.      Plaintiffs are attorneys and their clients who have submitted FOIA requests to DEA only to have the agency unlawfully ignore the statute's processing deadlines merely because the

requested records were not present at DEA's FOIA office. Plaintiffs seek a declaratory judgment that Defendants Merrick Garland, DOJ, Anne Milgram, and DEA have violated FOIA and an injunction prohibiting Defendants from applying the unlawful policy and pattern or practice and directing Defendants to take immediate corrective action to prevent future FOIA violations.

PARTIES AND STANDING

7.     Plaintiff AIMS Institute is an integrative oncology clinic located in Seattle, Washington, and dedicated to providing cutting-edge integrative medical care, research, and education in oncology, psychiatry, neurology, rehabilitation, pain management, and palliative care.

8.     Plaintiff Sunil Aggarwal is a physician with specialized expertise in palliative care located in Seattle, Washington. Co-founder and co-director of the AIMS, Dr. Aggarwal is licensed to practice medicine in the State of Washington and is in good standing. Dr. Aggarwal is a Fellow of the American Academy of Physical Medicine and Rehabilitation, board-certified in Physical Medicine and Rehabilitation and Hospice and Palliative Medicine, and the Immediate Past Chair of the Integrative Medicine Special Interest Group at the American Academy of Hospice and Palliative Medicine. Dr. Aggarwal serves as an expert in cannabis and psilocybin medical and religious use in county, state, and federal courts, and he has a special interest in cannabis and psychedelic integrative medicine and spiritual health and well-being. Dr. Aggarwal holds a DEA certificate of registration to prescribe controlled substances for drugs listed in Schedules II-IV of the Controlled Substances Act ("CSA"). Due to the nature of his work and position, Dr. Aggarwal has current and future needs to obtain information from DEA through FOIA.

9.     Plaintiff Kathryn Tucker is an attorney who has dedicated her career to advocating on behalf of terminally ill persons. Tucker is admitted to practice in Washington State, before all state and federal courts in Washington, the United States Courts of Appeals for the Ninth and Second Circuits, and the Supreme Court of the United States. She is Director of Advocacy at the

National Psychedelics Association and regularly works with clients in the controlled and psychedelic substances space. Due to the nature of her work, Tucker has current and future needs to obtain information from DEA through FOIA.

10.     Plaintiff Matthew C. Zorn is an attorney whose residence and principal place of business are in this District. Zorn regularly works with clients in the controlled substances space and has active matters pending before DEA. Zorn is also a journalist who publishes articles on controlled substances. He intends to continue to use FOIA to seek government documents related to drug policy to facilitate his work as an attorney and journalist.

11.     Defendant Merrick Garland is the United States Attorney General. He is responsible for overseeing DOJ's compliance with federal laws and regulations, including those at issue in this case.

12.     Defendant Anne Milgram is the Administrator of DEA. She is responsible for DEA's compliance with federal laws and regulations, including those at issue in this case.

13.     DOJ is an agency within the meaning of 5 U.S.C. § 552(f) and the parent department to DEA.

14.     DEA is an agency within the meaning of 5 U.S.C. § 552(f) and a component of DOJ.

### JURISDICTION AND VENUE

15.     This action arises under the laws and Constitution of the United States. The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

16.     Venue is appropriate in this District. 28 U.S.C. § 1391(e).

### FACTS GIVING RISE TO THIS ACTION

### AIMS Institute Seeks DEA Guidance Regarding Federal Right To Try

17.     AIMS is an integrative oncology clinic that provides care to persons with advanced illness, including end-stage cancer. Many of these persons suffer from debilitating anxiety and depression. To mitigate patients' anxiety and depression, AIMS uses a variety of treatment modalities, including ketamine-assisted psychotherapy. Some patients, however, do not respond to therapy with conventional or even cutting-edge and somewhat-unconventional medications or modalities. Left untreated, this anxiety and depression can accelerate illness, reducing patients' already-short time to live and robbing them of peace and comfort in their final days.

18.     Dr. Aggarwal has closely followed ongoing clinical trials studying the investigational drug psilocybin as a tool for the relief of anxiety and depression in patients with life-threatening illnesses. Psilocybin has proven safe and effective in relieving anxiety and depression in this patient population. Indeed, clinical trials have shown that the relief provided is immediate, substantial, and sustained. In 2020, Dr. Aggarwal formed the professional medical opinion that at least some of his patients with advanced-stage cancer would benefit from access to psilocybin therapy and began looking for a legal way to facilitate that access.

