# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

AIMS INSTITUTE, PLLC, *et al.*,

*Plaintiffs*,

v.

MERRICK GARLAND, *et al.*,

*Defendants.*

Civil Action No. H-22-02396

## DEFENDANTS' SECOND MOTION TO DISMISS

Defendants, Merrick Garland, United States Attorney General, *et al.*, move to dismiss Plaintiffs' Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). As discussed below, Plaintiffs fail to plead a valid FOIA claim and procedural due process claim. For these reasons, the Amended Complaint should be dismissed.

## I.  INTRODUCTION

Plaintiffs bring before this Court a type of claim that has never been acknowledged or addressed by the Fifth Circuit: a policy, pattern, or practice ("PPP") claim under the Freedom of Information Action ("FOIA"). Plaintiffs do not seek records that they believe are being wrongfully withheld in response to specific FOIA requests. Rather, they request this Court to enjoin the Defendants from engaging in policies, patterns, or practices that they believe are not compliant with FOIA's procedures. If this request is granted, it would open the floodgates for plaintiffs to file lawsuits based on perceived repeated instances of agency non-compliance with FOIA's procedures—without any substantive records being at issue and without any administrative remedies being exhausted. This Court should not countenance such an extreme request.

The Court should dismiss the claims against the named Defendants[1] for several reasons:

- First, the alleged areas of DEA's non-compliance with FOIA's procedure do not sufficiently support a FOIA PPP claim. The Fifth Circuit has never recognized a FOIA PPP claim, yet Plaintiffs urge this Court to expand the viability of such a claim past even what the D.C. Circuit has accepted by seeking injunction of perceived procedural shortcomings that do not fundamentally affect a requester's ability to receive non-exempt records in a prompt manner.

- Second, the Amended Complaint fails to plead facts sufficient to support a FOIA PPP claim that DEA wrongfully claims "unusual circumstances" when needing to contact another office to search for records. Am. Compl. ¶¶ 72-74.  Such a policy would be proper and, even if not, the complaint fails to allege sufficiently that DEA wrongfully implements such a policy.

- Third, the Amended Complaint fails to plead facts sufficient to support a FOIA PPP claim that DEA wrongfully, when asserting "unusual circumstances," fails to provide an estimated date upon which a determination of the request is expected. Am. Compl. ¶ 75.

- Fourth, the Amended Complaint fails to plead facts sufficient to support a FOIA PPP claim that DEA wrongfully "denies access to records by overcharging requestors review fees and requiring [them] to pay up front." Am. Compl. ¶ 76.

- Fifth, the Amended Complaint's claim that DEA's alleged FOIA practices "violate[] due process" because "[a]mong other things, its gives the agency an unfair . . . advantage" in unnamed "administrative and enforcement proceedings" is frivolous. Am. Compl. ¶ 82.

---

[1] The Department of Justice ("DOJ") is the only proper defendant in this litigation. FOIA provides a cause of action against federal agencies only. *See Petrus v. Bowen*, 833 F.2d 581, 582-83 (5th Cir. 1987) (affirming dismissal of FOIA claims against an agency head). The definition of "agency" under FOIA extends only to agencies and not to agency components. *See Blackwell v. FBI*, 680 F. Supp. 2d 79, 86 n. 1 (D.D.C. 2010); *see* 5 U.S.C. § 552(f)(1). Consequently, the Court should dismiss the Attorney General, the Administrator, and DEA from this FOIA suit.

## II. BACKGROUND

### A. The FOIA requests

1. <u>The Tucker Request</u>

On March 31, 2022, Plaintiff Kathryn Tucker, an attorney, submitted a FOIA request seeking records related to her clients' Rescheduling Petition and Exemption Petition from February 2022 (the "March 31 Request"). Am. Compl. ¶¶ 26-27, 31; Ex. 6. At some point after May 2, DEA responded that the request raised "unusual circumstances" and was "complex." *Id.* at ¶ 34. The Amended Complaint quotes the response as follows:

> The records you seek require searches in another office or offices, and so your request falls within "unusual circumstances." *See* 5 U.S.C. § 552(a)(6)(B)(i)-(iii). Because of these unusual circumstances, we are extending the time limit to respond to your request beyond the ten additional days provided by the statute. We have not yet completed a search to determine whether there are records within the scope of your request. The time needed to process your request will necessarily depend on the complexity of our records search and on the volume and complexity of any records located. For your information, this office assigns incoming requests to one of three tracks: simple, complex, or expedited. Each request is then handled on a first-in, first-out basis in relation to other requests in the same track. Simple requests usually receive a response in approximately one month, whereas complex requests necessarily take longer. At this time, your request has been assigned to the complex track. You may wish to narrow the scope of your request to limit the number of potentially responsive records or agree to an alternative time frame for processing, should records be located; or you may wish to await the completion of our records search to discuss either of these options.

