IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AIMS INSTITUTE, PLLC et al. | § § § § § | |
| Plaintiffs, | § § | |
| v. | § | Civil Action H-22-02396 |
| MERRICK GARLAND, et al. | § § § § | |
| Defendants. | | |

**ZORN'S MOTION TO VACATE SCHEDULE, FOR IN-PERSON STATUS CONFERENCE, AND FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF WHETHER THE DRUG ENFORCEMENT ADMINISTRATION IS AN "AGENCY" UNDER 5 U.S.C. § 552(F)**

This is a case between me, Plaintiff Matthew Zorn, a partner at Yetter Coleman LLP, and the U.S. Department of Justice (DOJ) and the U.S. Drug Enforcement Administration (DEA). It largely concerns Freedom of Information Act (FOIA) policies and practices.

The case began as a narrow dispute challenging a DEA practice or policy of deeming all FOIA requests as raising "unusual circumstances," a statutory designation that allows agencies to evade FOIA's default statutory timelines. After a revealing corporate deposition of DOJ and DEA, however, the case has morphed a bit.

Before we get to that, let me begin by briefly addressing the elephant on the docket: why is a partner at a top Houston litigation boutique suing DOJ and DEA and writing a motion in the first-person?[1]

---

[1] Today, February 21, I conferred with the Government on this filing. It is not opposed to vacating the schedule or holding an in-person status conference. It has not had an opportunity to consider other matters raised in this Motion.

I.  **Background and Procedural Posture**

I am a second-year partner at Yetter Coleman LLP. My practice focuses on high-stakes commercial litigation, particularly IP litigation. *See* https://www.yettercoleman.com/our-people/matthew-c-zorn/.

Several years ago, starting with pro-bono representations, I began litigating cases against the administrative state in the drug policy space. In this regard, I have built a national profile for this work. For example, in 2022, the American Lawyer named me a finalist for Young Lawyer of the Year in litigation in large part due to my successes in this space.

On behalf of clients, I submit FOIA requests to DEA. Most if not all these client requests relate to an administrative process or proceeding before DEA involving those clients. I also run a newsletter on drug policy issues called On Drugs. *See* https://ondrugs.substack.com/. My newsletter reports on, among other things, drug policy developments with an eye toward legal nuances. In a journalist capacity, I make FOIA requests on my own.

Soon after I began regularly making FOIA requests of DEA, I noticed a concerning pattern in how it responded. Each request was met with the same response: they all raised "unusual circumstances." So, DEA told me in boilerplate e-mail, that it would not respond to my requests within FOIA's statutory time limits:

> Dear Matthew Zorn:
>
> This e-mail responds to your Freedom of Information Act/Privacy Act (FOIA/PA) request dated May 1, 2022, received by the Drug Enforcement Administration (DEA), FOIA/PA Unit, seeking access to DEA records. Your request has been opened and assigned the following case number: 22-00580-F. Please include this case number when communicating with this office.
>
> The records you seek require searches in another office or offices, and so your request falls within "unusual circumstances." *See* 5 U.S.C. § 552(a)(6)(B)(i)-(iii). Because of these unusual circumstances, we are extending the time limit to respond to your request beyond the ten additional days provided by the statute. We have not yet completed a search to determine whether there are records within the scope of your request. The time needed to process your request will necessarily depend on the complexity of our records search and on the volume and complexity of any records located. For your information, this office assigns incoming requests to one of three tracks: simple, complex, or expedited. Each request is then handled on a first-in, first-out basis in relation to other requests in the same track. Simple requests usually receive a response in approximately one month, whereas complex requests necessarily take longer. At this time, your request has been assigned to the complex track. You may wish to narrow the scope of your request to limit the number of potentially responsive records or agree to an alternative time frame for processing, should records be located; or you may wish to await the completion of our records search to discuss either of these options.

FOIA requires each agency decide whether to comply with a FOIA request within 20 business days of receipt. 5 U.S.C. § 552(a)(6)(A)(i). But when there are "unusual circumstances," an agency may defer a decision past those time limits. 5 U.S.C. § 552(a)(6)(B). The statute defines "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(iii). Relevant here, with precatory language "only to the extent reasonably necessary to the proper processing of the particular requests," one of them defines "unusual circumstances" as "the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request."

