# Exhibit C



# AMERICA FIRST LEGAL FOUNDATION

# Investigative Report: The Biden Justice Department's Weaponization of FOIA

www.aflegal.org

# The Biden Justice Department's Weaponization of FOIA

## INTRODUCTION

America First Legal (AFL) investigators have found that the Biden Administration is systematically violating the Freedom of Information Act to shield its activities from public view. First, to ensure public transparency and political accountability, the FOIA Improvements Act of 2016 requires each government agency to designate a Chief FOIA Officer who is a senior official at least at "the Assistant Secretary or equivalent level".[1] An "Assistant Secretary or equivalent" is generally a person who has been nominated by the President and confirmed by the Senate.  Second, the evidence strongly suggests that the U.S. Department of Justice, under the leadership of Attorney General Merrick Garland, has implemented department-wide policies to evade FOIA compliance and ensure that the Biden Administration is able to operate far from public view. To protect the law, Congress must exercise rigorous oversight and take clear and decisive action to protect the public and the free flow of information.

## KEY FINDINGS

- Forty percent of Biden's Cabinet Departments Do Not Comply with FOIA ...................... 2

- The Department of Justice has implemented component-wide patterns and practices for evading compliance with FOIA.......................................................... 3
    o The FBI deems FOIA requests about specific individuals to be prohibited under FOIA................................................................................... 5
    o DEA will delay FOIA under "unusual circumstances" anytime it conducts a search outside the FOIA office – i.e. to any component conducting official business. ............................................................... 5
    o DEA's Chief FOIA Officer is not an appointee at the "Assistant Secretary level or higher" as required by law. ........................................ 8
    o DEA's obstructive policies came from the top: Main Justice.................. 8

- The Office of Special Counsel Improperly Rebuffed Requests to Investigate DOJ's Pattern and Practice Claims ............................................................... 13

---

[1] *See* 5 U.S.C. § 552(j)(1).

I. FORTY PERCENT OF BIDEN'S CABINET DEPARTMENTS DO NOT COMPLY WITH FOIA

FOIA requires each agency to appoint a Chief FOIA officer, a senior official at least at the Assistant Secretary or equivalent level who is responsible for reviewing, at least annually, "all aspects" of their agency's compliance with the law's public disclosure requirements.[2] Generally speaking, this will be a political appointee. Congress requires agencies appoint such an official to ensure there is an accountable "return address" for willful obstruction of the law. Because the FOIA statute directs Chief FOIA Officers to ensure statutory compliance, the determinations of an invalid Chief FOIA Officer (for example) denying a requestor information are themselves invalid under the Appointments Clause of Article II of the Constitution.

The evidence is that forty percent of Biden's Cabinet Departments are currently violating the law.

| Agency | Chief FOIA Officer | 5 U.S.C. § 552(j)(1) Compliant? |
|---|---|---|
| **Agriculture** | Janie Simms Hipp | Yes |
| **Commerce** | Jennifer Goode | No |
| **Defense** | Joo Y. Chung | No |
| **Education** | Tracey St. Pierre | No[3] |
| **Energy** | Ingrid Kolb | No[4] |
| **Health and Human Services**[5] | Vacant | No |
| **Homeland Security** | Lynn Parker Dupree | Yes |
| **Housing and Urban Development** | Kevin L. McNeely | Yes[6] |
| **Interior** | Robert T. Anderson | Yes |
| **Justice** | Vanita Gupta | Yes |
| **Labor** | Seema Nanda | Yes |
| **State Department** | Alaina B. Teplitz | Yes |
| **Transportation** | Judith S. Kaleta | Yes |
| **Treasury** | Ryan Law | No[7] |
| **Veterans Affairs** | Kurt DelBene | Yes |

