UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW C. ZORN, | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:22-cv-02396 |
| U.S. DEPARTMENT OF JUSTICE, ET AL. | § § § | |
| Defendants. | § § | |

**ZORN'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF WHETHER THE DRUG ENFORCEMENT ADMINISTRATION IS AN "AGENCY" UNDER 5 U.S.C. § 552(F)**

This is a case between me, Plaintiff Matthew Zorn, a partner at Yetter Coleman LLP, and the U.S. Department of Justice (DOJ) and the U.S. Drug Enforcement Administration (DEA). The case largely concerns Freedom of Information Act (FOIA) policies and practices. It began as a narrow dispute challenging a DEA practice or policy of deeming all FOIA requests as raising "unusual circumstances," a statutory designation that allows agencies to evade FOIA's default statutory timelines. But after a corporate deposition of DOJ and DEA, the case morphed a bit.

The question du jour: *Is the U.S. Drug Enforcement Administration an "agency" under 5 U.S.C. §552(f)?* I say "yes."

During my deposition of the Department, it admitted to facts showing that DEA had an unlawfully designated Chief FOIA Officer. *First*, it admitted DEA is an agency. *Second*, the corporate witness—who had introduced herself as DEA's Chief FOIA Officer and testified to same—admitted she was not at the "Assistant Secretary or equivalent level" as 5 U.S.C. § 552(j) requires.

One move away from checkmate, however, the Department flipped the chessboard. A week before the deadline for my summary judgment motion, the Department changed its deposition testimony. Now, it appears to contend that (1) the corporate deponent is not DEA's Chief FOIA Officer and (2) DEA is *not* an "agency" under §552(f).

Fortunately, statutory construction is based on principles and text, not whim and caprice. And here, text, context, structure, and history all uniformly converge with common sense: DEA is an agency under § 552(f). In response, I expect the Government to identify stray lines in district court cases with sparse analysis that state that DEA is a DOJ component. But § 551(1), which § 552(f) incorporates, makes clear that "'agency' means each authority of the Government of the United States, *whether or not it is within or subject to review by another agency*." (emph. added). And here, the statute creating DEA describes it as an "agency" within DOJ. DEA is a component of DOJ, but it is also an agency. The two are not mutually exclusive under § 551(1).

Why is sorting out this ontology important? This threshold issue has to do with whether DEA violates 5 U.S.C. § 552(j)(1), which requires "each *agency*" designate a Chief FOIA Officer. If DEA is not an "agency" under 5 U.S.C. § 552(f), then it does not need to designate a Chief FOIA Officer. My grievance fails. But if I'm correct, then DEA does not have a Chief FOIA Officer. One side or the other gets summary judgment, simplifying the case.

All that leaves is standing: *Do I get to complain about the absence of a lawfully designated Chief FOIA Officer*? As I explain further, the answer to this question is also "yes" because the absence of a lawfully designated Chief FOIA Officer causes me injury. Specifically, application of the unlawful "unusual circumstances" policy to delay responding to my requests significantly hinges on how DEA has unlawfully structured its FOIA Office. All standing elements are met.

I.      **Background and Procedural Posture**

I am a second-year partner at Yetter Coleman LLP. My practice focuses on high-stakes commercial litigation, particularly IP litigation. *See generally* Zorn Decl.

Several years ago, starting with pro-bono representations, I began litigating cases against the administrative state in the drug policy space. In this regard, I have built a national profile for this work. For example, in 2022, the American Lawyer named me a finalist for Young Lawyer of the Year in litigation in large part due to my successes in this space. *See generally* Zorn Decl.

On behalf of clients, I submit FOIA requests to DEA. Most if not all these client requests relate to an administrative process or proceeding before DEA involving those clients. I also run a newsletter on drug policy issues called On Drugs. *See* https://ondrugs.substack.com/. My newsletter reports on, among other things, drug policy developments with an eye toward legal nuances. In a journalist capacity, I make FOIA requests on my own. *See generally* Zorn Decl.

