UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW C. ZORN, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:22-cv-02396 |
| U.S. DEPARTMENT OF JUSTICE, ET AL. | § § § § | |
| Defendants. | § § | |

**ZORN'S MOTION FOR TARGETED DISCOVERY**

**I.      Introduction**

This is a case between me, Plaintiff Matthew Zorn, a partner at Yetter Coleman LLP, and the U.S. Department of Justice (DOJ) and the U.S. Drug Enforcement Administration (DEA). The case largely concerns Freedom of Information Act (FOIA) policies and practices.

My operative pleading asserts four categories of general claims related to my inability to access information from DOJ/DEA that should be public:

1. DOJ/DEA has an admitted pattern/practice of applying FOIA's "unusual circumstances" exception to remove statutory deadlines on determinations any time a component FOIA office does not "have access" to records and must go "outside" the FOIA office to gain access. This misconstrues the statutory language and is unlawful. (The PPP or "unusual circumstances" claims) (*See* Dkt. 21 at 32-35; 1st and 2nd Causes of Action)

2. DEA has unlawfully designated Kelleigh Miller as its Chief FOIA Officer, who is not an employee not at "Assistant Secretary or equivalent" as 5 U.S.C. § 552(j) requires. (The Chief FOIA Officer claims) (*See* Dkt. 21 at 35-36; 3rd, 4th, 5th Causes of Action)

3. DOJ/DEA violated and continues to violate 5 U.S.C. § 552(a)(2) by not making available for public inspection policies and interpretations/policies relating to FOIA and staff manuals/instructions that affect members of the public. (The Affirmative Disclosure claim) (*See* Dkt. 21 at 37, 6th Cause of Action)

4. DEA's recordkeeping practices and FOIA policies/practices effectively make DEA proceedings non-public and deny the public timely access to important records related to its proceedings. (The First Amendment claim) (*See* Dkt. 21 at 38-39, 8th Cause of Action)

In early January 2023, I took the corporate deposition to determine the existence and scope of the "unusual circumstances" policy and practice, how DEA's FOIA Office operates, and how DEA's FOIA Office and policies relate to the broader Department. Dkt. 19. Following the deposition, the parties agreed to dispose of this case on the papers. *Id*. The Court entered the Case Management Order providing for same. Dkt. 20. Then, a few things happened.

In the deposition, the Department admitted to facts showing that DEA had an unlawfully designated Chief FOIA Officer: (1) DEA is an agency, and (2) the corporate witness—who had introduced herself as DEA's Chief FOIA Officer and testified to same—was not at the "Assistant Secretary or equivalent level" as 5 U.S.C. § 552(j) requires. A week before the deadline for my summary judgment motion according to the original schedule, however, the Department changed its positions via errata under Rule 30(e)(1). Now, with the new testimony, the Department appears to contend that (1) DEA is *not* an "agency" under §552(f), and (2) the corporate deponent is not DEA's Chief FOIA Officer. *See* Dkt. 25-2 (errata).

Hence, this Motion. I moved for partial summary judgment on whether DEA is an agency because I believe the contention to be without merit as a matter of law. I maintain that contention. Nonetheless, the Department's recent shifty conduct raises several questions that warrant further inquiry and targeted discovery. For these reasons, I am requesting targeted discovery so that this case can (again) be fully resolved on the papers on a record with clear facts:

1. A 4-hour personal deposition of Bobak Talebian, Director of Office of Information Policy (OIP).

2. A 4.5-hour corporate deposition of DOJ/OIP.

3. An order that the Department produce all written policies for processing and handling FOIA requests and verify to the Court, in an affidavit/declaration the process used to search and produce such records.

**II.     Background and Posture**

I am a second-year partner at Yetter Coleman LLP. My practice focuses on high-stakes commercial litigation, particularly IP litigation. *See generally* Dkt. 28-1.

