IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

– – –

THE HONORABLE LYNN N. HUGHES, JUDGE PRESIDING

| | |
|---|---|
| AIMS INSTITUTE, PLLC, ET AL., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )    NO. 4:22-CV-02396 ) |
| MERRICK GARLAND, ET AL. | ) ) |
| Defendants. | ) |

CONFERENCE

OFFICIAL REPORTER'S TRANSCRIPT OF PROCEEDINGS

Houston, Texas

October 17, 2022

APPEARANCES:

For the Plaintiffs:  Shane Pennington, Esq.

For the Plaintiffs:  Matthew Zorn, Esq.

For the Defendant:  Jimmy Anthony Rodriguez, Esq.


Reported by:  Mary Nancy Capetillo, CSR, RPR, TRR
              Official Court Reporter
              United States District Court
              Southern District of Texas
              mary_capetillo@txs.uscourts.gov


     Proceedings reported by computerized stenotype

machine.

Conference
October 17, 2022

| | |
|---|---|
| 1 | PROCEEDINGS |
| 2 | THE COURT:  Mr. Rodriguez, whom do you |
| 3 | represent? |
| 4 | MR. RODRIGUEZ:  Your Honor, I represent |
| 5 | the United States. |
| 6 | THE COURT:  Mr. Pennington? |
| 7 | MR. PENNINGTON:  Yes, Your Honor. |
| 8 | THE COURT:  Whom do you represent? |
| 9 | MR. PENNINGTON:  The plaintiffs, AIMS |
| 10 | Institute, Dr. Sunnil Aggarwal, Kathryn Tucker, and |
| 11 | Matthew C. Zorn. |
| 12 | THE COURT:  So that would be the |
| 13 | plaintiffs? |
| 14 | MR. PENNINGTON:  Yes, Your Honor. |
| 15 | THE COURT:  Mr. Zorn? |
| 16 | MR. ZORN:  Your Honor, I am here to |
| 17 | represent myself as well as the other plaintiffs.  This |
| 18 | is a bit unusual for me, but that is the case. |
| 19 | THE COURT:  What is your -- what's your |
| 20 | background?  Are you just -- |
| 21 | MR. ZORN:  I'm a partner at Yetter |
| 22 | Coleman.  I also -- as far as this case is related, I |
| 23 | also run a newsletter where I publish news stories; and |
| 24 | I write opinion pieces as well.  So this is a FOIA case. |
| 25 | So it both relates to my practice as a lawyer but, also, |

Conference
October 17, 2022

1   I write stories relating to drug policy and defendants'
2   activities.
3            THE COURT:  I think I understand,
4   Mr. Rodriguez, can you explain to me from the position
5   of the United States why Congress passed the information
6   act?
7            MR. RODRIGUEZ:  I'll do my best, Your
8   Honor.  I'm, as you know, a humble AUSA.  I don't dare
9   to speak for Congress; but as I understand it, it's
10   about accessing records, about accessing documents.  The
11   government has lots of documents, and historically
12   they -- the public wasn't allowed to see them to
13   understand what the government was doing.  So Congress
14   passed FOIA to allow the public to access documents,
15   records, things that the government had in its files.
16   The unique thing about this case, it's a FOIA case; but
17   they're not seeking any documents; and that's the reason
18   why I filed the motion to dismiss, Your Honor.
19            THE COURT:  All right.  So what is your
20   client's characterization of what they are seeking?
21            MR. RODRIGUEZ:  So the plaintiffs are
22   complaining about the process by which my client is
23   using to process FOIA requests.  So the DEA invoked an
24   extension.  It's a relatively short extension, a number
25   of days, because they deemed it a complex request; and

                                                  Conference
                                              October 17, 2022

 1    the plaintiffs argue that that was wrong, and they

 2    shouldn't have invoked that extension.

 3                    So I understand what they're saying, but

 4    in our view the Fifth Circuit hasn't recognized this

 5    kind of claim.  As I said at the beginning, it's not

 6    about seeking documents.  It's a complaint about the

 7    procedures, the bureaucracy, the process; and that's

 8    something in our view that they have not properly pled,

 9    and that's why we move to dismiss it.

