1                    IN THE UNITED STATES DISTRICT COURT

2                   FOR THE SOUTHERN DISTRICT OF TEXAS

3                            HOUSTON DIVISION

4    MATTHEW C. ZORN                §     CASE NO. 4:22-cv-02396
                                    §     HOUSTON, TX
5    VERSUS                         §     FRIDAY,
                                    §     APRIL 7, 2023
6    U.S. DEPARTMENT OF JUSTICE,    §     2:13 PM TO 2:43 PM
     et al.                         §

7

                              STATUS CONFERENCE
8
                      BEFORE THE HONORABLE DREW TIPTON
9                     UNITED STATES MAGISTRATE JUDGE

10                            APPEARANCES:

11

          FOR THE PARTIES:              SEE NEXT PAGE
12
          COURT REPORTER:               BRANDIS ISOM
13
          COURT CLERK:                  KELLIE PAPAIOANNOU
14

15

16

17

18

19

20
                        TRANSCRIPTION SERVICE BY:
21
                         Veritext Legal Solutions
22                    330 Old Country Road, Suite 300
                             Mineola, NY 11501
23                 Tel: 800-727-6396 ▼ www.veritext.com

24     Proceedings recorded by electronic sound recording; transcript
                      produced by transcription service.
25

```
 1                              APPEARANCES:

 2

 3   FOR THE PLAINTIFF:          YETTER COLEMAN LLP
                                 Matthew C. Zorn
 4                               811 Main Street
                                 Houston, TX 77002
 5                               713-632-8000

 6

 7   FOR THE DEFENDANTS:         U.S. ATTORNEY'S OFFICE
                                 Jimmy Anthony Rodriguez
                                 1000 Louisiana
 8                               Houston, TX 77002
                                 713-567-9532
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              HOUSTON, TEXAS; FRIDAY, APRIL 7, 2023; 2:13 PM

 2              CLERK:  Court calls civil action 4:22-cv-2396,

 3    Matthew C. Zorn v. United States Department of Justice, et al.

 4    May I have appearances of counsel?

 5              MR. ZORN:  Matthew C. Zorn for myself.

 6              MR. RODRIGUEZ:  Jimmy Rodriguez from the U.S.

 7    Attorney's Office here on behalf of the United States.

 8              THE COURT:  All right.  Okay, so, you requested a

 9    hearing, here we are, what do we need?

10              MR. ZORN:  Your Honor, I'd be happy to give the Court

11    an overview of the case, if that's helpful, or just get right

12    to the dispute.  I think we have one minor dispute between us.

13    Whichever I think is more helpful for Your Honor.

14              THE COURT:  So, I know generally what the case is

15    about, but I mean I'm happy to hear what all you have to say.

16    So, I don't want to cut you off.

17              MR. ZORN:  Sure, you know, introduction of the case

18    would probably be helpful.  So, I filed this lawsuit.  It's a

19    Freedom of Information Act lawsuit, but it's not a typical FOIA

20    lawsuit.  There's no request that I made that was denied that I

21    brought to a district court.  It started off as a -- what's

22    called a pattern of practice claim.  And I'll put this up

23    front, the 5th Circuit has never recognized the pattern of

24    practice claim.  The 9th Circuit and the D.C. Circuits, all the

25    courts of appeals to have ever considered the question have
```

1    recognized it, but it hasn't been recognized in the 5th

2    Circuit.

3              THE COURT:  Has it been declined in the 5th Circuit

4    or just not been put forth?

5              MR. ZORN:  Unaddressed.

6              THE COURT:  Okay.

7              MR. ZORN:  And as far as I know it might even be a

8    question of first impression from this Court in the 5th Circuit

9    in the Southern District of Texas.  And maybe there's a

10   district court case outside the Southern District.  But in any

11   event that was the original thrust of the lawsuit.

12             And the Government filed a motion to dismiss, I had

13   pretty detailed allegations as to there being a pattern of

14   practice.  I had 10 requests that were denied, all in the same

15   manner that I contend is a misconstruction of the statute.  I

16   think taking a step back as to what that construction is will

17   help the Court understand why I'm even here.

18             There's an exception in FOIA which says that when a

19   request raises unusual circumstances, the court, sorry, the

20   government doesn't have to abide by the statutory deadlines in

21   the statute.  What I found out through my own requests and

22   later a 30(b)(6) deposition is the government has construed

23   this exception to mean anything that's not in the FOIA office.

24   And as it turns out none of the component DOJ offices, as far

25   as I know, keep any records in their FOIA office.

