UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW C. ZORN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-02396 |
| | § | |
| U.S. DEPARTMENT OF JUSTICE, ET AL. | § | |
| | § | |
| | § | |
| Defendants. | § | |

**ZORN'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL DISMISSAL**

Matthew C. Zorn
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002

Shane Pennington
VICENTE SEDERBERG LLP
1115 Broadway, 12th Floor
New York, NY 10010

May 22, 2023                    ATTORNEYS FOR PLAINTIFF

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTS ................................................................................................................................... 2

LEGAL STANDARDS ......................................................................................................... 3

ARGUMENTS ...................................................................................................................... 4

    A.  **Chief FOIA Officer** ................................................................................................ 4

        1. The unlawful lack of a Chief FOIA Officer contributes to the harm caused by the unlawful "unusual circumstances" policy. ...................................................... 5

        2. As a regular FOIA user, I am injured by the fact that DEA has no Chief FOIA Officer. ................................................................................................................. 7

    B.  **FOIA Reading Room** ........................................................................................... 10

        1. I have standing to challenge a failure to affirmatively disclose policies/practices for processing FOIA requests under 5 U.S.C. § 552(a)(2). ............................... 11

        2. Defendants do not carry their Rule 12 mootness burden. ................................ 11

    C.  **I State a First Amendment Claim for Timely Access to** ***Administrative Proceeding Records***. ................................................................................................................... 13

CONCLUSION .................................................................................................................... 16

TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Animal Legal Def. Fund v. United States Dep't of Agric.,**
   935 F.3d 858 (9th Cir. 2019) ......................................................................... 11

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ......................................................................................... 7

*Cochran v. SEC,**
   20 F.4th 194 (5th Cir. 2021) ........................................................................... 9

*Collins v. Yellen,**
   141 S. Ct. 1761 (2021) ................................................................................ 6, 9

*Consumers' Research v. Consumer Product Safety Comm'n,**
   592 F. Supp. 3d 568 (E.D. Tex. 2022) ...................................................... 9, 10

*Detroit Free Press v. Ashcroft,*
   303 F.3d 681 (6th Cir. 2002) ......................................................................... 14

*Dollery v. Post Acute Med. Mgmt., LLC,*
   2022 WL 161333 (S.D. Tex. Jan. 18, 2022) ................................................... 4

*El Vocero de Puerto Rico v. Puerto Rico,*
   508 U.S. 147 (1993) ....................................................................................... 15

*FEC v. Akins,**
   524 U.S. 11 (1998) ................................................................................. 6, 9, 11

*Globe Newspaper Co. v. Superior Court,*
   457 U.S. 596 (1982) ....................................................................................... 14

*Hajro v. U.S. Citizenship and Immigration Services,**
   811 F.3d 1086 (9th Cir. 2016) .............................................................. 4, 5, 12

*Judicial Watch, Inc. v. DHS,**
   895 F.3d 770 (D.C. Cir. 2018) ................................................................. 8, 10

*Lane v. Halliburton,*
   529 F.3d 548 (5th Cir. 2008) ........................................................................... 3

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ................................................................................. 3, 11

*Nat'l Veterans Legal Servs. Program v. United States*,
  235 F. Supp. 3d 32 (D.D.C. 2017) ........................................................... 10

*New York C.L. Union v. New York City Transit Auth.*,*
  684 F.3d 286 (2d Cir. 2012) .............................................................. 15, 16

*North Jersey Media Group, Inc. v. Ashcroft*,
  308 F.3d 198 (3d Cir. 2002) ................................................................... 15

*Press-Enterprise Co. v. Superior Court*,*
  478 U.S. 1 (1986) ................................................................................... 14

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) .................................................................... 3

*Richmond Newspapers, Inc. v. Virginia*,*
  448 U.S. 555 (1980) ............................................................................... 14

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ................................................................................... 6

*United States v. Edwards*,
  823 F.2d 111 (5th Cir. 1987) ............................................................ 14, 16

**Statutes**

5 U.S.C. § 552(a)(2) ...................................................................... 10, 11, 12

5 U.S.C. § 552(a)(6) .................................................................................... 2

5 U.S.C. § 552(j) .................................................................................... 4, 8

**Rules**

Rule 12(b)(1) ............................................................................................. 3

