# Exhibit 3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **AMERICA FIRST LEGAL FOUNDATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:22-cv-03576-APM** |
| | ) | |
| **HENRY J. KERNER, Special Counsel,** | ) | |
| **U.S. Office of Special Counsel,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................1

LEGAL BACKGROUND ............................................................................................2

FACTUAL BACKGROUND ........................................................................................3

ARGUMENT ..............................................................................................................8

I.     AMERICA FIRST'S FOIA SUIT (*AMERICA FIRST II*) UNDERSCORES THAT IT HAS AN ADEQUATE ALTERNATIVE REMEDY AVAILABLE TO IT, REQUIRING DISMISSAL OF BOTH CLAIMS ........................................................................8

II.    THIS ACTION SHOULD BE DISMISSED BECAUSE AMERICA FIRST HAS NOT SHOWN THAT IT HAS A PRIVATE RIGHT OF ACTION TO ENFORCE 5 U.S.C. § 1216(a)(3) AGAINST THE SPECIAL COUNSEL ........................................................11

III.   EVEN CREDITING AMERICA FIRST'S COMPLAINT ALLEGATIONS AS TRUE UNDER RULE 12, ITS CLAIMS SHOULD BE DISMISSED AS MOOT .....................17

CONCLUSION ..........................................................................................................23

**TABLE OF CASES**

Page

*Alabama v. PCI Gaming Auth.*, 801 F.3d 1278 (11th Cir. 2015) ....................................11, 12, 16

*Alexander v. Sandoval*, 532 U.S. 275 (2001)..............................................................................11

*Benavides v. Bureau of Prisons*, 993 F.2d 257 (D.C. Cir. 1993)....................................................2

*Brookens v. Gamble*, 2020 WL 6134266 (D.D.C. Oct. 19, 2020)................................................20

*Chinniah v. FERC*, 60 F.4th 700 (2d Cir. 2023)............................................................................2

*CIA v. Porup*, 997 F.3d 1224 (D.C. Cir. 2021)....................................................................18, 21

*Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*, 846 F.3d 1235 (D.C. Cir. 2017) ..........9

*Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*, 298 F. Supp. 3d 151 (D.D.C. 2018) ....8

*Citizens for Resp.& Ethics in Wash. v. Dep't of Justice*, 164 F.Supp.3d 145 (D.D.C. 2016)  ......9

*Cort v. Ash*, 422 U.S. 66 (1975)..................................................................................................12

*Driver v. Kern Cnty. Super. Ct.*, 2021 WL 4943738 (E.D. Cal. Oct. 22, 2021)........................18

*In re Al-Nashiri*, 47 F.4th 820 (D.C. Cir. 2022) .............................................................9, 18, 19

*In re Nat'l Nurses United*, 47 F.4th 746 (D.C. Cir. 2022)............................................................9

*Johnson v. Interstate Mgmt. Co.*, 849 F.3d 1093 (D.C. Cir. 2017)......................................12, 13

*Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 895 F.3d 770 (D.C. Cir. 2018)......................21

*Kontrick v. Ryan*, 540 U.S. 443 (2004)......................................................................................19

*Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233 (D.D.C. 2012)..............................................9

*Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990) ...................................20

*Perry v. Block*, 684 F.2d 121 (D.C. Cir. 1982) ......................................................................2, 14

*Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196 (D.D.C. 2009)...........................................20

*Reid Bros. Logging Co. v. Ketchikan Pulp. Co.*, 699 F.2d 1292 (9th Cir. 1983) .......................21

*Sitar v. Ind. Dep't of Transp.*, 2001 WL 1388264 (S.D. Ind. Sept. 27, 2001)...........................21

ii

*_Trump v. New York_, 141 S. Ct. 530 (2020)...................................................................................10

*_TRW, Inc. v. Andrews_, 534 U.S. 19 (2001)..................................................................................13

*_Wolf v. Celebrity Cruises_, 683 F. App'x 786 (11th Cir. 2017)......................................................22

*_Wolffe v. Galdenzi_, 2022 WL 14813702 (E.D. Pa. Oct. 25, 2022)..............................................18

## INTRODUCTION

Plaintiff America First Legal Foundation asks this Court for extraordinary judicial relief unprecedented under the circumstances presented here: an order compelling defendant Henry J. Kerner, Special Counsel, U.S. Office of Special Counsel, to investigate its unsubstantiated allegations that the Civil Division of the Department of Justice (DOJ or Department) arbitrarily and capriciously requires employee consent before searching their emails for information responsive to Freedom of Information Act (FOIA) requests. America First bases its claims—asserted under the Administrative Procedure Act (APA) and the Mandamus Act—on its allegation that the Civil Division's FOIA and Privacy Office (F & P Office) maintains an unwritten policy requiring such custodian consent prior to any email searches. In opposing America First's early summary judgment motion, the Special Counsel rebutted the factual premise for that allegation through declaration testimony establishing that no such policy exists. And in cross-moving to dismiss, the Special Counsel explained that America First's statutory argument is incorrect; that it can show no clear statutory right to have the Special Counsel investigate the Civil Division's F & P Office; that it can show no clear duty on the Special Counsel's part to open such an investigation; and that there are adequate alternative remedies available to it in any event. America First's closing brief offers no persuasive argument against any of those points.

If anything, America First's claims and supporting arguments have only weakened since dispositive-motion briefing began. On February 13, 2023—one week before the Special Counsel moved to dismiss—America First filed a separate FOIA suit against DOJ challenging the Department's response to multiple FOIA requests, including the Civil Division request at issue here. That FOIA action—unknown to the Special Counsel or its litigation counsel until weeks later, and unmentioned in America First's closing brief—underscores that America First has

adequate remedies elsewhere that preclude relief on its claims here. Likewise, America First's closing brief underscores that the statutory provision it relies on for both of its claims, 5 U.S.C. § 1216(a)(3), gives it no private right of action. Finally, America First's briefing underscores that if it ever had any legal claim based on an alleged F & P Office policy of requiring employee consent, that claim would plainly be moot.

The Court thus should dismiss America First's complaint.

## LEGAL BACKGROUND

Two statutes, 5 U.S.C. § 552(a)(4)(F)(i) and 5 U.S.C. § 1216(a)(3), lie at the heart of this action. Section 552(a)(4)(F)(i) is a provision of FOIA, 5 U.S.C. § 552, enacted in its original form in 1974.

Section 552(a)(4)(F)(i) "directs the . . . Special Counsel to initiate an investigation to determine whether disciplinary action is warranted in response to the improper withholding of nonexempt records under the FOIA by an agency officer or employee." *Perry v. Block*, 684 F.2d 121, 125 n.19 (D.C. Cir. 1982). "Such an investigation is directed, however, only when the court in question (1) orders the production of the withheld records and (2) issues written findings suggesting that the 'circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously,'" *id.*, and only when the court "'assesses against the United States reasonable attorney fees and other litigation costs.'" *Benavides v. Bureau of Prisons*, 993 F.2d 257, 258 n.3 (D.C. Cir. 1993).

Section 1216(a)(3) is a provision of the Civil Service Reform Act of 1978 (CSRA), Pub. L. No. 95-454, § 202(a), 92 Stat. 1128, reenacted verbatim as a provision of the Whistleblower Protection Act of 1989 (WPA), 5 U.S.C. §§ 1211-22 *et al*. *See Chinniah v. FERC*, 60 F.4th 700, 702 (2d Cir. 2023) (noting that "'[t]he CSRA and the WPA are integrated into a single statutory

scheme'") (quoting *Kerr v. Jewell*, 836 F.3d 1048, 1058 (9th Cir. 2016)).  Section 1216 (a)(3) provides, with certain exceptions, that "the Special Counsel shall . . . conduct an investigation of any allegation concerning . . . arbitrary or capricious withholding of information prohibited under [FOIA]."

## FACTUAL BACKGROUND

America First submitted a FOIA request to the F & P Office by letter dated April 6, 2022. Letter Rubinstein to Wood *et al.*, ECF No. 5-3, at 2.  The request asked the F & P Office to produce more than five years of emails, if any, between a certain email address of David Cole, Legal Director, American Civil Liberties Union, *id.* at 1-2, and "any Civil Division employee."  Compl. (Nov. 25, 2022), ECF No. 1, ¶ 8.

America First limited its request "as an initial matter" by email dated May 18, 2022, to emails, if any, between the above email address and any employee of three litigating components of the Civil Division or of the front office of the Civil Division, but only those employees who were members of the Senior Executive Service or compensated at paygrade GS-15.  Email from Redacted to Logan *et al.*, ECF No. 1-1 at 4.  The scope of America First's request continues, nonetheless, to extend to the emails of "over 400" employees of the Civil Division.  *See* Email from Logan to Redacted (Jun. 7, 2022), ECF No. 1-1 at 2 (referring to those employees as "custodians" of the requested emails).

Elizabeth A. Wood was Acting Chief of the F & P Office at the time that America First submitted its request.  Email from Wood to Redacted (Apr. 13, 2022), ECF No. 1-1 at 8.  A representative of America First sought by 25-line email dated April 14, 2022, 3:17 p.m., to "memorialize the contents" of a telephone conversation that the representative and Ms. Wood had

had earlier that day. Email from Redacted to Wood *et al.*, ECF No. 1-1 at 5. The representative

made several points in his email, including the following:

> Secondarily, I understand that the Civil Division has a policy of not conducting a
> FOIA search on employee's emails without first getting their permission or consent,
> or in the alternative asking them to conduct the search of their own inbox. You
> stated that in order to do the search as requested, the Civil Division FOIA office
> would have to get the consent of all employees to be searched. My understanding,
> based on or conversation, is that this is a Civil Division policy adopted as common
> courtesy for employees to protect their private information.

*Id.* at 6. The representative closed his email by asking Ms. Wood to "please let me know if I have

incorrectly captured any portion of our discussion, or omitted something."[1]  *Id.*

> Responding to the representative by email dated April 14, 2022, 3:58 p.m, Ms. Wood said:

> This is correct. Thank you so much for taking the time to speak with me and I look
> forward to working with you on this request. I've cc'd Stephanie Logan [of the F
> & P Office] for awareness because she is the Government Information Specialist
> who will be working on the request.

Email from Wood to Redacted, ECF No. 1-1at 5.

"[F]ollow[ing] up" by email dated April 14, 2022, 4:13 p.m., the representative asked Ms.

Wood: "[I]s that policy of getting consent from employees prior to a FOIA search a written policy

or more of a practice?" Email from Redacted to Wood *et al.*, ECF No. 1-1 at 5. Responding by

email dated April 15, 2022, Ms. Wood said: "It is not a written policy." Email from Wood to

Redacted *et al.*, ECF No. 1-1 at 4.

America First commenced this action on November 25, 2023, alleging that Ms. Wood and

Ms. Logan admitted in their responsive emails to the representative of America First during the

period April 7-July 20, 2022; that the F & P Office has "an unwritten policy to require a custodian's

---

[1] The Special Counsel uses masculine pronouns to refer to the representative because the
representative used the name "Andrew" to sign an email to Ms. Wood and others dated July 20,
2020. Email from Redacted to Logan *et al.*, ECF No. 1-1, at 1.

permission to perform a search in response to a lawful FOIA request"; that the alleged policy caused the F & P Office to "refuse[] to conduct a search" for records responsive to America First's request; that the alleged policy violates FOIA "arbitrarily and capriciously"; and that the Special Counsel has a "non-discretionary duty" under 5 U.S.C. § 1216(a)(3) to investigate the alleged policy.[2] Compl. ¶¶ 9-11, 19.

Approximately one month after moving for summary judgment in this action on January 12, 2023, America First commenced *America First v. DOJ*, No. 1:23-cv-00391-RDM (D.D.C.) (*America First II*) on February 13, 2023.[3] *America First II* is an action against DOJ under FOIA. *Am. First II*, Compl., Ex. A hereto, Preamble. America First seeks an order in *America First II* compelling DOJ to comply with seven FOIA requests that America First submitted to DOJ or to nine of its components during the period October 12, 2021-April 6, 2022. *Id.* ¶¶ 8, 10, 19-20, 29, 33, 37-38, 47, 57 & Prayer ¶ iii. Those requests include the request that America First submitted to the F & P Office by letter dated April 6, 2022. *Id.* ¶ 10. America First alleges in *America First II*, as it does here, that Ms. Wood and Ms. Logan admitted in the emails they sent to the representative of America First during the period April 7-July 20, 2022, that the F & P Office has

---

[2] The allegation that the F & P Office has "refused to conduct a search" for records responsive to America First's request, Compl. ¶ 9, is baseless. Far from refusing to conduct a search, Ms. Wood advised the representative of America First by email dated July 20, 2022, that "[w]e are currently conducting a search for potentially responsive information. Due to the number of custodians, this is taking some time to reach out to custodians and have them search. The search is still ongoing." Email from Wood to Redacted *et al.*, ECF No. 1-1 at 1.

[3] America First did not advise the Special Counsel of its commencement of *America First II* and has not mentioned *America First II* in its papers in this action. Undersigned counsel did not learn about the commencement of *America First II* until early March 2023, well after filing the Special Counsel's opening brief on February 17, 2023, when undersigned counsel's office learned that the U.S. Attorney's Office for the District of Columbia had earlier been served with the complaint in *America First II*. Undersigned counsel then advised the Special Counsel of the commencement of *America First II*.

"an unwritten policy to require a custodian's permission to perform a search in response to a lawful FOIA request." *Id.* ¶ 16. America First further alleges that the F & P Office has failed to produce any records responsive to its request to date. *Id.* ¶ 17.

The Special Counsel opposed America First's summary judgment motion and cross-moved to dismiss for failure to state a claim on February 17, 2023, submitting the Declaration of Daniel W. Lim (Feb. 17, 2023) (Lim Decl.), ECF No. 7-3, in support of his summary judgment opposition. Consistent with Rule 12(b)(6), the Special Counsel relied on the declaration "only in opposing America First's summary judgment motion, and [did] not base any motion to dismiss argument on the declaration." Mem. Supp. Def. Mot. Dis. & Opp'n Pl. Mot. Summ. J. (Feb. 17, 2023) (Def. Init. Mem.), ECF No. 7-1, at 13 n.3.

Mr. Lim was Acting Chief of the F & P Office at the time he executed his declaration, having served in that capacity since November 16, 2022, while also serving as Chief of the Civil Division's E-Discovery Office. Lim Decl. ¶¶ 3-4. Both the F & P Office and the E-Discovery Office are offices within the Civil Division's Office of Management Programs. Kenneth A. Hendricks is now Chief of the F & P Office, but Mr. Lim remains Chief of the E-Discovery Office.

Mr. Lim states in his declaration that he evaluated "[i]n [his] capacity as Acting Chief of the [F & P Office] the email exchange between the America First representative and Ms. Wood that occurred between April 14 and April 15, 2022." *Id.* ¶ 10. Mr. Lim explains that he evaluated that exchange to determine, among other things, whether it "reflects an accurate characterization of policies or practices governing FOIA searches within the Civil Division." *Id.* Declaring that his views are "[b]ased on [his] knowledge, understanding, and experience of how FOIA request are processed at the Civil Division," *id.* ¶¶ 11, 13, Mr. Lim states that the statement in the email dated April 14, 2022, 3:17 p.m., "that the Civil Division has a policy that requires 'not conducting

6

a FOIA search on [employees'] emails without first getting their permission or consent' . . . was inconsistent with the practices of the office." *Id.* ¶ 11.  Mr. Lim also states that Ms. Wood was "imprecise and overly accommodating to potential misstatements or inaccuracies" in the email dated April 14, 2022, 3:17 p.m., when she responded to the entirety of the e-mail in the email dated April 14, 2022, 3:58 p.m., by saying, "'[T]his is correct.'" *Id.*  Mr. Lim describes the email dated April 14, 2022, 3:17, p.m., as "lengthy" and "multi-part." *Id.*  Mr. Lim adds that Ms. Wood "did not portray accurately the practices of the [F & P Office]" when she said in the email dated April 15, 2022, that the alleged policy of getting consent from employees prior to a FOIA search was "'not a written policy.'" *Id.* ¶ 13.

Mr. Lim underscores his rejection of "any statement or suggestion that any policy or practice within the [F & P Office] requires 'not conducting a FOIA search on [employees'] emails without first getting their permission or consent,'" *id.* ¶ 12, by explaining, based likewise on "[his] knowledge, understanding, and experience of how FOIA requests are processed at the Civil Division," *id.* ¶ 15, that the F & P Office generally uses "one of two predominant methods" to handle "requests that require the search of E-Mails." *Id.*  Mr. Lim also explains that the choice of which method to use depends on the "unique factors" that "each FOIA request presents." *Id.* 17. Mr. Lim states that the first method requires the F & P Office to "work with the Civil Division's Office of Information Technology and conduct searches of E-mail set on parameters," *id.* ¶ 15, while the second method requires the F & P Office to "reach out to individual employees of the Civil Division to conduct searches of their own mailboxes, identify responsive messages, and transfer those messages to the [F & P Office]." *Id.* ¶ 16.  Mr. Lim acknowledges that the F & P Office "routinely consults Civil Division employees to collect documents responsive to the FOIA requests themselves or seek input from the employees to create precise search criteria," *id.* ¶ 12,

but states that "[t]hat process is designed to avoid the delays that can be caused by overcollection and facilitate prompt responses" and "does not require employees' consent prior to any search of their emails." *Id.*

Mr. Lim states in summary that he is "not aware of any policies or practices that require the [F & P Office] to obtain employee consent prior to conducting a search for responsive FOIA records, including anything that could be characterized as an 'unwritten policy.'" *Id.* ¶ 14. Mr. Lim also states that "[his] understanding is that a requirement to obtain consent from employees to search their respective files would be inconsistent with overarching [DOJ] guidance." *Id.* Mr. Lim adds that he has "confirmed with the [F & P Office] staff that employee consent is not treated as requirement in prior or current FOIA response processes, and has never to [his] knowledge been treated as a requirement." *Id.*

## ARGUMENT

## I.    AMERICA FIRST'S FOIA SUIT (*AMERICA FIRST II*) UNDERSCORES THAT IT HAS AN ADEQUATE ALTERNATIVE REMEDY AVAILABLE TO IT, REQUIRING DISMISSAL OF BOTH CLAIMS.

Among other required elements, America First must show that it has no alternative remedy to move forward on either its APA or Mandamus claim. The Special Counsel's opening brief explained that America First cannot meet that requirement under either of those claims. America First's February 13 FOIA suit against the Department of Justice simply underscores that fact, even further foreclosing any argument under either theory of relief here.

Under the APA, jurisdiction exists only when "there is no other adequate remedy in a court," 5 U.S.C. § 704, and precedent establishes that a plaintiff may only bring the sort of claim America First brings here under FOIA, not the APA. *Citizens for Resp. & Ethics in Wash. v. DOJ*, 298 F. Supp. 3d 151, 152 (D.D.C. 2018), *aff'd*, 922 F.3d 480 (D.C. Cir. 2019). In particular, as

this Court has held, FOIA provides an adequate remedy for challenges to alleged agency FOIA policies and practices, thus precluding claims under the APA. *Citizens for Resp. & Ethics in Wash. v. DOJ*, 164 F.Supp.3d 145, 147 (D.D.C. 2016) (Mehta, J.); *Citizens for Resp. & Ethics in Wash. v. DOJ*, 846 F.3d 1235 (D.C. Cir. 2017).

Likewise, the issuance of a writ of mandamus requires, among other things, that "'no other adequate remedy [be] available to plaintiff.'" *In re Nat'l Nurses United*, 47 F.4th 746, 752 n.4 (D.C. Cir. 2022) (quoting *Muthana v. Pompeo*, 985 F.3d 893, 910 (D.C. Cir. 2021); *accord In re Al-Nashiri*, 47 F.4th 820, 827 (D.C. Cir. 2022). That requirement applies to actions challenging "both specific denials of records as well as overarching policies and practices . . . that are alleged to violate the FOIA." *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 242 (D.D.C. 2012), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020). "[M]andamus claims" are "appropriately dismissed" in such actions because "the plaintiff's FOIA claims would provide an adequate remedy for all of the policies or practices for which the plaintiff seeks relief under the Mandamus Act." *Id.* at 268.

America First has brought two actions, not one, but the logic of *National Security Counselors* applies here. This action seeks a declaratory judgment and a writ of mandamus compelling the Special Counsel to investigate the alleged policy of the F & P Office that allegedly caused the F & P Office to refuse to comply with America First's FOIA request. Compl. ¶¶ 9-11 & Prayer, ¶¶ A-B. *America First II* seeks an order compelling the F & P Office to comply with America First's FOIA request, notwithstanding the alleged policy. *Am. First II*, Compl., ¶¶ 8, 10, 16 & Prayer ¶ iii. As was the case in *National Security Counselors*, America First's "mandamus claim[]" is "appropriately dismissed" from this action because the "FOIA claim[]" that America First asserts in *America First II* will "provide an adequate remedy for [the policy] for which [America First] seeks relief [in this action] under the Mandamus Act." *See* 898 F. Supp. 2d at 268.

America First does not dispute the foregoing. Instead, it merely suggests that "[t]he Special Counsel's argument that FOIA provides the appropriate remedy for his failure to act under § 1216 could be proper in response to a FOIA case against [DOJ]." Pl. Opp'n Def. Mot. Dis. & Reply Supp. Its Mot. Summ. J. (Mar. 20, 2023) (Pl. Mem.), ECF No. 11-1, at 11 (emphasis deleted). America First fails to acknowledge, however, that it now has commenced a "FOIA case against [DOJ]," *see id.*, by commencing *America First II*.

America First also contends that this action "[will] remain a ripe dispute" even if DOJ "fully respond[s] to the underlying FOIA." *Id.* But America First is mistaken in at least two respects. First, the Special Counsel has argued not that America First's claims fail on ripeness grounds, but that its potential remedies lie elsewhere, thus foreclosing relief under the APA or the Mandamus Act against the Special Counsel. And second—even addressing America First's argument at face value—the ripeness doctrine "originate[s] in the case-or-controversy requirement of Article III." *Trump v. New York*, 141 S. Ct. 530, 535 (2020). So does the doctrine of standing. *Id.* The doctrine of standing requires a plaintiff to demonstrate, among other things, "'an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical." *Id.* (quoting *Carney v. Adams*, 141 S. Ct. 493, 498 (2020)). America First will be unable to demonstrate that the alleged policy of the F & P Office has caused it any injury if the F & P Office "fully respond[s]" to America First's FOIA request, *see* Pl. Mem. at 11, or if the court holds in *America First II* that the F & P Office has no obligation to do so.

Because America First has alternative remedies available to it elsewhere—and in fact has pursued those remedies against DOJ through a separate FOIA action—both of its claims should be dismissed.

## II.   THIS ACTION SHOULD BE DISMISSED BECAUSE AMERICA FIRST HAS NOT SHOWN THAT IT HAS A PRIVATE RIGHT OF ACTION TO ENFORCE 5 U.S.C. § 1216(a)(3) AGAINST THE SPECIAL COUNSEL.

The availability of adequate remedies aside, America First's claims fail because it cannot show that the statutory interpretation it bases its claims on is correct.  And its unsuccessful efforts to do so in its closing brief suggest another defect fatal to its claims: the lack of a private right of action under 5 U.S.C. § 1216(a)(3).  America First relies on that provision to contend that the Special Counsel has a clear, non-discretionary duty to open an investigation into the Civil Division merely on the strengths of America First's allegations that the Divison's F & P Office has a so-called policy of requiring employees' consent prior to searching their emails for material responsive to a FOIA request.  That is both incorrect and unavailing to America First: it underscores not only that the Special Counsel bears no clear duty to launch an investigation on the basis of bare allegations but that America First has no clear right to relief, in part because § 1216(a)(3) creates no private right of action.

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.*

"A statute may . . . create a cause of action either expressly or by implication." *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1294 (11th Cir. 2015).  "To determine whether a statute provides an express right of action, [a court] 'look[s] for an 'express provision granting . . . a federal cause of action to enforce the provisions of the act.'" *Id.* (quoting *Smith v. Russellville Prod. Credit Ass'n*, 777 F.2d 1544, 1547 (11th Cir. 1985)).  "To determine whether Congress intended to create an implied right of action," a court looks "'[f]irst and foremost . . .  to the

11

statutory text for rights-creating language.'" *Id.* at 1295 (quoting *Love v. Delta Air Lines*, 310 F.3d 1347, 1352 (11th Cir. 2002)).  Next, the court "'examine[s] the statutory structure within which the provision in question is embedded.'"  *Id.* (quoting *Love*, 310 F.3d at 1353).  Third, the court "look[s] to 'legislative history and context in which the statute was passed,'" but the court "consider[s] legislative history 'if – and only if – statutory text and structure have not conclusively resolved whether a . . . right of action should be implied.'"  *Id.*

A plaintiff seeking to establish the existence of an implied private right of action has "a high bar to clear" because "[t]he high-water mark for implied causes of action came in the period before the Supreme Court's 1975 decision in *Cort v. Ash*, 422 U.S. 466.  But since *Cort v. Ash*, the Supreme Court has been very hostile to implied causes of action."  *Johnson v. Interstate Mgmt. Co.*, 849 F.3d 1093, 1097-98 (D.C. Cir. 2017) (Kavanaugh, J.) (parallel citations omitted); *see Cort*, 422 U.S. at 77-78 (declining to infer private right of action from criminal statute).  A plaintiff seeking to establish the existence of an implied private right of action thus must cope, among other things, with the principle that "'[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'"  *Id.* at 1098 (quoting *Sandoval*, 532 U.S. at 290).

