UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW C. ZORN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-02396 |
| | § | |
| U.S. DEPARTMENT OF JUSTICE, ET AL. | § | |
| | § | |
| Defendants. | § | |

**ZORN'S REPLY IN SUPPORT OF TARGETED DISCOVERY**

After a round of briefing, this much is clear: The debate over discovery has consumed more resources than the limited discovery itself would take. Defendants never seriously contend that a day's worth of deposition time, complying with a previously sanctioned document request, and providing a reasonably detailed affidavit is unduly burdensome or disproportionate. Instead, they spend words claiming I am a self-appointed "FOIA watchdog" engaging in "gamesmanship" that is on a "roving mission" to unearth any FOIA violation I can find.

Not so. Rhetorical flourishes aside, I seek targeted discovery to prove several facts central to current claims. I'm not looking for more. Certainly, the Court should tackle jurisdictional issues first. And I agree that relatively little discovery with respect to the "unusual circumstances" policy needs to occur. But several factual questions regarding compliance with FOIA's affirmative disclosure mandates remain, as I describe on page 9 of my Motion.

At bottom, Defendants again urge a position to allow DOJ to violate FOIA with impunity and no accountability. With the Chief FOIA Officer issues, it effectively says nobody has standing to challenge a violation sitting in broad daylight. With affirmative disclosure issues, after facts plausibly establish broader non-compliance, they say nobody should get a deeper look.

1

**I.     The questions I asked in the last deposition were fair, probative, and instructive.**

Defendants lament the trajectory 30(b)(6) deposition, inaccurately claiming "[t]he parties traveled to Arlington, Virginia." Opp. 3. In fact, I was in the D.C. area at the time where Defendants are all located. They say I engaged in "litigation gamesmanship" by asking questions that had "nothing to do with the 'unusual circumstances' provision" or pending FOIA requests. Not so. A quick perusal of the deposition transcript shows I spent the vast majority of my time exploring the unusual circumstances policy and noticed topics. Aside from one diversion, I made good use of my time. And after I got what needed, I ended early, returning ~3 hours of time.

Defendants note my reading a settlement offer into the record. I did this to support a fee request for co-counsel. Defendants' refusal weighs in favor of fees. I want the facts in the record (as opposed to a declaration); using the corporate deposition to do this was proper.

They correctly note my questions about the Chief FOIA Officer statute. These questions were plainly within the scope of the 30(b)(6) notice. The *first topic* was the "structure and operation of the DEA FOIA office." Dkt. 16. The notice did not explicitly mention the statute; for this reason, I have never suggested the witness was unprepared. Nonetheless, just because Defendants didn't anticipate the questions, for them to flip it around say I engaged in "gamesmanship" by asking basic questions about who is in charge is improper. Moreover, my papers show how that ties to other issues in the case.

Defendants correctly point out that I asked a line of questions about an undisclosed FOIA policy involving redacting employee names. I learned about this policy during the deposition. Again, the topic was plainly noticed. Dkt. 16 (topic 4). Defendants should have produced the policy ahead of time under Request Nos. 1 & 2. Dkt. 16. Any surprise is their own fault.

II.     **Limited discovery is not disfavored under the circumstances.**

Defendants say that FOIA principles about limited discovery also apply in a policy/practice case. But they lack authority expressly holding as such. Other authority suggests otherwise. *Citizens for Resp. & Ethics in Washington v. DOJ*, 2006 WL 1518964, at *4 (D.D.C. June 1, 2006) (permitting deposition of Associate AG, OIP Director, and others due to OIP irregularities; "even after a full round of briefing and a motions hearing, there still remain unanswered questions"); *see also Am. Ctr. for L. & Just. v. Dep't of State*, 289 F. Supp. 3d 81, 92 (D.D.C. 2018) (no "presumption" against discovery in FOIA case and "scales may shift" in "a FOIA [PPP] suit, in which confidentiality is not typically at issue").

*Pietrangelo v. U.S. Army*, 334 F. App'x 358, 360 (2d Cir. 2009) is distinguishable. Unlike here, the agency there provided affidavits and no showing of bad faith was made. Here, Defendants fail to produce affidavits, they changed testimony, and there are other improprieties. *Pietrangelo*'s persuasive value is limited here, especially because the agency has not submitted an affidavit or otherwise explained the search process.

