UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MATTHEW C. ZORN, *Plaintiff*, v. U.S. DEPARTMENT OF JUSTICE, *et al.*, *Defendants*. | Civil Action No. 4:22-CV-02396 |

### DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS IN PART

**INTRODUCTION**

Plaintiff's Second Amended Complaint cobbles together a litany of grievances about Freedom of Information Act ("FOIA") operations at the Department of Justice ("DOJ") and the Drug Enforcement Administration ("DEA"). But largely missing from the Complaint are the essential features of any federal lawsuit: demonstration of an Article III case or controversy and allegation of a plausible right to relief. While Plaintiff seeks judicial intervention regarding various purported "improprieties" learned of during discovery, *see* 2d Am. Compl. ¶ 6, Doc. No. 21, he repeatedly fails to connect those alleged issues to any injury he has suffered or any basis for this Court to enter judgment. Accordingly, Defendants' Motion to Dismiss in Part, Doc. No. 42 ("MTD"), should be granted. Plaintiff's response in opposition fails to show otherwise. Opp'n, Doc. No. 48.

**ARGUMENT**

Following the motion to dismiss, Plaintiff voluntarily dismissed Counts 7 and 9 of the Second Amended Complaint. *See* Zorn's Rule 41 Notice of Dismissal, Doc. No. 44. Plaintiff, however, opposes dismissal as to Counts 3–5, 6, and 8. Defendants address those arguments below.

## I. Plaintiff Has No Standing to Raise His Chief FOIA Officer Claims.

Plaintiff lacks standing to bring Counts 3–5 of the Complaint, regarding the alleged lack of a properly appointed Chief FOIA Officer at DEA, as he has failed to allege any cognizable injury that is traceable to any deficiencies in Defendants' compliance with the Chief FOIA Officer statute. Nor has he alleged that the relief requested as to these claims would likely redress any asserted injuries he has suffered. MTD at 6–10.

Plaintiff's first response is that relief on his Chief FOIA Officer claim would provide redress on his original policy-or-practice claim, regarding DEA's alleged invocation of the unusual circumstances provision in FOIA. Opp'n at 5–7. But Plaintiff's argument has no basis in the statute: Chief FOIA Officers are not responsible for responding to FOIA requests and, thus, Plaintiff's argument about what records the Chief FOIA Officer would have access to avails him nothing. *See* 5 U.S.C. § 552(j)(2) (establishing duties and powers regarding training, monitoring, and making proposals with respect to agency FOIA operations). In any event, Plaintiff once again posits a speculative chain that cannot be a basis for standing. Plaintiff would have the Court presume that a Chief FOIA Officer would be appointed from a DEA office having records responsive to one of Plaintiff's requests and that such Officer would be personally involved in responding to such request *and* that the unusual circumstances provision of FOIA would not otherwise be appropriately invoked as to that request. Plaintiff has alleged policy-or-practice claims regarding the unusual circumstances provision of FOIA that will be judged at summary judgment; Article III standing principles foreclose the speculative bank-shot that Plaintiff attempts with his Chief FOIA Officer claims.

Plaintiff also contends that he has standing because the lack of a Chief FOIA Officer "hampers the proper FOIA interface for me and the public." Opp'n at 8. Standing requires,

however, a particularized injury that is actual or imminent, not vague grievances as to the "proper" operation of a federal agency. Perhaps recognizing this, Plaintiff attempts to invoke "[o]ne concrete item"—DEA policies and procedures regarding the assessment of FOIA fees. Opp'n at 8. But Plaintiff again misses the mark. The Chief FOIA Officer statute imparts no independent authority to promulgate regulations, regarding fees or anything else. At most, a Chief FOIA Officer may "recommend to the head of the agency such adjustments to agency practices [or] policies . . . as may be necessary to improve its implementation of this section." 5 U.S.C. § 552(j)(2)(C). Plaintiff's standing theory, therefore, relies on speculation that a Chief FOIA Officer for DEA would recommend a change to a relevant fee policy, that DOJ or DEA would then take further action to revise that policy, and that such revision (in whatever form) would redress some unspecified injury to Plaintiff in future FOIA requests. That is another impermissible chain of speculation. Plaintiff's attempt to analogize his case to class litigation for recovery of PACER fees under the Little Tucker Act, Opp'n at 10 (citing *Nat'l Veterans Legal Servs. Program v. United States*, 235 F. Supp. 3d 32 (D.D.C. 2017)), is even further afield. This case does not involve any claim for recovery of money, which is a form of injury with an obvious manner of redress (a money judgment).

