# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MATTHEW C. ZORN | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| MERRICK GARLAND, in his official capacity | § | |
| as U.S. Attorney General; VANITA GUPTA, in | § | |
| her official capacity as U.S. Associate Attorney | § | |
| General and Chief FOIA Officer of the U.S. | § | Civil Action No. 4:-22-cv-02396 |
| Department of Justice; BOBAK TALEBIAN, in | § | |
| his official capacity as the Director of the Office | § | |
| of Information Policy; ANNE MILGRAM, in | § | |
| her official capacity as Administrator of the | § | |
| U.S. Drug Enforcement Administration; U.S. | § | |
| DEPARTMENT OF JUSTICE; and U.S. DRUG | § | |
| ENFORCEMENT ADMINISTRATION, | § | |
| | § | |
| Defendants. | § | |

**THIRD AMENDED COMPLAINT FOR**
**DECLARATORY AND INJUNCTIVE RELIEF**

*FOIA for thee, but not for me.*

1.      This is an action to declare and enjoin unlawful Freedom of Information Act ("FOIA") policies and practices of the United States Department of Justice's ("DOJ," "Justice Department" or the "Department") and its component agency, the United States Drug Enforcement Administration ("DEA"). These unlawful policies and practices result in the abuse and unlawful diversion of legitimate FOIA requests, allow justice to meted out in secret, and have stripped DOJ and DEA of accountability.

2.      On March 14, 2022, United States Attorney General Merrick Garland, released a memorandum (the "Garland Memo")[1] to all federal agencies. The Garland Memo establishes principles for agencies to follow in responding to FOIA requests. Among other things, it emphasizes the presumption of openness, that "[t]imely disclosure of records is also essential to the core purpose of FOIA," and that "[a]gencies must have effective systems in place for responding to requests in a timely manner." According to the Garland Memo, "[t]ransparency in government operations is a priority of this Administration and this Department."

3.      As this lawsuit shows, however, these aspirational remarks are window dressing for a cesspool of DOJ FOIA violations.

4.      This case began as an action to enjoin a preposterous DOJ policy of categorizing all but a scintilla of FOIA requests as raising "unusual circumstances." The "unusual circumstances exception" described in 5 U.S.C. § 552(a)(6)(B)(iii) permits agencies to defer responding to requests according to statutory timelines "only to the extent reasonably necessary to the proper processing of the particular requests" when there is a need to search for and collect records "from field facilities or other establishments that are separate from the office processing the request."

---

[1]  https://www.justice.gov/ag/page/file/1483516/download

5.      Department-wide, DOJ has formulated and adopted an unlawful secret policy of invoking the exception any time a FOIA processing office must look to any other office within the same component. As a result, according to this Justice Department policy, nearly all FOIA requests raise "unusual circumstances," and agencies never have to obey FOIA's statutory time limits.

6.      Moreover, at the corporate deposition, DOJ/DEA attested to the existence, adoption, and implementation of other serious improprieties, including:

a.  DEA's Chief FOIA Officer does not lawfully occupy her office because she is not at the Assistant Secretary or equivalent level as required by statute.

b.  DEA and DOJ have FOIA policies, interpretations, and staff manuals subject to FOIA's affirmative disclosure provisions that are not made available for public inspection in an electronic format, as FOIA requires.

c.  DEA's recordkeeping practices for administrative proceedings systematically deprive litigants, journalists, and the public of timely access to records created during and relevant to DEA administrative hearings.

d.  DOJ has an unlawful default policy of redacting the names and e-mail addresses of public servants when they appear in records requested distributed to the public in response to FOIA requests.

7.      Plaintiff seeks a declaratory judgment that Defendants have willfully violated FOIA, the Administrative Procedure Act, and the United States Constitution; and they seek injunctive relief to ensure that DOJ and its components obey a law they say is essential to democratic functioning.

## PARTIES AND STANDING

8.      Plaintiff **Matthew C. Zorn** is an attorney whose residence and principal place of business are in this District. Zorn regularly works with clients in the controlled substances space and has active matters pending before DEA. Zorn is also a journalist who publishes essays and articles on controlled substances. He intends to continue to use FOIA to seek government documents related to drug policy to facilitate his work as an attorney and journalist.

9.      Defendant **Merrick Garland** is the U.S. Attorney General and Head of the U.S. Department of Justice.

10.     Defendant **Vanita Gupta** is the Associate Attorney General. She also serves as DOJ's Chief FOIA Officer and is "at the Assistant Secretary level or equivalent level." 5 U.S.C. § 552(j)(1). As DOJ's Chief FOIA Officer, she is responsible for DOJ's efficient and appropriate compliance with FOIA, monitoring DOJ's implementation of and compliance with FOIA, reviewing and reporting DOJ's performance in implementing FOIA, and recommending to the Attorney General adjustments in FOIA practices, policies, and personnel.

11.     Defendant **Bobak Talebian** is the Director of the Office of Information Policy ("OIP") at DOJ. Appointed by the Attorney General, the Director of OIP develops, coordinates, and implements FOIA policy, including publishing guidance and other material related to FOIA matters, and provides legal assistance and advice to government agencies and Justice Department components on questions regarding the interpretation and application of FOIA.

12.     Defendant **Anne Milgram** is the DEA Administrator. She is responsible for DEA's compliance with federal laws and regulations, including those at issue in this case.

13.     **DOJ** is an agency within the meaning of 5 U.S.C. § 552(f) and the parent department to DEA.

14.     **DEA** is an agency within the meaning of 5 U.S.C. § 552(f) and a component of DOJ.

### JURISDICTION AND VENUE

15.     This action arises under the laws and Constitution of the United States. The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

16.     Venue is appropriate in this District. 28 U.S.C. § 1391(e).

## FACTS GIVING RISE TO THIS ACTION

## FOIA Background

17.     Congress enacted FOIA in 1966 "to pierce the veil of administrative secrecy and to

open agency action to the light of public scrutiny."[2] Corruption, government inefficiency, and

mistrust of public institutions all flourish "unless the people are permitted to know what their

government is up to."[3]

18.     Signing FOIA into law in July 1966, President Johnson declared:

This legislation springs from one of our most essential principles: A democracy
works best when the people have all the information that the security of the Nation
permits. No one should be able to pull curtains of secrecy around decisions which
can be revealed without injury to the public interest.[4]

19.     Following President Johnson's statement, Attorney General Ramsey Clark would

add his own sentiments:

If government is to be truly of, by, and for the people, the people must know in detail the
activities of government. Nothing so diminishes democracy as secrecy. Self-government,
the maximum participation of the citizenry in affairs of state, is meaningful only with an
informed public. How can we govern ourselves if we know not how we govern? Never was
it more important than in our times of mass society, when government affects each
individual in so many ways, that the right of the people to know the actions of their
government be secure.[5]

20.     More than 60 years later, the current Justice Department has echoed these views.

In his first full week in office, Defendant Attorney General Garland stated: "Without

accountability, democracy is impossible. And democratic accountability requires the kind of

---

[2]     *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (quot. omitted)).

[3]     *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772-73 (1989) (quot.
omitted).

