UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW C. ZORN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-02396 |
| | § | |
| U.S. DEPARTMENT OF JUSTICE, ET | § | |
| AL. | § | |
| | § | |
| Defendants. | § | |

**MOTION FOR A PRELIMINARY INJUNCTION AND TRIAL ON MERITS
ON FIRST AMENDMENT CLAIM**

**TABLE OF CONTENTS**

Introduction and Summary of Argument ........................................................................ 1

Statement of Essential Facts ........................................................................................... 2

    A.    Plaintiff ........................................................................................................ 2

    B.    Defendants ................................................................................................... 3

    C.    DEA's Administrative Proceedings and Other Relevant Facts ............................ 3

    D.    The Morris & Dickson Matter ........................................................................ 5

Legal Standard ............................................................................................................. 6

Argument ..................................................................................................................... 7

    A.    I Will Prevail on the Merits. ........................................................................... 7

    B.    I Have Suffered and Will Continue to Suffer Irreparable Harm. ......................... 10

    C.    The Threatened Injury Outweighs Harm to DEA, and an Injunction Will Serve the Public Interest. ............................................................................................. 13

Conclusion ................................................................................................................. 14

### TABLE OF AUTHORITIES

**Cases**

*Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379 (2011) .......................................................... 9

*Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165 (6th Cir. 1983) ............................. 13

*Croft v. Governor of Texas*, 562 F.3d 735 (5th Cir. 2009) .......................................................... 11

*Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002) ...................................................... 8

*El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147 (1993)................................................... 10

*Elec. Frontier Found. v. Off. of the Dir. of Nat. Intel.*, 542 F. Supp. 2d 1181 (N.D. Cal. 2008) . 13

*Elrod v. Burns*, 427 U.S. 347 (1976) ......................................................................................... 11

*Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439 (5th Cir. 2000) ................................ 6

*Faretta v. California*, 422 U.S. 806 (1975) ................................................................................... 1

*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) ................................................... 7

*Graber Mfg. Co. v. Dixon*, 223 F. Supp. 1020 (D.D.C 1963)...................................................... 15

*N. Jersey Media Grp., Inc. v. Ashcroft*, 308 F.3d 198 (3d Cir. 2002)........................................... 8

*Nat'l Ass'n of Waterfront Emps. v. Chao*, 587 F. Supp. 2d 90 (D.D.C. 2008)........................ 8, 15

*New York C.L. Union v. New York City Transit Auth.*, 684 F.3d 286 (2d Cir. 2012).............. 8, 10

*Nken v. Holder*, 556 U.S. 418 (2009) ......................................................................................... 7

*PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535 (5th Cir. 2005)..................................................... 7

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37 (1983) ....................................... 9

*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986).......................................................... 7

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)..................................................... 7

*Sure–Tan, Inc. v. NLRB*, 467 U.S. 883 (1984)............................................................................. 9

*United States v. Edwards*, 823 F.2d 111 (5th Cir. 1987).......................................................... 8, 11

**Statutes**

44 U.S.C. § 3101 ........................................................................................................................ 15

44 U.S.C. § 3102........................................................................................................................ 15

**Rules**

21 C.F.R. §§ 1316.41-68............................................................................................................ 10

21 C.F.R. §§ 1308.41-44............................................................................................................ 10

## INTRODUCTION AND SUMMARY OF ARGUMENT

DEA, its Administrator, and the Attorney General run a Star Chamber.

Although the Long Parliament outlawed the Star Chamber in 1641—long before the founding of this country—the Supreme Court has repeatedly emphasized that our Bill of Rights is specifically oriented to preclude Star Chambers. *See, e.g., Faretta v. California*, 422 U.S. 806, 821 & n.17 (1975). And yet, deep within the bowels of the Justice Department there is one. DEA conducts secretive hearings regarding the suspension, revocation, and other actions involving registrants. It conducts formal rulemaking proceedings in the same manner. These proceedings are done away from the public eye, and moreover, the public has no means to reasonably access them. Unless and until a final decision is issued in each case and posted in the Federal Register, one cannot even tell what proceedings took place or are currently pending. Apparently, the agency treats records from pending proceedings as FOIA exempt. Other aspects of these proceedings are Star Chamberesque too.

