# YetterColeman LLP

August 18, 2023

Hon. Peter Bray, U.S.M.J.
United States Courthouse
515 Rusk Street, Room 7720
Houston, Texas 77002

Re:   *Matthew C. Zorn v. DOJ et al.*, Case No. 22-cv-02396; In the United States District Court for the Southern District of Texas

Dear Judge Bray:

I submit this letter brief in response to the Court's Order for supplemental briefing on the issue of standing (Dkt. 67). As I explain below, recent Supreme Court and Fifth Circuit cases since the close of briefing confirm and reinforce my standing.[1] In addition, I submit as Exhibit A an additional declaration attesting to recent matters that reinforce to my standing.

**1.   *Alliance for Hippocratic Medicine.*** Two days ago, the Fifth Circuit held in *Alliance for Hippocratic Medicine v. FDA,* 2023 WL 5266026 (5th Cir. Aug. 16, 2023) that doctors and medical organizations had standing to challenge, among other items, FDA's 2021 decision "not enforce an agency regulation requiring mifepristone to be prescribed and dispensed in person," which the decision calls the "2021 Non-Enforcement Decision." *Id.* at *5-6. This recent decision confirms my standing, as a lawyer/journalist, to challenge DEA's failure to designate a Chief FOIA Officer and unlawful structuring of its FOIA processing apparatus.

As described by the *Hippocratic Medicine* court, in 2021, FDA decided not to enforce an in-person dispensing requirement for mifepristone. This decision effectively allowed mifepristone to be prescribed remotely and by mail without doctor supervision. The court held that the plaintiffs had standing to contest it.

First, as to imminent injury, the court identified that a definite percentage of women who take mifepristone would require ER care and that doctors would continue treating women who experience severe complications after taking mifepristone. *Id.* at *12-13. It explained that this was not a hypothetical, speculative, or "one-off" risk: many doctors had already treated patients experiencing severe complication. The risk of treating patients with complications, according to

---

[1]   The Government has not challenged my standing to assert the "unusual circumstances" claim and never moved to dismiss my First Amendment claim for lack of standing. To date, I have identified numerous instances where I have improperly received an "unusual circumstances" determination according to the unlawful policy and have requested records from administrative proceedings, which establishes ample Article III standing as to these claims.

YetterColeman LLP

Hon. Peter Bray — - 2 - — August 18, 2023

the court, was predictable and consistent. As support, plaintiffs "provided multiple examples of organization members who sustained the exact harm they say will recur." *Id.* at *14.

Second, on cognizable injury, among other items, the court noted classic cognizable economic harm by having to divert resources away from regular patients. *Id.* *14.

Third, the court identified traceability to the 2021 Non-Enforcement Decision. *Id.* at *16-17. Removing the in-person dispensing requirement allowed women to request and take mifepristone without doctor supervision. That "supervision," according to the court, was "necessary to ensure patients' safety," and the absence of supervision would cause "additional severe complications." *Id.* The court also explained that without an in-person examination, a prescriber would be less likely to "accurately determine gestational age." *Id.*

*Hippocratic Medicine* is on all fours. Indeed, my standing is stronger. Here's why.

Start with injury. I'm a lawyer that handles matters before DEA for clients. I'm also a journalist that writes stories. That makes me a quintessential member of two classes affected by FOIA and for whom FOIA's structural protections exist to protect. In this regard, I am not any differently situated when compared to doctors with patients or medical organizations as they relate to FDA prescription drug regulations. The Government points out that the *Hippocratic Medicine* court relied on associational standing. This distinction is of no moment because (1) individual standing is far more direct than associational standing (indeed, an element of associational standing is having a member with individual standing) and (2) the court held that the individual doctors had standing as doctors. I have individual standing.

Like the doctors did in *Hippocratic Medicine*, my complaint and three declarations set forth specific facts and real-world anecdotes that show a panoply of particularized, concrete injuries, and establish ongoing and future harm from the unsupervised regulatory regime. These cognizable injuries range from economic type "diverting resources" type harms to classic informational injuries that result from the denial or delay in disclosure:

- **Obscene Review Fees.** Unlawful and nonsensical FOIA practices/policies that result in obscene fees making many records practically inaccessible, including five-figure review fees for quintessentially public records.

- **The Unusual Circumstances Policy.** Unlawful delays in making FOIA determinations, which have made it impossible to write timely stories on current events involving DEA.

