# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW C. ZORN, § § | | |
| Plaintiff, § § | | |
| v. § § | Civil Action No. 4:22-cv-02396 | |
| U.S. DEPARTMENT OF JUSTICE, ET AL. § § § § | | |
| Defendants. § | | |

**DECLARATION OF MATTHEW C. ZORN**

1. My name is Matthew C. Zorn. I am over 18 years of age, of sound mind and fully competent to make this Declaration. I have never been convicted of a felony or a crime of moral turpitude. I have personal knowledge of all the facts stated herein, and they are true and correct to the best of my knowledge. I am the Plaintiff.

2. I incorporate my July 26, 2023, declaration by reference, which to my knowledge, is still true and correct. Here, I provide supplemental information about recent events since June 2023 that have occurred.

**Supplemental Information**

3. Consistent with my earlier statements, I have submitted additional FOIA requests to DEA. Since 2022, DEA's FOIA portal shows that I have made 21 FOIA requests from DEA. Around half remain pending. I have also submitted requests to other DOJ components.

4. Because of the issues I have described in my declarations, I have had to devote substantial time and resources away from my regular law practice, including litigating this case. These policies also prevent me from gaining timely access to information to write timely stories for my newsletter.

5. On June 8, 2023, I requested a copy of "DEA's current policy for retaining e-mails and/or its General Records Schedule 6.1." In July 2022, regarding (now closed) Request 22-00580-F, DEA's Chief of the Freedom of Information and Privacy Act Unit (CCAR), explained that DEA was unable to search for emails prior to 2019 for non-Senior Executive Service employees because agency policy is to retain employee e-mails going only three years back.

6. This preservation relates to one of my outstanding requests from June 2022 seeking records from January 2020 regarding DEA's formation or structuring of a psychedelic sacramental use advisory council under the Federal Advisory Committee Act. At the time I made that request, all records would be within the three-year retention window. Today, that is not so. I made this

request based on indirect information I had learned about DEA requesting the formation of an advisory council in 2021.

7. Weeks after having not received DEA's e-mail retention policy through my June 2023 FOIA request—indeed, that request raised "unusual circumstances" indicating that DEA's e-mail retention policies are not in its FOIA Office—I reached out to the Government in this case to ensure that e-mails relevant to that request would be preserved. The Government confirmed that they would be preserved but added that if I want "further details on the status of this or other FOIA requests" to go "through the normal FOIA channels at DEA."

8. Of course, I had basically done just that, but was unable to get a timely response to my FOIA request because of unlawful FOIA policies and practices—even for a record that a statutorily compliant Chief FOIA Officer would have in her possession, custody, or control. Indeed, the Capstone Approach DEA purportedly follows as laid out by NARA expressly contemplates the intersection of record preservation and FOIA.[1] And, according to a NARA white paper, "NARA's existing regulations and guidance contain several requirements for the proper documentation of an agency's use of the Capstone GRS and the Capstone approach in general," which includes "[p]osting of the agency's records management directive on the agency's website **per the FOIA, 5 USC 552(a)(1)(D)**."[2]

9. On August 1, 2023, I requested ALJ Mulrooney's order denying the issuance of subpoenas and the Government's filing pertaining to Postmeds, Inc., from January 1, 2023 to August 1, 2023. The agency marked that request for a single administrative order as raising "unusual circumstances." The order I requested relates to a case currently pending in the Eastern District of Virginia, *Postmeds, Inc. v. DEA*, 1:23-cv-00648-TSE-JFA. The plaintiff, Postmeds, is represented by, among other attorneys, former Deputy Attorney General Jim Cole.

10. In the case, Postmeds alleges in its Complaint that "In answering DEA's charge, it is essential that Hayward be able to examine and use the records of DEA's interactions with Hayward in 2019. *When asked for that information, however, DEA refused to provide it. And when Hayward asked the ALJ to issue subpoenas for those records, the ALJ ruled that DEA's regulations did not empower him to do so*." Accordingly, the plaintiff alleges "after being made the target of DEA's first and only attempt to enforce the online-pharmacy requirement, Hayward faces a hearing in which it cannot obtain exculpatory evidence." The plaintiff then asserts that DEA proceedings are unconstitutional because "DEA regulations provide no mechanism by which respondents in DEA administrative proceedings can obtain documents and information to vindicate their due process rights." The complaint quotes the ALJ's remark in that case: "As CALJ Mulrooney conceded during a preliminary hearing, 'if an agency withholds discovery to a point where it affects due process, it can constitute error. An issue for you is that there's no mechanism to make that work.'"

