UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW C. ZORN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-02396 |
| | § | |
| U.S. DEPARTMENT OF JUSTICE, ET AL. | § | **Oral/Evidentiary Hearing Requested** |
| | § | |
| | § | |
| Defendants. | § | |

**REPLY IN SUPPORT OF PRELIMINARY INJUNCTION AND TRIAL ON MERITS**

## I.     Conference

Any conference failure is substantially justified *and* harmless, warranting no sanction. *See* Fed. R. Civ. P. 37.

Candidly, if Local Rules require conferring before requesting a preliminary injunction, I made an innocent oversight because I seek partially dispositive relief, and Local Rule 7.1 doesn't require conferring over dispositive motions. Also, there were vacation issues. Conference requirements exist to resolve/narrow issues before judicial intervention, not to impose a senseless threshold requirement where parties will inevitably not agree on merits. The Government does not claim anything could have been averted or narrowed with a conference; nor could it. So here, there is no harm to either side or the Court from any failure.

## II.     Standing

The argument that an attorney/journalist (press) that writes on drug policy lacks standing to contest blocked access to DEA's adjudicatory materials—agency law—to use in both advocacy and journalism to educate/inform the public has no merit. From today alone:



First, what do I claim and seek? DEA violates the First Amendment by making adjudicatory proceedings and their records inaccessible. My papers lay out numerous cognizable and concrete informational and pecuniary injuries, *see, e.g.*, Dkt. 61 (3AC) ¶¶ 6c, 105-115; that I can't access adjudicatory records or proceedings is traceable to DEA's unconstitutional conduct; and a judgment requiring DEA to make such records/proceedings reasonably accessible obviously redresses that harm. I even quote the Administrative Conference as support. *Id.* ¶ 110.

The Government hasn't moved to dismiss this under Rule 12(b)(1) but argues as such. Under 12(b)(1), "general factual allegations of injury resulting from the defendant's conduct may suffice" and "general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quot. omitted). Under this standard,

my pleadings easily hold up. And, materials beyond pleadings should be considered in any event, as I'll note in my next filing

Start with the claim that my "complaint makes no specific allegation regarding any DEA administrative proceeding to which [I have] been denied access." Incorrect. I made one such request explicitly on behalf of clients. 3AC ¶ 46 n.10, ¶ 114 n.65 (referencing that request); Dkt. 54 at 1. My declaration elaborates and discusses two other concrete examples. The Government also misleadingly quotes me as stating "nothing prevents the media or members of the public from attending hearings." To be clear, *if the public has notice of these hearings,* which nearly always *it does not*. Adjudications become publicly known months after (or with the M&D case, years) *if* the Administrator publishes a Decision.

*Public Citizen v. DOJ*, 491 U.S. 440, 449 (1989) ought to shortcut debate. There, a watchdog sought compliance with the Federal Advisory Committee Act, which stipulates that advisory committee records be made available to the public. Standing was contested on (1) generalized grievance and (2) redressability grounds. The Court rejected both objections. First, a plaintiff for asserting injuries rooted in information deprivation for standing purposes need only show that information was sought and denied. *Id.* at 449. Second, on redressability, the Court found that if the plaintiff prevailed on its claims, the committee would at least have to give notice of meetings. *Id.* at 450. So too here with DEA adjudications. As to standing, there is no meaningful difference between *Public Citizen* and this case.

*Public Citizen* references FOIA, which is instructive here too. My claim is that a practice/policy erects an unconstitutional barrier to my rightful access to information. In informational challenges to a policy/practice, not a specific action, a party has standing where (1) the infraction is not isolated; (2) it is personally harmed by the policy/practice; and (3) there is a

likelihood of future harm from the policy/practice. *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2016). The inquiry here is the same—and easily met—especially because I describe direct and downstream consequences on top of being denied information, *see Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 938 (5th Cir. 2022), such as an inability to write timely stories, interference with representations, and time/resource expenditures.

The Government also meritlessly presses the "certainly impending" button for injunctive relief. But I *currently* can't access DEA proceedings to write about them or use, which is core to my jobs. This isn't "conjecture" or "impending." It is continuing harm, here and now, as I type out these words. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("continuing, present adverse effects").

Indeed, as was the case in *Public Citizen*, the Government's standing argument collapses on itself. It (incorrectly) asserts I can't identify any specific proceeding that I'm interested in. But if true, why so? ***Because they are secret***.  If the Court lifts that veil, I could identify proceedings with particularity, both here and as regulations require for FOIA. Dkt. 54 at 1 (citing 28 C.F.R. § 16.3(b)). According to the Government, I suffer at least one informational injury now traceable to the violation I allege that a judgment of requiring increased agency disclosure redresses.