19.     AIMS and Dr. Aggarwal, on advice of counsel, believe that state and federal Right-to-Try ("RTT") laws permit access to psilocybin for therapeutic use with terminally ill patients suffering debilitating anxiety and depression under certain conditions.

20.     In October 2020, Dr. Aggarwal and AIMS retained Tucker to interface with DEA to obtain access to psilocybin for therapeutic use with terminally ill patients under state and federal RTT laws.

21.     On January 15, 2021, Tucker submitted a letter on behalf of Dr. Aggarwal and AIMS to DEA's Regulatory Section. Ex. 1 (the "Tucker letter"). The Tucker letter provided background information about RTT and requested guidance regarding how DEA would

accommodate Dr. Aggarwal's and AIMS's request for access to psilocybin for therapeutic use with their terminally ill patients under RTT. Tucker followed up with the agency via e-mail on February 2nd and inquired whether, as an alternative solution, the agency might grant Dr. Aggarwal and AIMS an exemption from prosecution.

22.     DEA responded in a February 12th letter that disclaimed any authority to entertain a request for access. Ex. 2. Dr. Aggarwal, two of his terminally ill patients, and AIMS sought immediate judicial review of that determination. In their opening brief, petitioners explained that the plain language and structure of the CSA and the Federal Food, Drug, and Cosmetic Act compel DEA to accommodate their request under RTT.

23.     In response, the agency argued that its letter to Tucker was not final agency action subject to judicial review. The Government therefore asked the court to dismiss the case for lack of jurisdiction. And, to encourage dismissal, DEA invited petitioners "to petition the agency for a rescheduling."

24.     The Ninth Circuit accelerated the petition for review and held oral argument in September 2021. On January 31, 2022, the Ninth Circuit dismissed the petition on jurisdictional grounds as DEA requested, holding that DEA's response to the Tucker letter did not constitute final agency action subject to judicial review. *AIMS v. Garland*, 24 F.4th 1249 (9th Cir. 2022). The court did not reach the merits.

### Plaintiffs Petition DEA for Final Agency Action

25.     Days after the Ninth Circuit's decision in *AIMS v. Garland*, Dr. Aggarwal and AIMS submitted two administrative petitions to DEA requesting a final appealable decision on the merits.

26.     First, on February 2, 2022, Dr. Aggarwal and AIMS petitioned DEA to initiate proceedings to reschedule psilocybin from Schedule I to Schedule II—just as the agency had suggested in the Ninth Circuit litigation in arguing for dismissal. Ex. 3 (the "Rescheduling Petition").

27.     Second, Dr. Aggarwal and AIMS petitioned DEA for a waiver of or exemption from the CSA's registration requirements. Ex. 4. Repeating many of the arguments they had made nearly a year ago in *AIMS v. Garland*, Dr. Aggarwal and AIMS sought a waiver or exemption from the agency so they could access psilocybin for therapeutic use with their terminally ill patients under RTT.

28.     More than four months passed without the agency accepting the petitions for filing or even confirming that it had received them.

29.     Concerned that DEA was slow walking the processing of its petitions, AIMS sent a letter to Defendant Milgram on April 13th, explaining that more than two months had passed, and the agency had "not informed Petitioners whether their petition has been accepted for filing." Ex. 5. The April 13th letter notes that under DEA regulations applicable at the time, "[w]ithin a reasonable period of time after receipt" of a rescheduling petition, the Administrator "shall notify the petitioner of his acceptance or nonacceptance of the petition, and if not accepted, the reason therefor." 21 C.F.R. § 1308.43. AIMS further noted that in the past, accepting petitions never took more than two months. AIMS reiterated its request that DEA promptly—and in no event later than thirty days from the date of the correspondence—notify it of acceptance or non-acceptance of the rescheduling petition.

30.     DEA has not responded to the April 13th letter.

**Plaintiffs' FOIA Requests**

31.     Unable to confirm that DEA had accepted or even received either of their petitions, on March 31, 2022, Tucker, on behalf of AIMS and Dr. Aggarwal, filed targeted FOIA requests via e-mail (the "AIMS FOIA Request") seeking simply to confirm that the agency had received the petitions and to understand if it had commenced a decision-making process. A true and correct copy of the AIMS FOIA Request is attached as Exhibit 6.[2]

32.     The AIMS FOIA request is both narrow in scope and time limited. AIMS and Dr. Aggarwal request all copies of records, documents, communications, and e-mails related to (1) the rulemaking petition regarding "Rulemaking petition to reclassify psilocybin from a schedule I controlled substance to a Schedule II controlled substance" dated February 2, 2022, and (2) the request for waiver regarding "Access to Psilocybin for Limited Therapeutic Use Under State and Federal Right to Try Laws" dated February 10, 2022. They further limit their request to records created after February 1, 2022.