*Id.* On August 31, 2022, DEA informed Tucker that she needed to submit a review fee of $4,100 up front to process the March 31 Request. *Id.* at ¶ 40 n. 3.[2]

2. <u>The Zorn Requests</u>

---

[2] The Tucker request was not the subject of any of the claimed prohibited PPPs in the Amended Complaint and therefore does not support Plaintiffs' claims. Am. Compl. at ¶ 35

3

Plaintiff Matthew Zorn, also an attorney, has allegedly "submitted [nine] FOIA requests to DEA seeking information relevant to an unrelated administrative proceeding that was pending before DEA. . ." *Id.* at ¶¶ 10, 41. Since the filing of this lawsuit on July 19, 2022, DEA has resolved "some of these [nine] requests." *Id.* at ¶ 41 n. 4.

DEA deemed each of Zorn's requests as raising "unusual circumstances" and did not provide an estimated timeline for responding to them. *Id.* at ¶ 41. The Amended Complaint provides some information about the requests at issue:

- A request numbered 22-00563-F for a copy of a transcript from 1975 before an Administrative Law Judge. *Id.* at ¶ 41.

- A request "seeking e-mails involving a single person and five obscure search terms." *Id.* at ¶ 41.

- An April 4 request numbered 22-00488-F seeking records that DEA relied on for a technical analysis published in the Federal Register supporting the placement of five chemicals into Schedule I, claiming that it "relies on over two dozen unpublished drug discrimination studies done under a government contract." *Id.* at ¶ 43. Upon information and belief, this information is in "DEA's rulemaking file." *Id.* at ¶ 45. Zorn "notified the agency that he needed the records for an ongoing administrative proceeding against DEA and specifically identified agency counsel who had possession, custody, or control of the records." *Id.* at ¶ 46. DEA, "upon information and belief," had already collected the records as part of the "public administrative process" by March 28. *Id.* at ¶¶ 46, 48. DEA then stated that Zorn would need to remit $6,800 to process the request (or requests) for records "nearly identical" to those disclosed to Zorn a week earlier in the pending administrative proceeding. *Id.* at ¶ 50.

- An April 29 request numbered 22-00577-F "seeking the government contracts underlying the drug discrimination studies that DEA cited in the ongoing administrative rulemaking proceeding." *Id.* at ¶ 52.

- A July 9 request numbered 22-00845-F "seeking one publicly presented DEA poster and one seminar presentation made by a DEA official.'" *Id.* at ¶ 53. On July 12, 2022, DEA allegedly responded that Zorn's request was "complex" and "raised unusual circumstances." *Id.* at ¶ 55. On August 9, 2022, DEA produced the records. *Id.* at ¶ 56.

- An August 29 request numbered 22-01012-F for "[a]ll 21 U.S.C. § 811 petitions to reschedule marijuana" from January 1, 2021, to August 29, 2022. *Id.* at ¶ 57.

- A request numbered 22-00560-F for "all filings from the proceedings in Administrative Law Judge (ALJ) Docket No. 10-46 described in 76 Fed. Reg. 77329 (Docket No. DEA-333)." *Id.* at ¶ 65. The request "pertains to a public rulemaking proceeding controlling a substance, carisoprodol, and is an important (if not the only) modern precedent for § 811(a) rulemaking proceedings." *Id.* The requested documents are not publicly available except via FOIA. *Id.* at ¶ 65 n. 7. Zorn requested the records to "inform his advocacy in the Five Tryptamines § 811(a) rulemaking proceedings." *Id.* at ¶ 65. On September 16, DEA responded demanding payment of $41,960 in advance for the agency to review approximately 5,000 pages of records. *Id.* at ¶ 66.

Allegedly, Zorn called "DEA's FOIA officer" on May 11th to inquire about the agency's process. *Id.* at ¶ 47. The FOIA officer "explained that it was 'DEA policy' to mark all incoming FOIA requests that required contacting any office within DEA other than the FOIA office as raising 'unusual circumstances.'" *Id.* The Amended Complaint further alleges that DEA has processed sixty percent fewer "simple" requests in the past two years while its docket of "complex" cases has nearly doubled. *Id.* at ¶¶ 61-62. Finally, the Amended Complaint claims, without elaboration, that DEA has deemed "complex" and raising "unusual circumstances" all of the "multiple" FOIA requests submitted by counsel of record Pennington. Am. Compl. ¶ 58.

**B. The FOIA Process**

The Amended Complaint premises its policy, pattern, or practice claim on the DEA's compliance, or not, with FOIA procedures. Consequently, it important to lay out the FOIA process.

1. Relevant FOIA Processes Related to Timing

Under FOIA, agencies must make "promptly available" to any person records upon submission of a proper request. 5 U.S.C. § 552(a)(3)(A). As a default matter, FOIA directs agencies to "determine within 20 [business] days. . . after the receipt of any such request whether to comply with such request" and then notify the requester of such determination. 5 U.S.C. § 552(a)(6)(A)(i).

The twenty business day determination "timeline is not absolute." *Citizens for Responsibility & Ethics in Wash. (CREW) v. Fed. Election Comm'n,* 711 F.3d 180, 184 (D.C. Cir. 2013). It is instead only a "default." *Id.* at 189. After all, "it would be a practical impossibility for agencies to process all FOIA requests completely within twenty days." *Id.*

In "unusual circumstances," an agency can extend the twenty-day time limit for processing a FOIA request by written notice to the requester "setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i). "[U]nusual circumstances" includes, *inter alia,* the need "to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request." 5 U.S.C. § 552(a)(6)(B)(iii). If the required extension exceeds ten days, the agency must allow the requester an opportunity to modify his or her request, or to arrange for an alternative time frame for completion of the agency's processing. 5 U.S.C. § 552(a)(6)(B)(ii). Consequently, FOIA contemplates that at times determinations will not be made within thirty business days.