These timelines are critical to the proper functioning of FOIA. The legislative history backing the 1974 FOIA Amendments in which the "unusual circumstances" exception was created laments "inordinate delays" and how delay is used as a defense to requests the agency does not wish to honor. For obvious reasons, a pattern or practice of indefinitely delaying responses—what is at issue in this case—raises serious issues to someone who uses FOIA in representing clients and writing news stories.

My FOIA requests got progressively narrower. Eventually, DEA told me that a FOIA request for a single poster belonging to an agency employee that I identified by name and needed for an administrative hearing raised unusual circumstances. I had enough. I picked up the phone and called DEA's FOIA Office. I spoke to the employee who had processed my request. I asked him about the unusual circumstances determination and why extending deadlines to a date uncertain was "reasonably necessary" to obtain a single, well-defined poster. He told me it was DEA policy to deem any FOIA request that required collecting records ***that were not in the FOIA Office*** as raising "unusual circumstances."

Of course, "not in the FOIA office" describes nearly any FOIA request one could imagine. Accordingly, under the Department policy, just about every FOIA request raises "unusual circumstances." Not surprisingly, as I will explain later in dispositive motion practice, this policy is unlawful and relies on a perversion of the statutory text. So, I sued. Dkt. 1.

The Government moved to dismiss. Dkt. 8. It argued, among other things, that I failed to allege to show a pattern, practice, or policy. *Id.* at 2, 13-17 (arguing that I failed to "connect-the-dots"). The Court held a status conference in Fall 2022. Dkt. 10. There, I laid out the above facts to Judge Hughes. I noted that it appeared that the Government disputed whether it had a policy. So, I asked for a corporate deposition. The Court ordered one. Dkt. 13. DOJ objected to the scope of the deposition and its involvement, Dkt. 12, which the Court overruled, Dkt. 13. In early January 2023, I took the corporate deposition to determine the existence and scope of the policy and practice, how DEA's FOIA Office operates, and how DEA's FOIA Office and policies relate to the broader Department. Dkt. 19. A true and correct copy of the deposition transcript is attached as **Exhibit A**. I then filed an amended pleading, incorporating what I learned. Dkt. 21.

As my Second Amended Complaint shows, Dkt. 21, in just four hours on the record, the corporate deposition not only revealed the practical absurdity of the DOJ policy, but more FOIA violations. First, the corporate deponent confirmed the above-described "unusual circumstances" practice. For example, a request for a single document physically located just ten feet outside the DEA FOIA Office triggers the "unusual circumstances" exception and suspends statutory deadlines. Second, the corporate deponent—who introduced herself as DEA's Chief FOIA Officer with no prompting—admitted she did not meet the statutory requirements for an agency Chief FOIA Officer. Third, the corporate deponent admitted facts showing that DOJ/DEA has agency materials about the processing of FOIA requests that must be disclosed under FOIA's reading

room provisions but are not. Finally, the corporate deponent admitted to lackluster record keeping practices that makes it all but impossible for anyone but agency officials to timely access materials from DEA's administrative adjudications and hearings—even when those materials might be needed for an ongoing hearing. *See generally* Dkt. 21.

After the corporate deposition, the parties agreed to a briefing schedule to efficiently dispose of this case on the papers, which the Court ordered. Dkt. 20. At the time, there appeared to be no more genuine disputes of material facts. And since then, I have been diligently working on my summary judgment brief based on the corporate deposition testimony, which is due in days.

Last Friday afternoon, on February 17, after the case reassignment to Your Honor, I called the Government to request consent to file a motion seeking a modest extension and an adjustment of word limits. The Government was agreeable to the relief sought. After I finished, the Government informed me of another matter: it would be filing errata to the corporate deposition. Nothing unusual there. But then, the Government explained that the errata would make at least one consequential change: in fact, the corporate deponent, Kelleigh Miller, was not the Chief FOIA Officer for DEA. Indeed, the Errata (**Ex. B**)—tendered to me more than a months after the distribution of the rough transcript and a week before my summary judgment motion deadline— makes two consequential changes to DOJ/DEA's testimony:

1. *Kelleigh Miller is not the Chief FOIA Officer for DEA.*

2. *DEA is not an agency.*

Under the current case schedule, my dispositive motion is due on Friday, February 24. *See* Dkt. 20.