---

[2] 5 U.S.C. § 552(j), *et seq*.
[3] Tracey St. Pierre is the Director of the Office of the Executive Secretariat. That is a career incumbent position. *See e.g.*, HOUSE COMMITTEE ON OVERSIGHT AND REFORM, UNITED STATES GOVERNMENT POLICY AND SUPPORTING POSITIONS (2020) (hereinafter "Plum Book"), available at bit.ly/3QRFUXL.
[4] Director, Office of Management, is a career incumbent position. *See The Plum Book*, bit.ly/3XpJDyq.
[5] Until January 2023, Assistant Secretary of Public Affairs Sarah Lovenheim held the role.
[6] The General Deputy Assistant Secretary for Administration is not PAS but is a political appointment in the excepted service. *See e.g.*, *The Plum Book*, bit.ly/3XDheED.
[7] Deputy Assistant Secretary for Privacy, Transparency, and Records is a career incumbent position. *See The Plum Book*, https://bit.ly/3CXOlv8.

The Biden Administration's non-compliance has significant consequences. FOIA requesters who were denied information by agencies without properly appointed Chief FOIA Officers may have standing to challenge those agency determinations under the Appointments Clause – thus requiring agencies to cure the improper appointment and reconsider all agency determinations "to ensure compliance" with the FOIA made under an improperly appointed Chief FOIA Officer.

## II. THE DEPARTMENT OF JUSTICE HAS IMPLEMENTED COMPONENT-WIDE PATTERNS AND PRACTICES FOR EVADING COMPLIANCE WITH FOIA

### A. Main Justice arbitrarily claims that it may not search for individual custodian records without consent

On April 6, 2022, America First Legal (AFL) filed a Freedom of Information Act request with the U.S. Department of Justice Civil Division seeking certain Civil Division records.[8] The Civil Division refused to search for responsive records, stating, "[w]e would have to reach out and receive permission from each custodian in order to search his/her emails."[9] AFL investigators asked the Department of Justice whether "that policy of getting consent from employees prior to a FOIA search [was] a written policy or more of a practice."[10] DOJ's attorney stated, "[i]t is not a written policy."[11] Yet deposition testimony from another component of DOJ – the DEA – revealed that there is no legal requirement to obtain employee consent prior to a search of their records and that, in fact, DEA did not seek such consent as a matter of practice.

**Page 203**

21  Q  Now, we're not here to talk about DOJ

22  civil.  We're here to talk about DOJ writ large

**Page 204**

1  and DEA.  So my first question is:  Does DEA have

2  a -- have a policy or even capability to search

3  employees' e-mails without getting consent?

---

[8] See Ex. 1 to Pl.'s Mot. For Summ. J., *America First Legal Foundation v. Kerner*, Case No. 1:22-cv-3576 (D.D.C. Jan. 12, 2023) (ECF No. 5-3).
[9] See Ex. 2 to Pl.'s Mot. For Summ. J., *America First Legal Foundation v. Kerner*, Case No. 1:22-cv-3576 (D.D.C. Jan. 12, 2023), (ECF. 5-4).
[10] *Id*. at 5.
[11] *Id*. at 4.

3

4  A  Yes.

5  Q  And does it have a policy one way or
6  the other on doing that?

7  A  We have a -- we have two standard
8  operating procedures that cover this topic, and
9  our practice is not to rely on the owner of the
10 e-mails to do their own search.  The only
11 additional thing that we do is if they involved
12 like higher level officials as a courtesy, we let
13 them know that a FOIA request has come in, we
14 would like to go to the information systems
15 division to do the search, you know, and so as a
16 courtesy we notify them of that.

17 Q  But you're talking about notice.
18 There's no policy of consent or permission that
19 you're aware of, is there?

20 A  No.  And I do not seek employees'
21 permission.

### B. The FBI deems FOIA requests about specific individuals to be prohibited under FOIA

On December 22, 2022, AFL submitted a FOIA request to the FBI seeking access to records concerning former CIA Director John Brennan's statements that claims about the authenticity or the contents of Hunter Biden's laptop were "Russian disinformation." On January 9, 2023, the FBI denied the request, stating:

> You have requested records on one or more third party individuals. Please be advised the FBI will neither confirm nor deny the existence of such records pursuant to FOIA exemptions (b)(6) and (b)(7)(C), 5 U.S.C. §§ 552 (b)(6) and (b)(7)(C). The mere acknowledgement of the existence of FBI records on third party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy. This is our standard response to such requests and should not be taken to mean that records do, or do not, exist. As a result, your request has been closed.