Soon after I began regularly making FOIA requests of DEA, I noticed a concerning pattern in how it responded. Each request was met with the same response: they all raised "unusual circumstances." So, DEA told me in boilerplate e-mail, that it would not respond to my requests within FOIA's statutory time limits:

> Dear Matthew Zorn:
>
> This e-mail responds to your Freedom of Information Act/Privacy Act (FOIA/PA) request dated May 1, 2022, received by the Drug Enforcement Administration (DEA), FOIA/PA Unit, seeking access to DEA records. Your request has been opened and assigned the following case number: 22-00580-F. Please include this case number when communicating with this office.
>
> The records you seek require searches in another office or offices, and so your request falls within "unusual circumstances." *See* 5 U.S.C. § 552(a)(6)(B)(i)-(iii). Because of these unusual circumstances, we are extending the time limit to respond to your request beyond the ten additional days provided by the statute. We have not yet completed a search to determine whether there are records within the scope of your request. The time needed to process your request will necessarily depend on the complexity of our records search and on the volume and complexity of any records located. For your information, this office assigns incoming requests to one of three tracks: simple, complex, or expedited. Each request is then handled on a first-in, first-out basis in relation to other requests in the same track. Simple requests usually receive a response in approximately one month, whereas complex requests necessarily take longer. At this time, your request has been assigned to the complex track. You may wish to narrow the scope of your request to limit the number of potentially responsive records or agree to an alternative time frame for processing, should records be located; or you may wish to await the completion of our records search to discuss either of these options.

FOIA requires each agency decide whether to comply with a FOIA request within 20 business days of receipt. 5 U.S.C. 552(a)(6)(A)(i). But when there are "unusual circumstances,"

an agency may defer a decision past those time limits. 5 U.S.C. 552(a)(6)(B). The statute defines "unusual circumstances." 5 U.S.C. 552(a)(6)(B)(iii). Relevant here, with precatory language "only to the extent reasonably necessary to the proper processing of the particular requests," one of them defines "unusual circumstances" as "the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request."

These timelines are critical to the proper functioning of FOIA. The legislative history backing the 1974 FOIA Amendments in which the "unusual circumstances" exception was created laments "inordinate delays" and how delay is used as a defense to requests the agency does not wish to honor. For obvious reasons, a pattern or practice of indefinitely delaying responses—what is at issue in this case—raises serious issues to someone who uses FOIA in representing clients and writing news stories.

My FOIA requests got progressively narrower. Eventually, DEA told me that a FOIA request for a single poster belonging to an agency employee that I identified by name and needed for an administrative hearing raised unusual circumstances. I had enough. I picked up the phone and called DEA's FOIA Office. I spoke to the employee who had processed my request. I asked him about the unusual circumstances determination and why extending deadlines to a date uncertain was "reasonably necessary" to obtain a single, well-defined poster. He told me it was DEA policy to deem any FOIA request that required collecting records *that were not in the FOIA Office* as raising "unusual circumstances."

Of course, "not in the FOIA office" describes nearly any FOIA request one could imagine. Accordingly, under the Department policy, just about every FOIA request raises "unusual circumstances." Not surprisingly, as I will explain later in dispositive motion practice, this policy is unlawful and relies on a perversion of the statutory text. So, I sued. Dkt. 1.

The Government moved to dismiss. Dkt. 8. It argued, among other things, that I failed to allege to show a pattern, practice, or policy. *Id.* at 2, 13-17 (arguing that I failed to "connect-the-dots"). The Court held a status conference in Fall 2022. Dkt. 10. There, I laid out the above facts to Judge Hughes. I noted that it appeared that the Government disputed whether it had a policy. So, I asked for a corporate deposition. The Court ordered one. Dkt. 13. DOJ objected to the scope of the deposition and its involvement, Dkt. 12, which the Court overruled, Dkt. 13. In early January 2023, I took the corporate deposition to determine the existence and scope of the policy and practice, how DEA's FOIA Office operates, and how DEA's FOIA Office and policies relate to the broader Department. Dkt. 19. A true and correct copy of the deposition transcript is attached as Ex. A. I then filed an amended pleading, incorporating what I learned. Dkt. 21.