Several years ago, starting with pro-bono representations, I began litigating cases against agencies in the drug policy space. Relevant here, on behalf of clients, I submit FOIA requests to DEA. Most if not all these client requests relate to an administrative process or proceeding before DEA that involves those clients. I also run a newsletter on drug policy issues called On Drugs. *See* https://ondrugs.substack.com/. My newsletter reports on, among other things, drug policy developments with an eye toward legal nuances. In a journalist capacity, I make FOIA requests on my own. *See generally* Dkt. 28-1.

Soon after I began regularly making FOIA requests of DEA, I noticed a pattern in how it responded: they all raised "unusual circumstances." FOIA requires each agency decide whether to comply with a FOIA request within 20 business days of receipt. 5 U.S.C. 552(a)(6)(A)(i). But when there are "unusual circumstances," an agency may defer a decision past those time limits. 5 U.S.C. 552(a)(6)(B). The statute defines "unusual circumstances." 5 U.S.C. 552(a)(6)(B)(iii). Relevant here, with precatory language "only to the extent reasonably necessary to the proper processing of the particular requests," one of them defines "unusual circumstances" as "the need to search for and collect the requested records from field facilities or other *establishments that are separate from the office processing the request*." (emph. added).

After some follow-up, a DEA employee told me it was DEA policy to deem any FOIA request that required collecting records *not in the FOIA* Office as raising "unusual circumstances," i.e., as "establishments that are separate from the office processing the request." Because this is an obvious misreading of the statute, I sued. Dkt. 1.

### A. The Court Orders a Corporate Deposition and the Production of Documents.

The Government moved to dismiss arguing, among other things, that I did not allege a plausible pattern, practice, or policy. Dkt. 8 at 2, 13-17 (arguing I failed to "connect-the-dots"). The Court held a status conference in Fall 2022. Dkt. 10. There, I laid out the alleged facts to Judge Hughes. Because the Government disputed whether it had a policy, there appeared to be a dispute of fact. So, I asked for a corporate deposition. The Court ordered one. Dkt. 13. DOJ objected to the scope of the deposition and its involvement, Dkt. 12, which the Court overruled, Dkt. 13.

The court-sanctioned deposition notice included topics such as the "structure and operation of the DEA FOIA office" and "policies/interpretations have Defendants adopted for processing FOIA requests." Dkt. 16 (deposition notice) at 4-5. Some topics expressly included DOJ. The notice also required the production of (1) "Internal FOIA staff manuals or documents distributed, used, or relied upon by DEA or DOJ personnel to process and respond to FOIA requests" and (2) "All written (public and non-public) policies for processing FOIA requests." *Id.* at 6.

I took the deposition in early January 2023. Dkt. 19, Dkt. 25-1 (Deposition Transcript or "Dep"). I then filed an amended pleading, incorporating what I learned. Dkt. 21. As my Second Amended Complaint shows, Dkt. 21, in just four hours on the record, the corporate deposition revealed more FOIA violations:

- The corporate deponent—who introduced herself as DEA's Chief FOIA Officer with no prompting—admitted she did not meet the statutory requirements for an agency Chief FOIA Officer.

- The corporate deponent admitted facts showing that DOJ/DEA has agency materials about the processing of FOIA requests that must be disclosed under FOIA's reading room provisions but are not.

- The corporate deponent admitted to lackluster record keeping practices that makes it all but impossible for anyone but agency officials to timely access materials from DEA's administrative adjudications and hearings—even when those materials might be needed for an ongoing hearing. *See generally* Dkt. 21.

After the corporate deposition, the parties agreed to a briefing schedule to efficiently dispose of this case on the papers, which the Court ordered. Dkt. 20.

> **B.     DOJ Produces Documents It Said It Didn't Have. Then, It Changes Its 30(b)(6) Deposition Testimony.**

In advance of the deposition, the Government produced responsive documents. I skimmed the Government's production. I sensed a deficiency. The next day, I responded and identified the deficiency, writing that "[o]n first glance, it doesn't appear to me that DOJ's production is complete." Ex. 1 (12/29/22 e-mail). Identifying the first and second document requests, I explained that I did not believe DOJ (*specifically OIP*) had complied with the Court's order. *See id.* I asked the Government to "confirm that DOJ has conducted a reasonable search and collection for responsive records and has made its production, or alternatively, no additional records exist." *Id.* (Days later, it so confirmed by phone.)