10                    THE COURT:  Is he the one with the

11    ineffective documents?

12                    MR. RODRIGUEZ:  I've spoken to Mr. Zorn;

13    and I believe that he's going to speak for the

14    plaintiffs, Your Honor.

15                    THE COURT:  Okay.  But you know what he's

16    going to say.  I don't.

17                    MR. RODRIGUEZ:  Yeah.  He -- Mr. Zorn is

18    one of the persons or entities that has requested

19    documents from the DEA.  So Mr. Zorn in his requests are

20    one of the ones we -- the DEA has invoked this extension

21    of time; and that's what they're complaining about, that

22    they allege that was wrong.

23                    THE COURT:  How long is the extension?

24    I'm sorry.  How long is the extension?

25                    MR. RODRIGUEZ:  I'm going to get this

1   wrong probably, and Mr. Zorn is far more immersed in

2   this.  I think it's 20 days or something, 10 or 20 days'

3   extension if we deem it a complex matter; but I could be

4   wrong on that, the exact days.

5                  THE COURT:  All right.  Let's make him

6   work.

7                  MR. ZORN:  Thank you, Your Honor.  So

8   we've been having a good working relationship so far,

9   and I appreciate that.  Let me explain to the Court.

10                  THE COURT:  You're lucky to have him.

11                  MR. ZORN:  I can see why, but let me

12   explain the policy in kind of common-sense terms.  The

13   first is this is not called an extension.  It's called

14   an unusual circumstances exception, and my complaint is

15   every single FOIA request I've filed with them has been

16   marked as unusual circumstances.  I asked them for a

17   poster, just a poster.  I told them who had it, and they

18   said they needed more time.  And it's not a 20-day

19   extension.  It's an indefinite extension.  There's no --

20   there's no -- they can delay as much as they want.  This

21   actually interfered with my representation of a client.

22                  I was in an administrative proceeding, and

23   I wasn't able to get it through the administrative

24   proceeding because there are no -- the discovery rules

25   are very different.  So I used FOIA.  That's what

1    Congress intended FOIA to be used for.  Then they said

2    unusual circumstances, and they didn't respond to my

3    request.  By the time they did respond to the request,

4    the proceeding was over.

5              So this unusual circumstances policy, let

6    me describe it for the Court.  The statute says if a

7    record is kept in an establishment that is separate from

8    the office processing the request, they can invoke it:

9    Unusual circumstances exception.  Congress included this

10   in the FOIA statute in the '70s because back then it was

11   possible that we would request something at -- from a DC

12   office, and it would be held in a Philadelphia office or

13   Los Angeles; and they would need more time to go search

14   it.

15             This is how the government construes it

16   today, and I kid you not.  If someone were to request a

17   record and this was the office processing the record and

18   it were kept in Judge Rosenthal's courtroom, they would

19   say that's unusual circumstances because they would have

20   to walk down the hall to another office.  They're saying

21   any record that is not kept in the FOIA processing

22   office, like the office that, like, processes these

23   requests, any document, any email -- which, by the way,

24   are kept on the cyberspace and they're not hard to

25   retrieve -- is unusual circumstances.  And as a result,

1   everything is unusual circumstances; and basically the

2   Department of Justice has created this giant policy

3   where they don't have to timely respond to anyone's

4   requests.  And it's absurd.

5           And so I'm here because it's interfering

6   with my advocacy.  It's interfering with my ability to

7   get records on a timely basis, and I want the Court to

8   stop it because they've perverted the statute.

9           THE COURT:  How many records of what kind

10  are kept in the FOIA's office itself?  Indirectly, he's

11  representing them.

12          MR. RODRIGUEZ:  I don't know, Your Honor.

13  I think Mr. Zorn did -- the fact that the DEA is

14  interpreting it as if it's not in the FOIA office and

15  it's in another office that they have -- in at least

16  some of these cases that he's complaining about have

17  invoked this exception.  I don't know how many they

18  keep, you know, on hand at the -- at the FOIA processing

19  center or office.