1          So, every request raises unusual circumstances.  And

2    the United State Department of Justice just decides it doesn't

3    want to comply FOIA statutory deadlines.  This is my position,

4    obviously, the Government would disagree.  And I asked the

5    witness for example at this deposition, I said, okay take a

6    record from FOIA office, move it ten feet outside the FOIA

7    office, is that -- does that raise unusual circumstances?  And

8    she said yes.

9          So, this is the Department's policy.  So, that was

10   the original thrust of my lawsuit and the Government on the

11   pleadings said I hadn't alleged a plausible claim.  I said, it

12   looks to be a factual dispute, can I get a deposition.  So, I

13   deposed (indiscernible) 30(b)(6) with both the Department of

14   Justice and the Drug Enforcement Administration.  I think

15   that's a very important fact that I'll get to in a moment.

16         And I find more FOIA violations.  The chief FOIA

17   officer statute, I ask if the person -- the witness that I'm

18   deposing introduces herself as the chief FOIA officer for DEA.

19   I didn't ask her a question, that's how she introduced herself.

20   I then did ask the question and she said she was the chief FOIA

21   officer.  Then I get an errata this is -- and this is kind of

22   leads to the status conference.  I get an errata from the

23   Department of Justice saying no she didn't mean that, she's not

24   the chief FOIA officer of DEA.  In fact, Vanita Gupta the

25   associate attorney general is the chief FOIA officer for all

1    the components in the United States Department of Justice.  And

2    by the way the Drug Enforcement Administration is not an

3    agency.

4         So, that's the motion for summary judgment that I

5    have pending before Your Honor now which is the Government says

6    that DEA is not an agency and I say it is an agency.  But I'm

7    getting a little bit far afield.

8         So, my first claim in this case is a pure statutory

9    construction case.  I think the Government and I are on the

10   same page.  We don't need any discovery with regard to that

11   claim.  The chief FOIA officer, same thing, it's really going

12   to be a matter of statutory construction, and I'm not here on a

13   fishing expedition.

14        But there's a claim I have in the case which is that

15   the Government has secret FOIA policies that they are -- how

16   they process requests.  And I asked the Government before we

17   started the (6) deposition to produce all policies that DOJ has

18   by how it processes FOIA requests.  The FOIA statute requires

19   this to be disclosed, 5 USC 552(A)(2) quite clearly requires

20   the government disclose this.  And why is pretty apparent.

21        If I know how they process FOIA requests, I can

22   tailor them to avoid all these obstacles that they keep

23   throwing in my path.  And so, I sent the 30(b)(6) notice, the

24   Government objected, the Court overruled the Government's

25   objection.  And then, I get -- I got no production whatsoever

```
 1    from the Office of Information Policy.  I got a few documents

 2    from DEA.

 3              So, I sent an email to the Government saying hey are

 4    you sure that the Office of Information Policy actually looked

 5    through its files and produced all of the policies it has for

 6    processing FOIA requests.  And I was told that yes they did.

 7    And I have no reason to doubt my opposing counsel's

 8    representation that that was what he understood.

 9              What I found out in the deposition was that wasn't

10    true, at least with one document and I've got it here.  It's a

11    2017 memo that was sent about how the Department of Justice --

12    like a presumption of redacting names and whatnot.  But I was

13    content at that point to just let sleeping dogs lie.  And then,

14    this errata came in where suddenly it's not an agency, the DEA

15    was an agency, it isn't an agency anymore, that she was the

16    chief FOIA officer and now she's not she's not the chief FOIA

17    officer.

18              And then, a couple things happened in another case in

19    DDC where a similar thing happened to a party, America's First

20    Legal where the acting chief of the civil division said they

21    had a policy and then the Department of Justice got a different

22    employee to submit an affidavit saying no that employee was

23    mistaken, there is no policy.

24              So, at this juncture, I'm just trying to have some

25    serious questions, not about my opposing counsel or even the
```

1    witness, but I don't think that the Office of Information

2    Policy searched its records and gave me the records that I

3    asked for, that the court overruled their objections on, it's

4    in the 30(b)(6) notice.  And I think that I'm entitled to those

5    records and --

6              THE COURT:  What are you asking me to do today?

7              MR. ZORN:  Well, so the disagreement between myself

8    and the Government, I think, is pretty sharp at this point.

9    Which is the Government wants to move to dispositive motion

10   practice and I agree that most of the case is teed up for that.

11   And I would like just limited targeted discovery on the issue I

12   just presented which is -- okay, I want to know about these

13   policies about how you process FOIA requests.