Rule 12(b)(6) ............................................................................................. 4

*\* Indicates key authorities upon which I chiefly rely.*

## Introduction

I sued over Defendants' unlawful FOIA and recordkeeping practices, which restrict access to important information, including records related to pending administrative proceedings. I initially complained about a practice blocking timely FOIA responses: DEA considers any request for records not in its FOIA Office as raising "unusual circumstances," allowing indefinite deferral of responses. Since the FOIA Office has virtually no records, nearly all requests raise "unusual circumstances" resulting in automatic delays, contrary to express statutory deadlines. I also lodged a Constitutional complaint related to delayed access to administrative records.

After Defendants denied the "unusual circumstances" policy, limited discovery not only proved its existence but unveiled broader issues which also cause me harm and render FOIA unworkable. For example, FOIA mandates "each agency" appoint a senior official as its Chief FOIA Officer. DOJ appointed Vanita Gupta, its third-in-command, to oversee FOIA for all DOJ. DEA, a DOJ component agency, lacks a Chief FOIA Officer, because according to Defendants, the Drug Enforcement Administration is not an agency and does not need one. Little wonder why FOIA is falling into desuetude.

Defendants dismiss my claims as unrelated generalized grievances, but they all revolve around a common nucleus: unlawful policies, practices, and agency structure that renders FOIA unworkable. This hampers my work as an advocate and as a journalist covering DEA. I need FOIA to function as Congress designed it, which is why I'm fighting this case. As a user of Defendants' FOIA system, I seek court intervention to address fundamental procedural/structural issues so I can use FOIA effectively.

Bereft of good merits arguments—or perhaps, not wanting to make them publicly—Defendants shift to jurisdiction. They claim I lack standing to demand DEA lawfully designate a senior official as its Chief FOIA Officer. They are mistaken. DEA's FOIA Office structure denies

1

me timely access to crucial records through gerrymandering. Also, courts consistently recognize

standing for plaintiffs challenging agency structures under similar circumstances.

Next, Defendants say I can't make a FOIA "reading room" claim. This too misses the mark.

I don't complain about general disclosure failures, but Defendants' failure to affirmatively disclose

information *related to FOIA processing*. In this specific regard, my complaint suggests a plausible

violations of affirmative disclosure provisions, and Defendants' unsubstantiated claims to the

contrary highlights the need for limited additional discovery, not that my claim is moot.

Finally, Defendants argue I fail to state a First Amendment claim. But again, it

mischaracterizes my claim. I don't assert a constitutional right to obtain all information subject to

FOIA, but instead to timely access records *related to DEA administrative proceedings*.

## FACTS

I agree with Defendants' explanation of the posture. The following basic allegations/facts

are relevant, assumed to be true, and construed in my favor:

1. I am a second-year partner at Yetter Coleman LLP. Dkt. 28-1, ¶1.

2. I regularly represent clients in matters before or against DEA. *Id.* ¶¶3-4.

3. As a journalist, I publish essays on On Drugs (ondrugs.substack.com) that discuss drug policy and DEA matters. Our online library (https://ondrugs.substack.com/p/the-on-drugs-library) includes documents obtained through FOIA/archival requests. *Id.* ¶5.

4. In the past year, I have made many FOIA requests to DEA as both an attorney and as a journalist covering drug policy. 2AC, Dkt. 21; Dkt. 28-1. *See generally* 2AC[1]; Dkt. 28-1 (describing some requests.

5. DEA has a policy of deeming all requests for records outside the DEA FOIA Office as raising "unusual circumstances" under 5 U.S.C. § 552(a)(6). The FOIA Office itself is devoid of nearly any DEA records, so delays in responses to FOIA requests is nearly

---

[1] I incorporate by reference the Second Amended Complaint (Dkt. 21) ("2AC"). I will file an amended pleading per the Court's instructions without claims I no longer assert. Because the Motion references the 2AC, I use the 2AC here.

automatic. Even requests for records ten feet **across the hallway** raise "unusual circumstances" under the policy if they are not in the FOIA Office. *See* 2AC ¶78-87.