Here, America First seeks to enforce 5 U.S.C. § 1216(a)(3) against the Special Counsel, *see* Compl, Prayer ¶¶ A-B, but nowhere does it point to an "'express provision'" of any statute granting it "'a federal cause of action'" to do so.  *See PCI Gaming*, 801 F.3d at 1294 (quoting *Russellville Prod. Credit Ass'n*, 771 F.2d at 1547).  Neither does America First point to any "'rights creating language'" suggesting that it possesses an implied private right of action to enforce § 1216(a)(3).  *See id.* at 1295 (quoting *Love*, 310 F.3d at 1352).  America First does two things instead.  First, it misstates the law of statutory construction.  Second, it points to certain aspects of

the text and statutory context of § 1216(a)(3) that purport to show, but do not show, that America First has an implied private right of action to enforce § 1216(a)(3).

America First misstates the law of statutory construction by contending that "[i]t is a 'cardinal principle of statutory construction' that a statute ought to be so construed that no clause, sentence, or word shall be superfluous, void, or insignificant."  Pl. Mem. at 8-9 (purporting to quote *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).  This contention misstates the law of statutory construction because the contention quotes *TRW* only in part.  What *TRW* says in full is: "It is 'a cardinal principle of statutory construction' that 'a statute ought, *upon the whole*, to be so construed that, *if it can be prevented*, no clause, sentence, or word shall be superfluous, void, or insignificant.'"  534 U.S. at 31 (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)) (emphasis added).  The "cardinal principle of statutory construction" to which America First refers thus is not the straitjacket that America First pretends it to be.

America First has a difficult task, moreover, in trying to establish that it has an implied private right of action to enforce § 1216(a)(3).  Congress chose a particular "'method of enforcing [the] substantive rule'" against the arbitrary and capricious withholding or records responsive to FOIA requests when it enacted 5 U.S.C. § 552(a)(4)(F)(i).  *See Johnson*, 849 F.3d at 1098 (quoting *Sandoval*, 532 U.S. at 290).  Congress' choice of that method "'suggests that Congress intended to preclude other[]'" such methods.  *See id.*

America First contends, nonetheless, that it has an implied private right of action to enforce § 1216(a)(3) because § 1216(a)(3) does not mention § 552(a)(4)(F)(i); because § 1216(a)(3) conditions action by the Special Counsel on an "allegation" of arbitrary and capricious withholding, while § 552(a)(4)(F)(i) conditions action by the Special Counsel on a "finding" of arbitrary and capricious withholding and on one or more court "orders" providing certain

13

prescribed relief; and because § 1216(a)(3) requires the Special Counsel to investigate "any" allegation of arbitrary and capricious withholding.  Pl. Mem. at 6-9 & n.2.  These aspects of § 1216(a)(3) fail, however, to surmount the "high bar" that implication of an implied private right of action requires, even if these aspects of § 1216(a)(3) are considered as a group.  *See Johnson*, 849 F.3d at 1098.

America First ignores the fact, moreover, that §1216(a)(3) complements § 552(a)(4)(F)(i) instead of conflicting with it.   Section 552(a)(4)(F)(i) consists of three sentences.   The first sentence provides:

> Whenever the court orders the production of any agency records improperly withheld from the complainant and assesses against the United States reasonable attorney fees and other litigation costs, and the court additionally issues a written finding that the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding, the Special Counsel shall promptly initiate a proceeding to determine whether disciplinary action is warranted against the officer or employee who was primarily responsible for the withholding.

The last two sentences of § 552(a)(4)(F)(i) provide:

> The Special Counsel after investigation and consideration of the evidence submitted shall submit his findings and recommendation to the administrative authority of the agency concerned and shall send copies of the findings and recommendations to the officer or employee or his representative.   The administrative authority shall take the corrective action that the Special Counsel recommends.

Courts have long presumed that § 552(a)(4)(F)(i) requires the Special Counsel to "initiate an investigation" if a court issues an order and finding within the meaning of § 552(a)(4)(F)(i), *see Perry*, 684 F.2d at 125 n.19, but § 552(a)(4)(F)(i) does not require the Special Counsel to "initiate an investigation" expressly.  Section 1216 (a)(3) eliminates any doubt by providing, with certain exceptions, that "the Special Counsel shall . . . conduct an investigation" of any allegation of arbitrary or capricious withholding.

14

America First refers as a separate matter to 5 U.S.C. § 1216(c).  Pl. Mem. at 7-9.  Section 1216(c) provides:

> If the Special Counsel receives an allegation concerning any matter under [5 U.S.C. § 1612(a)(1), (3), (4), or (5)], the Special Counsel may investigate and seek corrective action under [5 U.S.C. § 1214] and disciplinary action under [5 U.S.C. § 1215] in the same way as if a prohibited personnel practice were involved.[4]

America First notes that § 1216(c) does not refer to the remedial requirements that the second sentence of § 552(a)(4)(F)(i) imposes on the Special Counsel or to the remedial requirements that the third sentence of § 552(a)(4)(F)(i) imposes on the "administrative authority of the agency concerned."  Pl. Mem. at 9.  America First does not explain, however, how the lack of reference to either set of requirements suggests that America First has an implied private right of action to enforce § 1216(a)(3) against the Special Counsel.

America First also ignores the express references that § 1216(c) makes to 5 U.S.C. §§ 1214 and 1215.  Section § 1214(a)(1)(A) provides:

> The Special Counsel shall receive any allegation of a prohibited personnel practice and shall investigate the allegation to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or its to be taken.

Section 1215(a)(1)(A) provides, with certain exceptions, that,

> [i]f the Special Counsel determines that disciplinary action should be taken against an employee for having . . . committed a prohibited personnel practice . . .   the Special Counsel shall prepare a written complaint against the employee containing the Special Counsel's determination, together with a statement of supporting facts, and present the complaint and statement to the employee and the [Merit Systems Protection] Board, in accordance with this subsection.

---

[4] 5 U.S.C. § 1216(a)(1), (4), and (5) provide with certain exceptions that "the Special Counsel shall . . . conduct an investigation of any allegation concerning" any of the following: "political activity prohibited under subchapter III of chapter 73, relating to political activities by Federal employees"; "activities prohibited by any civil service law, rule, or regulation, including any activity relating to political intrusion in personnel decisionmaking"; or "involvement by an employee in any prohibited discrimination found by any court or appropriate administrative authority to have occurred in the course of any personnel action."

Sections 1214(a)(1)(A) and 1215(a)(1)(A) flesh out the options available to the Special Counsel if a court "issues a written finding that the circumstances surrounding the withholding [of records] raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding," *see* § 552(a)(4)(F)(i), and the Special Counsel responds by conducting the investigation that § 1216(a)(3) makes mandatory.  Section 1216(c) therefore complements § 552(a)(4)(F)(i) rather than conflicting with it.

America First fails in view of the foregoing to show that the "'statutory text and structure" of § 1216(a)(3) "conclusively resolve whether . . . a right of action" to enforce § 1216(a)(3) "'should be implied.'"  *See PCI Gaming*, 801 F.3d at 1295 (quoting *Love*, 310 F.3d at 1353).  That failure entitles the Court to "'consider [the] legislative history'" of § 1216(a)(3).  *See id.*

The report on CSRA that the Senate Committee on Governmental Affairs issued at the time of the enactment of CSRA contains the relevant portion of the legislative history.  That report states:

> [Section 1216(a)(3)] refers to 5 U.S.C. 552(a)(4)(F)[(i)] which relates to court findings that information may have been withheld arbitrarily or capriciously.  The Special Counsel may investigate on the basis of such findings, and make recommendations to the opening [sic] involved, but it [sic] not given independent authority under this subparagraph to review the basis for withholding information from disclosure under the Freedom of Information Act.  The Special Counsel has the authority under section 552(a)(4)(F)[(i)] to investigate and enforce the law against an employee who has withheld information arbitrarily or capriciously.

*Civil Service Reform Act of 1978*, Sen. Rep. No. 95-969, at 36 (1978), *reprinted in upper-case text exclusively*, 1978 U.S.C.C.A.N. 2723, 2758.

The Special Counsel quoted the above statement when he moved to dismiss this action, *see* Def. Init. Mem. at 10, but America First makes no effort to address the statement, beyond saying that "[l]egislative history cannot trump plain statutory text."  Pl. Mem. at 8.  The statement makes

it clear, however, that § 552(a)(4)(F)(i) and § 1216(a)(3) are not "two independent statutes," *see* Pl. Mem. at 14, because Congress had § 552(a)(4)(F)(i) in mind, expressly and exclusively, when it enacted § 1216(a)(3).  That fact makes it unlikely that Congress intended when it enacted § 1216(a)(3) to grant members of the public who make allegations of improper withholding an implied private right of action to compel the Special Counsel to investigate their allegations.  This action should therefore be dismissed because America First has not shown, and cannot show, that it has a private right of action, express or implied, to maintain the action.

## III.  EVEN CREDITING AMERICA FIRST'S COMPLAINT ALLEGATIONS AS TRUE UNDER RULE 12, ITS CLAIMS SHOULD BE DISMISSED AS MOOT.

Finally, America First's closing brief tries to keep its case alive by fabricating a factual dispute over the existence of the putative Civil Division policy it alleges as the basis for its claims, ginning up a handful of arguments challenging the Lim Declaration.  None of those arguments suggests any reason why the Court should grant America First's summary judgment motion or deny the Special Counsel's cross-motion to dismiss.  Ultimately, the only thing America First's various challenges to the Lim Declaration accomplish is to underscore that if there were any factual basis for its claims in the first instance, those claims have become moot.

At the outset, there is no indication that the so-called policy America First challenges—an alleged "unwritten" Civil Division policy requiring employee consent prior to any email searches for material potentially responsive to FOIA requests—ever existed in the first place.  America First's own arguments for the existence of such a policy rely solely on selective, out-of-context parsing of a lengthy, extended email exchange between F & P Office representatives and an America First representative.  As explained by Daniel Lim in his declaration, the alleged policy that America First has tried to manufacture is not consistent with a fair reading of the F & P Office representatives' emails or with the actual practices of the Office during and before Mr. Lim's

tenure as Acting Director.  Lim Decl. ¶¶ 11-17.

But even assuming the truth of America First's factual allegations for the sake of argument, its claims would be moot now, as the Lim Declaration makes clear that whatever unwritten "policy" might have existed at the time America First sued, it cannot be said to exist beyond the date of the Lim Declaration.

A claim becomes moot "if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Al-Nashiri*, 47 F.4th at 824 (D.C. Cir. 2022) (quoting *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990)).  A claim that an agency maintains a pattern or practice that violates FOIA becomes moot if the agency shows by declaration of a responsible agency official that the agency no longer maintains the pattern or practice.  *See, e.g., Porup v. CIA*, 997 F.3d 1224, 1233 (D.C. Cir. 2021) (holding moot claim that CIA engaged in pattern or practice of refusing to process FOIA requests seeking information related to conduct in which the CIA believed it could not lawfully engage in view of declaration of CIA's Information Review Officer, supported by statements of government counsel in open court, that CIA would no longer decline to process such requests).  A litigant's demand for an investigation likewise becomes moot if the circumstances providing the grounds for the demand change and no longer provide a justification for the investigation.  *See, e.g.*, *Wolffe v. Galdenzi*, 2022 WL 14813702, at *3 (E.D. Pa. Oct. 25, 2022) (holding moot plaintiff's motion to compel court to investigate challenged removal of lawsuit from state court in view of court's remand of lawsuit to state court); *Driver v. Kern Cnty. Super. Ct.*, 2021 WL 4943738, at *1 (E.D. Cal. Oct. 22, 2021) (denying as moot plaintiff's request that court order investigation into alleged refusal of officials at certain facility to permit plaintiff to use his computer tablet in view of plaintiff's transfer to different facility).

18

America First seeks in this action to compel the Special Counsel to investigate the alleged policy of the F & P Office to "require a custodian's permission to perform a search in response to a lawful FOIA request." Compl. ¶ 10; *see id.*, Prayer ¶¶ A-B. Mr. Lim makes it clear in his declaration, however, that the F & P Office maintains no such policy. *See* Lim Decl. ¶¶ 10-17. And even if America First's allegations could be credited as suggesting that such a policy might have existed at one time, that would no longer be the case, as "'events have so transpired that the decision [of this Court] will neither presently affect [America First's] rights nor have a more-than-speculative chance of affecting them in the future.'" *See Al-Nashiri*, 47 F.4th at 824 (quoting *Transwestern*, 897 F.2d at 575). This action should therefore be dismissed as moot.

Rather than try to refute that argument, America First challenges the Lim Declaration on several grounds. America First begins by contending that the Lim Declaration "purports to negate or contradict the well-pleaded facts of the complaint," but that the Special Counsel has "concede[d] . . . that the Lim Declaration is relevant only with respect to [America First's] motion for summary judgment, and not to his motion to dismiss." Pl. Mem. at 14. America First therefore contends that "the complaint must be construed in a light most favorable to the plaintiff and all reasonable factual inferences drawn from well-pleaded factual allegations must be accepted as true." *Id.*

The Special Counsel does not dispute that "the Lim Declaration is relevant only with respect to [America First's] motion for summary judgment, and not to [the Special Counsel's] motion to dismiss," as the motion was filed. *See id.* That fact, however, does not preclude the Court from dismissing this action as moot on the strength of the Lim Declaration because mootness is a "jurisdictional doctrine[]," *Al-Nashiri*, 47 F.4th at 824; "[a] challenge to a federal court's subject-matter jurisdiction may be made at any state of the proceedings, and the court should raise the question *sua sponte*," *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004); "a trial court has wide

19

discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts," *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); and a court may construe a jurisdictional question "improperly asserted . . . in a 12(b)(6) motion rather than a motion under Rule 12(b)(1) . . . as one brought under Rule 12(b)(1)." *Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 202 n.3 (D.D.C. 2009); *see also Ohio Nat'l*, 922 F.2d at 327 (noting that "[s]ubject matter jurisdiction 'may, of course be challenged by a Rule 12(b)(1) motion, though by no means is that the only method'") (quoting *Rogers v. Stratton Indus.*, 798 F.2d 913, 918 (6th Cir. 1986)).; *Brookens v. Gamble*, 2020 WL 6134266, at 4 n.3 (D.D.C. Oct. 19, 2020), *aff'd*, 2022 WL 986213 (D.C. Cir. Mar. 28, 2022) (noting that "Rule 12(h) specifically excludes lack of subject matter jurisdiction from the list of defenses that are waived if not timely raised" by motion to dismiss under Rule 12(b)). The Special Counsel is prepared, moreover, to amend his pending motion dismiss, if necessary, to make his motion an alternative motion to dismiss pursuant to Rule 12(b)(1).

America First also questions on a variety of grounds the competence of Mr. Lim to testify. America First thus notes, among other things, that Mr. Lim did not work for the Civil Division on April 14, 2022; that he was not a party to the telephone conversation between the representative of America First and Ms. Wood that took place on that date; that he does not address any emails in his declaration other than the emails that the representative of America First and Ms. Wood exchanged on that date and the following date; and that he relies on America First as the source of those emails. Pl. Mem. at 14-16. None of these points affects the competence of Mr. Lim to testify because the purpose of his declaration is to respond to the contention of America First that the F & P Office has a "policy to require a custodian's permission to perform a search in response to a lawful FOIA request." *See* Compl. ¶ 10. Mr. Lim states throughout his declaration that the views

20

that he expresses are "[b]ased on [his] knowledge, understanding, and experience of how FOIA requests are processed at the Civil Division." Lim Decl. ¶¶ 11, 13, 15. Mr. Lim thus is competent to testify about the alleged policy of the F & P Office. *See, e.g., Sitar v. Ind. Dep't of Transp.*, 2001 WL 1388264, at *3 n.8 (S.D. Ind. Sept. 27, 2001) (manager of sub-district of government agency held competent to testify "based on [his] personal knowledge . . . on [agency's] policy regarding the disposal of dead animals"); *Reid Bros. Logging Co. v. Ketchikan Pulp. Co.*, 699 F.2d 1292, 1301 (9th Cir. 1983) (individual serving as manager, shareholder, and board member of retail store held competent to testify about lending policies of store in view of evidence showing individual "exercised an important voice in such decisions").

America First questions as a separate matter the competence of Mr. Lim to testify about the alleged policy of the F & P Office because Mr. Lim is not the Chief FOIA Officer of DOJ. Pl. Mem. at 14; s*ee* DOJ Chief FOIA Officer Report at 1 (2021), *available at* https://perma.cc/ UR5Y-X7QS (identifying the Associate Attorney General as the Chief FOIA Officer of DOJ). America First misperceives, however, the role of an agency's Chief FOIA Officer. FOIA requires each agency to "'designate' a Chief FOIA Officer . . . to monitor implementation of FOIA, keep government officials apprised of the agency's performance, develop policy recommendations, and otherwise facilitate public understanding of FOIA's exemptions." *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 895 F.3d 770, 775 (D.C. Cir. 2018) (quoting & citing 5 U.S.C. § 552(j)-(k)). But FOIA does not limit the authority of supervisors within agencies to testify about the policies that their units employ in responding to FOIA requests. Courts thus rely on the testimony of agency officials other than Chief FOIA Officers for information about the FOIA policies of the agencies in which the officials serve. *See, e.g., Porup*, 997 F.3d at 1233 (relying on declaration of CIA's Information Review Officer for that purpose); *see* CIA 2022 Chief Freedom of Information Act

Report at 1, *available at* https://perma.cc/38EP-NEB3 (identifying the CIA's Deputy Director for Digital Information as the CIA's Chief FOIA Officer).

America First contends as an additional matter that Mr. Lim "contradictorily characterizes [DOJ] 'policy' which has the force of law . . . as 'guidance,' which lacks the force of law." Pl. Mem. at 16 (citing 5 U.S.C. § 552(a)(1)). America First bases that contention on the statement of Mr. Lim that "[his] understanding is that a requirement to obtain consent from employees to search their respective files would be inconsistent with overarching [DOJ] guidance." *Id.; see* Lim Decl. ¶ 14. America First misreads § 552(a)(1), however. Section 552(a)(1)(D) requires "[e]ach agency" to "separately state and currently publish in the Federal Register for the guidance of the public . . . substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency." Section 552(a)(1)(D) says nothing to suggest that the alleged policy of the F & P Office would have had the force of law, even assuming, *arguendo*, that the policy ever existed.

America First asks as a final matter "for the opportunity to conduct a 30(b)(6) deposition of [DOJ's] designated representative about the alleged 'policy' and about how that 'policy' was applied specifically in this case" if the Court rejects its challenges to the Lim Declaration. Pl. Mem. at 17 n.6. America First is not entitled, however, to conduct the deposition it proposes to conduct. Requests for jurisdictional discovery "should not serve as fishing expeditions, and as such, are appropriate only when 'a party demonstrates that it can supplement its jurisdictional allegations through discovery.'" *Wolf v. Celebrity Cruises*, 683 F. App'x 786, 792 (11th Cir. 2017) (quoting *Trintec Indus. v. Pedre Promotional Prods.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005)). America First offers no reason to think that Mr. Lim is mistaken when he states that "any statement or suggestion that any policy or practice within the [F & P Office] requires 'not conducting a FOIA

22

search on [employees'] emails without first getting their permission or consent' is inaccurate." Lim Decl. ¶ 12. Much less does America First offer any reason to think that a deposition of a "designated representative" of DOJ will show that Mr. Lim is mistaken when he makes that statement.

This action should therefore be dismissed as moot on the strength of the Lim Declaration without the deposition that America First seeks leave to conduct.

## CONCLUSION

The Court should grant the Special Counsel's motion to dismiss for the reasons set forth in this memorandum and in Defendant's Initial Memorandum. The Court should deny America First's motion for summary judgment for the same reasons.

Respectfully submitted,

Dated: April 25, 2023

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Director

s/ *David M. Glass*
DAVID M. GLASS, DC Bar 544549
Senior Trial Counsel
Department of Justice, Civil Division
Federal Programs Branch
1100 L Street, N.W., Room 12020
Washington, D.C. 20530
Tel: (202) 514-4469
E-mail: david.glass@usdoj.gov
Attorneys for the Special Counsel, U.S. Office of
Special Counsel

*Am. First Legal Found. v. Kerner*
No. 1:22-cv-03576-APM

Reply in Support of Defendant's Motion to
Dismiss

Ex. A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICA FIRST LEGAL FOUNDATION,
611 Pennsylvania Avenue, SE #231
Washington, D.C. 20003

       *Plaintiff,*

v.

U.S. DEPARTMENT OF JUSTICE,
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

       *Defendant.*

Civil Action No.: 1:23-cv-000391

## COMPLAINT

Plaintiff America First Legal Foundation ("AFL") brings this action against the United States Department of Justice ("DOJ") to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## JURISDICTION AND VENUE

1.    The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331. Additionally, it may grant declaratory relief pursuant to 28 U.S.C. § 2201, *et seq*.

2.    Venue is proper in this District pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

3.    Plaintiff AFL is a national nonprofit organization working to promote the rule of law in the United States, prevent executive overreach, ensure due process

1

and equal protection for all Americans, and encourage public knowledge and understanding of the law and individual rights guaranteed under the United States Constitution and the laws of the United States.

4.    The Defendant is an agency under 5 U.S.C. § 552(f), with its headquarters at 950 Pennsylvania Avenue, NW, Washington, DC 20530 and has possession, custody, and control of the records AFL seeks.

## FACTS

5.    Over the past approximately eighteen months, AFL has filed several FOIA requests with DOJ.

6.    These requests have varied in scope and complexity.

7.    To date, however, DOJ has not released any records in response to any of the FOIA requests mentioned in this Complaint.

8.    AFL brings this complaint to compel DOJ's compliance with the FOIA statute on the seven requests discussed *infra*.

9.    For each of the requests discussed below, DOJ has assigned processing of AFL's request to a "complex" track—as opposed to a "simple" track—regardless of the number of custodians, date range, or burden of searching or processing records.

### DOJ Communications with ACLU

10.    On April 6, 2022, AFL submitted a FOIA request to DOJ—specifically the Civil Division, Office of the Solicitor General, and the Office of Information Policy ("OIP")—seeking all records of all communications between DOJ officials and the ACLU's Legal Director. Exhibit 1.

11.     On April 7, 2022, the Office of the Solicitor General ("OSG") acknowledged AFL's FOIA request and assigned it to tracking number 2022-127831. Exhibit 2.

12.     OSG designated this request "complex" despite AFL's request for communications with one specific email address. *Id.*

13.     This is an erroneous designation that has led to significant delay in processing a simple FOIA request.

14.     The Civil Division received this request and responded to AFL on April 7, 2022, by email. Exhibit 3.

15.     The Civil Division refused to conduct a search for responsive records without specific custodian email addresses, stating, "[w]e would have to reach out and receive permission from each custodian in order to search his/her emails." *Id.*

16.     The Civil Division subsequently averred that it had an unwritten policy to require a custodian's permission to perform a search in response to a lawful FOIA request. *Id.*

17.     As of the date of filing, neither OSG nor the Civil Division have produced any records to AFL responsive to this FOIA request.

18.     The Defendant has violated the requirements of 5 U.S.C. § 552.

<u>DOJ Conflict of Interest and Attorney General Garland</u>

19.     On October 13, 2021, AFL submitted a FOIA request to DOJ seeking records related to the apparent conflict of interest between Attorney General Merrick

B. Garland and a company in which his son-in-law has an equity stake and is a senior official: Panorama Education, Inc. Exhibit 4.

20.     This FOIA was sent to three DOJ components: OIP, the Justice Management Division, and the Office of Professional Responsibility. *Id.*

21.     On October 21, 2021, OIP acknowledged receipt of AFL's FOIA request and assigned the request to tracking number FOIA-2022-00083. Exhibit 5.

22.     On November 30, 2021, OIP notified AFL that its request for expedited processing had been granted. Exhibit 6.

23.     Despite receiving expedited processing, as of the date of filing, DOJ has not produced any records responsive to AFL's request.

24.     This request was properly submitted via email to the Justice Management Division. Exhibit 7.

25.     The request was properly submitted to the Office of Professional Responsibility, via email. Exhibit 8.

26.     Neither the Justice Management Division nor the Office of Professional Responsibility have acknowledged or responded to AFL's request.

27.     As of the date of this filing, the Defendant has not produced any documents responsive to this FOIA request.

28.      The Defendant has violated the requirements of 5 U.S.C. § 552.

<u>DOJ Communications Regarding Justice Clarence Thomas</u>

29.    On March 14, 2022, AFL submitted a FOIA request to DOJ requesting records related to any communications regarding Supreme Court Justice Clarence Thomas and his wife, Virginia Thomas. <u>Exhibit 9</u>.

30.    The request provided a list of custodians and a specific timeframe. On April 6, 2022, OIP acknowledged receipt of AFL's FOIA request and assigned it tracking number FOIA-2022-00899. <u>Exhibit 10</u>.