Defendants claim discovery in FOIA cases is limited by Rule 56(d) but cite no case stating as such. Opp. 5. In any event, the point is academic. If Defendants seek summary judgment claiming they produced everything under affirmative disclosure requirements, I may invoke Rule 56(d) to defer/deny because I haven't gotten discovery to test the assertion. Proceeding under 56(d) unnecessarily complicates proceedings. I aim to streamline them.

III.    **The requested limited discovery is proportional and the best path forward.**

1.      Defendants oppose producing documents the Court previously permitted me to obtain. Opp. 12; *see also* Dkt. 13 at 1.B (citing Dkt. 12-1); Dkt. 16 (notice). They point out their objections. Opp. 12. But the Court overruled those objections. *See* Dkt. 13. All I ask for is for Defendants to comply with an issue the Court resolved in my favor. Defendants state, "in the

3

spirit of cooperation and transparency" they produced responsive documents after their objections were overruled. Opp. 12. But based on these statements, it is now unclear whether Defendants produced records subject to those objections.

Defendants admit to not producing a relevant guidance memo, excusing it as unrelated to the "unusual circumstances" issue. Opp. 13. This is misdirection. The request sought "all written (public and non-public) policies for processing FOIA requests," and the scope objection was overruled. Defendants say the document "would have been identified during deposition preparations" had it related to the "unusual circumstances" policy. This illustrates my point precisely: Defendants likely did not do a proper search in the first instance.

And there is good reason to think it is still not complete. Defendants' "transparen[t]" and "cooper[ative]" production contained 12 pages from DEA's internal policy manual, some SOPs, and a hodge podge of other documents including how to configure word to require 2 spaces between periods (apparently an agency policy):



For its part, DOJ produced 168 pages. Nearly all (pages 172 to 339) is a printout of publicly available CFRs. The rest consists of other printouts from DOJ's website. So, while Defendants tout "354 pages" produced for both DEA/DOJ, when one removes the 160-page production of publicly available DOJ regulations, what is left of DOJ's production is almost nothing.

4

That might be all well and good and not worthy of more discovery if we had confidence that DOJ puts everything on its website. No competent evidence establishes this point, however. While OIP publishes lots, https://www.justice.gov/oip/oip-guidance, it also appears to provide formal FOIA policy/instructions in writing to agencies and without publication. *See, e.g.*, Dkt. 31-3. Not once have Defendants explained in evidence why this document, an intra-agency memo, was not found for the initial production and not posted on its website. Are there others?

Also, consider the "unusual circumstances" policy. Evidence shows it's a governmentwide *standard* practice to slow down the disclosure of information and reported as a "loophole." Ex. 1 (USAID e-mail); Ex. 2 (news article). To date, Defendants have not produced one document regarding its origins. When I asked, they referred me to regulations. Dep. 68:7-12. But the **regulations do not define "unusual circumstances."** Hence, the errata, pointing me to the statute, which defines "unusual circumstances" but **not** in a manner that supports the policy.

Why Defendants continue to rest on pure attorney argument and conceal how they collected/produced records escapes me. They refuse to describe their search. Maybe they "fully complied with that prior request," Opp. 8, but if so, why not substantiate the point? Perhaps, it has to do with the search itself. Defendants say they are "unaware" of any unproduced, responsive documents. Opp. 9. But of course, an agency that searches a file cabinet under one desk can say it is "unaware" of troves of responsive documents in the next-door file room.

Why a deposition? Put simply, at this juncture, DOJ's avoidance of basic disclosures gives me pause. *Cf. CREW*, 2006 WL 1518964, at *4 (ordering depositions). Nothing other than a brief, targeted Q&A will turn up candid answers. After Ms. Miller gave them, DOJ mucked it up. Now, Defendants argue that DEA—"an agency" according to its organic statute, Dkt. 28 at 12—is not an "agency" for FOIA purposes. In the same lawsuit, they say under one part of

FOIA, DEA is not an "establishment in the executive branch of the Government" under § 552(f), while under another, an office *across the hallway* from the FOIA Office *is* an "establishment" that is "separate" from the FOIA Office. Words are being twisted. We can't rely on the plain meaning of what DOJ says. To understand what it is saying, I need to ask follow-up questions.