Plaintiff finally attempts to invoke cases involving constitutional claims regarding the structure of administrative agencies or the validity of the appointment of officials presiding over adjudicatory proceedings. Opp'n at 9–10. Those cases are inapposite. Although Plaintiff alleges a constitutional challenge to Defendants' compliance with the Chief FOIA Officer provision, 2d Am. Compl. ¶¶ 144–148, he fails to show that the appointment of a Chief FOIA Officer has anything to do with *him*. Some cases have found an "injury of subjection to an unconstitutionally structured decisionmaking process" where a person is subject to an administrative investigation

or adjudication that is presided over by an improperly appointed official or unconstitutionally structured agency. *See Axon Enterprise, Inc. v. FTC*, 598 U.S.--, 143 S. Ct. 890, 904 (2023). But no such administrative adjudication presided over by an improperly appointed Chief FOIA Officer is alleged, nor does Plaintiff allege any challenge to the structure of DEA or DOJ.

Nor has Plaintiff alleged that he is injured by any regulation that was promulgated by an unconstitutionally structured agency. *Contra Consumers' Research v. Consumer Product Safety Comm'n*, 592 F. Supp. 3d 568, 578 (E.D. Tex. 2022), *appeal pending*, No. 22-40328 (5th Cir.) (finding injury where plaintiff was subject to a FOIA regulation promulgated by an agency that was allegedly unconstitutionally structured). To begin, it is DOJ that promulgates regulations regarding departmental FOIA operations, which apply to all components, including DEA. *See* 28 C.F.R. Part 16. Plaintiff asserts no claim at all regarding DOJ's structure or the appointment of its officers. As for the policies and practices of DEA, Plaintiff does not challenge that component's structure either, e.g., by asserting that the Administrator of DEA is unconstitutionally appointed or subject to unconstitutional removal protections. Although Plaintiff claims that DEA ought to have a Chief FOIA Officer, that has nothing to do with the agency's authority to promulgate regulations or issue policies: the Chief FOIA Officer statute creates *no* authority to promulgate regulations at an agency—that position only creates authority to make recommendations. *See* 5 U.S.C. § 552(j)(2)(C). The presence or absence of a Chief FOIA Officer at DEA is, therefore, irrelevant to the validity of any regulation or policy of DEA.

## II.     There is No Jurisdiction for Plaintiff's Reading Room Claim.

Plaintiff also lacks standing to press his reading room claim because he has alleged no particularized injury arising from the absence of any information he alleges to be missing from Defendants' FOIA reading room. MTD at 10–11. And in any event, Plaintiff's claim has been

4

mooted by the disclosure to him of the only two records he has alleged to be subject to the reading room requirement and previously not provided to him.  *Id.* at 11–13.

Plaintiff responds that his interest is in the publication of "FOIA policies and interpretations" and that he is injured by the effort he must undertake to "seek out information about FOIA through phone calls, litigation tools, and other means." Opp'n at 11.  But Plaintiff nowhere alleges *in the Complaint* any harms to him at all from the purportedly inadequate compliance with proactive disclosure obligations, let alone a harm involving the expenditure of resources spent seeking documents that should have been in the reading room.  Plaintiff does not allege, for example, that he filed a FOIA request for, and was thereafter denied access to, the documents he claims should have been in the reading room.  Nor does he allege the purportedly burdensome activities to get access to such documents that he references in his brief.  Instead, Plaintiff claims to have learned during discovery in this litigation, essentially by happenstance, about the absence of certain documents from the reading room that he alleges should have been there.  *See* 2d Am. Compl. ¶¶ 103–108 ("The corporate deposition further uncovered systemic violations of FOIA's reading room provisions.").  Standing doctrine does not permit Plaintiff to sue simply because he claims to have observed a violation of the law; he must have suffered a particularized injury to his own right to information.