[4]     https://www.justice.gov/oip/attorney-generals-memorandum-public-information-section-
administrative-procedure-act

[5]     https://www.justice.gov/oip/attorney-generals-memorandum-public-information-section-
administrative-procedure-act

transparency that the FOIA makes possible." "That is why faithful administration of FOIA is essential to American democracy." Months later, in November 2021, Defendant Gupta repeated the Attorney General's sentiments:

> At the Department of Justice, we take very seriously our responsibility of transparency and accountability through faithful compliance with the Freedom of Information Act. In his first week in office, Attorney General Garland recognized the importance of the mission of FOIA at the Department of Justice's Annual Sunshine Week Event. The Attorney General noted that, "without accountability, democracy is impossible. And democratic accountability requires the kind of transparency that the FOIA makes possible."[6]

21.     In the same remarks, Gupta added that as someone who used FOIA in roles outside of government, she knows "how important the Act is for government accountability" and that "[a]t its core, FOIA is about public trust: trust that those who are charged with faithfully executing the laws are in fact doing so with integrity and in the public's interest."

22.     One year later, in a statement to Congress, Defendant Talebian would claim, among other things, that the Garland Memo "underscore[s] the federal government's commitments to transparency in government operations and the fair and effective administration of the FOIA" and reminds "agencies to comply with both the words and the spirit of FOIA."[7]

23.     These lofty statements from current high-ranking Justice Department officials suggest to us that DOJ and its components are not a cabal; they do not operate in secret; their business is the public's business; and they serve the people and their representatives—and not just moneyed interests that have connections within agencies and therefore do not need to resort to the FOIA to get information related to pending matters.

24.     Too bad it's all hogwash.

---

[6]     https://www.justice.gov/opa/speech/associate-attorney-general-vanita-gupta-delivers-remarks-chief-foia-officers-council

[7]     https://www.judiciary.senate.gov/imo/media/doc/Talebian%20testimony.pdf

**AIMS Institute Seeks DEA Guidance Regarding Federal Right to Try**

25.     AIMS is an integrative oncology clinic that provides care to persons with advanced illness, including end-stage cancer. Many of these persons suffer from debilitating anxiety and depression. To mitigate patients' anxiety and depression, AIMS uses a variety of treatment modalities, including ketamine-assisted psychotherapy. Some patients, however, do not respond to therapy with conventional or even cutting-edge and somewhat-unconventional medications or modalities. Left untreated, this anxiety and depression can accelerate illness, reducing patients' already-short time to live and robbing them of peace and comfort in their final days.

26.     Dr. Aggarwal has closely followed ongoing clinical trials studying the investigational drug psilocybin as a tool for the relief of anxiety and depression in patients with life-threatening illnesses. Psilocybin has proven safe and effective in relieving anxiety and depression in this patient population. Indeed, clinical trials have shown that the relief provided is immediate, substantial, and sustained. In 2020, Dr. Aggarwal formed the professional medical opinion that at least some of his patients with advanced-stage cancer would benefit from access to psilocybin therapy and began looking for a legal way to facilitate that access.

27.     AIMS and Dr. Aggarwal, on advice of counsel, believe that state and federal Right-to-Try ("RTT") laws permit access to psilocybin for therapeutic use with terminally ill patients suffering debilitating anxiety and depression under certain conditions.

28.     In October 2020, Dr. Aggarwal and AIMS retained Kathryn Tucker[8] to interface with DEA on accessing psilocybin for therapeutic use with terminally ill patients under state and federal RTT laws. Months later, Tucker submitted a letter on behalf of Dr. Aggarwal and AIMS

---

[8]   Tucker, Aggarwal, and AIMS were previously Plaintiffs in this action. Zorn, along with Tucker, represented AIMS and Aggarwal in *AIMS v. Garland*, and he currently represents AIMS and Aggarwal in proceedings currently pending before the Ninth Circuit along with Tucker.

to DEA's Regulatory Section. The letter provided background information about RTT and requested guidance regarding how DEA would accommodate Dr. Aggarwal's and AIMS's request for access to psilocybin for therapeutic use with their terminally ill patients under RTT. Tucker followed up with the agency via e-mail on February 2nd and inquired whether, as an alternative solution, the agency might grant Dr. Aggarwal and AIMS an exemption from prosecution.

29.     DEA responded in a February 12th letter that disclaimed any authority to entertain a request for access. Dr. Aggarwal, two of his terminally ill patients, and AIMS sought judicial review of that determination. In response, the agency argued that its letter to Tucker was not final agency action subject to judicial review and sought dismissal of the case for lack of jurisdiction. And, to encourage dismissal, DEA invited petitioners "to petition the agency for a rescheduling."

30.     The Ninth Circuit accelerated the petition for review and held oral argument in September 2021. On January 31, 2022, the Ninth Circuit dismissed the petition on jurisdictional grounds as DEA requested, holding that DEA's response to the Tucker letter did not constitute final agency action subject to judicial review. *AIMS v. Garland*, 24 F.4th 1249 (9th Cir. 2022). The court did not reach the merits.

**Plaintiff Petition DEA for Final Agency Action**

31.     Days after the Ninth Circuit's decision in *AIMS v. Garland*, Dr. Aggarwal and AIMS submitted two administrative petitions to DEA requesting a final appealable decision on the merits. First, on February 2, 2022, Dr. Aggarwal and AIMS petitioned DEA to initiate proceedings to reschedule psilocybin from Schedule I to Schedule II—just as the agency had suggested in the Ninth Circuit litigation in arguing for dismissal. Second, Dr. Aggarwal and AIMS petitioned DEA for a waiver of or exemption from the CSA's registration requirements.  Repeating many of the arguments they had made nearly a year ago in *AIMS v. Garland*, Dr. Aggarwal and AIMS sought

a waiver or exemption from the agency so they could access psilocybin for therapeutic use with their terminally ill patients under RTT.

32.     More than four months passed without the agency accepting the petitions for filing or even confirming that it had received them.

33.     Concerned DEA was slow walking the processing of its petitions, AIMS sent a letter to Defendant Milgram on April 13th, explaining that more than two months had passed, and the agency had "not informed Petitioners whether their petition has been accepted for filing." The April 13th letter identifies that under DEA regulations applicable at the time, "[w]ithin a reasonable period of time after receipt" of a rescheduling petition, the Administrator "shall notify the petitioner of his acceptance or nonacceptance of the petition, and if not accepted, the reason therefor." 21 C.F.R. § 1308.43. AIMS further noted that in the past, accepting petitions never took more than two months. DEA did not respond to the April 13th letter.

**Plaintiff Turn to FOIA For Information and Transparency**

34.     Unable to confirm that DEA had accepted or even received either of their petitions—and without connections to DEA senior officials[9]—AIMS turned to FOIA.

35.     On March 31, 2022, Tucker, on behalf of AIMS and Dr. Aggarwal, sent targeted requests via e-mail (the "AIMS FOIA Request") to confirm that the agency had received the petitions and to understand if it had commenced a decision-making process.

36.     The AIMS FOIA request is both narrow in scope and time limited. AIMS and Dr. Aggarwal requested all copies of records, documents, communications, and e-mails related to (1) the rulemaking petition regarding "Rulemaking petition to reclassify psilocybin from a schedule I

---

[9]   If AIMS had such connections, a more logical and efficient way to have confirmed receipt would have been to pick up the phone, as better-endowed and connected companies regularly do.

controlled substance to a Schedule II controlled substance" dated February 2, 2022, and (2) the request for waiver regarding "Access to Psilocybin for Limited Therapeutic Use Under State and Federal Right to Try Laws" dated February 10, 2022. They further limit their request to records created after February 1, 2022.

37.    FOIA's 20-day limit for agencies to respond to such requests passed without AIMS and Dr. Aggarwal hearing from DEA. Accordingly, on May 2, 2022, Tucker followed up via e-mail, stating "per below, a FOIA request was submitted on 3/31, generating the reply send from DEA offices on that same date. More than 20 business days have elapsed, and we have yet to receive any reply. Can you advise status?"