I am now asking the Court to enjoin this patently unconstitutional practice of secrecy. Recent events make abundantly clear that this practice causes me and the public serious, irreparable harm and erodes the foundations of our justice system.

Last week, news broke that "DEA's No. 2 quit[ ] amid reports of previous consulting work for Big Pharma." In the years leading up to his becoming DEA's No. 2, the former "Principal" Deputy Administrator earned a $600/hour expert fee working for opioid manufacturer Purdue Pharma and testified on behalf of Morris & Dickson ("M&D") in an administrative proceeding before DEA. Why is this coming out now? Apparently, nobody knew about this until the AP released a story in May 2023 about the four-year old M&D proceeding, based on a "leaked" copy of the ALJ's recommended decision. Why wasn't this proceeding known? Why is a copy of a detailed ALJ decision against a major opioid distributor considered "leaked"?

**Answer**: DEA is violating the First Amendment. But for the violations described herein, Congress and the public would have years ago known about the M&D matter and that the Administrator picked an individual who testified on behalf of an opiate distributor to be her No. 2.

All injunctive factors decidedly favor preliminary and permanent relief.

First, I will prevail. As discussed in my opposition to the Government's Motion to Dismiss and detailed herein, the First Amendment includes a qualified right of access. Moreover, the right is implicit in the Amendment's text.

Second, I have suffered and will continue to suffer irreparable harm. First Amendment violations presumptively give rise to irreparable harm, and here, the harm from DEA's secret administrative proceedings is demonstrable, manifest, palpable, irreparable, and serious.

Finally, an injunction would not disserve the public interest. Indeed, notwithstanding national security interests, transparency is inherently in the public interest. Requiring DEA to disclose pending/past proceedings and making proceeding records reasonably accessible is not just in the public interest—it is inherent to the proper functioning of government and the justice system.

### STATEMENT OF ESSENTIAL FACTS

In support of this Motion, I incorporate the facts outlined in my declaration by reference in full. Zorn Decl. Below, I repeat some details and additional facts.

#### A.    Plaintiff

1.      I am a partner at Yetter Coleman LLP in Houston and am a recognized litigator in matters relating to regulatory matters and controlled substances. *See* Zorn Decl. ¶ 3.

2.      In addition to my private practice, I publish an online newsletter entitled "On Drugs" at ondrugs.substack.com. *See* Zorn Decl. ¶ 5. Most material there is free. The newsletter has thousands of readers. DEA has recognized my sometimes media status. Dkt. 28-2 ("Dep.") at 203:3-17.

3.      On the newsletter, I write essays about drug policy issues ranging from IP issues to taxes. Administrative proceeding records are not only important to me to use as a lawyer in representing clients but are deeply tied to my niche journalism. I leverage my unique expertise to breakdown and distill the meaning and effect of agency documents. I routinely analyze publicly available administrative records, such as USPTO records. As to DEA proceeding records, I have no idea what to request because unlike other agencies, DEA does not disclose the existence of pending/past proceedings and the documents filed therein. *See* Zorn Decl. ¶¶ 5, 6.

4.      I make FOIA requests to DEA. Since 2022, I have made more than a dozen. *See* Zorn Decl. ¶¶ 7, 21, 22, 27, 28, 30.  The agency's failure to make such records reasonably accessible has stymied my advocacy. *See* Zorn Decl. ¶ 15.

5.      I will make more FOIA requests, including for records related to past/ongoing proceedings. *See generally id.* Because DEA's administrative proceedings are non-public, however, there is no way to identify records in any given proceedings. In other words, DEA's First Amendment violation harms me because I can't even identify what proceeding records it may have. The right to access cannot be exercised if one does not even know what proceedings exist.