- **Balkanizing the FOIA Office to Enable Delay.** Having no Chief FOIA Officer promotes the "unusual circumstances" policy and further delay.

- **Disclosure Fouls.** Unlawful FOIA practices of treating records from administrative proceedings as exempt.

- **Routine Misapplication of Exemptions.** Unlawful redactions to documents.

YetterColeman LLP

Hon. Peter Bray                                    - 3 -                              August 18, 2023

- **Affirmative Disclosure.** Failure to disclose information that must be affirmatively disclosed under FOIA regarding how FOIA requests are processed.

- **Time/Resources Spent to Prosecute FOIA Requests and Ensure Compliance.** I have had to divert substantial time and resources away from my normal clients to deal with FOIA claims and policies to insure FOIA compliance, including time/resources spend on this litigation.

Next, consider traceability. Like the case in *Hippocratic Medicine*, some (maybe all) these injuries arise (predictably) due to a lack of supervision as the statute lays out. The *Hippocratic Medicine* court concluded that removing a doctor supervision requirement that ensured patient safety increased the risk of mifepristone complications. Here, not having a statutory compliant supervisor that works in the agency (as opposed to one in the Department that isn't anywhere in DEA's chain of command) has the same effect as to the processing of FOIA requests. It causes an increased risk of non-compliance, improperly denied FOIA requests, policies that violate the statute, etc. Indeed, all this is *in the statute*. Section 552(j)(3) requires the Chief FOIA Officer of each agency to review "all aspects of the administration of this section by the agency to ensure compliance with the requirements of this section" which includes "assessment of fees," "the timely processing of requests," and the "use of exemptions." That is not happening, and a predictable consequence of that is the bundle of issues that now adversely affect me.

There is one clear distinction with *Hippocratic Medicine*, however. There, the issue was non-enforcement of a supervision requirement. Here, there is an absence of lawful supervision via dereliction of mandatory statutory duty. DEA has put no senior official from the agency in charge of "agency-wide responsibility for efficient and appropriate compliance" of FOIA or "monitor[ing] implementation." The Government here emphasizes that the Chief FOIA Officer can only recommend policy changes, Dkt. 51 at 4,[2] but it never addresses all the other important statutory supervisory and implementation functions of the Chief FOIA Officer that are designed to prevent or at least mitigate some of the non-compliance issues and now directly impact me. I can't even get the agency's document retention and recordkeeping policies.

---

[2] The *Hippocratic Medicine* court addressed the concern that its holding might open the floodgates to similar litigation. Perhaps the Court is concerned with that here too, i.e., granting me standing in this case would open the floodgates on "failure to regulate" claims. But other justiciability and APA doctrines, aside from Article III standing, meaningfully limit such challenges. *United States v. Texas*, 143 S. Ct. 1964, 1988 (Barrett, J. concurring) (discussing *Heckler v. Chaney*, 470 U.S. 821 (1985)). This case is not about a discretionary or poor decision DEA made. Rather, this is a case where there is *no* supervision contrary to a statutory command established to protect FOIA users and the FOIA program. Also, in the context of disclosure statutes like FOIA, the Supreme Court has stated that "the fact that numerous citizens might request the same information under the Freedom of Information Act entails that those who have been denied access do not possess a sufficient basis to sue." *Pub. Citizen v. DOJ*, 491 U.S. 440, 449–50 (1989).

YetterColeman LLP

Hon. Peter Bray - 4 - August 18, 2023

Finally, as to redressability, no different than the case in *Hippocratic Medicine*, it is substantially likely that installing the required supervisor mechanism to review for FOIA, i.e., (1) having a Chief FOIA Officer that is a senior DEA responsible that supervises FOIA compliance and monitors implementation and (2) who reports to the Administrator, would at least partially redress the harms I complain of. My standing theory is not based on expanding funding for DEA FOIA operations. That is a strawman. My grievance is that there is no proper supervision and no accountability mechanism as laid out by Congress. I do not believe it can be seriously disputed that having a senior ranking official serve as the ultimate FOIA supervisor and face of agency FOIA compliance would improve accountability and supervision. And, even if the absence of having a senior DEA official supervise and be the face of DEA FOIA compliance is not the *sole* cause of these harms, it is enough that the absence of a statutorily and constitutionally compliant Chief FOIA Officer *contributes*. *See Texas v. United States*, 50 F.4th 498, 519 (5th Cir. 2022).[3]