11. The conduct of DEA in these administrative proceedings—particularly the disclosure policies surrounding and within them—is of particular interest to me. The allegations

---

[1] https://www.archives.gov/records-mgmt/grs/grs06-1-faqs.html
[2] https://www.archives.gov/files/records-mgmt/email-management/final-capstone-white-paper.pdf

made in this lawsuit are consistent with my experience and consistent with my description of DEA proceedings as a "Star Chamber," where DEA does not turn over exculpatory evidence.

12.     On August 15, 2023, I made FOIA requests for documents relating to DEA's implementation of FOIA in the custody or control of its Chief FOIA Officer. One request, Request 23-00952-F, for example, seeks "Communications between DEA's Chief FOIA Officer and Administrator Anne Milgram recommending any adjustments to agency practices, policies, personnel or funding to improve FOIA functioning."

13.     Because DEA has no Chief FOIA Officer, however, I do not expect DEA to be able to respond to these requests and any produce records. Of course, if DEA had a statutory compliant Chief FOIA Officer that did the duties listed under 5 U.S.C. § 555(j), there is an overwhelming probability at least some records would exist. The inability of DEA to produce such records causes me concrete harm in many ways, including depriving me of information regarding DEA's implementation of FOIA that would normally be available to the public by request through FOIA. That information would be useful to me, for example, to use in this lawsuit or in writing about FOIA issues. In furtherance of my legal and journalistic enterprises, I expect to continue to make requests for records that would be in the custody or control of DEA's Chief FOIA Officer.

14.     My coverage of DEA and drug policy issues—which includes my FOIA exploits—garner significant attention in the industry media. Recently, for example, my FOIA requests relating to marijuana rescheduling was republished by several industry publications, including Marijuana Moment (https://www.marijuanamoment.net/biden-admin-has-no-record-of-marijuana-letter-cited-by-dea-head-in-congressional-testimony/). Beyond industry publications, the On Drugs newsletter also has many subscribers from mainstream news outlets, including subscribing reporter at the Wall Street Journal, Washington Post, MSNBC, and New York Times.

15.     In the past two weeks, I informally consulted with one such reporter on DEA's improper FOIA response to his FOIA request, which comprised less than 100 pages and yet took approximately *4 years* to process. In response, DEA made several "non-responsive" redactions, such as the one depicted below where the "below email chain" has been redacted:



16. The D.C. Circuit in *American Immigration Lawyers Association v. EOIR*, stated that "non-responsive redactions . . . find no home in FOIA's scheme." So, "once an agency identifies a record it deems responsive to a FOIA request, the statute compels disclosure of the responsive record—i.e., as a unit—except insofar as the agency may redact information falling within a statutory exemption." *Id.* This is not an obscure point of law or fact pattern that a properly appointed Chief FOIA Officer properly supervising an agency's FOIA arm would be unaware of. Indeed, I copy and pasted this text right out of OIP's FOIA manual at https://www.justice.gov/oip/oip-guidance/defining_a_record_under_the_foia. According to the manual, "After the court's decision in *AILA* it is not permissible to redact information within a record as 'non-responsive.'" Although FOIA gives agencies some room to define what a "record" is—in some cases the e-mail and its attachment may be two "records" not one—"ordinary practice leaves very little wiggle room in generally requiring an email with attachments to be kept together as a single record." *Judge Rotenberg Educ. Ctr., Inc. v. FDA*, 376 F. Supp. 3d 47, 62 (D.D.C. 2019) (citing cases). So too, with e-mails earlier in a chain that later e-mails subject to the FOIA

request. DEA's "non-responsive" redactions go far beyond the limits of what contemporary FOIA jurisprudence allows.[3]

Executed in Harris County, Texas on August 18, 2023August 18, 2023.

*/s/Matthew C. Zorn*
Matthew C. Zorn

---

[3] To be clear, I'm not trying to litigate this issue, which belongs to another and is completely tangential. Rather, I merely wish to illustrate how deep and far-reaching DEA's FOIA non-compliance goes in furtherance of my Chief FOIA Officer claim. Having a statutory compliant politically accountable Chief FOIA Officer (i.e., the statutory supervision Congress intended) would mitigate against obvious and flagrant FOIA violations and are types of issues that a Chief FOIA Officer should be held to account for.