Here's the proof. Right on time, I received a DEA letter (Ex. A) yesterday removing any possible doubt as to my standing on my First Amendment claim—and furthers my irreparable harm points. A detailed FOIA request I made is being held up ***because I can't identify a "docket number" or "case name,"*** which DEA OALJ is ***requiring*** but ***keeping secret***.

> Subject: ALJ Mulrooney's order denying the issuance of subpoenas described in paragraph 68 of the attached document; The Government's filing described in paragraph 112 of the attached document, from January 1, 2023 to August 1, 2023
>
> Matthew Zorn
> *Sent via e-mail:* mzorn@yettercoleman.com
>
> Dear Matthew Zorn:
>
>    This letter responds to your Freedom of Information Act/Privacy Act (FOIA/PA) request dated August 1, 2023, addressed to the Drug Enforcement Administration (DEA), FOIA/PA Unit, seeking access to information regarding the above subject. Your request was opened and assigned the above case number. Please include this case number when communicating with this office.
>
>    After reviewing your request, we conducted a search for responsive records pertaining to the above subject. To search for responsive records, we queried the Office of Administrative Law Judges (ALJ). As a result of our query, ALJ determined that in order to conduct an adequate search additional information is needed (such as, for example, docket number or case name).
>
>    To this end, no further action will be initiated on this request until we are in receipt of the additional information. If this office does not receive your response within 30 business days, DEA will assume that you do not wish to pursue this matter and your request will be administratively closed. **Please e-mail your response to DEA.FOIA@dea.gov.**

*Q.E.D.*

## III.    Merits

### A.    The Government Misstates *Calder*'s Holding.

I previously addressed *Calder v. IRS*, 890 F.2d 781, 783 (5th Cir. 1989), a case about Al Capone's IRS records. Dkt. 54 at 1-2. To repeat, this is ***not*** my claim. I claim a right to timely and reasonable access to ***adjudicatory records***, not all agency records.

In *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 699 (6th Cir. 2002) (*DFP*), the Sixth Circuit distinguished *Calder* and similar cases which "concern purported rights of access to, or disclosure of, government-held ***investigatory*** information and not access to information relating to a governmental ***adjudicative*** process." So too here. To elide this distinction, the Government swaps in "*agency*" for "*proceeding*" or "*adjudicative*," stating, "The Fifth Circuit has rejected extension of the experience and logic test to administrative ~~proceeding~~ agency records." Resp. 10. The distinction is material, however, and to say my position is "*inconsistent with binding precedent*" isn't quite candid. *Id*.

The Fifth Circuit has never addressed the question. The Government does not deny that other Circuits agree with me. And, given recent Fifth Circuit trends vis-à-vis the modern administrative state, there no reason to believe it will depart here and side with the admin state.

### B.     The Experience/Logic Test Is Met.

The overlap between DEA's enforcement proceedings and criminal CSA proceedings is self-evident. The Controlled Substances Act (CSA), a putative criminal law, underlies both. Both involve enforcing it. Quite obviously, there is a long openness tradition with criminal law enforcement. *See, e.g.*, U.S. Const. Amend. VI.

The question is if DEA enforcement proceedings "walk, talk, and squawk" like a judicial proceeding, *DFP*, 303 F.3d at 702, not whether there is a history of DEA proceedings being open. This evaluates "the kind of work the proceeding actually does." *New York C.L. Union v. New York City Transit Auth.*, 684 F.3d 286, at 301–02 (2d Cir. 2012) (*NYCLU*).

The Government never disputes that under court-like procedures, what "goes on at [DEA administration] hearings is a determination of whether a respondent has violated [the CSA]" and DEA regulations. *Id.* at 301-02. Instead, it perplexingly describes *NYCLU* as inapposite because there, the agency "shared jurisdiction with a criminal court" so "the historical openness applicable to that criminal court was also applicable to the administrative agency proceedings." But of course, here, DOJ (which includes DEA) prosecutes both CSA violations in district court *and* before itself administratively. Jurisdiction is shared and often *interchangeable. See* 21 U.S.C. § 882(a). *E.g.*, *United States v. Walmart Inc. et al.*, 1:20-cv-1744, Dkt. 1 (D. Del.) (civil CSA enforcement action). *NYCLU* is spot-on.