33.     FOIA's 20-day limit for agencies to respond to such requests passed without AIMS and Dr. Aggarwal hearing from DEA. Accordingly, on May 2, 2022, Tucker followed up via e-mail, stating "per below, a FOIA request was submitted on 3/31, generating the reply send from DEA offices on that same date. More than 20 business days have elapsed, and we have yet to receive any reply. Can you advise status?"

34.     This May 2nd e-mail prompted DEA to send AIMS and Dr. Aggarwal a boilerplate e-mail confirming receipt of the AIMS FOIA Request, advising them that DEA considered the targeted request to raise "unusual circumstances," and deeming it "complex." According to DEA,

---

[2]    Mere days after the AIMS FOIA Request, on April 4th, DEA notified Plaintiff Zorn in reference to a different FOIA request that "to better serve [its] requester community," DEA would "no longer accept FOIA/PA requests via e-mail."

the AIMS FOIA Request raised "unusual circumstances" because it required a search of another office; and because the AIMS FOIA Request was allegedly "complex," the agency advised that it would take more than a month to respond even though DEA had not yet confirmed whether any documents within the scope of the request existed:

> The records you seek require searches in another office or offices, and so your request falls within "unusual circumstances." *See* 5 U.S.C. § 552(a)(6)(B)(i)-(iii). Because of these unusual circumstances, we are extending the time limit to respond to your request beyond the ten additional days provided by the statute. We have not yet completed a search to determine whether there are records within the scope of your request. The time needed to process your request will necessarily depend on the complexity of our records search and on the volume and complexity of any records located. For your information, this office assigns incoming requests to one of three tracks: simple, complex, or expedited. Each request is then handled on a first-in, first-out basis in relation to other requests in the same track. Simple requests usually receive a response in approximately one month, whereas complex requests necessarily take longer. At this time, your request has been assigned to the complex track. You may wish to narrow the scope of your request to limit the number of potentially responsive records or agree to an alternative time frame for processing, should records be located; or you may wish to await the completion of our records search to discuss either of these options.

35.    On May 31, 2022, Tucker submitted a follow-up FOIA request for "All records related to the receipt and processing of [the AIMS FOIA Request]. (February 1, 2022, and the present)." These records would, of course, be located within the FOIA office processing the request and thus would not be subject to DEA's unlawful policy and pattern or practice. DEA did not timely provide a response to this follow-up FOIA request.

36.    On June 2nd, Tucker reached out to DOJ's counsel in *AIMS v. Garland.* She explained DEA's "lack of any response to either of our submittals." Tucker also explained that she had filed a FOIA request to determine what had happened to AIMS's and Dr. Aggarwal's petitions. Finally, she explained that, despite its limited nature, DEA had categorized this request as "complex" and therefore not subject to FOIA's timing requirements. DOJ's counsel responded that he would follow up with DEA.

37.     On June 14th, Tucker reached out to DOJ's counsel in *AIMS* again. The next day, DOJ's counsel confirmed that he had consulted with DEA and understood that the agency had received AIMS's and Dr. Aggarwal's petitions and that they were "currently under review." Yet, three months after the FOIA request, DEA still had not responded—not even to confirm that it possesses the requested documents.

38.     On July 13, 2022, DEA finally responded to Tucker's follow-up FOIA request, notifying her that DEA was *administratively closing* the request for the processing notes because the agency is allegedly still processing the AIMS FOIA Request, which Tucker submitted months earlier. Ex. 7. DEA further stated that when the AIMS FOIA Request is completed, Tucker should "feel free to resubmit [her] request."

39.     In other words, according to the agency, because it had delayed processing the AIMS FOIA Request due to "unusual circumstances," it could not provide its processing notes showing why it deemed the rather simple request complex or why the request raises unusual circumstances. Unsurprisingly, DEA's July 13th letter cites no statute or regulation permitting the agency to administratively close a FOIA request under these circumstances, and Plaintiffs are aware of none.