A requester receiving a timely and adverse determination in response to a request must, generally before filing suit, appeal it administratively within ninety days. *Voinche v. F.B.I.*, 999 F.2d 962, 963 (5th Cir. 1993) (*per curiam*) ("[FOIA] requires exhaustion of administrative remedies prior to seeking judicial review"); 28 C.F.R. § 16.8(e). However, if the agency fails to adhere to FOIA's timelines, the "penalty" is that the requester is then "deemed to have exhausted his administrative remedies" and may generally then seek judicial review of the contested action without filing an administrative appeal. 5 U.S.C. § 552(a)(6)(C)(i); 5 U.S.C. § 552(a)(4)(B); *see also CREW,* 711 F.3d 189-90. Failure to adhere to FOIA's timelines does not entitle the requester to judgment in its favor on the merits of the FOIA claim. Indeed, in this Circuit, a suit brought based on failure to

comply with FOIA's timelines under 5 U.S.C. § 552(a)(6)(C) "challenges only the timeliness of an agency's response" not "whether the requestor should have ultimate access to the records." *Voinche,* 999 F.2d at 963.

Once in court, the agency may receive additional time to process the request if it shows that its failure to meet the statutory time limits is the result of "exceptional circumstances" and that it has exercised "due diligence" in processing the request. 5 U.S.C. § 552(a)(6)(C)(i). "Exceptional circumstances" can "include a delay that results from a predictable agency workload of requests" if "the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii).

Also, FOIA expressly authorizes agencies to promulgate regulations providing for "multitrack processing" of their FOIA requests—which allows agencies to process requests on a first-in, first-out basis within each track and also permits them to respond to relatively simple requests more quickly than requests involving complex and/or voluminous records. 5 U.S.C. § 552(a)(6)(D). The express permission to create multi-track systems further contemplates that at times FOIA requests take a substantial amount of time to process.

2.   Relevant Processes Related to Fees

FOIA requires that agencies promulgate regulations addressing fees to be charged in processing FOIA requests. 5 U.S.C. § 552(a)(4)(A). The DOJ has duly published its fees regulations. 28 C.F.R. § 16.10. The regulations authorize DEA to charge multiple kinds of fees in various situations. *See, e.g.,* 28 C.F.R. § 16.10(c)(1)(i) (permitting charging search fees in response to all requests not submitted by certain types of requesters). Of particular relevance, the regulations define a commercial use request as on that seeks "information for a use or a purpose that furthers a commercial, trade, or profit interest, which can include furthering those interests

through litigation." 28 C.F.R. § 16.10(b)(1). In addition to other fees, DEA shall charge "[r]eview

fees . . . to requesters who make commercial use requests." 28 C.F.R. § 16.10(c)(3).  Search and

review fees generally cost $19 or $40/hour. 28 C.F.R. § 16.10(c)(1)(ii); 28 C.F.R. § 16.10(c)(3).

Requiring advance payment of estimated fees in excess of $250 is proper. 28 C.F.R. § 16.10(i)(3).

Notably, before seeking review by a federal court, requesters must generally first administratively

appeal to the Office of Information Policy ("OIP") an adverse fee determination. 28 C.F.R. §

16.6(d); 28 C.F.R. § 16.8(e).

### III.   ARGUMENT

The Amended Complaint fails to state a claim upon which a relief can be granted because

Plaintiffs have failed to allege that DEA is engaging in a policy, pattern, or practice of such

significance that warrants equitable relief under a FOIA PPP claim to prevent future harm.

Further, the Amended Complaint's procedural due process claim is frivolous and should be

dismissed.

### A.  The Amended Complaint fails to plead facts sufficient to support a claim that DEA engaged in in a policy, pattern, or practice that violated FOIA justifying equitable relief to prevent future harm.

The Amended Complaint's central claim—that DEA engages in an unlawful policy,

pattern, or practice under FOIA justifying an equitable remedy to prevent future harm[3]—fails to

state a claim upon which relief can be granted for four reasons: (1) the alleged areas of DEA's

non-compliance with aspects of FOIA's procedural requirements under the circumstances set

forth in the Amended Complaint cannot support a FOIA PPP claim; (2) the Amended Complaint

---

[3] The Amended Complaint's allegedly unlawful PPPs boil down to DEA (1) wrongfully claiming "unusual circumstances" when required to contact another office for a search, (2) when asserting "unusual circumstances," not providing an estimated date upon which a determination of the request is expected, and (3) charging unwarranted fees that must be paid up front. *See* Am. Compl. ¶¶ 72-76.

fails to set forth facts sufficient that DEA wrongfully claims "unusual circumstances" when required to contact another office for a search for records, Am. Compl. ¶¶ 72-74; (3) the Amended Complaint fails to plead facts sufficient to support a valid FOIA PPP claim that DEA wrongfully, when asserting "unusual circumstances," fails to provide an estimated date upon which a determination of the request is expected, Am. Compl. ¶ 75; and (4) the Amended Complaint fails to plead facts sufficient to support a valid FOIA PPP claim that DEA wrongfully "denies access to records by overcharging requestors review fees and requiring [them] to pay up front." Am Compl. ¶ 76.