**II.     Summary of My Argument**

The Department's last-minute Errata necessitates vacating the current briefing schedule. It makes multiple significant corrections with significant legal consequences, explains little, and raises other serious questions. Therefore, I am requesting an in-person status conference to discuss how to efficiently proceed in this case to make sure that the Court has all the relevant facts for efficient disposition and an award appropriate equitable relief, if any.

In addition, there is now a discrete legal issue ripe for summary judgment that might simplify other matters in the case: whether the United States Drug Enforcement Administration is an "agency" under § 552(f).

**III.    Argument**

As noted above, during the January deposition, DOJ/DEA all but testified to facts that would show that DEA was in violation of the Chief FOIA Officer subsection of the statute. First, the statute, 5 U.S.C. § 552(j) requires "*[e]ach* agency" designate a Chief FOIA Officer. It speaks in mandatory, non-discretionary terms. Second, Kelleigh Miller, who had introduced herself (with no question pending) as DEA's Chief FOIA Officer, repeatedly testified (as a corporate deponent) that she was the agency's Chief FOIA Officer. *See* Ex. A at 32-43. And there is no genuine dispute of fact that she is not at the "Assistant Secretary or equivalent level." *See id.* Following the corporate deposition, this was an open-and-shut issue.

Now, however, DOJ/DEA appears to contend that Vanita Gupta, the third ranking official in the Justice Department, is the Chief FOIA Officer for DEA; or alternatively, DEA has no Chief FOIA Officer because DEA is not an agency under 5 U.S.C. § 552(f). *See* Ex. B (Errata). Where there once was no genuine dispute of fact and clarity, there is now muck.

The corporate deponent testified that she does not interact with Gupta. Ex. A at 241:4-10. Gupta has never spoken to DEA's point person on FOIA about FOIA. *Id.* Indeed, the witness could

not even recall Gupta's name. Ex. A at 35:17-36:13. DEA is not one of the DOJ components the Office of Associate Attorney General oversees. *See* https://www.justice.gov/asg/staff-profile/meet-associate-attorney-general. That Gupta exercises any domain over DEA's FOIA execution, as the statute requires, is questionable.. These matters now deserve further inquiry.

DOJ/DEA must realize problems inherent with designating the Associate Attorney General as the sole Chief FOIA Officer responsible for DEA's FOIA compliance. So, along with its General Errata, it made another significant change. Page 32, Line 19 denies that DEA is an agency. *See* Ex. B. Now, it seems as if DOJ will contend that because DEA is a departmental component of DOJ, it is not an "agency" under 5 U.S.C. § 552(f) that requires a Chief FOIA Officer. As I next explain, DOJ is wrong.

> A. **The Court Should Grant Summary Judgment on The Issue of Whether DEA Is An "Agency" Under § 552(f)**

The idea the Government appears to be setting in motion—that DEA is not an "agency"— may seem silly. After all, DEA employs almost 10,000 persons, has a $3.28 billion dollar budget, and has its own unique seal different from the Department's:



*A view from my desk*

Courts describe DEA—an authority of the United States that is a party to proceedings—as an agency in opinions. *See, e.g.*, *Tourus Recs., Inc. v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001) (Garland, J.). DEA calls itself an agency in the Federal Register. Indeed, a few months ago, DEA accidently called itself the "Drug Enforcement Agency." 87 Fed. Reg. 73246 (Nov. 29, 2022).

But the claim is not wholly baseless—just wrong. Based on little to no analysis, a handful of district courts—often against (non-attorney) pro-se litigants—erroneously bought into the unfleshed-out idea that DEA is not an "agency" under § 552(f), just a component of DOJ. *See, e.g.*, *Brown v. DOJ*, 2015 WL 1237274, at *1 (E.D. Cal. Mar. 17, 2015); *Dorsey v. Exec. Off. for United States Att'ys*, 83 F. Supp. 3d 347, 351 n.1 (D.D.C. 2015) (Sullivan, J.). To my knowledge, however, no appellate court has ever endorsed or agreed this view. *But see Peralta v. U.S. Atty's Off.*, 136 F.3d 169, 173 (D.C. Cir. 1998) (considering argument waived but expressing skepticism of its correctness in dictum). *See also, e.g.*, *Aguiar v. DEA*, 865 F.3d 730, 732 (D.C. Cir. 2017) (Garland, J.) (appeal in FOIA case, neither the Court nor the parties identifying that DEA is not an "agency" subject to FOIA); *Coleman v. DEA*, 714 F.3d 816, 828 (4th Cir. 2013) (similar). And I would be surprised if one ever would. Given scrutiny, the notion rapidly falls apart. *See San Luis & Delta-Mendota Water Auth. v. DOI*, 2016 WL 410837, at *5 (E.D. Cal. Feb. 3, 2016) ("[T]he issue was not thoroughly vetted in *Brown*, and Plaintiff points to numerous cases in which component agencies of Interior have been included as defendants in FOIA lawsuits").