FBI has taken the position that merely acknowledging the existence of e-mails John Brennan created or received would violate Brennan's personal privacy interests. The Department of Justice has opined that "a FOIA request seeking records which would indicate that a particular political figure, prominent businessman or even just an ordinary citizen has been the subject of a law enforcement investigation may require an agency to flatly refuse to confirm or deny whether such records exist."[12] But here, AFL's request had nothing to do with whether John Brennan was the subject of a law enforcement investigation. The FBI therefore contradicts the Department of Justice's own opinion that such withholding is "justified only when the confirmation or denial of the existence of responsive records would, in and of itself, reveal exempt information." Whether John Brennan received emails or not does not disclose exempt information.[13]

### C. DEA will delay FOIA under "unusual circumstances" anytime it conducts a search outside the FOIA office – i.e. to any component conducting official business[14]

Deposition records reveal that the DEA has a pattern and practice of declaring that virtually all FOIA requests – other than those seeking records about how the DEA

---

[12] U.S. DEP'T. OF JUST., *FOIA Update, Vol. VII, No. 1, OIP Guidance: Privacy "Glomarization,"* (Jan. 1, 1986), http://bit.ly/3ZOrGuM.
[13] *See also* Bernard Bell, *Shhh! Don't Say Glomar Anymore*, Yale J. Reg. Notice & Comment, (Mar. 14, 2022), bit.ly/3QORZgi.
[14] Deposition of Kelleigh Miller, AIMS Institute, et al. vs. Merrick Garland, et al. (Jan. 5, 2023) (No. 4:2022cv02396).

FOIA office operates – will involve "unusual circumstances" which justify additional delay by the agency.

> **Page 49**
>
> 21    A   So at DEA, we will invoke unusual
>
> 22  circumstances any time we have to search for
>
> **Page 50**
>
> 1  records that are outside of our office, meaning
>
> 2  we do not have possession of all of DEA's
>
> 3  records. We have many offices throughout
>
> 4  headquarters, the field. We have offices in
>
> 5  about 90 foreign countries. So we do not have
>
> 6  access to all of those records in my own office.
>
> 7  We have to rely on the record custodians to
>
> 8  retrieve those records for us.
>
> 9    Q   So by office in your answer, you mean
>
> 10  the FOIA office?
>
> 11    A   The FOIA office.
>
> 12    Q   So any time a record that is requested
>
> 13  in a FOIA request that is not in the FOIA office
>
> 14  presents the unusual circumstances exception?
>
> 15    A   Correct.
>
> **Page 63**
>
> 17    Q   You -- any -- any time you venture --

>     18   no matter how far outside the FOIA office one is,
>
>     19   whether cyberspace or physically, if you are
>
>     20   outside the FOIA office, but in the same
>
>     21   building, you're -- the unusual circumstances
>
>     22   applies as -- according to the agency?

**Page 64**

>     1    A   It would apply.

DEA's policy here clearly violates FOIA. Worse, this policy creates a system where only those FOIA requesters with the time and resources needed to litigate can actually ever secure needed information.

In deposition testimony, DEA disclosed the degree to which secret, unwritten law governs DOJ's FOIA practices.

**Page 209**

>     2    Q   Okay.  Are there unwritten policies at
>
>     3    DEA for FOIA processing or --
>
>     4    A   I mean, I can't -- I can't really speak
>
>     5    to those or think of those in the moment, but I
>
>     6    can tell you, I have a list of things I would
>
>     7    like to put into writing, so, you know, just how
>
>     8    to process certain types of cases.
>
>     9    Q   Okay.
>
>     10   A   Yeah.

**D. Unsurprisingly, DEA's Chief FOIA Officer is not an appointee at the "assistant secretary level or higher" as required by law.[15]**

**Page 27**

    3    Q    And the chief FOIA officer of DEA is

    4    you, Ms. Kelleigh Miller, correct?