As my Second Amended Complaint shows, Dkt. 21, in just four hours on the record, the corporate deposition not only revealed the practical absurdity of the DOJ policy, but more FOIA violations. First, the corporate deponent confirmed the above-described "unusual circumstances" practice. For example, a request for a single document physically located just ten feet outside the DEA FOIA Office triggers the "unusual circumstances" exception and suspends statutory deadlines. Second, the corporate deponent—who introduced herself as DEA's Chief FOIA Officer with no prompting—admitted she did not meet the statutory requirements for an agency Chief FOIA Officer. Third, the corporate deponent admitted facts showing that DOJ/DEA has agency materials about the processing of FOIA requests that must be disclosed under FOIA's reading room provisions but are not. Finally, the corporate deponent admitted to lackluster record keeping practices that makes it all but impossible for anyone but agency officials to timely access materials from DEA's administrative adjudications and hearings—even when those materials might be needed for an ongoing hearing. *See generally* Dkt. 21.

After the corporate deposition, the parties agreed to a briefing schedule to efficiently dispose of this case on the papers, which the Court ordered. Dkt. 20. At the time, there appeared to be no more genuine disputes of material facts. Since then, I have been diligently working on my summary judgment brief based on the corporate deposition testimony.

Last Friday afternoon, after the case reassignment to Your Honor, I called the Government to request consent to file a motion seeking a modest extension and an adjustment of word limits. The Government was agreeable to the relief sought. After I finished, the Government informed me of another matter: it would be filing errata to the corporate deposition. Nothing unusual there. But then, the Government explained that the errata would make at least one consequential change: in fact, the corporate deponent, Kelleigh Miller, was not the Chief FOIA Officer for DEA.

Indeed, the Errata (Ex. B)—tendered to me more than a month after the distribution of the rough transcript and a week before my summary judgment motion deadline—makes two consequential changes to DOJ/DEA's testimony:

1. *Kelleigh Miller is not the Chief FOIA Officer for DEA.*

2. *DEA is not an agency.*

## II. Legal Standard

Rule 56(a) provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The rule permits summary judgment on all or part of a claim. *Id.*

## III. Summary of My Argument

A.  Text, context, structure, and history all point to the United States Drug Enforcement Administration being an "agency" under § 552(f). I am aware of no principle of statutory construction that could support any other conclusion.

**B.** I have standing to raise this claim because the unlawful structure of DEA's FOIA office causes me concrete injury. The absence of a lawfully designated Chief FOIA Officer is part-and-parcel to DEA's unlawful policy of ignoring statutory deadlines.

According to the policy, DEA will not timely respond to FOIA requests any time those requests call for records outside the DEA FOIA Office. Because DEA hasn't lawfully designated a senior official as its Chief FOIA Officer, its FOIA Office is an insular office with access to few agency records. If DEA had a lawfully appointed Chief FOIA Officer, the FOIA Office would be bigger, would have more records under its auspices, and could respond to at least some of my requests in a statutorily compliant manner. Thus, I suffer an injury-in-fact traceable to the statutory violation that could be redressed by relief ordered by the Court.

**IV.** **Argument**

    **A.** **The U.S. Drug Enforcement Administration is an "Agency" Under §552(f)**

The idea the Department appears to be setting in motion with its Errata—that DEA is not an "agency"—has neither basis in common sense nor statutory text.

DEA employs almost 10,000 persons, has a $ 3.28 billion dollar budget, and has its own unique seal different from the Department's:[1]

---

[1] *See* https://www.dea.gov/data-and-statistics/staffing-and-budget.



*A view from my desk*

Courts describe DEA—an authority of the United States that is a party to proceedings—as an agency in opinions. *See, e.g.*, *Tourus Recs., Inc. v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001) (Garland, J.). Indeed, a few months ago, DEA accidently called itself the "Drug Enforcement Agency," 87 Fed. Reg. 73246 (Nov. 29, 2022), a mistake once also made by Justice Kennedy, in *United States v. Verdugo-Urquidez*, 494 U.S. 259, 262 (1990) ("He is believed by the United States Drug Enforcement Agency (DEA) …"). Lest there be doubt, DEA's mission statement notes it is the "agency" responsible for enforcing the controlled substances laws (https://www.dea.gov/about/mission):

> **DEA Mission Statement**
>
> The mission of the Drug Enforcement Administration (DEA) is to enforce the controlled substances laws and regulations of the United States and bring to the criminal and civil justice system of the United States, or any other competent jurisdiction, those organizations and principal members of organizations, involved in the growing, manufacture, or distribution of controlled substances appearing in or destined for illicit traffic in the United States; and to recommend and support non-enforcement programs aimed at reducing the availability of illicit controlled substances on the domestic and international markets.
>
> In carrying out its mission as the <mark>agency</mark> responsible for enforcing the controlled substances laws and regulations of the United States, the DEA's primary responsibilities include:
>
> - Investigation and preparation for the prosecution of major violators of controlled substance laws operating at interstate and international levels.
> - Investigation and preparation for prosecution of criminals and drug gangs who perpetrate violence in our communities and