During the deposition, however, it became evident that DOJ (specifically OIP) had not produced all non-public written policies. Dkt. 25-1 (Dep.) at 209:17-217:14 (describing secret policy regarding the redaction of names in response to FOIA requests). And weeks after deposition, DOJ (through OIP) produced a record that, quite clearly, is a document that should have been produced before or at the deposition in response to the Court's order for production: a November 2017 Guidance Memo that outlines a secret DOJ policy on redacting the names of DOJ employees in FOIA productions. Ex. 2 (2/13/23 Rodriguez e-mail); Ex. 3 (11/30/17 Guidance Memo)

Days later, the Government served errata to the corporate deposition. Dkt. 25-2 (errata signed 2/16/23). The errata document makes two 180-degree changes to DOJ/DEA's testimony:

1. DEA is not an agency.
2. Kelleigh Miller is not the Chief FOIA Officer for DEA.

**III. Legal Standard**

In a civil action, unless ordered otherwise by the court any party:

may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

**IV. Summary of My Argument**

I seek targeted discovery relevant to my claims and defenses and proportional to the needs of this case, considering the importance of the issues at stake, the minimal burdens and expense of the proposed discovery, and DOJ's discovery conduct.

This is not an ordinary FOIA case. Rather, the issues relate to troubling DOJ policies and practices of responding to FOIA requests. These policies systematically erode timelines and undermine the ultimate purpose of FOIA—accountability. Although resolution of my claims largely turns on deciding legal questions (i.e., statutory construction), it is in the interests of justice for the Court to have a precise and accurate account of the facts on which it will base its decisions.

**V. The Precise Discovery Sought**

1. A court order requiring OIP, in advance of the corporate deposition (No. 3 below), (a) search for and produce ***all*** policies relating to the processing of FOIA requests and the production of records in response to FOIA records, and (b) produce an affidavit documenting the steps FOIA took to collect and produce records;

2. A 4-hour personal deposition of Bobak Talebian, director of OIP; and

3. A 4.5-hour corporate deposition of DOJ/OIP, prepared to testify clearly and accurately on DOJ's policies with respect to FOIA, such as: how DOJ processes FOIA requests Departmentwide, the identity of DOJ/DEA's Chief FOIA Officer, the activities of DOJ/DEA's Chief FOIA Officer, how DOJ's Chief FOIA officer supervises FOIA compliance by DOJ components, and how OIP advises components on FOIA compliance. Also, the witness should be prepared to address the circumstances

surrounding the corrected 30(b)(6) testimony and any factual matters discussed in the affidavit requested in Number 1 above.

## VI.  Argument

### A.  The Federal Rules of Civil Procedure Govern Discovery.

There is just one form of action: "the civil action." Fed. R. Civ. P. 2. The Federal Rules govern all civil actions. Fed. R. Civ. 1. No Federal Rule restricts discovery in civil cases arising under FOIA or civil cases against the Government any more than civil cases in other settings.

That said, the Government argues that discovery is typically not permitted in FOIA cases. It is right. *See, e.g.*, *Schiller v. I.N.S.*, 205 F. Supp. 2d 648, 654 (W.D. Tex. 2002) ("Typically, discovery is not part of a FOIA case, and the decision whether to allow discovery rests within the discretion of the district court judge.... When discovery is permitted it is to be 'sparingly granted.'"). This practice does not emanate from some special rule. Rather, it is a gloss on Rules 1 and 26 that stems from the "circumscribed nature" of FOIA cases. FOIA cases generally involve answering two questions: "(1) whether an agency adequately searched for documents and (2) whether it properly withheld documents that it found during its search." *Withey v. Fed. Bureau of Investigation*, 2020 WL 885974, at *1 (W.D. Wash. Feb. 24, 2020). Rather than provide discovery in FOIA cases—thereby awarding FOIA plaintiffs the very remedy they seek—courts permit agencies to submit declarations laying out the relevant facts and give those declarations a presumption of good faith. *See id.* When discovery is warranted, it usually only extends to the sufficiency of the agency's search, its method for keeping documents, and the like. *See Schiller*, 205 F. Supp. 2d at 653.