20          MR. ZORN:  Your Honor, it could be a

21  three-by-three closet.  I mean, I don't know what it is;

22  and this is -- this is my suggestion on how to proceed

23  with the case.  I don't want to drag this out.  I don't

24  think we need extensive discovery.  There doesn't need

25  to be a trial.  This is a summary judgment case.  I just

Case 4:22-cv-02396  Document 36  Filed on 04/05/23 in TXSD  Page 8 of 21

1  need some floor plans, answers to questions that you

2  asked.  A 30(b)(6) deposition is what I would -- my

3  preference would be of the Department of Justice and DEA

4  of a list of topics, and then we'll do this case on the

5  papers.

6           I mean, the legal issue, right -- we've

7  just described it -- is whether the statute is construed

8  one way or another; and -- but the questions you have,

9  we just need to get simple answers; and then we're done.

10 I don't want this to be a protracted case.

11           THE COURT:  In fairness to him, he doesn't

12 hang out at the FOIA office.

13           MR. RODRIGUEZ:  Right.

14           THE COURT:  He works here in town most of

15 the time.

16           MR. RODRIGUEZ:  Right.  And I agree that

17 this -- if the motion to dismiss is not granted and the

18 case moves forward, this is a case that would be

19 resolved on cross-motions for summary judgment.  It

20 primarily presents a legal issue, but our position is it

21 is still a FOIA case.  In FOIA cases discovery is the

22 exception, not the rule.  We should be provided an

23 opportunity to provide an affidavit with our summary

24 judgment explaining what we did and why we did it, and

25 we can provide information about the FOIA office.  And

Conference
October 17, 2022

1    then if at that point there's a problem and they believe

2    there should be discovery, then we can address whether

3    an exception to the rule prohibiting discovery in FOIA

4    should be allowed.  But that would be our position.

5                    THE COURT:  Are you proposing that the

6    government file an explanatory document where they write

7    who did what when?

8                    MR. RODRIGUEZ:  Yes, Your Honor.  And

9    that --

10                   THE COURT:  Where is the goody?

11                   MR. RODRIGUEZ:  Where is the document?

12   Right.  So, yes, that would be my proposal, Your Honor,

13   and that that affidavit or declaration --

14                   THE COURT:  I'm going to summarize his

15   position.  He doesn't want to know where the person was

16   captured.  He wants to know where they're buried.

17                   MR. RODRIGUEZ:  So that declaration, that

18   affidavit would accompany a motion for summary judgment.

19                   THE COURT:  With the document?

20                   MR. RODRIGUEZ:  With an explanation --

21                   THE COURT:  No, with the document.

22                   MR. RODRIGUEZ:  With the -- yes, Your

23   Honor.

24                   THE COURT:  We don't know that there is

25   one.  We don't know that -- and this is not my first

Conference
October 17, 2022

1    FOIA case.  They want to send more affidavits about why

2    they didn't do something that, however long it took, it

3    wouldn't take as long as getting them to do something;

4    and it seems to me we need a more substantive response.

5             If they want to come and tell us:  It's in

6    Charlie's office and he's been committed, so we're going

7    to go ahead and get somebody else to go in the office

8    and see what's in there, I can't see why that -- a great

9    big government, which has at this point had ample time

10   to do all kinds of things, can't just say:  This is the

11   document that you wanted.

12            The burden of answering requests is what

13   the act insists be done.  So if you can't do what the

14   act -- the principle of the act, shouldn't it go get

15   another job?  That's what you're saying:  We can't do

16   it; we can't do it.

17            MR. RODRIGUEZ:  I understand.

18            THE COURT:  The government creates the

19   mess, and then they say a year later that we don't know

20   what to do about that.  But they do know.  Everything's

21   filed, you know.

22            MR. ZORN:  Your Honor, might I suggest and

23   respond to Mr. Rodriguez a little bit briefly?  I don't

24   view this case as a typical FOIA case.  I understand --

25            THE COURT:  Okay.  You've got to speak up.

1          MR. ZORN:  Sorry.  I don't view this case

2     as a typical FOIA case.  What Mr. Rodriguez is saying,

3     they're going to include an affidavit with their summary

4     judgment motion.  I would like to see that affidavit

5     before the summary judgment motion.  I think that's what

6     I would be entitled to see.

7          It's a pattern/practice claim.  I'm not

8     concerned about -- I would like to know how these

9     particular requests are processed, but this is a

10     government policy; and it's disturbing, and I would like

11     to get answers.  Yeah.