14             Did you search your records, did you give them all to

15   me, like how -- you know what I'm worried about, Your Honor,

16   just to be candid is that I have a plain and ordinary meaning

17   of policy is very different from what the Department of

18   Justice's meaning is.

19             And that they're just worming their way around the

20   same way they're trying to worm their way around the word

21   agency.  The same way that the unusual circumstances exception,

22   they're construing the word establishment to mean an office

23   across the hallway.  So, I just want some clarity as to -- I

24   just want the truth here.  Like --

25             THE COURT:  Have you moved for that in a motion or is

```
1    this -- are you asking for it -- all those things here today,

2    this discovery that you're asking for?  So, what I have before

3    me is the motion for summary judgment, but it was a motion to

4    vacate the scheduling order or to put one in.  I don't know

5    that you got into those kinds of details and so I'm trying to

6    find out what is it that you're actually asking me to do today?

7              MR. ZORN:  I think that today I just kind of wanted

8    to vacate the schedule and discuss a way forward with the

9    Court.  And I'm happy to do things on the (indiscernible).

10              THE COURT:  So, let me just be clear and I'm going to

11    let both sides -- let me just say my policy is to let both

12    sides talk until they drop dead.  And so, I'm not going to --

13    I'll let you go back and forth as much as you want, so don't

14    worry about that.

15              What I'm trying to do is figure out -- it's helpful

16    to hear what the dispute is, but I'm not resolving that today

17    because I don't -- I haven't read anything about that.  I'm not

18    going to say who's an agency and what the extraordinary

19    circumstances are and if across the hall satisfies all that.

20    That's helpful, it would be better for that to be briefed and

21    for me to take a look at it to see if other courts have held

22    that the DEA is an agency.  If there are things across the hall

23    that don't count, whatever.  All that's helpful.

24              What I'm trying to do is just kind of narrow the

25    issues from what you're -- the whole case is about to what you
```

1   want to accomplish today.  It sounds like what both of you want

2   to do and I guess I need to hear from you, it sounds like you

3   want to do some discovery before dispositive motion happens and

4   it sounds like you want to move straight to the dispositive

5   motions.

6           MR. RODRIGUEZ:  Your Honor, yes.

7           THE COURT:  Okay.

8           MR. RODRIGUEZ:  I have a proposal for a plan that we

9   can move forward, and I believe resolve this case on the most

10  expedited basis and conserve the Court's resources to the

11  extent we can.  And I've discussed this with Mr. Zorn, and as

12  he's said he's very reasonable and we get along and we

13  communicate well.

14          So, my proposal was that the Government respond to

15  his partial motion for summary judgment and cross move

16  dispositively.  We believe there's some threshold

17  jurisdictional issues.  But then, we would also move for

18  summary judgment on all claims that are pending.  If at that

19  point Mr. Zorn believes that he needs discovery, he can file a

20  motion under rule 56(d) and specify on what points he needs

21  discovery.  The Court would have the benefit of our motion and

22  the context of the claims and understanding what he would need.

23          And of course, we would confer at that point and

24  potentially even reach an agreement that would moot the need

25  for the Court to become involved in a discovery dispute at all.

1    But that way the Court would have both, the benefit of

2    briefing, the benefit of the parties being able to confer

3    before any briefing on discovery were filed.

4                    THE COURT:  I did get nervous at the idea of having

5    motions for summary judgment then open the door for more

6    discovery and then you've got a motion for summary judgment

7    that sits there for several months while you finish out and

8    flush out discovery if it becomes necessary.  And then, we have

9    to supplement the motions for summary judgment and that gets

10   kind of messy.

11                   MR. RODRIGUEZ:  One thing that I would point out in

12   FOIA cases specifically, discovery's generally disfavored --

13                   THE COURT:  Right.

14                   MR. RODRIGUEZ:  When discovery's allowed, and the

15   caselaw flushes this out, it's typically then after the

16   Government files a motion for summary judgment.  And then, the

17   Plaintiff points out like this affidavit says this, I need

18   discovery on X, Y, and Z.  So, I would say confidentially that

19   the caselaw supports the idea of a motion for summary judgment

20   in a FOIA case being filed.  And then, the question of

21   discovery can be addressed in rule 56(b) motion.  I understand

22   the Court's concern --

23                   THE COURT:  I'm just trying to make it easier on

24   everybody.  If we have kind of motions for summary judgment and

25   then supplements if discovery has to happen and then I have to

1    have a fight over whether or not discovery happens.  Then we've

2    got a little bit of a mess and I'm having to mix and match

3    pleadings to see what goes with what.

4              My philosophy generally is to, and I don't know if

5    it's appropriate for a FOIA case, I haven't had a FOIA case

6    before.  I don't know if it's appropriate is to just let you

7    have a regular scheduling order and work the case up like a

8    normal civil case.  Are you saying that that's not typical?