6. The inability to timely obtain basic records subject to FOIA and exorbitant review fees has injured my journalistic enterprises and has compromised my ability to be an effective advocate before DOJ/DEA in litigation and administrative proceedings. *See, e.g.*, 2AC ¶47-61 (describing requests).

7. Since the filing of this lawsuit, I continue to request records under FOIA. *See, e.g.*, Dkt. 28-1 ¶¶ 9-15 (describing request seeking records related to religious freedom rules delayed by *more than 14 years*).

8. I continue to seek and intend to seek records through FOIA. *Id.* ¶ 8. I recently requested documents related to the Adderall shortage in February 2023; DEA agreed I showed "an urgency to inform the public about an actual or alleged [f]ederal [g]overnment activity" and that I was "a person primarily engaged in disseminating information." Ex. 1 (Feb. 2023 letter). And yet to date, despite the urgency, I haven't received a response or records.

9. Contrary to Defendants' suggestion, Mot. 4, they also know I made at least one FOIA request of another DOJ component, shortly before I filed the 2AC. Ex. 2 (Apr. 24, 2023 e-mail attaching documents related to request).

10. DEA has no Chief FOIA Officer. *See* Dkt. 43 at 4.

Other relevant facts are integrated into the arguments.

## LEGAL STANDARDS

**Rule 12(b)(1).** Rule 12(b)(1) allows dismissal for lack of jurisdiction. The Court may consider the complaint, undisputed record facts, and the resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). As plaintiff, I bear the burden of showing standing. *Id.* at 161. To assess whether I have met this burden, the court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to [me]." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up).

To show FOIA injury, I need not have "personal connection" to the information I am requesting. *Hajro v. U.S. Citizenship and Immigration Services*, 811 F.3d 1086, 1105 (9th Cir. 2016) (cite omitted). A failure to get timely information is injury, "even if the requester's injury may be shared with the public at large." *Id.* at 1106 (cites omitted). Even a "delayed FOIA request may serve as a basis for individual standing." *Id.*

**Rule 12(b)(6).** On a Rule 12(b)(6) motion, the court accepts my factual allegations as true, views them in a light most favorable to me, and evaluates whether the complaint "contains sufficient factual matter to state a claim to relief that is plausible on its face.". *See Dollery v. Post Acute Med. Mgmt., LLC*, 2022 WL 161333, at *1 (S.D. Tex. Jan. 18, 2022) (cite omitted).

ARGUMENTS

### A.      Chief FOIA Officer

**Summary:** Defendants' violation of the Chief FOIA Officer requirement is apparent. FOIA says "[e]ach agency shall designate a Chief FOIA Officer who shall be a senior official of such agency (at the Assistant Secretary or equivalent level)." 5 U.S.C. § 552(j)(1). Defendants admit DEA has no Chief FOIA Officer but says DEA is not an agency, and therefore, "is not required to have one." Dkt. 43 at 14. As I explain in my partial summary judgment motion, Dkt. 28, Defendants' position is without merit. If I'm correct, I should win.

Unless, of course, I lack standing to win. Hence, Defendants' motion, which argues just that. But there can be little serious dispute that as a lawyer/journalist that litigates before DEA and reports on its activities, I am a prototypical member of the FOIA requesting community. Because (1) the absence of a Chief FOIA Officer contributes to the breadth of the "unusual circumstances" exception the agency invokes that causes my inability to timely get responses to my FOIA requests and (2) I levy a structural challenge and am injured by substantive FOIA policies, Defendants' standing attack lacks merit.

4

**1.      The unlawful lack of a Chief FOIA Officer contributes to the harm caused by the unlawful "unusual circumstances" policy.**

Under the "unusual circumstances" policy, DOJ components deem all records outside of FOIA processing offices as raising "unusual circumstances." With DEA, that results in nearly all requests raising unusual circumstances because DEA's FOIA Office has access to virtually no agency records. *See* 2AC ¶¶ 78-87 (and supporting testimony). This situation starts at the top: DEA has no Chief FOIA Officer. Instead, Vanita Gupta—a senior *DOJ* official not in DEA's chain of command—serves as the Chief FOIA Officer for all DOJ.