31.    As of the date of filing, AFL has not received any records responsive to its request.

32.    The Defendant has violated the requirements of 5 U.S.C. § 552.

<u>DOJ Domestic Terrorism Unit</u>

33.    On January 19, 2022, AFL submitted a FOIA request to DOJ's National Security Division ("NSD") for records related to Assistant Attorney Matthew Olsen's January 11, 2022, testimony to the Senate Judiciary Committee regarding DOJ's establishment of a "Domestic Terrorism Unit." <u>Exhibit 11</u>.

34.    On March 16, 2022, NSD acknowledged AFL's FOIA request and assigned tracking number #22-109 to the request. <u>Exhibit 12</u>

35.    As of the date of filing, AFL has not received any records responsive to its request.

36.    The Defendant has violated the requirements of 5 U.S.C. § 552.

## DOJ Motion to Disqualify an AFL Attorney

37.    On October 12, 2021, AFL submitted a FOIA request seeking records relating to a motion DOJ filed in separate litigation—*State of Texas v. Biden*, Civil Action No. 4:21-CV-579-P (N.D. Tx.)—to disqualify AFL, and its Vice President and General Counsel, from serving as outside counsel to the State of Texas. Exhibit 13.

38.    This request was filed with OIP, the Civil Division, and the Executive Office for U.S. Attorneys ("EOUSA"). *Id.*

39.    On October 22, 2021, OIP acknowledged receipt and assigned the request tracking number FOIA-2022-00075. Exhibit 14.

40.    On April 21, 2022, AFL agreed to narrowed search terms in exchange for OIP accelerating its processing of the request.

41.    OIP subsequently confirmed that the narrowed search had located approximately 1,200 potentially responsive records. AFL agreed to accept this search so that the Defendant would begin processing the 1,200 records.

42.    As of the date of filing, the OIP has not produced any records responsive to its request.

43.    With respect to the Civil Division, it assigned AFL's request tracking number 145-FOI-18247. Exhibit 15.

44.    With respect to EOUSA, it assigned AFL's request tracking number EOUSA-2022-000079. Exhibit 16.

45.    As of the date of filing, neither the Civil Division nor the EOUSA has produced any records in response to AFL's request.

6

46.     The Defendant has violated the requirements of 5 U.S.C. § 552.

<u>DOJ Politicization of the Office of Legal Counsel</u>

47.     On February 1, 2022, AFL submitted FOIA requests to DOJ's OIP, the Federal Bureau of Prisons ("BOP"), and the Office of Legal Counsel ("OLC") for records relating to the apparent politicization of OLC by the Biden administration related to a home confinement opinion. <u>Exhibit 17</u>.

48.     AFL submitted the original request to OIP through its online tracking system, FOIA STAR which assigned the request tracking number FOIA-2022-00708, and to OLC and BOP by email that same day. <u>Exhibit 18</u>.

49.     On February 4, 2022, BOP acknowledged AFL's request and assigned the request to number 2022-02154. <u>Exhibit 19</u>.

50.     Despite agreeing to narrowing limitations in March 2022, as of June BOP had not produced any documents. <u>Exhibit 20</u>.

51.     In July, BOP requested AFL further narrow its request but filed to reply to subsequent emails from AFL seeking clarification.

52.     As of the date of this filing, BOP has not produced any records.

53.     With respect to OLC, OLC did not acknowledge AFL's request for six months.

54.     On June 28, 2022, OLC acknowledged AFL's FOIA request and assigned the request to number FY22-052. <u>Exhibit 21</u>.

55.     As of the date of filing, AFL has not received any records responsive to its request from any DOJ component.

56. The Defendant has violated the requirements of 5 U.S.C. § 552.

### DOJ Processing of AFL FOIA Requests

57. On October 22, 2021, AFL submitted a FOIA request to DOJ's OIP and OLC for information related the Defendant's processing of one of AFL's FOIA requests, not a part of this lawsuit. Exhibit 22.

58. On October 29, 2021, DOJ acknowledged AFL's FOIA request and assigned the request to tracking number FOIA-2022-00164. Exhibit 23.

59. OLC did not acknowledge the FOIA until June 28, 2022, when it assigned it FOIA Tracking No. 2022-010. Exhibit 24.

60. As of the date of filing, AFL has not received any records responsive to its request from either component.

61. The Defendant has violated the requirements of 5 U.S.C. § 552.

### CLAIM FOR RELIEF

### Claim for Relief 1: Violation of FOIA, 5 U.S.C. § 552

62. AFL incorporates by reference Paragraphs 1–61.

63. For each request listed, AFL has properly requested records within the possession, custody, and control of the Defendant.

64. The Defendant has failed to conduct a reasonable search for responsive records.

65. In the few instances where the Defendant has represented it has conducted a search, it has failed to disclose any segregable, non-exempt portions of responsive records. 5 U.S.C. § 552(b).

8

66.    The Defendant has categorically failed to respond to AFL's requests within the statutory time-period. 5 U.S.C. § 552(a)(6).

67.    AFL has exhausted its administrative remedies. 5 U.S.C. § 552(a)(6)(c).

68.    The Defendant has violated FOIA by failing, within the prescribed time limit, to:

    a.    reasonably search for records responsive to AFL's FOIA requests;

    b.    provide a lawful reason for the withholding of any responsive records; and/or

    c.    segregate exempt information in otherwise non-exempt records.

### PRAYER FOR RELIEF

WHEREFORE, AFL respectfully requests this Court:

    i.    Declare that the records sought by the request, as described in the foregoing paragraphs, must be disclosed pursuant to 5 U.S.C. § 552.

    ii.    Order the Defendant to conduct searches immediately for all records responsive to AFL's FOIA request and demonstrate that they employed search methods reasonably likely to lead to the discovery of responsive records.

    iii.    Order the Defendant to produce by a date certain all non-exempt records responsive to AFL's FOIA request.

    iv.    Order Defendant to waive all search, duplication, review, and processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(viii).

    v.    Award AFL attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E).

vi.    Grant AFL such other and further relief as this Court deems proper.


Date: February 10, 2023


Respectfully submitted,


*/s/ Andrew J. Block*
ANDREW J. BLOCK
D.C. Bar No. 90002845
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave., SE #231
Washington, D.C. 20003
Tel.: (202) 836-7958
E-mail: andrew.block@aflegal.org

MICHAEL DING
D.C. Bar No. 1027252
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, D.C. 20003
Tel: (202) 964-3721
E-mail: michael.ding@aflegal.org

*Counsel for Plaintiff America First Legal Foundation*



April 6, 2022

**Via Email**

Elizabeth A. Wood, FOIA Office
Civil Division
U.S. Department of Justice
1100 L Street, NW, Room 8314
Washington, DC 20530-0001
Civil.routing.FOIA@usdoj.gov

Office of the Solicitor General
Attention: FOIA Coordinator
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530-0001
OSGFOIA@usdoj.gov

**Via FOIA STAR**

Mr. Douglas Hibbard, Chief, Initial Request Staff
Office of Information Policy
U.S. Department of Justice
6th Floor, 441 G Street, N.W.
Washington, D.C. 20530

**Freedom of Information Act Request: Emails to or from dcole@aclu.org**

Dear Mr. Hibbard, Ms. Wood, and FOIA Coordinator:

America First Legal Foundation ("AFL") is a national, nonprofit organization. AFL works to promote the rule of law in the United States, prevent executive overreach, ensure due process and equal protection for all Americans, and promote knowledge and understanding of the law and individual rights guaranteed under the Constitution and laws of the United States.

## I.    Background

In recent weeks, significant public attention has focused on the activities of individuals married to judges. For instance, there has been intense focus on the private activities and statements of Ginni Thomas, who is married to Associate Justice Clarence Thomas. Certain commentators have claimed Ms. Thomas' private activities and views require Justice Thomas to recuse himself from certain proceedings or resign.[1]

---

[1] Nina Totenberg, *Legal ethics experts agree: Justice Thomas must recuse in insurrection cases*, NPR (Mar. 30, 2022), https://tinyurl.com/2xath48s; Press Release, Sen. Padilla, *Padilla Demands Justice Clarence Thomas Explain Failure to Recuse Himself from Key Supreme Court Decisions and Seeks*

But there has not been the same public focus on the activities of other individuals who are married to judges. American Civil Liberties Union Legal Director David Cole, for instance, is married to Judge Cornelia Pillard of the U.S. Court of Appeals for the D.C. Circuit. At all times relevant, Mr. Cole displayed an intense, irrational animus toward former President Trump, calling for and facilitating "resistance" to his Administration.[2] However, Judge Pillard routinely heard cases in which former President Trump and his Administration were defendants.

AFL therefore requests the following records pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

## II.    Requested Records

A.    All records of communications to or from the email dcole@aclu.org. The time frame for this item is January 20, 2017, through the date of processing. This item does not include pleadings.

B.    All records relating to the processing of this request.

## III.    Processing Requirements

The Department must comply with the processing guidance in the Attorney General's Memorandum on Freedom of Information Act Guidelines.[3] This means, among other things, the following.

- The Department may withhold responsive records only if: (1) the agency reasonably foresees that disclosure would harm an interest protected by one of the nine exemptions that FOIA enumerates; or (2) disclosure is prohibited by law.

---

*Future Recusal* (Mar. 29, 2022), https://www.padilla.senate.gov/newsroom/press-releases/padilla-demands-justice-clarence-thomas-explain-failure-to-recuse-himself-from-key-supreme-court-decisions-and-seeks-future-recusal%EF%BF%BC/; Amy Wang, *Ocasio-Cortez calls on Supreme Court Justice Clarence Thomas to Resign*, WASH. POST (Mar. 29, 2022), https://tinyurl.com/yhp7dh6v; Eric Lutz, *Calls for Recusals, Resignations, and Even Impeachment: Democrats Escalate Ethics Campaign Around Clarence Thomas*, VANITY FAIR (Mar. 30, 2022), https://tinyurl.com/42x5b8kn.

[2]*See* David Cole, *Can Civil Rights and Civil Liberties Survive a Second Trump Term?*, WASH. MONTHLY (Apr. 5, 2020), https://washingtonmonthly.com/2020/04/05/can-civil-rights-and-civil-liberties-survive-a-second-trump-term/; Ruth Connif, *'En Garde!' ACLU's David Cole Talks about the Resistance to Donald Trump*, PROGRESSIVE MAGAZINE (May 23, 2017), https://progressive.org/magazine/david-cole-resistance-conniff/. Cole even opposed measures to stop anti-Semitic violence, simply because President Trump endorsed them. *See* Kevin Freking, *Trump Signs Order Targeting College Anti-Semitism*, 4 NEW YORK (Dec. 11, 2019), https://www.nbcnewyork.com/news/national-international/trump-signs-order-college-anti-semitism/2240220/.

[3] U.S. Dep't Just. (Mar. 15, 2022), https://www.justice.gov/ag/page/file/1483516/download.

- Information that might technically fall within an exemption should not be withheld from AFL unless the Department can identify a foreseeable harm or legal bar to disclosure. In case of doubt, openness should prevail.

- If the Department determines that it cannot make full disclosure of a requested record, then the FOIA requires that it consider whether partial disclosure of information is possible and take reasonable steps necessary to segregate and release nonexempt information.

- The Department must properly apply the foreseeable harm standard. That means it must confirm and demonstrate to AFL that it has considered the foreseeable harm standard when reviewing records and applying FOIA exemptions.

- Redactions are disfavored as the FOIA's exemptions are exclusive and must be narrowly construed. If a record contains information responsive to a FOIA request, then the Department must disclose the entire record, as a single record cannot be split into responsive and non-responsive bits. Our request includes any attachments to those records or other materials enclosed with a record when transmitted. If an email is responsive to our request, then our request includes all prior messages sent or received in that email chain, as well as any attachments.

- Please search all locations and systems likely to have responsive records, regardless of format, medium, or physical characteristics. In conducting your search, please give full effect to all applicable authorities and broadly construe our Item and your obligations to provide responsive records.

- Please search all relevant records or systems containing records regarding agency business. Do not exclude records regarding agency business contained in files, email accounts, or devices in the personal custody of your officials, such as personal email accounts or text messages. Records of official business conducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA. It is not adequate to rely on policies and procedures that require officials to move records to official systems within a certain time. AFL has a right to records in those files even if material has not yet been moved to official systems or if officials have, by intent or through negligence, failed to meet their obligations.

- Please use all available tools to conduct a complete and efficient search for potentially responsive records. Many agencies have adopted the National Archives and Records Administration ("NARA") Capstone program or similar policies. These provide options for searching emails and other electronic records

in a manner reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; you may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

- If some portions of the requested records are properly exempt from disclosure, then please disclose any reasonably segregable non-exempt portions of the requested records. If a request is denied in whole, please state specifically why it is not reasonable to segregate portions of the record for release.

- Please take appropriate steps to ensure that records responsive to this request are not deleted before our Items are processed. If potentially responsive records are subject to potential deletion, including on a scheduled basis, please prevent deletion by instituting a litigation hold or other appropriate measures.

## IV.  Fee Waiver

Per 5 U.S.C. § 552(a)(4)(A)(iii) and 28 CFR § 16.10, AFL requests a waiver of all search and duplication fees associated with this request.

First, AFL is a qualified non-commercial public education and news media requester. AFL has demonstrated its commitment to the public disclosure of documents and creation of editorial content through regular substantive analyses posted to its website. For example, its officials routinely appear on national television and use social media platforms to disseminate the information it has obtained about federal government activities. In this case, AFL will make your records and your responses publicly available for the benefit of citizens, scholars, and others. The public's understanding of your policies and practices with respect to the important topic of judicial and litigation integrity will be enhanced through AFL's analysis and publication of the requested records. As a nonprofit organization, AFL does not have a commercial purpose and the release of the information requested is not in AFL's financial interest.

Second, waiver is proper as disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of operations or activities of the government."

## V.  Production

To accelerate release of responsive records, AFL welcomes production on an agreed rolling basis.

If possible, please provide responsive records in an electronic format by email. Alternatively, please provide responsive records in native format or in PDF format on a USB drive. Please send any responsive records being transmitted by mail to America First Legal Foundation, 611 Pennsylvania Ave SE #231, Washington, DC 20003.

## VI.     Conclusion

If you have any questions about how to construe this request for records or believe further discussions regarding search and processing would facilitate a more efficient production of records of interest to AFL, please do not hesitate to contact me at FOIA@aflegal.org. Finally, if AFL's request for a fee waiver is not granted in full, please contact us immediately upon making that determination.

Sincerely yours,

/s/ Reed D. Rubinstein
Reed D. Rubinstein
America First Legal Foundation



**U.S. Department of Justice**

Office of the Solicitor General

_Washington, D.C. 20532_

April 7, 2022

**VIA U.S. MAIL** or **VIA EMAIL to <FOIA@aflegal.org>**

Reed D. Rubinstein
611 Pennsylvania Ave. SE #231
Washington, DC 20003

      Re:     OSG FOIA No. **2022-127831**

Dear Mr. Rubinstein:

      This letter acknowledges our receipt of your Freedom of Information Act (FOIA)
request dated April 6, 2022 and received by the Office of the Solicitor General (OSG) on
April 6, 2022, in which you requested the following:

    A.   "All records of communications to or from the email dcole@aclu.org.
        The time frame for this item is January 20, 2017, through the date of
        processing.

    B.   All records relating to the processing of this request."

      This Office has assigned the following FOIA tracking number to your request**:**
2022-127831.

      Based on our preliminary review of your request, and pursuant to 28 C.F.R.
§16.5(b), your request has been assigned to the "complex" processing track.  We are
currently experiencing a backlog in our processing of complex FOIA matters and want to
alert you of the potential delay.  Also, if you would like to narrow your request, which
could potentially allow for faster processing, please contact our FOIA Coordinator at
osgfoia@usdoj.gov or at 202-514-2203, using the assigned FOIA tracking number.  As a
result of the complex designation, we are extending the time limit to respond to your
request beyond the ten additional days provided by the statute.

      Please be advised that due to necessary operational changes as a result of the
national emergency concerning the novel coronavirus disease (COVID-19) outbreak,
there may be some delay in the processing of your request

If you have any questions, if you wish to discuss reformulation or an alternative time frame for the processing of your request, or if you wish to discuss any aspect of your request, you may contact our FOIA Coordinator at osgfoia@usdoj.gov or at 202-514-2203, using the assigned FOIA tracking number.  You may also write to OSG at:

> OSG FOIA Coordinator
> Office of the Solicitor General
> 950 Pennsylvania Avenue, N.W
> Washington, DC  20530-0009

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows:

> Office of Government Information Services
> National Archives and Records Administration
> 8601 Adelphi Road-OGIS
> College Park, Maryland  20740-6001

> Email: ogis@nara.gov
> Telephone: 202-741-5770; toll free at 1-877-684-6448
> Facsimile: 202-741-5769

Due to the high volume of correspondence received by this office, we have adopted a first in/first out practice of processing all incoming requests.  Your request has been placed in chronological order based on the date of receipt and will be handled as quickly as possible when it is assigned for processing.

> Sincerely,



> Office of the Solicitor General

OSG/bt

---------- Forwarded message ----------
**From: Wood, Elizabeth A. (CIV)** █████████████████████
Date: Wed, Jul 20, 2022 at 2:21 PM
Subject: RE: FW: [EXTERNAL] Re: Your Freedom of Information Act
To: ███████████████████████████████  Logan, Stephanie B. (CIV) ██████████████

H██████

We are currently conduct a search for potentially responsive information.  Due to the number of custodians, this is taking some time to reach out to custodians and have them search.  The search is still ongoing.

Please let me know if you have any questions.

Thank you,

Elizabeth

---

**From:** ████████████████████████████
**Sent:** Wednesday, July 20, 2022 2:18 PM
**To:** Logan, Stephanie B. (CIV) ████████████████████
**Cc:** Wood, Elizabeth A. (CIV) ████████████████████
**Subject:** Re: FW: [EXTERNAL] Re: Your Freedom of Information Act

Hi Stephanie and Elizabeth,

I am writing to follow up on my email of June 13 and request an update on where CIV is on processing our request, and if it is still maintaining the need to obtain permission or consent prior to performing the searches.

Best,

Andrew

On Mon, Jun 13, 2022 at 7:22 AM ███████████████████████████████ wrote:

Hi Stephanie, thank you for the update. I don't think that 400 custodians is an unreasonable or unduly burdensome custodian list in this case, since we're asking only for emails between employees and one external email address, which we have provided.

As to the portion of receiving permission from custodians, that is simply not allowed by the FOIA statute or DOJ regulations as it implies that a custodian could opt out of FOIA by not granting permission to have their files searched for FOIA purposes, which of course cannot be the case. Nor does that policy align with the Attorney General's March 15 Memorandum, which reinforces the FOIA statute's presumption of openness (in addition to proactive disclosure and removing barriers to access).

Because the actions that CIV is claiming make the processing of our request "unduly burdensome" are in direct odds with the statute, we stand by our request to have GS-15 and above searched in the parameters of this request.

Best Regards,

On Tue, Jun 7, 2022 at 4:35 PM Logan, Stephanie B. (CIV) _____ wrote:

Good afternoon,

Per our communication below, there are over 400 custodians who are SES and GS-15 employees in Appellate, Federal Programs, Office of Immigration Litigation (both sections), and the Front Office. We would have to reach ask and receive permission from each custodian in order to search his/her emails. This, alone, would be extremely time consuming and burdensome. To make this more manageable, we propose to search the custodians in the front office and directors of the other offices. Please let us know if you would agree to that.

Thank you,

Stephanie B. Logan

Supervisory Government Information Specialist

FOIA and Privacy Office

Civil Division

United States Department of Justice

---

**From:** Logan, Stephanie B. (CIV)
**Sent:** Friday, May 20, 2022 3:18 PM
**To:** _____
**Cc:** Wood, Elizabeth A. (CIV) _____
**Subject:** RE: FW: [EXTERNAL] Re: Your Freedom of Information Act

Hello,

Thank you for the confirmation.

Best,

Stephanie B. Logan

Supervisory Government Information Specialist

FOIA and Privacy Office

Civil Division

United States Department of Justice

**Sent:** Friday, May 20, 2022 3:08 PM
**To:** Logan, Stephanie B. (
**Cc:** Wood, Elizabeth A. (CIV)
**Subject:** Re: FW: [EXTERNAL] Re: Your Freedom of Information Act

Hi Ms Logan,

Both divisions please, thank you.

On Fri, May 20, 2022 at 3:04 PM Logan, Stephanie B. (CIV) <                                    > wrote:

> Good afternoon
>
> The Office of Immigration Litigation is divided into two sections, the District Court and the Appellate Court.  Please specify which sections we should search.
>
> Thank you,
>
> Stephanie B. Logan
>
> Supervisory Government Information Specialist
>
> FOIA and Privacy Office
>
> Civil Division
>
> United States Department of Justice
>
> **From:**
> **Sent:** Wednesday, May 18, 2022 4:08 PM

**To:** Logan, Stephanie B. (CIV) ███████████████████████████
**Cc:** Wood, Elizabeth A. (CIV) ███████████████████████
**Subject:** Re: FW: [EXTERNAL] Re: Your Freedom of Information Act

Hi Stephanie,

Thanks for the follow up. I'm still not sure because we don't have a custodian list and we're not in a position to know who they communicate with. It seems difficult to believe that CIV does not have the capability to search all users, particularly since Main Justice has that ability. I suppose as an initial matter, we'd like to have all SES and GS-15 employees in Appellate, Fed Programs, and Office of Immigration Litigation plus CIV Front Office included as custodians for the search. Please let me know if CIV can do this.

Thank you,

███████

On Wed, May 18, 2022 at 3:11 PM Logan, Stephanie B. (CIV) ████████████████████████ wrote:

Good afternoon,

I am writing to follow up on how we should proceed with your request.  Do you want us to search directors of the Federal Programs branch and the front office?  Any specific custodians you could provide is greatly appreciated and needed in order to conduct a search.

Thank you,

Stephanie B. Logan

Supervisory Government Information Specialist

FOIA and Privacy Office

Civil Division

United States Department of Justice

---

**From:** Wood, Elizabeth A. (CIV) <████████████████████████
**Sent:** Friday, April 15, 2022 6:21 AM
**To:** ████████████████████████████████
**Cc:** Logan, Stephanie B. (CIV) ████████████████████████
**Subject:** RE: FW: [EXTERNAL] Re: Your Freedom of Information Act

Hi ████████

It is not a written policy.

Thanks,

Elizabeth

**From:** ████████████████████
**Sent:** Thursday, April 14, 2022 4:13 PM
**To:** Wood, Elizabeth A. (CIV) ████████████████
**Cc:** Logan, Stephanie B. (CIV) ████████████████
**Subject:** Re: FW: [EXTERNAL] Re: Your Freedom of Information Act

Thank you, Elizabeth.

One last follow up, is that policy of getting consent from employees prior to a FOIA search a written policy or more of a practice. If written, would you be able to provide that?

Thank you,

████████

On Thu, Apr 14, 2022 at 3:58 PM Wood, Elizabeth A. (CIV) <████████████████████v> wrote:

> Hi ████████
>
> This is correct.  Thank you so much for taking the time to speak with me and I look forward to working with you on this request.  I've cc'd Stephanie Logan for awareness because she is the Government Information Specialist who will be working on the request.
>
> Please let me know if you need anything in the meantime.
>
> Best,
>
> Elizabeth
>
> **From:** ████████████████████
> **Sent:** Thursday, April 14, 2022 3:17 PM
> **To:** Wood, Elizabeth A. (CIV) <████████████████
> **Subject:** Re: FW: [EXTERNAL] Re: Your Freedom of Information Act
>
> Hi Elizabeth,
>
> Thank you for taking time this afternoon to speak with me over the phone about the Civil Division's FOIA search capabilities and procedures. Per our discussion, I am following up to memorialize the contents of our conversation.
>
> As I understand our conversation, the Civil Division's technical systems require the DOJ custodian to be identified by their email address in order to be included in the search. That is to say, from a capabilities

standpoint, in order to search the whole Civil Division, you would have to input every employee's email into the custodian field of the search.

Secondarily, I understand that the Civil Division has a policy of not conducting a FOIA search on employee's emails without first getting their permission or consent, or in the alternative asking them to conduct the search of their own inbox. You stated that in order to do the search as requested, the Civil Division FOIA office would have to get the consent of all employees to be searched. My understanding, based on our conversation, is that this is a Civil Division policy adopted as a common courtesy for employees to protect their private information.

Thirdly, I asked about the "unusual circumstances" determination. I asked if we were somehow able to identify even 20 of the "correct" custodians who had communications, could this be a simple request processed in the normal course. The short answer was no, it cannot be, because assuming there are records, the Civil Division's FOIA office would still have to contact the custodians, perform the search (or have the custodian do so), compile the records, and review them for responsiveness and redactions. My understanding is that, short of there being no responsive records, there is no way to obtain a determination of anything other than "unusual circumstances" despite the request being for communications with one specific non-governmental email address.

Finally, I stated that in light of the information I've described above, we would take a couple of days internally to figure out how we would like to proceed and follow up with you next week.

Thank you again for your time and please let me know if I have incorrectly captured any portion of our discussion, or omitted something.