**2.** Citing several district court cases, Defendants say "discovery on discovery" is not warranted. Opp. 10. In many of these cases, the Government disclosed facts about searches up-front. *See, e.g.*, *Freedom Watch, Inc. v. NSA*, 220 F. Supp. 3d 40, 45 (D.D.C. 2016) (government produced a "relatively detailed and non-conclusory" declaration). Defendants have not done this.

In any event, the affirmative disclosure claim is precisely the type of claim where limited discovery is justified. FOIA's reading room provision, 5 U.S.C. § 552(a)(2), requires proactive disclosure of certain materials. The only way to know what Defendants have not proactively disclosed is to take limited discovery into how OIP makes/communicates FOIA policies for Defendants and decides to publish.

I do not suggest anyone can file a lawsuit and get discovery based on speculation. But my claim here is past plausible. Beyond what is discussed above, other improprieties regarding proactive disclosure have surfaced. For example, the Fifth Circuit has held that a DEA manual on confidential informants and search warrant procedures is subject to affirmative disclosure requirements. *Sladek v. Bensinger*, 605 F.2d 899, 899–900 (5th Cir. 1979). And yet, now, DEA not only does not publish similar material but insists it "may not be disseminated outside DEA." In deposition, however, Defendants admitted it must be disclosed. Dep. 114:1-117:8.

Defendants also say my claim is moot because they say, in attorney argument, they produced everything—i.e., only the materials I flagged. But there is a factual dispute here, and the only way to resolve it is limited discovery no different than discovery this Court previously

ordered and the type courts order in PPP cases when a plausible claim is stated: to determine whether and extent to which a policy/practice exists.

**3.** Defendants say that there is no basis to believe that Talebian has personal knowledge of relevant facts. Hardly. One need not look past DOJ's website or the CFRs. *See* 28 C.F.R. § 0.24. He develops FOIA policy guidance for the Executive Branch and oversees "agency compliance with the law." *See* https://www.justice.gov/opa/pr/attorney-general-barr-names-bobak-talebian-director-office-information-policy; https://www.justice.gov/oip/staff-profile/meet-director. He presides over Chief FOIA Officer meetings. *See* https://www.justice.gov/archives/oip/chief-foia-officers-council-meeting; Dep. 37:16-38:1. Before 2019, he served as Chief of FOIA Compliance. He recently submitted testimony to Congress on FOIA accountability. *See* https://www.judiciary.senate.gov/imo/media/doc/Talebian%20testimony.pdf. He represents the Department in civil litigation arising under FOIA and deals with ". *See* 28 C.F.R. § 0.24(g).

The OIP Director's testimony directly relate to outstanding questions. The undisclosed November 2017 memo, Dkt. 31-3, for example, came from then-OIP Director Pustay. Put simply, I want to put a copy of the November 2017 memo and ask him if other undisclosed memos like it exist and how OIP provides FOIA guidance to agencies.

Finally, any notion Talebian should be shielded as a "senior government official" lacks merit. Defendants never contend he is an apex official, nor could they. Unlike DEA, OIP is *not* a DOJ component *agency*—just a component. Talebian manages that component, is not a political appointee, and is four levels under the AG within DOJ. https://www.justice.gov/jmd/page/file/1399256/download.

Dated: June 2, 2023                    Respectfully submitted,

                                                       */s/ Matthew C. Zorn*
                                                       Matthew C. Zorn
                                                       YETTER COLEMAN LLP
                                                       mzorn@yettercoleman.com
                                                       811 Main Street, Suite 4100
                                                       Houston, TX 77002
                                                       T: (713) 632-8000
                                                       F: (713) 632-8002

                                                       ATTORNEYS FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                       */s/ Matthew C. Zorn*
                                                       Matthew C. Zorn

### WORDS

I certify that this filing has 1987 words, excluding the case caption, table of contents, table of authorities, signature block, and certificates.

                                                       */s/ Matthew C. Zorn*
                                                       Matthew C. Zorn