As for mootness, Plaintiff elides the fact that producing a requested document ordinarily moots FOIA litigation.  *See* MTD at 12.  In order to avoid this principle, Plaintiff attempts to replead-through-briefing his reading room claim as a policy-or-practice claim, invoking an out-of-circuit case that found mootness avoided where FOIA violations were not "isolated" and were pursuant to an "alleged policy."  Opp'n at 12.  But here, Plaintiff has *not* plausibly alleged the existence of any policy or practice forming the basis of any alleged unlawful withholding of the

two documents he identifies in his complaint. Nor could he—the two documents come from different parts of DOJ, specifically the Office of Information Policy and DEA's FOIA office, respectively. *See* 2d Am. Compl. ¶¶ 101, 105. Plaintiff identifies no connection between these asserted withholdings or to any underlying policy that would sustain a policy-or-practice claim regarding Defendants' FOIA reading room. In sum, Defendants have produced the only two documents Plaintiff identified as missing from the reading room and there is nothing left for this Court to do on Plaintiff's reading room claim.

### III. Plaintiff Fails to State a Claim Under the First Amendment.

Plaintiff fails to state a claim under the First Amendment because "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) (plurality op.); *United States v. Brown*, 250 F.3d 907, 915 (5th Cir. 2001).

Plaintiff does not oppose, and thereby concedes, that there is no First Amendment right to information based on FOIA. Plaintiff instead contends that he has a general "right of access" to DEA administrative proceedings and that this right has been denied. *See* Opp'n at 13–16. But Plaintiff's claim runs aground on the fact that he has not identified any particular proceeding in which he was allegedly denied access to information or any injury he suffered as a result. *See* MTD at 14. Plaintiff cites paragraphs 109 to 119 of the Second Amended Complaint in his brief, but these paragraphs all contain generic grievances about the manner in which the agency operates, not any specific reference to Plaintiff's own experience being denied access to any agency proceeding. Plaintiff makes one reference to receiving a large fee quote in response to a FOIA request, 2d Am. Compl. at 32 n.64, but that is no help—as conceded, there is no First Amendment right to obtain documents under FOIA.

In any event, Plaintiff also expands First Amendment protections beyond the law of this Circuit. Although the Supreme Court has established the test for a constitutional "right of access to criminal trials and certain criminal proceedings," it has not established, and this Circuit has rejected, a First Amendment "right of access to records which are in the hands of an administrative agency." *See Calder v. IRS*, 890 F.2d 781, 783–84 (5th Cir. 1989). Plaintiff's attempt to expand the test for access to *judicial* proceedings to the context of *administrative* records is contrary to binding authority. Plaintiff fails to state a First Amendment claim.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Counts 3–9 of the Second Amended Complaint.

DATED: June 5, 2023            Respectfully Submitted,

ALAMDAR S. HAMDANI
United States Attorney

*s/Jimmy A. Rodriguez*
Jimmy A. Rodriguez
Assistant United States Attorney
Southern District of Texas
Attorney in Charge
Texas Bar No. 24037378
Federal ID No. 572175
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9532
Fax: (713) 718-3303
jimmy.rodriguez2@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ James Powers*

>James R. Powers
>Trial Attorney
>Civil Division, Federal Programs Branch
>U.S. Department of Justice
>Texas Bar No. 24092989
>1100 L Street, NW
>Washington, DC 20005
>Tel: (202) 353-0543
>James.r.powers@usdoj.gov
>
>ATTORNEYS FOR THE UNITED STATES

**CERTIFICATE OF WORD COUNT**

I certify that the foregoing document has 1937 words per Microsoft Word's word count feature.

>*s/ Jimmy A. Rodriguez*
>Jimmy A. Rodriguez
>Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I certify that on June 5, 2023, a true and correct copy of the foregoing was filed with the United States District Clerk for the Southern District of Texas and electronically served on all counsel of record via the District's ECF system.

>*s/ Jimmy A. Rodriguez*
>Jimmy A. Rodriguez
>Assistant United States Attorney