38.    This May 2nd e-mail prompted DEA to send AIMS and Dr. Aggarwal a boilerplate e-mail confirming receipt of the AIMS FOIA Request, advising them that DEA considered the targeted request to raise "unusual circumstances," and deeming it "complex." According to DEA, the AIMS FOIA Request raised "unusual circumstances" because it required a search of another office; and because the AIMS FOIA Request was allegedly "complex," the agency advised that it would take more than a month to respond even though DEA had not yet confirmed whether any documents within the scope of the request existed:

> The records you seek require searches in another office or offices, and so your request falls within "unusual circumstances." *See* 5 U.S.C. § 552(a)(6)(B)(i)-(iii). Because of these unusual circumstances, we are extending the time limit to respond to your request beyond the ten additional days provided by the statute. We have not yet completed a search to determine whether there are records within the scope of your request. The time needed to process your request will necessarily depend on the complexity of our records search and on the volume and complexity of any records located. For your information, this office assigns incoming requests to one of three tracks: simple, complex, or expedited. Each request is then handled on a first-in, first-out basis in relation to other requests in the same track. Simple requests usually receive a response in approximately one month, whereas complex requests necessarily take longer. At this time, your request has been assigned to the complex track. You may wish to narrow the scope of your request to limit the number of potentially responsive records or agree to an alternative time frame for processing,

should records be located; or you may wish to await the completion of our records search to discuss either of these options.

39.     On May 31, 2022, Tucker submitted a follow-up FOIA request for "All records related to the receipt and processing of [the AIMS FOIA Request]. (February 1, 2022, and the present)." These records would, of course, be located within the FOIA office processing the request and thus would not be subject to DEA's unlawful policy and pattern or practice. DEA did not timely provide a response to this follow-up FOIA request.

40.     On June 2nd, Tucker reached out to DOJ's counsel in *AIMS v. Garland.* She explained DEA's "lack of any response to either of our submittals." Tucker also explained that she had filed a FOIA request to determine what had happened to AIMS's and Dr. Aggarwal's petitions. Finally, she explained that, despite its limited nature, DEA had categorized this request as "complex" and therefore not subject to FOIA's timing requirements. DOJ's counsel responded that he would follow up with DEA.

41.     On June 14th, Tucker reached out to DOJ's counsel in *AIMS* again. The next day, DOJ's counsel confirmed that he had consulted with DEA and understood that the agency had received AIMS's and Dr. Aggarwal's petitions and that they were "currently under review." Yet, three months after the FOIA request, DEA had not responded—not even to confirm that it possessed the requested documents.

42.     DEA finally responded to Tucker's follow-up FOIA request in July 2022, notifying her that it administratively closed the request for processing notes because the agency was still processing the AIMS FOIA Request.

43.     On August 26, 2022, (after this lawsuit had already been filed) DEA reconsidered its position on the processing notes request.

## **Zorn Uncovers the Secret, Unlawful "Unusual Circumstances" Policy**

44.     Apart from his representation of AIMS, Zorn represents other clients in matters before DEA. He also regularly writes stories and news pieces on drug policy history and current events. In his capacity as an attorney and journalist, he relies on FOIA for disclosure from DEA.

45.     Plaintiff Zorn has submitted FOIA requests[10] to DEA. DEA tagged each as raising "unusual circumstances," including one request that sought e-mails involving a single person and five obscure search terms. No request—not even one seeking a *single judicial record*—escaped automatic categorization as raising "unusual circumstances," and none prompted DEA to include even an estimated timeline for response. For example, on April 22, 2022, Zorn requested:

> A copy of the transcript of proceedings of the January 28 through January 30, 1975, hearing before Administrative Law Judge (ALJ) Parker. *See* 40 Fed. Reg. 44163 at 44164 (Sept. 25, 1975). (Date Range for Record Search: From 01/01/1975 To 01/30/1975)

On April 28, 2022, the agency claimed this request (number 22-00563-F) for a single transcript raised "unusual circumstances," deemed it "complex," and advised that a response would "necessarily take longer" than a month.

46.     Zorn also made FOIA requests on behalf of clients in an administrative rulemaking proceeding before DEA. On April 4th, Zorn submitted a FOIA request (request number 22-00488-F) seeking records that DEA relied on for a technical analysis published in the Federal Register supporting the placement of five chemicals into Schedule I. The technical analysis cites and relies on over two dozen unpublished drug discrimination studies done under a government contract:

---

[10]   Requests No. 22-00488-F, 22-00560-F, 22-00563-F, 22-000577-F, 22-00580-F, 22-00585-F, 22-00806-F, 22-00845-F, 22-01012-F, 23-00213-F. Since the filing of the lawsuit, DEA has resolved some of these requests. In a few cases, no responsive records existed. Today, DEA notified Zorn that it will produce records in response to 22-01012-F.

Elsken C and Forster MJ (2006a). 4-Hydroxy-N,N-diisopropyltryptamine HCl: Time course (8-h) mouse locomotor activity test. Contract No. N01DA-2-8822.

Elsken C and Forster MJ (2006b). 5-Methoxy-alpha-methyltryptamine HCl: Time course (8-h) mouse locomotor activity test. Contract No. N01DA-2-8822.

47.     To inform his advocacy, Zorn requested the referenced studies:

The Spokane Medical Examiner's Office report discussed on page 14 of the DEA Report; copies of all non-book references cited on pages 22 to 28 of the DEA Report. 3; copies of the data review document sent to the Assistant Secretary for Health and Human Services (HHS) related to the Five Tryptamines discussed on page 2 of the DEA Report; for each of the Five Tryptamines, all documents relating to drug seizures, medical reports, and anecdotal reports relied on in the HHS Evaluations or DEA Report; all copies of communications or documents showing that "DEA has confirmed with HHS that their 2012 statements are still applicable" in the DEA Report on page 5; and all documents and evidence discussed on page 17 (Factor 4) or page 18 (Date Range for Record Search: From 1/1/2008 To 1/16/2022).

48.     These requested records were not difficult for DEA to locate access. They were in DEA's rulemaking file.

49.     Moreover, in an April 4th e-mail to DEA's FOIA liaison, DEA.FOIA@dea.gov, Zorn notified the agency that he needed the records for an ongoing administrative proceeding against DEA and ***specifically identified agency counsel who had possession, custody, or control of the records***. Zorn copied that counsel on the communication. In other words, Zorn told the agency exactly where to go to retrieve the records. Collecting and producing these records, which DEA had already collected as part of a public administrative process, could not reasonably have taken more than several days. Notwithstanding Zorn's assistance, on April 15, 2022, the agency marked the request as raising "unusual circumstances" and delayed.

50.     Confused as to how the agency deemed every FOIA request as raising "unusual circumstances," including those described above, Zorn called DEA's FOIA officer on May 11th— the same day he received three separate notices marking requests as raising "unusual

circumstances"—to inquire about the agency's process. The FOIA officer explained that it was "DEA policy" to mark *all* incoming FOIA requests that required contacting any office within DEA other than the FOIA office as raising "unusual circumstances." In other words, if a request seeks any record that isn't coincidentally in the processing office itself, DEA deems it per se "unusual" and "complex."

51.     What's more, on information and belief, DEA had collected the records responsive to Zorn's April 4th request by not later than March 28th. In the course of representing his clients in the ongoing administrative rulemaking proceeding, Zorn eventually received redacted versions of the documents he had requested under FOIA. Metadata from that disclosure shows that by *March 28, 2022*, DEA had collected most of the requested documents.