**B.      Defendants**

6.      DOJ is a Department and agency.

7.      DEA is a DOJ component. It too is an "agency." *See* Dkt. 28.

**C.      DEA's Administrative Proceedings and Other Relevant Facts**

8.      ALJs at the DEA's Office of Administrative Law Judges (OALJ) conduct formal DEA hearings and adjudications in accordance with the APA (5 U.S.C. § 551, et seq.) in connection with enforcement/regulatory proceedings brought under the Controlled Substances Act (21 U.S.C. § 801, et seq.) and DEA regulations (21 C.F.R. § 1300, et seq.). *See* https://www.dea.gov/administrative-law-judges.

9.      Recommended ALJ decisions are forwarded to the Administrator, who issues final decisions. In so doing, she is advised by an "organizationally independent" legal advisor. *Id.*

10.      Administrative proceedings conducted before DEA Administrative Law Judges are governed by the provisions of 21 C.F.R. §§ 1316.41-1316.68. *Id.* Records from them are kept in the OALJ's office. Dep. 83:16-17. The proceedings are basically secretive. E-filings occur through email to the DEA Judicial Mailbox (ECF-DEA@usdoj.gov). *See* https://www.dea.gov/administrative-law-judges. All filings are served on the Government at dea.registration.litigation@usdoj.gov. *Id.* There are no e-dockets. Off-the-record hearings are "relatively common" in DEA proceedings. Zorn Decl., Ex. 1 (Tr.) at 4:7-15.

11.      "As of right now, the only information [from administrative proceedings] that is publicly available … are final decisions and orders online." Dep. 86:11-19, 255:9-16. Access to other records requires a time-consuming and expensive FOIA request. *Id. See also* Zorn Decl. ¶ 23 (discussing $40,000 cost to get records from prior proceeding).

12.      DOJ   has   a   2023   Discretionary   Budget   of   $37.7   billion. (https://www.justice.gov/jmd/page/file/1489621/download).

13.      Many other agencies with significant enforcement authority maintain public administrative dockets and allow access to filings in administrative proceedings.[1]

---

[1]      *See,   e.g.*,   SEC   (https://www.sec.gov/litigation/apdocuments.shtml),   CFPB (https://www.consumerfinance.gov/administrative-adjudication-proceedings/administrative-adjudication-docket/),   FTC   (https://www.ftc.gov/legal-library/browse/cases-proceedings),   FCC (https://www.fcc.gov/ecfs/search/search-filings),                                                      EPA (https://yosemite.epa.gov/oa/rhc/epaadmin.nsf),                                                      DOL (https://www.dol.gov/agencies/oalj/apps/keyword-search/OALJ_NEW_SEARCH),

**D.    The Morris & Dickson Matter**

14.    I have an outstanding FOIA request for proceeding records related to DEA's handling of the M&D matter. Considering DEA's curious handling of the case and the opioid epidemic, it has become a matter of significant public concern. *See* Zorn Decl. ¶¶ 30-34. *See also* https://www.npr.org/2023/05/26/1178372700/dea-morris-dickson-drug-distributor-license-opioid-crisis.



15.    The Administrator's decision revoking M&D's registration is currently on appeal at the Fifth Circuit. *Morris & Dickson Co. LLC v. DEA*, Case No. 23-60284 (5th Cir.). Suffice to say, M&D has raised substantial and credible claims that DEA mishandled this case and that the Administrator moved forward based on political/PR concerns, *see* Ex. A at 9:

> [W]ithin 48 hours of a reporter from the Associated Press calling DEA about this case, the Administrator—already facing scrutiny from other scandals— revoked Morris & Dickson's registrations, to the surprise of some of the agency's rank-and-file.