The common thread underlying standing in *Hippocratic Medicine* and in this case is that under certain circumstances, an absence of supervision creates redressable injury and Article III standing in a class of persons for whom a regulatory or statutory supervision provision is designed to benefit and protect. That thread flows from both the law and common sense. If a pool had a statute or regulation that commanded it to keep a chief lifeguard on staff to supervise compliance with pool rules, and pool members routinely get hurt due to non-compliance with pool rules, would a parent of a hurt child have standing to say that the pool must install a lifeguard that is qualified to supervise the pool and listen to her grievances? Of course she would. And so do I here.

**2. *303 Creative*.** The Court identified *303 Creative LLC v. Elenis*, 143 S. Ct. 2298 (June 30, 2023) as recent standing precedent. There, the Supreme Court briefly discussed the "credible threat" requirement to establish standing in a pre-enforcement challenge. As evidence, the plaintiff there pointed to past enforcement actions under the law. The Tenth Circuit held that the plaintiff had standing, which holding was not challenged or revisited on appeal. *Id.* at 2310.

---

[3] True, a statutorily and constitutionally compliant senior-official Chief FOIA Officer can only recommend to the "head of the agency" changes to agency practices, policies, personnel and funding. But that raises another important structural issue and deficiency. Under Defendants' interpretation of "agency," the "head of the agency" is Attorney General Garland. Under my interpretation, it is Administrator Milgram. While it is theoretically possible that the Attorney General could take on the role of supervising DEA's Chief FOIA Officer in addition to his other responsibilities, it is impossible to fathom him doing so. A FOIA operation within DEA that that is supervised by a senior official at DEA and who directly reports to its Administrator would almost certainly result in DEA taking FOIA concerns within DEA more seriously. Notably, the Supreme Court recently affirmed in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2196 (2020) that when those subjected to an agency action challenge a structural issue, traceability requirements are relaxed and that there is no need to engage in a counterfactual world. In this light, the Government's "chain of speculation" argument, Dkt. 51 at 3, is without merit.

YetterColeman LLP

Hon. Peter Bray                          - 5 -                          August 18, 2023

Because *303 Creative* is a pre-enforcement case, the standing issues here are different. In any event, the record here showing past and ongoing concrete injuries, and not threatened injuries. For this reason, I do not believe *303 Creative* advances the standing analysis in either direction.

3.   ***Brown***. In *DOE v. Brown*, 143 S. Ct. 2343, 2352 (June 30, 2023), the respondents asserted injury in not having their loans forgiven under the student-loan-debt-forgiveness plan. At issue was whether two borrowers who did not qualify for maximum relief under the plan had standing to challenge DOE's failure to engage in notice-and-comment. At bottom, the respondents asserted that they had standing because if DOE had followed typical notice-and-comment procedures, they could have convinced DOE that its actions were unlawful or undesirable and that it should adopt a different plan.

According to the Court, this challenge to procedure did not establish standing. An injury is not redressable when "the prospect of redress turns on the Government's wholly discretionary decision to create a new regulatory or benefits program." *Id.* at 2353. While the Court will "tolerate uncertainty over whether observing certain procedures would have led to (caused) a different substantive outcome," where standing rests on a depravation of a structural or procedural right, there must be some underlying "concrete interest that is affected by the deprivation." *Id.* at 2351.

Here, I assert far more than a bare procedural injury. Equally important, there is no agency discretion at issue. I have shown concrete economic and informational interests affected and undermined by the absence of a lawfully conducted, supervised, and implemented FOIA Office—contrary to mandatory statutory dictates. What the Government argues is obviously true at some level—nobody can say what a hypothetical, lawfully appointed Chief FOIA Officer within DEA might do differently. Dkt. 42 at 14-15. But what we can say, as a certainty, is that a hypothetical Chief FOIA Officer within DEA would do more supervision and implementation than what the current DEA Chief FOIA Officer (nobody) within DEA is doing.

4.   ***Clarke***. *Clarke v. Commodity Futures Trading Comm'n*, 74 4th 627 (5th Cir. July 21, 2023) also supports my standing. In *Clarke*, the Fifth Circuit concluded that market operators, traders, and academics had standing to challenge a no-action letter's recission. The no-action letter allowed PredictIt, an online marketplace for predicting outcomes of political events, to operate without registering under federal law. Then, CFTC withdrew the no-action letter. Among those that had standing, the court identified the loss of a research tool they used and additional costs as concrete injuries traceable to the no-action letter.