Nor can there be genuine dispute that public access "enhances the quality" of adjudications that involve enforcing drug laws and public rights. *DFP*, 303 F. 3d at 703. Indeed, the record shows this in a concrete way. Twice, I showed how press may have ***changed the outcome*** of DEA

proceedings. Not surprising. Where, as here, a law enforcement agency adjudicates public rights *before itself*, "the government has nearly unlimited authority" and "the press and the public serve as perhaps the only check on abusive government practices." *DFP*, 303 F.3d at 704.

### C.    Other Factors

The Government again myopically focuses on "the allegations of the complaint." But a preliminary injunction motion can obviously draw on evidence beyond a complaint, like affidavits. *See* 11A Wright & Miller, Federal Practice and Procedure § 2949 (3d ed. 2016).

The Government laments an alleged "dilatory approach." Resp. 15. But I didn't delay. As I hope to explain at an evidentiary hearing, I filed when I had a reasonable basis to think I could carry the burden of persuasion to show irreparable harm/public interest. I have always strongly believed in the merits. Until the Morris & Dickson events, however, I didn't believe I could effectively show the Court that this grievance rises to a level of irreparable (and societal) harm deserving of expedited relief.

The nature of the violation at issue—secrecy—also matters. Because of secrecy, it is hard to investigate the scope and magnitude of this harm. *E.g.*, *Kuklachev v. Gelfman*, 629 F. Supp. 2d 236, 250 (E.D.N.Y. 2008) (excusing delay where circumstances made it hard to "investigate" harm); *see also, e.g.*, *Lisa Frank, Inc. v. Impact Int'l, Inc.*, 799 F. Supp. 980, 1001 (D. Ariz. 1992) (seven-month delay excused because of information learned in discovery). Indeed, the Government insists I have *no harm* let alone irreparable harm because I cannot identify proceedings in detail, which proves my points precisely: I only recently learned of key citable evidence to support my burdens and positions due to AP leaks. My expectation that the Court needs evidence (as opposed to bluster) to support entry of a preliminary injunction that can withstand appeal is reasonable.

Finally, the assertion that I "gratuitously" invoke the opioid epidemic, Resp. 15, is respectfully, utterly unmerited. I'm happy to explain more at a hearing and be cross-examined. In brief, I've spoken and worked with victims of the crisis; some bemoan the way DEA conducts business. DEA doesn't "fight[ ] the opioid" epidemic with secret "trust us" adjudications against pharma. Quite the opposite, and don't take my word for it.

In 2018, DEA joined hands with the opioid industry to oppose unsealing data sought by the press. They succeeded until the Sixth Circuit reversed, which found the data was of immense public interest. *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 934-38 (6th Cir. 2019); *see also Jennifer D. Oliva, Opioid Multidistrict Litigation Secrecy*, 80 Ohio St. L.J. 663, 667 (2019) ("If a September 2019 [DOJ IG] Report is any guide, the DEA also was motivated to intervene in the litigation ***to keep secret from the public its own massive failure to regulate the supply and distribution of prescription opioids***"); *see also id.* at 693, 99 (explaining how "[l]ack of transparency in cases involving ongoing public health and safety issues can kill" and secrecy inures "to the benefit of negligent regulators and profit-driven corporations for no legitimate legal reason"). After reversal, the court remarked less than two months ago that "requiring public production of the [data] was both wise and monumental." *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, Dkt. 5115 (Jul. 14, 2023 N.D. Ohio). The disclosure had allowed States and opioid crisis victims to hold those that unleashed the crisis accountable.

Despite that, DEA still fights disclosure there, *see id.*, which perhaps also explains the reason it fights making the ***existence*** of ***adjudications*** public—a reason that may serve its interest, but certainly not the public's.

Dated: September 8, 2023                  Respectfully submitted,

*/s/ Matthew C. Zorn*
Matthew C. Zorn
YETTER COLEMAN LLP
mzorn@yettercoleman.com
811 Main Street, Suite 4100
Houston, TX 77002
T: (713) 632-8000
F: (713) 632-8002

Shane Pennington
PORTER WRIGHT MORRIS & ARTHUR
spennington@porterwright.com
2020 K Street, NW, Suite 600
Washington, D.C. 20006
T: (202) 778-3005
F: (202) 778-3063

### CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Matthew C. Zorn*
Matthew C. Zorn

### WORDS

I certify that this filing has 1,995 words, excluding the case caption, signature block, and certificates.

*/s/ Matthew C. Zorn*
Matthew C. Zorn