40.     On August 26, 2022, (after this lawsuit had already been filed) DEA reconsidered its extraordinary position on the processing notes request. Tucker did not ask for reconsideration. The agency did so *sua sponte*, three days before filing its motion to dismiss which states, among other things, that Plaintiffs had failed to exhaust administrative remedies.[3]

---

[3]     Exhaustion of a policy and pattern or practice claim is not required. And even if it were, Plaintiffs' allegation that DEA failed to comply with the statutory FOIA timelines would render the government's objection a nonstarter. *See* 5 U.S.C. § 552(a)(6)(C)(i) (whenever agency fails to comply with applicable time limits, a person shall be deemed to have exhausted administrative

41.     Since early April, Plaintiff Zorn has submitted 9 FOIA requests[4] to DEA seeking information relevant to an unrelated administrative proceeding that was pending before DEA (the "Five Tryptamines" rulemaking). DEA has tagged each as raising "unusual circumstances," including one seeking e-mails involving a single person and five obscure search terms. No request—not even one seeking a *single judicial record*—escaped automatic categorization as raising "unusual circumstances," and none prompted DEA to include even an estimated timeline for response. For example, on April 22, 2022, Zorn requested:

> A copy of the transcript of proceedings of the January 28 through January 30, 1975, hearing before Administrative Law Judge (ALJ) Parker. *See* 40 Fed. Reg. 44163 at 44164 (Sept. 25, 1975). (Date Range for Record Search: From 01/01/1975 To 01/30/1975)

On April 28, 2022, the agency claimed this request (number 22-00563-F) for a single transcript raised "unusual circumstances," deemed it "complex," and advised that a response would "necessarily take longer" than a month.

42.     The most egregious example of DEA's FOIA abuse and misconduct arose in connection with FOIA requests Zorn made on behalf of clients in an administrative rulemaking proceeding before DEA in which Zorn was counsel of record.

43.     On April 4th, Zorn submitted a FOIA request (request number 22-00488-F) seeking records that DEA relied on for a technical analysis published in the Federal Register supporting

---

remedies). On August 31, 2022, DEA informed Tucker that to process the AIMS FOIA Request, a review fee of $4,100 would need to be paid up front. This equals around 10 full days of review time. Plaintiffs are unaware of how records related to a specific rulemaking petition and records related to a request for waiver could generate so many documents to warrant such a fee. Issues with review fee calculation are discussed further below.

[4]     Requests No. 22-00488-F, 22-00560-F, 22-00563-F, 22-000577-F, 22-00580-F, 22-00585-F, 22-00806-F, 22-00845-F, and 22-01012-F. Since the filing of the lawsuit, DEA has resolved some of these requests. In a few cases, no responsive records existed.

the placement of five chemicals into Schedule I. The technical analysis cites and relies on over

two dozen unpublished drug discrimination studies done under a government contract:

Elsken C and Forster MJ (2006a). 4-Hydroxy-N,N-diisopropyltryptamine HCl: Time course (8-h) mouse locomotor activity test. Contract No. N01DA-2-8822.

Elsken C and Forster MJ (2006b). 5-Methoxy-alpha-methyltryptamine HCl: Time course (8-h) mouse locomotor activity test. Contract No. N01DA-2-8822.

44.     To inform his advocacy, Zorn requested the referenced studies:

The Spokane Medical Examiner's Office report discussed on page 14 of the DEA
Report; copies of all non-book references cited on pages 22 to 28 of the DEA
Report. 3; copies of the data review document sent to the Assistant Secretary for
Health and Human Services (HHS) related to the Five Tryptamines discussed on
page 2 of the DEA Report; for each of the Five Tryptamines, all documents relating
to drug seizures, medical reports, and anecdotal reports relied on in the HHS
Evaluations or DEA Report; all copies of communications or documents showing
that "DEA has confirmed with HHS that their 2012 statements are still applicable"
in the DEA Report on page 5; and all documents and evidence discussed on page
17 (Factor 4) or page 18 (Date Range for Record Search: From 1/1/2008 To
1/16/2022).

45.     On information and belief, these requested records were not difficult for DEA to

locate access. Indeed, on information and belief, they were in DEA's rulemaking file.

46.     Moreover, in an April 4th e-mail to DEA's FOIA liaison, DEA.FOIA@dea.gov,

Zorn notified the agency that he needed the records for an ongoing administrative proceeding

against DEA and **specifically identified agency counsel who had possession, custody, or control**

**of the records**. Zorn copied that counsel on the communication. In other words, Zorn told the

agency exactly where to go to retrieve the records. Collecting and producing these records, which

DEA had already collected as part of a public administrative process, could not reasonably have

taken more than several days. Notwithstanding Zorn's assistance, on April 15, 2022, the agency

marked the request as raising "unusual circumstances" and delayed.