1. This Court should not interpret FOIA PPP claims to sweep more broadly than the D.C. Circuit by finding that a valid claim can be premised on alleged policies that do not result in the ultimate withholding of non-exempt records or prolonged, unreasonable, and unexplained delays.

The Fifth Circuit has never acknowledged or addressed a FOIA PPP claim. *See Atchafalaya Basinkeeper, Inc. v. United States Army Corps of Engineers*, No 21-317, 2022 WL 219050, *10 (E.D. La. Jan. 25, 2022). No court sitting in the Fifth Circuit should construe FOIA PPP claims to sweep more broadly than the D.C. Circuit has, but that is what Plaintiffs are requesting this Court to do. Specifically, Plaintiffs are requesting that this Court grant equitable relief to prevent claimed future harm due to DEA's perceived non-compliance with three of FOIA's procedural provisions as opposed to being premised on implementing FOIA's central purpose for agencies to make "promptly available" non-exempt records. 5 U.S.C. § 552(a)(3)(A).

Plaintiffs take issue with DEA allegedly improperly invoking the "unusual circumstances" procedure and, when doing so, failing to provide an estimated date upon which a determination will be provided. Am. Compl. ¶¶ 73-75. These alleged policies do not undermine the central purpose of FOIA of providing non-exempt records to parties in a "prompt" manner. Neither do the threadbare allegations in the Amended Complaint that DEA overcharges requesters and

requires them to pay up front. Indeed, the FOIA provision vesting district courts with statutory jurisdiction to grant injunctions provides that a court may do so to prevent an agency "from withholding agency records and to order the production of any agency records improperly withheld. . ." 5 U.S.C. § 522(a)(1)(4)(B). Similarly, the one district court in the Fifth Circuit to substantively address a PPP claim observed that, under D.C. Circuit law, a PPP claim may lie where a policy or practice "will impair the party's lawful access to information in the future." *Basinkeeper*, 2022 WL 219050 at *10 (citing *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 895 F.3d 770, 778 (D.C. Cir. 2018).

Under the developed standard for FOIA PPP claims set forth in the D.C. Circuit, the Amended Complaint fails.[4] Specifically, the D.C. Circuit cases addressing FOIA PPP claims support the conclusion that Plaintiffs' procedural objections are insufficient to support a valid PPP claim. Although each decision concerned different practices or policies, they all dealt ultimately with (1) the denial of non-exempt records or (2) "prolonged, unexplained delays" in providing non-exempt records. *See Judicial Watch,* 895 F.3d at 776, 780 (claim premised on "prolonged, unexplained delays" when, at time of filing, nineteen similar FOIA requests had been pending for up to eighteen months); *Newport Aeronautical Sales v. Dep't of the Air Force,* 684 F.3d 160, 164 (D.C. Cir. 2012*)* (claim premised on agency practice of denying FOIA requests based on allegedly erroneous interpretation of FOIA exemption actionable); *Payne Enters., Inc. v. United States,* 837 F.2d 486, 491 (D.C. Cir. 1988) (claim premised on agency's continued withholding of nonexempt materials in response to repeated requests without justification).

---

[4] D.C. Circuit law does not govern this matter and Defendants are not waiving any challenge to the viability of PPP claims in general. Defendants frequently cite to D.C. Circuit law herein because, in part, the D.C. Circuit has the most robust history of adjudicating PPP claims.

Here, Plaintiffs have failed to assert that DEA has a policy, pattern, or practice of ultimately withholding records or of only doing so after "prolonged, unexplained delays." As stated in *Judicial Watch*, "not all agency delay or other failure to comply with FOIA's procedural requirements . . . warrant judicial intervention, much less injunctive relief." *Judicial Watch*, 895 F.3d at 782. Erroneously deeming a request to qualify as raising "unusual circumstances" and not providing an estimated date of a determination does not mean that the records will be withheld or are the subject of a prolonged and unexplained delay. Indeed, the *earliest* of the approximately ten requests at issue were submitted merely three and a half months before the filing of the lawsuit—not the type of routine, prolonged, unexplained delay that occurred in *Judicial Watch*, which involved delays of up to eighteen months of nineteen similar FOIA requests. Moreover, the Amended Complaint even admits that "some" of the requests have even been fully resolved since being submitted in early April 2022. Am. Compl. ¶ 41 n. 4.

With regard to the DEA's alleged overcharging of fees, the Amended Complaint claims that DEA's practice "denies access to records . . ." Am. Compl. ¶ 76. However, the Amended Complaint fails to allege that DEA overcharged plaintiffs in one instance, much less multiple instances establishing a viable PPP claim. *See Infra* pp. 17-20 (discussing fully the deficiency of the added fees claim).