According to 5 U.S.C. § 552(f), for the purposes of the FOIA statute, "agency as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." Section 551(1), in turn, defines agency to include "each authority of the Government of

the United States, *whether or not it is within or subject to review by another agency*." (emph. added). Thus, the fact that DEA is a component within the Department does not mean DEA is not an agency. By its terms, § 552(f) takes the inclusive definition of "agency" in § 551(1) and includes *more*. It excludes nothing that is already an agency under § 551(1). The text is unambiguous.

The legislative history of §552(f) (in the event the Court opts to turn to it despite the clear unambiguous "text, context, structure, and history" of the statute) is equally unambiguous. *See generally Texas v. United States*, 524 F. Supp. 3d 598, 637 (S.D. Tex. 2021). The Senate Report from the 1974 FOIA Amendments[2] adding § 552(f) explains that the new subsection "expands on the definition of agency as provided in section 551(1)." S. Rep. No. 93-854 (May 16, 1974) at 185. The specific reason for the amendment had to do with the United States Postal Service's assertion that, as a publicly funded corporation, it didn't fall within the ambit of § 551(1). *Id.* Section 552(f) "incorporates an *expanded* definition of agency to apply under the FOIA." *Id.* The House Report speaks to the same point with the same clarity:

> For the purposes of this section, the definition of "agency" has been expanded to include those entities which may not be considered agencies under section 551(1) of title 5, U.S. Code, but which perform governmental functions and control information of interest to the public. The bill expands the definition of "agency" for the purposes of section 552, title 5, United States Code. Its effect is to insure inclusion under the Act of Government corporations, Government controlled corporations, or other establishments within the executive branch, such as the U.S. Postal Service.

---

[2] FOIA's legislative history is available here: https://nsarchive2.gwu.edu/nsa/foialeghistory/legistfoia.htm. As I have pointed out since my Original Complaint filed in July 2022, this same Senate Report espouses a view that squarely addresses the issue and is flatly inconsistent with DOJ's unlawful "unusual circumstances" policy. *See* Dkt. 1 at 16, n.4 (quoting See S. Rep. 93-854 at 179-80 (May 16, 1974) ("The need to search for and collect records from field facilities or 'other establishments that are separate from the office processing the request' does not permit an extension while such an office obtains the records from the agency's own file, records, or administrative division when located in the same city as the processing office. Rather this is intended to cover the collection of records from other cities, or from a federal records center or other facility which is not part of the agency.")).

H. Rep. No. 93-876 (Mar. 5, 1974) at 128-29. And just in case there were further doubt, the Conference Report states: "The conferees state that they intend to include within the definition of 'agency' those entities encompassed by 5 U.S.C. § 551 and other entities including USPS …" H.R. Rep. 93-1380 (Sept. 25, 1974).

The textual and extratextual evidence thus independently show that § 552(f) supplements the coverage of "agency" in § 551(1). An agency under § 551(1) is also an agency under § 552(f).

DEA is certainly an "agency" under § 551(1), as are all other bureau-level entities housed in the Justice Department. *See* 28 C.F.R. § 0.1 (classifying DOJ principal organizational units as "Office," "Divisions," "Bureaus," or "Board"). These entities promulgate rules. They appear in court as parties. They are led by political appointees. They are, quite clearly, an "authorit[ies] of the Government of the United States." 5 U.S.C. § 551(1).