    5    A    Correct.

    6    Q    And we can agree that the Drug

    7    Enforcement Administration is an agency, correct?

    8    A    It is.

    9    Q    So in j2, the chief FOIA officer of DEA

    10    is you?

    11    A    Correct.

**Page 34**

    17    Q    Okay.  Are you a political appointee?

    18    A    I am not.

    19    Q    Were you -- are you at the assistant

    20    secretary or equivalent level?

    21    A    I am not.

**E. DEA's Obstructive Policies Came from the Top: Main Justice**

**Page 68**

    7    Q    So do you happen to know when DEA

    8    adopted this interpretation of unusual

---

[15] 5 U.S.C. § 552(j)(1).

8

9    circumstances?

10   A   We have been following this for --

11   again, we followed the DOJ FOIA regulations.  All

12   of the components under DOJ are following the

13   same regulations.  So our interpretation and

14   OIP's interpretation of the statute is that if we

15   have to -- if we do not have access to the

16   records, we have to go, you know, physically

17   outside of our office to gain access to those

18   records, we would invoke unusual circumstances.

19   Q   So this is not a DEA policy.  It is a

20   Department of Justice?

21   A   Department-wide.

22   Q   Okay.  So this is the entire Department

**Page 69**

1   of Justice.  It is its position that if a record

2   is outside the FOIA office that unusual

3   circumstances applies?

4   A   Correct.

5   Q   That's the United States Department of

6   Justice is taking that -- that position under

7   oath today in this --

9

8    A   We have consulted with OIP on this

9   issue, and their position is that, yes, if it is

10  outside of our own office -- again, we don't have

11  access to the material. We have to rely on

12  officers across DEA -- that unusual circumstances

13  does apply.

**F. DOJ's Obstructive Policies Harm Access to Justice: Respondents in ALJ Proceedings Must Use FOIA to Research Prior Cases but That Process Will Involve Significant Delays Under DOJ Policies**

    **Page 77**

4    Q   Okay. So -- so forgetting about how --

5   how records are filed and just talking about

6   records that have already been filed in these

7   administrative proceedings, you say that those

8   are kept in the ALJ offices. True?

9    A   Yes.

10  Q   And how does the public access those

11  records?

12  A   They would have to file a FOIA request.

13  Q   And the only way a public -- a member

14  of the public can get access to those records is

15  by filing a FOIA request, true?

16  A   Yes. With the exception of things like

  17 the -- any decision or order by the

  18 administrative law judge is posted on DEA .gov,

  19 so that information is accessible to the public,

  20 but anything beyond that, they would have to

  21 submit a FOIA request to DEA for --

  22  Q So --

**Page 78**

  1  A Access.

  2  Q And we've established that these FOIA

  3 requests -- that -- that request would

  4 necessarily raise unusual circumstances, true?

  5  A It would.

  6  Q So we're talking about more than 30

  7 days to deliver that request?

  8  A Yes.

### G. The Department of Justice Does Not Appear to Comply with the Capstone Directive

Over a decade ago, the Obama Administration established the "Managing Government Records Directive" which sought to "improve performance and promotion of openness and accountability by better documenting agency actions and decisions".[16] As the National Archives has noted, "Congress passed legislation requiring email records be managed electronically" and has established the "Capstone Approach" to allow for electronic records management, search and

---

[16] *See* Jeffrey D. Zients, Memorandum for the Heads of Executive Departments and Independent Agencies, United States Office of Management and Budget (Aug. 24, 2012), https://bit.ly/3iRoRsn.

reproduction for purposes of access under FOIA or congressional oversight.[17] In short, all emails created by the federal government should be easily searchable. But testimony from DEA reflects how even after a decade, the Department of Justice's policies and practices block access to electronic records of the executive branch.