The "not an agency" claim is not wholly baseless—just wrong. Based on little to no analysis, a handful of district courts—often against (non-attorney) pro-se litigants—erroneously bought into the unfleshed-out idea that DEA is not an "agency" under § 552(f), just a component of DOJ. *See, e.g.*, *Brown v. DOJ*, 2015 WL 1237274, at *1 (E.D. Cal. Mar. 17, 2015); *Dorsey v. Exec. Off. for United States Att'ys*, 83 F. Supp. 3d 347, 351 n.1 (D.D.C. 2015) (Sullivan, J.).[2] To my knowledge, however, no appellate court has ever endorsed this view. *But see Peralta v. U.S. Attorney's Off.*, 136 F.3d 169, 173 (D.C. Cir. 1998) (considering argument waived but expressing skepticism of its correctness in dictum). *See also, e.g.*, *Aguiar v. DEA*, 865 F.3d 730, 732 (D.C. Cir. 2017) (Garland, J.) (appeal in FOIA case, neither the Court nor the parties identifying that DEA is not an "agency" subject to FOIA); *Coleman v. DEA*, 714 F.3d 816, 828 (4th Cir. 2013) (similar). And I would be surprised if one ever would. Given scrutiny, the notion rapidly falls apart. *See San Luis & Delta-Mendota Water Auth. v. DOI*, 2016 WL 410837, at *5 (E.D. Cal. Feb. 3, 2016) ("[T]he issue was not thoroughly vetted in *Brown*, and Plaintiff points to numerous cases in which component agencies of Interior have been included as defendants in FOIA lawsuits").

According to 5 U.S.C. § 552(f), for the purposes of the FOIA statute, "agency as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." Section 551(1), in turn, defines agency to include "each authority of the Government of the United States, *whether or not it is within or subject to review by another agency*." (emph. added). Section 551(1) even acknowledges that it is incorporated by section 552. *Id.* ("…or except

---

[2]   In some of these cases, the footnote point appears to have not been raised by the parties but *sua sponte* by the deciding courts. For example, in *Brown*, it appears that neither the inmate *pro se* plaintiff nor Government lawyer argued that DEA was not an agency.

as to the requirements of section 552 of this title"). Because § 552(f) incorporates § 551(1), the fact that DEA is a component within the Department does not mean DEA is not an agency. And by its terms, § 552(f) takes the inclusive definition of "agency" in § 551(1) and includes *more*. It excludes nothing that is an agency under § 551(1). The text is unambiguous.

The legislative history of §552(f) (in the event the Court opts to turn to it despite the clear unambiguous "text, context, structure, and history" of the statute) is equally unambiguous. *See generally Texas v. United States*, 524 F. Supp. 3d 598, 637 (S.D. Tex. 2021). The Senate Report from the 1974 FOIA Amendments[3] adding § 552(f) explains that the new subsection "expands on the definition of agency as provided in section 551(1)." S. Rep. No. 93-854 (May 16, 1974) at 185. The specific reason for the amendment had to do with the United States Postal Service's assertion that, as a publicly funded corporation, it didn't fall within the ambit of § 551(1). *Id.* Section 552(f) "incorporates an *expanded* definition of agency to apply under the FOIA." *Id.* The House Report speaks to the same point with the same clarity:

> For the purposes of this section, the definition of "agency" has been expanded to include those entities which may not be considered agencies under section 551(1) of title 5, U.S. Code, but which perform governmental functions and control information of interest to the public. The bill expands the definition of "agency" for the purposes of section 552, title 5, United States Code. Its effect is to insure inclusion under the Act of Government corporations, Government controlled corporations, or other establishments within the executive branch, such as the U.S. Postal Service.