Bottom line: in a run-of-the-mill FOIA case *where the non-production of specific records is at issue*, the "just, speedy, and inexpensive" determination usually does not call for much, if any, discovery.

But of course, this isn't a normal FOIA case seeking records in response to a denied FOIA request. Rather, it is a civil case premised on patterns, practices, policies, and appointments that violate the FOIA statute. Unlike the normal FOIA case, the questions here are more involved. They are complex. And there appear to be some disputed or unclear facts. I am seeking to discern the nature/scope of DOJ's disregard of FOIA's statutory timelines and the nature/circumstances surrounding who serves as DOJ/DEA's Chief FOIA Officer (a matter that remains unclear). I also allege that DOJ has secret FOIA policies that it has not disclosed in violation of FOIA's affirmative disclosure provisions. While I proved DOJ's affirmative disclosure violation at the deposition, the full scope of the violation remains unclear. Nor am I seeking records in discovery that are subject to any of my requests. Rather, I am seeking to discover facts related to DOJ's improper FOIA practices and implementation.

Thus, this case involves answering completely different questions than those presented in normal FOIA cases. None of the case law and authority described above applies. Rather, the inquiry before the Court here is the same as any other case: is the targeted discovery I am requesting proportional to the needs of this case to bring this case and favorable to securing a "just, speedy, and inexpensive" and determination? As I next argue, the answer is "yes."

      **B.**      **The Requested Discovery is Proportional to the Needs of this Case and in the Interests of Justice.**

*First,* as explained above, this is not a run-of-the-mill FOIA case where discovery is disfavored. Rather, this is a PPP case arising under FOIA. So, while I agree that there is no need to do full-fledged discovery in this case—indeed, I have no desire to do full-discovery—there is also no jurisprudential bent against discovery in this case.

The closest case might be *Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d 1184, 1190 (N.D. Cal. 1998). There, like here, the plaintiff asserted a claim that the defendant agency had a

pattern and practice of untimely responses to FOIA requests. The plaintiff brought a FOIA PPP claim. After the Court concluded that it had subject matter jurisdiction over the PPP claim and that the plaintiff had standing to assert it, it concluded discovery could commence "within the limits set forth in the Federal Rules of Civil Procedure." The court permitted the plaintiff to take "precise discovery" relating to the agency's "processing of FOIA requests," including "the resources allocated to ensure its compliance with the FOIA time limitations." So too here.

*Second*, even if this Court were to apply a presumption against discovery, that presumption is overcome by unusual circumstances.[1]

For starters, the record suggests OIP did not perform an adequate and reasonable search of its records in response to a Court order for production. The Court ordered DOJ produce "Internal FOIA staff manuals or documents distributed, used, or relied upon by DEA or DOJ personnel to process and respond to FOIA requests" and "All written (public and non-public) policies for processing FOIA requests." *See* Dkt. 16 at 6. During the corporate deposition, however, it became evident that DOJ had not performed a complete search and production. At least one significant unpublished policy had not been produced. Dkt. 25-1 (Dep.) at 209:17-217:14 (describing secret policy regarding the redaction of names in response to FOIA requests).

Discovery should be permitted on this basis alone. As discussed above, this flavor of discovery is typically available upon a showing of good cause even were this a run-of-the-mill FOIA case. *See, e.g., Cole v. Fed. Emergency Mgmt. Agency*, 340 F.R.D. 485, 488 (D.D.C. 2022) (permitting 20 interrogatories, 10 requests for production, and two 30(b)(6) depositions on adequacy of search); *see also Black Hills Clean Water All. v. United States Forest Serv.*, 2022 WL 4365875, at *3 (D.S.D. Sept. 21, 2022) (permitting discovery on adequacy of search).

---

[1] "Unusual circumstances" in terms of the discovery in this case, of course, not FOIA.