12          THE COURT:  My government too.  I deal

13     with it a lot.  Mr. Pennington, do you want to --

14          MR. PENNINGTON:  Yes, Your Honor?

15          THE COURT:  -- help me?

16          MR. PENNINGTON:  Help you?

17          THE COURT:  Please.

18          MR. PENNINGTON:  Yes, Your Honor.  Well, I

19     think that I would just reiterate what Mr. Zorn has

20     said, that really what we're after here is to know what

21     possible justification there could be for a policy that,

22     you know, categorily delays access to public records

23     that we're entitled to under FOIA.

24          And it appears from the motion to dismiss

25     that the Government's position is that that policy might

Conference
October 17, 2022

1    not exist; and to the extent that that is the

2    Government's position, very limited discovery would root

3    that out and get to the bottom of that and move on to

4    summary judgment.  If there is this policy, the only

5    question for you is whether it's legal.  So that's why

6    we're here.

7             THE COURT:  The policy of:  We'll get to

8    it when we want to?

9             MR. PENNINGTON:  Not -- well, that's part

10   of it; but the primary issue is when you file a request

11   if the document you're looking for isn't in the office

12   of the FOIA officer processing the request, like

13   literally sitting on their desk or, I guess, in a file

14   in that office, then they say that it's unusual.  And

15   since it's unusual, which it's not -- it's absolutely

16   the usual; but they say it's unusual; and, therefore,

17   they get extra time, an indefinite amount of extra time

18   which, as Mr. Zorn explained, often effectively means no

19   access to records when the public needs them and

20   directly undermines the purpose of FOIA.

21            THE COURT:  What are the agencies

22   involved?

23            MR. PENNINGTON:  The United States Drug

24   Enforcement Administration, which is a component of the

25   Department of Justice; and that is the only agency that

Case 4:22-cv-02396  Document 36  Filed on 04/05/23 in TXSD  Page 13 of 21

1  we're concerned about in this case.

2              THE COURT:  Do you know where its

3  headquarters is?

4              MR. PENNINGTON:  Washington, D.C.  Pardon

5  me, Your Honor.  Is DEA in Virginia?

6              MR. RODRIGUEZ:  DEA is in Arlington,

7  Virginia.

8              MR. PENNINGTON:  Sorry.  Yeah, I want to

9  correct that.  The Drug Enforcement Administration's

10  headquarters is in Arlington, Virginia.  DOJ's

11  headquarters is in Washington, D.C.

12              MR. ZORN:  And, Your Honor, we believe

13  it's a DOJ policy; but DEA is the one receiving the

14  request, but we think it's a Department of Justice

15  policy.

16              THE COURT:  The agency with the document,

17  that is an agent -- a document of that agency?  And has

18  anyone told you that:  We have it; we just can't get to

19  it?

20              MR. PENNINGTON:  So the statute requires

21  them to make a determination whether they'll be able to

22  produce the records within 20 days, and the issue is

23  whether and when they are required to make that

24  determination.

25              Their position is:  We're not saying

Case 4:22-cv-02396   Document 36   Filed on 04/05/23 in TXSD   Page 14 of 21

1    whether the documents exist or whether we can give you

2    those documents.  We're just telling you they're not in

3    the office of the person who received your request; and

4    as a result you fall into the unusual circumstances

5    bucket which puts you into administrative purgatory for

6    an indefinite period of time.  So before we even start

7    looking for the document, because it's not in the

8    recipient's office, the delay has already begun.

9            THE COURT:  So are we talking -- we're not

10   talking medical drugs?

11           MR. PENNINGTON:  Some of these requests

12   were related to administrative procedures that had to do

13   with medical -- medical drugs is kind of a loaded term

14   in this context, Your Honor.  I don't know if you

15   mean -- what you mean by that; but some of the processes

16   had to do -- some of these records had to do with

17   administrative proceedings involving drugs, regulated

18   drugs.

19           THE COURT:  But it's not criminal.  It's

20   not....

21           MR. PENNINGTON:  No, Your Honor.

22           THE COURT:  So that's why you're here this

23   morning.  What discovery would be reasonable before you

24   respond to the motion to dismiss?