9              MR. RODRIGUEZ:  Correct, and we would, we would be

10   opposed to that, we would ask at a minimum that we'd be allowed

11   to file some -- I don't know if it would be a motion, we could

12   file a motion for a protective order, but some -- the

13   opportunity --

14             THE COURT:  Well, he's got a motion to vacate the

15   scheduling order, you could file a response to it that kind of

16   says well we don't think a typical scheduling order makes sense

17   because blah, blah, blah.

18             MR. RODRIGUEZ:  I'm happy to do that.  I just wanted

19   some kind of briefing paper before the Court that lays out the

20   Government's position on discovery in a FOIA case.  I mean, the

21   Plaintiff also makes APA claims, but as Your Honor is aware

22   that that's also an area where --

23             THE COURT:  I'm fairly familiar.

24             MR. RODRIGUEZ:  -- discovery is not the default.  So,

25   yes, the bottom line the Government would like an opportunity

1    to articulate its position in writing.  I would prefer not to

2    respond to the motion for partial summary judgment on the 16th

3    I think is my due date and not --

4              THE COURT:  Yeah, I'm not worried about -- I'm not

5    worried about a deadline.  And he's shaking his head, so it

6    doesn't sound like that's a big deal, so.

7              MR. RODRIGUEZ:  So, so if Your Honor would like me to

8    file a written response to the motion to vacate and articulate

9    our position, I'm more than happy to do that.

10             THE COURT:  So, what I don't want to do is

11   micromanage this.  So, we're all here together, what I'd like

12   is just to figure out what everybody agrees is a reasonable

13   path forward since the two of you have had a chance to say

14   that.  So, having heard that, Mr. Zorn, what do you think?

15             MR. ZORN:  I mean, like I said, there's a lot of

16   common ground.  I'm not asking for full discovery, it's not --

17   wouldn't be proportional to the needs of this case.

18             THE COURT:  But you're asking for some which he

19   doesn't want.

20             MR. ZORN:  Precisely and I mean I -- I mean, I

21   suspect I know why.  At the 30(b)(6) deposition that I took was

22   very uncomfortable, I think.

23             THE COURT:  Well, we need to settle the discovery

24   dispute issue.  So, I'll say on the record here you don't need

25   to respond.  How much more time do you want before you respond

1    to the partial motion.  Do you want it to be stayed

2    indefinitely or you asking for a couple weeks, or a month, or

3    what?

4            MR. RODRIGUEZ:  My original plan was I would respond

5    on April 3rd and cross move on all claims, but I'm not sure

6    that's what Your Honor wants me to do.

7            THE COURT:  I don't know what I want yet.  So, I'm

8    trying to figure that out.

9            MR. RODRIGUEZ:  Taking in some of the threshold

10   issues, I have a question about the Plaintiff's standing for

11   some of his claims whether the Court has subject matter

12   jurisdiction or if some of the reasons that Mr. Zorn said

13   whether the 5th Circuit would recognize this cause of action

14   under the APA, the unreasonable delay claims.  I'm not sure

15   that there's a kind of discreate mandatory duty at issue here

16   that would give rise to that kind of claim.  And then, we would

17   address the merits of his claims as well in that one

18   consolidated filing rather than trying to do it piecemeal.  You

19   know, a motion to dismiss and then a summary judgment and then

20   response to the partial motion.

21           MR. ZORN:  I think if the Court, just for the Court,

22   I mean, what I'm asking for honestly in some respects is

23   compliance with the original 30(b)(6) depositions the court

24   ordered the Government to comply with.  I mean, I kind of am a

25   little bit --

1           THE COURT:  Well, it sounds like there's a dispute as

2    to whether or not they have complied with it, so.

3           MR. RODRIGUEZ:  And there's a question about the --

4    so it was the 30(b)(6) deposition notice and then it had a

5    document request --

6           THE COURT:  Right.

7           MR. RODRIGUEZ:  -- accompanying.  If there's a

8    question about whether we fully complied with the document

9    request that I could do a certification, not me personally, but

10   the client can do a certification we've reviewed our files,

11   these are the documents that we produced, there are no other

12   documents.  I'm not sure what more we could do to allay that

13   concern.

14          THE COURT:  Why don't we --

15          MR. RODRIGUEZ:  Unless he's saying that we would lie

16   then yes then there's I could do to --

17          MR. ZORN:  Lie is not he word that I would use.  What

18   I would say is that's the representation that was made to me

19   before the deposition.  I took the deposition; the witness told

20   me about this policy that wasn't produced to me, and it got

21   produced after deposition.