In tandem with the "unusual circumstances" policy, the lack of a Chief FOIA Officer injures me because it contributes to the processing delays under the unlawful "unusual circumstances" policy. *See Hjaro*, 811 F.3d at 1106 (delay/pattern of delays is cognizable injury). To understand why, consider how the "unusual circumstances" exception works in DEA practice. The frequency of its application is a function of the *size* of DEA's FOIA Office, the *number of records DEA's FOIA Office*, and *when* DEA invokes the unusual circumstances exception. DEA invokes the exception any time its FOIA Office cannot access records. *See, e.g.*, Dkt. 28-2 (Dep.) at 57:5-17, 58:2. Delay thus occurs "any time a record that is requested in a FOIA request that is not in the FOIA office." *Id.* Because the DEA FOIA Office is insulated from the rest of the agency with no senior official at its helm—it is just middle management and below—the office has access to practically no records and delay almost always occurs.

Now suppose DEA structured its FOIA Office differently—according to the law—and isn't an insular unit with no records but is instead helmed by an official "at the Assistant Secretary level or its equivalent." That official necessarily would have custody or control over at least some important agency records—certainly more than *virtually no records at all*. Thus, by enforcing § 552(j), this Court can remediate at least part of my harm because it would limit the scope of the

"unusual circumstances" exception; at least some of my requests won't be incessantly delayed. This likelihood of partial relief is enough to show standing. *See, e.g.*, *Collins v. Yellen*, 141 S. Ct. 1761, 1778 (2021) ("[A] decision in the shareholders' favor could easily lead to the award of at least some of the relief that the shareholders seek."). The inquiry can and should end here: (1) my inability to timely obtain information is classic informational *injury-in-fact* personal to me, *see, e.g.*, *FEC v. Akins*, 524 U.S. 11, 21 (1998); that can be (2) *traced* to *Defendants'* unlawful structuring of the DEA FOIA office, *Collins*, 141 S. Ct. at 1779; and (3) *redressed* (or high likelihood of redressed in-part) if DEA had a senior official serve as Chief FOIA Officer, because DEA would no longer be able to defer all requests into oblivion using the "unusual circumstances" policy, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).

Rather than refute this argument, Defendants cherry pick 2AC paragraphs and say I don't have standing because the hand-picked paragraphs don't match up with injury, traceability, and redressability. Mot. 7-9. Then, it motions to my argument, but does little to refute it. According to Defendants, (1) I do "no more than speculate about what might happen regarding the size and staffing of DEA's FOIA Office if it had a Chief FOIA Officer," (2) "FOIA contains no provision requiring any particular size or funding level for FOIA offices, let alone a size or funding attributable to the presence or absence of a Chief FOIA Officer," and (3) I can only speculate that "a separate hypothetical Chief FOIA Officer within DEA might recommend certain changes to the agency's FOIA practices" and so on. Mot. 9-10.

This recital ignores my structural point. Whether a different Chief FOIA Officer allocates funding or increases the office size through action is neither here nor there. The problem has nothing to do with what DEA's Chief FOIA Officer *does* but with the structural fact that *DEA has no Chief FOIA Officer*. If a senior official were Chief FOIA Officer, it necessarily follows that her

office would at least include *that* senior official and *the records her office can access*; so, the scope of the "unusual circumstances" effect necessarily becomes smaller and there is less delay. A lawfully designated Chief FOIA Officer could do nothing except exist and all the foregoing would be true because her office would (1) no longer be a separate "establishment" under the unlawful policy and (2) have access to swaths of important records in the ordinary course. That isn't a "highly attenuated chain of possibilities." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). It is a certainty that necessarily follows when the office structure is fixed.

Speaking concretely illustrates the point. If DEA designated either an executive like its GC or Deputy Administrator as Chief FOIA Officer, then even under the unlawful "unusual circumstances" policy, either the GC or front office is no longer an "establishment" that is "separate from the office processing the request." Records under the auspices of that executive's office could be requested without unnecessary delays. This hypothetical shows us precisely the problem. An agency's most important records are often within the possession, custody, or control of a front office. Certainly, those are records *I* am interested in: records related to rulemakings, adjudications, and big picture policy decisions. And yet, because of *both* the "unusual circumstances" exception and an insular FOIA Office, the Department has found a clever way to put important records related to politicals and timely oversight out of reach.