███

On Thu, Apr 14, 2022 at 11:01 AM ███████████████████████████ wrote:

great, thank you. I look forward to speaking with you then.

On Thu, Apr 14, 2022 at 9:56 AM Wood, Elizabeth A. (CIV) ███████████████ wrote:

Hi ███

Yes, that's fine.

Thanks,

Elizabeth

**From:** ████████████████
**Sent:** Thursday, April 14, 2022 9:54 AM
**To:** Wood, Elizabeth A. (CIV) ████████████
**Subject:** Re: FW: [EXTERNAL] Re: Your Freedom of Information Act

Good morning, Elizabeth,

I was wondering if you would be able to push to 2:30 today? Thanks, ████

On Wed, Apr 13, 2022 at 1:39 PM Wood, Elizabeth A. (CIV) <███████████████> wrote:

Sounds good.  My cell is ██████████  Talk to you then.

Thanks,

Elizabeth

**From:** AFL FOIA ███████████
**Sent:** Wednesday, April 13, 2022 1:37 PM
**To:** Wood, Elizabeth A. (CIV) ████████████████████
████████████████
**Subject:** Re: FW: [EXTERNAL] Re: Your Freedom of Information Act

Wonderful, how about 2pm? Is there a number that is best to reach you at?

████████ from our team, copied here, will be on the line for AFL.

On Wed, Apr 13, 2022 at 1:35 PM Wood, Elizabeth A. (CIV) <███████████████> wrote:

Hi,

Yes, I have anything between 1pm-4pm.

Thanks,

Elizabeth

**From:** AFL FOIA ███████████
**Sent:** Wednesday, April 13, 2022 1:33 PM
**To:** Wood, Elizabeth A. (CIV) ██████████████████
**Subject:** Re: FW: [EXTERNAL] Re: Your Freedom of Information Act

Hi Elizabeth,

Do you have any time tomorrow afternoon?

On Wed, Apr 13, 2022 at 10:12 AM Wood, Elizabeth A. (CIV) ████████████████
wrote:

Good morning ██████████,

Do you have time for a call to discuss this FOIA request? We can be flexible with times, so please let us know what works best for you.

Thank you,

Elizabeth

Elizabeth A. (Sullivan) Wood

Acting Chief of FOIA and Privacy

Civil Division

Department of Justice

1100 L Street, NW

Washington, DC 20530

t: (202) 353-8704

**From:** AFL FOIA ███████████████
**Sent:** Monday, April 11, 2022 8:51 AM
**To:** Logan, Stephanie B. (CIV) ████████████████████
**Subject:** Re: [EXTERNAL] Re: Your Freedom of Information Act

Good morning Stephanie,

By saying you have to canvass the branch offices, does that mean the branch office data is not housed or maintained, or searchable at the division level? It seems a bit unlikely that each division would maintain its own separate records management system, particularly since the FOIA processing is done by the Civil Division's FOIA and Privacy Office.

Ultimately, I guess my question is are you saying that the Civil Division FOIA Office cannot do one search in the records system for all emails to and from a particular address?

If the answer is no, what is the broadest group of employees for whom you can do that search without having to go to branch offices?

Thank you for your help,

America First Legal Foundation

On Thu, Apr 7, 2022 at 5:41 PM Logan, Stephanie B. (CIV)
████████████████████████ wrote:

> Good afternoon,

> We would have to canvass the branch offices.

Best,

Stephanie B. Logan

Supervisory Government Information Specialist

FOIA and Privacy Office

Civil Division

United States Department of Justice

**From:** AFL FOIA <█████████████████>
**Sent:** Thursday, April 07, 2022 4:56 PM
**To:** Logan, Stephanie B. (CIV) ███████████████████
**Subject:** [EXTERNAL] Re: Your Freedom of Information Act

Stephanie,

Thank you for your email. This request is not broad at all. In fact, it could not be more specific. We ask for all communications with one specific email address, that is external to the government. Are you representing to us that the Department of Justice does not have the technical ability to query all records for emails that have a specific email address in the to/from line? That is all that would be required and is a pretty fundamental search function that we believe DOJ has the ability to perform, but if you are saying the Civil Division cannot do that, then we can explore alternatives.

We are also in receipt of your acknowledgement letter which says this requires search of records in other Offices or Divisions and is thus "unusual circumstances." Can you please explain that. We have asked the Civil Division for its records of Civil Division employees' communications with one specific email address. How does this require you to search other offices?

Thank you for your prompt attention to our request, we look forward to your response.

Sincerely,

America First Legal Foundation

On Thu, Apr 7, 2022 at 4:09 PM Logan, Stephanie B. (CIV) ██████████████████████████ wrote:

> Good afternoon,
>
> This email concerning your Freedom of Information Act request for.  Please note that your request is very broad and there is no way for us to conduct a search.  For your information, the Civil Division maintain litigation files and thousands of employees.  In order for us to begin to search in the appropriate branch, we will need a specific case or custodians to search.  Please also item 2 of your request.  Any information you can provide would be greatly appreciated.  Thank you.

Best,

Stephanie B. Logan

Supervisory Government Information Specialist

FOIA and Privacy Office

Civil Division

United States Department of Justice

--



October 13, 2021

**Via Online Portal and Email**

Douglas Hibbard, Chief, Initial Request Staff
Office of Information Policy, Department of Justice
6th Floor, 441 G Street, N.W.
Washington, D.C. 20530-0001

Karen McFadden, FOIA Contact
Justice Management Division, Department of Justice
Room 1111 RFK, 950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001
Email: JMDFOIA@usdoj.gov

Carmen Smith Carter,
Assistant Counsel for the Freedom of Information and Privacy Acts
Office of Professional Responsibility, Department of Justice
950 Pennsylvania Avenue, N.W., Suite 3241
Washington, D.C. 20530
Email: OPR.FOIA@usdoj.gov

**Freedom of Information Act Request: Merrick B. Garland, Alexander Tanner aka "Xan" Tanner, and Panorama Education, Inc.**

Dear Mr. Hibbard:

America First Legal Foundation ("AFL") is a national, nonprofit organization working to promote the rule of law in the United States, prevent executive overreach, ensure due process and equal protection for all Americans, and promote knowledge and understanding of the law and individual rights guaranteed under the Constitution and laws of the United States.

## I.    Introduction

Panorama Education, Inc. (Panorama) is a closely held, self-described seller of software and services to K-12 schools.[1] It claims to help "state and district leaders build

---

[1] Compare Panorama Education, Inc., *Commonwealth of Massachusetts Annual Report* (3/26/2021) https://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSearchViewPDF.aspx; Panorama Education,

capacity within their systems to drive strategic initiatives on equity and inclusion and plan next steps to cultivate equitable, culturally responsive schools" and to "provide key insights into gaps between teacher groups by gender, race/ethnicity, and other key indicators to ensure that professional development opportunities are impacting all teacher and staff groups equitably."[2] In simple terms, Panorama sells race-focused student and teacher surveys, data management tools, and training on systemic racism and oppression, white supremacy, implicit bias, and intersectionality, often under the rubric of "Social-Emotional Learning." The business model depends on the credulous willingness of school districts to embrace extreme Critical Race Theory and gender ideology indoctrination of America's K-12 schoolchildren, indoctrination paid for by unwitting local and federal taxpayers, all to generate return for Panorama's leftist billionaire corporate investors.

For example, according to public data, Panorama has had eight funding rounds totaling approximately $92.7 million since 2013.[3] Investors reportedly include technology and financial sector oligarchs Laurene Powell Jobs (Apple/Emerson Collective), Priscilla Chan Zuckerberg (Facebook/Chan Zuckerberg Foundation), Nick Pritzker (Hyatt Development Corporation/Tao Capital Partners) and others.[4] Notwithstanding these billionaire funding sources, Panorama promises school districts "most districts find funds for Panorama in the general budget" paid for by local taxpayers "or federal funding sources" paid for by federal taxpayers, while "several private, nonprofit, and corporate grants align with the work that Panorama supports in schools."[5]

---

Inc., *Commonwealth of Massachusetts Annual Report* (3/12/2020) https://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSearchResults.aspx. These summary reports show, among other things, the apparent disappearance of approximately 18,000,000 shares of stock between the 2020 and 2021 reporting years.

[2] Panorama Education, Inc., *Funding & Grants for Panorama* (accessed Oct. 11, 2021) https://www.panoramaed.com/funding.

[3] Crunchbase, *Panorama Education* (accessed Oct. 11, 2021) https://www.crunchbase.com/organization/panorama-education/company_financials; Adam Andrzejewski, *Panorama Education, Owned by U.S. AG Merrick Garland's Son-In-Law, Contracted with 23,000 Public Schools & Raised $76M From Investors*, Forbes (Oct. 12, 2021) https://www.forbes.com/sites/adamandrzejewski/2021/10/12/panorama-education-owned-by-us-ag-merrick-garlands-son-in-law-contracted-with-23000-public-schools-for-social--emotional-climate-surveys/?sh=35ece0314e60.

[4] *Id.*; *see e.g.* Emerson Collective XQ Institute, *Evolving the Common App: The First Step Toward Anti-Racist College Admissions* https://xqsuperschool.org/rethinktogether/common-app-anti-racist-college-admissions/ (accessed Oct. 11, 2021); Claire Cain Miller, *"Lauren Powell Jobs and Anonymous Giving in Silicon Valley"*, The New York Times (May 24, 2013) https://bits.blogs.nytimes.com/2013/05/24/laurene-powell-jobs-and-anonymous-giving-in-silicon-valley/?_r=0&mtrref=undefined&gwh=EEEBAF592664CAFD0853F049C9E86172&gwt=pay&assetType=PAYWALL; General Atlantic, *About Us*, https://www.generalatlantic.com/about-us/ (accessed Oct. 11, 2021). Notably, General Atlantic, a key Panorama investor that claims to invest responsibly, also invests in corporations tied to or instrumentalities of the Chinese Communist Party. *See id.,* https://www.generalatlantic.com/portfolio/ (accessed Oct. 11, 2021).

[5] Panorama Education, Inc., *Funding & Grants for Panorama* (last visited Oct. 11, 2021) https://www.panoramaed.com/funding.

2

Allegedly, Panorama's corporate secretary is Alexander Tanner, Attorney General Merrick B. Garland's son-in-law.[6] Upon information and belief, Tanner currently has an equity stake in and is paid by Panorama.

Americans have a fundamental liberty interest in, and the Constitutional right to control and direct, the education of their own children.[7] Accordingly, parents across the nation are speaking out against Critical Race Theory and other forms of anti-religious, anti-family public school indoctrination. And as prominent members of the Democrat party[8] currently campaign on the platform that parents should not have a say over what is taught in schools,[9] the President's top attorney is activating law enforcement to ensure that they do not. On October 4, 2021, the Attorney General issued a Memorandum to the Federal Bureau of Investigation, the Executive Office for U.S. Attorneys, the Assistant Attorney General of the Criminal Division, and all

---

[6] According to Panorama's corporate filings, its officers and directors are Aaron Feuer, President, 24 School Street, 4th Floor, Boston, MA 02108; Alexander Tanner, Secretary (same address); Amit Patel, Director, 400 Pacific Avenue, 3d Floor, San Francisco, CA 94133; Ross Jensen, Director, 555 Bryant Street, #259 Palo Alto, CA 94301; and Alex Finkelstein, Director, 137 Newbury Street, 8th Floor, Boston, MA 02116.

[7] *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (O'Connor, J.); *Pierce v. Society of Sisters*, 268 U.S. 510, 534-35 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).

[8] The Virginia gubernatorial race is considered a "bellwether" for upcoming Congressional elections. *See*, Zach Montellaro and Stephanie Murray, *It's Go Time in Tight Virginia Race*, POLITICO (Oct. 11, 2021) https://www.politico.com/newsletters/weekly-score/2021/10/11/its-go-time-in-tight-virginia-race-798136 ("We are just 22 days away from Election Day in the Virginia gubernatorial race, which has long been considered a political bellwether"); Christopher Cadelago, *'People Are Going to Get Skittish:' White House Sweats Over McAuliffe*, POLITICO (Sep. 28, 2021) https://www.politico.com/news/2021/09/28/white-house-mcauliffe-514455 ("President Joe Biden can't afford Terry McAuliffe to lose the governor's race in Virginia – and the White House knows it"); Henry Gomez, *Obama to Campaign for McAuliffe in Tight Race for Virginia Governor*, NBC NEWS (Oct. 12, 2021) https://www.nbcnews.com/politics/elections/obama-campaign-mcauliffe-tight-race-virginia-governor-n1281321 ("Virginia holds its election for governor every four years in the year after a presidential election, making the contest both a referendum on the party in the White House and a bellwether for the following year's midterm races"). Moreover, the political importance of this election is demonstrated by the fact that the current President and most recent former president from the same party are campaigning for McAuliffe. *See*, Rachel Bade, *POLITICO Playbook PM*, POLITICO (Oct. 12, 2021) https://www.politico.com/newsletters/playbook-pm/2021/10/12/pelosi-floats-a-debt-ceiling-plan-b-494667?tab=most-read ("Former President Barack Obama is planning to rally for Terry McAuliffe next week … And despite all that has been made of McAuliffe's apparent distancing from President Joe Biden, the former governor said today that Biden will return to the campaign trail before voters go to the polls."); Tara Palmeri, *POLITICO Playbook PM: Does McAuliffe Have a Biden Problem?*, Politico (Oct. 6, 2021) https://www.politico.com/newsletters/playbook-pm/2021/10/06/does-mcauliffe-have-a-biden-problem-494600.

[9] *See*, Brittany Bernstein, *McAuliffe Argues Parents Shouldn't Have Control over Public School Curriculum*, NATIONAL REVIEW (Sep. 29, 2021) https://www.nationalreview.com/news/mcauliffe-argues-parents-shouldnt-have-control-over-public-school-curriculum/; Michael Lee, *McAuliffe Says He Doesn't Believe Parents Should Tell Schools What to Teach*, FOX NEWS (Sep. 28, 2021) https://www.foxnews.com/politics/mcauliffe-says-he-doesnt-believe-parents-should-control-what-schools-teach.

United States Attorneys apparently to chill parents from challenging both such indoctrination and the payments to firms such as Panorama needed to carry it out.[10] Given that his son in law has a direct financial interest in this agenda item, it raises questions as to the propriety of the Attorney General's order, and whether he stands to gain financially from it.[11]

AFL's mission includes promoting government transparency and accountability by gathering official information, analyzing it, and disseminating it through reports, press releases, and media, including social media platforms, to educate the public and to keep government officials accountable for their duty to faithfully execute, protect, and defend the Constitution and laws of the United States. We are concerned the Attorney General may have violated applicable conflict of interest laws and regulations because the department's regulations prohibit an employee from participating, without authorization, in a particular matter having specific parties that could affect the financial interests of his household. Therefore, pursuant to the Freedom of Information Act (FOIA)[12] we request the records specified below.

## II.    Custodians

A.    The Office of the Attorney General

B.    The Office of Professional Responsibility

C.    The Office of Public Affairs

D.    The Office of Legislative Affairs

E.    The Office of the White House Liaison

F.    The Justice Management Division

## III.    Requested Records

A.    All Public Financial Disclosure Reports (Forms SF-278 and Forms 278-T) for Merrick B. Garland and records related thereto. This includes any waivers, or requests for waivers, pursuant to the federal financial conflicts of interests statute,

---

[10] https://www.justice.gov/ag/page/file/1438986/download; *see also* Sen. Ted Cruz, Sen. Mike Lee, and Sen. Marsha Blackburn, Letter to the Hon. Merrick Garland, Attorney General (Oct. 8, 2021) https://www.cruz.senate.gov/imo/media/doc/202110.08crtlettertoaggarland.pdf.

[11] Federal ethics regulations provide that, "where the employee determines that the circumstances would cause a reasonable person with knowledge of relevant facts to question his impartiality in the matter, the employee should not participate in the matter unless he has informed the agency designee of the appearance problem and received authorization from the agency designee…." 5 C.F.R. § 2635.502(a).

[12] 5 U.S.C. § 552(a).

4

18 U.S.C. § 208, or any authorizations, or requests for authorizations, pursuant to the federal impartiality regulations, 5 C.F.R. § 2635.502. The relevant time is January 1, 2017, to the date this Item is processed.

B.    All records mentioning or referring to Alexander Tanner aka "Xan" Tanner. The relevant time is January 1, 2021, to the date this Item is processed.

C.    All records mentioning or referring to Panorama. The relevant time is September 1, 2021, to the date this Item is processed.

D.    All records of communications between the department and any person with an email address containing "eop.gov" regarding or referring to (1) Merrick B. Garland, or (2) Alexander Tanner aka "Xan" Tanner, and/or (3) Panorama. The relevant time is October 1, 2021, to the date this Item is processed.

## IV.    Redactions

FOIA requires the Department to disclose records freely and promptly. The department must liberally construe AFL's requests and make a good faith effort to search for requested records using methods "which can be reasonably expected to produce the information requested." At all times, FOIA must be construed to carry out Congress's open government mandate according to the ordinary public meaning of its terms at the time of its enactment.[13]

Redactions are disfavored as the FOIA's exemptions are exclusive and must be narrowly construed. If a record contains information responsive to a FOIA request, then the department must disclose the entire record; a single record cannot be split into responsive and non-responsive bits. Consequently, the department should produce email attachments.

In connection with this request, and to comply with your legal obligations:

- Please search all locations and systems likely to have responsive records, regardless of format, medium, or physical characteristics.

- In conducting your search, please construe the term "record" broadly, giving full effect to applicable law, including 44 U.S.C. 3301(a).

- Our request includes any attachments to those records or other materials enclosed with a record when transmitted. If an email is responsive to our request,

---

[13] 5 U.S.C. §§ 552(a)(3)(A), 552(a)(6)(A); *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1738 (2020); *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989); *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

then our request includes all prior messages sent or received in that email chain, as well as any attachments.

- Please search all relevant records or systems containing records regarding agency business. Do not exclude records regarding agency business contained in files, email accounts, or devices in the personal custody of your officials, such as personal email accounts or text messages. Records of official business conducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA. It is not adequate to rely on policies and procedures that require officials to move records to official systems within a certain time. AFL has a right to records in those files even if material has not yet been moved to official systems or if officials have, by intent or through negligence, failed to meet their obligations.

- Please use all available tools to conduct a complete and efficient search for potentially responsive records. Many agencies have adopted the National Archives and Records Administration ("NARA") Capstone program or similar policies. These provide options for searching emails and other electronic records in a manner reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; you may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

- If some portions of the requested records are properly exempt from disclosure, then please disclose any reasonably segregable non-exempt portions of the requested records. If a request is denied in whole, please state specifically why it is not reasonable to segregate portions of the record for release.

- Please take appropriate steps to ensure that records responsive to this request are not deleted before our Items are processed. If potentially responsive records are subject to potential deletion, including on a scheduled basis, please take steps to prevent that deletion, including, as appropriate, by instituting a litigation hold.

## V.  Fee Waiver

Per 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10, AFL requests a waiver of all search and duplication fees.

Fees should be waived "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the

requester." AFL's request concerns identifiable operations or activities of the government, and the information requested regarding the Attorney General's compliance with department ethics regulations is likely to contribute significantly to the public understanding such activities.

AFL is a qualified non-commercial public education and news media requester. AFL is a new organization, but it has already demonstrated its commitment to the public disclosure of documents and creation of editorial content. For example, its officials routinely appear on national television and use social media platforms to disseminate the information it has obtained about federal government activities. As a nonprofit organization primarily engaged in the dissemination of information to educate the public, AFL does not have a commercial purpose and the release of the information requested is not primarily in AFL's financial interest. Our status as a qualified non-commercial public education and news media requester previously has been acknowledged and recognized by this department and by the Departments of Defense, Education, Energy, Interior, Health and Human Services, and Homeland Security, and the Office of the Director of National Intelligence.

## VI.  Expedited Processing

The department must grant expedited processing to requests involving an urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information.[14] By this test, AFL should be granted expedited processing on Items A, B, and C. First, the department and other federal agencies have acknowledged AFL is primarily engaged in disseminating information. Second, the Attorney General's compliance with ethic rules is assuredly a matter of "actual or alleged Federal Government activity." Third, the common public meaning of "urgency" at the time of § 552(a)(6)(E)(v)(II)'s enactment was "the quality or state of being urgent." The common public meaning of "urgent", in turn, was "requiring or compelling speedy action or attention."[15] The controversy regarding the Attorney General's Memorandum of October 4, 2021, continues to metastasize. The public's urgent interest in the Attorney General's ethical compliance, or lapses, with respect to the deployment of federal law enforcement resources against American parents speaking out at school board meetings cannot be gainsaid.

In the alternative, the department should grant AFL expedited processing of Items A, B, and C under the department's expanded regulatory test for matters of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence, even if it concludes AFL fails the statutory test. *See* 28 C.F.R. § 16.5(e)(1)(iv). The Attorney General's October 4,

---

[14] 5 U.S.C. §§ 552(a)(6)(E)(i)(I), 552(a)(6)(E)(v)(II); *see also* 28 C.F.R. §§ 16.5(e)(ii).

[15] The FOIA must be interpreted in accord with the ordinary public meaning of its terms at the time of enactment. *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1738 (2020).

2021, memorandum, and the issue of his family's economic interest in its subject matter, have become one of the most pressing of the day.[16] Accordingly, AFL's expedited processing request should be granted.

Also in the alternative, the Circuit test for expedited processing requires the department to weigh three main factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity.[17] AFL meets this test as well. Respecting factor one, as noted above, the Attorney General's October 4, 2021, memorandum and his possible ethical violations are assuredly matters of public concern and media interest and central to a pressing issue of the day. Respecting factor two, if production is delayed, then both AFL and the public at large will be precluded from obtaining in a timely fashion information vital to the current and ongoing debate surrounding Critical Race Theory, gender ideology, and federal abuse and overreach. Being closed off from the opportunity to debate the department's conduct here, including its potential use of its various authorities against parents who speak out against racist propaganda and inappropriate sexual material itself is a harm in an open democracy.[18]

---

[16] *See, e.g.*, Brittany Bernstein, *Parents Group Sounds Alarm Over AG Garland's Ties to Pro-CRT, Zuckerberg-Backed Consultancy*, NATIONAL REVIEW (Oct. 7, 2021) https://www.nationalre-view.com/news/parents-group-sounds-alarm-over-ag-garlands-ties-to-pro-crt-zuckerberg-backed-con-sultancy/; Jerry Dunleavy, *GOP Senators Rise Conflict of Interest Concerns Over Garland's Son-In-Law's Education Company*, WASHINGTON EXAMINER (Oct. 10, 2021) https://www.washingtonex-aminer.com/news/gop-senators-raise-conflict-interest-concerns-garland-son-in-law-company-pano-rama-education; Elizabeth Elkind, *Daughter of Attorney General Who Ordered DOJ to Probe Angry Parents for Domestic Terrorism is Married to Founder of Education Group that Promotes Critical Race Theory: Merrick Garland Accused of a Conflict of Interest*, DAILY MAIL (Oct. 7, 2021) https://www.dai-lymail.co.uk/news/article-10069425/Garland-accused-conflict-ties-education-group-promoting-Criti-cal-Race-Theory.html.

[17] *Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 309-10 (D.C. Cir. 2001).

[18] In *Protect Democracy Project*, the District Court reasoned:

> But do the requests touch on 'a matter of current exigency to the American public,' and would 'delaying a response…compromise a significant recognized interest,' *Al–Fayed*, 254 F.3d at 310? Likely, the answer to both questions is yes. Regarding nationwide 'exigency': In its requests, submitted the day after the April 6 missile strikes against Syria, Protect Democracy explained that 'the President's decision to initiate military action is of the utmost importance to the public,' and that 'whether the President has the legal authority to launch [such] a military strike' is similarly critical. Few would take issue with these assertions. But as evidence that they were justified, one need look no further than the widespread media attention—including by some of the nation's most prominent news outlets—paid both to the April 6 strike and its legality, as early as the date of Protect Democracy's requests.

*Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 299-300 (D.D.C. 2017). If the one or two news cycles worth of attention given to one missile strike is sufficient to constitute "urgent" then certainly, then the Attorney General's conduct here and his role in chilling parents' speech do as well.

Disclosing relevant records months or even years from now will be of academic interest only, for any damage will have been done and stale information is of little value.[19] Respecting factor three, AFL's Items certainly involve "federal government activity."

Any concerns the department or other requesters may raise about granting AFL expedited processing have been weighed by Congress, and Congress has concluded them to be of subsidiary importance to compelling and time-sensitive cases, such as this. Practically speaking, AFL believes it is difficult for the department to credibly argue expedited processing in this case would cause much delay to other requesters given the very specific nature of AFL's FOIA requests and the extremely limited time window.

Finally, by way of this letter, AFL certifies its compelling need for expedited processing of Items A, B, and C for the purposes of 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(e)(3).

## VII.   Production

To accelerate release of responsive records, AFL welcomes production on an agreed rolling basis. If possible, please provide responsive records in an electronic format by email. Alternatively, records in native format or in PDF format on a USB drive. Please send any responsive records being transmitted by mail to America First Legal Foundation, 600 14th Street NW, 5th Floor, Washington, D.C. 20005.