52.     Zorn followed up with agency counsel to confirm receipt of the agency's disclosure and raise concerns about the technical papers the agency had not produced. Zorn then reminded the agency that he currently "ha[s] outstanding FOIA requests for these exact documents. Unless the redacted information falls within a FOIA exemption, the redaction is improper."

53.     The very next morning, DEA remitted a letter to Zorn informing him that a search for the records (most of which DEA had already produced to him) had been completed. The letter decision informs Zorn that to process his request, Zorn would need to send the agency *$6,800.00* by check or money order up-front in advance for review time, which includes "processing any records for disclosure" such as "redacting the records and asserting the appropriate FOIA exemption." In other words, the agency demanded that Zorn pay thousands of dollars for a set of records nearly *identical to those the agency had just disclosed to Zorn a week earlier in the context of the pending administrative proceeding*. DEA emphasized that it would be unable to continue processing the request until Zorn agreed to pay the fee.

54. Zorn called the number for the FOIA representative to alert him to the situation. Rather than receive a representative, he twice received the message: "Your call could not be completed as dialed. Please check the number and dial again." The line then promptly disconnected. Zorn then called the FOIA Public Liaison twice. Both calls went to voicemail.

55. On April 29, 2022, Zorn submitted a FOIA request (number 22-00577-F) seeking the government contracts underlying the drug discrimination studies that DEA cited in the ongoing administrative rulemaking proceeding. On May 11, 2022, that request, too, was deemed to raise "unusual circumstances" and labeled "complex."

56. As yet another example of DEA's policy and pattern or practice of flagrant FOIA abuse, on July 9, 2022, Zorn submitted a FOIA request (number 22-00845-F) seeking *one* publicly presented DEA poster and *one* seminar presentation made by a DEA official. In his request, Zorn identified the specific custodian of the records:

- Carbonaro TM, (2021) Evaluating Drug Abuse Liability: Applying Pharmacology Data to Drug Scheduling Actions. Oral Presentation at University of Arkansas for Medical Sciences. (Seminar presentation)

- Carbonaro TM, Tella SR, Boos TL (2022). The Controlled Substances Act Regulations on schedule I researcher registrations and the need to investigate new substances of abuse. Poster to be presented at 84th annual College on Problems of Drug Dependence Meeting.

57. Based on its past practices, Zorn anticipated that DEA would unlawfully mark this simple FOIA request as unusual and complex to evade the statute's time limits. He therefore attempted to preempt DEA's inevitable invocation of its unlawful policy and pattern or practice by adding the following to the body of the FOIA request:

Teresa Carbonaro has these records. They are two documents. This request is not complex and does not raise unusual circumstances. I need these documents for a hearing.[11]

58.     Nonetheless—and perhaps unsurprisingly—on July 12, 2022, DEA responded that Zorn's request, which sought a mere **two documents,** was "complex" and raised "unusual circumstances." Illustrating that the request had not raised "unusual circumstances" and certainly was not "complex," DEA recently responded to the request *and* produced the records to Zorn—a mere 46 pages—on August 9, 2022.

### The Structure and Operation of DEA's FOIA Office

59.     DOJ has a decentralized system for responding to FOIA requests, with each component designating a FOIA office to process records from that component.[12] A DOJ component is a separate bureau, office, division, commission, service, center, or administration that is designated by DOJ as a primary organizational entity.[13] DEA is a DOJ component.

---

[11]    Zorn tried, without success, to obtain these public records within the rulemaking proceedings. DEA refused to disclose these types of records (such as DEA contracts with scientists conducting the underlying technical studies), and the presiding ALJ refused to order further disclosure. Notably, FOIA is the *preferred* discovery tool for formal rulemaking. Charles H. Koch Jr., *Discovery in Rulemaking*, 1977 Duke L.J. 295 at 330 (1977) ("[I]f a rulemaking participant desires information contained in a government file, the FOIA may be the best available discovery tool."). The purpose of the FOIA's time limits is to permit "*prompt* access to agency files," to facilitate public access to agency records in (among other contexts) adjudications and hearings. And while DEA ultimately withdrew the proposed rule in July 2022, Zorn's inability to obtain timely disclosure of the requested records through FOIA or the proceeding themselves is highly consequential. The requested records would have shed light on agency misconduct in attempting to criminalize research chemicals without first consulting FDA for a current medical and scientific evaluation and scheduling recommendation, as required by statute. *See* 21 U.S.C. §§ 811(b), (c).

[12]    28 C.F.R. § 16.3(a)(1).

[13]    28 C.F.R. § 16.1(b).

60.     All components "have the capability to receive requests electronically either through email or a web portal."[14]

61.     By statute, each agency, including DEA, "shall designate a Chief FOIA Officer who shall be a senior official of such agency (at the Assistant Secretary or equivalent level)."[15]

62.     Since March 2017, Kelleigh Miller has served as DEA's Chief FOIA Officer.[16] As DEA's Chief FOIA Officer, Ms. Miller oversees the implementation of FOIA and the Privacy Act. The duties of an agency's Chief FOIA Officer are prescribed by statute.

63.     DEA's FOIA Office is part of the Office of Chief Counsel.[17]

64.     Ms. Miller is not a senior DEA official or even a senior official within the Office of Chief Counsel. Ms. Miller reports to Brooke DuBois, the DEA Section Chief of the FOIA and Information Law Section at DEA. Ms. DuBois reports to Sandra Stevens, DEA Deputy Chief Counsel. Ms. Stevens reports to Hallie Hoffman, DEA Chief Counsel. Ms. Hoffman reports to Administrator Milgram.[18] Ms. Miller, DEA's Chief FOIA Officer, does not interface with Administrator Milgram, except through this chain of command.[19]

65.     Neither does she interface with DOJ's Chief FOIA Officer, Defendant Gupta. Indeed, on behalf of DOJ/DEA, she testified that she did not know Gupta's name because she

---

[14]   28 C.F.R. § 16.3(a)(1). In April 2022, DEA began informing requestors that it "will no longer accept FOIA/PA requests via e-mail."[14]

[15]   5 U.S.C. § 552(j)(1).

[16]   Dkt. 28-2, Deposition Transcript of Kelleigh Miller as 30(b)(6) Designee for the DOJ and DEA at 24. Citations to Ex. 1 are noted in the form "Dep. [page]." Although specific portions of the deposition transcript are cited herein, its entirety is incorporated by reference.

[17]   Dep. 27.

[18]   Dep. 27, 29.

[19]   Dep. 34.

doesn't have "any interaction with that individual."[20] Ms. Miller does have significant interaction with OIP, which is "essentially the FOIA office for DOJ."[21]

66.    DEA's FOIA Office has three sub-units: intake, processing, and legal/external affairs.

67.    Whenever DEA's FOIA Office receives a request, it drafts a search memo and sends that memo to the other sections of DEA that have the records.[22]

68.    The DEA FOIA Office does not determine what records are responsive. Other DEA sections do.[23]

69.    OIP, supervised by Director Talebian, handles all administrative FOIA appeals from DEA.[24] Director Talebian's decision on an appeal is the final word within the Executive Branch before judicial review.

70.    Before DEA undertakes review, it assesses review fees. Review fees are only charged to commercial use requests, which are requests where there is a "profit interest in the records sought."[25] DEA then charges $40 per hour for review at a rate of 7 minutes per page.[26] The seven minute per page number was developed by DEA's Chief FOIA Officer and three other individuals that "sat together and talked through" the issue based solely on their collective experience.[27] There is no empirical or analytical method backing the figure.

---

[20]  Dep. 36.

[21]  Dep. 36.