16.     The Fifth Circuit granted an emergency stay of DEA's suspension order. *Morris &*

*Dickson Co. LLC*, Dkt. 46.

17.     In a declaration filed in the Fifth Circuit case, Zorn Decl., Ex. 6, the following

additional facts are disclosed:

  i.   For years, M&D had been in discussions with DEA on settlement, into 2023.

 ii.   On 5/18/2023, an AP reporter contacted M&D to speak about why DEA had not acted
       on the ALJ recommendation.

iii.   DEA viewed the administrative file *as FOIA exempt* until after issuance of a final order.

 iv.   The AP reporter was in possession of a "leaked" copy of the ALJ Recommendation and
       "other unspecified documents from the confidential administrative file."

  v.   Days after the AP reporter contacted DEA—and four years after the ALJ
       recommendation—the Administrator revoked M&D's registration, just one hour after a
       line attorney informed M&D that settlement talks would accelerate.

18.     I would like to publish about this case. I requested the transcript from the underlying

proceeding. My request for expedited treatment was improperly denied by DEA, and a response

from DOJ is legally overdue. Through delay, Defendants have thus, in fact, denied me access to

an administrative proceeding record relating to a matter of grave public concern.[2]

## Legal Standard

To obtain a preliminary injunction, an applicant must show: (1) substantial likelihood of

success on the merits; (2) substantial threat of irreparable injury if the injunction is not issued; (3)

the threatened injury outweighs harm to the defendant; and (4) the injunction will not disserve the

public interest. *Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 442 (5th Cir. 2000).

When the Government is the defendant, the last two factors merge. *See Nken v. Holder*, 556 U.S.

---

[2]   Morris & Dickson also raises credible constitutional claims under *Jarkesy v. SEC*, 34 F.4th
446, 454 (5th Cir. 2022). I believe a discussion of how these proceedings practically operate might
assist the Fifth Circuit and am seriously considering whether to file an amicus brief.

418, 435 (2009). As the party seeking injunctive relief, I carry the burden of persuasion on all requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

Under Rule 65, the Court may, before or after beginning the hearing on a motion for a preliminary injunction, advance the trial on the merits and consolidate it with the hearing.

ARGUMENT

**A.     I Will Prevail on the Merits.**

In *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 880 (1980), the Court held that the right to attend criminal trials "is implicit in the guarantees of the First Amendment." Two years later, in *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 608-09 (1982), it explained that this qualified right requires a case-by-case approach. And in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8–10 (1986), the Court explained that whether the qualified right attaches depends on: (1) "whether the place and the process has historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." This is known as the "experience and logic" test. Once the qualified right attaches, "the presumption of openness can be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *United States v. Edwards*, 823 F.2d 111, 115 (5th Cir. 1987).

While the Supreme Court has not decided whether the experience and logic test applies to administrative proceedings, circuit courts to address the question have concluded it can. In *Detroit Detroit Free Press v. Ashcroft*, 303 F.3d 681, 695-96 (6th Cir. 2002), for example, the court concluded that the qualified right to access applied to deportation proceedings because they are adversarial, adjudicative, and while deportation is not technically a criminal proceeding, it imposes a "great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom." Similarly, in *New York C.L. Union v. New York City Transit Auth.*, 684 F.3d

-7-

286, 300 (2d Cir. 2012), the court held that a qualified right of access attached to hearings conducted by a Transit Adjudication Bureau because the TAB acted as an adjudicatory body, operated under procedures modeled on those of the courts, and imposed official and practical consequences upon members of society. *See also N. Jersey Media Grp., Inc. v. Ashcroft*, 308 F.3d 198, 204 (3d Cir. 2002) (applying *Richmond Newspapers* framework but finding no right to attend deportation proceedings); *Nat'l Ass'n of Waterfront Emps. v. Chao*, 587 F. Supp. 2d 90, 98 (D.D.C. 2008) (similar).