The CTFC resisted that conclusion. Among other arguments, it contended that only the no-action letter's beneficiary would have standing to sue and that the alleged injuries reflected "downstream harm" related to PredictIt owner's hypothetical decision to continue or cease operating—that it could choose to operate or close PredictIt independent of the no-action letter.

YetterColeman LLP

Hon. Peter Bray                                    - 6 -                                   August 18, 2023

The Court explained, however, that the APA permits suit by anyone "adversely affected or aggrieved by agency action." *Id.* at 640 (citing 5 U.S.C. § 702).

Here, too, as a frequent DEA FOIA customer, I have been adversely affected by "agency action" as the statutory term includes a "failure to act." 5 U.S.C. § 551. Also, here too, installing a senior DEA official as Chief FOIA Officer that reports to the Administrator to perform the statutory § 552(j) duties when currently nobody does this necessarily has the effect of the Chief FOIA Officer "behav[ing] differently than they otherwise would."

**5.**      ***United States v. Texas***. Even *United States v. Texas*, 143 S. Ct. 1964, 1971 (June 23, 2023) cuts my way. Whether an agency has complied with a mandatory and non-discretionary duty in a statute specifically designed to protect the public's right to obtain information is wholly unlike criminal arrests or prosecutions, where the Executive Branch have long enjoyed discretion to enforce or not enforce. *Id.* at 1971. This case is about a mandatory statutory command in FOIA and agency structure Congress mandated to protect FOIA and the public. There are other important distinctions too. Here, I challenge an issue that I am directly subjected and exposed to.

Notably, the Court explained that the standing calculus might change if "the Executive Branch wholly abandoned its statutory responsibilities," and it pointed to the APA. *Id.* at 1973-74. A plaintiff can obtain judicial review under the APA where an agency "has consciously and expressly adopted a general policy that is so extreme as to amount to an abdication of its statutory responsibilities." Here, I allege exactly that. Defendants' have adopted a general policy of having no statutory compliant supervision based on a misreading of the statute that is so extreme that it amounts to abdication of statutory responsibilities under FOIA.

\* \* \*

As a final note, as my declaration explains, I recently filed FOIA requests seeking records in the custody or control of DEA's Chief FOIA Officer related to DEA's FOIA compliance and implementation. No records should be produced because DEA has no Chief FOIA Officer. At least some records should lawfully exist and be disclosed, however, under the statute, 5 U.S.C. § 552(j)(2)(A)-(D). This issue might shortcut or aid the standing inquiry.

I have a judicially cognizable interest in there being a Chief FOIA Officer, i.e., what Congress intended to serve as an interface or lightning rod for agency records on FOIA compliance; the absence of one is clearly traceable to DEA's disregard of the statute and the absence of a properly appointed Chief FOIA Officer; and that injury is fully redressable by a Court order declaring Defendants interpretation of the statute is wrong and compelling DEA to designate a Chief FOIA Officer. *Cf. Pub. Citizen*, 491 U.S. at 449 (party seeking access to the ABA Committee's meetings and records in order "to monitor its workings and participate more

YetterColeman LLP

Hon. Peter Bray                                    - 7 -                           August 18, 2023

effectively in the judicial selection process" had standing to compel DOJ and the ABA Committee to comply with FACA's charter and notice requirements). The unlawful composition of DEA's FOIA Office—and the absence of a Chief FOIA Officer—effectively refuses me access "to scrutinize" DEA's FOIA activities to the extent FOIA contemplates, *id.* at 449, for having a lawfully designated Chief FOIA Officer would at minimum give me access to some "discussions and documents regarding the overall functioning of [FOIA]" within DEA, *id.* at 450.

                                           Respectfully submitted,

                                           Matthew C. Zorn

cc: Counsel of Record

      This filing has 2,918 words per Microsoft Word's word count feature in the body.

      I certify that on August 18, 2023, a true and correct copy of the foregoing was filed with the United States District Clerk for the Southern District of Texas and electronically served on all counsel of record via the District's ECF system.

                                           */s/ Matthew C. Zorn*
                                           Matthew C. Zorn