47.     Confused as to how the agency deemed every FOIA request as raising "unusual circumstances," including those described above, Zorn called DEA's FOIA officer on May 11th— the same day he received three separate notices marking requests as raising "unusual circumstances"—to inquire about the agency's process. The FOIA officer explained that it was "DEA policy" to mark *all* incoming FOIA requests that required contacting any office within DEA other than the FOIA office as raising "unusual circumstances." In other words, if a request seeks any record that isn't coincidentally in the processing office itself, DEA deems it per se "unusual" and "complex."

48.     What's more, on information and belief, DEA had collected the records responsive to Zorn's April 4th request by not later than March 28th. In the course of representing his clients in the ongoing administrative rulemaking proceeding, Zorn eventually received redacted versions of the documents he had requested under FOIA. Metadata from that disclosure shows that by *March 28, 2022*, DEA had collected most of the requested documents.

49.     Zorn followed up with agency counsel to confirm receipt of the agency's disclosure and raise concerns about the technical papers the agency had not produced. Zorn then reminded the agency that he currently "ha[s] outstanding FOIA requests for these exact documents. Unless the redacted information falls within a FOIA exemption, the redaction is improper."

50.     The very next morning, DEA remitted a letter to Zorn informing him that a search for the records (most of which DEA had already produced to him) had been completed. The letter decision informs Zorn that to process his request, Zorn would need to send the agency *$6,800.00* by check or money order up-front in advance for review time, which includes "processing any records for disclosure" such as "redacting the records and asserting the appropriate FOIA exemption." In other words, the agency demanded that Zorn pay thousands of dollars for a set of

records nearly **identical to those the agency had just disclosed to Zorn a week earlier in the context of the pending administrative proceeding**. DEA emphasized that it would be unable to continue processing the request until Zorn agreed to pay the fee.

51.     Zorn called the number for the FOIA representative to alert him to the situation. Rather than receive a representative, he twice received the message: "Your call could not be completed as dialed. Please check the number and dial again." The line then promptly disconnected. Zorn then called the FOIA Public Liaison twice. Both calls went to voicemail.

52.     On April 29, 2022, Zorn submitted a FOIA request (number 22-00577-F) seeking the government contracts underlying the drug discrimination studies that DEA cited in the ongoing administrative rulemaking proceeding. On May 11, 2022, that request, too, was deemed to raise "unusual circumstances" and labeled "complex."

53.     As yet another example of DEA's policy and pattern or practice of flagrant FOIA abuse, on July 9, 2022, Zorn submitted a FOIA request (number 22-00845-F) seeking **one** publicly presented DEA poster and **one** seminar presentation made by a DEA official. In his request, Zorn identified the specific custodian of the records:

- Carbonaro TM, (2021) Evaluating Drug Abuse Liability: Applying Pharmacology Data to Drug Scheduling Actions. Oral Presentation at University of Arkansas for Medical Sciences. (Seminar presentation)

- Carbonaro TM, Tella SR, Boos TL (2022). The Controlled Substances Act Regulations on schedule I researcher registrations and the need to investigate new substances of abuse. Poster to be presented at 84th annual College on Problems of Drug Dependence Meeting.

54.     Based on its past practices, Zorn anticipated that DEA would unlawfully mark this simple FOIA request as unusual and complex to evade the statute's time limits. He therefore attempted to preempt DEA's inevitable invocation of its unlawful policy and pattern or practice by adding the following to the body of the FOIA request:

Teresa Carbonaro has these records. They are two documents. This request is not complex and does not raise unusual circumstances. I need these documents for a hearing.[5]

55.     Nonetheless—and perhaps unsurprisingly—on July 12, 2022, DEA responded that Zorn's request, which sought a mere ***two documents,*** was "complex" and raised "unusual circumstances."

56.     Illustrating that the request had not raised "unusual circumstances" and certainly was not "complex," DEA recently responded to the request *and* produced the records to Zorn—a mere 46 pages—on August 9, 2022.