The insufficiency of the Amended Complaint's PPP claim is further bolstered by the conclusions of the only district court in this Circuit to substantively address a FOIA PPP claim. The *Basinkeeper* Court required a degree of bad faith or lack of due diligence on the part of the agency to support equitable relief and, consequently, a FOIA PPP claim in general. *Basinkeeper*, 2022 WL 219050 at *10-11. In *Basinkeeper,* the agency took longer than twenty days to resolve all eight FOIA requests at issue, never provided estimated dates of completion, and did not provide

tracking numbers in four cases. *Id.* at *11. The court held that the evidence, although it showed the agency violated FOIA's procedural requirements, failed to show a "practice or policy" violating FOIA and, even if it did, "nothing in the record" showed a "lack of recalcitrance or due diligence" to warrant injunctive and declaratory relief. *Id.* The court further observed that the agency's conduct did not amount to the "sort of bad faith conduct" that would entitle the plaintiffs to equitable relief. *Id.; see also Rocky Mountain Wild, Inc. v. U.S. Bureau of Land Management*, No. 19-cv-03171, 2020 WL 12675644, *9 (D. Co. Sept. 30, 2020). The *Basinkeeper* Court therefore entered judgment in favor of the government on the PPP claim.

Similarly, a complaint, as here, alleging that an agency, with regard to approximately ten requests improperly invoked "unusual circumstances," failed to provide no estimated dates of completion, and overcharged for fees in a subset of those requests fails to support a PPP claim. Even if the Amended Complaint sufficiently alleges instances of non-compliance with FOIA's procedural requirements, it does not show that DEA acted in bad faith or exhibited a significant lack of diligence, much less ultimately resulted in the withholding or prolonged, unexplained delay of non-exempt records. Consequently, the Amended Complaint must be dismissed.

2. <u>The Amended Complaint fails to plead a viable PPP claim that DEA wrongfully claims "unusual circumstances" whenever required to contact another office to search for records.</u>

Even if this Court determined that a viable PPP claim permitting equitable relief may be premised on the invocation of "unusual circumstances" on the factual grounds set forth in the Amended Complaint, Plaintiffs' claims that DEA's alleged practice of invoking "unusual circumstances" too liberally fails for two reasons. First, the claimed unlawful policy of invoking "unusual circumstances" when the processing office is required to contact another office for

records would be consistent with FOIA. Am. Compl. ¶¶ 73-75. Second, the Amended Complaint

has failed to set forth sufficient facts that DEA carries out such a policy.

> i. *An agency may deem there to be "unusual circumstances" when there is a need to search another office for records in order to properly process a request.*

FOIA provides that "unusual circumstances" includes "the need to search for and collect

the requested records from field facilities or other establishments that are separate from the office

processing the request." 5 U.S.C. § 552(a)(6)(B)(iii)(I). Under FOIA's plain language, so long as a

facility or establishment that needs to be searched is separate from the specific office processing

the request, "unusual circumstances" applies.

The Amended Complaint misinterprets the phrase "only to the extent reasonably

necessary to the proper processing of the particular requests" found in 5 U.S.C. § 552(a)(6)(B)(iii)

to apply to whether or not the agency invokes "unusual circumstances" at all. Am. Compl. ¶¶ 4,

71, 74. In other words, the Amended Complaint asserts that an agency may invoke the "unusual

circumstances" extension only to the extent reasonably necessary to obtain more time. This

interpretation is wrong. A plain reading of FOIA shows that the phrase at issue modifies the

ensuing three specific scenarios that constitute "unusual circumstances." "Unusual circumstances"

exist, *inter alia,* when the agency has a need to search for and collect records from other offices

when doing so "is reasonably necessary to the proper processing of the particular request." 5

U.S.C. § 552(a)(6)(B)(iii). Therefore, so long as the agency conducts a search of another office that

is reasonably necessary to the proper processing of a request, "unusual circumstances" exist.  It

does not matter whether the search of this additional office could theoretically be done within the

default twenty-day time period to issue a determination.

> ii. *The Amended Complaint fails to plead facts sufficient to establish that DEA improperly and routinely invokes "unusual circumstances" in response to FOIA requests.*

13

The Amended Complaint has not pleaded sufficient facts that DEA is actually improperly engaged in a policy or practice of finding "unusual circumstances" whenever another office needs to be searched. Rather, the Amended Complaint shows that DEA acted appropriately in claiming "unusual circumstances" concerning the FOIA requests referenced in the Amended Complaint.

The Amended Complaint attaches only one FOIA request—the March 31 Request submitted by Tucker. Am. Compl. ¶ 31; Ex. 6. It could hardly be asserted that DEA's invocation of "unusual circumstances" in response was improper. DEA made this determination in response to a request seeking records regarding ongoing formal administrative petitions sent to the Administrator—who is clearly not part of the FOIA processing office. Am. Compl. Ex. 3, 4. To add to their exceptional nature, the Rescheduling Petition and Exemption Petition arose from the outcome of litigation in the Ninth Circuit. Am. Compl. ¶ 24. DEA cannot be faulted for not providing a determination on the March 31 Request within twenty business days.