DEA, unlike other DOJ components, has its own set of regulations that it promulgates and codifies in a different section of the Code of Federal Regulations, the "Food and Drugs" section. *See* 21 C.F.R. § 1300 et. seq. Perhaps not every DOJ component, like the Antitrust Division, meets the definition of an agency. But components like DEA that conduct themselves as agencies are still agencies under § 551(1) and § 552(f). *See Sussman v. U.S. Marshals Serv.*, 808 F. Supp. 2d 192, 198-99 (D.D.C. 2011) (properly interpreting the statutes, analyzing the issue, and concluding that Service and FBI were agencies subject to FOIA); *see also, cf. Am. C.L. Union of S. California v. DHS,* 2017 WL 7803788, at *1 (C.D. Cal. June 21, 2017) ("CBP is a component of DHS and a federal agency under 5 U.S.C. § 552(f)(1)"). They all need Chief FOIA Officers.

Indeed, in the case of DEA, the "agency" issue is crystal clear, for what created it, Reorganization Plan No. 2 of 1973—enacted right before the 1974 FOIA Amendments—brands DEA as "*an agency*" within the Department:

> *There is established in the Department of Justice **an agency** which shall be known as the Drug Enforcement Administration, hereinafter referred to as "the Administration."*

38 Fed. Reg. 15932, 87 Stat. 1091 (1973). If "[i]t would be a tall piece of statutory construction for a court to say that an 'establishment in the executive branch' as used in § 2286(a) is not an 'establishment in the executive branch' within the meaning of § 552(f)," *Energy Rsch. Found. v. Def. Nuclear Facilities Safety Bd.*, 917 F.2d 581, 582–83 (D.C. Cir. 1990), then it is an even taller piece of statutory construction for DOJ to say that "an agency" in the Department of Justice *is not an "agency."* If it talks like an agency, acts like an agency, and *Congress calls it an agency in the statute creating the agency*—it's got to be an "agency."

If what the Department now contends (post-deposition) is that DEA doesn't have a Chief FOIA Officer and doesn't need one because FOIA mandates that "each agency shall have a Chief FOIA Officer" but DEA is not an "agency," then I win—because the notion that DEA is not an "agency" under § 552(f) is wrong as a matter of law. Summary judgment on that issue should be entered against the Department. *See* Fed. R. Civ. P. 56(a) (allowing party to move for summary judgment on part of a claim if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law).[3]

B. **The Court Should Hold an In-Person Status Conference to Discuss the Case Schedule and Limited, Targeted, Additional Discovery.**

The Department's new positions raise some deep questions about other aspects of the federal government. Indeed, if the Justice Department's new "agency" position is to be believed, undoubtedly many other federal agencies subsumed in Departments do not have accountable "return addresses" for the public to use in dealing with FOIA, contrary to Congress's command.

---

[3] Of course, the Government should be able to respond. Given Reorganization Plan No. 2 of 1973, I doubt I have much more to say about the merits.

Also, the substance of my claims and DOJ's late-break gyrations raises deep questions about accountability and transparency. *See, e.g.*, **Ex. C**, America First Legal Report at 2-3 (noting that the Chief FOIA Officer statute ensures there is an accountable "return address" for the willful obstruction of the law).

But some of those are matters for another day. Setting all that aside, the Chief FOIA Officer issue matters here—and they directly tie into the "unusual circumstances" policy and cause me concrete injury—for a simple reason. According to the DOJ/DEA "unusual circumstances" policy, any record outside a component FOIA Office that cannot be accessed by such office is in an "establishment separate from the office processing the request." My harm and the harm from this unlawful policy is not only the result of bunk statutory construction, but also how DEA unlawfully structures its FOIA Office and processing. It is structured to stymie. Even if the unusual circumstances policy were lawful—and it's not—if DEA had a lawfully appointed Chief FOIA Officer that was a senior agency official, as FOIA unambiguously requires, then the FOIA Office becomes bigger. Many if not all agency records DOJ/DEA say are not within the domain of the FOIA processing apparatus now fall under the auspices of a properly designated senior agency official. And what was once "outside" the FOIA Office now falls in the same establishment. The unusual circumstances exception, even as DOJ erroneously construes it, would find no application.

Under these circumstances and considering the Government's last-minute errata, I have further questions about substance and process. For starters, there is a question as to whether the errata should even be allowed. Courts divide on whether deponents can alter the substance of prior testimony under Rule 30(e). Some admit corrections but require reopening the deposition. *See, e.g., Foutz v. Town of Vinton, Virginia*, 211 F.R.D. 293, 295 (W.D. Va. 2002) (requiring the amending party to "admit into evidence both the original and correction answers" and to reopen

the deposition). Others take a more rigid view and disallow substantive corrections:

> The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

*Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992); *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000) ("[A] change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'"); *See, e.g., E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 277 F.R.D. 286, 297 (E.D. Va. 2011). In particular, allowing significant substantive changes undermines the purpose of 30(b)(6) depositions. *Huggins v. Prince George's Cnty.*, 2009 WL 10685425, at *2 (D. Md. May 27, 2009).