**Page 52**

```
11    A   Sure.  So in my office, we do not have
12    access to the hundreds of IT systems that DEA
13    uses, you know, the paper-based filing systems
14    that our offices all over the United States, you
15    know, utilize.  So we -- when we receive a FOIA
16    request, oftentimes, we are searching for paper
17    and electronic records.  We simply don't have
18    access to all that.  Now, for some reason I did
19    have access to a record because that record has
20    been requested by another individual previously,
21    we would have access.  I would not be invoking
22    unusual circumstances because I already have
```

**Page 53**
```
1     access.  I'm just going to review it and release
2     it again if that makes sense.
```

**Page 54**
```
16    Q   Well, you've testified -- and correct
17    me if I'm wrong.  You've testified that the FOIA
```

---

[17] *See* National Archives of the United States, White Paper on the Capstone Approach and Capstone GRS, (Apr. 2015), https://bit.ly/3XBZVDW.

12

```
18   office doesn't have access to basically DEA writ

19   large documents, true?

20       A    That is true.

21       Q    In fact, has access to surprisingly few

22   documents, fair?

 1       A    We do not have access to the majority

 2   of records that are requested by the public.  We

 3   have to rely on the owners, the offices that own

 4   those records to retrieve them for us, to provide

 5   them to us so that we can process them and

 6   release them to a requester.
```

### III. THE OFFICE OF SPECIAL COUNSEL IMPROPERLY REBUFFED REQUESTS TO INVESTIGATE DOJ'S PATTERN AND PRACTICE CLAIMS

Federal law requires the Office of Special Counsel to investigate allegations of arbitrary or capricious withholding of records in violation of FOIA when petitioned with a request to investigate.[18] On August 17, 2022, AFL asked the Special Counsel to investigate the Department of Justice's refusal to search for information without specific prior consent from each government worker. On September 1, 2022, the Special Counsel responded:

> The FOIA lays out three conditions that must be met before a case falls under the Special Counsel's jurisdiction in section 1216: (1) the court ordered the production of improperly held agency records; (2) the court assessed attorney fees and litigation costs against the United States; and (3) the court issued a written finding that the circumstances surrounding the agency's withholding raised questions whether the agency personnel responsible for the withholding acted arbitrarily or capriciously.

---

[18] 5 U.S.C. § 1216(a)(3).

AFL is currently challenging the Special Counsel's legal claim in court, arguing that his failure to hold the Department of Justice accountable for denying public information access is unlawful.[19]

### IV. CALL TO ACTION

Congress enacted FOIA to pierce the veil of administrative secrecy and to open government action to the light of public scrutiny. It is a critical means, sometimes the only means, for citizens to know what their government is up to. This knowledge is, as the Supreme Court put it, "a structural necessity in a real democracy."[20] An informed citizenry is needed to check against corruption and to hold the governors accountable to the governed.

However, the Biden Administration generally, and Merrick Garland's Department of Justice particularly, have impeded the public's access to government information that lawfully should be disclosed.[21] To protect FOIA, and to preserve the principles of democratic governance embedded in its provisions, Congress should take the following steps:

- Investigate the Department of Justice regarding the issues raised in the deposition testimony excerpted above.

- Hold hearings to scope the extent of FOIA non-compliance government-wide, with a special focus on the widespread reports of bad faith conduct across government agencies including the Securities and Exchange Commission, the Department of State, and the Department of Defense.

- Ensure that every Biden Cabinet agency has properly appointed a politically accountable Chief FOIA Officer, and then call each such official to testify publicly regarding his or her agency's FOIA performance.

---

[19] *See America First Legal Foundation v. Kerner*, *supra* note 8.
[20] *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171–172 (2004) (citation and internal quotation marks omitted).
[21] Ben Weingarten, *The "Freedom of Information" Bureaucrats Have Our Number: Catch-22*, REALCLEAR INVESTIGATIONS (Sep. 20, 2022), bit.ly/3GJJQFe; Ben Weingarten, *The Road to FOIA was Paved with Good Intentions,* REALCLEAR INVESTIGATIONS (Sep. 20, 2022), bit.ly/3WmHnqh.



www.aflegal.org
© 2023, AMERICA FIRST LEGAL