---

[3] FOIA's legislative history is available here: https://nsarchive2.gwu.edu/nsa/foialeghistory/legistfoia.htm. As I have pointed out since my Original Complaint filed in July 2022, this same Senate Report espouses a view that squarely addresses the issue and is flatly inconsistent with DOJ's unlawful "unusual circumstances" policy. *See* Dkt. 1 at 16, n.4 (quoting See S. Rep. 93-854 at 179-80 (May 16, 1974) ("The need to search for and collect records from field facilities or 'other establishments that are separate from the office processing the request' does not permit an extension while such an office obtains the records from the agency's own file, records, or administrative division when located in the same city as the processing office. Rather this is intended to cover the collection of records from other cities, or from a federal records center or other facility which is not part of the agency.")).

H. Rep. No. 93-876 (Mar. 5, 1974) at 128-29. And just in case there were further doubt, the Conference Report states: "The conferees state that they intend to include within the definition of 'agency' those entities encompassed by 5 U.S.C. § 551 and other entities including USPS …" H.R. Rep. 93-1380 (Sept. 25, 1974).

The textual and extratextual evidence thus independently show that § 552(f) supplements the coverage of "agency" in § 551(1). An agency under § 551(1) is also an agency under § 552(f).

DEA is certainly an "agency" under § 551(1), as are all other bureau-level entities housed in the Justice Department. *See* 28 C.F.R. § 0.1 (classifying DOJ principal organizational units as "Office," "Divisions," "Bureaus," or "Board"). These entities promulgate rules. They appear in court as parties. They are led by political appointees. They are, quite clearly, an "authorit[ies] of the Government of the United States." 5 U.S.C. § 551(1).

DEA, unlike other DOJ components, has its own set of regulations that it promulgates and codifies in a different section of the Code of Federal Regulations, the "Food and Drugs" section. *See* 21 C.F.R. § 1300 et. seq. Perhaps not every DOJ component, like the Antitrust Division, meets the definition of an agency. But components like DEA that conduct themselves as agencies are still agencies under § 551(1) and § 552(f). *See Sussman v. U.S. Marshals Serv.*, 808 F. Supp. 2d 192, 198-99 (D.D.C. 2011) (properly interpreting the statutes, analyzing the issue, and concluding that U.S. Marshalls Service and FBI were agencies subject to FOIA); *see also, cf. Am. C.L. Union of S. California v. DHS,* 2017 WL 7803788, at *1 (C.D. Cal. June 21, 2017) ("CBP is a component of DHS and aa federal agency under 5 U.S.C. § 552(f)(1)"). So, they all need Chief FOIA Officers.

Indeed, in the case of DEA, the "agency" issue is crystal clear, for what created it, Reorganization Plan No. 2 of 1973—enacted right before the 1974 FOIA Amendments—brands DEA as "an agency" within the Department:

> *There is established in the Department of Justice **an agency** which shall be known as the Drug Enforcement Administration, hereinafter referred to as "the Administration."*

38 F.R. 15932, 87 Stat. 1091 (1973). If "[i]t would be a tall piece of statutory construction for a court to say that an 'establishment in the executive branch' as used in § 2286(a) is not an 'establishment in the executive branch' within the meaning of § 552(f)," *Energy Rsch. Found. v. Def. Nuclear Facilities Safety Bd.*, 917 F.2d 581, 582–83 (D.C. Cir. 1990), then it is an even taller piece of statutory construction for DOJ to say that "an agency" in the Department of Justice *is not an "agency."* If it walks like an agency, talks like an agency, and *Congress calls it an agency in the statute creating the agency*—it's got to be an "agency."

### B. I Have Standing to Complain About DEA's FOIA Office and It Having No Lawfully Designated Chief FOIA Officer

On a recent phone call, the Government questioned my standing to present a grievance about the absence of a lawfully appointed Chief FOIA Officer. It's a good question. Ordinarily, I might agree. To have constitutional standing, a plaintiff must show a concrete injury traceable to the actions of the defendant that will likely be redressed in some way by a favorable decision. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *FEC v. Akins*, 524 U.S. 11, 25 (1998). Shake my fist at the government all I want, that doesn't give me ticket to federal court. *See Flast v. Cohen*, 392 U.S. 83, 106 (1968) (taxpayer lacks standing "to employ a federal court as a forum in which to air his generalized grievances about the conduct of government or the allocation of power in the Federal System").

But here, my fist shakes *and* my ability to service clients and write news pieces aches. I suffer clear, concrete harm that flows directly out of how DEA unlawfully structures its FOIA Office, including its unlawful failure to designate a senior official as its Chief FOIA Officer.