Also, it is standard to permit additional deposition time when substantive errata are made. *See, e.g.*, *United States ex rel. Robinson v. Indiana Univ. Health Inc.*, 204 F. Supp. 3d 1040, 1046 (S.D. Ind. 2016) (granting an additional 2 hours of deposition over particulars of errata sheet); *TG Plastics Trading, Co. v. Toray Plastics (Am.), Inc.*, 2013 WL 322121, at *3 (D.R.I. Jan. 28, 2013) (requiring defendant to reproduce witness for deposition at defendant's expense because of substantive errata).

*Citizens for Resp. & Ethics in Washington v. DOJ*, 2006 WL 1518964, at *1 (D.D.C. June 1, 2006) is also instructive. There, the Court permitted the plaintiff to depose four individuals: (1) the Associate Attorney General (2) the Director of the Office of Information and Privacy (3) the individual responsible for assembling documents responsive to the plaintiff's FOIA requests and (4) the attorney in charge of DOJ Civil Division's FOIA processing. Each deposition was limited to 5 hours total. The court permitted this discovery because of sufficient evidence showing irregularities as to whether the government had processed the plaintiff's FOIA requests in a reasonable and expeditious manner. *Id.* at *3. Here, the sum total of the conduct and circumstances before the Court reveal irregularities.

*Third*, I should be able to explore the reasons behind the last-minute substantive changes to deposition testimony. With its errata, the Government provided no substantive explanation to me or the Court. Not even an affidavit. Rule 30(e)(1) requires that errata include "reasons" for substantive changes. The only reasons provided is that the witness made a mistake. That is no reason at all and is grounds for striking the errata entirely. *E.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 277 F.R.D. 286, 295 (E.D. Va. 2011).

As explained previously, whether DOJ should be permitted change its testimony (by 180 degrees) an open question. Many courts forbid the practice. *See, e.g.*, *E.E.O.C. v. Skanska USA*

*Bldg., Inc.*, 278 F.R.D. 407, 412 (W.D. Tenn. 2012) (deponent cannot change answer from "yes" to "no"). Rather than seek default or have conflicting testimony in the record, I am seeking another deposition to obtain clarity and explore the implications of DOJ's new testimony—something I could have done had DOJ provided accurate testimony in the first instance.

Indeed, there are some reasons to doubt that the new, changed testimony is accurate. The witness repeatedly testified with no uncertainty that she was DEA's Chief FOIA Officer. Also, she testified that she herself performed the statutory functions of a Chief FOIA Officer in 5 U.S.C. § 552(j)(2). Dkt. 25-1 (Dep.) 33:1-40:2. She explained, for example, that DEA completes a Chief FOIA Officer report annually and sends the report through the DOJ chain of command. *Id.* 35:8-16. How is DEA completing a Chief FOIA Officer Report if it has no Chief FOIA Officer (and is not an agency)? She said she prepared for the 30(b)(6) deposition topic on the structure/operation of DEA's FOIA Office but had no idea that Gupta served as Chief FOIA Officer. *Id*. 55:9-56:12.

Unfortunately, based on this current record, it is impossible to rule out that up to the deposition, the witness *was* DEA's Chief FOIA Officer; and that after I proved that her designation (and many other Chief FOIA Officer designations in other agencies) to be patently unlawful, DOJ flipped the script by taking a new position that DEA is not an "agency" and therefore, does not need a Chief FOIA Officer. I should be entitled to prove the who/what/when/where/why/how of the changed 30(b)(6) testimony. The facts may show that Ms. Miller is DEA's Chief FOIA Officer in all but name (i.e., she performs all the functions of a Chief FOIA Officer) and that DOJ is shuffling around the title and agency status as a sham to avoid violating a Congressional command.

*Fourth*, for similar reasons, I have questions about whether Vanita Gupta, in fact, performs the functions of DOJ's Chief FOIA Officer as mandated by 5 U.S.C. § 552(j)(2). DOJ's own testimony creates a dispute of fact on this question. Indeed, it suggests she does not perform the

functions required of the office. The corporate witness (who oversees FOIA at DEA) testified that she did not interact with Gupta who, according to the Department, allegedly serves as the Chief FOIA Officer for the entire Department. Dep. at 35:17-36:13. Indeed, DOJ's corporate deponent did not even know Gupta's name. *See id.* Rather, than interface with Gupta, DOJ's FOIA chief interacts with Bobby Talebian and his staff. *Id*. at 35:1-37:15. All this suggests it is he—not Gupta—that performs the functions and duties of DOJ Chief FOIA Officer.