25           MR. PENNINGTON:  I'd like for Mr. Zorn to

1  be able to speak to that, if he could, because he's the

2  one who knows more precisely which questions.  I think

3  that all that we would want is a 30(b)(6) deposition and

4  maybe the answer to -- answers to a few questions; but

5  Mr. Zorn can be more specific, I think, if that's okay.

6          MR. ZORN:  Yes, Your Honor.  Just one

7  30(b)(6) deposition, both defendants -- one 30(b)(6)

8  deposition, both combined, and then really targeted

9  document requests like a floor plan of the agency, for

10  example, five or fewer; I think that's basically all we

11  need.

12          THE COURT:  So a "cyber viewer"?

13          MR. ZORN:  No.  Like five or -- five or

14  fewer.  I mean, we would want to provide the Court like

15  statistics on this.  For example, like the exception is

16  unusual circumstances.  We'd like to know how many of

17  the hundred -- if you get a hundred, how many you mark

18  as unusual circumstances.

19          From our experience we're batting at

20  100 percent with a dozen.  But I think that it would be

21  useful for the Court to know:  Okay.  How often is

22  something unusual?  But that's the type of discovery we

23  need.  The only reason we need discovery, Your Honor, is

24  we -- we think there's a pattern, practice, and policy;

25  and the government is kind of denying it.  So we would

1    like a 30(b)(6) deposition.  That's the main discovery

2    we need, and we're ready to go to cross-motion and

3    summary judgment after that.

4              THE COURT:  The chunk of questions should

5    deal with what actually happens at the agency.  Who

6    opens the mail?  Who sorts it?  Why they do it.  And

7    then you address the responsiveness.  If it's not in

8    this office, where is it?  Second floor down, that's one

9    thing.

10              Now, if it's in Northern Montana where the

11    temperature's minus degrees -- many degrees, the request

12    can't get to them because there's no end, that we just

13    don't want to.  So I would like to see the questions

14    before I pass them on to him.

15              MR. PENNINGTON:  Your Honor, if I may.

16              THE COURT:  Yes, sir.

17              MR. PENNINGTON:  So we have a pending

18    motion to dismiss, and our response is due in a few

19    days; and, you know, if the Court has any questions

20    about that, you know, we'd be happy to discuss it.  You

21    know, our position, as we've laid out, is that this is a

22    summary judgment case; and the question seems to be

23    whether this policy exists, A.  B, is it lawful?  That's

24    why we want discovery; but there doesn't seem to be any

25    question that -- I mean, unless -- well, I should say he

1  is correct that the Fifth Circuit has not acknowledged

2  the pattern/practice claim under FOIA; but other courts

3  have including the Ninth Circuit and the DC Circuit.

4  This Court is, of course, free to say otherwise; and if

5  you were to do that, then we should lose; and the Court

6  should --

7           THE COURT:  What I can't understand is how

8  the government that is put there -- the unit of the

9  government that is put there to hand over copies -- and

10  this is not -- I think I mentioned -- not my first case

11  with these gentlemen.

12           MR. RODRIGUEZ:  Your Honor, I think the

13  legal issues that were being described -- I mean, they

14  could also be addressed in a motion for summary

15  judgment; and it may be the most efficient path forward

16  to just address all -- the legal issue and then this

17  issue about the documents in one shot; and then Your

18  Honor can resolve it once and for all, and we can all

19  move on with our very busy lives.

20           THE COURT:  Thank you.

21           MR. PENNINGTON:  That's what I meant to

22  say, Your Honor.

23           THE COURT:  The Court will take a stern

24  view of anyone who loses, spills ink on, can't find it

25  this week but found it last week.  Sort of tired of

1    that.  We've got the complaint.  We've got a motion to

2    dismiss.  Rather than rule on that, I'd rather break it

3    into the sections that he suggests because we've got to

4    answer these questions so somebody gets something back

5    when they ask for it.

6              MR. RODRIGUEZ:  And, Your Honor, if I may.

7    Would you permit the parties to propose a schedule for

8    accomplishing this, and that way we can confer and look

9    at our schedules?  I don't want to commit to dates today

10   that I'm going to have trouble with, and then we can set

11   a schedule.