22          So, I mean, I'm -- lying is not the word I would use,

23   but clearly there's someone's not communicating to someone

24   something and I, you know, it's, you know, one shot you get

25   sometimes.  But I don't -- I wouldn't be able to trust, you

1    know, unless I got affidavit that spelled out exactly what they

2    did.  Like a, we searched our files these are terms we ran it.

3    Like I mean, if that's -- if that's what Mr. Rodriguez and the

4    Government is proposing.  You know, maybe I could put some

5    stock in that, but I still think a deposition would be

6    appropriate.  I do want to take one step back for the record.

7    It's true that in normal FOIA cases there is not discovery, but

8    this is not a normal FOIA cases, it's a pattern of practice

9    claim, which is different.

10          THE COURT:  Is there discovery in a pattern of

11   practice claim for FOIA cases?

12          MR. ZORN:  It's just a normal civil case, Your Honor.

13   So, from that point of view it's not like a kind of specialized

14   FOIA case.

15          THE COURT:  Do we need to have briefing on whether or

16   not this needs to be designated as pattern of practice claim?

17   Is there a standard process for litigating or working up a

18   pattern of practice claim as opposed to a regular one?

19          MR. RODRIGUEZ:  Yeah, I would disagree that there's

20   any case law indicating that a pattern of practice claim is

21   subject to a normal schedule.

22          THE COURT:  Well, at least discovery.

23          MR. RODRIGUEZ:  Yeah, I looked because that would be

24   confirmative to me.  I was really interested in what courts

25   have said about discovery in pattern of practice claims and I

1    couldn't find it and maybe my legal research skills were

2    lacking.

3            MR. ZORN:  No, no I don't think they are I'm just

4    saying in the absence of any authority I think the federal

5    rules are the federal rules and, you know, FOIA has built out

6    sort of niched rule practice.  But since that's not exactly

7    doing here, it's just, you know, it's just a normal civil case

8    governed by the federal rules.

9            I don't want normal discovery.  I mean, you know,

10   just for the Court like I'm not -- this isn't even really a pro

11   bono case for me.  I lose money by appearing here, I could be

12   making money working for other clients.  I don't want to go on

13   a fishing expedition, but I do have -- honestly, I just have

14   deep concerns about what's going on in this case.  And as a

15   lawyer I represent clients in this space, I also do journalism

16   and if they are doing what they're doing with FOIA it makes my

17   job almost impossible.

18           MR. RODRIGUEZ:  Well, I think the legal issue of

19   whether we're properly processing FOIA requests as Mr. Zorn has

20   said there really is no dispute actually about what we are or

21   are not doing.

22           THE COURT:  Well, what I'm hearing him say is that

23   you're technically complying but substantively evading or

24   something like that.  And so, I'm not saying I'm signing off on

25   that, but it's like going well we're doing it, but you know

1     we're moving some documents across the hall and then saying we

2     don't have them, whatever.  I get that, so...

3             MR. RODRIGUEZ:  And I have to make clear that Judge

4     Hughes, I believe, was very gracious in allowing Mr. Zorn the

5     30(b)(6) deposition.  And Mr. Zorn identified some very

6     specific 30(b)(6) topics to discuss with the witness.

7             And when we get to the deposition Mr. Zorn covered

8     areas that went beyond the topics, and it was on those areas

9     under which the witness gave testimony that she was mistaken

10    about and later corrected it.  And I want the record to make

11    clear that the corrections were done in full compliance with

12    rule 30 which allows corrections.

13            THE COURT:  But the problem is once you -- look, I

14    litigated forever and when I had -- so, errata sheets are

15    supposed to like fix typos and things like that.  If you have

16    substantive changes, which maybe you have, the problem is, is

17    that it opens the door to that person being reexamined over the

18    substantive changes opposed to the typo change.  You know, you

19    misspelled a name.

20            If I presented a witness, maybe you can tell me if

21    you agree with this.  If I presented a witness and they got

22    their errata sheet and they didn't like an answer either

23    because it hurt their case or because they just misspoke.  They

24    would make an errata sheet change; they would turn a yes into a

25    no.  That's a pretty big change.

1       And then, I would inevitably get while I need to -- I

2   need to talk to your person again, we need to re-depose them on

3   the substance of the errata changes.  I mean, is that something

4   -- first off, do you agree that that is a reasonable way to

5   handle errata sheet changes that changes substance as opposed

6   to typos?

7       MR. RODRIGUEZ:  I do in a case involving a recipient

8   witness.  If someone who's at an intersection and says I saw

9   this and I did this, and he was there.