### 2. As a regular FOIA user, I am injured by the fact that DEA has no Chief FOIA Officer.

Independent from the injury that ties into the "unusual circumstances" policy, I suffer an injury arising out of an unlawful agency structure more generally.

Congress established the Chief FOIA Officer position to ensure FOIA compliance and create an interface for FOIA requesting public and the agency. The Chief FOIA Officer has many responsibilities to ensure the proper functioning of FOIA, including "agency-wide responsibility

for efficient and appropriate compliance with [FOIA]" and "monitor[ing] implementation of this section throughout the agency." 5 U.S.C. §552(j). As the D.C. Circuit explained in *Judicial Watch, Inc. v. DHS*, 895 F.3d 770, 775-76 (D.C. Cir. 2018), the Chief FOIA Officer statute is an important structural protection among others that ensures compliance with FOIA's dictates. One reason for this is that only a senior agency executive has real authority to adopt, change, or fix substantive agency FOIA policies. Just a month ago, in a different case/court, the Government acknowledged this role of the Chief FOIA Officer. Ex. 3, *America First Legal Foundation v. Kerner*, Case No. 1:22-cv-03576, Dkt. 13 at 26 (D.D.C. Apr. 25, 2023).

Lacking a Chief FOIA Officer hampers the proper FOIA interface for me and the public. Congress mandated knowledgeable, politically accountable officials within agencies serve—not disconnected high-ranking Department officials or lower-level middle managers. The lack of a politically accountable agency Chief FOIA Officer cannot be divorced from issues such as lengthy response times/production delays, even in sensitive matters involving urgent public health or religious liberties.

One concrete item in particular firmly establishes prototypical injury-in-fact, traceability, and redressability. During the deposition, DEA explained that it developed a standard process to estimate review fees, which must be paid up front. Dkt. 28-2 (Dep.) at 127:14-131:8, 193:17-21. According to the witness, based on a process she initiated, four agency employees formulated a policy codified in DEA's Standard Operating Procedures. *Id.* at 127:21-128:12. In calculating review fees, they decided that it would take 7 minutes to review a page—based on nothing except personal beliefs and experience. *See id.* at 129:13-19. No Chief FOIA Officer was present at the meeting, as DEA does not have one. Nor is there any evidence DOJ's Chief FOIA Officer approved this rule. And yet, the assessment is across the board, significant, and has resulted in obscene fees

that financially prohibit my access to records. *See* 2AC ¶¶ 56, 73-75. For example, the difference between 7 versus 6 minutes a page is 16%, which amounts to thousands for even mild requests. The *ultra vires* and unsupervised formulation of fee policies that financially impact me (e.g., the standardized 7 minute per page rule) is a "prototypical form of injury in fact" traceable to the fact that FOIA implementation at DEA is being conducted by middle management through guesswork, and not supervised by a senior official according to statute. *Consumers' Research v. Consumer Product Safety Comm'n*, 592 F. Supp. 3d 568, 577 (E.D. Tex. 2022) (standing to lodge structural complaint rooted in FOIA fee rule).

To be clear, my structural complaint attacks "the entire legitimacy" of DEA's FOIA proceedings and processing apparatus. *Cochran v. SEC*, 20 F.4th 194, 209-10 (5th Cir. 2021). When a complaint goes to structure, proving hypothetical alternatives as Defendants urge is unnecessary, Mot. 9-10; nor should it matter whether the structural issue is constitutional or statutory. The Supreme Court has repeatedly held that individuals/entities before an agency can complain about unlawful structure when subjected to agency actions. For example, in *Collins*, 141 S. Ct. 1761, Fannie Mae and Freddie Mac shareholders had standing to levy a structural complaint, an Appointments clause challenge, about the unlawful structure of FHFA, which they alleged had acted to diminish the value of their shares. Moreover, the Court explained in *Akins* that the fact an agency might reach the same result exercising its discretionary powers lawfully does not undermine redressability. 524 U.S. at 25.