## VIII.  Conclusion

If you have any questions about how to construe this request for records or believe further discussions regarding search and processing would facilitate a more efficient production of records of interest to AFL, please do not hesitate to contact me at FOIA@aflegal.org. Finally, if AFL's request for a fee waiver and for expedited processing are not granted in full, please contact us immediately upon making that determination.


Thank you,


/s/ Reed D. Rubinstein
Reed D. Rubinstein
America First Legal Foundation

---

[19] *See Payne Enterprises, Inc. v. United States,* 837 F.2d 486, 494 (D.C. Cir. 1988).



**U.S. Department of Justice**

Office of Information Policy

*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

October 22, 2021

Reed Rubinstein
America First Legal
foia@aflegal.org

Re:    FOIA-2022-00083
       DRH:GMG

Dear Reed Rubinstein:

    This is to acknowledge receipt of your Freedom of Information Act (FOIA) request dated and received in this Office on October 13, 2021, in which you requested records of the Office of the Attorney General, Office of Public Affairs, and Office of Legislative Affairs concerning Alexander Tanner, Panorama Education, and concerning the financial disclosure reports of Attorney General Merrick Garland.

    You have requested expedited processing of your request pursuant to the Department's standard permitting expedition for requests involving "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." See 28 C.F.R. § 16.5(e)(1)(ii) (2018). Courts have held that to qualify under this standard, an organization must be "primarily, and not just incidentally, engaged in information dissemination." *Landmark Legal Foundation v. EPA*, 910 F. Supp. 2d 70, 276 (D.D.C. 2012). Based on the information you have provided, I have determined that your request under this standard should be denied. The primary activity of your organization does not appear to be information dissemination, which is required for a requester to qualify for expedited processing under this standard.

    You have also requested expedited processing of your request pursuant to the Department's standard involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." See 28 C.F.R. § 16.5(e)(1)(iv). Pursuant to Department policy, we directed your request to the Director of Public Affairs, who makes the decision whether to grant or deny expedited processing under this standard. See id. § 16.5(e)(2). Please be advised that as of the date of this letter, a decision on your expedition request is still pending. Once a determination has been made, we will promptly notify you. Nevertheless, please be advised that your request has been assigned to an analyst in this Office and our processing of it has been initiated.

    To the extent that your request requires a search in another Office, consultations with other Department components or another agency, and/or involves a voluminous amount of material, your request falls within "unusual circumstances." See 5 U.S.C. 552 § (a)(6)(B)(i)-(iii) (2018). Accordingly, we will need to extend the time limit to respond to your request beyond the ten additional days provided by the statute. For your information, we use multiple tracks to process requests, but within those tracks we work in an agile manner, and the time

needed to complete our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request. At this time we have assigned your request to the complex track, pending the expedition determination of the Director of Public Affairs. In an effort to speed up our process, you may wish to narrow the scope of your request to limit the number of potentially responsive records so that it can be placed in a different processing track. You can also agree to an alternative time frame for processing, should records be located, or you may wish to await the completion of our records search to discuss either of these options. Any decision with regard to the application of fees will be made only after we determine whether fees will be implicated for this request.

If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact the analyst handing your request, Georgianna Gilbeaux, by telephone at the above number or you may write to them at the above address. You may contact our FOIA Public Liaison, Valeree Villanueva, for any further assistance and to discuss any aspect of your request at: Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001; telephone at 202-514-3642.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, MD 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

If you are not satisfied with my response to this request for expedited processing, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically submitted within ninety days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Douglas R. Hibbard
Chief, Initial Request Staff



**U.S. Department of Justice**

Office of Information Policy

*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

November 30, 2021

Reed Rubinstein
America First Legal                         Re:    FOIA-2022-00083
foia@aflegal.org                                   DRH:ADF:GMG

Dear Reed Rubinstein:

This is to further acknowledge receipt of your Freedom of Information Act request dated and received in this Office on October 13, 2021, in which you requested records of the Office of the Attorney General, Office of Public Affairs, and Office of Legislative Affairs concerning Alexander Tanner, Panorama Education, and concerning the financial disclosure reports of Attorney General Merrick Garland.

You have requested expedited processing of your request pursuant to the Department's standard involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." See 28 C.F.R. § 16.5(e)(1)(iv) (2018). Pursuant to Department policy, we directed your request to the Director of Public Affairs, who makes the decision whether to grant or deny expedited processing under this standard. See id. § 16.5(e)(2). The Director has determined that your request for expedited processing should be granted.

Although your request has been granted expedited processing, we are required to advise you that the records you seek require a search in and/or consultation with another Office, and so your request falls within "unusual circumstances." See 5 U.S.C. 552 § (a)(6)(B)(i)-(iii) (2018). Accordingly, we have not yet completed a search to determine whether there are records within the scope of your request. The time needed to process your request will necessarily depend on the complexity of our records search and on the volume and complexity of any records located. Any decision with regard to the application of fees will be made only after we determine whether fees will be implicated for this request. Your request has been assigned to the expedited track and will be processed as soon as practicable.

If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact the analyst handing your request, Georgianna Gilbeaux, by telephone at the above number or you may write to them at the above address. You may contact our FOIA Public Liaison, Valeree Villanueva, for any further assistance and to discuss any aspect of your request at: Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001; telephone at 202-514-3642.

-2-

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, MD 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

for

Douglas R. Hibbard
Chief, Initial Request Staff

 Gmail

**AFL FOIA** <foia@aflegal.org>

---

## New FOIA Request

**AFL FOIA** <foia@aflegal.org>
To: JMDFOIA@usdoj.gov

Wed, Oct 13, 2021 at 2:42 PM

Good Afternoon -

Please see a FOIA request for the Justice Management Division attached. Please confirm receipt of this email and the workflow number assigned to this request.

Sincerely,
America First Legal Foundation

---

📄 **10132021_DOJ_Garland_Panorama FOIA.pdf**
224K

 **AFL FOIA** <foia@aflegal.org>

---

## New FOIA Request

**AFL FOIA** <foia@aflegal.org>                          Wed, Oct 13, 2021 at 3:09 PM
To: OPR.FOIA@usdoj.gov

Good Afternoon -

Please see a FOIA request for the Office of Professional Responsibility attached. Please confirm receipt of this email and the workflow number assigned to this request.

Sincerely,
America First Legal Foundation

---

📄 **10132021_DOJ_Garland_Panorama FOIA.pdf**
224K



March 14, 2022

**Via FOIA STAR**

Mr. Douglas Hibbard, Chief, Initial Request Staff
Office of Information Policy
U.S. Department of Justice
6th Floor, 441 G Street, N.W.
Washington, D.C. 20530

**Re: Justice Clarence and Virginia Thomas**

Dear FOIA Officer:

America First Legal Foundation ("AFL") is a national, nonprofit organization. AFL works to promote the rule of law in the United States, prevent executive overreach, ensure due process and equal protection for all Americans, and promote knowledge and understanding of the law and individual rights guaranteed under the Constitution and laws of the United States. To that end, we file Freedom of Information Act (FOIA) requests on issues of pressing public concern, then disseminate the information we obtain, making documents broadly available to the public, scholars, and the media. Using our editorial skills to turn raw materials into distinct work, we distribute that work to a national audience through traditional and social media platforms. AFL's email list contains over 25,000 unique addresses, our Twitter page has nearly 10,000 followers, the Twitter page of our Founder and President has over 83,800 followers, and we have another 18,000 followers on GETTR.

## I.    Background

For thirty years, leftists have launched racist, spurious, and vile personal attacks against U.S. Supreme Court Justice Clarence Thomas.[1] Now, to prevent Justice Thomas from participating in important Supreme Court cases on abortion, gun rights, affirmative action, and other matters, and to advance its Court-packing

---

[1] Opinion, *Hating Clarence Thomas,* The Wall Street Journal (July 9, 2020), https://www.wsj.com/articles/hating-clarence-thomas-11594336853; Derek Hunter, *Liberals Launch Racist Attacks On Clarence Thomas After Scalia's Death*, The Daily Caller (Feb. 13, 2016), https://dailycaller.com/2016/02/13/liberals-launch-racist-attacks-on-clarence-thomas-after-scalias-death/; Jeet Heer, *Clarence Thomas Deserves Criticism. Just Leave His Race Out of It*, The New Republic (July 6, 2015), https://newrepublic.com/article/122250/clarence-thomas-deserves-criticism-just-leave-his-race-out-it

agenda,[2] the left has unleashed a coordinated and cynical attack and smear campaign against him, and against his wife, Virginia.[3]

The attacks against Justice and Virginia Thomas are meritless and will fail. But AFL is concerned because the facts raise credible concerns that Biden political appointees in the Department are working with outside dark money groups, political activists, and the Administration's media partners to coordinate and control these attacks. First, as a Senator, President Biden orchestrated the notorious "high-tech lynching" of Justice Thomas during his confirmation hearing.[4] Second, the Biden Administration has repeatedly used the Department of Justice as a weapon to intimidate and

---

[2] Jonathan Turley, Opinion, *Biden Commission on Packing Supreme Court Left Liberals Empty-Handed. They Won't Accept It*, USA TODAY (Oct. 18, 2021), https://www.usatoday.com/story/opinion/2021/10/18/is-biden-supreme-court-commission-fails-liberals/8508059002/?gnt-cfr=1.; Bruce Wolpe, *Analysis, Is Biden About to Fill a Supreme Court Vacancy?* THE UNITED STATES STUDIES CENTRE (June 22, 2021), https://www.ussc.edu.au/analysis/is-biden-about-to-fill-a-supreme-court-vacancy; Sahil Kapur, *From Big Cases to a New Vacancy, Supreme Court Faces a High-Stakes 2022*, NBC NEWS (Jan. 31, 2022), https://www.nbcnews.com/politics/supreme-court/big-cases-new-vacancy-supreme-court-faces-high-stakes-2022-n1288314.

[3] *See, e.g.,* Darragh Roche, *Critics Demand Clarence Thomas Retire After Trump Documents Dissent*, NEWSWEEK (Jan. 20, 2022), https://www.newsweek.com/critics-demand-clarence-thomas-retire-donald-trump-documents-dissent-supreme-court-1671042; Jane Mayer, *Is Ginni Thomas a Threat to the Supreme Court?* THE NEW YORKER (Jan. 21, 2022), https://www.newyorker.com/magazine/2022/01/31/is-ginni-thomas-a-threat-to-the-supreme-court?; Alison Durkee, *Justice Clarence Thomas's Wife Ginni Behind Group That Reportedly Pushed January 6 'Fake Electors' Scheme*, Forbes (Feb. 22, 2022), https://www.forbes.com/sites/alisondurkee/2022/02/22/justice-clarence-thomas-wife-ginni-behind-group-that-reportedly-pushed-january-6-fake-electors-scheme/?sh=a1156fe432dd; Michael Tomasky, *The Case for Impeaching Clarence Thomas*, The New Republic (Jan. 24, 2022) https://newrepublic.com/article/165118/clarence-thomas-impeachment-case-democrats; Michael Kranish, *Critics say Ginni Thomas's activism is a Supreme Court conflict*, The Washington Post (Jan. 31, 2022) https://www.msn.com/en-us/news/politics/critics-say-ginni-thomass-activism-is-a-supreme-court-conflict-under-court-rules-only-her-husband-can-decide-if-thats-true/ar-AATk1wE; Charles Passy, *New York Times Story About Supreme Court Justice Clarence Thomas and His Wife, Conservative Activist Ginni Thomas, Sparks Social-Media Outcry*, MarketWatch (Feb. 23, 2022), https://www.marketwatch.com/story/should-clarence-thomas-resign-new-york-times-story-about-supreme-court-justice-and-his-wife-conservative-activist-ginni-thomas-sparks-outcry-11645563904 (citing Danny Hakim and Jo Becker, *The Long Crusade of Clarence and Ginni Thomas*, The New York Times Magazine (Feb. 22, 2022), https://www.nytimes.com/2022/02/22/magazine/clarencethomas-ginni-thomas.html). *See, e.g.*, Chuck Hobbs, *Why Justice Clarence Thomas Should Resign from the Supreme Court*, Insight News (Feb. 23, 2022), https://www.insightnews.com/opinion/columnists/why-justice-clarence-thomas-should-resign-from-the-supreme-court/article_d4cf807a-94e2-11ec-b540-8b5509abc98b.html; Jill Filipovic, Opinion, *Clarence Thomas Refuses the Clear and Obvious Path Forward*, CNN (Feb. 22, 2022), https://www.cnn.com/2022/02/22/opinions/ginni-thomas-clarence-thomas-supreme-court-filipovic/index.html.

[4] Matt London, *Justice Clarence Thomas: Joe Biden had 'no idea' what he was talking about at confirmation hearings*, Fox News.com (Jan. 30, 2020), https://www.foxnews.com/media/joe-biden-clarence-thomas-abortion-anita-hill.

punish Americans who disagree with its politics.[5] The infamous Garland Memorandum labeling American parents domestic terrorists is but one example of inappropriate collusion between Biden political appointees, White House political operatives, and outside groups. Third, the pattern, content, and message discipline of the smear campaign against Justice and Virginia Thomas is highly suggestive of a calculated disinformation and propaganda effort.[6]

Accordingly, AFL requests the following records pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

## II.     Requested Records

A.     All records **excluding news articles and judicial opinions** containing any of following words or phrases: (1) Justice Thomas, (2) Clarence Thomas, (3) Virginia Thomas, (4) Ginni, and/or (4) Thomas. The time frame for this item is January 21, 2021, through the date of processing.

B.     All records relating to the processing of this request.

## III.    Custodians

A.     Anthony Coley.

B.     Vanita Gupta.

C.     All political appointees in the Office of the Attorney General and the Office of Legislative Affairs.

---

[5] *AFL FOIAs DOJ for Records of Its Politically Motivated 'Domestic Terrorism Unit' to Target and Silence Conservatives*, America First Legal Foundation (Jan. 20, 2022), https://www.aflegal.org/news/afl-foias-doj-for-records-of-its-politically-motivated-domestic-terrorism-unit-to-target-and-silence-conservatives (investigating Biden Administration's targeting of political conservatives); *AFL Requests DOJ OIG Investigation Into AG Garland's Memorandum of October 4, 2021 Targeting Concerned Parents*, America First Legal Foundation (Oct. 7, 2021), https://www.aflegal.org/news/afl-requests-doj-oig-investigation-into-ag-garlands-memorandum-of-october-4-2021-targeting-concerned-parents (investigating DOJ's use of federal law enforcement against parents opposed to critical race theory, gender ideology, and irrational mask mandates in public schools); Jonathan Turley, Opinion, *Prosecutors or Praetorian Guard: Why Is FBI Investigating One Missing Diary in a Sea of Smash and Grabs?* The Hill (Dec. 21, 2021), https://thehill.com/opinion/criminal-justice/586693-prosecutors-or-praetorian-guard-why-is-fbi-investigating-one-missing.

[6] It is possible that the message and purpose unity of, e.g., CNN, the New Yorker, the New York Times, Forbes, Time, Newsweek, and the Washington Post, may be mere "hive" behavior, the spontaneous product of a combined deficit in creativity and the economic and social status signaling imperatives of groupthink. *See, e.g.,* Amelie Aidenberger, et al, "Is participation in high-status culture a signal of trustworthiness?", Plos One (May 5, 2020), https://doi.org/10.1371/journal.pone.0232674; Robb Willer, "A Status Theory of Collective Action" at 7-8 (2009), https://docs.wix-static.com/ugd/2f07d4_792aa37a3ab447b4a99546223c8bbf7f.pdf. But the essential similarity of the attacks against Justice and Virginia Thomas cuts against this alternative explanation.

D. All political appointees, and all career employees with a grade equivalent to GS-14 or higher, in the Office of the Deputy Attorney General.

E. All political appointees, and all career employees with a grade equivalent to GS-14 or higher, who are a part of the "Domestic Terrorism Unit referenced at https://www.justice.gov/opa/speech/assistant-attorney-general-matthew-g-olsen-delivers-opening-remarks-us-senate-commit-teestice.

## IV. Fee Waiver

Per 5 U.S.C. § 552(a)(4)(A)(iii) and 28 CFR § 16.10, AFL requests a waiver of all search and duplication fees associated with this request.

First, AFL is a qualified non-commercial public education and news media requester. AFL is a new organization, but it has already demonstrated its commitment to the public disclosure of documents and creation of editorial content through regular substantive analyses posted to its website. For example, its officials routinely appear on national television and use social media platforms to disseminate the information it has obtained about federal government activities. In this case, AFL will make your records and your responses publicly available for the benefit of citizens, scholars, and others. The public's understanding of your policies and practices will be enhanced through AFL's analysis and publication of the requested records. As a nonprofit organization, AFL does not have a commercial purpose and the release of the information requested is not in AFL's financial interest.

Second, waiver is proper as disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of operations or activities of the government."

## V. Production

To accelerate release of responsive records, AFL welcomes production on an agreed rolling basis.

If possible, please provide responsive records in an electronic format by email. Alternatively, please provide responsive records in native format or in PDF format on a USB drive. Please send any responsive records being transmitted by mail to America First Legal Foundation, 611 Pennsylvania Ave SE #231, Washington, DC 20003.

## VI.    Conclusion

If you have any questions about how to construe this request for records or believe further discussions regarding search and processing would facilitate a more efficient production of records of interest to AFL, please do not hesitate to contact me at FOIA@aflegal.org. Finally, if AFL's request for a fee waiver is not granted in full, please contact us immediately upon making that determination.

Sincerely yours,

/s/ Reed D. Rubinstein
Reed D. Rubinstein
America First Legal Foundation



**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530 0001*

*Telephone: (202) 514-3642*

April 06, 2022

Reed Rubinstein
America First Legal

                             Re:   FOIA-2022-00899
                                  DRH:EAH:MSH

foia@aflegal.org

Dear Reed Rubinstein:

     This is to acknowledge receipt of your Freedom of Information Act (FOIA) request dated and received in this Office on March 14, 2022 in which you requested Records concerning Supreme Court Justice Clarence Thomas and his wife, Virginia Thomas.

     The records you seek require a search in and/or consultation with another Office, and so your request falls within unusual circumstances.  See 5 U.S.C.  552 (a)(6)(B)(i)-(iii) (2018).  Because of these unusual circumstances, we need to extend the time limit to respond to your request beyond the ten additional days provided by the statute.  For your information, we use multiple tracks to process requests, but within those tracks we work in an agile manner, and the time needed to complete our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request.  At this time we have assigned your request to the complex track.  In an effort to speed up our process, you may wish to narrow the scope of your request to limit the number of potentially responsive records so that it can be placed in a different processing track.  You can also agree to an alternative time frame for processing, should records be located, or you may wish to await the completion of our records search to discuss either of these options.  Any decision with regard to the application of fees will be made only after we determine whether fees will be implicated for this request.

     We regret the necessity of this delay, but we assure you that your request will be processed as soon as possible.  If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact this Office by telephone at the above number or you may write to the Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001.  Lastly, you may contact our FOIA Public Liaison, Valeree Villanueva, at the telephone number listed above to

discuss any aspect of your request.

    For your information, the Department has a decentralized system for processing FOIA requests and each component of the Department maintains its own records.  Accordingly, FOIA requesters need to direct their requests to the Department component(s) they believe have records pertaining to the subjects of their requests.  In this instance, as you are also seeking records from the National Security Division (NSD), we have forwarded your request to NSD for processing and direct response to you.  Contact information for these components may be found online at https://www.justice.gov/oip/find-foia-contact-doj/list.

    Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448.

                         Sincerely,

                         Initial Request Staff

                         Office of Information Policy

                         U.S. Department of Justice



January 19, 2022

**Via electronic mail**

Arnetta Mallory, FOIA Initiatives Coordinator
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Room 6150
Washington, D.C. 20530-0001
nsdfoia@usdoj.gov

**Freedom of Information Act Request: Domestic Terrorism Unit**

Dear Ms. Mallory:

America First Legal Foundation (AFL) is a national, nonprofit organization working to promote the rule of law in the United States, prevent executive overreach, and ensure due process and equal protection for all Americans. Our core mission includes informing and educating the public regarding the operations and activities of the federal government. To that end, we file Freedom of Information Act (FOIA) requests on issues of pressing public concern, then disseminate the information we obtain, making documents broadly available to the public, scholars, and the media. Using our editorial skills to turn raw materials into distinct work, we distribute that work to a national audience through traditional and social media platforms. AFL's email list contains over 25,000 unique addresses, our Twitter page has over 10,000 followers, the Twitter page of our Founder and President has over 98,500 followers, and we have another 22,000 followers on GETTR.

On January 11, 2022, Assistant Attorney General Matthew G. Olsen testified before the U.S. Senate Committee on the Judiciary that, "The threat of posed by domestic terrorism is on the rise." He also testified, "I have decided to establish a Domestic Terrorism Unit to augment our existing approach – this group of dedicated attorneys will focus on the domestic terrorism threat, helping to ensure that these cases are properly handled and effectively coordinated across DOJ and around the country."[1]

---

[1] Office of Public Affairs, Dep't of Justice, "Assistant Attorney General Matthew G. Olsen Delivers Opening Remarks Before U.S. Senate Committee on the Judiciary," (Jan. 11, 2022), https://www.justice.gov/opa/speech/assistant-attorney-general-matthew-g-olsen-delivers-opening-remarks-us-senate-committee.

It appears, however, that the Assistant Attorney General did not fully disclose all relevant facts to the Committee. Specifically, the "Domestic Terrorism Unit" is not actually a response to an actual *terrorism* "threat." Rather, it is one part of the Biden Administration's larger campaign to intimidate and silence citizens with different political views, like the Attorney General's October 4 Memorandum (targeting parents protesting Critical Race Theory and extreme gender indoctrination at school board meetings)[2] and the National Strategy for Countering Domestic Terrorism (targeting U.S. citizens through, *inter alia*, a massive surveillance and data mining campaign)[3] before it. Our sources suggest that Biden Administration appointees and ideologically allied career officials have singled out political conservatives, such as Christian evangelicals, pro-family groups, border security advocates, and pro-life activists, for heightened scrutiny, and that such citizens are understood "by everyone involved" to be the focus for the Domestic Terrorism Unit's activities.

Given overwhelming evidence that the Department has, for political reasons, singled out the January 6, 2021, rioters for disproportionately harsh treatment relative to far more violent and destructive leftist rioters who attacked, injured, and killed hundreds of law enforcement personnel; burned and looted cities nationwide causing billions of dollars in damages; desecrated religious buildings; and besieged federal buildings, [4] these suggestions are much more than facially plausible.

---

[2] Office of Public Affairs, Dep't of Justice, "Justice Department Addresses Violent Threats Against School Officials and Teachers" (Oct. 4, 2021), https://www.justice.gov/opa/pr/justice-department-addresses-violent-threats-against-school-officials-and-teachers.

[3] Nat'l Sec. Council, "National Strategy for Countering Domestic Terrorism," pp. 15-16, 20, 22, 26-28, 30 (June 2021), https://www.whitehouse.gov/wp-content/uploads/2021/06/National-Strategy-for-Countering-Domestic-Terrorism.pdf

[4] *See, e.g.,* Updated and Reposted: RCI's Jan. 6-BLM Riots Side-by-Side Comparison, Real Clear Investigations (Jan. 4, 2022), https://www.realclearinvestigations.com/articles/2021/09/09/realclear-investigations_jan_6-blm_comparison_database_791370.html; Byron York, "'Armed insurrection': What weapons did the Capitol rioters carry?", The Washington Examiner (Oct. 11, 2021), https://www.washingtonexaminer.com/news/armed-insurrection-what-weapons-capitol-rioters-carry; Mark Hosenball and Sarah N. Lynch, "Exclusive: FBI finds scant evidence U.S. Capitol attack was coordinated – sources", Reuters (Aug. 20, 2021), https://www.reuters.com/world/us/exclusive-fbi-finds-scant-evidence-us-capitol-attack-was-coordinated-sources-2021-08-20/; Major Cities Chiefs Association Intelligence and Commanders Group, "Report on the 2020 Protests & Civil Unrest" (Oct. 2020) https://majorcitieschiefs.com/wp-content/uploads/2021/01/MCCA-Report-on-the-2020-Protest-and-Civil-Unrest.pdf; Jennifer A. Kingson, Exclusive: $1 billion-plus riot damage is most expensive in insurance history, Axios (Sept. 20, 2020), https://www.axios.com/riots-cost-property-damage-276c9bcc-a455-4067-b06a-66f9db4cea9c.html; Mike Balsamo and Gillian Flaccus, "On Portland's streets, Anger, fear, and a fence that divides", AP (July 27, 2020), https://apnews.com/article/virus-outbreak-ap-top-news-race-and-ethnicity-music-or-state-wire-1dd1bb39093a3691f4e78093787ab877; *see also* House Judiciary GOP, "The video Chairman Nadler doesn't want you to see!", You Tube (Jul. 28, 2020), https://www.youtube.com/watch?v=BbKvhnLoV0Q&t=6s; Daniel Greenfield, "'God is dead': Leftist rioters vandalize churches and synagogues," JNS (June 4, 2020), https://www.jns.org/opinion/god-is-dead-leftist-rioters-vandalize-churches-and-synagogues/; Katherine Macintire Peters, "Weekend of violent protests leaves trail of damage for feds," Government Executive (May 31, 2020), https://www.govexec.com/management/2020/05/weekend-violent-protests-leaves-trail-damage-

Pursuant to 5 U.S.C. § 552(a), AFL makes the following Freedom of Information Act request.