[22]  Dep. 98-99, 107.

[23]  Dep. 99.

[24]  Dep. 37; 28 C.F.R., Part 0, Subpart D-3; 28 C.F.R. § 16.8.

[25]  Dep. 125, 200.

[26]  Dep. 129.

[27]  Dep. 129-30.

71.     Run-of-the-mill FOIA requests go through multiple layers of review. The initial review is done by a government information specialist. Second-level review is done by a manager or supervisor, whose time is estimated to be at 80% of the initial reviewer time. The manager goes through the document to the exact same extent as the initial reviewer, reading every page and line.[28] The only difference between the manager review and initial review is that the manager does not do initial processing.

72.     To summarize, DEA estimates fees by multiplying $40 by 7 minutes per page and then nearly doubles that amount to account for a supervisor's review, which largely overlaps with the initial review. Nearly 45% of the cost goes to quality control. This estimate assumes and charges for the notion that FOIA reviewers must read every page and line.[29]

73.     Requests are generally placed in one of three tracks: simple, complex, and expedited. Within these tracks, request are handled on a first-in-first out basis.[30] Requests with more than 20-pages will generally be deemed complex.[31]

74.     DEA has complex requests from 2018 and 2019 that are still open.[32] As a result, any request today for more than 20-pages of records will likely take at least 2 years to process.

**The Unlawful DOJ "Unusual Circumstances" Policy**

75.     "Any time" a request requires searching for or collecting records outside the FOIA Office, DEA deems it to raise "unusual circumstances."[33] At DEA, the unusual circumstances

---

[28]   Dep. 133.

[29]   Dep. 197-200.

[30]   Dep. 105-106.

[31]   Dep. 168, 186-87.

[32]   Dep. 164-65.

[33]   Dep. 57-58.

determination is made by the intake unit, upon receipt of a request.[34] If even one document of a request might reside outside the FOIA Office, according to DOJ/DEA, the exception applies.[35]

76.     The "unusual circumstances" exception is codified at 5 U.S.C. § 552(a)(6)(B)(iii). It applies only "to the extent reasonably necessary to the proper processing of the particular requests." Relevant here, the first prong of the exception is when there is a "need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request."

77.     Under DOJ's unlawful "unusual circumstances" policy, virtually all FOIA requests fielded by DEA involve "unusual circumstances" under the first prong. For example, according to DOJ/DEA, a requested record moved from the FOIA office "across the hallway" about "ten feet away" raises unusual circumstances.[36] Requested records that can be transmitted electronically but do not appear in the FOIAXpress system also raise "unusual circumstances."[37] A request for e-mails contained on a centralized, single server that has all agency data raises "unusual circumstances."[38]

78.     Indeed, the DEA FOIA office does not have access to nearly any agency record one would want to request. Other than records generated by the FOIA office itself, DEA's FOIA Office has access only to records that have been previously requested and are kept in its FOIAXpress

---

[34]  Dep. 103, 108-09.

[35]  Dep. 103-04.

[36]  Dep. 70-71.

[37]  Dep. 72-74.

[38]  Dep. 231.

system. This is rare. It happens only when a requestor seeks records that in response to a prior request that exactly matches in scope and time-period.[39]

79.     This is because of how DEA keeps its records. The FOIA Office itself is devoid of nearly any DEA records, and DEA denies the FOIA Office access to records held in other sections. It does not have access to the "hundreds of IT systems that DEA uses."[40]

80.     This is not because of some technological or bureaucratic impossibility, either. DEA's IT office searches e-mails rather easily.[41] Rather, it is because of the unlawful policy. Despite the fact that the FOIA Office and IT office interact regularly,[42] under the unusual circumstances policy, DEA treats its Information Systems Division as an "establishment" separate from the FOIA section.

81.     Under the policy, nothing restricts an agency from staffing a FOIA Office (perhaps in Montana), giving it access to no records, and invoking unusual circumstances in response to every request to avoid having to produce a response according to statutory deadlines. Indeed, in effect, that is what DEA does.

82.     Put another way, since the DEA FOIA Office does not have "access" to any agency records other than those previously requested, the "unusual circumstances" policy all but guarantees that any time a requestor makes a FOIA request for a record that has not been previously requested, it necessarily raises unusual circumstances. Thus, under the unlawful DOJ/DEA policy, "unusual circumstances" applies in nearly all circumstances.

---

[39]   Dep. 63.

[40]   Dep. 59-60, 75-76.

[41]   Dep. 99, 231-34.

[42]   Dep. 237.

83.     This policy applies "Department-wide."[43] And while DOJ/DEA testified that the "unusual circumstances" policy is publicly disclosed in 28 CFR part 16 or DOJ Regulations,[44] Plaintiff is aware of no regulation or publicly available document that describes the policy, other than regulations that incorporate the meaning of "unusual circumstances" as defined in the FOIA statute. Because none of this detail follows sensibly from the statutory or regulatory text, however, this is a secret policy.

84.     After the filing of this lawsuit, DEA's Chief FOIA Officer discussed the unusual circumstances policy with OIP. OIP confirmed that the DEA policy is DOJ's interpretation and policy.[45]

### Violation of the Chief FOIA Officer Statute

85.     5 U.S.C. § 552(j) reflects Congress's will to enhance accountability under FOIA by ensuring that all agency Chief FOIA Officers be at the "Assistant Secretary or equivalent level." This means Chief FOIA Officers must be inferior Officers of the United States, i.e., "officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate."[46]

86.     This statutory requirement is important. By ensuring that agencies designate employees who are sufficiently senior that they will be directed and supervised by appointed

---

[43]   Dep. 77.

[44]   Dep. 68-69, 76-77. DOJ/DEA claims that 28 C.F.R., part 16 "defines unusual circumstances." It does not. 28 C.F.R. § 16.5(c) merely applies the meaning of unusual circumstances "as defined by the FOIA." When asked how the non-existent regulation defines "unusual circumstances," DOJ/DEA testified that the prong it primarily invokes is "any time that we need to search for records that are physically outside of our own office, we would invoke unusual circumstances." Dep. 68. Plaintiff has not found this elucidation in DOJ's FOIA regulations.

[45] Dep. 77, 122-124.

[46]   *Edmond v. United States*, 520 U.S. 651, 663 (1997).

officials, Congress injected a modicum of democratic accountability into an otherwise detached bureacratic system to ensure that agencies would take their FOIA issues and responsibilities seriously and not relegate them to the backburner of the federal administration.

87.     On information and belief, DOJ's Office of Legal Counsel ("OLC") rendered an informal opinion that 5 U.S.C. § 552(j) requires that, at minimum, Chief FOIA Officers qualify as inferior Officers of the United States.

88.     In recognition the requirement, DOJ designated Defendant Associate Attorney General Gupta as its Chief FOIA Officer.

89.     In January 2019, the Principal Deputy Attorney General sent a memorandum (the "2019 Compliance Memorandum") to the General Counsel of every federal agency and the Chief FOIA Officers of Executive Departments and Agencies, to remind them of this statutory command. Citing the statute, the Principal Deputy explained that the Act directs that designated Chief FOIA Officers "shall be a senior official of such agency (at the Assistant Secretary or equivalent level)." It further explains that "a proper exercise of the oversight role assigned to a Chief FOIA Officer requires appropriate authority and accountability."