Beyond these cases, the right is implicit in the First Amendment's text, which protects the freedom of the press and the right to petition. One cannot exercise these liberties with respect to an agency without access to its enforcement proceedings. "[T]he Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011). *See also Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 896–897 (1984) ("[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government."). How can one petition in an agency forum without accessing precedents and materials from matters previously litigated in that forum? And as to the "freedom … of the press," the Government cannot unreasonably restrict access to public forums, *see generally Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983), which is what DEA does when it hides information about or records from its public administrative proceedings—and then treats materials from pending cases ***as FOIA exempt***. How can one access proceedings without knowing about them?

Whether I prevail boils down to three questions: (1) are DEA administrative proceedings sufficiently like those of a court; (2) is the experience and logic test satisfied; and (3) does DEA's

failure to make records from administrative proceedings and information about the proceedings themselves timely accessible violate the First Amendment.

1.      **Are DEA administrative proceedings sufficiently like those of a court?** Yes. DEA adjudications, like in *Detroit Free Press*, are adversarial and impose hardship on respondents. Similarly, like in *NYC Transit Authority*, DEA rulemaking and administrative proceedings are supposed to model court procedures. *See* 21 C.F.R. §§ 1308.41-44, 1316.41-68 (hearing rules). These hearings can impose significant consequences on respondents. The ALJs that preside over DEA proceedings have lifetime tenure, further highlighting their court-like nature. One need only skim a recommended findings of fact and conclusions of law, *see, e.g.*, Zorn Decl., Ex. 1, to understand that these proceedings are like those of a court.

2.      **Is the "experience and logic" test is satisfied?** No doubt. The experience determination doesn't consider historical openness or formalistic descriptions. *New York City Transit Auth.*, 684 F.3d at 299. Rather, it looks to "experience in that type or kind of hearing throughout the United States," *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147, 150 (1993) (internal quotation marks omitted), i.e., "whether openness enhances the ability of the government proceeding to work properly and to fulfill its function," *NYC Transit Auth.*, 684 F.3d at 301-02. DEA administrative proceedings closely resemble historically public criminal prosecutions.

3.      **Is the right to timely access administrative records violated?** Clearly, yes. The First Amendment does not require instantaneous disclosure. *See Edwards*, 823 F.2d at 118. But it not only guarantees a qualified right of access, but *timely* access. *See Courthouse News Serv. v. Planet*, 947 F.3d 581, 585, 894 (9th Cir. 2020) ("[A] necessary corollary of the right to access is a right to timely access."). For example, a delay in releasing records of closed proceedings can violate the First Amendment. *See Edwards*, 823 F.2d at 119.

There is no genuine dispute that DEA adjudicatory records are not publicly accessible in a reasonably timely or affordable manner. The process is downright medieval—with records effectively delivered to FOIA requesters by horseback. *See, e.g.*, Dkt. 28-2 (Dep.) 86:2-19, 86:22-87:3. Moreover, one can only obtain these administrative records at great cost—ten thousand dollars or more—***up front***. *See* Zorn Decl. ¶ 23. With the "unusual circumstances" policy and the first-in-first-out system, it can take *years* to obtain these records, long after a proceeding concludes, *if one even knows how to properly make a request*. And because these proceedings are secretive, even if records from DEA proceedings were somehow timely accessible through FOIA—and they are not—nobody would ever know what to ask for.

### B.      I Have Suffered and Will Continue to Suffer Irreparable Harm.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Croft v. Governor of Texas*, 562 F.3d 735, 745 (5th Cir. 2009). As a person that pens essays and routinely speaks on issues related to drug policy and DEA, my First Amendment right of access is limited by DEA's failure to make proceeding records available. The irreparable harm is palpable and concrete. Consider the still unfolding M&D story.