57.     And yet, even in light of this lawsuit, the unlawful pattern, practice, and policy continues. Following the filing of the Original Complaint and the Government's Motion to Dismiss, Zorn submitted an additional FOIA request (22-01012-F) on August 29, 2022, for "All 21 U.S.C. § 811 petitions to reschedule marijuana. (Date Range for Record Search: From 01/01/2021 To 08/29/2022)." The next morning, Zorn received the same form e-mail he had received in response to every one of his prior FOIA requests—that his request raised "unusual circumstances." A true and correct copy of DEA's response is attached as Exhibit 8.

58.     Lest there be doubt about an ongoing agency policy, pattern and/or practice, DEA has responded to Mr. Pennington's FOIA requests similarly. He has made multiple FOIA requests

---

[5]   Zorn tried, without success, to obtain these public records within the ongoing administrative rulemaking proceeding. DEA has refused to disclose these types of records (such as DEA contracts with scientists conducting the underlying technical studies), and the presiding Administrative Law Judge presiding declined to order further disclosure. Notably, FOIA is the preferred discovery tool for formal rulemaking. Charles H. Koch Jr., *Discovery in Rulemaking*, 1977 Duke L.J. 295 at 330 (1977) ("[I]f a rulemaking participant desires information contained in a government file, the FOIA may be the best available discovery tool."). And the purpose of the FOIA's time limits is to permit "prompt access to agency files," to facilitate public access to agency records in (among other contexts) adjudications and hearings. In July 2022, after the filing of the Original Complaint, DEA withdrew the proposed rule.

of DEA, and all have been deemed "complex" and marked as "raising unusual circumstances" – including following Defendants' motion to dismiss.

59.      This further demonstrates (1) there *is* a policy in place and (2) the unlawful policy will continue unabated absent court intervention. Even after Defendants filed their motion to dismiss arguing that these allegations "do not sufficiently establish that DEA has a policy, pattern, or practice," Defendants' policy of disregarding FOIA requirements to manufacture unlawful delays in responding to FOIA requests persists.

60.      To repeat, according to DEA, all or nearly all FOIA requests the agency receives appear to be "complex" and raise "unusual circumstances." What a "simple" request raising "usual circumstances" entails (still) remains to be seen.

**DEA's Diversion of Legitimate FOIA Requests Constitutes a Policy and Pattern or Practice**

61.      FOIA data reveals that DEA has been labeling more and more FOIA requests "complex" over time. According to FOIA.gov, in 2021, DEA took an average of 12 working days to process "simple requests." Complex requests, by contrast, took the agency an average of 170 days—14 times longer—to process. In 2019, DEA processed 449 "simple" requests and handled 79 percent of them within 20 business days. By contrast, DEA processed 631 "complex" requests during the same period and handled just 17 percent of them within 20 business days. In 2020 and 2021, DEA's load of "simple" requests dwindled to just 169, while its "complex" request docket swelled to over 1,130.

62.      In other words, over the past two years, DEA has processed 60 percent fewer "simple" requests, while its docket of "complex" requests has doubled. Either filers are submitting increasingly "complex" requests over the past two years, or, far more likely, DEA/DOJ is engaged

in a policy and pattern or practice of categorizing "simple" FOIA requests as "complex"—a systemic evasion of its basic public disclosure obligations under FOIA.

63.     The unlawful DOJ policy can be inferred by the allegations herein; it has been communicated to Zorn by a DEA FOIA officer; and it is stated in the Government's Motion to Dismiss. Moreover, this unlawful interpretation underlying the policy is on Defendant DOJ's website.[6] According to DOJ, unusual circumstances exist any time a DOJ component "needs to collect responsive records from separate offices." As explained below, this is an unlawful interpretation of the statutory language.

64.     Since the filing of this lawsuit, Plaintiffs have uncovered another bad-faith unlawful FOIA practice: when DEA does respond, it overcharges for review time and requires requesters to pay enormous fees up front.

65.     For example, on September 16, 2022, DEA returned its response for Request No. 22-00560-F requesting "all filings from the proceedings in Administrative Law Judge (ALJ) Docket No. 10-46 described in 76 Fed. Reg. 77329 (Docket No. DEA-333)."[7] The docket pertains to a public rulemaking proceeding controlling a substance, carisoprodol, and is an important (if not the only) modern precedent for § 811(a) rulemaking proceedings. Nonetheless, the documents from the proceeding are not publicly available. Zorn made this request for public agency

---

[6]         https://www.justice.gov/oip/department-justice-freedom-information-act-reference-guide#appeals; https://www.justice.gov/oip/page/file/1324396/download#page=4.