The information provided about the remaining FOIA requests cited in the Amended Complaint—Zorn's nine requests since "early April" 2022—also fails to connect-the-dots showing improper invocation of "unusual circumstances." A major reason for this is that the Zorn requests are not of the same ilk. *See American Center for Law and Justice v. FBI*, 470 F. Supp. 3d 1, 6 (D.D.C. 2020) ("similarity of the underlying requests is a factor courts take into consideration [for FOIA PPP claims], as it suggests that the agency's behavior stems from a considered decision . . . rather than isolated mistakes").

Because the Amended Complaint fails to attach any of Zorn's requests, it relies on descriptions of varying length and specificity. What is clear is that there were many different types of records being requested and these records were not located in the FOIA processing office. For instance, the Amended Complaint's claims that the undetermined number of requests involve

such varying subjects as (1) a 1975 transcript before an Administrative Law Judge (Am. Compl. ¶ 41), (2) emails involving a single person and five search terms (*id.*), (3) records relied on for a technical analysis published in the Federal Register (*id.* at ¶¶ 43-45), (4) government contracts underlying drug discrimination studies (*id.* at ¶ 52), (5) a publicly presented poster and training (*id* at ¶ 53), (6) a set of petitions to reschedule marijuana (*id.* at ¶ 57), and (7) filings from an administrative proceeding. Am. Compl. ¶ 65. This is not the case of DEA improperly claiming "unusual circumstances" or delaying its response to numerous "similar and straightforward" requests. *See American Center*, 470 F. Supp. 3d at 8. Rather, the requests are so different that it cannot be claimed that the repeated deployment of the "unusual circumstances" extension was improper. *See Id.* at 6 (granting motion to dismiss PPP claim when three example requests "each implicate[d] requests of strikingly different subject matter and scope"). Further based on the limited descriptions provided, it cannot be reasonably claimed that they are simple and easy to retrieve.

Additionally, Plaintiffs' attempt to rely on DEA statistics to bolster its bare claims falls flat. Am. Compl. ¶¶ 61-62. DEA placing more of its requests on the "complex" track as opposed to the "simple" track over the past two years fails to support Plaintiffs' claims. First, the Amended Complaint does not claim that placing of a request on the "complex" track created by DEA is the same thing as deeming a request to have "unusual circumstances" under FOIA. Indeed, the FOIA statute shows that these are two different things; therefore, the Amended Complaint fails to show how the data is relevant to Plaintiffs' PPP claims. Second, even if deeming requests "complex" were considered some kind of proxy for DEA's invocation of "unusual circumstances," the unadorned statistics could reflect lawful activity, such as changing a record system such that more

15

requests qualified as invoking "unusual circumstances" or an initiative to more fully assert DEA's privileges under FOIA.

The Amended Complaint's brief allegation that a DEA official in a phone call "explained that it was 'DEA policy' to mark all incoming FOIA requests that required contacting any office within DEA other than the FOIA office as raising 'unusual circumstances'" is insufficient. Am. Compl. ¶ 46. A recounting of what was remembered to have been said in a brief telephone call with an unnamed official of undetermined authority and rank is insufficient to prove DEA policy in all circumstances, especially, without providing animating facts of multiple wrongful invocations of "unusual circumstances."

The same can be said for the Amended Complaint's hyperlinks to the "The Department of Justice Freedom of Information Act Reference Guide" and a DOJ FOIA checklist. Am. Compl. ¶ 63 n. 6. The guide, which states that it is "designed help the public understand how the FOIA process works," states that a component "may" extend the twenty-day response time when "unusual circumstances" exist, including when the "component needs to collect responsive records from separate offices[.]" An outward facing document created by the DOJ *for the public* stating that agencies *may* extend response times when need to get documents from other offices does not establish that is the DEA's policy to extend response times in all instances where records need to be obtained from other offices.[5] Similarly, one cannot read too much into the shorthand statement that "unusual circumstances" means "the need to (1) search in separate offices . . . ." from the "FOIA: Expedited Processing Checklist."

---

[5] Likewise, DOJ contending in its Motion to Dismiss (Dkt. 6) that such a policy would be proper does not amount to an admission that it is presently DEA's policy. Am. Compl. ¶ 63.

In sum, the Amended Complaint fails to provide sufficient factual support that DEA engages in the wrongful designation of requests as raising "unusual circumstances" whenever it needs to search other offices for records in responding to them.

3.   The Amended Complaint fails to plead a viable PPP claim that DEA, when asserting "unusual circumstances," wrongfully fails to provide an estimated date upon which a determination of the request is expected.

Even if this Court determined that a viable PPP claim permitting equitable relief may be premised solely on the failure to provide an estimated determination date after claiming unusual circumstances, the Amended Complaint fails to do so sufficiently here. The Amended Complaint premises its claim that DEA has a policy of failing to provide estimated dates of determinations when claiming "unusual circumstances" on two items: (1) the excerpt from DEA's response to the March 31 Request (Am Compl. ¶ 34) in which an expected date for a determination was not provided, and (2) the claim that DEA failed to provide "an estimated timeline for response" to the nine requests submitted by Zorn since early April 2022. Am. Compl. ¶ 41. These incidences do not sufficiently establish that DEA has a policy, pattern, or practice of failing to provide estimated dates of determination when claiming "unusual circumstances." *See Basinkeeper,* 2022 WL 219050 at *11 (on summary judgment court found insufficient evidence to infer a "practice or policy" of violating FOIA when agency failed to provide estimated completion dates for eight requests and agency submitted declaration that while the agency's "practice [was] to provide an estimated time, such estimates [were] not always feasible due to the level of correspondence between different departments or the subject matter experts involved.").