      I believe the better and prevailing view in this Circuit is to allow substantive corrections. *See Hernandez v. Rush Enterprises, Inc.*, 336 F.R.D. 534, 536 (E.D. Tex. 2020) (citing Fifth Circuit district court cases). *See also Reilly v. TXU Corp.*, 230 F.R.D. 486, 488 (N.D. Tex. 2005) (noting that Fifth Circuit has not weighed in on issue and describing varied approaches). But given the significance of the correction, additional discovery is warranted. *See id.*

      To be clear, I believe the Government has been accommodating and has litigated this case in good faith and cooperatively. I certainly have no issues with the corporate deponent's candor. She testified candidly, to the best of her ability, and was quite helpful. Nonetheless, the following facts remain and are concerning: the Court ordered a corporate deposition of DOJ to answer such questions. Dkt. 13. DOJ attempted to limit its involvement, *see* Dkt. 12, and the Court overruled DOJ's objections. Dkt. 13. Because DOJ's objections were overruled, DOJ had to produce a witness prepared to testify on its behalf on noticed matters that related to it. Now we're told that DOJ believes DEA isn't an agency, Ex. C (correcting Page 32, Line 19), and all FOIA policies and

practices ultimately flow out of DOJ from Gupta as the only Chief FOIA Officer within the entire Department. The corporate witness for DOJ provided inaccurate answers to key questions about the structure and operation of DEA's component FOIA office, particularly as they relate to DOJ.

On one level, this is all understandable. It is a lot to expect a middle-management DEA employee to have information about DOJ's FOIA policies. She doesn't work in the broader Department. But of course, it was DOJ's choice to make her its designee. And on another level, what she didn't know was quite odd. Whether she holds the statutory "Chief FOIA Officer" designation or not, there should be no question she is the primary DEA employee devoted to overseeing DEA's FOIA compliance. She knows FOIA. Yet, she erroneously thought she was the Chief FOIA Officer for DEA. She didn't appear to know Gupta at the deposition, despite the fact that today, we're now told that Gupta somehow exercises ultimate domain over DEA's FOIA matters and is in charge of supervising DEA FOIA compliance. I want to know how that works.

In short, the Government's positions are changing in significant and questionable ways right before my motion for summary judgment. I therefore am requesting the Court vacate the schedule and hold an in-person status conference to discuss a way forward. In particular, I want limited and targeted discovery to further understand facts about structural issues, the basis for DOJ's significantly changed testimony, verify (or refute) the DOJ's new positions, and understand how/why these changes were made.

**IV.     Conclusion**

For the reasons stated above, the Court should:

- Vacate the current schedule;

- Hold an in-person status conference; and

- Grant summary judgment against the Government and declare that DEA is an "agency" under § 552(f), or alternatively, provide me leave to file a motion for summary judgment arguing same.

Dated: February 21, 2023                    Respectfully submitted,

                                                */s/ Matthew C. Zorn*
                                                Matthew C. Zorn
                                                YETTER COLEMAN LLP
                                                mzorn@yettercoleman.com
                                                811 Main Street, Suite 4100
                                                Houston, TX 77002
                                                T: (713) 632-8000
                                                F: (713) 632-8002

                                                Shane Pennington
                                                VICENTE SEDERBERG LLP
                                                1115 Broadway, 12th Floor
                                                New York, NY 10010
                                                T: (917) 338-5455
                                                F: (303) 860-4505
                                                s.pennington@vicentesederberg.com

                                                ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Matthew Zorn*
Matthew Zorn

**CERTIFICATE OF CONFERENCE**

I hereby certify that on February 21, 2023, I conferred with the Government. The Government is not opposed to vacating the schedule and holding a status conference.

*/s/ Matthew Zorn*
Matthew Zorn

**WORDS**

I certify that this filing has 4339 words, excluding the case caption, table of contents, table of authorities, signature block, and certificates.

*/s/ Matthew Zorn*
Matthew Zorn