Start with injury. The central issue in this case is a DOJ policy that has DOJ components (including agencies, like DEA) deem all records outside of the FOIA processing apparatus as raising "unusual circumstances." Those that work in the DEA FOIA Office have access to virtually no agency records. *See* Ex. A at 57:7-58:2, 59:15-60:21, 61:12-63:19, 65:2-65:16, 70:14-71:7, 71:17-73:22, 74:20-75:9, 76:10-77:6. Also, DEA has no Chief FOIA Officer that is a senior official. Because of this unlawful arrangement—*both* an unlawful "unusual circumstances" policy *and* the absence of a lawfully designated Chief FOIA Officer—I can't get access to information to which I am lawfully entitled. This information would help me in my representations and journalistic enterprises. The inability to obtain information for these purposes is classic injury-in-fact that is personal to me. *See, e.g.*, *Akins*, 524 U.S. at 21.

Next, traceability. To determine traceability, the relevant inquiry is whether my injury can be traced to the unlawful conduct, not to the provision of law challenged. *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021). There is no doubt that my injuries are directly traceable to DEA's unlawfully structured FOIA Office. Indeed, if DEA had a senior official serving as its Chief FOIA Officer, I might not be in Court.

A FOIA Office with a senior official at its helm has far greater domain—and far more actual or constructive access to agency records. In other words, if the agency followed the law and properly designated a senior DEA official as its Chief FOIA Officer, its FOIA Office would be commensurately bigger and there would be fewer records "outside" the FOIA Office subject to the "unusual circumstances" policy. And thus, I would get access to the information because the unusual circumstances policy would apply far less frequently even on its own (unlawful) terms.

For the same reason, there is redressability. Ending this unlawful agency arrangement and resolving the issue in my favor would at least partially if not wholly redress my grievance. *See,*

*e.g.*, *Collins*, 141 S. Ct. at 1779 (2021) ("[A] decision in the shareholders' favor could easily lead to the award of at least some of the relief that the shareholders seek."); *see also Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477 (2010) (challenge to removal restriction where plaintiffs claimed injury from allegedly unlawful agency oversight).

Last, as an attorney and journalist, I am also plainly within the zone-of-interest of FOIA generally and § 552(j). *See Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 389 (1987) (to state an APA cause of action, complaint must be arguably within the "zone of interests" to be protected or regulated by the statute in question). *See also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014) (explaining that the zone-of-interests requirement goes to whether a complainant has a cause of action, not standing).

Bottom line: DOJ is gerrymandering FOIA out of existence to my detriment. It is doing this with *both* bunk statutory interpretation *and* structurally, i.e., by not having a lawful Chief FOIA Officer at the helm of DEA. The Department wants DEA to not be an agency, so it doesn't need a Chief FOIA Officer. Then, it wants its headless FOIA Office to be insular and cut-off from the rest of the agency so it can apply its unlawful "unusual circumstances" policy to all FOIA requests and override default statutory timelines as a matter of course. DOJ is structuring its component FOIA offices to fail, and any part of this unseemly arrangement faltering douses this statutory conflagration. So, I'm complaining about all of it.

Here, if the Court holds that DEA is an agency and requires it to lawfully designate a senior official as a Chief FOIA Officer, the FOIA Office would now include actual records and I would be able to get a timely response to at least some FOIA requests. For standing, that's enough.

**V.   Conclusion**

For the reasons stated above, the Court should enter summary judgment and hold that the United States Drug Enforcement Agency is an "agency" under § 552(f).

Dated: February 23, 2023                    Respectfully submitted,

                */s/ Matthew C. Zorn*
                Matthew C. Zorn
                YETTER COLEMAN LLP
                mzorn@yettercoleman.com
                811 Main Street, Suite 4100
                Houston, TX 77002
                T: (713) 632-8000
                F: (713) 632-8002

                Shane Pennington
                VICENTE SEDERBERG LLP
                1115 Broadway, 12th Floor
                New York, NY 10010
                T: (917) 338-5455
                F: (303) 860-4505
                s.pennington@vicentesederberg.com

                ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                */s/ Matthew C. Zorn*
                Matthew C. Zorn

## WORDS

I certify that this filing has 4208 words, excluding the case caption, table of contents, table of authorities, signature block, and certificates.

                */s/ Matthew C. Zorn*
                Matthew C. Zorn