Congress required each agency designate a Chief FOIA Officer, and it gave that designated senior official enumerated statutory duties to improve FOIA transparency and accountability. *See* Dkt. 25-3 (AFL report) (the Government "is systematically violating the Freedom of Information Act to shield its activities from public view … [T]o ensure public transparency and political accountability, the FOIA Improvements Act of 2016 requires each government agency to designate a Chief FOIA Officer who is a senior official at least at 'the Assistant Secretary or equivalent level' …"). Boiled down, by requiring every agency appoint a senior official to perform these functions, Congress wanted each agency to treat FOIA seriously—or at least create that appearance. It is important to know whether and to what extent Gupta in fact performs the functions of Chief FOIA Officer, supervises the work of others that perform the functions of Chief FOIA Officer, or (more likely) if she holds the title ceremonially while others at DOJ perform the statutory functions and duties of her designated office. This is relevant to my pleaded claim. Dkt. 21 at 35-36.

*Fifth*, the circumstances of this case raise questions as to whether OIP personnel have arbitrarily and capriciously established policies, practices, and interpretations—such as DEA not being an "agency"—that result in DOJ unlawfully withholding information from me and the public. In the event I prevail, this may be relevant to equitable remedies the Court may order. *Cf.* 5 U.S.C. § 552(a)(4)(F).

*Sixth*, should DEA not be an "agency" under 5 U.S.C. § 551(f) as a matter of law, I should be able to take jurisdictional discovery on DEA's "agency status." *See, e.g.*, *Citizens For Resp. & Ethics in Washington v. Off. of Admin.*, 2008 WL 7077787, at *2 (D.D.C. Feb. 11, 2008) (providing for limited jurisdictional discovery on whether the Office of Administration, Executive Office of the President was "agency" subject to FOIA). *See also Citizens for Resp. & Ethics in Washington v. Off. of Admin.*, 559 F. Supp. 2d 9, 11 (D.D.C. 2008) ("Quite frankly, the parties' discovery in this action reveals that OA's functions, which are strictly administrative, in large part distinguish it from the EOP components previously considered by the D.C. Circuit, which perform more substantive functions.").

*Seventh*, the targeted discovery sought is tailored to meet the above-described needs of this case. Eight-and-a-half hours of total deposition testimony and a targeted document production is not a big ask. A properly prepared 30(b)(6) witness on behalf of DOJ/OIP and Mr. Talebian—its director and who has unique personal knowledge and expertise in the matters at hand—should be able to answer the outstanding questions in this case.

## VII.  Conclusion

The record shows the Government taking inconsistent positions in real-time. Because of the Government's discovery conduct, there are several facts that should be clarified. For this reason and the reasons stated above, the Court should grant my Motion.[2]

---

[2] Rule 37 provides more authority for targeted discovery since, as explained above, (1) the Court ordered a corporate deposition and document production and (2) DOJ did not fully comply.

Dated: March 24, 2023                                   Respectfully submitted,

/s/ Matthew C. Zorn
Matthew C. Zorn
YETTER COLEMAN LLP
mzorn@yettercoleman.com
811 Main Street, Suite 4100
Houston, TX 77002
T: (713) 632-8000
F: (713) 632-8002

Shane Pennington
VICENTE SEDERBERG LLP
1115 Broadway, 12th Floor
New York, NY 10010
T: (917) 338-5455
F: (303) 860-4505
s.pennington@vicentesederberg.com

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 24, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Matthew Zorn
Matthew Zorn

**WORDS**

    I certify that this filing has 4144 words, excluding the case caption, table of contents, table of authorities, signature block, and certificates.

/s/ Matthew Zorn
Matthew Zorn