12             THE COURT:  No, I would like for you-all

13   to do that because it's easy for me to say next

14   Wednesday.  Although sometimes I'm amused when a knowing

15   lawyer of considerable experience says:  Judge, I'd like

16   a different date on that; and I say, oh, of course.  And

17   let's assume I said October 30th.  And then they respond

18   the 30th -- then they can have it on October 1st.  Then

19   he says, no, I meant....  I said, I know what you meant.

20   What he said was just give me a date.

21             But, yes.  As much as I like traveling, I

22   don't want you-all flying around a lot when you don't

23   need to.  So the only deadline I need is a rough

24   estimate of when you-all get together and have something

25   because I'll just wait on it.

1          Have I had you before?

2                    MR. ZORN:  Yes, Your Honor.

3                    THE COURT:  It's that bad?

4                    MR. ZORN:  I was here with Tracy LeRoy.

5     We were on the defense side of perhaps the smallest

6     contract case known to man; and we got it resolved,

7     so....

8                    THE COURT:  Well, thank you.

9                    MR. RODRIGUEZ:  Thanks to Your Honor, we

10    got it resolved.

11                   THE COURT:  I frequently have

12    conversations with lawyers.  If they're good lawyers,

13    they know their case; and sometimes that's all it takes.

14    They quit posturing for their clients and figure out

15    where the money is and how it can be done or if they're

16    really that broke or whatever.  It's just not TV stuff.

17    I'm certainly not.

18                   What do you think?

19                   MR. RODRIGUEZ:  A week, Your Honor, for us

20    to propose a schedule; and then Your Honor can approve

21    or modify.

22                   THE COURT:  Let me give you two weeks.

23                   MR. RODRIGUEZ:  Thank you, Your Honor.

24                   THE COURT:  And you can file it tomorrow

25    if you get it done, but I'd rather you not be pressured

1   by an arbitrary deadline.

2           MR. ZORN:  And, your Honor, for the

3   schedule, are we talking about a schedule for -- I guess

4   I'm a little confused on the content.

5           MR. RODRIGUEZ:  My understanding was Your

6   Honor wanted a time for the plaintiffs to submit the

7   topics for the 30(b)(6) deposition to the Court to

8   review, and then I think we would propose a date for a

9   30(b)(6) deposition and then a deadline for motions for

10   summary judgment or cross-motions for summary judgment;

11   and then that way the Court would have everything it

12   needs to resolve the case.

13           THE COURT:  But I don't want to find out

14   that everybody who could give a knowledgeable decision

15   is in training in Waxahachie.

16           You practice in DC?

17           (Discussion off the record.)

18           MR. ZORN:  Your Honor, before we go, I

19   just want to put on the record that the motion to

20   dismiss and the arguments that I made in there are held

21   in abeyance, that the plaintiffs don't have to respond

22   to that motion, that we're proceeding with this other

23   schedule.

24           THE COURT:  We're going to send him on a

25   vacation.  Florida, don't you think?

Case 4:22-cv-02396  Document 36  Filed on 04/05/23 in TXSD  Page 21 of 21

1           MR. RODRIGUEZ:  Thank you, Your Honor.

2           THE COURT:  All right.  I'm rather fond of

3    my children, but my grandchildren are much better.

4               (Discussion off the record.)

5           THE COURT:  All right.

6           MR. RODRIGUEZ:  Thank you.

7           THE COURT:  If something dramatic comes

8    up, file something in paper that says we have a problem

9    and need help and file it.  Don't write Glenda.  Don't

10   call her.  Get her a message, "It's in the record"; and

11   we'll see you.

12          MR. PENNINGTON:  Yes, Your Honor.

13          MR. RODRIGUEZ:  Thank you, Your Honor.

14          MR. ZORN:  Thank you, Your Honor.

15              (Proceedings concluded.)

16                    * * * * *

17      I, Mary Nancy Capetillo, certify that the foregoing

18   is a correct transcript from the record of proceedings

19   in the above matter.

20

     April 4, 2023

21                  /s/MaryNancyCapetillo_____
                    Signature of Court Reporter

22

23

24

25