10      THE COURT:  Well, I don't --

11      MR. RODRIGUEZ:  And later -- and then later says no I

12  wasn't there as opposed to someone who's speaking on a topic

13  that wasn't clearly identified and then misspoke.  And then, in

14  the errata sheet explains the misstatement, then I don't agree,

15  Your Honor.

16      THE COURT:  Well, I mean it sounds like it's a key

17  part of his case and if she answered the question, but then

18  changed it and he wants to take advantage of the original

19  answer, why can't she explain why she changed it?

20      MR. RODRIGUEZ:  But it wasn't a key part of his case

21  at the time of the 30(b)(6) deposition.  After the deposition

22  he amended his complaint to include claims that weren't there

23  before and were unrelated to the court issue of whether we're

24  properly invoking the exceptions of FOIA.  And so, now it's of

25  course part of the case because he's made the amended claims to

1    address these issues.

2          THE COURT:  Well, I'm not -- that happens all the

3    time.  You take a deposition, you find out there's additional

4    parties or you find out oh I didn't even know that that, you

5    know, I've got a new basis for the claim, I'm going to amend my

6    complaint and add it because discovery opened the door.

7          And so, I mean, you're not locked into your original

8    complaint generally in a civil case.  And so, if the door got

9    opened during the 30(b)(6), like I said, either it created an

10   additional claim, or she ought to at least explain why she

11   changed her answer.  If it is something that is a basis for a

12   (indiscernible), couldn't he just file a new lawsuit over it

13   and not even amend his complaint?

14         MR. RODRIGUEZ:  Yeah, and that's why we didn't amend

15   -- we didn't amend, we didn't oppose the amendment itself.

16         THE COURT:  Right.  And so, but so, if the amendment

17   is there then and it now pertains to the changed answer then

18   what's the problem with her explaining why she changed it?

19         MR. RODRIGUEZ:  I believe that she did explain as

20   required under rule 30 in the errata itself.

21         THE COURT:  But I mean, but you don't get to explore

22   that, you don't get to cross-examine that.  You know, you had a

23   lawyer in your, you know, your hip pocket, which is what

24   everybody, you know, does.  They sit down with their lawyer to

25   make sure that when you're doing your errata sheet, you're not

```
 1   exceeding rule 30 because they're not lawyers.

 2           And so, you know you get advice, but you don't get

 3   cross examined on why you're changing the answer.  So, you

 4   know, like I said these are in non-FOIA cases.  I did not

 5   litigate them and so I'm not trying to say that that fits

 6   neatly in this circumstance, but I'm familiar with having to

 7   reproduce a witness who changed substantive answers in an

 8   errata sheet.

 9           What about this, and I'm entirely persuadable.  But

10   why don't we have some kind of a motion for discovery in which

11   you can talk about your -- what you want, why you want it, why

12   you think you're entitled to it.  The pattern in practice

13   stuff, which you kind of talk about in your motion to dismiss,

14   right your second motion to dismiss deals with that.

15           MR. ZORN:  Yes, Your Honor.

16           THE COURT:  And then, you can respond.  You can say

17   no that doesn't apply and here's why.  And then, we can get the

18   discovery part knocked out.  Because if there doesn't -- if I'm

19   not going to allow any additional discovery then we're going

20   straight to dispositive motions.

21           MR. RODRIGUEZ:  Yes, your Honor.

22           THE COURT:  First off, before I move onto second,

23   does that sound like a reasonable way to proceed.  And I'm more

24   worried about you because you're the one who doesn't want to do

25   discovery -- this gives you a chance to put your -- you can say
```

1    no discovery's not appropriate because of this, that, and the

2    other.

3              MR. RODRIGUEZ:  That sounds perfect to me, Your

4    Honor.

5              THE COURT:  Okay.  So, let's on the partial motion

6    for summary judgment whatever your response date is due, you

7    had suggested April 3rd?

8              MR. RODRIGUEZ:  Yes, Your Honor.

9              THE COURT:  Are you okay with that?

10             MR. ZORN:  Yes, that's --

11             THE COURT:  Chances of me ruling on that before April

12   3rd anyway are exactly zero, so.  So, yeah, you can -- and if

13   you need more time because the discovery motion is pending.  Is

14   your request for discovery impacted the merits of the partial

15   summary judgment.

16             MR. ZORN:  I mean, potentially except, I mean, I feel

17   very confident in my motion and if I win it then I don't need

18   the discovery.  But if the Government's saying that the DEA's

19   not an agency and that the associate attorney general is the

20   chief FOIA officer for DEA, I mean, I can all but guarantee she

21   doesn't do anything per the statute with respect to DEA.  And I

22   -- and we kind of get to what Your Honor was concerned about

23   which is, is this just a ceremonial title that someone holds

24   and then doesn't do any of the job responsibilities.