Thus, as the *Consumers' Research* court correctly concluded applying these precedents, "a regulated party may object to the existence of a regulation that may otherwise be a generalized grievance" and the fact that I "choose to subject" myself to FOIA regulations and practices "is immaterial" because FOIA requests are a common and habitual part of what I do as a

lawyer/journalist. 592 F. Supp. 3d at 578. As in this line of cases, I complain about a regulatory scheme lacking proper oversight. The person that formulates FOIA practices that I am subjected to and performs all the statutory responsibilities under the Chief FOIA Officer statute, Dkt. 28-2 (Dep.) at 33:1-40:2, is a middle manager with no policymaking authority. Worse, there's no interaction between her and the Department's only Chief FOIA Officer. *Id.* at 35:17-36:13.

The statement that I have "no more stake in than any other member of the public," Mot. 12, lacks merit. If "organizations and individuals who have paid fees to obtain records through [PACER]" can complain as a class about unlawful PACER fees, *Nat'l Veterans Legal Servs. Program v. United States*, 235 F. Supp. 3d 32, 35 (D.D.C. 2017), then as a FOIA user, I have standing to complain about fundamental unlawful agency FOIA practices or structural issues, either alone or in a class, particularly when those structural issues result in unlawful fee policies. FOIA is a "common and habitual part" of my employ. *Consumers' Research*, 592 F. Supp. at 579.

Indeed, if a lawyer/journalist that actively litigates against and writes about an agency does not have standing here, *then who does?* If Congress enacts a mandate but nobody can enforce it, is it really a mandate? Boiled down, Defendants ask this Court to set standing to a class of zero, a position that if credited would nullify a key structural protection of FOIA. *See Judicial Watch,* 895 F.3d at 775-76.

### B.   FOIA Reading Room

**Summary:** Defendants say I lack standing to pursue a reading room claim, and in any event, the claim is moot. Neither argument is correct, because (1) as an archetypal FOIA user, I am entitled to know about FOIA processing policies subject to § 552(a)(2) without having to file a request and (2) Defendants have not met their burden of showing my grievance is moot.

**1.    I have standing to challenge a failure to affirmatively disclose policies/practices for processing FOIA requests under 5 U.S.C. § 552(a)(2).**

Defendants say I lack "particularized" injury on my reading room claim. Mot. 10. But they mischaracterize my claim. I'm not trying to strengthen "democratic accountability" in governmental institutions by complaining about *general* reading room failures. Mot. 7. My grievance, as stated, is more precise and personal: lack of affirmative disclosure of FOIA policies and interpretations. 2AC ¶155. Because of these affirmative disclosure violations, I've had to seek out information about FOIA through phone calls, litigation tools, and other means. This goes against the purpose of FOIA's affirmative disclosure provisions and costs me time/money. *See Animal Legal Def. Fund v. United States Dep't of Agric.*, 935 F.3d 858, 867 (9th Cir. 2019) (similar injury established reading room standing).

As with the Chief FOIA Officer statute, other FOIA requesters might share the injury. But particularized simply means "the injury must affect the plaintiff in a personal and individual way." *Lujan v. Defs. of Wildlife*, 504 U.S. at 561 n.1. "Widely shared" does not negate particularity or standing. *Akins*, 524 U.S. 11, 24. Here, as a lawyer/journalist that practices in front of DEA and makes FOIA requests of DEA, Defendants' failure to affirmatively and transparently publish information about how they process FOIA requests injures me in a personal and ongoing way, even if that injury is widely shared by a class of FOIA requesters.

**2.    Defendants do not carry their Rule 12 mootness burden.**

Defendants also say that because both documents specifically identified in the complaint have been produced, I no longer have any injury. Mot. 10-13. Not so. While I have the burden to show standing, Defendants bear a significant burden to show mootness, *see Veasey v. Abbott*, 248 F. Supp. 3d 833, 835 (S.D. Tex. 2017), which is heavier on a Rule 12 motion where reasonable inferences are drawn in my favor. Defendants do not meet it.

I allege "systemic violations" of FOIA's reading room provision. 2AC ¶103. I allege DOJ has "violated and continue to violate 5 U.S.C. § 552(a)(2) by not making available for public inspection in an electronic format policies and interpretations of the FOIA and staff manuals/instructions that affect members of the public." *Id.* ¶¶155 To support the plausibility of past/ongoing violations, I cite two specific examples. *Id.* ¶101 (redaction policy manual), ¶106 (FOIA manual). I even show how DEA instructs employees not to comply with statutory obligations. *Id.* ¶108. I do not seek an order compelling statutory compliance generally but an injunction ordering Defendants to disclose all policies, interpretations, and staff manuals *related to processing FOIA requests*. *Id.* ¶¶153-56.