## I.    Special Definitions

"Congress" means any Member serving on the U.S. Senate Committee on the Judiciary and/or any person with an email address containing "senate.gov".

"Domestic Terrorism Unit" has the meaning given to it by the Assistant Attorney General in his January 11, 2022, testimony to the U.S. Senate Committee on the Judiciary.

"FBI" means any person in the Federal Bureau of Investigation with a grade of or equivalent to GS-14, step 1, or above.

"NSD" means any (a) every political appointee and (b) any career employee with a grade of or equivalent to GS-14, step 1, or above, in the National Security Division. This includes, but is not limited to, Assistant Attorney General Olsen, his chief of staff, his counselors, and any of his direct reports.

"OAG" means any political appointee and/or any career employee with a grade of or equivalent to GS-14, step 1, or above, in the Office of the Attorney General.

"ODAG" means any political appointee and/or any career employee with a grade of or equivalent to GS-13, step 3, or above, in the Office of the Deputy Attorney General.

"OLA" means any political appointee and/or any career employee with a grade of or equivalent to GS-14, step 1, or above, in the Office of Legislative Affairs.

"Olsen" means Assistant Attorney General Olsen, his chief of staff, his counselors, and any of his direct reports.

"OPA" means any political appointee and/or any career employee with a grade of or equivalent to GS-13, step 1, or above, in the Office of Public Affairs.

"JMD" means every political appointee and/or any career employee with a grade equivalent to GS 11, step 1, or above in the Justice Management Division.

"Record" has the meaning given at 44 U.S.C. § 3301(a)(1).

---

feds/165786/; Associated Press, "Government drops charges against all inauguration protesters," (July 6, 2018), https://www.nbcnews.com/news/us-news/government-drops-charges-against-all-inauguration-protesters-n889531

"January 11, 2022, testimony" means the Assistant Attorney General's January 11, 2022, testimony to the U.S. Senate Committee on the Judiciary.

"White House" means any person serving in the Executive Office of the President or with an email address containing "eop.gov".

## II.    Requested Records

A.      Records of all email correspondence, text messages, or briefing materials exchanged between Olsen and the Congress, FBI, OAG, ODAG, OLA, OPA, and the White House, regarding or concerning the January 11, 2022, testimony. The time frame for this request is December 13, 2021, to January 14, 2022.

B.      For NSD, all calendar entries regarding (a) the January 11, 2022, testimony, and (b) the Domestic Terrorism Unit.

C.      For NSD, all records containing the term "Domestic Terrorism Unit." The time frame for this request is November 1, 2021, to the date this request is processed.

D.      For NSD, all records, including briefing materials, budget requests, communications, emails, and/or text messages to or from the OAG or JMD containing the terms "Domestic Terrorism Unit" and/or "DTU".

E.      For Olsen, all records of communications with the Congress, FBI, OAG, ODAG, JMD, and/or the White House containing the term "Domestic Terrorism Unit". The time frame for this request is November 1, 2021, to the date this request is processed.

F.      All records concerning or relating to the processing of this request.

## III.    Processing

FOIA requires the Department to disclose records freely and promptly. The department must liberally construe AFL's requests and make a good faith effort to search for requested records using methods "which can be reasonably expected to produce the information requested." At all times, FOIA must be construed to carry out Congress's open government mandate according to the ordinary public meaning of its terms at the time of its enactment.[5] As a general matter:

---

[5] 5 U.S.C. §§ 552(a)(3)(A), 552(a)(6)(A); *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1738 (2020); *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989); *Oglesby v. United States Dep't of the Army,* 920 F.2d 57, 68 (D.C. Cir. 1990).

- Redactions are disfavored as the FOIA's exemptions are exclusive and must be narrowly construed. If a record contains information responsive to a FOIA request, then the Department must disclose the entire record, as a single record cannot be split into responsive and non-responsive bits. Our request includes any attachments to those records or other materials enclosed with a record when transmitted. If an email is responsive to our request, then our request includes all prior messages sent or received in that email chain, as well as any attachments.

- Please search all locations and systems likely to have responsive records, regardless of format, medium, or physical characteristics. In conducting your search, please construe both our Items and the term "record" broadly and give full effect to all applicable authorities.

- Please search all relevant records or systems containing records regarding agency business. Do not exclude records regarding agency business contained in files, email accounts, or devices in the personal custody of your officials, such as personal email accounts or text messages. Records of official business conducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA. It is not adequate to rely on policies and procedures that require officials to move records to official systems within a certain time. AFL has a right to records in those files even if material has not yet been moved to official systems or if officials have, by intent or through negligence, failed to meet their obligations.

- Please use all available tools to conduct a complete and efficient search for potentially responsive records. Many agencies have adopted the National Archives and Records Administration ("NARA") Capstone program or similar policies. These provide options for searching emails and other electronic records in a manner reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; you may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

- If some portions of the requested records are properly exempt from disclosure, then please disclose any reasonably segregable non-exempt portions of the requested records. If a request is denied in whole, please state specifically why it is not reasonable to segregate portions of the record for release.

- Please take appropriate steps to ensure that records responsive to this request are not deleted before our Items are processed. If potentially responsive records are subject to potential deletion, including on a scheduled basis, please take

steps to prevent that deletion, including, as appropriate, by instituting a litigation hold.

## IV.  Fee Waiver

Per 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10, AFL requests a waiver of all search and duplication fees.

Fees should be waived "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." AFL's request concerns identifiable operations or activities of the government, and the information requested is likely to contribute significantly to the public understanding such activities.

AFL is a qualified non-commercial public education and news media requester. AFL is a new organization, but it has already demonstrated its commitment to the public disclosure of documents and creation of editorial content. For example, its officials routinely appear on national television and use social media platforms to disseminate the information it has obtained about federal government activities. As a nonprofit organization primarily engaged in the dissemination of information to educate the public, AFL does not have a commercial purpose and the release of the information requested is not primarily in AFL's financial interest. Our status as a qualified non-commercial public education and news media requester previously has been acknowledged and recognized by this department and by the Departments of Defense, Education, Energy, Interior, Health and Human Services, and Homeland Security, and the Office of the Director of National Intelligence.

## VI.  Production

AFL welcomes production on an agreed rolling basis to speed production and reduce agency burden. If possible, please provide responsive records in an electronic format by email, native format by mail, or in PDF format on a USB drive. Please send any responsive records being transmitted by mail to America First Legal Foundation, 600 14th Street NW, Fifth Floor, Washington, D.C. 20005.

[CONTINUED ON NEXT PAGE]

**V.      Conclusion**

If you have any questions about this request or believe further discussions regarding search and processing will speed the efficient production of records of interest to AFL, then please contact me at FOIA@aflegal.org. Finally, please contact us immediately if AFL's request for a fee waiver is not granted in full. Thank you in advance for your cooperation.

Sincerely yours,


/s/ Reed D. Rubinstein
Reed D. Rubinstein
America First Legal Foundation

 **Gmail**

AFL FOIA <foia@aflegal.org>

---

## NSD FOIA #22-109

**Mallory, Arnetta (NSD)** <Arnetta.Mallory@usdoj.gov>          Wed, Mar 16, 2022 at 4:06 PM
To: "FOIA@aflegal.org" <FOIA@aflegal.org>

Reed D. Rubinstein

600 14th Street NW, Floor 5

America First Legal Foundation

Washington, DC 20005-2008

FOIA@aflegal.org


Re: FOIA/PA #22-109


Dear Mr. Rubinstein:


       This is to acknowledge your email dated January 19, 2022 for information pertaining to A. Records of all email correspondence, text messages, or briefing materials

exchanged between Olsen and the Congress, FBI, OAG, ODAG, OLA, OPA, and the

White House, regarding or concerning the January 11, 2022, testimony. The time

frame for this request is December 13, 2021, to January 14, 2022.

B. For NSD, all calendar entries regarding (a) the January 11, 2022, testimony,

and (b) the Domestic Terrorism Unit.

C. For NSD, all records containing the term "Domestic Terrorism Unit."

The time frame for this request is November 1, 2021, to the date this request is processed.

D. For NSD, all records, including briefing materials, budget requests,

communications, emails, and/or text messages to or from the OAG or JMD containing

the terms "Domestic Terrorism Unit" and/or "DTU".

E. For Olsen, all records of communications with the Congress, FBI, OAG,

ODAG, JMD, and/or the White House containing the term "Domestic Terrorism

Unit". The time frame for this request is November 1, 2021, to the date this request

is processed.

F. All records concerning or relating to the processing of this request.  Our FOIA office received your Freedom of Information Act request on January 19, 2022.

In response to the COVID-19 public health emergency, the NSD FOIA staff is teleworking full time.  Our FOIA operations have been diminished while we are teleworking and our FOIA intake and FOIA processing will be slower than normal.

Our policy is to process FOIA requests on a first-in, first-out basis.  Consistent with this policy, every effort will be made to re pond to your reque t a  quickly a  po  ible  The actual proce   ing time will depend upon the comple ity of the request, whether it involves sensitive or voluminous records, and whether consultations with other agencies or agency components are appropriate.

You may contact our Government Information Specialist, Arnetta Mallory, for any further assistance and to discuss any aspect of your request at:

      U.S. Department of Justice

      Records and FOIA Unit

      3 Constitution Square

      175 N Street N.E. 12th Floor

      Washington, DC  20530

      (202) 233-2639

Sincerely,

Arnetta Mallory

Government Information Specialist



October 12, 2021

**Via Online Portal and Email**

Hirsh D. Kravitz, FOIA, Records, and E-Discovery Office
Civil Division, Department of Justice
Room 8314, 1100 L Street, NW
Washington, DC 20530-0001
Email: Civil.routing.FOIA@usdoj.gov

Douglas Hibbard, Chief, Initial Request Staff
Office of Information Policy, Department of Justice
6th Floor, 441 G Street, N.W.
Washington, D.C. 20530-0001

Arla Witte-Simpson, FOIA Public Liaison
Executive Office for U.S. Attorneys, Department of Justice
175 N Street, N.E., Suite 5.400
Washington, DC 20530-0001

**Freedom of Information Act Request: Motion to Disqualify AFL in *State of Texas v. Biden*, Civil Action No. 4:21-CV-579-P (N.D. Tx.)**

Dear Mr. Kravitz, Mr. Hibbard, and Ms. Witte-Simpson:

America First Legal Foundation ("AFL") is a national, nonprofit organization working to promote the rule of law in the United States, prevent executive overreach, ensure due process and equal protection for all Americans, and promote knowledge and understanding of the law and individual rights guaranteed under the Constitution and laws of the United States.

## I. Special Definitions

"Case" means *State of Texas v. Joseph R. Biden, Jr., et al.,* Civil Action No. 4:21-CV-579-P (N.D. Tx.)

"Department" means any person in the Office of the Attorney General, the Office of the Associate Attorney General, the Civil Division, and the United States Attorney for the Northern District of Texas.

1

"Motion" means Defendants' Motion to Disqualify, Document 87, filed 10/06/21 in Case No. 4:21-cv-00579-P (N.D. Tx.).

"Records" has the meaning given at 44 U.S.C. § 3301(a).

## II.    Requested Records

A.    All records concerning, referencing, or regarding the disqualification of attorney Gene Hamilton in the Case. This Item does NOT include the Motion. The relevant time is April 22, 2021, until this Item is processed.

B.    All records sufficient to show the name of each person who (1) authorized and/or directed preparation of the Motion; (2) researched and/or drafted the Motion; (3) reviewed, edited, and/or approved the Motion; and (4) authorized and/or directed Assistant U.S. Attorney Brian W. Stoltz to file the Motion.

C.    All records of communications between any person and the Department regarding the Case and/or its subject matter. This Item does NOT include the Department's communications with any of Plaintiff's counsel in their professional capacity, including but not limited to Mr. Hamilton. The relevant time is April 22, 2021, until this Item is processed.

D.    All records of (1) communications within the Department and (2) between any person with an email address containing "dhs.gov," "hhs.gov," or "eop.gov" and the Department referencing or regarding attorney Gene Hamilton, attorney Mathew Whitaker, and/or any other person believed to be employed by or representing America First Legal Foundation. Except for the Motion, this Item does NOT include pleadings and related records in ongoing litigation matters. The relevant time is April 22, 2021, until this Item is processed.

## III.    Custodians

A.    The Office of the Attorney General
B.    The Office of the Deputy Attorney General
C.    The Office of the Associate Attorney General
D.    The Department of Justice Civil Division
E.    The United States Attorney for the Northern District of Texas
F.    Assistant U.S. Attorney Brian W. Stoltz and his supervisor

## IV.    Redactions

FOIA requires the Department to disclose records freely and promptly. The department must liberally construe AFL's requests and make a good faith effort to search for requested records using methods "which can be reasonably expected to produce

the information requested." At all times, FOIA must be construed to carry out Congress's open government mandate according to the ordinary public meaning of its terms at the time of its enactment.[1]

Redactions are disfavored as the FOIA's exemptions are exclusive and must be narrowly construed. If a record contains information responsive to a FOIA request, then the department must disclose the entire record; a single record cannot be split into responsive and non-responsive bits. Consequently, the department should produce email attachments.

In connection with this request, and to comply with your legal obligations:

- Please search all locations and systems likely to have responsive records, regardless of format, medium, or physical characteristics.

- In conducting your search, please construe the term "record" broadly, giving full effect to applicable law, including 44 U.S.C. 3301(a).

- Our request includes any attachments to those records or other materials enclosed with a record when transmitted. If an email is responsive to our request, then our request includes all prior messages sent or received in that email chain, as well as any attachments.

- Please search all relevant records or systems containing records regarding agency business. Do not exclude records regarding agency business contained in files, email accounts, or devices in the personal custody of your officials, such as personal email accounts or text messages. Records of official business conducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA. It is not adequate to rely on policies and procedures that require officials to move records to official systems within a certain time. AFL has a right to records in those files even if material has not yet been moved to official systems or if officials have, by intent or through negligence, failed to meet their obligations.

- Please use all available tools to conduct a complete and efficient search for potentially responsive records. Many agencies have adopted the National Archives and Records Administration ("NARA") Capstone program or similar policies. These provide options for searching emails and other electronic records in a manner reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may

---

[1] 5 U.S.C. §§ 552(a)(3)(A), 552(a)(6)(A); *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1738 (2020); *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989); *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

capture that email under Capstone. At the same time, custodian searches are still necessary; you may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

- If some portions of the requested records are properly exempt from disclosure, then please disclose any reasonably segregable non-exempt portions of the requested records. If a request is denied in whole, please state specifically why it is not reasonable to segregate portions of the record for release.

- Please take appropriate steps to ensure that records responsive to this request are not deleted before our Items are processed. If potentially responsive records are subject to potential deletion, including on a scheduled basis, please take steps to prevent that deletion, including, as appropriate, by instituting a litigation hold.

## V.    Fee Waiver

Per 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10, AFL requests a waiver of all search and duplication fees.

Fees should be waived "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." AFL's request concerns identifiable operations or activities of the government, and the information requested is likely to contribute significantly to the public understanding such activities. The department and the United States Attorney are representatives not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, is not that it shall win a case, but that justice shall be done.[2]

AFL is a qualified non-commercial public education and news media requester. AFL is a new organization, but it has already demonstrated its commitment to the public disclosure of documents and creation of editorial content. For example, its officials routinely appear on national television and use social media platforms to disseminate the information it has obtained about federal government activities. As a nonprofit organization primarily engaged in the dissemination of information to educate the public, AFL does not have a commercial purpose and the release of the information requested is not primarily in AFL's financial interest. Our status as a qualified non-commercial public education and news media requester previously has been acknowledged and recognized by this department and by the Departments of Defense, Education, Energy, Interior, Health and Human Services, and Homeland Security, and the Office of the Director of National Intelligence.

---

[2] *Berger v. United States*, 295 U.S. 78, 88 (1935).

## VI.    Expedited Processing

The department must grant expedited processing to requests involving an urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information.[3] By this test, AFL should be granted expedited processing on Items A, B, and D. First, the department and other federal agencies have acknowledged AFL is primarily engaged in disseminating information. Second, the department's litigating position, especially with respect to the disqualification of counsel for the State of Texas in a high-profile immigration case, is assuredly a matter of "actual or alleged Federal Government activity." Third, the common public meaning of "urgency" at the time of § 552(a)(6)(E)(v)(II)'s enactment was "the quality or state of being urgent." The common public meaning of "urgent", in turn, was "requiring or compelling speedy action or attention."[4] The pending Motion meets this test, as the State of Texas has only a very short time to gather facts and determine if improper political considerations played a part in the Biden Administration's extraordinary decision to seek attorney Hamilton's disqualification.

In the alternative, the department should grant AFL expedited processing of Items A, B, and D under the department's expanded regulatory test for matters of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence, even if it concludes AFL fails the statutory test. *See* 28 C.F.R. § 16.5(e)(1)(iv). The Case challenges the legality of the Biden Administration's decision to open the southern border to and then resettle uncounted tens of thousands of illegal aliens, many infected with COVID-19, and is a matter of widespread and exceptional media interest.[5] The possibility that the department's defensive litigation tactics are tainted by improper political considerations certainly presents a possible question about the government's integrity that affects public confidence in the department Accordingly, AFL's expedited processing request should be granted.

---

[3] 5 U.S.C. §§ 552(a)(6)(E)(i)(I), 552(a)(6)(E)(v)(II); *see also* 28 C.F.R. §§ 16.5(e)(ii).

[4] The FOIA must be interpreted in accord with the ordinary public meaning of its terms at the time of enactment. *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1738 (2020).

[5] *See, e.g.,* Todd Bensman, *Catch-and-Bus: Thousands of Freed Border Crossing Immigrants are Dispersing Across America*, CIS REPORT (Mar. 31, 2021) https://cis.org/Bensman/CatchandBus-Thousands-Freed-BorderCrossing-Immigrants-Are-Dispersing-Across-America; Josh Boak & Emily Swanson, *Biden's Approval Slumps After a Slew of Crises: AP-NORC Poll*, AP (Oct. 1, 2021) https://ap-news.com/article/immigration-coronavirus-pandemic-joe-biden-business-health-020342e77b3cbbaf281b1c466fefe975; Sabrina Rodriguez, *It's not Just Republicans, Everyone's Mad at Biden Over Migration.*, POLITICO (Sep. 21, 2021) https://www.politico.com/news/2021/09/21/migration-biden-border-troubles-513370; Dianne Solis, *Abbott's Approval Rating on Immigration is Higher Than That of Biden, New Texas Poll Finds*, THE DALLAS MORNING NEWS (Sep. 20, 2021) https://www.dallasnews.com/news/politics/2021/09/20/abbots-approval-rating-on-immigration-is-higher-than-that-of-biden-new-texas-poll-finds/.

Also in the alternative, the Circuit test for expedited processing requires the department to weigh three main factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity.[6] AFL meets this test as well. Respecting factor one, as noted above, the Case, the Motion, and their subject matter are assuredly matters of public concern and media interest and central to a pressing issue of the day. Respecting factor two, if production is delayed, then both AFL and the public at large will be precluded from obtaining in a timely fashion information vital to the current and ongoing debate surrounding immigration policy and government integrity. Being closed off from the opportunity to debate the department's conduct here, including its potential use of litigation tactics for political advantage or payback, itself is a harm in an open democracy.[7] Disclosing relevant records months or even years from now will be of academic interest only, for any damage will have been done and stale information is of little value.[8] Respecting factor three, AFL's Items certainly involve "federal government activity."

Any concerns the department or other requesters may raise about granting AFL expedited processing have been weighed by Congress, and Congress has concluded them to be of subsidiary importance to compelling and time-sensitive cases, such as this. Practically speaking, AFL believes it is difficult for the department to credibly argue expedited processing in this case would cause much delay to other requesters given the very specific nature of AFL's FOIA requests and the extremely limited time window.

Finally, by way of this letter, AFL certifies its compelling need for expedited processing of Items A, B, and D for the purposes of 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(e)(3).

---

[6] *Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 309-10 (D.C. Cir. 2001).

[7] In *Protect Democracy Project*, the District Court reasoned:

> But do the requests touch on 'a matter of current exigency to the American public,' and would 'delaying a response…compromise a significant recognized interest,' *Al–Fayed*, 254 F.3d at 310? Likely, the answer to both questions is yes. Regarding nationwide 'exigency': In its requests, submitted the day after the April 6 missile strikes against Syria, Protect Democracy explained that 'the President's decision to initiate military action is of the utmost importance to the public,' and that 'whether the President has the legal authority to launch [such] a military strike' is similarly critical. Few would take issue with these assertions. But as evidence that they were justified, one need look no further than the widespread media attention—including by some of the nation's most prominent news outlets—paid both to the April 6 strike and its legality, as early as the date of Protect Democracy's requests.

*Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 299-300 (D.D.C. 2017). If the one or two news cycles worth of attention given to one missile strike is sufficient to constitute "urgent" then certainly, then illegal immigration and the possible taint of the department's litigation positions by improper adjudications do as well.

[8] *See Payne Enterprises, Inc. v. United States,* 837 F.2d 486, 494 (D.C. Cir. 1988).

## VII.   Production

To accelerate release of responsive records, AFL welcomes production on an agreed rolling basis. If possible, please provide responsive records in an electronic format by email. Alternatively, records in native format or in PDF format on a USB drive. Please send any responsive records being transmitted by mail to America First Legal Foundation, 600 14th Street NW, 5th Floor, Washington, D.C. 20005.

## VIII.  Conclusion

If you have any questions about how to construe this request for records or believe further discussions regarding search and processing would facilitate a more efficient production of records of interest to AFL, please do not hesitate to contact me at FOIA@aflegal.org. Finally, if AFL's request for a fee waiver and for expedited processing are not granted in full, please contact us immediately upon making that determination.


Thank you,


/s/ Reed D. Rubinstein
Reed D. Rubinstein
America First Legal Foundation



**U.S. Department of Justice**

Office of Information Policy

*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

October 22, 2021

Reed Rubinstein
America First Legal                        Re:     FOIA-2022-00075
foia@aflegal.org                                   DRH:MSH

Dear Reed Rubinstein:

This is to acknowledge receipt of your Freedom of Information Act (FOIA) request dated October 12, 2021, and received in this Office on October 13, 2021, in which you requested records of the Office of the Attorney General, Office of the Deputy Attorney General, and Office of the Associate Attorney General concerning *State of Texas v. Joseph R. Biden.*

You have requested expedited processing of your request pursuant to the Department's standard permitting expedition for requests involving "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." See 28 C.F.R. § 16.5(e)(1)(ii) (2018). Courts have held that to qualify under this standard, an organization must be "primarily, and not just incidentally, engaged in information dissemination." *Landmark Legal Foundation v. EPA*, 910 F. Supp. 2d 70, 276 (D.D.C. 2012). Based on the information you have provided, I have determined that your request under this standard should be denied. The primary activity of your organization does not appear to be information dissemination, which is required for a requester to qualify for expedited processing under this standard.

You have also requested expedited processing of your request pursuant to the Department's standard involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." See 28 C.F.R. § 16.5(e)(1)(iv). Pursuant to Department policy, we directed your request to the Director of Public Affairs, who makes the decision whether to grant or deny expedited processing under this standard. See id. § 16.5(e)(2). Please be advised that as of the date of this letter, a decision on your expedition request is still pending. Once a determination has been made, we will promptly notify you. Nevertheless, please be advised that your request has been assigned to an analyst in this Office and our processing of it has been initiated.

To the extent that your request requires a search in another Office, consultations with other Department components or another agency, and/or involves a voluminous amount of material, your request falls within "unusual circumstances." See 5 U.S.C. 552 § (a)(6)(B)(i)-(iii) (2018). Accordingly, we will need to extend the time limit to respond to your request beyond the ten additional days provided by the statute. For your information, we use multiple tracks to process requests, but within those tracks we work in an agile manner, and the time

-2-

needed to complete our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request. At this time we have assigned your request to the complex track, pending the expedition determination of the Director of Public Affairs. In an effort to speed up our process, you may wish to narrow the scope of your request to limit the number of potentially responsive records so that it can be placed in a different processing track. You can also agree to an alternative time frame for processing, should records be located, or you may wish to await the completion of our records search to discuss either of these options. Any decision with regard to the application of fees will be made only after we determine whether fees will be implicated for this request.

If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact the analyst handing your request, Georgianna Gilbeaux, by telephone at the above number or you may write to them at the above address. You may contact our FOIA Public Liaison, Valeree Villanueva, for any further assistance and to discuss any aspect of your request at: Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001; telephone at 202-514-3642.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, MD 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

If you are not satisfied with my response to this request for expedited processing, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically submitted within ninety days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Douglas R. Hibbard
Chief, Initial Request Staff



**U.S. Department of Justice**

Civil Division

_Washington, DC 20530_

Via Email                                     October 22, 2021

Mr. Reed Rubenstein                           Request No.    145-FOI-18247
America First Legal Foundation                              TEW:SBL:HDK
600 14th Street NW, 5th Floor
Washington, DC  20005
foia@aflegal.org

Dear Mr. Rubenstein:

　　　This letter acknowledges the receipt of your October 12, 2021 Freedom of Information Act (FOIA) request in which you requested records related to a Motion to Disqualify filed by the Department of Justice in the case _State of Texas v. Biden_, Civil Action No. 4:21-CV-579-P.