**U. S. Department of Justice**

Office of the Associate Attorney General

---

Deputy Associate Attorney General                      *Washington, D.C. 20530*

January 30, 2019

MEMORANDUM FOR:          AGENCY GENERAL COUNSELS AND CHIEF FOIA
                         OFFICERS OF EXECUTIVE DEPARTMENTS AND
                         AGENCIES

CC:                      COUNSEL TO THE PRESIDENT

FROM:                    THE PRINCIPAL DEPUTY ASSOCIATE ATTORNEY
                         GENERAL

SUBJECT:                 Chief FOIA Officer Designations

The Freedom of Information Act requires agencies to designate a Chief FOIA Officer who is
charged with "agency-wide responsibility for efficient and appropriate compliance" with the Act.
5 U.S.C. § 552(j)(2)(A) (2012 & Supp. V 2017).  The Act directs that these Chief FOIA Officers
"shall be a senior official of such agency (at the Assistant Secretary or equivalent level)."  *Id.*
§ (j)(1).  In keeping with that statutory mandate, the Associate Attorney General has served as the
Chief FOIA Officer for the Department of Justice.

The Department of Justice has long maintained that "[i]mproving FOIA performance requires the
active participation of agency Chief FOIA Officers."  Department of Justice FOIA Guidelines, 74
Fed. Reg. 51879 (Oct. 8, 2009).  Experience has proven that a proper exercise of the oversight role
assigned to a Chief FOIA Officer requires appropriate authority and accountability.  Accordingly,
I respectfully request that each agency review its Chief FOIA Officer designation and make any
necessary adjustments to ensure that the designated official is at the Assistant Secretary level or
its equivalent, as required by the Freedom of Information Act.  The Department of Justice will
require agencies to report whether their designations meet this statutory requirement in their 2019
Chief FOIA Officer Reports.

If you have questions about the administration of the FOIA, please contact the Office of
Information Policy at DOJ.OIP.FOIA@usdoj.gov.

This memorandum is not intended to, and does not, create any right or benefit, substantive or
procedural, enforceable at law or equity by any party against the United States, its departments,
agencies, instrumentalities or entities, its officers, employees, agents, or any other person.

90.     Following this memorandum, DOJ and OIP required agencies in their Chief FOIA

Officer Reports to respond to a slate of questions. This was the very first question in the survey:

The FOIA requires each agency to designate a Chief FOIA Officer who is a senior official at least at the Assistant Secretary or equivalent level. Is your agency's Chief FOIA Officer at or above this level?[47]

91.     Many agencies understand this important requirement and have designated senior officials as their Chief FOIA Officers. In FY 2019, for example, the EPA and FCC designated their General Counsels as Chief FOIA Officer.[48]

92.     The following exchange suggests that, in classic "do as I say, not as I do" fashion, DOJ and its components operate under a different set of rules:

Q.  And the chief FOIA officer of DEA is you, Ms. Kelleigh Miller, correct?
A.  Correct.
Q.  And we can agree that the Drug Enforcement Administration is an agency, correct?
A.  It is.
Q.  So in (j)(2), the chief FOIA officer of DEA is you?
A.  Correct.
…
Q.  Were you -- are you at the assistant secretary or equivalent level?
A.  ***I am not.***
…
Q.  You are not at the assistant secretary or equivalent level, are you?
[*Objection*]
A.  I am not.
Q.  Okay. So let's – let's assume -- with your counsel's objection, let's assume you're correct. Then DEA currently has a chief FOIA officer that is contrary to what [the statute] says, true, under the assumption that your prior answer is correct, that you are not the assistant secretary or equivalent level?
A.  ***True.***[49]

93.     Underscoring the point, DOJ/DEA testified that DEA's Chief FOIA Officer does not report to a presidential appointee. Rather, she is five rungs down: she reports to the DEA

---

[47]   *E.g.*, https://www.cia.gov/readingroom/docs/CIA_FY2019_Chief_FOIA_Officer_Report.pdf

[48]   https://www.epa.gov/sites/default/files/2020-03/documents/final_usepa_2020_chief_foia_officer_report_-_pdf-a.pdf; https://www.fcc.gov/sites/default/files/chief-foia-officer-report-2020.pdf.

[49]   Dep. 32-42 (emph. added).

Section Chief of the FOIA and Information Law Section; who reports to the DEA Deputy Chief Counsel; who reports to the DEA Chief Counsel; who reports to the DEA Administrator.

94.     The corporate deposition further revealed that DEA's Chief FOIA Officer had reviewed the 2019 Compliance Memorandum but did not remember if DEA had reported whether it met the Chief Officer requirement (which it did not) in its report.

### The Unlawful Redaction Policy

95.     DOJ has an unlawful policy, which DEA follows, of not releasing the names or e-mail addresses of employees on any document unless that document has been made publicly available.[50]

96.     The policy putatively emanates from FOIA exemption (B)(6), which exempts from FOIA "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." DOJ contends that "personnel and medical files and similar files" means it could be any file."[51]

97.     According to DOJ, the policy is described in a memo "OIP put out a couple years ago about protecting the names of certain agency … staff," written by Melanie Pustay, the former Director of OIP. Accoridng to the policy, "across the Department," FOIA offices redact the names of any public sector employee "not at the SES level" because they are not "public facing" and therefore have "a right to privacy."

98.     This policy applies to *all* records Department-wide, including e-mails.

---

[50]   Dep. at 210-17.

[51]   Dep. at 213.

## **Reading Room Violations**

99.    The corporate deposition further uncovered systemic violations of FOIA's reading room provisions.

100.    5 U.S.C. § 552(a)(2) imposes a non-discretionary duty on agencies to "make available for public inspection in an electronic format" certain important agency materials, including "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register" as well as "administrative staff manuals and instructions to staff that affect a member of the public."

101.    DOJ/DEA admitted to violating this provision. In addition to the undisclosed policies described above, DEA/DOJ also admitted that DEA's FOIA and Privacy Act internal manual (1) relates to processing FOIA requests, (2) affects the public, and yet (3) is not accessible to the public.

102.    Asked whether the manual should be accessible to the public, DOJ/DEA testified that "[i]t should be" but is not due to a "lack of resources."[52]

103.    This claim is not credible. DEA has an Electronic Reading Room with plenty of materials posted.[53] It would take a few e-mails to post the manual and other materials subject to affirmative disclosure provisions in the reading room as the law requires.

104.    Indeed, rather than take steps toward disclosure, DEA did the opposite. Across the top, the manual containing DEA's FOIA policy, which includes a statement of the unusual circumstances policy, improperly states that the contents of the document are "the property of

---

[52] Dep. 116.

[53] https://www.dea.gov/foia/foia-library

[DEA] and may not be disseminted outside DEA (or if loaned outside DEA, further disseminated) without the express written permission of the Office of Chief Counsel":



> This document and its contents are the property of the Drug Enforcement Administration (DEA) and may not be disseminated outside DEA (or if loaned outside of DEA, further disseminated) without the express written permission of the Office of Chief Counsel.
>
> **DRUG ENFORCEMENT ADMINISTRATION**
>
> **FREEDOM OF INFORMATION AND PRIVACY ACT**
> **POLICY NUMBER 0770**

### Records for or in DEA Administrative Proceedings

105.    DEA engages in adjudications relating to the CSA (for example, violations) and formal rule-making proceedings. ALJs from the DEA Office of Administrative Law Judges preside over these hearings. The proceedings are governed by the provisions of 21 C.F.R. §§ 1316.41-1316.68.

106.    DEA ALJs are neither elected officials nor political appointees. They are appointed by the Attorney General.

107.    Although nominally open to the public, DEA administrative proceedings are essentially secret tribunals—by modern standards at least—conducted away from the public eye and impossible to access.