On 5/18/18, DEA issued an Order to Show Cause and Immediate Suspension of Registration to M&D and a press release, stating "[t]he DEA's investigation of Morris & Dickson Company determined that the continued registration of this company constitutes a substantial likelihood of imminent danger to public health and safety." *See* https://www.justice.gov/opa/pr/dea-suspends-registration-morris-dickson-company-distributing-controlled-substances. On 8/29/19, the ALJ presiding over the suspension hearing agreed and issued a Recommended Decision, which was transmitted to DEA in November 2019.

For years, nothing happened. Apparently, M&D was engaged in settlement discussions.

On 8/21/21, the Administrator appointed Lou Milione to be her "Principal Deputy Administrator." By fabricating a "Principal" Deputy Administrator position, DEA bypassed formalities associated with Senate confirmation,[3] which would have turned up the existence of the proceedings and that the former DEA No. 2 had consulted for M&D.

In May 2023, the AP began prying after it received a cache of documents from an unnamed source. (It wasn't me.) Then, suddenly, DEA aborted ongoing settlement discussions, and the Administrator confirmed the final decision. Rather than reinvent the wheel, I will quote M&D's filing, which (to me) seems to have substantial merit:

> So what changed? Days before the Order was released, a reporter at the Associated Press—armed with a leaked copy of the ALJ's recommendation—had contacted the agency (and soon Morris & Dickson) to inquire about why the Administrator had not yet acted. By all signs, and without notifying other internal stakeholders, the Administrator—who was already facing increased press scrutiny for other reasons—immediately finalized and published the Order.

> There is serious reason to think the Administrator's offered reason—that settlement talks had broken down—is not the real reason. For one, its premise is not true. And more telling, it defies credulity to say that the above timeline is coincidental. Rather, the Order is likely pretextual; an effort to avoid press criticism rather than render a reasoned administrative decision.

Ex. B at 31-32. AP poked some more. It discovered Milione had consulted for M&D. Milione resigned days later.

This is all alarming enough. But my declaration details another strikingly similar incident. I don't belabor it here. Suffice to say, there is a similar trajectory, down to the oddly timed resignation. There seems to be a disturbing and substantiated pattern about how DEA metes out justice in secret, agency misconduct, and decisions made to "avoid bad press." ***If the public and***

---

[3]   Section 5 of Reorganization Plan of 1973 established the DEA Deputy Administrator as an advice-and-consent position. 87 Stat. 1091 (1973). To circumvent this inconvenience, DEA created the position of the "*principal* deputy administrator" – and assigned it the exact same duties as the Deputy Administrator.

***press had access to these proceedings in the first instance, this just wouldn't be an issue***. And due to DEA's mission, it presents a public health risk. *Cf. Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1180–81 (6th Cir. 1983) ("The public has an interest in knowing how the government agency has responded to allegations of error in the testing program.").

Of course, I don't sit on a Congressional oversight committee. And, as the Government correctly points out, I am not DOJ's Inspector General. Dkt. 42 at 6. But these are newsworthy stories, and I have a specialized background to assess legal events involving DEA. I'm often against the agency in court. I have ample standing. And, courts recognize that when a matter relates to "ongoing public and congressional debates about issues of vital national importance," there is irreparable harm in the delayed disclosure of relevant information. *See Elec. Frontier Found. v. Off. of the Dir. of Nat. Intel.*, 542 F. Supp. 2d 1181, 1186 (N.D. Cal. 2008). Just so here.

Don't believe me? Just last month, on NBC's Meet the Press, DEA's Administrator described the opioid crises as an "emergency."[4] Hard to disagree there. At DEA headquarters, there is even a Faces of Fentanyl wall to commemorate victims:



Given the "emergency," we ought to know what DEA is doing to enforce—or in the case of M&D, not enforce—the law against registrants that violate the CSA. This necessarily includes

---

[4] https://news.yahoo.com/dea-administrator-says-social-media-193406421.html.

publication of past/ongoing DEA proceedings. Fighting the opioid crisis isn't just about spinning press, after all.