[7]     Notably, records from DEA administrative proceedings are rarely publicly available. There is nothing like PACER to document and archive DEA filings. Electronic filings do not occur on a public docket. They occur by sending information to an agency e-mail inbox. Thus, the only way a litigant outside the agency can access records from past or ongoing DEA proceedings to which they were not a party, other than what the agency publishes in the Federal Register, is by using FOIA. The agency has access to its own records, however.

rulemaking records months ago to inform his advocacy in the Five Tryptamines § 811(a) rulemaking proceedings.

66.     The response from DEA's Chief FOIA Officer demands payment of **$41,960** for the agency to review approximately 5,000 pages of quintessentially public records. Ex. 9.[8] At $40/hr, this amounts to almost 1,050 hours of work. The average reader can read 5,000 pages in less than 150 hours. In addition, there is no FOIA exception that could plausibly apply to most of these rulemaking records.[9]   Considering all these factors, the agency's estimate is implausible. In other words, DEA will not release these records associated with a public rulemaking unless some member of the public pays the agency the price of a new car and then some—***up front***.

67.     This pay-up front FOIA policy and agency inflation of fees is outrageous. FOIA is not a piggybank for federal agencies. Due process and access to agency precedent and judicial records are not pay for play. A functioning justice system cannot charge attorneys or litigants the price of a new car (and then some) just to access to judicial records from a public rulemaking so that the party or attorney can zealously advocate before the agency.

68.     Absent court intervention, the unlawful policy and pattern or practice of egregious FOIA abuse by DOJ and components, such as DEA, will continue and will continue to cause Plaintiffs and the public significant and irreparable harm.

### FIRST CAUSE OF ACTION
### (FOIA—Unlawful Policy, Pattern, or Practice)

69.     Plaintiffs incorporate the previously alleged paragraphs by reference.

---

[8]     In response to another request, DEA required up-front payment of $18,440 to review 2,190 pages. Effectively, DEA charges around $8.50 a page for review. An average document reviewer can review around 1,400 pages per day for relevance and privilege.

[9]     Even if the trade secret exception might implicate some records, it could not possibly justify a $41,960 review fee to examine.

70.     Defendants' policy and pattern or practice of marking FOIA requests as "complex" and raising "unusual circumstances" as described herein is contrary to law and the principles announced in the Garland Memo.

71.     Under 21 U.S.C. § 552(a)(6)(B)(iii)(1), "unusual circumstances" means "the need to search for and collect the requested records from field facilities or ***other establishments that are separate from the office*** processing the request" and can be invoked "only to the extent reasonably necessary to the proper processing of the particular requests." DOJ (and its component DEA) has adopted a policy and pattern or practice with respect to this provision that is unlawful in at least four ways.

72.     First, the agency unlawfully labels incoming requests as raising "unusual circumstances" any time they require the processing office to contact any other office.[10] The "unusual circumstances" exception does not apply so indiscriminately. Rather, FOIA's text, structure, and legislative history demonstrate that the exception applies only when the request implicates the need to search for and collect records from *other establishments that are separate from the office*, such as field facilities.[11] DOJ's contrary reading vitiates the exception, since nearly all FOIA requests require the processing office to request records from some other office.

---

[10]   That this is Defendants' pattern, practice, or policy does not appear to be disputed. The government's motion to dismiss defends the view that the unusual circumstances exception any time a record cannot be "located in FOIA's processing office." Therefore, the only dispute is whether Defendants' practice proceeds under a lawful interpretation of the statute.

[11]   *See* S. Rep. 93-854 (May 16, 1974) ("The need to search for and collect records from field facilities or 'other establishments that are separate from the office processing the request' does not permit an extension while such an office obtains the records from the agency's own file, records, or administrative division when located in the same city as the processing office. Rather this is intended to cover the collection of records from other cities, or from a federal records center or other facility which is not part of the agency.").

73.     Indeed, by Defendants' read of the statute, so long as the FOIA processing office has few or no records, an agency never has to comply with the statutory time limits. An agency could easily guarantee that it would *never* face "unusual circumstances" simply by making its "FOIA processing office" a single 5x5 foot room, staffing it with a single employee, and mandating that no government records ever enter that particular room. Indeed, under Defendants' interpretation, even records located within a larger FOIA office would raise unusual circumstances as long as they were not physically in the FOIA processing office. This is plainly not what the statute allows, and the fact that Defendants vigorously defend such an outlandish policy in their motion to dismiss confirms that without judicial intervention, they will continue to act unlawfully.