4.   The Amended Complaint fails to plead a viable PPP claim that DEA denies access to records by overcharging requestors review fees and requiring requestors to pay up front.

The Amended Complaint added another alleged improper policy, pattern, or practice to those alleged in the original Complaint: that DEA denies access to records by overcharging requestors review fees and requiring requestors to pay up front. Am. Compl. ¶ 76.  But there is no "there" there.  The Amended Complaint seems to presume that those making commercial requests for their own benefit under FOIA should be subsidized by taxpayers.  This is not the case. Rather than being "a piggybank for federal agencies," Am. Compl. ¶ 67, the FOIA fees scheme protects taxpayers from commercial requesters deputizing government employees to do their bidding for free.[6] *See Supra* pp. 7-8 (describing FOIA fees scheme applying to commercial use requests); *see also LeRoy v. United States,* No. 07-1081, 2007 WL 1139652, *2-*3 (E.D. La. April 16, 2007) (recommending dismissal of claim that agency's denial of fee waiver was improper when requester sought record for use in litigation).  Plaintiffs' claim fails for two reasons.

First, the Amended Complaint fails to submit sufficient factual information to show that DEA acted improperly with regard to any request. Considering the factual allegations of the Amended Complaint as true and in the light most favorable to Plaintiffs, the Amended Complaint at most pleads that:

| Request | Demand | # of Pages |
|---|---|---|
| Zorn's request for the file from an administrative proceeding in order to "inform his advocacy" in a proceeding before the DEA (Request 22-00560-F). Am. Compl. ¶¶ 65-66; Ex. 9. | $41,960 | Approx. 5,000 |
| An unidentified Zorn request (Request 22-00585). Am. Compl. ¶ 68; Ex. 9. | $18,440 | Approx. 2,190 |
| Zorn's request for records that DEA relied on for a technical analysis supporting the placement of five chemicals into Schedule | $6,800 | Undetermined |

---

[6] Plaintiffs' suggestion that Defendants benefit by receiving the funds is incorrect.  The payments are made to the general treasury. OMB Guidelines, 52 Fed. Reg. at 10,012, 10,017 (March 12, 1987) (directing that funds collected for providing FOIA services must be deposited into general revenues of United States and not into agency accounts); Am. Compl. Ex. 9 (requesting payment be made to Treasury).

| | | |
|---|---|---|
| I. in order to inform his advocacy in a rulemaking proceeding (Request 22-00488-F). Am. Compl. ¶¶ 43-44, 50. | | |
| March 31 Request from Tucker, which was made in furtherance of Tucker's advocacy on behalf of AIMS and Dr. Aggarwal to obtain access to new drug treatments. Am. Compl. ¶¶ 31, 40 n. 3. | $4,100 | Undetermined |

These allegations do not show that DEA acted improperly in any instance. With regard to the amount of fees: DEA must charge, *inter alia,* review fees for commercial use requests. 28 C.F.R. § 16.10(c)(3). As exemplified in DEA's fees correspondence in Exhibit 9, DEA classified those requests by Zorn as commercial use requests. DEA, as required by regulation, used the rate of $40/hour for a professional to review the requested material. 28 C.F.R. § 16.10(c)(1)(ii); 28 C.F.R. § 16.10(c)(3); *see* Am. Compl. Ex. 9. This rate comports to DOJ's regulations. Using this rate, DEA's estimate was a reasonable exercise of the component's authority.[7] Moreover, the Amended Complaint shows that Plaintiffs failed to narrow their requests to reduce the fee. See Ex. 9 (offering opportunity to Zorn to reformulate request in order to reduce fee in line with 28 C.F.R § 16.10(e)(4)).

With regard to the timing of payment: requiring advance payment of estimated fees in excess of $250 is clearly proper. 28 C.F.R. § 16.10(i)(2); *see also Taylor v. U.S. Dep't of the Treasury,* No. 96-933, 1996 WL 858481, at *2 (W.D. Tex. Dec. 16, 1996) (explaining that agency regulation requires payment before records can be released), *aff'd in part and remanded in part on other grounds,* 127 F.3d 470 (5th Cir. 1997). The Amended Complaint also shows that Plaintiffs failed to appeal to the OIP any of these fee determinations; therefore, failing to give the DOJ the opportunity to correct any error. 28 C.F.R. § 16.8(e); *see Voinche v. F.B.I.,* 999 F.2d 962, 963 (5th Cir. 1993) (per curiam) ("claimants seeking a fee waiver under FOIA must exhaust their administrative remedies

---

[7] For example, DEA's request for an upfront payment of $18,440 for processing of approximately 2,190 pages of records at $40/hour equates to spending approximately a total of twelve minutes of man-hours evaluating and preparing each page for public release in this instance.

prior to seeking judicial relief."); *see also Oglesby v. U.S. Dep't of the Army,* 920 F.2d 57, 71 n.11 (D.C. Cir. 1990) ("Exhaustion does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees"). For these reasons, the Amended Complaint fails to show any error on behalf of DEA with regard to fees.