25             THE COURT:  Oh, I'm not saying I'm concerned about

1   it, I'm saying that that was your theory.  Okay, so...

2   MR. ZORN:  I'm sorry -- that accurately summarized my

3   concern.  Now, if the DEA is an agency I really don't think

4   that the Government's going to dispute that they don't have a

5   chief FOIA officer because that's the new position they're

6   taking.

7   MR. RODRIGUEZ:  Well, I think Mr. -- I think he may

8   agree with this that I think the best course of action and

9   maybe to hold the motion for partial summary judgment in

10  abeyance while you file your motion for discovery, we resolve

11  that.  And then, we get establish a deadline for responding.  I

12  know Your Honor doesn't like a motion just to hang out there.

13  THE COURT:  Well, I mean, so, and that's what -- you

14  got your second motion to dismiss on the agency -- is it all

15  about just the agency, I'm sorry, the pattern of practice.

16  MR. ZORN:  Yep --

17  THE COURT:  Isn't that really going to be part of

18  this?  I mean, the motion for discovery kind of hinges on

19  whether or not it's a pattern of practice claims in part

20  because he's trying to indicate that well you get some

21  discovery in pattern of practice claims.

22  MR. ZORN:  I mean, Your Honor, look it -- I want to

23  be reasonable; I want this case to be deposed of in the most

24  efficient manner.  If the Government wants to move that I can't

25  state a claim on the pattern of practice and we want to handle

```
1    that up front, I'm not going to oppose that.  I mean, it's
2    about as simple as I described to Your Honor which is, you
3    know, it hasn't been decided in the 5th Circuit, all the
4    circuits that have looked at it have said yes, you know.
5           THE COURT:  Well, he's -- you got -- is that what
6    your second motion to dismiss is on, the pattern of practice?
7    Or am I not remembering that correctly?
8           MR. RODRIGUEZ:  Yeah, no, that's correct.  And it's
9    not specifically that the 5th Circuit will not recognize the
10   pattern of practice claim, it's more nuance than that.  It's
11   the types of pattern of practice claims that have been
12   recognized are not the type that Mr. Zorn is asserting in this
13   case.  I mean, it sounds like we're coming back to what I
14   thought was my original proposal is that I cross move on all
15   claims and then Mr. Zorn can ask for discovery and the Court
16   would have every issue before it, and there wouldn't be this
17   piecemeal briefing of the partial summary judgment.
18          THE COURT:  So, the second amended -- what is your
19   live complaint right now?  Because remember I -- the case was
20   reassigned to me, so I'm wanting to make sure I'm looking at
21   what all is here.  Is the second amended complaint the live
22   pleading?
23          MR. ZORN:  That is live pleading, your Honor.
24          THE COURT:  Okay.  So, your motion to dismiss is
25   directed at a prior complaint?
```

1       MR. RODRIGUEZ:  Correct.

2       THE COURT:  Typically, what I do on those is I deny

3  them without prejudice because it's -- you're aimed at a dead

4  pleading right now.

5       MR. RODRIGUEZ:  Correct.

6       THE COURT:  So, I think maybe then what makes

7  difference -- what I should do is terminate without prejudice

8  your motion -- your second motion to dismiss --

9       MR. RODRIGUEZ:  Correct.

10      THE COURT:  -- and you could direct it at the second

11  amended complaint.  Kelly, you taking notes now because now

12  were hitting brass tacks, okay.  So, that's what I'll do.  It's

13  not a comment on the merits, of course.  If you can direct it

14  towards that, then we can then -- and that addresses the

15  pattern of practice.

16      And then, at the same time you can file your motion

17  for discovery, and you can file a response to that.  I don't

18  know if you want to file your motion to dismiss because I kind

19  of feel like he's going to figure out a way around your motion

20  to dismiss to ask for discovery anyway.  So, I think it would

21  be separate from the discovery issues.

22      And that we will stay the partial motion for summary

23  judgment until April 3rd at this point.  If you need more time,

24  rest assured I'm not going to jam you up for time.  But just to

25  make sure it doesn't fall in a black hole.  Does that work?

1           MR. RODRIGUEZ:  Yes, your Honor.

2           THE COURT:  Okay.

3           MR. RODRIGUEZ:  Understanding that -- yeah, I think,

4    if the motion for discovery is still pending and we're dealing

5    with that, that'll I'll likely ask for more time.