Defendants suggest it completely remedied the reading room violations simply because it produced the two examples I flagged in litigation. But those examples are not exhaustive, and Defendants' argument assumes (1) no other undisclosed DOJ policies exist, which is uncertain at this juncture and (2) requires inferences be drawn in Defendants' favor, not mine. Notably, Defendants resist targeted discovery to verify their assertions and provide no substantiating evidence, relying only on attorney argument in papers. *See* Dkt. 43. To date, DOJ has not even provided a conclusory declaration to substantiate its mootness points.

To the extent I have any burden, my pleading and the 30(b)(6) deposition testimony meet it. In *Hajro*, in the pattern/practice context, the court explained that regardless of whether specific FOIA requests are mooted, a plaintiff maintains injury in fact if: "(1) the agency's FOIA violation was not merely an isolated incident, (2) the plaintiff was personally harmed by the alleged policy, and (3) the plaintiff himself has a sufficient likelihood of future harm by the policy or practice." 811 F.3d at 1103. With facts construed in my favor, I have shown affirmative disclosure violations that are not isolated and cause me personal harm; and that there are genuine factual disputes

regarding other violations and the likelihood of future harm. As a Rule 12 mootness matter, the Motion must be denied.

### C.   I State a First Amendment Claim for Timely Access to *Administrative Proceeding Records.*

**Summary:** Page 13 of Defendants' Motion contains its argument that I fail to state a First Amendment claim "as a matter of law." Defendants argue that I cannot state a First Amendment claim to "obtain all the information provided by the FOIA laws." But again, they don't accurately state what I claim. I don't claim a "constitutional right to obtain all the information provided by the FOIA laws." Rather, my claim is far narrower and more precise: a "Right to Timely Access *Records from Administrative Proceedings.*"

---

**EIGHTH CAUSE OF ACTION**

(First Amendment—Right to Timely Access Records from Administrative Proceedings)

161.   Plaintiffs incorporate the previously alleged paragraphs by reference.

162.   In addition to being an attorney, Plaintiff Zorn is a journalist who writes stories related to drug policy and regulation. DEA has recognized Zorn as a journalist in certain capacities.

163.   The First Amendment protects the public against the government's "arbitrary interference with access to important information."[68]

164.   As the Supreme Court has stated, "when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process."[69]

165.   DEA administrative proceedings operate under procedures modeled on those of the courts and impose official and practical consequences upon members of society.

166.   DEA's recordkeeping practices and FOIA administration effectively make the agency's proceedings non-public and have denied the public timely access to important information.

---

[68]   *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 583 (Stevens, J., concurring).
[69]   *Hannah v. Larche,* 363 U.S. 420, 442 (1960).

---

\*         \*         \*

13

As stated in my pleading, DEA agency proceedings are secretive. Adjudications/rulemaking occur without public visibility. Filings are submitted via email to ECF-DEA@dea.gov. There are no electronic dockets. Access to records requires a time-consuming and expensive FOIA request, hindering reporting on agency activities. *See* 2AC ¶¶109-119. Through the lens of my actual claim and the facts, this claim is well-grounded.

Start with the established right to timely access records from judicial proceedings under *Richmond Newspapers* and its progeny. In *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), the Court held that the right to attend criminal trials "is implicit in the guarantees of the First Amendment." *Id.* at 580. Two years later, in *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982), the Court explained that this qualified right requires a case-by-case approach. And in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8–10 (1986), the Court explained that whether the qualified right attaches depends on: (1) "whether the place and the process has historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." This is known as the "experience and logic" test. Once the qualified right attaches, "the presumption of openness can be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *United States v. Edwards*, 823 F.2d 111, 115 (5th Cir. 1987).