　　　In your request letter, you request expedited treatment pursuant to the second and fourth standards enumerated in the Department of Justice's regulations.  Expedited treatment pursuant to the first standard will be granted where not doing so "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual." 5 U.S.C. § 552(a)(6)(E)(v)(I). See also 28 C.F.R. § 16.5(e)(1)(i) (2019). Under the second standard, you must show that there is "[a]n urgency to inform the public about an actual or alleged Federal Government activity, if made by a person primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II). See also 28 C.F.R. § 16.5(e)(1)(ii) (2019). Under the third standard, you must show that the request involves "[t]he loss of substantial due process rights." 28 C.F.R. § 16.5(e)(1)(iii) (2019). Under the fourth standard, you must show that the subject matter of your request is a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." Id. at § 16.5(e)(1)(iv). This Office makes determinations regarding the first three standards, while the Department's Director of Public Affairs makes determinations regarding the fourth standard. See id. at § 16.5(e)(2).

　　　Please be advised that as of the date of this letter, a decision on your expedition request is still pending. Once a determination has been made, we will promptly notify you. Nevertheless, please be advised that your request has been assigned to a Government Information Specialist in this Office and a records search has been initiated.

　　　I regret the necessity of this delay, but I assure you that this Office will process your request as soon as possible.  If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact me by telephone at

202-514-2319 or you may write to me at the FOIA, Records, and E-Discovery Office, Civil Division, Department of Justice, Room 8314, 1100 L Street NW, Washington, DC 20530. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Hirsh D. Kravitz
Senior Supervisory FOIA Counsel
FOIA, Records, and E-Discovery Office



**U.S. Department of Justice**

Executive Office for United States Attorneys

Freedom of Information and Privacy Staff

*Suite 5.400, 3CON Building*
*175N Street, NE*
*Washington, DC 20530*

*(202) 252-6020*

April 21, 2022

VIA Email

Reed Rubinstein
American First Legal Foundation
foia@aflegal.org

     Re: Request Number:  EOUSA-2022-000079
     Date of Receipt:      October 12, 2021
     Subject of Request:  Records Regarding 4:21-cv-00579-P

Dear Reed Rubinstein:

     This letter is written to inform you of the current status of your pending FOIA request for records. In order to process all requests as equitably as possible, this office has adopted a "first-in-first-out" policy of processing all incoming requests. Your request is being handled as equitably as possible and all records which can be released will be made available at the earliest possible date.

     *Please be advised that due to necessary operational changes as a result of the national emergency concerning the novel coronavirus disease (COVID-19) outbreak, there may be some additional delay in the processing of your request.*

The following is the status of your request:
**X**     Awaiting a response from the appropriate search office
☐     Search response has been received and will undergoing review according to this Office's first in/first out policy
☐     Undergoing final review by an attorney

If you have any questions, please feel free to call our office at the number above.

     Sincerely,

     Kevin Krebs
     Assistant Director



February 1, 2022

Douglas Hibbard
Chief, Initial Request Staff
Office of Information Policy
Department of Justice
6th Floor, 441 G Street, N.W.
Washington, D.C. 20530
<u>Via Online Portal</u>

Melissa Golden
Lead Paralegal and FOIA Specialist
Office of Legal Counsel
Room 5511, 950 Pennsylvania Ave., N.W.
Department of Justice
Washington, DC 20530-0001
usdoj-officeoflegalcounsel@usdoj.gov

FOIA/PA Section
Office of General Counsel, Room 924
Federal Bureau of Prisons
320 First Street, N.W.
Washington, DC 20534
Attn: Central Office
BOP-OGC-EFOIA-S@BOP.GOV

**Freedom of Information Act Request: Politicization of the Department of Justice's Office of Legal Counsel**

America First Legal Foundation (AFL) is a national, nonprofit organization working to promote the rule of law in the United States, prevent executive overreach, and ensure due process and equal protection for all Americans. Our core mission includes informing and educating the public regarding the operations and activities of the federal government. To that end, we file Freedom of Information Act (FOIA) requests on issues of pressing public concern, then disseminate the information we obtain, making documents broadly available to the public, scholars, and the media. Using our editorial skills to turn raw materials into distinct work, we distribute that work to a national audience through traditional and social media platforms. AFL's email list contains over 25,000 unique addresses, our Twitter page has nearly 10,000 followers, the Twitter page of our Founder and President has over 98,500 followers, and we have another 22,000 followers on GETTR.

## I.    Background

On March 27, 2020, just two weeks after President Trump declared a national emergency for the COVID-19 pandemic,[1] Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act).[2] Section 12003(b)(2) of the CARES Act temporarily expanded the authority of the Director of the Bureau of Prisons (BOP) to place federal prisoners in home confinement, "[d]uring the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of [BOP]."[3] Under this authority, BOP transferred thousands of federal prisoners into home confinement during the emergency.[4]

On January 15, 2021, the Department of Justice (DOJ) Office of Legal Counsel (OLC) issued a memorandum opinion concluding that the "[CARES Act] authorizes the Director of [BOP] to place prisoners in home confinement only during the Act's covered emergency period," and, "[should] that period end, or should the Attorney General revoke the finding, [BOP] would be required to recall the prisoners to correctional facilities unless they are otherwise eligible for home confinement under 18 U.S.C. § 3624(c)(2)."[5]

During his campaign, President Biden promised he would cut the prison population by more than fifty percent.[6] Nevertheless, the Biden legal team concluded that the January 15 opinion "correctly interpreted the law."[7] Reportedly, "[s]everal officials characterized the decision as an assessment of the best interpretation of the law, not a matter of policy preference."[8]

Key Biden administration stakeholders, however, remained intent on reversing OLC's opinion and allowing convicted criminals to remain out of prison indefinitely.[9] In July 2021, Senator Dick Durbin (D-IL) personally lobbied Attorney General

---

[1] Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, Proclamation No. 9994, 85 Fed. Reg. 15,337 (Mar. 18, 2020).

[2] Pub. L. No. 116-136 (Mar. 27, 2020).

[3] Pub. L. No. 116-136, § 12003(b)(2).

[4] *See Oversight of the Federal Bureau of Prisons and the U.S. Marshals Service Before the Subcomm. on Crime, Terrorism, and Homeland Sec. of the H. Comm. on the Judiciary* (Dec. 2, 2020) (statement of Michael D. Carvajal, Director, BOP).

[5] *Home Confinement of Federal Prisoners After the COVID-19 Emergency*, 45 Op. O.L.C. __ (Jan. 15, 2021), https://www.justice.gov/olc/file/1355886/download.

[6] Katherine Miller, *Joe Biden Told a Voter He'll "Go Further" Than Cutting Incarceration by 50%*, BUZZFEED NEWS (July 9, 2019), https://www.buzzfeednews.com/article/katherinemiller/joe-biden-incarceration-prison-population-cut-aclu.

[7] Charlie Savage & Zolan Kanno-Youngs, *Biden Legal Team Decides Inmates Must Return to Prison After Covid Emergency*, THE NEW YORK TIMES (July 19, 2021), https://www.ny-times.com/2021/07/19/us/politics/biden-prisoners-covid.html.

[8] *Id.*

[9] Blackman, *Biden OLC Reverses Trump OLC Position On BOP Home Confinement*, REASON – THE VOLOKH CONSPIRACY (Dec. 22, 2021), https://reason.com/volokh/2021/12/22/biden-olc-reverses-trump-olc-opinion-on-bop-home-confinement/.

Garland to overturn OLC's opinion.[10] In August 2021, Biden stakeholders, led by Democracy Forward, a front group created by political operatives including Ron Klain (current White House Chief of Staff), Marc Elias (architect of the Russia collusion hoax), and John Podesta, sent a letter to OLC demanding it change the legal analysis.[11] This letter produced no results. Then on November 30th, the stakeholders met with Susan Rice, the domestic policy advisor. Soon after this meeting[12] Attorney General Garland directed OLC to "reconsider."[13]

On December 21, 2021, OLC published a new opinion, this time discovering Congress gave BOP has "discretion to permit prisoners in extended home confinement to remain there" indefinitely.[14] To justify this result, OLC leaned heavily on policy arguments, such as BOP had already placed nearly five thousand convicted criminals in home confinement under the emergency authority, and that under OLC's January 2021 opinion, 2,830 of these individuals would need to return to prison. OLC now deemed this unacceptable, preferring instead to avoid "disrupt[ing] the community connections these prisoners have developed."[15]

These facts raise credible concerns that the Biden Administration has inappropriately politicized OLC and plowed through the longstanding institutional guardrails protecting OLC's independence. OLC's core function is to provide controlling advice to Executive Branch officials on questions of law that are centrally important to the functioning of Federal Government.[16] OLC's obligation is to provide its view of the correct answer on the law, taking into account all reasonable counterarguments, not simply provide an advocate's defense of the contemplated action or position proposed by an agency or the Administration.[17] Because OLC issues opinions pursuant to the Attorney General's delegated authority, the leadership offices are kept informed about OLC's work, and OLC benefits from suggestions about additional interests OLC should consider or views OLC should solicit before finalizing its opinions. But OLC's opinions are *nevertheless supposed to be based on its independent analysis and*

---

[10] Katie Benner *et al.*, *Some Inmates Can Stay Confined at Home After Covid Emergency, Justice Dept. Says*, The New York Times (Dec. 21, 2021), https://www.nytimes.com/2021/12/21/us/politics/prison-covid-home-confinement.html.
[11] Democracy Forward, *Trump-Era Home Confinement Memo Based on Flawed Legal Analysis, Orgs Urge DOJ to Rescind* (August 4, 2021), https://democracyforward.org/press/trump-era-home-confinement-memo-based-on-flawed-legal-analysis-orgs-urge-doj-to-rescind/.
[12] Benner, *supra note 16*.
[13] Discretion to Continue the Home-Confinement Placements of Federal Prisoners After the COVID-19 Emergency, 45 Op. O.L.C. __ (Dec. 21, 2021) ("You have asked us to reconsider our earlier opinion"), https://www.justice.gov/olc/file/1457926/download.
[14] *Id*.
[15] *Id*.
[16] Memorandum for Attorneys of the Office Re: Best Practices for OLC Legal Advice and Written Opinions, O.L.C. at 1 (July 16, 2010), https://www.justice.gov/sites/default/files/olc/legacy/2010/08/26/olc-legal-advice-opinions.pdf.
[17] *Id*. at 1, 4.

*judgment.*[18] "OLC must always give candid, independent, and principled advice – even when that advice is inconsistent with the aims of policymakers."[19]

Of course, "as with any system of precedent," past OLC decisions "may be subject to reconsideration and withdrawal in appropriate cases and through appropriate processes."[20] Here, however, the new opinion fails to articulate a competent legal basis for reconsideration, while the record suggests appropriate processes were overrun because of improper political considerations. The Biden administration, it seems, has turned OLC into nothing more than an advocate for its pro-criminal policies.

Accordingly, pursuant to the Freedom of Information Act, 5 U.S.C. § 552 et seq., AFL requests the following records. In processing our requests, OLC has affirmed it will not "withhold information simply because it may do so legally." In particular, OLC will not withhold records merely to avoid embarrassment "to the Office or to individual officials, to hide possible errors in legal reasoning, or 'because of speculative or abstract fears'"[21]

## II. Custodians

Relevant custodians include:

1. Associate Attorney General Vanita Gupta.
2. Assistant Attorney General Christopher H. Schroeder.
3. All executives in Bureau of Prisons (BOP) leadership, as published on the official BOP website at https://www.bop.gov/about/agency/leadership.jsp.
4. All career officials with a grade of GS-14 or higher and all political appointees in the (a) Office of the Attorney General (OAG), (b) Office of the Deputy Attorney General (DAG), (c) Office of Legal Counsel (OLC), (d) Office of Legal Policy (OLP), and (e) Office of Legislative Affairs (OLA).

## III.   Records Requested

The timeframe for each request is January 21, 2021, to the date this records request is processed.

A) For custodians Gupta, Schroeder, OLC, and OAG, all records containing any or all the following words or phrases (1) "home confinement" or "home detention" or "Section 12003", (2) "Ron" or "Klain", (3) "Podesta", (4)"Susan" or "Rice", (5) "Perryman", (6) "Democracy Forward", (7) "Lev", and (8) "DPC".

---

[18] *Id.* at 4.
[19] *Id.* at 1.
[20] *Id.* at 2.
[21] *Id.* at 6.

B) For all other custodians, all records containing the phrases "home confinement" or "home detention or "Section 12003".

C) For all custodians, all records referring to the OLC memorandum of January 15, 2021, titled "Home Confinement of Federal Prisoners After the COVID-19 Emergency" available at https://www.justice.gov/olc/file/1457926/download.

D) For custodians Schroeder and OLC, all records that OLC referred to when it stated in the document "Discretion to Continue the Home-Confinement Placements of Federal Prisoners After the COVID-19 Emergency", 45 Op. O.L.C. __ (Dec. 21, 2021) that the attorney general had "asked us to reconsider our earlier opinion."

E) For all custodians, all communications with any email domain containing "@famm.org", "@democracyforward.org" or "@aclu.org" and any or all the terms or phrases "OLC", "DPC", "Vanita", "White House", "Ron", "Counsel", "home confinement" or "home detention" or "Section 12003".

F) For all custodians, all records referring to the OLC memorandum of December 21, 2021, entitled "Discretion to Continue the Home-Confinement Placements of Federal Prisoners After the COVID-19 Emergency" available at https://www.justice.gov/olc/file/1457926/download.

## IV.  Redactions

Redactions are disfavored as the FOIA's exemptions are exclusive and must be narrowly construed. *Am. Immigration Lawyers Ass 'n v. Exec. Office for Immigration Review (AILA)*, 830 F.3d 667, 676-79 (D.C. Cir. 2016). If a record contains information responsive to a FOIA request, then Department of State must disclose the entire record; a single record cannot be split into responsive and non-responsive bits. *Id.; see also Parker v. United States DOJ*, 278 F. Supp. 3d 446, 451 (D.D.C. 2017). Consequently, the Department should produce email attachments.

In connection with this request, and to comply with your legal obligations:

- Please search all locations and systems likely to have responsive records, regardless of format, medium, or physical characteristics.

- In conducting your search, please construe the term "record" in the broadest possible sense, to include any written, typed, recorded, graphic, printed, or audio material of any kind. We seek all records, including electronic records, audiotapes, videotapes, and photographs, as well as texts, letters, emails,

facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

- Our request includes any attachments to those records or other materials enclosed with a record when transmitted. If an email is responsive to our request, then our request includes all prior messages sent or received in that email chain, as well as any attachments.

- Please search all relevant records or systems containing records regarding agency business. Do not exclude records regarding agency business contained in files, email accounts, or devices in the personal custody of your officials, such as personal email accounts or text messages. Records of official business conducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA. It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain time period; AFL has a right to records contained in those files even if material has not yet been moved to official systems or if officials have, by intent or through negligence, failed to meet their obligations.

- Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to governmentwide requirements to manage agency information electronically, and many agencies have adopted the National Archives and Records Administration ("NARA") Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; you may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

- If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. If a request is denied in whole, please state specifically why it is not reasonable to segregate portions of the record for release.

- Please take appropriate steps to ensure that records responsive to this request are not deleted by the agency before the completion of processing for this request. If records potentially responsive to this request are likely to be located on systems where they are subject to potential deletion, including on a scheduled basis, please take steps to prevent that deletion, including, as appropriate, by instituting a litigation hold on those records.

6

## V.  Fee Waiver Request

Per 5 U.S.C. § 552(a)(4)(A)(iii), AFL requests a waiver of all search and duplication fees associated with this request.

First, AFL is a qualified non-commercial public education and news media requester. AFL is a new organization, but it has already demonstrated its commitment to the public disclosure of documents and creation of editorial content through regular substantive analyses posted to its website. For example, its officials routinely appear on national television and use social media platforms to disseminate the information it has obtained about federal government activities. In this case, AFL will make your records and your responses publicly available for the benefit of citizens, scholars, and others. The public's understanding of your policies and practices will be enhanced through AFL's analysis and publication of the requested records. As a nonprofit organization, AFL does not have a commercial purpose and the release of the information requested is not in AFL's financial interest. This has previously been recognized by the Departments of Defense, Education, Energy, Interior, and Homeland Security, and the Office of the Director of National Intelligence.

Second, waiver is proper as disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of operations or activities of the government."

## VI.  Production

To accelerate release of responsive records, AFL welcomes production on an agreed rolling basis. If possible, please provide responsive records in an electronic format by email. Alternatively, please provide records in native format or in PDF format on a USB drive. Please send any responsive records being transmitted by mail to America First Legal Foundation, 611 Pennsylvania Ave SE #231, Washington, D.C. 20003.

## VII.  Conclusion

If you have any questions about how to construe this request for records or believe further discussions regarding search and processing would facilitate a more efficient production of records of interest to AFL, please do not hesitate to contact me at FOIA@aflegal.org. Finally, if AFL's request for a fee waiver is not granted in full, please contact us immediately upon making that determination.

Thank you in advance for your cooperation.

Sincerely,


/s/ Reed D. Rubinstein
Reed D. Rubinstein
America First Legal Foundation

                                                          **AFL FOIA <foia@aflegal.org>**

---

# New request (FOIA-2022-00708)

**AFL FOIA** <foia@aflegal.org>                                    Tue, Feb 1, 2022 at 10:40 AM
To: BOP-OGC-EFOIA-S@bop.gov

Good morning,

Please see attached a new FOIA for BOP, OLC, and OIP, also filed through FOIA STAR this morning as FOIA-2022-00708.

Sincerely,
America First Legal Foundation

---

📄 **02012022_DOJ Politicization of DOJ OLC.pdf**
171K



**AFL FOIA <foia@aflegal.org>**

---

## New request (FOIA-2022-00708)

**AFL FOIA** <foia@aflegal.org>                                    Tue, Feb 1, 2022 at 10:39 AM
To: usdoj-officeoflegalcounsel@usdoj.gov

Good afternoon,

Please see attached a new FOIA for OLC, BOP, and OIP, also filed through FOIA STAR this morning as FOIA-2022-00708.

Sincerely,
America First Legal Foundation

---

📄 **02012022_DOJ Politicization of DOJ OLC.pdf**
171K



February 1, 2022

Douglas Hibbard
Chief, Initial Request Staff
Office of Information Policy
Department of Justice
6th Floor, 441 G Street, N.W.
Washington, D.C. 20530
<u>Via Online Portal</u>

Melissa Golden
Lead Paralegal and FOIA Specialist
Office of Legal Counsel
Room 5511, 950 Pennsylvania Ave., N.W.
Department of Justice
Washington, DC 20530-0001
usdoj-officeoflegalcounsel@usdoj.gov

FOIA/PA Section
Office of General Counsel, Room 924
Federal Bureau of Prisons
320 First Street, N.W.
Washington, DC 20534
Attn: Central Office
BOP-OGC-EFOIA-S@BOP.GOV

**Freedom of Information Act Request: Politicization of the Department of Justice's Office of Legal Counsel**

America First Legal Foundation (AFL) is a national, nonprofit organization working to promote the rule of law in the United States, prevent executive overreach, and ensure due process and equal protection for all Americans. Our core mission includes informing and educating the public regarding the operations and activities of the federal government. To that end, we file Freedom of Information Act (FOIA) requests on issues of pressing public concern, then disseminate the information we obtain, making documents broadly available to the public, scholars, and the media. Using our editorial skills to turn raw materials into distinct work, we distribute that work to a national audience through traditional and social media platforms. AFL's email list contains over 25,000 unique addresses, our Twitter page has nearly 10,000 followers, the Twitter page of our Founder and President has over 98,500 followers, and we have another 22,000 followers on GETTR.

## I.      Background

On March 27, 2020, just two weeks after President Trump declared a national emergency for the COVID-19 pandemic,[1] Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act).[2] Section 12003(b)(2) of the CARES Act temporarily expanded the authority of the Director of the Bureau of Prisons (BOP) to place federal prisoners in home confinement, "[d]uring the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of [BOP]."[3] Under this authority, BOP transferred thousands of federal prisoners into home confinement during the emergency.[4]

On January 15, 2021, the Department of Justice (DOJ) Office of Legal Counsel (OLC) issued a memorandum opinion concluding that the "[CARES Act] authorizes the Director of [BOP] to place prisoners in home confinement only during the Act's covered emergency period," and, "[should] that period end, or should the Attorney General revoke the finding, [BOP] would be required to recall the prisoners to correctional facilities unless they are otherwise eligible for home confinement under 18 U.S.C. § 3624(c)(2)."[5]

During his campaign, President Biden promised he would cut the prison population by more than fifty percent.[6] Nevertheless, the Biden legal team concluded that the January 15 opinion "correctly interpreted the law."[7] Reportedly, "[s]everal officials characterized the decision as an assessment of the best interpretation of the law, not a matter of policy preference."[8]

Key Biden administration stakeholders, however, remained intent on reversing OLC's opinion and allowing convicted criminals to remain out of prison indefinitely.[9] In July 2021, Senator Dick Durbin (D-IL) personally lobbied Attorney General

---

[1] Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, Proclamation No. 9994, 85 Fed. Reg. 15,337 (Mar. 18, 2020).

[2] Pub. L. No. 116-136 (Mar. 27, 2020).

[3] Pub. L. No. 116-136, § 12003(b)(2).

[4] *See Oversight of the Federal Bureau of Prisons and the U.S. Marshals Service Before the Subcomm. on Crime, Terrorism, and Homeland Sec. of the H. Comm. on the Judiciary* (Dec. 2, 2020) (statement of Michael D. Carvajal, Director, BOP).

[5] *Home Confinement of Federal Prisoners After the COVID-19 Emergency*, 45 Op. O.L.C. __ (Jan. 15, 2021), https://www.justice.gov/olc/file/1355886/download.

[6] Katherine Miller, *Joe Biden Told a Voter He'll "Go Further" Than Cutting Incarceration by 50%*, BUZZFEED NEWS (July 9, 2019), https://www.buzzfeednews.com/article/katherinemiller/joe-biden-incarceration-prison-population-cut-aclu.

[7] Charlie Savage & Zolan Kanno-Youngs, *Biden Legal Team Decides Inmates Must Return to Prison After Covid Emergency*, THE NEW YORK TIMES (July 19, 2021), https://www.ny-times.com/2021/07/19/us/politics/biden-prisoners-covid.html.

[8] *Id.*

[9] Blackman, *Biden OLC Reverses Trump OLC Position On BOP Home Confinement*, REASON – THE VOLOKH CONSPIRACY (Dec. 22, 2021), https://reason.com/volokh/2021/12/22/biden-olc-reverses-trump-olc-opinion-on-bop-home-confinement/.

Garland to overturn OLC's opinion.[10] In August 2021, Biden stakeholders, led by Democracy Forward, a front group created by political operatives including Ron Klain (current White House Chief of Staff), Marc Elias (architect of the Russia collusion hoax), and John Podesta, sent a letter to OLC demanding it change the legal analysis/.[11] This letter produced no results. Then on November 30th, the stakeholders met with Susan Rice, the domestic policy advisor. Soon after this meeting[12] Attorney General Garland directed OLC to "reconsider."[13]

On December 21, 2021, OLC published a new opinion, this time discovering Congress gave BOP has "discretion to permit prisoners in extended home confinement to remain there" indefinitely.[14] To justify this result, OLC leaned heavily on policy arguments, such as BOP had already placed nearly five thousand convicted criminals in home confinement under the emergency authority, and that under OLC's January 2021 opinion, 2,830 of these individuals would need to return to prison. OLC now deemed this unacceptable, preferring instead to avoid "disrupt[ing] the community connections these prisoners have developed."[15]

These facts raise credible concerns that the Biden Administration has inappropriately politicized OLC and plowed through the longstanding institutional guardrails protecting OLC's independence. OLC's core function is to provide controlling advice to Executive Branch officials on questions of law that are centrally important to the functioning of Federal Government.[16] OLC's obligation is to provide its view of the correct answer on the law, taking into account all reasonable counterarguments, not simply provide an advocate's defense of the contemplated action or position proposed by an agency or the Administration.[17]  Because OLC issues opinions pursuant to the Attorney General's delegated authority, the leadership offices are kept informed about OLC's work, and OLC benefits from suggestions about additional interests OLC should consider or views OLC should solicit before finalizing its opinions. But OLC's opinions are *nevertheless supposed to be based on its independent analysis and*

---

[10] Katie Benner *et al.*, *Some Inmates Can Stay Confined at Home After Covid Emergency, Justice Dept. Says*, The New York Times (Dec. 21, 2021), https://www.nytimes.com/2021/12/21/us/politics/prison-covid-home-confinement.html.

[11] Democracy Forward, *Trump-Era Home Confinement Memo Based on Flawed Legal Analysis, Orgs Urge DOJ to Rescind* (August 4, 2021), https://democracyforward.org/press/trump-era-home-confinement-memo-based-on-flawed-legal-analysis-orgs-urge-doj-to-rescind/.