108.    Most agencies that exercise significant executive enforcement like SEC,[54] EOIR,[55] FTC,[56] have e-Dockets to facilitate access to adjudicatory records from current and past proceedings. There is no e-Docket for DEA proceedings. Filings in DEA administrative

---

[54] https://www.sec.gov/litigation/apdocuments.shtml

[55] https://acis.eoir.justice.gov/en/

[56] https://www.ftc.gov/legal-library/browse/cases-proceedings

proceedings are conducted through the "DEA Judicial Mailbox"—*an e-mail inbox* at ECF-DEA@dea.gov.[57]

109.    All records from administrative proceedings are kept by the DEA Office of ALJs and not readily accessible by the DEA FOIA Office. And aside from final opinions or orders, the only way litigants, the press, or the general public can access records from current or prior administrative proceedings is through a FOIA request.[58]

110.    Emphasizing the importance of these materials, in 2017, the Administrative Conference of the United States ("ACUS")[59] stated:

> Given the importance of federal administrative adjudication, the materials generated throughout the course of any given adjudicatory proceeding—the aforementioned orders, pleadings, briefs, and other adjudication records—take on special significance. Insofar as adjudicative proceedings involve the application of federal power by unelected officials in the disposition of disputes between the government and private parties, or among private parties, the records associated with such proceedings are of immense public importance. On a more practical level, administrative adjudication documents can serve as ready-made models for private parties (especially those who are self-represented)13 in drafting their own materials, and may provide insight into the laws and procedures governing proceedings.[60]

111.    Because these records do not reside in the FOIA Office, requests for them necessarily raise unusual circumstances and incur significant delay under DOJ/DEA's unlawful policy.[61] As a result, there is no way to gain reasonably prompt access to administrative records. For example, DEA also explained that even public filings in administrative proceedings undergo

---

[57]   https://www.dea.gov/administrative-law-judges

[58]   Dep. 86.

[59]   Congress created ACUS in 1964 as an independent agency to promote efficiency, adequacy, and fairness of agency procedures. *See* 5 U.S.C. §§ 591-596.

[60]   https://www.acus.gov/sites/default/files/documents/Adjudication%20Materials%20on%20Agency%20 Websites_8.pdf

[61]   Dep. 87.

full FOIA review and incur hefty review fees because nothing on the face of such filings indicates they are public.[62] And because these records must also undergo review, a requestor must also pay DOJ/DEA thousands (perhaps tens of thousands) of dollars in review fees to access quintessentially publicly filed records from agency proceedings.

112.    DEA's problematic record keeping with respect to adjudications and rule makings is compounded by typical agency practice at these hearings. DEA ALJs set aggressive hearing schedules. The time from when a person receives notice of charges or of a rule making to an evidentiary hearing can be less than six months.

113.    Despite the fact that an adverse outcome in DEA proceedings can impose runious consequences upon individuals and businesses, parties appearing before the agency do not get a shred of the discovery that they would have a right to in a federal court proceeding of similar magnitude. Indeed, parties appearing before DEA in its administrative proceedings get very limited disclosure. The agency has no obligation to turn over all material in its possession relevant to a litigant's claims or defenses, even exculpatory material; rather, at DEA, parties have a "limited right to receive in advance of the hearing the documentary evidence and summaries of the testimony which the Government intends to rely upon."[63]

114.    The consequence of these arrangements and practices is stark. Because of DEA's delinquent record keeping practices and the practice of its ALJs, there is no way for a party to obtain useful, perhaps exculpatory, records in the agency's possession or records from a prior administrative proceeding (for example, useful precedent or prior inconsistent testimony from an

---

[62]    Dep. 95.

[63]    74 Fed. Reg. 36758, 36760 (2009).

agency witness) in time for an evidentiary hearing.[64] The agency can accrue all the evidence and precedent it wants and build its case, then initiate a proceeding; litigants are forced to use a FOIA rendered toothless by DEA/DOJ's unlawful policies on a clock and get nothing from the agency until long after the hearing—and that is only if the party is willing and can afford to pay for review fees.[65] Indeed, this arrangement undermines a core purpose of the FOIA: to correct an imbalance of information by providing those having to defend themselves before an agency a meaningful means of obtaining accessing agency files in advance of an evidentiary hearing.

115.    DEA's record keeping practices and DOJ's unlawful FOIA policies thus create serious access-to-justice problems. They foster unfair, structural institutional advantages for DEA/DOJ in its own administrative proceedings, to the grave detriment of litigants and the attorneys who represent them. Moreover, they deprive the press, journalists, policymakers, parties, and lawyers of the ability to be informed about DEA proceedings and how the agency secretly conducts its affairs.

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**
**(FOIA—Unlawful Policy, Pattern, Practice, or Procedure)**

116.    Plaintiff incorporates the previously alleged paragraphs by reference.

117.    The "unusual circumstances" policy as described herein is contrary to law.

118.    Under 5 U.S.C. § 552(a)(6)(B)(iii)(1), "unusual circumstances" means "the need to search for and collect the requested records from field facilities or *other establishments that are*

---

[64]   DEA precedent unbelievably dictates that "the Government is not required to disclose *potentially exculpatory information* … at any phase of [DEA administrative] proceedings." 65 Fed. Reg. 75959, 75961 (2000) (emph. added).

[65]   For example, in response to one of Zorn's requests, the agency demanded ***$41,960*** to review approximately 5,000 pages of quintessentially public records.

*separate from the office* processing the request," and the exception can only be invoked "to the extent reasonably necessary to the proper processing of the particular requests."

119.    DOJ and its components (including DEA) have adopted, implemented, and enacted a pattern, practice, policy, or procedure to processing FOIA requests that is contrary to law. According to Defendants DOJ and DEA, their policy is to apply the "unusual circumstances" exception any time a component FOIA office does not "have access" to the records and must go "outside" the office to gain access to the records. If a record is outside the FOIA office, unusual circumstances applies.

120.    The "unusual circumstances" exception does not apply so indiscriminately. Rather, FOIA's text, structure, and legislative history show that the exception applies only when the request implicates the need to search for and collect records from *other establishments that are separate from the office*, such as field facilities.[66]

121.    DOJ's contrary reading vitiates the exception, since nearly all FOIA requests require the processing office to request records from some other office. By Defendants' admitted reading of the statute, as long as the FOIA processing office has few or no records, an agency never has to comply with the statutory time limits. An agency could easily guarantee that it would *never* face "unusual circumstances" simply by making its "FOIA processing office" a single 5x5 foot room, staffing it with a single employee, and mandating that no government records ever enter that particular room.

---

[66]    *See* S. Rep. 93-854 (May 16, 1974) ("The need to search for and collect records from field facilities or 'other establishments that are separate from the office processing the request' does not permit an extension while such an office obtains the records from the agency's own file, records, or administrative division when located in the same city as the processing office. Rather this is intended to cover the collection of records from other cities, or from a federal records center or other facility which is not part of the agency.").

122.    Defendant DEA has confirmed that this state of affairs is in fact a practical reality. Other than previously requested records, DEA's FOIA Office has virtually no records and has no access to records. Accordingly, any time a FOIA requestor seeks a document that has not been previously requested and thus, is not in the FOIAXpress system, the agency invokes the "unusual circumstances" exception and delays providing a respond.

123.    The statute plainly does not accommodate this jiggery-pokery, and the fact that Defendants vigorously defend such an outlandish policy confirms that without judicial intervention, they will continue to act unlawfully.

124.    Defendants' policy and pattern or practice of invoking the exception is also unlawful because it requires no consideration of whether invoking the exception is "reasonably necessary to the proper processing of [those] particular requests." The statute requires agencies to consider the particular request before invoking the exception and to tailor its use of the exception "to the extent reasonably necessary."

125.    Plaintiff has been personally harmed by the unlawful policy and pattern or practice described herein.[67]

126.    Defendants' unlawful policy and pattern or practice will impair and/or will likely impair Plaintiff's lawful access to information under FOIA in the future.

127.    Plaintiff seeks an order declaring unlawful and enjoining the "unusual circumstances" policy.

---

[67]   Exhaustion of a policy and pattern or practice claim is not required. But even if it were, because of the "unusual circumstances" policy, DEA has not complied with statutory timelines and therefore remedies would be deemed exhausted. *See* 5 U.S.C. § 552(a)(6)(C)(i) (whenever agency fails to comply with applicable time limits, a person shall be deemed to have exhausted administrative remedies).

### SECOND CAUSE OF ACTION
### (APA—5 U.S.C. § 706(2))

128.    Plaintiff incorporates the previously alleged paragraphs by reference.

129.    The unusual circumstances policy, pattern, and/or practice constitutes final agency action.

130.    Plaintiff is adversely affected or aggrieved by the policy, pattern, and/or practice.

131.    The policy, pattern, or practice described above is not in accordance with law.

132.    Plaintiff seeks an order holding unlawful, setting aside, and enjoining the "unusual circumstances" policy.

### THIRD CAUSE OF ACTION
### (Declaratory Judgment—5 U.S.C. § 552(j))

133.    Plaintiff incorporates the previously alleged paragraphs by reference.

134.    "Each agency shall designate a Chief FOIA Officer who shall be a senior official of such agency (at the Assistant Secretary or equivalent level)." 5 U.S.C. § 552(j)(1).

135.    By mandating that agencies appoint a senior official at the Assistant Secretary or equivalent level, Congress ensured Chief FOIA Officers would be politically accountable.

136.    DEA has not designated a "senior official" at the "Assistant Secretary or equivalent" level as its Chief FOIA Officer.

137.    Since at least 2019, Defendants DOJ, DEA, Gupta, and/or Talebian have been aware of the § 552(j)(1) violation.

138.    Plaintiff is aggrieved by the absence of lawfully appointed Chief FOIA Officers, whose responsibilities 5 U.S.C. § 552(j)(2) impact regular requestors of records.

139.    Plaintiffs seek a declaration that Defendants DOJ and DEA have violated 5 U.S.C. § 552(j)(1) and continue to willfully violate 5 U.S.C. § 552(j)(1).

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment—Appointments Clause)

140.    Plaintiff incorporates the previously alleged paragraphs by reference.

141.    5 U.S.C. § 552(j)(1) requires each agency to designate a Chief FOIA Officer who is an inferior Officer of the United States, i.e., one who is "directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate."[68]

142.    DEA's Chief FOIA Officer is not an inferior Officer. Her work is not supervised by another who was appointed by the President and confirmed by the Senate.

143.    In addition, DEA violates the Appointments Clause by having non-inferior Officers of the United States adjudicate FOIA requests.

144.    Plaintiff seeks a declaration that Defendants DOJ and DEA have violated the Appointments Clause.

## FIFTH CAUSE OF ACTION
### (APA—5 U.S.C. § 706(1))

145.    Plaintiff incorporates the previously alleged paragraphs by reference.

146.    The duty imposed by 5 U.S.C. § 552(j)(1) on agencies is mandatory and non-discretionary.

147.    For years, DOJ/DEA have unlawfully withheld the designation of a statutorily compliant Chief FOIA Officer.

148.    Plaintiff seeks an order directing Defendants DOJ and DEA to comply with 5 U.S.C. § 552(j)(1).

---

[68]   *See United States v. Arthrex*, 141 S. Ct. 1970 (2021).

**SIXTH CAUSE OF ACTION**
**(5 U.S.C. § 552(a)(2)—Affirmative Disclosure/Reading Room)**

149.    Plaintiff incorporates the previously alleged paragraphs by reference.

150.    5 U.S.C. § 552(a)(2) requires each agency make available for public inspection, in an electronic format "statements of policy and interpretations which have been adopted by the agency" and "administrative staff manuals and instructions to staff that affect a member of the public."

151.    Defendants have violated and continue to violate 5 U.S.C. § 552(a)(2) by not making available for public inspection in an electronic format policies and interpretations of the FOIA and staff manuals/instructions that affect members of the public.

152.    Plaintiff seeks a declaration that Defendants have violated 5 U.S.C. § 552(a)(2), an injunction against Defendants from withholding information required to be disclosed under 5 U.S.C. § 552(a)(2), and an order compelling compliance with 5 U.S.C. § 552(a)(2).

**SEVENTH CAUSE OF ACTION**
**(First Amendment—Right to Timely Access Records from Administrative Proceedings)**

153.    Plaintiff incorporates the previously alleged paragraphs by reference.

154.    In addition to being an attorney, Plaintiff Zorn is a journalist who writes stories related to drug policy and regulation. DEA has recognized Zorn as a journalist in certain capacities.

155.    The First Amendment protects the public against the government's "arbitrary interference with access to important information."[69]

156.    As the Supreme Court has stated, "when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that

---

[69]    *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 583 (Stevens, J., concurring).

those agencies use the procedures which have traditionally been associated with the judicial process."[70]

157.    DEA administrative proceedings operate under procedures modeled on those of the courts and impose official and practical consequences upon members of society.

158.    DEA's recordkeeping practices and FOIA administration effectively make the agency's proceedings non-public and have denied the public timely access to important information.

159.    Plaintiff Zorn seeks a declaration that DEA has violated the First Amendment and an injunction ordering DEA to make records from DEA proceedings timely available or accessible to the public, for example, through an electronic docketing system.

### ATTORNEY FEES

160.    Plaintiff seeks reasonable attorney fees. *See, e.g.*, 5 U.S.C. § 552(a)(4)(E), 28 U.S.C. § 2412.

### PRAYER FOR RELIEF

For these reasons, Plaintiff respectfully requests that the Court:

1.  Order Defendants to comply with FOIA;

2.  Declare, hold unlawful, and permanently enjoin the unusual circumstances policy;

3.  Order DEA to make records from its administrative proceedings electronically accessible in a timely manner;

4.  Declare and hold that DEA designated an unlawful Chief FOIA Officer;

5.  Declare and hold that FOIA requests must be adjudicated by an inferior Officer of the United States, and that DEA's processing of FOIA requests is unlawful;

---

[70]    *Hannah v. Larche*, 363 U.S. 420, 442 (1960).

6.  Order either Defendant Garland or Milgram to designate a lawful Chief FOIA Officer for DEA;

7.  Order Defendants to implement a corrective action plan to prevent and correct the FOIA violations and abuses described herein;

8.  Order Defendants to report to this Court on a regular basis to show progress with a corrective action plan and compliance with any injunctive relief; and

9.  Order all other relief deemed just and proper.

Dated: June 13, 2023                    Respectfully submitted,


*/s/ Matthew C. Zorn*
Matthew C. Zorn
YETTER COLEMAN LLP
mzorn@yettercoleman.com
811 Main Street, Suite 4100
Houston, TX 77002
T: (713) 632-8000
F: (713) 632-8002

Shane Pennington
PORTER WRIGHT MORRIS & ARTHUR LLP
2020 K Street, NW, Suite 600
Washington, D.C. 20006
T: (832) 914-2985
F: (202) 778-3063
spennington@porterwright.com

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Matthew C. Zorn
Matthew C. Zorn