C.     **The Threatened Injury Outweighs Harm to DEA, and an Injunction Will Serve the Public Interest.**

The only conceivable legitimate harm to DEA lies in the burdens of it having to disclose the existence of its administrative proceedings—like most federal agencies that regularly engage in enforcement proceedings. This is not something Defendants have done (or failed to do) because technology or funding is lacking or even because it is difficult. It is a deliberate choice.

And it is one that runs against public policy and the law. *See Chao*, 587 F. Supp. 2d at 99 ("The public policy favoring open forums also favors public access to both court and administrative records"). "Without free access to the public record, future respondents would find it difficult to prepare a defense, and attorneys would not be able adequately to advise clients." *Graber Mfg. Co. v. Dixon*, 223 F. Supp. 1020, 1022 (D.D.C 1963).

Thus, under 44 U.S.C. § 3101, agency heads must "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." This requires an "active, continuing program for the economical and efficient management of the records of the agency." *Id.* § 3102. At the corporate deposition, Defendants conceded that the only way the regulated public and advocates can access information from past/present proceedings is subject to the "unusual circumstances" policy, interminable FOIA delays, and enormous review fees. Dep. 86:2-89:20. Because of this, one cannot even obtain evidence DEA will use within these proceedings until weeks before a merits hearing, even if it is punctiliously organized in a digital file.

Beyond the serious matters discussed in Part B, making records publicly available is also in the public interest because it would alleviate burdens on DEA's FOIA Office. Filings in DEA proceedings are public filings subject to FOIA. Dep. 92:19-20. Because DEA doesn't have public dockets, however, the FOIA staff needs to "be able to identify which records have been publicly filed…as part of the review process." Dep. 94:6-15. This not only adds an unnecessary layer of review and delay but also burdens the entire FOIA system with an asinine exercise: consulting "subject matter experts" to determine whether a document filed in an administrative proceeding has been "publicly filed." Dep. 95:16-19. Indeed, it is so asinine, one wonders if, in reality, it is a screening process to avoid embarrassment.

CONCLUSION

After the disclosures about DEA's "Principal" Deputy Administrator, Senator Grassley asked, "What else is the DEA trying to hide?" *See* https://www.pbs.org/newshour/health/dea-official-resigns-amid-reports-of-previous-big-pharma-consulting-work. Here's one answer: it runs a modern-day Star Chamber.

The Court should preliminarily and permanently enjoin this patently unconstitutional practice of hiding proceedings and records from those proceedings. DEA should be ordered to immediately post an index of all proceedings referred to the OALJ initiated within the past three years on its website. It should be ordered to make all filings and transcripts from the Morris & Dickson matter publicly accessible. The Court should enjoin DEA's preposterous practice of treating pending proceeding materials as FOIA exempt. And as a longer-term measure, the Court should order DEA to post all dockets from proceedings before the agency within the past three years, timely publish dockets of pending proceedings going forward, and develop a mechanism to make records from administrative proceedings reasonably accessible to the public.

Dated: July 26, 2023                    Respectfully submitted,

                                        */s/ Matthew C. Zorn*
                                        Matthew C. Zorn
                                        YETTER COLEMAN LLP
                                        mzorn@yettercoleman.com
                                        811 Main Street, Suite 4100
                                        Houston, TX 77002
                                        T: (713) 632-8000
                                        F: (713) 632-8002

                                        Shane Pennington
                                        PORTER WRIGHT MORRIS & ARTHUR
                                        spennington@porterwright.com
                                        2020 K Street, NW, Suite 600
                                        Washington, D.C. 20006
                                        T: (202) 778-3005
                                        F: (202) 778-3063

                                        ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                        */s/ Matthew C. Zorn*
                                        Matthew C. Zorn

## WORDS

I certify that this filing has 3,988 words, excluding the case caption, tables, signature block, and certificates.

                                        */s/ Matthew C. Zorn*
                                        Matthew C. Zorn