74.     Second, Defendants' policy and pattern or practice of invoking the exception to defer rote, targeted requests is unlawful because it is not "reasonably necessary to the proper processing of [those] particular requests." The statute requires agencies to consider the particular request before invoking the exception and to tailor its use of the exception "to the extent reasonably necessary."

75.     Third, even assuming the incoming requests described above raised "unusual circumstances" (they did not), Defendants' policy and pattern or practice is unlawful because the agency does not "set[] forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i). DEA's form e-mails provide no date on which a determination is expected to be dispatched. Presumably, the agency acts under § 552(a)(6)(B)(ii), which, "[w]ith respect to a request for which written notice under clause (i) extends the time limits prescribed under clause (i) of subparagraph (A)," permits the agency to

> notify the person making the request if the request cannot be processed within the
> time limit specified in that clause and shall provide the person an opportunity to

limit the scope of the request so that it may be processed within that time limit or
an opportunity to arrange with the agency an alternative time frame for processing
the request or a modified request.

By its terms, this subsection permits the agency to extend the response date past ten working days

only after processing the request. DEA, however, invokes this exception *before* it has even

completed a search to determine whether there are records within the scope of the request.

76.     Fourth, to deny records to the public, DEA denies access to records by overcharging

requestors review fees and requiring requestors to pay up front.

77.     These flagrant FOIA violations are not isolated incidents but constitute a policy and

pattern or practice of disregarding FOIA's most basic requirements.

78.     Plaintiffs have been personally harmed by the unlawful policy and pattern or

practice described herein.

79.     Defendants' unlawful policy and pattern or practice will impair and/or will likely

impair Plaintiffs' lawful access to information under FOIA in the future.

### SECOND CAUSE OF ACTION
### (Fifth Amendment – Procedural Due Process)

80.     Plaintiffs incorporate the previously alleged paragraphs by reference.

81.     No person shall "be deprived of life, liberty, or property, without due process of

law." U.S. Const. amend. V.

82.     Defendants' policies and practices described above violate the Fifth Amendment of

the United States Constitution. Specifically, DEA's practice of not making judicial precedents,

records from agency proceedings, and associated documents publicly available; unlawfully

delaying responding to FOIA requests for those documents; and then charging requestors

inordinate fees to get access to those records—when the agency itself has prompt and unfettered

access to such records—violates due process. Among other things, it gives the agency an unfair, institutional advantage in its administrative and enforcement proceedings before the agency.

## ATTORNEY FEES

83.     Plaintiffs seek reasonable attorney fees as provided for in statute. *See* 5 U.S.C. § 552(a)(4)(E), 28 U.S.C. § 2412.

## PRAYER FOR RELIEF

For these reasons, Plaintiffs respectfully request that the Court:

1.  Declare and hold Defendants' policy and pattern or practice unlawful and contrary to FOIA;

2.  Declare that 5 U.S.C. § 552(a)(6)(B)(iii) does not permit an agency under 5 U.S.C. § 552(f) to deem all or substantially all requests that require the office processing a FOIA request to contact another office as presenting "unusual circumstances";

3.  Permanently enjoin Attorney General Garland, the entire Department of Justice, Administrator Milgram, and the Drug Enforcement Administration from continuing their unlawful policy and pattern or practice of distorting the statutory language of FOIA to manufacture delay in responding to requests;

4.  Order the Department of Justice to implement a corrective action plan to prevent and correct Department of Justice and Drug Enforcement Administration FOIA abuse and unconstitutional conduct; and

5.  Order all other relief deemed just and proper.

Dated: September 19, 2022                    Respectfully submitted,


                                             /s/ Shane Pennington
                                             Shane Pennington
                                             VICENTE SEDERBERG LLP
                                             1115 Broadway, 12th Floor
                                             New York, NY 10010
                                             T: (917) 338-5455
                                             F: (303) 860-4505
                                             s.pennington@vicentesederberg.com

                                             Kathryn L. Tucker, JD
                                             NATIONAL PSYCHEDELIC ASSOCIATION
                                             453 Manor Place, N.W., Suite w
                                             Washington, D.C. 20010
                                             T: (206) 595-0097
                                             kathryn@yournpa.org

                                             Matthew C. Zorn
                                             YETTER COLEMAN LLP
                                             811 Main Street, Suite 4100
                                             Houston, TX 77002
                                             T: (713) 632-8000
                                             F: (713) 632-8002
                                             mzorn@yettercoleman.com


                                             ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Shane Pennington*
Shane Pennington