Second, in addition to showing no error by the DEA in any specific instance, the Amended Complaint fails to show the existence of an actual policy, pattern, or practice. Two to four instances of charging fees for different kinds of requests does not a valid PPP claim make. *See American Center*, 470 F. Supp. 3d at 6 (similarity of underlying requests in determining whether multiple actions represent intentional policies or practices "rather than isolated mistakes"). As explained above, the requests at issue are variable in nature. Moreover, it undermines the Amended Complaint's claim that DEA is engaging in an unlawful policy, pattern, or practice when it refers to approximately ten requests at issue but claims that DEA improperly sought fees for only between two and four of those requests.

**B. The Amended Complaint fails to plead facts sufficient to support a claim that DOJ deprived Plaintiffs of procedural due process protections through its FOIA-related conduct.**

Plaintiffs' procedural due process claim is frivolous, failing for two reasons. First, although we have found no Fifth Circuit substantive treatment of the issue, other circuits have affirmed dismissals of claims that improper handling of FOIA requests violated a plaintiff's due process rights. *See Freeman v. Fine*, 820 F. App'x 836, 839 (11th Cir. 2020) (*per curiam*) ("The denial of a FOIA request does not create a due process claim"); *see also Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1236-37 (10th Cir. 2007) (failure to provide documents under FOIA did not violate due process rights); *Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 777 (D.C. Cir. 2002) ("the comprehensiveness of FOIA precludes the creation of a *Bivens* remedy"). The principle that

improper handling of FOIA requests does not offer a remedy for the violation of constitutional rights holds true even when the failure allegedly prejudiced the requester in some other proceeding. *Roseberry-Andrews v. Dep't of Homeland Security*, 299 F. Supp. 3d. 9, 22 (D.D.C. 2018).

Moreover, the due process claim fails on its facts. First, as demonstrated above, the Amended Complaint's allegations do not show that DEA is engaged in a "practice" of "not making judicial precedents, records from agency proceedings, and associated documents publicly available; unlawfully delaying responding to FOIA requests for those documents; and then charging requestors inordinate fees to get access to those records . . . ." Am. Compl. ¶ 82. Second, Plaintiffs fail to allege what specific information was improperly withheld and how they were prejudiced by it. *See Sewani v. Gonzales*, 162 F. App'x 285, 288 (5th Cir. 2006) (*per curiam*) (rejecting claim that failure to timely provide documents under FOIA violated due process rights when plaintiff failed to show prejudice in proceeding). Indeed, Plaintiffs do not acknowledge that they had adequate authority other than FOIA with which to obtain relevant information in whatever proceedings they are referencing. *See, e.g.,* 21 C.F.R. §§ 1316.46, 1316.54, 1316.57, 1316.58 (regulations relating to exchange of information in DEA administrative proceedings); see *Sychak, d/b/a Medicap Pharmacy*, 65 Fed. Reg. 75959-02, 75961 (2000) (DEA regulations "provide more than adequate pre-hearing disclosure of the issues and evidence. . ."). Similarly, they have failed to show how the allegedly withheld documents from ALJ Docket No 10-46 prejudiced them. Am. Compl. ¶ 65. Despite the Amended Complaint's claims that "the document from [ALJ Docket No. 10-46 from 2011] are not publicly available," the reasoning for the rule at issue, which is

similar to a thorough judicial opinion and includes a detailed summary of the ALJ decision, is

publicly available in the Federal Register, Vol. 76, No. 238.[8]

Plaintiffs' due process claim is therefore without merit and should be dismissed.

## IV.    CONCLUSION

For these reasons, this Court should dismiss the Amended Complaint.

DATED: October 3, 2022

<div style="margin-left:50%">

Respectfully Submitted,

JENNIFER B. LOWERY
UNITED STATES ATTORNEY

*s/Jimmy A. Rodriguez*
Jimmy A. Rodriguez
Assistant United States Attorney
Southern District of Texas
Attorney in Charge
Texas Bar No. 24037378
Federal ID No. 572175
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9532
Fax: (713) 718-3303
jimmy.rodriguez2@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

</div>

Of counsel:
Luke J. Archer
Attorney
Drug Enforcement Administration
Office of Chief Counsel, Administrative and General Law Section
8701 Morrissette Dr., Springfield, VA 22152
Room 12E.323

---

[8] The detailed information referenced can be found in the below linked Federal Register excerpt:
https://www.govinfo.gov/content/pkg/FR-2011-12-12/pdf/2011-31542.pdf.

## CERTIFICATE OF SERVICE

I certify that on October 3, 2022, a true and correct copy of the foregoing was filed with the United States District Clerk for the Southern District of Texas and electronically served on all counsel of record via the District's ECF system.

*s/ Jimmy A. Rodriguez*
Jimmy A. Rodriguez
Assistant United States Attorney