6           THE COURT:  Well, he may not like it, but I'll

7    probably give it to you.  Okay, so -- all right, so, your

8    response date to the partial motion for summary judgment which

9    is -- can you see that on there?

10          MR. RODRIGUEZ:  The 16th, I believe.

11          THE COURT:  Oh, I'm just looking for your motion.

12   Here we are, so docket number 28, that now becomes due -- your

13   motion docket date will be April 3rd and like I said just let

14   me know if you get jammed up for time.  In the meantime, you

15   can move for discovery and then you can respond to that which

16   almost guarantees that we're not going to have that addressed

17   by your April 3rd date because I'm sure he's going to fire off

18   a reply.

19          And then, we will jump on the discovery motion.  And

20   then, you can decide whether or not you need to file a third

21   motion to dismiss, you can just call it a motion to dismiss at

22   the last live complaint or if you want to find out what I do on

23   the discovery motion.

24          MR. RODRIGUEZ:  Thank you, your Honor, just to be

25   clear at housekeeping.  Judge Hughes in his procedures allowed

1    the parties to agree to extend the lines.

2              THE COURT:  Yes.

3              MR. RODRIGUEZ:  And so, if you look at the docket

4    sheet when the live complaint I've not technically responded

5    to.  I think Mr. Zorn and I have reached an agreement --

6              THE COURT:  I'm not entering a default.

7              MR. RODRIGUEZ:  Yeah, and so, I just wanted to make

8    that clear for the record that obviously when and if I file a

9    motion to dismiss that will be my response to the live

10   complaint.

11             THE COURT:  Okay.  Are you good with that Mr. Zorn?

12             MR. ZORN:  Oh, absolutely your Honor.  And just a few

13   housekeeping.  I just want to make sure that the record is

14   clear.

15             THE COURT:  Right.

16             MR. ZORN:  I dispute the Government's

17   characterization that the 30(b)(6) notice was unclear.  I just

18   -- I need this to be clear for the record.  Topic number one

19   was the structure and operation of DEA FOIA office which, I

20   mean, the Government was saying that this question about who is

21   the chief --

22             THE COURT:  Well, you don't need to put your position

23   on the record, you guys are going to fight over the 30(b)(6)

24   shortly, you all don't need to -- I'm not settling that dispute

25   today.  So, --

1          MR. ZORN:  Great.

2          THE COURT:  -- you don't have to respond if you feel

3     like your argument has been -- so, anyway you'll file that

4     motion for discovery shortly I assume.

5          MR. ZORN:  Yes.

6          THE COURT:  You'll file a response within the 21

7     days.

8          MR. RODRIGUEZ:  Yes, your Honor.

9          THE COURT:  Your partial summary judgment response is

10    due April 3rd with -- and if you need time, we'll deal with

11    that.  And we're terminating the motion to dismiss without

12    prejudice.  I'm not going to enter an order, I'm just going to

13    terminate it, so you don't think that it's pending out there.

14    Does that address all of the pending motions and issues?

15         MR. ZORN:  Yes, your Honor.  There's only one other

16    thing and I just want the briefing to be sharp.  You know, in

17    this America's First case the Government is taking the position

18    that there's no EPA claim because there's a FOIA policy or

19    practice claim.  So, I'm a little concerned that the position

20    it's taking, this case is going to be completely the opposite

21    of that case.  But I mean, I just want the Government to know

22    that.  I want the law to be right here, but --

23         THE COURT:  You want to make sure you tell the

24    Government right in front of me, is that what it is?

25         MR. ZORN:  Yeah.

1            THE COURT:  Okay.  All right, I got it.

2            MR. RODRIGUEZ:  I'm not familiar with that case, but

3    I'm more than happy to look at whatever Mr. Zorn provides.

4            THE COURT:  Okay.  So, have we got you a road map at

5    least in the short term?

6            MR. RODRIGUEZ:  I believe so, your Honor.  I really

7    appreciate your time.

8            THE COURT:  You bet.  You all need anything, don't

9    hesitate to reach back out.  This obviously is going on a

10   somewhat different track, so we'll try to keep the trains

11   moving.  All right if there's nothing further, everyone's

12   excused, thank you.

13           MR. ZORN:  Thank you, your Honor.

14           MR. RODRIGUEZ:  Thank you.

15           THE COURT:  You bet.

16       (Hearing adjourned at 2:43 PM)

17                          *  *  *  *  *

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T I O N

 2

 3        I, Sonya Ledanski Hyde, certified that the foregoing

 4    transcript is a true and accurate record of the proceedings.

 5

 6

 7

 8    Sonya Ledanski Hyde

 9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  April 18, 2023
```