While the Supreme Court has not decided whether the experience and logic test applies to administrative proceedings, every circuit to address the question has concluded it can. In *Detroit Detroit Free Press v. Ashcroft*, 303 F.3d 681, 695-96 (6th Cir. 2002), for example, the court concluded that the qualified right to access applied to deportation proceedings because they are adversarial, adjudicative, and while deportation is not technically a criminal proceeding, it imposes

14

a "great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom." Similarly, in *New York C.L. Union v. New York City Transit Auth.*, 684 F.3d 286, 300 (2d Cir. 2012), the court held that a qualified right of access attached to hearings conducted by a Transit Adjudication Bureau because the TAB acted as an adjudicatory body, operated under procedures modeled on those of the courts, and imposed official and practical consequences upon members of society. *See, also, e.g.*, *North Jersey Media Group, Inc. v. Ashcroft*, 308 F.3d 198, 208–09 (3d Cir. 2002);

Appellate courts thus hold that access rights extend to administrative proceedings resembling court proceedings. And, whether I state a claim (and will prevail on that claim) boils down to three questions: (1) are DEA administrative proceedings sufficiently like that of a court; (2) is the experience and logic test satisfied; and (3) does DEA's failure to make records from administrative proceedings timely accessible violate the First Amendment.

1.       **Are DEA administrative proceedings sufficiently like that of a court?** Yes. DEA adjudications, like in *Detroit Free Press*, are adversarial and impose hardship on respondents. Similarly, like in *NYC Transit Authority*, DEA proceedings model court procedures and impose significant consequences on respondents. ALJs with lifetime tenure preside over all DEA proceedings, further highlighting their court-like nature.

2.       **Is the "experience and logic" test is satisfied?** No doubt. The experience determination doesn't consider historical openness or formalistic descriptions. *New York City Transit Auth.*, 684 F.3d at 299. Rather, the inquiry looks at "experience in that type or kind of hearing throughout the United States," *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147, 150 (1993) (internal quotation marks omitted), i.e., "whether openness enhances the ability of the government proceeding to work properly and to fulfill its function." *NYC Transit Auth.*, 684 F.3d

at 301-02. DEA administrative proceedings most closely resemble historically public criminal prosecutions.

3.      **Is the right to timely access administrative records violated?** Again, yes. The First Amendment does not require instantaneous disclosure. *See Edwards*, 823 F.2d at 118. But it not only guarantees a qualified right of access, but *timely* access. *See Courthouse News Serv. v. Planet*, 947 F.3d 581, 585, 894 (9th Cir. 2020) ("[A] necessary corollary of the right to access is a right to timely access"). For example, a delay in releasing records of closed proceedings can violate the First Amendment. *See Edwards*, 823 F.2d at 119.

There is no genuine dispute that DEA adjudicatory records are not publicly accessible in a reasonably timely manner. The process is downright medieval—with records effectively delivered to FOIA requesters by horseback. *See, e.g.*, Dkt. 28-2 (Dep.) 86:2-19, 86:22-87:3. Also, obtaining these administrative records can cost ten thousand dollars or more—up front. 2AC ¶155. With the "unusual circumstances" policy and the first-in-first-out system, it can take *years* to obtain these records, long after a proceeding concludes, *if one even knows how to properly make a request*. Because these proceedings are secretive (unlike nearly all other major federal agencies, *see id* ¶112), even if records from DEA proceedings were somehow timely accessible through FOIA—and they are not—nobody would ever know what to ask for.

CONCLUSION

The Motion should be denied.

Dated: May 22, 2023                    Respectfully submitted,

                                       /s/ Matthew C. Zorn
                                       Matthew C. Zorn
                                       YETTER COLEMAN LLP
                                       mzorn@yettercoleman.com
                                       811 Main Street, Suite 4100
                                       Houston, TX 77002
                                       T: (713) 632-8000
                                       F: (713) 632-8002

                                       Shane Pennington
                                       VICENTE SEDERBERG LLP
                                       1115 Broadway, 12th Floor
                                       New York, NY 10010
                                       T: (917) 338-5455
                                       F: (303) 860-4505
                                       s.pennington@vicentesederberg.com

                                       ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                       /s/ Matthew C. Zorn
                                       Matthew C. Zorn

## WORDS

I certify that this filing has 4971 words, excluding the case caption, table of contents, table of authorities, signature block, and certificates.

                                       /s/ Matthew C. Zorn
                                       Matthew C. Zorn

17