[12] Benner, *supra note 16.*

[13] Discretion to Continue the Home-Confinement Placements of Federal Prisoners After the COVID-19 Emergency, 45 Op. O.L.C. __ (Dec. 21, 2021) ("You have asked us to reconsider our earlier opinion"), https://www.justice.gov/olc/file/1457926/download.

[14] *Id.*

[15] *Id.*

[16] Memorandum for Attorneys of the Office Re: Best Practices for OLC Legal Advice and Written Opinions, O.L.C. at 1 (July 16, 2010), https://www.justice.gov/sites/default/files/olc/legacy/2010/08/26/olc-legal-advice-opinions.pdf.

[17] *Id.* at 1, 4.

*judgment.*[18] "OLC must always give candid, independent, and principled advice — even when that advice is inconsistent with the aims of policymakers."[19]

Of course, "as with any system of precedent," past OLC decisions "may be subject to reconsideration and withdrawal in appropriate cases and through appropriate processes."[20] Here, however, the new opinion fails to articulate a competent legal basis for reconsideration, while the record suggests appropriate processes were overrun because of improper political considerations. The Biden administration, it seems, has turned OLC into nothing more than an advocate for its pro-criminal policies.

Accordingly, pursuant to the Freedom of Information Act, 5 U.S.C. § 552 et seq., AFL requests the following records. In processing our requests, OLC has affirmed it will not "withhold information simply because it may do so legally." In particular, OLC will not withhold records merely to avoid embarrassment "to the Office or to individual officials, to hide possible errors in legal reasoning, or 'because of speculative or abstract fears'"[21]

## II. Custodians

Relevant custodians include:

1. Associate Attorney General Vanita Gupta.
2. Assistant Attorney General Christopher H. Schroeder.
3. All executives in Bureau of Prisons (BOP) leadership, as published on the official BOP website at https://www.bop.gov/about/agency/leadership.jsp.
4. All career officials with a grade of GS-14 or higher and all political appointees in the (a) Office of the Attorney General (OAG), (b) Office of the Deputy Attorney General (DAG), (c) Office of Legal Counsel (OLC), (d) Office of Legal Policy (OLP), and (e) Office of Legislative Affairs (OLA).

## III.   Records Requested

The timeframe for each request is January 21, 2021, to the date this records request is processed.

A) For custodians Gupta, Schroeder, OLC, and OAG, all records containing any or all the following words or phrases (1) "home confinement" or "home detention" or "Section 12003", (2) "Ron" or "Klain", (3) "Podesta", (4) "Susan" or "Rice", (5) "Perryman", (6) "Democracy Forward", (7) "Lev", and (8) "DPC".

---

[18] *Id.* at 4.
[19] *Id.* at 1.
[20] *Id.* at 2.
[21] *Id.* at 6.

B) For all other custodians, all records containing the phrases "home confinement" or "home detention or "Section 12003".

C) For all custodians, all records referring to the OLC memorandum of January 15, 2021, titled "Home Confinement of Federal Prisoners After the COVID-19 Emergency" available at https://www.justice.gov/olc/file/1457926/download.

D) For custodians Schroeder and OLC, all records that OLC referred to when it stated in the document "Discretion to Continue the Home-Confinement Placements of Federal Prisoners After the COVID-19 Emergency", 45 Op. O.L.C. __ (Dec. 21, 2021) that the attorney general had "asked us to reconsider our earlier opinion."

E) For all custodians, all communications with any email domain containing "@famm.org", "@democracyforward.org" or "@aclu.org" and any or all the terms or phrases "OLC", "DPC", "Vanita", "White House", "Ron", "Counsel", "home confinement" or "home detention" or "Section 12003".

F) For all custodians, all records referring to the OLC memorandum of December 21, 2021, entitled "Discretion to Continue the Home-Confinement Placements of Federal Prisoners After the COVID-19 Emergency" available at https://www.justice.gov/olc/file/1457926/download.

## IV. Redactions

Redactions are disfavored as the FOIA's exemptions are exclusive and must be narrowly construed. *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review (AILA)*, 830 F.3d 667, 676-79 (D.C. Cir. 2016). If a record contains information responsive to a FOIA request, then Department of State must disclose the entire record; a single record cannot be split into responsive and non-responsive bits. *Id.; see also Parker v. United States DOJ*, 278 F. Supp. 3d 446, 451 (D.D.C. 2017). Consequently, the Department should produce email attachments.

In connection with this request, and to comply with your legal obligations:

- Please search all locations and systems likely to have responsive records, regardless of format, medium, or physical characteristics.

- In conducting your search, please construe the term "record" in the broadest possible sense, to include any written, typed, recorded, graphic, printed, or audio material of any kind. We seek all records, including electronic records, audiotapes, videotapes, and photographs, as well as texts, letters, emails,

facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

- Our request includes any attachments to those records or other materials enclosed with a record when transmitted. If an email is responsive to our request, then our request includes all prior messages sent or received in that email chain, as well as any attachments.

- Please search all relevant records or systems containing records regarding agency business. Do not exclude records regarding agency business contained in files, email accounts, or devices in the personal custody of your officials, such as personal email accounts or text messages. Records of official business conducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA. It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain time period; AFL has a right to records contained in those files even if material has not yet been moved to official systems or if officials have, by intent or through negligence, failed to meet their obligations.

- Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to governmentwide requirements to manage agency information electronically, and many agencies have adopted the National Archives and Records Administration ("NARA") Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; you may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

- If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. If a request is denied in whole, please state specifically why it is not reasonable to segregate portions of the record for release.

- Please take appropriate steps to ensure that records responsive to this request are not deleted by the agency before the completion of processing for this request. If records potentially responsive to this request are likely to be located on systems where they are subject to potential deletion, including on a scheduled basis, please take steps to prevent that deletion, including, as appropriate, by instituting a litigation hold on those records.

## V.     Fee Waiver Request

Per 5 U.S.C. § 552(a)(4)(A)(iii), AFL requests a waiver of all search and duplication fees associated with this request.

First, AFL is a qualified non-commercial public education and news media requester. AFL is a new organization, but it has already demonstrated its commitment to the public disclosure of documents and creation of editorial content through regular substantive analyses posted to its website. For example, its officials routinely appear on national television and use social media platforms to disseminate the information it has obtained about federal government activities. In this case, AFL will make your records and your responses publicly available for the benefit of citizens, scholars, and others. The public's understanding of your policies and practices will be enhanced through AFL's analysis and publication of the requested records. As a nonprofit organization, AFL does not have a commercial purpose and the release of the information requested is not in AFL's financial interest. This has previously been recognized by the Departments of Defense, Education, Energy, Interior, and Homeland Security, and the Office of the Director of National Intelligence.

Second, waiver is proper as disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of operations or activities of the government."

## VI.    Production

To accelerate release of responsive records, AFL welcomes production on an agreed rolling basis. If possible, please provide responsive records in an electronic format by email. Alternatively, please provide records in native format or in PDF format on a USB drive. Please send any responsive records being transmitted by mail to America First Legal Foundation, 611 Pennsylvania Ave SE #231, Washington, D.C. 20003.

## VII.   Conclusion

If you have any questions about how to construe this request for records or believe further discussions regarding search and processing would facilitate a more efficient production of records of interest to AFL, please do not hesitate to contact me at FOIA@aflegal.org. Finally, if AFL's request for a fee waiver is not granted in full, please contact us immediately upon making that determination.

Thank you in advance for your cooperation.

Sincerely,


/s/ Reed D. Rubinstein
Reed D. Rubinstein
America First Legal Foundation



AFL FOIA <foia@aflegal.org>

## FOIA #2022-02154

**BOP-OGC-EFOIA-S (BOP)** <BOP-OGC-EFOIA-S@bop.gov>                          Mon, Jun 13, 2022 at 10:37 AM
To: AFL FOIA <foia@aflegal.org>
Cc: Michael Ding <michael.ding@aflegal.org>

Hello,

In response to your email of June 10, 2022, the BOP has received part of the records requested.  We are processing the records and will release the records on a rolling basis.   We are still waiting to receive the remainder of the responsive records for processing.

Please be advised that due to necessary operational changes as a result of the national emergency concerning the novel coronavirus disease (COVID-19) outbreak, there may be some delay in the processing of your request.

For your general information, requests are processed on a first in, first out basis. Your request will be processed as soon as possible.

You may continue to monitor the status of your request at https://www.bop.gov/foia/index.jsp#tabs-6 by entering the request number and clicking the "search" button.


Thank you,

L. Stokes
FOIA/Privacy Act Branch
Office of General Counsel
Federal Bureau of Prisons

---

**From:** AFL FOIA <foia@aflegal.org>
**Sent:** Friday, June 10, 2022 2:25 PM
**To:** BOP-OGC-EFOIA-S (BOP) <BOP-OGC-EFOIA-S@bop.gov>
**Cc:** Michael Ding <michael.ding@aflegal.org>
**Subject:** [EXTERNAL] Re: FOIA #2022-02154

[Quoted text hidden]



**U.S. Department of Justice**

Office of Legal Counsel

_Washington, D.C. 20530_

June 28, 2022

Reed D. Rubinstein
America First Legal Foundation
FOIA@aflegal.org

  Re: **FOIA Tracking No. FY22-052**

Dear Mr. Rubinstein:

  This letter acknowledges receipt of your February 1, 2022 Freedom of Information Act ("FOIA") request to the Office of Legal Counsel ("OLC"), among others, in which you sought five categories of records related to "Home-Confinement" in the possession of "Assistant Attorney General Christopher H. Schroeder" and "career officials with a grade of GS-14 or higher and all political appointees in the . . . Office of Legal Counsel (OLC)." For your information, consistent with 28 C.F.R. § 16.4(a), we construe your request as seeking records from January 21, 2021, to the date a search is begun. We received the request on February 1, 2022, and it has been assigned tracking number **FY22-052**. We apologize for the significant administrative delay in providing you with this acknowledgment.

  Based on our preliminary review of your request, and pursuant to 28 C.F.R. § 16.5(b), your request has been tentatively assigned to the "complex" processing track. If you would like to narrow your request so that it can be transferred to the "simple" track and processed more quickly, please contact Melissa Golden at the address and phone number provided below.

  Because of the considerable number of FOIA requests received by OLC prior to your request, we have not yet been able to process your request. Accordingly, we are unable to comply with the statutory deadline for responding to your request. We regret the necessity of this delay, but please be assured that your request will be processed as soon as possible.

  We have not yet made a decision on your request for a fee waiver. We will do so after we determine whether fees will be assessed for this request.

  In the meantime, if you have any questions or wish to discuss your request, you may contact Melissa Golden, OLC's FOIA Public Liaison, at usdoj-officeoflegalcounsel@usdoj.gov, (202) 514-2053, or at Office of Legal Counsel, United States Department of Justice, 950 Pennsylvania Ave., N.W., Room 5517, Washington, DC 20530.

        Sincerely,
        OLC FOIA Staff



October 22, 2021

**Via Online Portal and Email**

Douglas Hibbard, Chief, Initial Request Staff
Office of Information Policy U.S. Department of Justice
441 G Street, N.W., 6th Floor
Washington, D.C. 20530-0001
MRUFOIA.Requests@usdoj.gov

Melissa Golden, Lead Paralegal and FOIA Specialist
Office of Legal Counsel, U.S. Department of Justice
Room 5511, 950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001
usdoj-officeoflegalcounsel@usdoj.gov

**Freedom of Information Act Request: AFL Request FOIA-2022-00056**

Dear Mr. Hibbard and Ms. Golden:

America First Legal Foundation is a national, nonprofit organization working to pro-
mote the rule of law in the United States, prevent executive overreach, and ensure
due process and equal protection for all Americans, all to promote public knowledge
and understanding of the law and individual rights guaranteed under the Constitu-
tion and laws of the United States. Pursuant to 5 U.S.C. § 552(a), we make the fol-
lowing Freedom of Information Act request for records relating to AFL Request FOIA-
2022-00056.

## I.     Special Definitions

"AFL" means America First Legal Foundation.

"Department" means the U.S. Department of Justice and all relevant components.

"OPA" means the Office of Public Affairs.

"Records" has the meaning given at 44 U.S.C. § 3301(a).

"Request" means AFL's Freedom of Information Act Request dated October 7, 2021,
assigned number FOIA 2022-00056.

## II.    Requested Records

A.    All records of or concerning the Department's processing of the Request. The relevant time is October 7, 2021, to October 18, 2021.

B.    All records relating to or mentioning the decision by the Director of the Office of Public Affairs to deny expedited processing of the Request. The relevant time is October 7, 2021, to October 18, 2021.

C.    All records of or concerning communications with any person having an email address containing eop.gov regarding the Request. The relevant time is October 7, 2021, to October 18, 2021.

D.    All records, including but not limited to emails, drafted, sent, or received by OPA and/or Anthony Coley concerning (1) AFL, and/or (2) expedited processing of the Request. The relevant time is October 1, 2021, until this Item is processed.

## III.    Custodians

A.    The Office of the Attorney General
B.    The Office of Legal Counsel
C.    The Office of Public Affairs
D.    Anthony Coley, Director, OPA
E.    Paul P. Colburn, Special Counsel
F.    The Office of the Deputy Attorney General
G.    The Office of the Associate Attorney General

## IV.    Redactions

FOIA requires the Department to disclose records freely and promptly. The department must liberally construe AFL's requests and make a good faith effort to search for requested records using methods "which can be reasonably expected to produce the information requested." At all times, FOIA must be construed to carry out Congress's open government mandate according to the ordinary public meaning of its terms at the time of its enactment.[1]

Redactions are disfavored as the FOIA's exemptions are exclusive and must be narrowly construed. If a record contains information responsive to a FOIA request, then the Department must disclose the entire record; a single record cannot be split into responsive and non-responsive bits.

---

[1] 5 U.S.C. §§ 552(a)(3)(A), 552(a)(6)(A); *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1738 (2020); *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989); *Oglesby v. United States Dep't of the Army,* 920 F.2d 57, 68 (D.C. Cir. 1990).

- Please search all locations and systems likely to have responsive records, regardless of format, medium, or physical characteristics.

- In conducting your search, please construe both our Items and the term "record" broadly and give full effect to applicable law, including 44 U.S.C. 3301(a) and controlling judicial authorities.

- Our request includes any attachments to those records or other materials enclosed with a record when transmitted. If an email is responsive to our request, then our request includes all prior messages sent or received in that email chain, as well as any attachments.

- Please search all relevant records or systems containing records regarding agency business. Do not exclude records regarding agency business contained in files, email accounts, or devices in the personal custody of your officials, such as personal email accounts or text messages. Records of official business conducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA. It is not adequate to rely on policies and procedures that require officials to move records to official systems within a certain time. AFL has a right to records in those files even if material has not yet been moved to official systems or if officials have, by intent or through negligence, failed to meet their obligations.

- Please use all available tools to conduct a complete and efficient search for potentially responsive records. Many agencies have adopted the National Archives and Records Administration ("NARA") Capstone program or similar policies. These provide options for searching emails and other electronic records in a manner reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; you may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

- If some portions of the requested records are properly exempt from disclosure, then please disclose any reasonably segregable non-exempt portions of the requested records. If a request is denied in whole, please state specifically why it is not reasonable to segregate portions of the record for release.

- Please take appropriate steps to ensure that records responsive to this request are not deleted before our Items are processed. If potentially responsive records are subject to potential deletion, including on a scheduled basis, please take steps to prevent that deletion, including, as appropriate, by instituting a litigation hold.

3

## V.     Fee Waiver

Per 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10, AFL requests a waiver of all search and duplication fees.

Fees should be waived "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." AFL's request concerns identifiable operations or activities of the government, and the information requested is likely to contribute significantly to the public understanding such activities. The department and the United States Attorney are representatives not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, is not that it shall win a case, but that justice shall be done.[2]

AFL is a qualified non-commercial public education and news media requester. AFL is a new organization, but it has already demonstrated its commitment to the public disclosure of documents and creation of editorial content. For example, its officials routinely appear on national television and use social media platforms to disseminate the information it has obtained about federal government activities. As a nonprofit organization primarily engaged in the dissemination of information to educate the public, AFL does not have a commercial purpose and the release of the information requested is not primarily in AFL's financial interest. Our status as a qualified non-commercial public education and news media requester previously has been acknowledged and recognized by this department and by the Departments of Defense, Education, Energy, Interior, Health and Human Services, and Homeland Security, and the Office of the Director of National Intelligence.

## VI.     Production

AFL welcomes production on an agreed rolling basis to speed production and reduce agency burden. If possible, please provide responsive records in an electronic format by email, native format by mail, or in PDF format on a USB drive. Please send any responsive records being transmitted by mail to America First Legal Foundation, 600 14th Street NW, 5th Floor, Washington, D.C. 20005.

## VII.     Conclusion

If you have any questions about this request or believe further discussions regarding search and processing will speed the efficient production of records of interest to AFL, then please contact me at FOIA@aflegal.org.

---

[2] *Berger v. United States*, 295 U.S. 78, 88 (1935).

Finally, if AFL's request for a fee waiver is not granted in full, then please contact us immediately upon making such a determination.

Thank you in advance for your cooperation. I look forward to hearing from you soon.

Sincerely yours,


/s/ Reed D. Rubinstein
Reed D. Rubinstein
America First Legal Foundation



**U.S. Department of Justice**

Office of Information Policy

*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

October 29, 2021

Reed Rubinstein
American First Legal Foundation
600 14th Street NW
Washington, DC 20005
foia@aflegal.org

Re:    FOIA-2022-00164
FOIA-2022-00180
DRH:GMG

Dear Reed Rubinstein:

      This is to acknowledge receipt of your Freedom of Information Act (FOIA) request dated and received in this Office on October 22, 2021, in which you requested records of the Office of the Attorney General, Office of the Deputy Attorney General, Office of the Associate Attorney General, and Office of Public Affairs concerning the processing of FOIA-2022-00056.

      As an initial matter, you also submitted your request to the FOIA/PA Mail Referral Unit (MRU), Justice Management Division. The MRU forwarded a copy of your request to this Office on October 25, 2021, where it has been assigned tracking number FOIA-2022-00180. The MRU tracking number associated with this request is EMRUFOIA102221. Accordingly, I am administratively closing the tracking number (FOIA-2022-00180) associated with this referral from the MRU. For future communications regarding your request, please reference FOIA-2020-00164.

      The records you seek require a search in and/or consultation with another Office, and so your request falls within "unusual circumstances." See 5 U.S.C. 552 § (a)(6)(B)(i)-(iii) (2018). Because of these unusual circumstances, we need to extend the time limit to respond to your request beyond the ten additional days provided by the statute. For your information, we use multiple tracks to process requests, but within those tracks we work in an agile manner, and the time needed to complete our work on your request will necessarily depend on a variety of factors, including the complexity of your records search, the volume and complexity of any material located, and the order of receipt of your request. At this time we have assigned your request to the complex track. In an effort to speed up our process, you may wish to narrow the scope of your request to limit the number of potentially responsive records so that it can be placed in a different processing track. You can also agree to an alternative time frame for processing, should records be located, or you may wish to await the completion of our records search to discuss either of these options. Any decision with regard to the application of fees will be made only after we determine whether fees will be implicated for this request.

-2-

We regret the necessity of this delay, but we assure you that your request will be processed as soon as possible. If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact this Office by telephone at the above number or you may write to the Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001. Lastly, you may contact our FOIA Public Liaison, Valeree Villanueva, at the telephone number listed above to discuss any aspect of your request.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448.

If you are not satisfied with this Office's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically submitted within ninety days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Douglas R. Hibbard
Chief, Initial Request Staff



**U.S. Department of Justice**

Office of Legal Counsel

*Washington, D.C. 20530*

June 28, 2022

Reed D. Rubinstein
America First Legal Foundation
FOIA@aflegal.org

Re: **FOIA Tracking No. FY22-010**

Dear Mr. Rubinstein:

This letter acknowledges receipt of your October 22, 2021 Freedom of Information Act ("FOIA") request to the Office of Legal Counsel ("OLC"), among others, in which you sought four categories of "records relating to AFL Request FOIA-2022-00056," which was assigned OLC tracking number FY22-003, with categories (A)-(C) limited to "October 7, 2021, to October 18, 2021." For your information, consistent with 28 C.F.R. § 16.4(a), we construe category (D) as seeking records from October 1, 2021, to the date a search is begun. We received the request on October 22, 2021, and it has been assigned tracking number **FY22-010**. We apologize for the significant administrative delay in providing you with this acknowledgment.

Based on our preliminary review of your request, and pursuant to 28 C.F.R. § 16.5(b), your request has been tentatively assigned to the "complex" processing track. If you would like to narrow your request so that it can be transferred to the "simple" track and processed more quickly, please contact Melissa Golden at the address and phone number provided below.

Because of the considerable number of FOIA requests received by OLC prior to your request, we have not yet been able to process your request. Accordingly, we were unable to comply with the statutory deadline for responding to your request. We regret the necessity of this delay, but please be assured that your request will be processed as soon as possible.

We have not yet made a decision on your request for a fee waiver. We will do so after we determine whether fees will be assessed for this request.

In the meantime, if you have any questions or wish to discuss your request, you may contact Melissa Golden, OLC's FOIA Public Liaison, at usdoj-officeoflegalcounsel@usdoj.gov, (202) 514-2053, or at Office of Legal Counsel, United States Department of Justice, 950 Pennsylvania Ave., N.W., Room 5517, Washington, DC 20530.

Sincerely,
OLC FOIA Staff

## CIVIL COVER SHEET

JS-44 (Rev. 11/2020 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| America First Legal Foundation<br>611 Pennsylvania Ave., SE #231<br>Washington, D.C. 20003 | U.S. DEPARTMENT OF JUSTICE,<br>950 Pennsylvania Ave., NW<br>Washington, D.C. 20530-0001 |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 11001
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT 11001
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Andrew Block, D.C. Bar No.90002845
America First Legal Foundation
611 Pennsylvania Ave., SE #231 Washington, D.C. 20003
Tel.: (202) 836-7958

ATTORNEYS (IF KNOWN)

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

○ 3 Federal Question
(U.S. Government Not a Party)

◉ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR
PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place<br>of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place<br>of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a<br>Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/
Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 367 Health Care/Pharmaceutical
Personal Injury Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency
Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
**Other Statutes**
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 890 Other Statutory Actions (If
Administrative Agency is
Involved)

○ **D.** *Temporary Restraining
Order/Preliminary
Injunction*

**Any nature of suit from any category
may be selected for this category of
case assignment.**

***(If Antitrust, then A governs)***

○ **E.** *General Civil (Other)* OR ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property
Damage
☐ 385 Property Damage
Product Liability

**Bankruptcy**
☐ 422 Appeal 27 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Conditions
☐ 560 Civil Detainee – Conditions
of Confinement

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent – Abbreviated New
Drug Application
☐ 840 Trademark
☐ 880 Defend Trade Secrets Act of
2016 (DTSA)

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
defendant)
☐ 871 IRS-Third Party 26 USC
7609

**Forfeiture/Penalty**
☐ 625 Drug Related Seizure of
Property 21 USC 881
☐ 690 Other

**Other Statutes**
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC
3729(a))
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc
☐ 460 Deportation
☐ 462 Naturalization
Application

☐ 465 Other Immigration Actions
☐ 470 Racketeer Influenced
& Corrupt Organization
☐ 480 Consumer Credit
☐ 485 Telephone Consumer
Protection Act (TCPA)
☐ 490 Cable/Satellite TV
☐ 850 Securities/Commodities/
Exchange
☐ 896 Arbitration
☐ 899 Administrative Procedure
Act/Review or Appeal of
Agency Decision
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions
(if not administrative agency
review or Privacy Act)

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ◉ **I. FOIA/Privacy Act** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☒ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi-district Litigation   ○ 7 Appeal to District Judge from Mag. Judge   ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Violation of FOIA, 5 U.S.C. § 552, failing to make determination on appeal and to release responsive, non-exempt records

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** <br>**JURY DEMAND:** | Check YES only if demanded in complaint<br>YES ☐   NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☒   NO ☐   If yes, please complete related case form

DATE: _____10/26/2022_____   SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

**I.**   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

**III.**   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

**VI.**   CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**   RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| AMERICA FIRST LEGAL FOUNDATION | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No.  1:23-cv-00391 |
| | ) |
| U.S. DEPARTMENT OF JUSTICE | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  The Honorable Merrick Garland
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Andrew Block
611 Pennsylvania Avenue, SE #231
Washington, D.C. 20003

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  1:23-cv-00391

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

                              _____
                                       *Server's signature*

                              _____
                                   *Printed name and title*

                              _____
                                   *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Columbia

| | | |
|---|---|---|
| AMERICA FIRST LEGAL FOUNDATION | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No.  1:23-cv-00391 |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   U.S. Department of Justice
Civil Process Clerk
U.S. Attorney's Office for D.C.
601 D Street, NW
Washington, DC 20530

Emal Service to: USADC.ServiceCivil@usdoj.gov

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Andrew Block
611 Pennsylvania Avenue, SE #231
Washington, D.C. 20003

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____              _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  1:23-cv-00391

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

    ❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

    ❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

    ❑ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

    ❑ I returned the summons unexecuted because _____ ; or

    ❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____                _____
                                                            *Server's signature*

                                              _____
                                                            *Printed name and title*

                                              _____
                                                            *Server's address*

Additional information regarding attempted service, etc: