# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MATTHEW C. ZORN | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| MERRICK GARLAND, in his official capacity | § | |
| as U.S. Attorney General; VANITA GUPTA, in | § | |
| her official capacity as U.S. Associate Attorney | § | |
| General and Chief FOIA Officer of the U.S. | § | Civil Action No. 4:-22-cv-02396 |
| Department of Justice; BOBAK TALEBIAN, in | § | |
| his official capacity as the Director of the Office | § | |
| of Information Policy; ANNE MILGRAM, in | § | |
| her official capacity as Administrator of the | § | |
| U.S. Drug Enforcement Administration; U.S. | § | |
| DEPARTMENT OF JUSTICE; and U.S. DRUG | § | |
| ENFORCEMENT ADMINISTRATION, | § | |
| | § | |
| Defendants. | § | |

**FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

*FOIA for thee, but not for me.*

1.      This is an action to declare and enjoin unlawful Freedom of Information Act ("FOIA") policies and practices of the United States Department of Justice's ("DOJ," "Justice Department" or the "Department") and its component agency, the United States Drug Enforcement Administration ("DEA"). These unlawful policies and practices result in the abuse and unlawful diversion of legitimate FOIA requests, allow justice to meted out in secret, and have stripped DOJ and DEA of accountability.

2.      On March 14, 2022, United States Attorney General Merrick Garland, released a memorandum (the "Garland Memo")[1] to all federal agencies. The Garland Memo establishes principles for agencies to follow in responding to FOIA requests. Among other things, it emphasizes the presumption of openness, that "[t]imely disclosure of records is also essential to the core purpose of FOIA," and that "[a]gencies must have effective systems in place for responding to requests in a timely manner." According to the Garland Memo, "[t]ransparency in government operations is a priority of this Administration and this Department."

3.      As this lawsuit shows, however, these aspirational remarks are window dressing for a cesspool of DOJ FOIA violations.

4.      This case began as an action to enjoin a preposterous DOJ policy of categorizing all but a scintilla of FOIA requests as raising "unusual circumstances." The "unusual circumstances exception" described in 5 U.S.C. § 552(a)(6)(B)(iii) permits agencies to defer responding to requests according to statutory timelines "only to the extent reasonably necessary to the proper processing of the particular requests" when there is a need to search for and collect records "from field facilities or other establishments that are separate from the office processing the request."

---

[1]     https://www.justice.gov/ag/page/file/1483516/download

5.     Department-wide, DOJ has formulated and adopted an unlawful secret policy of invoking the exception any time a FOIA processing office must look to any other office within the same component. As a result, according to this Justice Department policy, nearly all FOIA requests raise "unusual circumstances," and agencies never have to obey FOIA's statutory time limits.

6.     Moreover, at the corporate deposition, DOJ/DEA attested to the existence, adoption, and implementation of other serious improprieties, including:

   a.   DEA's Chief FOIA Officer does not lawfully occupy her office because she is not at the Assistant Secretary or equivalent level as required by statute.

   b.   DEA and DOJ have FOIA policies, interpretations, and staff manuals subject to FOIA's affirmative disclosure provisions that are not made available for public inspection in an electronic format, as FOIA requires.

   c.   DEA's recordkeeping practices for administrative proceedings systematically deprive litigants, journalists, and the public of timely access to records created during and relevant to DEA administrative hearings.

   d.   DOJ has an unlawful default policy of redacting the names and e-mail addresses of public servants when they appear in records requested distributed to the public in response to FOIA requests.

7.     Plaintiff seeks a declaratory judgment that Defendants have willfully violated FOIA, the Administrative Procedure Act, and the United States Constitution; and he seeks temporary and permanent injunctive relief to ensure that DOJ and its components obey a law that they say is essential to democratic functioning.

8.     In addition, this action seeks to declare and enjoin DEA's practice of conducting its administrative proceedings effectively in secret. Plaintiff seeks a declaratory judgment and appropriate injunctive relief to rectify First Amendment violations involving DEA's concealment and failure to make accessible its administrative proceedings.

**PARTIES AND STANDING**

9.       Plaintiff **Matthew C. Zorn** is an attorney whose residence and principal place of business are in this District. Zorn regularly works with clients in the controlled substances space. Zorn is also a journalist who publishes essays and articles on controlled substances on the newsletter On Drugs at ondrugs.substack.com. Zorn frequently uses FOIA for his work[2] and intends to continue to use FOIA to seek government documents related to drug policy to facilitate his work as an attorney and journalist.[3] As part of his employ, Zorn monitors, reviews, and distills cases and agency actions involving DEA for clients and the public. As detailed herein, Zorn has been repeatedly denied access to records and proceedings due to unlawful and unconstitutional policies and practices under FOIA and the First Amendment.

10.       Defendant **Merrick Garland** is the U.S. Attorney General and Head of the U.S. Department of Justice.

11.       Defendant **Vanita Gupta** is the Associate Attorney General. She also serves as DOJ's Chief FOIA Officer and is "at the Assistant Secretary level or equivalent level." 5 U.S.C. § 552(j)(1). As DOJ's Chief FOIA Officer, she is responsible for DOJ's efficient and appropriate compliance with FOIA, monitoring DOJ's implementation of and compliance with FOIA, reviewing and reporting DOJ's performance in implementing FOIA, and recommending to the Attorney General adjustments in FOIA practices, policies, and personnel.

---

[2]     *E.g.*,   https://www.marijuanamoment.net/dea-head-misspoke-about-biden-letter-directing-marijuana-scheduling-review-justice-department-says/.

[3]     By way of example, he has a FOIA request seeking records related to DEA's RFRA rules that has been outstanding for more than a year. Zorn intends to write about and publish those records for his newsletter. And, now, they are immediately relevant to an amicus brief he is drafting in an appellate case involving RFRA.

12.     Defendant **Bobak Talebian** is the Director of the Office of Information Policy ("OIP") at DOJ. Appointed by the Attorney General, the Director of OIP develops, coordinates, and implements FOIA policy, including publishing guidance and other material related to FOIA matters, and provides legal assistance and advice to government agencies and Justice Department components on questions regarding the interpretation and application of FOIA.

13.     Defendant **Anne Milgram** is the DEA Administrator. She is responsible for DEA's compliance with federal laws and regulations, including those at issue in this case.

14.     **DOJ** is an agency within the meaning of 5 U.S.C. § 552(f) and the parent department to DEA.

15.     **DEA** is an agency within the meaning of 5 U.S.C. § 552(f) and a component of DOJ.

## JURISDICTION AND VENUE

16.     This action arises under the laws and Constitution of the United States. The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

17.     Venue is appropriate in this District. 28 U.S.C. § 1391(e), 5 U.S.C. § 552(a)(4)(B).

## FACTS GIVING RISE TO THIS ACTION

## FOIA Background

18.     Congress enacted FOIA in 1966 "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."[4] Corruption, government inefficiency, and mistrust of public institutions all flourish "unless the people are permitted to know what their government is up to."[5]

---

[4]     *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (quot. omitted)).

[5]     *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772-73 (1989) (quot. omitted).

19.     Signing FOIA into law in July 1966, President Johnson declared:

> This legislation springs from one of our most essential principles: A democracy
> works best when the people have all the information that the security of the Nation
> permits. No one should be able to pull curtains of secrecy around decisions which
> can be revealed without injury to the public interest.[6]

20.     Following President Johnson's statement, Attorney General Ramsey Clark would

add his own sentiments:

> If government is to be truly of, by, and for the people, the people must know in detail the
> activities of government. Nothing so diminishes democracy as secrecy. Self-government,
> the maximum participation of the citizenry in affairs of state, is meaningful only with an
> informed public. How can we govern ourselves if we know not how we govern? Never was
> it more important than in our times of mass society, when government affects each
> individual in so many ways, that the right of the people to know the actions of their
> government be secure.[7]

21.     More than 60 years later, the current Justice Department has echoed these views.

In his first full week in office, Defendant Attorney General Garland stated: "Without

accountability, democracy is impossible. And democratic accountability requires the kind of

transparency that the FOIA makes possible." "That is why faithful administration of FOIA is

essential to American democracy." Months later, in November 2021, Defendant Gupta repeated

the Attorney General's sentiments:

> At the Department of Justice, we take very seriously our responsibility of
> transparency and accountability through faithful compliance with the Freedom of
> Information Act. In his first week in office, Attorney General Garland recognized
> the importance of the mission of FOIA at the Department of Justice's Annual
> Sunshine Week Event. The Attorney General noted that, "without accountability,

---

[6]   https://www.justice.gov/oip/attorney-generals-memorandum-public-information-section-
administrative-procedure-act

[7]   https://www.justice.gov/oip/attorney-generals-memorandum-public-information-section-
administrative-procedure-act

democracy is impossible. And democratic accountability requires the kind of transparency that the FOIA makes possible."[8]

22.     In the same remarks, Gupta added that as someone who used FOIA in roles outside of government, she knows "how important the Act is for government accountability" and that "[a]t its core, FOIA is about public trust: trust that those who are charged with faithfully executing the laws are in fact doing so with integrity and in the public's interest."

23.     One year later, in a statement to Congress, Defendant Talebian would claim, among other things, that the Garland Memo "underscore[s] the federal government's commitments to transparency in government operations and the fair and effective administration of the FOIA" and reminds "agencies to comply with both the words and the spirit of FOIA."[9]

24.     These lofty statements from current high-ranking Justice Department officials suggest to us that DOJ and its components are not a cabal; they do not operate in secret; their business is the public's business; and they serve the people and their representatives—and not just moneyed interests that have connections within agencies and therefore do not need to resort to the FOIA to get information related to pending matters.

25.     Too bad it's all hogwash.

### AIMS Institute Seeks DEA Guidance Regarding Federal Right to Try

26.     AIMS is an integrative oncology clinic that provides care to persons with advanced illness, including end-stage cancer. Many of these persons suffer from debilitating anxiety and depression. To mitigate patients' anxiety and depression, AIMS uses a variety of treatment modalities, including ketamine-assisted psychotherapy. Some patients, however, do not respond

---

[8]     https://www.justice.gov/opa/speech/associate-attorney-general-vanita-gupta-delivers-remarks-chief-foia-officers-council

[9]     https://www.judiciary.senate.gov/imo/media/doc/Talebian%20testimony.pdf

to therapy with conventional or even cutting-edge and somewhat-unconventional medications or modalities. Left untreated, this anxiety and depression can accelerate illness, reducing patients' already-short time to live and robbing them of peace and comfort in their final days.

27.     Dr. Aggarwal has closely followed ongoing clinical trials studying the investigational drug psilocybin as a tool for the relief of anxiety and depression in patients with life-threatening illnesses. Psilocybin has proven safe and effective in relieving anxiety and depression in this patient population. Indeed, clinical trials have shown that the relief provided is immediate, substantial, and sustained. In 2020, Dr. Aggarwal formed the professional medical opinion that at least some of his patients with advanced-stage cancer would benefit from access to psilocybin therapy and began looking for a legal way to facilitate that access.

28.     AIMS and Dr. Aggarwal, on advice of counsel, believe that state and federal Right-to-Try ("RTT") laws permit access to psilocybin for therapeutic use with terminally ill patients suffering debilitating anxiety and depression under certain conditions.

29.     In October 2020, Dr. Aggarwal and AIMS retained Kathryn Tucker[10] to interface with DEA on accessing psilocybin for therapeutic use with terminally ill patients under state and federal RTT laws. Months later, Tucker submitted a letter on behalf of Dr. Aggarwal and AIMS to DEA's Regulatory Section. The letter provided background information about RTT and requested guidance regarding how DEA would accommodate Dr. Aggarwal's and AIMS's request for access to psilocybin for therapeutic use with their terminally ill patients under RTT. Tucker followed up with the agency via e-mail on February 2nd and inquired whether, as an alternative solution, the agency might grant Dr. Aggarwal and AIMS an exemption from prosecution.

---

[10]   Tucker, Aggarwal, and AIMS were previously Plaintiffs in this action. Zorn, along with Tucker, represented AIMS and Aggarwal in *AIMS v. Garland*, and he currently represents AIMS and Aggarwal in proceedings currently pending before the Ninth Circuit along with Tucker.

30.     DEA responded in a February 12th letter that disclaimed any authority to entertain a request for access. Dr. Aggarwal, two of his terminally ill patients, and AIMS sought judicial review of that determination. In response, the agency argued that its letter to Tucker was not final agency action subject to judicial review and sought dismissal of the case for lack of jurisdiction. And, to encourage dismissal, DEA invited petitioners "to petition the agency for a rescheduling."

31.     The Ninth Circuit accelerated the petition for review and held oral argument in September 2021. On January 31, 2022, the Ninth Circuit dismissed the petition on jurisdictional grounds as DEA requested, holding that DEA's response to the Tucker letter did not constitute final agency action subject to judicial review. *AIMS v. Garland*, 24 F.4th 1249 (9th Cir. 2022). The court did not reach the merits.

## Plaintiff Petitions DEA for Final Agency Action

32.     Days after the Ninth Circuit's decision in *AIMS v. Garland*, Dr. Aggarwal and AIMS submitted two administrative petitions to DEA requesting a final appealable decision on the merits. First, on February 2, 2022, Dr. Aggarwal and AIMS petitioned DEA to initiate proceedings to reschedule psilocybin from Schedule I to Schedule II—just as the agency had suggested in the Ninth Circuit litigation in arguing for dismissal. Second, Dr. Aggarwal and AIMS petitioned DEA for a waiver of or exemption from the CSA's registration requirements.  Repeating many of the arguments they had made nearly a year ago in *AIMS v. Garland*, Dr. Aggarwal and AIMS sought a waiver or exemption from the agency so they could access psilocybin for therapeutic use with their terminally ill patients under RTT.

33.     More than four months passed without the agency accepting the petitions for filing or even confirming that it had received them.

-9-

34.     Concerned DEA was slow walking the processing of its petitions, AIMS sent a letter to Defendant Milgram on April 13th, explaining that more than two months had passed, and the agency had "not informed Petitioners whether their petition has been accepted for filing." The April 13th letter identifies that under DEA regulations applicable at the time, "[w]ithin a reasonable period of time after receipt" of a rescheduling petition, the Administrator "shall notify the petitioner of his acceptance or nonacceptance of the petition, and if not accepted, the reason therefor." 21 C.F.R. § 1308.43. AIMS further noted that in the past, accepting petitions never took more than two months. DEA did not respond to the April 13th letter.

**Plaintiff Turns to FOIA For Information and Transparency**

35.     Unable to confirm that DEA had accepted or even received either of their petitions—and without connections to DEA senior officials[11]—AIMS turned to FOIA.

36.     On March 31, 2022, Tucker, on behalf of AIMS and Dr. Aggarwal, sent targeted requests via e-mail (the "AIMS FOIA Request") to confirm that the agency had received the petitions and to understand if it had commenced a decision-making process.

37.     The AIMS FOIA request is both narrow in scope and time limited. AIMS and Dr. Aggarwal requested all copies of records, documents, communications, and e-mails related to (1) the rulemaking petition regarding "Rulemaking petition to reclassify psilocybin from a schedule I controlled substance to a Schedule II controlled substance" dated February 2, 2022, and (2) the request for waiver regarding "Access to Psilocybin for Limited Therapeutic Use Under State and Federal Right to Try Laws" dated February 10, 2022. They further limit their request to records created after February 1, 2022.

---

[11]   If AIMS had such connections, a more logical and efficient way to have confirmed receipt would have been to pick up the phone, as better-endowed and connected companies regularly do.

38.     FOIA's 20-day limit for agencies to respond to such requests passed without AIMS and Dr. Aggarwal hearing from DEA. Accordingly, on May 2, 2022, Tucker followed up via e-mail, stating "per below, a FOIA request was submitted on 3/31, generating the reply send from DEA offices on that same date. More than 20 business days have elapsed, and we have yet to receive any reply. Can you advise status?"

39.     This May 2nd e-mail prompted DEA to send AIMS and Dr. Aggarwal a boilerplate e-mail confirming receipt of the AIMS FOIA Request, advising them that DEA considered the targeted request to raise "unusual circumstances," and deeming it "complex." According to DEA, the AIMS FOIA Request raised "unusual circumstances" because it required a search of another office; and because the AIMS FOIA Request was allegedly "complex," the agency advised that it would take more than a month to respond even though DEA had not yet confirmed whether any documents within the scope of the request existed:

> The records you seek require searches in another office or offices, and so your request falls within "unusual circumstances." *See* 5 U.S.C. § 552(a)(6)(B)(i)-(iii). Because of these unusual circumstances, we are extending the time limit to respond to your request beyond the ten additional days provided by the statute. We have not yet completed a search to determine whether there are records within the scope of your request. The time needed to process your request will necessarily depend on the complexity of our records search and on the volume and complexity of any records located. For your information, this office assigns incoming requests to one of three tracks: simple, complex, or expedited. Each request is then handled on a first-in, first-out basis in relation to other requests in the same track. Simple requests usually receive a response in approximately one month, whereas complex requests necessarily take longer. At this time, your request has been assigned to the complex track. You may wish to narrow the scope of your request to limit the number of potentially responsive records or agree to an alternative time frame for processing, should records be located; or you may wish to await the completion of our records search to discuss either of these options.

40.     On May 31, 2022, Tucker submitted a follow-up FOIA request for "All records related to the receipt and processing of [the AIMS FOIA Request]. (February 1, 2022, and the present)." These records would, of course, be located within the FOIA office processing the request

and thus would not be subject to DEA's unlawful policy and pattern or practice. DEA did not timely provide a response to this follow-up FOIA request.

41.     On June 2nd, Tucker reached out to DOJ's counsel in *AIMS v. Garland.* She explained DEA's "lack of any response to either of our submittals." Tucker also explained that she had filed a FOIA request to determine what had happened to AIMS's and Dr. Aggarwal's petitions. Finally, she explained that, despite its limited nature, DEA had categorized this request as "complex" and therefore not subject to FOIA's timing requirements. DOJ's counsel responded that he would follow up with DEA.

42.     On June 14th, Tucker reached out to DOJ's counsel in *AIMS* again. The next day, DOJ's counsel confirmed that he had consulted with DEA and understood that the agency had received AIMS's and Dr. Aggarwal's petitions and that they were "currently under review." Yet, three months after the FOIA request, DEA had not responded—not even to confirm that it possessed the requested documents.

43.     DEA finally responded to Tucker's follow-up FOIA request in July 2022, notifying her that it administratively closed the request for processing notes because the agency was still processing the AIMS FOIA Request.

44.     On August 26, 2022, (after this lawsuit had already been filed) DEA reconsidered its position on the processing notes request.

### Zorn Uncovers the Secret, Unlawful "Unusual Circumstances" Policy

45.     Apart from his representation of AIMS, Zorn represents other clients in matters before DEA. He also regularly writes stories and news pieces on drug policy history and current events. In his capacity as an attorney and journalist, he relies on FOIA for disclosure from DEA.

46.     Plaintiff Zorn has submitted FOIA requests[12] to DEA. DEA tagged each as raising "unusual circumstances," including one request that sought e-mails involving a single person and five obscure search terms. No request—not even one seeking a *single judicial record*—escaped automatic categorization as raising "unusual circumstances," and none prompted DEA to include even an estimated timeline for response. For example, on April 22, 2022, Zorn requested:

> A copy of the transcript of proceedings of the January 28 through January 30, 1975, hearing before Administrative Law Judge (ALJ) Parker. *See* 40 Fed. Reg. 44163 at 44164 (Sept. 25, 1975). (Date Range for Record Search: From 01/01/1975 To 01/30/1975)

On April 28, 2022, the agency claimed this request (number 22-00563-F) for a single transcript raised "unusual circumstances," deemed it "complex," and advised that a response would "necessarily take longer" than a month.

47.     Zorn also made FOIA requests on behalf of clients in an administrative rulemaking proceeding before DEA. On April 4th, Zorn submitted a FOIA request (Request No. 22-00488-F) seeking records that DEA relied on for a technical analysis published in the Federal Register supporting the placement of five chemicals into Schedule I. The technical analysis cites and relies on over two dozen unpublished drug discrimination studies done under a government contract:

> Elsken C and Forster MJ (2006a). 4-Hydroxy-N,N-diisopropyltryptamine HCl: Time course (8-h) mouse locomotor activity test. Contract No. N01DA-2-8822.
>
> Elsken C and Forster MJ (2006b). 5-Methoxy-alpha-methyltryptamine HCl: Time course (8-h) mouse locomotor activity test. Contract No. N01DA-2-8822.

48.     To inform his advocacy, Zorn requested the referenced studies:

> The Spokane Medical Examiner's Office report discussed on page 14 of the DEA Report; copies of all non-book references cited on pages 22 to 28 of the DEA Report. 3; copies of the data review document sent to the Assistant Secretary for

---

[12]   Requests No. 22-00488-F, 22-00560-F, 22-00563-F, 22-000577-F, 22-00580-F, 22-00585-F, 22-00806-F, 22-00845-F, 22-01012-F, 23-00213-F. Since the filing of the lawsuit, DEA has resolved some of these requests. In a few cases, no responsive records existed. Plaintiff has also filed additional requests.

Health and Human Services (HHS) related to the Five Tryptamines discussed on page 2 of the DEA Report; for each of the Five Tryptamines, all documents relating to drug seizures, medical reports, and anecdotal reports relied on in the HHS Evaluations or DEA Report; all copies of communications or documents showing that "DEA has confirmed with HHS that their 2012 statements are still applicable" in the DEA Report on page 5; and all documents and evidence discussed on page 17 (Factor 4) or page 18 (Date Range for Record Search: From 1/1/2008 To 1/16/2022).

49.     These requested records were not difficult for DEA to locate access. They were in DEA's rulemaking file.

50.     Moreover, in an April 4th e-mail to DEA's FOIA liaison, DEA.FOIA@dea.gov, Zorn notified the agency that he needed the records for an ongoing administrative proceeding against DEA and **specifically identified agency counsel who had possession, custody, or control of the records**. Zorn copied that counsel on the communication. In other words, Zorn told the agency exactly where to go to retrieve the records. Collecting and producing these records, which DEA had already collected as part of a public administrative process, could not reasonably have taken more than several days. Notwithstanding Zorn's assistance, on April 15, 2022, the agency marked the request as raising "unusual circumstances" and delayed.

51.     Confused as to how the agency deemed every FOIA request as raising "unusual circumstances," including those described above, Zorn called DEA's FOIA officer on May 11th— the same day he received three separate notices marking requests as raising "unusual circumstances"—to inquire about the agency's process. The FOIA officer explained that it was "DEA policy" to mark *all* incoming FOIA requests that required contacting any office within DEA other than the FOIA office as raising "unusual circumstances." In other words, if a request seeks any record that isn't coincidentally in the processing office itself, DEA deems it per se "unusual" and "complex."

52.     What's more, on information and belief, DEA had collected the records responsive to Zorn's April 4th request by not later than March 28th. In the course of representing his clients in the ongoing administrative rulemaking proceeding, Zorn eventually received redacted versions of the documents he had requested under FOIA. Metadata from that disclosure shows that by *March 28, 2022*, DEA had collected most of the requested documents.

53.     Zorn followed up with agency counsel to confirm receipt of the agency's disclosure and raise concerns about the technical papers the agency had not produced. Zorn then reminded the agency that he currently "ha[s] outstanding FOIA requests for these exact documents. Unless the redacted information falls within a FOIA exemption, the redaction is improper."

54.     The very next morning, DEA remitted a letter to Zorn informing him that a search for the records (most of which DEA had already produced to him) had been completed. The letter decision informs Zorn that to process his request, Zorn would need to send the agency *$6,800.00* by check or money order up-front in advance for review time, which includes "processing any records for disclosure" such as "redacting the records and asserting the appropriate FOIA exemption." In other words, the agency demanded that Zorn pay thousands of dollars for a set of records nearly *identical to those the agency had just disclosed to Zorn a week earlier in the context of the pending administrative proceeding*. DEA emphasized that it would be unable to continue processing the request until Zorn agreed to pay the fee.

55.     Zorn called the number for the FOIA representative to alert him to the situation. Rather than receive a representative, he twice received the message: "Your call could not be completed as dialed. Please check the number and dial again." The line then promptly disconnected. Zorn then called the FOIA Public Liaison twice. Both calls went to voicemail.

56.     On April 29, 2022, Zorn submitted a FOIA request (number 22-00577-F) seeking the government contracts underlying the drug discrimination studies that DEA cited in the ongoing administrative rulemaking proceeding. On May 11, 2022, that request, too, was deemed to raise "unusual circumstances" and labeled "complex."

57.     As yet another example of DEA's policy and pattern or practice of flagrant FOIA abuse, on July 9, 2022, Zorn submitted a FOIA request (number 22-00845-F) seeking *one* publicly presented DEA poster and *one* seminar presentation made by a DEA official. In his request, Zorn identified the specific custodian of the records:

- Carbonaro TM, (2021) Evaluating Drug Abuse Liability: Applying Pharmacology Data to Drug Scheduling Actions. Oral Presentation at University of Arkansas for Medical Sciences. (Seminar presentation)

- Carbonaro TM, Tella SR, Boos TL (2022). The Controlled Substances Act Regulations on schedule I researcher registrations and the need to investigate new substances of abuse. Poster to be presented at 84th annual College on Problems of Drug Dependence Meeting.

58.     Based on its past practices, Zorn anticipated that DEA would unlawfully mark this simple FOIA request as unusual and complex to evade the statute's time limits. He therefore attempted to preempt DEA's inevitable invocation of its unlawful policy and pattern or practice by adding the following to the body of the FOIA request:

> Teresa Carbonaro has these records. They are two documents. This request is not complex and does not raise unusual circumstances. I need these documents for a hearing.[13]

---

[13]   Zorn tried, without success, to obtain these public records within the rulemaking proceedings. DEA refused to disclose these types of records (such as DEA contracts with scientists conducting the underlying technical studies), and the presiding ALJ refused to order further disclosure. Notably, FOIA is the *preferred* discovery tool for formal rulemaking. Charles H. Koch Jr., *Discovery in Rulemaking*, 1977 Duke L.J. 295 at 330 (1977) ("[I]f a rulemaking participant desires information contained in a government file, the FOIA may be the best available discovery tool."). The purpose of the FOIA's time limits is to permit "*prompt* access to agency files," to facilitate

59.     Nonetheless—and perhaps unsurprisingly—on July 12, 2022, DEA responded that Zorn's request, which sought a mere **two documents,** was "complex" and raised "unusual circumstances." Illustrating that the request had not raised "unusual circumstances" and certainly was not "complex," DEA recently responded to the request *and* produced the records to Zorn—a mere 46 pages—on August 9, 2022.

### The Structure and Operation of DEA's FOIA Office

60.     DOJ has a decentralized system for responding to FOIA requests, with each component designating a FOIA office to process records from that component.[14] A DOJ component is a separate bureau, office, division, commission, service, center, or administration that is designated by DOJ as a primary organizational entity.[15] DEA is a DOJ component.

61.     All components "have the capability to receive requests electronically either through email or a web portal."[16]

62.     By statute, each agency, including DEA, "shall designate a Chief FOIA Officer who shall be a senior official of such agency (at the Assistant Secretary or equivalent level)."[17]

---

public access to agency records in (among other contexts) adjudications and hearings. And while DEA ultimately withdrew the proposed rule in July 2022, Zorn's inability to obtain timely disclosure of the requested records through FOIA or the proceeding themselves is highly consequential. The requested records would have shed light on agency misconduct in attempting to criminalize research chemicals without first consulting FDA for a current medical and scientific evaluation and scheduling recommendation, as required by statute. *See* 21 U.S.C. §§ 811(b), (c).

[14]   28 C.F.R. § 16.3(a)(1).

[15]   28 C.F.R. § 16.1(b).

[16]   28 C.F.R. § 16.3(a)(1). In April 2022, DEA began informing requestors that it "will no longer accept FOIA/PA requests via e-mail."[16]

[17]   5 U.S.C. § 552(j)(1).

63.     Since March 2017, Kelleigh Miller has served as DEA's Chief FOIA Officer.[18] As DEA's Chief FOIA Officer, Ms. Miller oversees the implementation of FOIA and the Privacy Act. The duties of an agency's Chief FOIA Officer are prescribed by statute.

64.     DEA's FOIA Office is part of the Office of Chief Counsel.[19]

65.     Ms. Miller is not a senior DEA official or even a senior official within the Office of Chief Counsel. Ms. Miller reports to Brooke DuBois, the DEA Section Chief of the FOIA and Information Law Section at DEA. Ms. DuBois reports to Sandra Stevens, DEA Deputy Chief Counsel. Ms. Stevens reports to Hallie Hoffman, DEA Chief Counsel. Ms. Hoffman reports to Administrator Milgram.[20] Ms. Miller, DEA's Chief FOIA Officer, does not interface with Administrator Milgram, except through this chain of command.[21]

66.     Neither does she interface with DOJ's Chief FOIA Officer, Defendant Gupta. Indeed, on behalf of DOJ/DEA, she testified that she did not know Gupta's name because she doesn't have "any interaction with that individual."[22] Ms. Miller does have significant interaction with OIP, which is "essentially the FOIA office for DOJ."[23]

67.     DEA's FOIA Office has three sub-units: intake, processing, and legal/external affairs.

---

[18]   Dkt. 28-2, Deposition Transcript of Kelleigh Miller as 30(b)(6) Designee for the DOJ and DEA at 24. Citations to the deposition are noted in the form "Dep. [page]." Although specific portions of the deposition transcript are cited herein, its entirety is incorporated by reference.

[19]   Dep. 27.

[20]   Dep. 27, 29.

[21]   Dep. 34.

[22]   Dep. 36.

[23]   Dep. 36.

68.     Whenever DEA's FOIA Office receives a request, it drafts a search memo and sends that memo to the other sections of DEA that have the records.[24]

69.     The DEA FOIA Office does not determine what records are responsive. Other DEA sections do.[25]

70.     OIP, supervised by Director Talebian, handles all administrative FOIA appeals from DEA.[26] Director Talebian's decision on an appeal is the final word within the Executive Branch before judicial review.

71.     Before DEA undertakes review, it assesses review fees. Review fees are only charged to commercial use requests, which are requests where there is a "profit interest in the records sought."[27] DEA then charges $40 per hour for review at a rate of 7 minutes per page.[28] The seven minute per page number was developed by DEA's Chief FOIA Officer and three other individuals that "sat together and talked through" the issue based solely on their collective experience.[29] There is no empirical or analytical method backing the figure.

72.     Run-of-the-mill FOIA requests go through multiple layers of review. The initial review is done by a government information specialist. Second-level review is done by a manager or supervisor, whose time is estimated to be at 80% of the initial reviewer time. The manager goes through the document to the exact same extent as the initial reviewer, reading every page and

---

[24]   Dep. 98-99, 107.

[25]   Dep. 99.

[26]   Dep. 37; 28 C.F.R., Part 0, Subpart D-3; 28 C.F.R. § 16.8.

[27]   Dep. 125, 200.

[28]   Dep. 129.

[29]   Dep. 129-30.

line.[30] The only difference between the manager review and initial review is that the manager does not do initial processing.

73.     To summarize, DEA estimates fees by multiplying $40 by 7 minutes per page and then nearly doubles that amount to account for a supervisor's review, which largely overlaps with the initial review. Nearly 45% of the cost goes to quality control. This estimate assumes and charges for the notion that FOIA reviewers must read every page and line.[31]

74.     Requests are generally placed in one of three tracks: simple, complex, and expedited. Within these tracks, request are handled on a first-in-first out basis.[32] Requests with more than 20-pages will generally be deemed complex.[33]

75.     DEA has complex requests from 2018 and 2019 that are still open.[34] As a result, any request today for more than 20-pages of records will likely take at least 2 years to process.

## The Unlawful DOJ "Unusual Circumstances" Policy

76.     "Any time" a request requires searching for or collecting records outside the FOIA Office, DEA deems it to raise "unusual circumstances."[35] At DEA, the unusual circumstances determination is made by the intake unit, upon receipt of a request.[36] If even one document of a request might reside outside the FOIA Office, according to DOJ/DEA, the exception applies.[37]

---

[30]   Dep. 133.

[31]   Dep. 197-200.

[32]   Dep. 105-106.

[33]   Dep. 168, 186-87.

[34]   Dep. 164-65.

[35]   Dep. 57-58.

[36]   Dep. 103, 108-09.

[37]   Dep. 103-04.

77.     The "unusual circumstances" exception is codified at 5 U.S.C. § 552(a)(6)(B)(iii). It applies only "to the extent reasonably necessary to the proper processing of the particular requests." Relevant here, the first prong of the exception is when there is a "need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request."

78.     Under DOJ's unlawful "unusual circumstances" policy, virtually all FOIA requests fielded by DEA involve "unusual circumstances" under the first prong. For example, according to DOJ/DEA, a requested record moved from the FOIA office "across the hallway" about "ten feet away" raises unusual circumstances.[38] Requested records that can be transmitted electronically but do not appear in the FOIAXpress system also raise "unusual circumstances."[39] A request for e-mails contained on a centralized, single server that has all agency data raises "unusual circumstances."[40]

79.     Indeed, the DEA FOIA office does not have access to nearly any agency record one would want to request. Other than records generated by the FOIA office itself, DEA's FOIA Office has access only to records that have been previously requested and are kept in its FOIAXpress system. This is rare. It happens only when a requestor seeks records that in response to a prior request that exactly matches in scope and time-period.[41]

---

[38]   Dep. 70-71.

[39]   Dep. 72-74.

[40]   Dep. 231.

[41]   Dep. 63.

80.     This is because of how DEA keeps its records. The FOIA Office itself is devoid of nearly any DEA records, and DEA denies the FOIA Office access to records held in other sections. It does not have access to the "hundreds of IT systems that DEA uses."[42]

81.     This is not because of some technological or bureaucratic impossibility, either. DEA's IT office searches e-mails rather easily.[43] Rather, it is because of the unlawful policy. Despite the fact that the FOIA Office and IT office interact regularly,[44] under the unusual circumstances policy, DEA treats its Information Systems Division as an "establishment" separate from the FOIA section.

82.     Under the policy, nothing restricts an agency from staffing a FOIA Office (perhaps in Montana), giving it access to no records, and invoking unusual circumstances in response to every request to avoid having to produce a response according to statutory deadlines. Indeed, in effect, that is what DEA does.

83.     Put another way, since the DEA FOIA Office does not have "access" to any agency records other than those previously requested, the "unusual circumstances" policy all but guarantees that any time a requestor makes a FOIA request for a record that has not been previously requested, it necessarily raises unusual circumstances. Thus, under the unlawful DOJ/DEA policy, "unusual circumstances" applies in nearly all circumstances.

---

[42]   Dep. 59-60, 75-76.

[43]   Dep. 99, 231-34.

[44]   Dep. 237.

84.     This policy applies "Department-wide."[45] And while DOJ/DEA testified that the "unusual circumstances" policy is publicly disclosed in 28 CFR part 16 or DOJ Regulations,[46] Plaintiff is aware of no regulation or publicly available document that describes the policy, other than regulations that incorporate the meaning of "unusual circumstances" as defined in the FOIA statute. Because none of this detail follows sensibly from the statutory or regulatory text, however, this is a secret policy.

85.     After the filing of this lawsuit, DEA's Chief FOIA Officer discussed the unusual circumstances policy with OIP. OIP confirmed that the DEA policy is DOJ's interpretation and policy.[47]

### Violation of the Chief FOIA Officer Statute

86.     5 U.S.C. § 552(j) reflects Congress's will to enhance accountability under FOIA by ensuring that all agency Chief FOIA Officers be at the "Assistant Secretary or equivalent level." This means Chief FOIA Officers must be inferior Officers of the United States, i.e., "officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate."[48]

87.     This statutory requirement is important. By ensuring that agencies designate employees who are sufficiently senior that they will be directed and supervised by appointed

---

[45]   Dep. 77.

[46]   Dep. 68-69, 76-77. DOJ/DEA claims that 28 C.F.R., part 16 "defines unusual circumstances." It does not. 28 C.F.R. § 16.5(c) merely applies the meaning of unusual circumstances "as defined by the FOIA." When asked how the non-existent regulation defines "unusual circumstances," DOJ/DEA testified that the prong it primarily invokes is "any time that we need to search for records that are physically outside of our own office, we would invoke unusual circumstances." Dep. 68. Plaintiff has not found this elucidation in DOJ's FOIA regulations.

[47] Dep. 77, 122-124.

[48]   *Edmond v. United States*, 520 U.S. 651, 663 (1997).

officials, Congress injected a modicum of democratic accountability into an otherwise detached bureacratic system to ensure that agencies would take their FOIA issues and responsibilities seriously and not relegate them to the backburner of the federal administration.

88.     On information and belief, DOJ's Office of Legal Counsel ("OLC") rendered an informal opinion that 5 U.S.C. § 552(j) requires that, at minimum, Chief FOIA Officers qualify as inferior Officers of the United States.

89.     In recognition the requirement, DOJ designated Defendant Associate Attorney General Gupta as its Chief FOIA Officer.

90.     In January 2019, the Principal Deputy Attorney General sent a memorandum (the "2019 Compliance Memorandum") to the General Counsel of every federal agency and the Chief FOIA Officers of Executive Departments and Agencies, to remind them of this statutory command. Citing the statute, the Principal Deputy explained that the Act directs that designated Chief FOIA Officers "shall be a senior official of such agency (at the Assistant Secretary or equivalent level)." It further explains that "a proper exercise of the oversight role assigned to a Chief FOIA Officer requires appropriate authority and accountability."

-24-



**U. S. Department of Justice**

Office of the Associate Attorney General

---

Deputy Associate Attorney General                    *Washington, D.C. 20530*

January 30, 2019

MEMORANDUM FOR:    AGENCY GENERAL COUNSELS AND CHIEF FOIA
OFFICERS OF EXECUTIVE DEPARTMENTS AND
AGENCIES

CC:    COUNSEL TO THE PRESIDENT

FROM:    THE PRINCIPAL DEPUTY ASSOCIATE ATTORNEY
GENERAL

SUBJECT:    Chief FOIA Officer Designations

The Freedom of Information Act requires agencies to designate a Chief FOIA Officer who is charged with "agency-wide responsibility for efficient and appropriate compliance" with the Act. 5 U.S.C. § 552(j)(2)(A) (2012 & Supp. V 2017). The Act directs that these Chief FOIA Officers "shall be a senior official of such agency (at the Assistant Secretary or equivalent level)." *Id.* § (j)(1). In keeping with that statutory mandate, the Associate Attorney General has served as the Chief FOIA Officer for the Department of Justice.

The Department of Justice has long maintained that "[i]mproving FOIA performance requires the active participation of agency Chief FOIA Officers." Department of Justice FOIA Guidelines, 74 Fed. Reg. 51879 (Oct. 8, 2009). Experience has proven that a proper exercise of the oversight role assigned to a Chief FOIA Officer requires appropriate authority and accountability. Accordingly, I respectfully request that each agency review its Chief FOIA Officer designation and make any necessary adjustments to ensure that the designated official is at the Assistant Secretary level or its equivalent, as required by the Freedom of Information Act. The Department of Justice will require agencies to report whether their designations meet this statutory requirement in their 2019 Chief FOIA Officer Reports.

If you have questions about the administration of the FOIA, please contact the Office of Information Policy at DOJ.OIP.FOIA@usdoj.gov.

This memorandum is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or equity by any party against the United States, its departments, agencies, instrumentalities or entities, its officers, employees, agents, or any other person.

91.    Following this memorandum, DOJ and OIP required agencies in their Chief FOIA

Officer Reports to respond to a slate of questions. This was the very first question in the survey:

-25-

The FOIA requires each agency to designate a Chief FOIA Officer who is a senior official at least at the Assistant Secretary or equivalent level. Is your agency's Chief FOIA Officer at or above this level?[49]

92.     Many agencies understand this important requirement and have designated senior officials as their Chief FOIA Officers. In FY 2019, for example, the EPA and FCC designated their General Counsels as Chief FOIA Officer.[50]

93.     The following exchange suggests that, in classic "do as I say, not as I do" fashion, DOJ and its components operate under a different set of rules:

Q.  And the chief FOIA officer of DEA is you, Ms. Kelleigh Miller, correct?
A.  Correct.
Q.  And we can agree that the Drug Enforcement Administration is an agency, correct?
A.  It is.
Q.  So in (j)(2), the chief FOIA officer of DEA is you?
A.  Correct.
…
Q.  Were you -- are you at the assistant secretary or equivalent level?
A.  ***I am not.***
…
Q.  You are not at the assistant secretary or equivalent level, are you?
[*Objection*]
A.  I am not.
Q.  Okay. So let's – let's assume -- with your counsel's objection, let's assume you're correct. Then DEA currently has a chief FOIA officer that is contrary to what [the statute] says, true, under the assumption that your prior answer is correct, that you are not the assistant secretary or equivalent level?
A.  ***True.***[51]

94.     Underscoring the point, DOJ/DEA testified that DEA's Chief FOIA Officer does not report to a presidential appointee. Rather, she is five rungs down: she reports to the DEA

---

[49]   *E.g.*, https://www.cia.gov/readingroom/docs/CIA_FY2019_Chief_FOIA_Officer_Report.pdf

[50]   https://www.epa.gov/sites/default/files/2020-03/documents/final_usepa_2020_chief_foia_officer_report_-_pdf-a.pdf; https://www.fcc.gov/sites/default/files/chief-foia-officer-report-2020.pdf.

[51]   Dep. 32-42 (emph. added).

Section Chief of the FOIA and Information Law Section; who reports to the DEA Deputy Chief Counsel; who reports to the DEA Chief Counsel; who reports to the DEA Administrator.

95.     The corporate deposition further revealed that DEA's Chief FOIA Officer had reviewed the 2019 Compliance Memorandum but did not remember if DEA had reported whether it met the Chief Officer requirement (which it did not) in its report.

### The Unlawful Redaction Policy

96.     DOJ has an unlawful policy, which DEA follows, of not releasing the names or e-mail addresses of employees on any document unless that document has been made publicly available.[52]

97.     The policy putatively emanates from FOIA exemption (B)(6), which exempts from FOIA "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." DOJ contends that "personnel and medical files and similar files" means it could be any file."[53]

98.     According to DOJ, the policy is described in a memo "OIP put out a couple years ago about protecting the names of certain agency … staff," written by Melanie Pustay, the former Director of OIP. Accoridng to the policy, "across the Department," FOIA offices redact the names of any public sector employee "not at the SES level" because they are not "public facing" and therefore have "a right to privacy."

99.     This policy applies to *all* records Department-wide, including e-mails.

---

[52]   Dep. at 210-17.

[53]   Dep. at 213.

**Reading Room Violations**

100.    The corporate deposition further uncovered systemic violations of FOIA's reading room provisions.

101.    5 U.S.C. § 552(a)(2) imposes a non-discretionary duty on agencies to "make available for public inspection in an electronic format" certain important agency materials, including "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register" as well as "administrative staff manuals and instructions to staff that affect a member of the public."

102.    DOJ/DEA admitted to violating this provision. In addition to the undisclosed policies described above, DEA/DOJ also admitted that DEA's FOIA and Privacy Act internal manual (1) relates to processing FOIA requests, (2) affects the public, and yet (3) is not accessible to the public.

103.    Asked whether the manual should be accessible to the public, DOJ/DEA testified that "[i]t should be" but is not due to a "lack of resources."[54]

104.    This claim is not credible. DEA has an Electronic Reading Room with plenty of materials posted.[55] It would take a few e-mails to post the manual and other materials subject to affirmative disclosure provisions in the reading room as the law requires.

105.    Indeed, rather than take steps toward disclosure, DEA did the opposite. Across the top, the manual containing DEA's FOIA policy, which includes a statement of the unusual circumstances policy, improperly states that the contents of the document are "the property of

---

[54] Dep. 116.

[55] https://www.dea.gov/foia/foia-library

[DEA] and may not be disseminted outside DEA (or if loaned outside DEA, further disseminated) without the express written permission of the Office of Chief Counsel":



This document and its contents are the property of the Drug Enforcement Administration (DEA) and may not be disseminated outside DEA (or if loaned outside of DEA, further disseminated) without the express written permission of the Office of Chief Counsel.

**DRUG ENFORCEMENT ADMINISTRATION**

**FREEDOM OF INFORMATION AND PRIVACY ACT
POLICY NUMBER 0770**

### Records for or in DEA Adjudications

106.    DEA engages in adjudications relating to the CSA (for example, violations) and formal rule-making proceedings. ALJs from the DEA Office of Administrative Law Judges preside over these hearings. The proceedings are governed by the provisions of 21 C.F.R. §§ 1316.41-1316.68.

107.    DEA ALJs are neither elected officials nor political appointees. They are appointed by the Attorney General.

108.    Although nominally open to the public, DEA administrative proceedings are essentially secret tribunals—by modern standards at least—conducted away from the public eye and impossible to access.

109.    Most agencies that exercise significant executive enforcement like SEC,[56] EOIR,[57] FTC,[58] have e-Dockets to facilitate access to adjudicatory records from current and past proceedings. There is no e-Docket for DEA proceedings. Filings in DEA administrative

---

[56] https://www.sec.gov/litigation/apdocuments.shtml

[57] https://acis.eoir.justice.gov/en/

[58] https://www.ftc.gov/legal-library/browse/cases-proceedings

proceedings are conducted through the "DEA Judicial Mailbox"—*an e-mail inbox* at ECF-DEA@dea.gov.[59]

110.    All records from administrative proceedings are kept by the DEA Office of ALJs and not readily accessible by the DEA FOIA Office. And aside from final opinions or orders, the only way litigants, the press, or the general public can access records from current or prior administrative proceedings is through a FOIA request.[60] The adjudications themselves are not public.

111.    Emphasizing the importance of these materials, in 2017, the Administrative Conference of the United States ("ACUS")[61] stated:

> Given the importance of federal administrative adjudication, the materials generated throughout the course of any given adjudicatory proceeding—the aforementioned orders, pleadings, briefs, and other adjudication records—take on special significance. Insofar as adjudicative proceedings involve the application of federal power by unelected officials in the disposition of disputes between the government and private parties, or among private parties, the records associated with such proceedings are of immense public importance. On a more practical level, administrative adjudication documents can serve as ready-made models for private parties (especially those who are self-represented)13 in drafting their own materials, and may provide insight into the laws and procedures governing proceedings.[62]

112.    Because these records do not reside in the FOIA Office, requests for them necessarily raise unusual circumstances and incur significant delay under DOJ/DEA's unlawful policy.[63] As a result, there is no way to gain reasonably prompt access to administrative records.

---

[59]   https://www.dea.gov/administrative-law-judges

[60]   Dep. 86.

[61]   Congress created ACUS in 1964 as an independent agency to promote efficiency, adequacy, and fairness of agency procedures. *See* 5 U.S.C. §§ 591-596.

[62]   https://www.acus.gov/sites/default/files/documents/Adjudication%20Materials%20on%20Agency%20 Websites_8.pdf

[63]   Dep. 87.

-30-

For example, DEA also explained that even public filings in administrative proceedings undergo full FOIA review and incur hefty review fees because nothing on the face of such filings indicates they are public.[64] And because these records must also undergo review, a requestor must also pay DOJ/DEA thousands (perhaps tens of thousands) of dollars in review fees to access quintessentially publicly filed records from agency proceedings.

113.    DEA's problematic record keeping with respect to adjudications and rule makings is compounded by typical agency practice at these hearings. DEA ALJs set aggressive hearing schedules. The time from when a person receives notice of charges or of a rule making to an evidentiary hearing can be less than six months.

114.    Despite the fact that an adverse outcome in DEA proceedings can impose runious consequences upon individuals and businesses, parties appearing before the agency do not get a shred of the discovery that they would have a right to in a federal court proceeding of similar magnitude. Indeed, parties appearing before DEA in its administrative proceedings get very limited disclosure. The agency has no obligation to turn over all material in its possession relevant to a litigant's claims or defenses, even exculpatory material; rather, at DEA, parties have a "limited right to receive in advance of the hearing the documentary evidence and summaries of the testimony which the Government intends to rely upon."[65]

115.    The consequence of these arrangements and practices is stark. Because of DEA's delinquent record keeping practices and the practice of its ALJs, there is no way for a party to obtain useful, perhaps exculpatory, records in the agency's possession or records from a prior administrative proceeding (for example, useful precedent or prior inconsistent testimony from an

---

[64]    Dep. 95.

[65]    74 Fed. Reg. 36758, 36760 (2009).

agency witness) in time for an evidentiary hearing.[66] The agency can accrue all the evidence and precedent it wants and build its case, then initiate a proceeding; litigants are forced to use a FOIA rendered toothless by DEA/DOJ's unlawful policies on a clock and get nothing from the agency until long after the hearing—and that is only if the party is willing and can afford to pay for review fees.[67] Indeed, this arrangement undermines a core purpose of the FOIA: to correct an imbalance of information by providing those having to defend themselves before an agency a meaningful means of obtaining accessing agency files in advance of an evidentiary hearing.

116.    DEA's record keeping practices and DOJ's unlawful FOIA policies thus create serious access-to-justice problems. They foster unfair, structural institutional advantages for DEA/DOJ in its own administrative proceedings, to the grave detriment of litigants and the attorneys who represent them. Moreover, they deprive the press, journalists, policymakers, parties, and lawyers of the ability to be informed about DEA proceedings and how the agency secretly conducts its affairs.

### Supplemental Facts Since the Third Amended Complaint

117.    Plaintiff incorporates his declarations filed (Dkt. 65-1) and (Dkt. 67-1) and the facts alleged therein by reference.[68]

---

[66]   DEA precedent unbelievably dictates that "the Government is not required to disclose *potentially exculpatory information* … at any phase of [DEA administrative] proceedings." 65 Fed. Reg. 75959, 75961 (2000) (emph. added).

[67]   For example, in response to one of Zorn's requests (No. 22-00560-F) the agency demanded *$41,960* to review approximately 5,000 pages of quintessentially public proceeding records. Zorn cannot meaningfully narrow this request and requests like these, in part, because DEA's adjudicatory proceedings are secret. One could imagine a situation where a publicly accessible list of filings would allow one to tailor a request and pick and choose which records one was interested in requesting.

[68]   To avoid any doubt, Plaintiff includes Ex. 1 as exhibits to the complaint containing additional material and also further expressly incorporates his pleadings and the exhibits he has filed since

118.     Plaintiff has made multiple requests for records in administrative proceedings.

119.     Plaintiff would seek additional records regarding pending and past DEA proceedings but cannot identify what proceedings exist. DEA's failure to provide information about pending administrative proceedings makes it difficult if not impossible for him to request records through FOIA. Plaintiff intends to request records from administrative proceedings go forward.

120.     Plaintiff has also filed multiple FOIA requests seeking records that would necessarily be in possession, custody, and control of the DEA's Chief FOIA Officer—if it had one.

- Any presentations, guidelines, or documents in the custody or control of DEA's Chief FOIA Officer regarding the "unusual circumstances" exception, how to distinguish between complex and simple requests, policies or methods by which DEA calculates fee estimates, and how DEA applies (b)(6) exemptions.

- Documents in possession of DEA's Chief FOIA Officer sufficient to show DEA's policy of treating records from pending administrative enforcement proceedings as FOIA exempt.

-  Emails between DEA's Chief FOIA Officer and Administrator Anne Milgram recommending any adjustments to agency practices, policies, personnel or funding to improve FOIA functioning from January 1, 2023 to August 15, 2023

121.     DEA has not produced any records in response to these requests. Indeed, as DEA's responses make clear, which are attached and incorporated into this supplemental pleading, the cause of its failure to produce records is traceable to the fact that "the DEA does not have a Chief FOIA Officer as mentioned in 5 U.S.C § 552 (j)."[69]

122.     Recently, opposing transparency, the agency has turned to arbitrarily, capriciously, and lawlessly closing requests that would shed light on how DEA's FOIA Office is processing his pending requests.

---

seeking leave to file his Third Amended Complaint. *E.g.*, Dkt. 76-1, Dkt. 65-2, Dkt. 65-3, Dkt. 48-1, Dkt. 48-2, Dkt. 48-3

[69] Ex. 1 (exhibits to be considered with the complaint).

Case Number: 23-00912-F

Subject: The FOIA processing notes related to request 23-00347-F
(Date Range for Record Search: January 15, 2023 – August 1, 2023)

Matthew Zorn
Attorney
Yetter Coleman LLP
811 Main Street, Suite 4100
Houston, Texas 77002
*Sent via e-mail:* mzorn@yettercoleman.com

Dear Matthew Zorn:

  This letter responds to your Freedom of Information Act/Privacy Act (FOIA/PA) request letter dated August 2, 2023, addressed to the Drug Enforcement Administration (DEA), FOIA/PA Unit, seeking access to DEA records pertaining to the above subject.

  Please be advised that this office is currently processing FOIA case number 23-00347-F. Therefore, we are administratively closing this request. Once FOIA case number 23-00347-F is complete, please feel free to resubmit your request.

123.  As noted in the complaint in this action, Dkt. 1, with respect to a request filed by former Plaintiff Tucker, on behalf of her client AIMS, seeking processing notes regarding a pending FOIA request:

> On July 13, 2022, DEA finally responded to Tucker's follow-up FOIA request, notifying her that DEA was administratively closing the request for the processing notes because the agency is allegedly still processing the AIMS FOIA Request, which Tucker submitted months earlier. DEA further stated that when the AIMS FOIA Request is completed, Tucker should "feel free to resubmit [her] request" ….

> Unsurprisingly, DEA's July 13th letter cites no statute or regulation permitting the agency to administratively close a FOIA request under these circumstances, and Plaintiffs are aware of none

124.  The above response to request 23-00912-F is similar. It shows DEA response to a request dated August 2, 2023, seeking FOIA processing notes related to Request 23-00347-F—and that it has resumed its unlawful conduct of closing processing notes.[70] Importantly, this request

---

[70]  Plaintiff was counsel for AIMS and is still counsel for AIMS in a related action.

seeks FOIA processing notes—documents that would be *in* DEA's FOIA Office and therefore cannot be subject to its unlawful unusual circumstances policy.

125.    As background, DEA agreed that Request 23-00347-F seeking communications between DEA and FDA regarding Adderall shortages. DEA agreed that the request merited expedited treatment because there is "an urgency to inform the public about an actual or alleged [f]ederal [g]overnment activity, if made by a person primarily engaged in disseminating information" as shown in DEA's response below:

Case Number: 23-00347-F

Subject: Communications between DEA and FDA regarding Adderall shortages described in 87 Fed. Reg. 74168 (Date range for search: January 1, 2022 to February 14, 2023)

Matthew Zorn, Esq.
Yetter Coleman LLP
811 Main Street Suite 4100
Houston, Texas 77002
*Sent via e-mail:* mzorn@yettercoleman.com

Dear Mr. Zorn:

    This letter responds to your Freedom of Information Act/Privacy Act (FOIA/PA) request dated February 14, 2023, addressed to the Drug Enforcement Administration (DEA), FOIA/PA Unit, seeking expedited treatment.

    In your request letter, you seek expedited treatment pursuant to the first, second, third, and/or fourth standards enumerated in the Department of Justice's (DOJ) FOIA regulations. Expedited treatment pursuant to the first standard will be granted where not doing so "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual." 5 U.S.C. § 552(a)(6)(E)(v)(I); *see also* 28 C.F.R. § 16.5(e)(1)(i) (2022).  Under the second standard, you must demonstrate that there is "an urgency to inform the public about an actual or alleged [f]ederal [g]overnment activity, if made by a person primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also* 28 C.F.R. § 16.5(e)(1)(ii) (2022).  The third standard requires you to demonstrate that the request involves "[t]he loss of substantial due process rights." 28 C.F.R. § 16.5(e)(1)(iii) (2022).  To satisfy the fourth standard, you must demonstrate that the subject matter of your request is "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." *Id.* at § 16.5(e)(1)(iv).   This office makes determinations regarding the first three standards, while DOJ's Director of Public Affairs makes determinations regarding the fourth standard.  *See id.* at § 16.5(e)(2).

    Based on the information you have provided, we have granted your request for expedited processing under Standard II.  Your FOIA request has been assigned to a representative in this office for further processing.  It will be placed in chronological order with other pending expedited treatment requests and will be addressed in turn.

126.    Plaintiff made this request because he wants to write a story about the Adderall shortage for his newsletter. The Adderall shortage is a public health emergency and affects

individuals and families around the country.[71] For example, days ago, an article entitled "Parents reeling as ADHD drug shortage stretching into 10th month collides with starting school," describes how some "are questioning the DEA's role in allocating drug supply as the medication crisis deepens."[72] And yet, despite DEA acknowledging "an urgency to inform the public" about information related to the Plaintiff has not received any communication regarding his FOIA request.

127.    As explained above, this is not the first time DEA has arbitrarily and capriciously closed requests seeking processing notes related to pending requests. As noted above, in an earlier pleading in this case, Plaintiff previously discussed another instance with Tucker's request, as to which Plaintiff collaborated in submitting as counsel for AIMS. DEA administratively closed Tucker's request for notes related to a pending FOIA request as well. But on August 26, 2022, the agency *sua sponte* **reopened** and "reconsidered" immediately after this lawsuit was filed that discussed the request and the unlawful practice:

> This letter responds to your Freedom of Information Act/Privacy Act (FOIA/PA) request dated May 31, 2022, addressed to the Drug Enforcement Administration (DEA), FOIA/PA Unit, seeking access to information regarding the above subject.
>
> By letter dated July 13, 2022, my office advised you that we were processing records responsive to FOIA request 22-00592-F; therefore, we administratively closed your request for the processing notes. We further advised you to resubmit your request for the processing notes upon completion of the processing of FOIA request 22-00592-F.
>
> I have reconsidered your request. My office reopened your case and will begin processing the requested case notes. We estimate completion of the processing within 90 business days and will send you a final determination once complete.

---

[71]   https://www.npr.org/sections/health-shots/2023/02/18/1157832613/adderall-shortage-forces-some-patients-to-scramble-ration-or-go-without;

[72]   https://www.salon.com/2023/09/03/parents-reeling-as-adhd-shortage-stretching-into-10th-month-collides-with-starting-school/

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION
(FOIA—Unlawful Policy, Pattern, Practice, or Procedure)**

128.    Plaintiff incorporates the previously alleged paragraphs by reference.

129.    The "unusual circumstances" policy as described herein is contrary to law.

130.    Under 5 U.S.C. § 552(a)(6)(B)(iii)(1), "unusual circumstances" means "the need to search for and collect the requested records from field facilities or *other establishments that are separate from the office* processing the request," and the exception can only be invoked "to the extent reasonably necessary to the proper processing of the particular requests."

131.    DOJ and its components (including DEA) have adopted, implemented, and enacted a pattern, practice, policy, or procedure to processing FOIA requests that is contrary to law. According to Defendants DOJ and DEA, their policy is to apply the "unusual circumstances" exception any time a component FOIA office does not "have access" to the records and must go "outside" the office to gain access to the records. If a record is outside the FOIA office, unusual circumstances applies.

132.    The "unusual circumstances" exception does not apply so indiscriminately. Rather, FOIA's text, structure, and legislative history show that the exception applies only when the request implicates the need to search for and collect records from *other establishments that are separate from the office*, such as field facilities.[73]

---

[73]    *See* S. Rep. 93-854 (May 16, 1974) ("The need to search for and collect records from field facilities or 'other establishments that are separate from the office processing the request' does not permit an extension while such an office obtains the records from the agency's own file, records, or administrative division when located in the same city as the processing office. Rather this is intended to cover the collection of records from other cities, or from a federal records center or other facility which is not part of the agency.").

133.    DOJ's contrary reading vitiates the exception, since nearly all FOIA requests require the processing office to request records from some other office. By Defendants' admitted reading of the statute, as long as the FOIA processing office has few or no records, an agency never has to comply with the statutory time limits. An agency could easily guarantee that it would *never* face "unusual circumstances" simply by making its "FOIA processing office" a single 5x5 foot room, staffing it with a single employee, and mandating that no government records ever enter that particular room.

134.    Defendant DEA has confirmed that this state of affairs is in fact a practical reality. Other than previously requested records, DEA's FOIA Office has virtually no records and has no access to records. Accordingly, any time a FOIA requestor seeks a document that has not been previously requested and thus, is not in the FOIAXpress system, the agency invokes the "unusual circumstances" exception and delays providing a respond.

135.    The statute plainly does not accommodate this jiggery-pokery, and the fact that Defendants vigorously defend such an outlandish policy confirms that without judicial intervention, they will continue to act unlawfully.

136.    Defendants' policy and pattern or practice of invoking the exception is also unlawful because it requires no consideration of whether invoking the exception is "reasonably necessary to the proper processing of [those] particular requests." The statute requires agencies to consider the particular request before invoking the exception and to tailor its use of the exception "to the extent reasonably necessary."

137.    Plaintiff has been personally harmed by the unlawful policy and pattern or practice described herein.[74]

138.    Defendants' unlawful policy and pattern or practice will impair and/or will likely impair Plaintiff's lawful access to information under FOIA in the future.

139.    Plaintiff seeks an order declaring unlawful and enjoining the "unusual circumstances" policy.

## SECOND CAUSE OF ACTION
## (APA—5 U.S.C. § 706(2))

140.    Plaintiff incorporates the previously alleged paragraphs by reference.

141.    The unusual circumstances policy, pattern, and/or practice constitutes final agency action.

142.    Plaintiff is adversely affected or aggrieved by the policy, pattern, and/or practice.

143.    The policy, pattern, or practice described above is not in accordance with law.

144.    Plaintiff seeks an order holding unlawful, setting aside, and enjoining the "unusual circumstances" policy.

## THIRD CAUSE OF ACTION
## (Declaratory Judgment—5 U.S.C. § 552(j))

145.    Plaintiff incorporates the previously alleged paragraphs by reference.

146.    "Each agency shall designate a Chief FOIA Officer who shall be a senior official of such agency (at the Assistant Secretary or equivalent level)." 5 U.S.C. § 552(j)(1).

---

[74]  Exhaustion of a policy and pattern or practice claim is not required. But even if it were, because of the "unusual circumstances" policy, DEA has not complied with statutory timelines and therefore remedies would be deemed exhausted. *See* 5 U.S.C. § 552(a)(6)(C)(i) (whenever agency fails to comply with applicable time limits, a person shall be deemed to have exhausted administrative remedies).

147.   In addition to express timelines laid out by FOIA, the Chief FOIA Officer statute another essential requirement Congress imposed on federal agencies to ensure that FOIA's mandate that records be made "promptly available" did not become a "dead letter."[75]

148.   By mandating that agencies appoint a senior official at the Assistant Secretary or equivalent level, Congress ensured Chief FOIA Officers would be politically accountable.

149.   DEA has not designated a "senior official" at the "Assistant Secretary or equivalent" level as its Chief FOIA Officer.

150.   Since at least 2019, Defendants DOJ, DEA, Gupta, and/or Talebian have been aware of the § 552(j)(1) violation.

151.   For the reasons stated above, Plaintiff is aggrieved by the absence of lawfully appointed Chief FOIA Officers, whose responsibilities 5 U.S.C. § 552(j)(2) impact regular requestors of records. Plaintiff is further aggrieved by the complete absence of a Chief FOIA Officer because he has been denied records that would exist in the possession, custody, or control of a Chief FOIA Officer.

152.   Plaintiffs seek a declaration that Defendants DOJ and DEA have violated 5 U.S.C. § 552(j)(1) and continue to willfully violate 5 U.S.C. § 552(j)(1).

### FOURTH CAUSE OF ACTION
### (Declaratory Judgment—Appointments Clause)

153.   Plaintiff incorporates the previously alleged paragraphs by reference.

154.   5 U.S.C. § 552(j)(1) requires each agency to designate a Chief FOIA Officer who is an inferior Officer of the United States, i.e., one who is "directed and supervised at some level

---

[75]   *Judicial Watch, Inc. v. DHS*, 895 F.3d 770, 774-76 (D.C. Cir. 2018).

by others who were appointed by Presidential nomination with the advice and consent of the Senate."[76]

155.    DEA's Chief FOIA Officer is not an inferior Officer. Her work is not supervised by another who was appointed by the President and confirmed by the Senate.

156.    In addition, DEA violates the Appointments Clause by having non-inferior Officers of the United States adjudicate FOIA requests.

157.    Plaintiff seeks a declaration that Defendants DOJ and DEA have violated the Appointments Clause.

### FIFTH CAUSE OF ACTION
### (APA—5 U.S.C. § 706(1))

158.    Plaintiff incorporates the previously alleged paragraphs by reference.

159.    The duty imposed by 5 U.S.C. § 552(j)(1) on agencies is mandatory and non-discretionary.

160.    For years, DOJ/DEA have unlawfully withheld the designation of a statutorily compliant Chief FOIA Officer.

161.    Plaintiff seeks an order directing Defendants DOJ and DEA to comply with 5 U.S.C. § 552(j)(1).

### SIXTH CAUSE OF ACTION
### (First Amendment—Right to Timely Access Records from Administrative Proceedings and Notice of the Existence of Adjudicatory Proceedings)

162.    Plaintiff incorporates the previously alleged paragraphs by reference.

163.    In addition to being an attorney, Plaintiff Zorn is a journalist who writes stories related to drug policy and regulation.

---

[76] *See United States v. Arthrex*, 141 S. Ct. 1970 (2021).

164.    DEA has recognized Zorn as a journalist in certain capacities.

165.    The First Amendment protects the public against the government's "arbitrary interference with access to important information."[77]

166.    As the Supreme Court has stated, "when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process."[78]

167.    DEA administrative proceedings are similar to criminal proceedings, operate under procedures modeled on those of the courts, and impose official and practical consequences upon members of society.

168.    DEA's recordkeeping practices and FOIA administration effectively make the agency's proceedings non-public and have denied the public timely access to important information. Indeed, one has no way of knowing what agency adjudications are currently taking place.

169.    DEA administrative proceedings operate under procedures modeled on those of the courts and impose official and practical consequences upon members of society.

170.    Zorn is injured from the DEA's actual and constructive denial of access to its adjudicatory proceedings and records.

171.    Plaintiff Zorn seeks a declaration that DEA has violated the First Amendment and an injunction ordering DEA to make adjudicatory records from DEA proceedings timely available

---

[77]    *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 583 (Stevens, J., concurring).

[78]    *Hannah v. Larche*, 363 U.S. 420, 442 (1960).

-42-

or accessible to the public, for example, through an electronic docketing system or any other appropriate means, and all other appropriate relief.

### SEVENTH AND EIGHTH CAUSES OF ACTION
### (PPP – Unlawfully "Administratively Closing" FOIA Requests)

172.    Plaintiff incorporates the previously alleged paragraphs by reference.

173.    On multiple occasions, DEA has "administratively closed" FOIA requests for processing notes related to other pending FOIA requests.

174.    There is no provision of FOIA or law that allows agencies to *close* requests for processing notes related to pending FOIA requests. Indeed, allowing FOIA offices to close requests that show how it is processing FOIA requests is completely antithetical to FOIA, the Garland Memo, and the presumption of transparency.

175.    Plaintiff has been personally harmed by the unlawful policy and pattern or practice described herein.

176.    Plaintiff intends to continue to file FOIA requests for processing notes of pending FOIA requests.

177.    Defendants' unlawful policy and pattern or practice will impair and/or will likely impair Plaintiff's lawful access to information under FOIA in the future.

178.    The policy, pattern, and/or practice also constitutes final agency action.

179.    Plaintiff is adversely affected or aggrieved by the policy, pattern, and/or practice.

180.    The policy, pattern, or practice described above is not in accordance with law.

181.    Either under FOIA (Cause Seven) or the APA (Cause Eight), Plaintiff seeks an order declaring unlawful and enjoining the administrative closure policy.

### ATTORNEY FEES

182.    Plaintiff seeks reasonable attorney fees. *See, e.g.*, 5 U.S.C. § 552(a)(4)(E), 28 U.S.C. § 2412.

## PRAYER FOR RELIEF

For these reasons, Plaintiff respectfully requests that the Court preliminary or permanently:

1.  Order Defendants to comply with FOIA;

2.  Declare, hold unlawful, and permanently enjoin the unusual circumstances policy;

3.  Order DEA to make records from its administrative proceedings electronically accessible in a timely manner;

4.  Order DEA to make the existence of its adjudications public;

5.  Declare and hold that DEA designated an unlawful Chief FOIA Officer;

6.  Declare, hold unlawful, and permanently enjoin the administrative closure policy;

7.  Declare and hold that FOIA requests must be adjudicated by an inferior Officer of the United States, and that DEA's processing of FOIA requests is unlawful;

8.  Order either Defendant Garland or Milgram to designate a lawful Chief FOIA Officer for DEA;

9.  Order Defendants to implement a corrective action plan to prevent and correct the FOIA violations and abuses described herein;

10. Order Defendants to report to this Court on a regular basis to show progress with a corrective action plan and compliance with any injunctive relief; and

11. Order all other relief deemed just and proper.

Dated: September 15, 2023                    Respectfully submitted,


                                             /s/ Matthew C. Zorn
                                             Matthew C. Zorn
                                             YETTER COLEMAN LLP
                                             mzorn@yettercoleman.com
                                             811 Main Street, Suite 4100
                                             Houston, TX 77002
                                             T: (713) 632-8000
                                             F: (713) 632-8002

                                             Shane Pennington
                                             PORTER WRIGHT MORRIS & ARTHUR LLP
                                             2020 K Street, NW, Suite 600
                                             Washington, D.C. 20006
                                             T: (832) 914-2985
                                             F: (202) 778-3063
                                             spennington@porterwright.com

                                             ATTORNEYS FOR PLAINTIFF


### CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                             /s/ Matthew C. Zorn
                                             Matthew C. Zorn

# Exhibit 1



**U.S. Department of Justice**
Drug Enforcement Administration
FOIA and Privacy Act Unit
8701 Morrissette Drive
Springfield, Virginia  22152

September 16, 2022

Case Number: 22-00560-F

Subject: All filings from the proceedings in Administrative Law Judge (ALJ) Docket No. 10-46 described in 76 Fed. Reg. 77329 (Docket No. DEA-333), including briefs filed and all ALJ orders, such as the ALJ decision (Date Range for Record Search: January 13, 2015 to January 13, 2011)

Matthew Zorn, Esq.
Yetter Coleman LLP
811 Main Street, Suite 4100
Houston, Texas 77002
*Sent via e-mail:* mzorn@yettercoleman.com

Dear Mr. Zorn:

This letter responds to your Freedom of Information Act/Privacy Act (FOIA/PA) request dated April 22, 2022, addressed to the Drug Enforcement Administration (DEA), FOIA/PA Unit, seeking access to information regarding the above subject.

After reviewing your request, we conducted a search for records responsive to the above noted subject.  To search for responsive records we queried the Office of the Administrative Law Judges.  The search has been completed.

We have determined that you are making this request for a "commercial use" as described in Department of Justice regulation, 28 C.F.R. § 16.10(b)(1).  As such, we are required to assess fees for review of responsive records.  *See id.* at § 16.10(c).  You may review the Department of Justice regulations which establish the fees charged for processing FOIA requests at: https://www.ecfr.gov/current/title-28/chapter-I/part-16.

Review fees by professional personnel are charged at $40.00 per hour.  *See* 28 C.F.R. § 16.10(c)(1)(ii) and (c)(3).  This fee is assessed for review time required by both supervisory and non-supervisory personnel.  Review time includes processing of any records for disclosure, including redacting the records and asserting the appropriate FOIA exemptions.  We charge review fees even if we ultimately are unable to disclose records to you.  Accordingly, we estimate the review time associated with your request will total $41,960.  Please note, this office is unable to continue with the processing of your request until you agree to pay the fee.

As provided by 28 C.F.R § 16.3(b), this letter also affords you the opportunity to reformulate your request in such a manner as to reduce the review fee.  This could be accomplished by narrowing scope of your request or specifying particular documents that you desire.

Case Number: 22-00560-F                                                                 Page 2

Upon receipt of a **check or money order** in the amount indicated above, made payable to the Treasury of the United States, DEA will initiate further processing of your request.  Please indicate the case number noted above on the face of your check or money order, and mail it to the above address.  However, if this office does not receive your payment within 30 business days, DEA will assume that you do not wish to pursue this matter and your request will be administratively closed.  If this office administratively closes your request, you may submit a new request at any time.

You may contact our FOIA Public Liaison at (571) 776-2300 for any further assistance and to discuss any aspect of your request.  Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at (202) 741-5770; toll free at 1-877-684-6448; or facsimile at (202) 741-5769.

If you are not satisfied with DEA's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's  website:  https://www.justice.gov/oip/submit-and-track-request-or-appeal.  Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request.  If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

If you have any questions regarding this letter, you may contact FOIA/PA Unit representative Rickey L. Polk, Jr. at (571) 776-3325 or via e-mail at Rickey.L.PolkJr@dea.gov.

Sincerely,


Kelleigh A. Miller, Chief
Freedom of Information and Privacy Act Unit
Administrative and General Law Section
Office of Chief Counsel



**U.S. Department of Justice**
Drug Enforcement Administration
FOIA and Privacy Act Unit
8701 Morrissette Drive
Springfield, Virginia 22152

February 16, 2023

Case Number: 23-00347-F

Subject: Communications between DEA and FDA regarding Adderall shortages described in 87
Fed. Reg. 74168 (Date range for search: January 1, 2022 to February 14, 2023)

Matthew Zorn, Esq.
Yetter Coleman LLP
811 Main Street Suite 4100
Houston, Texas 77002
*Sent via e-mail:* mzorn@yettercoleman.com

Dear Mr. Zorn:

     This letter responds to your Freedom of Information Act/Privacy Act (FOIA/PA) request
dated February 14, 2023, addressed to the Drug Enforcement Administration (DEA), FOIA/PA
Unit, seeking expedited treatment.

     In your request letter, you seek expedited treatment pursuant to the first, second, third,
and/or fourth standards enumerated in the Department of Justice's (DOJ) FOIA regulations.
Expedited treatment pursuant to the first standard will be granted where not doing so "could
reasonably be expected to pose an imminent threat to the life or physical safety of an individual."
5 U.S.C. § 552(a)(6)(E)(v)(I); *see also* 28 C.F.R. § 16.5(e)(1)(i) (2022).  Under the second
standard, you must demonstrate that there is "an urgency to inform the public about an actual or
alleged [f]ederal [g]overnment activity, if made by a person primarily engaged in disseminating
information."  5 U.S.C. § 552(a)(6)(E)(v)(II); *see also* 28 C.F.R. § 16.5(e)(1)(ii) (2022).  The third
standard requires you to demonstrate that the request involves "[t]he loss of substantial due
process rights." 28 C.F.R. § 16.5(e)(1)(iii) (2022).  To satisfy the fourth standard, you must
demonstrate that the subject matter of your request is "[a] matter of widespread and exceptional
media interest in which there exist possible questions about the government's integrity which
affect public confidence."  *Id.* at § 16.5(e)(1)(iv).  This office makes determinations regarding the
first three standards, while DOJ's Director of Public Affairs makes determinations regarding the
fourth standard.  *See id.* at § 16.5(e)(2).

     Based on the information you have provided, we have granted your request for expedited
processing under Standard II.  Your FOIA request has been assigned to a representative in this
office for further processing.  It will be placed in chronological order with other pending expedited
treatment requests and will be addressed in turn.

Case Number: 23-00347-F                                                            Page 2

You may contact our FOIA Public Liaison at (571) 776-2300 for any further assistance and to discuss any aspect of your request. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at (202) 741-5770; toll free at 1-877-684-6448; or facsimile at (202) 741-5769.

If you have any questions regarding this letter, you may contact FOIA/PA representative George Margaryan at (571) 776-3004 or via e-mail at Gevorg.G.Margaryan@dea.gov.  You may also contact our Requester Service Center at DEA.FOIA@dea.gov.

Sincerely,

*for*
Joshua L. Delo, Acting Chief
Intake Sub-Unit
Freedom of Information and Privacy Act Unit



**U.S. Department of Justice**

Drug Enforcement Administration

FOIA and Privacy Act Unit

8701 Morrissette Drive

Springfield, VA  22152

Case Number: 23-00911-F

Subject: ALJ Mulrooney's order denying the issuance of subpoenas described in paragraph 68 of the attached document; The Government's filing described in paragraph 112 of the attached document, from January 1, 2023 to August 1, 2023

Matthew Zorn
*Sent via e-mail:* mzorn@yettercoleman.com

Dear Matthew Zorn:

This letter responds to your Freedom of Information Act/Privacy Act (FOIA/PA) request dated August 1, 2023, addressed to the Drug Enforcement Administration (DEA), FOIA/PA Unit, seeking access to information regarding the above subject.  Your request was opened and assigned the above case number.  Please include this case number when communicating with this office.

After reviewing your request, we conducted a search for responsive records pertaining to the above subject.  To search for responsive records, we queried the Office of Administrative Law Judges (ALJ). As a result of our query, ALJ determined that in order to conduct an adequate search additional information is needed (such as, for example, docket number or case name).

To this end, no further action will be initiated on this request until we are in receipt of the additional information.  If this office does not receive your response within 30 business days, DEA will assume that you do not wish to pursue this matter and your request will be administratively closed.  **Please e-mail your response to** **DEA.FOIA@dea.gov.**

You may contact our FOIA Public Liaison at (571) 776-2300 for any further assistance and to discuss any aspect of your request.  Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at (202) 741-5770; toll free at 1-877-684-6448; or facsimile at (202) 741-5769.

If you are not satisfied with DEA's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website:  https://www.justice.gov/oip/submit-and-track-request-or-appeal.

Case Number: 23-00911-F                                    Page 2

Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request.  If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

      If you have any questions regarding this letter, you may contact a FOIA/PA Unit representative at 571-776-2300 or via e-mail at DEA.FOIA@dea.gov.

                    Sincerely,

DESHELIA WALLACE
Digitally signed by DESHELIA WALLACE
Date: 2023.09.07 10:07:30 -04'00'

                    Yvette D. Davis, Chief
Intake Sub-Unit
Freedom of Information and Privacy Act Unit

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW C. ZORN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-02396 |
| | § | |
| U.S. DEPARTMENT OF JUSTICE, ET AL. | § | |
| | § | |
| | § | |
| Defendants. | § | |

**DECLARATION OF MATTHEW C. ZORN**

1.      My name is Matthew C. Zorn. I am over 18 years of age, of sound mind and fully competent to make this Declaration. I have never been convicted of a felony or a crime of moral turpitude. I have personal knowledge of all the facts stated herein, and they are true and correct to the best of my knowledge. I am the Plaintiff.

2.      I am a second-year partner at Yetter Coleman LLP. My bio is at https://www.yettercoleman.com/our-people/matthew-c-zorn/.

3.      In Spring 2019, I began representing a marijuana researcher named Dr. Sue Sisley pro bono in a dispute against DEA. The legal saga between my client and DEA is summarized at https://www.nbcnews.com/news/us-news/one-doctor-vs-dea-inside-battle-study-marijuana-america-n1195436. Additional explanation as to why I do this work is here. https://ondrugs.substack.com/about.

4.      Since Spring 2019, in mostly pro bono (but some paid) engagements, I have litigated or consulted on several regulatory matters against or related to DEA/DOJ, representing researchers, doctors, start-up companies, a discharged DEA special agent, terminally ill patients, and others suffering at the hand of the administrative state. I represent clients that comply with, want to comply with, or are seeking to change the law.

5.      In December 2021, along with a colleague, I launched an online newsletter called On Drugs. In addition to original essays, we submit FOIA requests and publish documents we receive in an online library. The newsletter is located at ondrugs.substack.com.

6.      Starting in Spring 2022, I began submitting FOIA requests on behalf of clients petitioning or engaged in proceedings with DEA. Shortly thereafter, I also began submitting FOIA requests on behalf of myself as a journalist to write stories for my essay/newsletter site.

7.      I continue to submit FOIA requests to write new stories. For example, I recently submitted a FOIA request to DEA two weeks ago relating to a story I am working on concerning the Adderall shortage (23-00347-F). On February 16, the agency granted my request for expedited

treatment as a person primarily engaged in disseminating information. In another instance the agency acknowledged my journalism enterprises in agreeing to waive fees.

8.     I have been and continue to be harmed by DEA's unlawful FOIA policies and the unlawful structuring of its FOIA Office. For example, I have FOIA requests outstanding that have not received responses within the statutory timelines. I made a rather rote FOIA request for the Administrator's 2022 scheduler (an Outlook calendar, for example). This is the type of electronic document that is almost certainly located on an e-mail server that would take moments to collect. I was told that this request raised unusual circumstances. I do not believe I have received a response from the agency.[1]

9.     Attached as Ex. 1 to this declaration is a redacted request that has been held in abeyance under the "unusual circumstances" policy. I consider this request to be particularly important. In it, I request records relating to DEA's formation or structuring of a psychedelic sacramental use advisory council and, more importantly, records relating to the promulgation of rules to govern exemptions to the Controlled Substances Act under the Religious Freedom for Restoration Act. I made this request for a story I want to write that, I believe, relates to a matter of public concern.

10.     In the *Gonzales v. O Centro Espírita Beneficente União do Vegetal*, 546 U.S. 418 (2005) case, the Supreme Court unanimously upheld the sacramental use of a hallucinogenic, Schedule I substance as part of bona fide religious practice. The right is not unqualified, but subject to reasonable agency restrictions. Starting in 2009, DEA has released non-binding guidance (https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)(EO-DEA-007)(Version2)RFRA_Guidance_(Final)_11-20-2020.pdf) on how to request a religious exemption.  This non-binding guidance has raised substantial concerns among practitioners.

11.     In a July 16, 2020 affidavit, in Case No. 3:20-cv-03098 in the Northern District of California, an agency employee submitted a sworn declaration in federal court explaining that DEA was "actively engaged in updating and revising DEA's existing regulations to incorporate consideration of issues arising under the Religious Freedom Restoration Act (RFRA) and to lay out the procedures by which applications for religious exemptions are to be handled." DEA submitted that declaration in support of the following argument to stay proceedings in the litigation:

> The DEA is currently updating and revising its regulations implementing the CSA for the purpose of describing the procedures by which the DEA will evaluate applications for religious exemptions under RFRA. See Ex. A (Decl. of Scott A. Brinks ("Brinks Decl.") ¶¶ 4-6). When implemented, these revised regulations would supersede the 2009 Guidance. Id. ¶ 5. Once a draft regulation replacing the

---

[1]     I note a distinction between *responding* to a request and *producing records*, similar to the difference in civil litigation between responding to a request for production and actually producing records. Obviously, a request for the Administrator's scheduler needs to be reviewed for exemptions and redactions and couldn't be produced immediately. The "unusual circumstances" policy forestalls an agency *response*. In so doing, the agency holds a request in limbo and thwarts judicial review in the case of an unjustified refusal.

2009 Guidance is approved by the DEA, the agency must then submit that draft to the Department of Justice's Office of Legal Policy and the Office of Management and Budget for regulatory review. Id. ¶ 6. While subject to extension under some circumstances, the period for OMB Office of Information and Regulatory Affairs (OIRA) review of a draft regulation is limited under Executive Order 12866 to 90 days…

12.     Later in the July filing, DEA described itself as "in the midst of a rulemaking" and that "[r]eplacing the 2009 Guidance is precisely the goal of the DEA's ongoing rulemaking." A true and correct copy of this filing is attached as Ex. 2 to this declaration.

13.     Despite this statement from Summer 2020, DEA has not promulgated any rules to govern RFRA exemptions. By all indications, it isn't "in the midst of a rulemaking." This is not to say in July 2020 what was said was untrue. The point is that DEA made one representation and has not provided any update that I am aware of since. All the while, as the media has reported, psychedelic churches are pushing boundaries. (*See, e.g.*, https://apnews.com/article/psychedelic-churches-ayahuasca-5101fe47fe9a6e28de686272ed96ff46.) Whatever one thinks, the lack of a formal agency process with the force and effect of law to govern religious exemptions is a matter of public concern.

14.     DEA has not only failed to put forward rules to govern RFRA exemptions, but now affirmatively argues in other courts that courts should stay cases because parties choose not to use the process detailed in DEA's non-binding guidance, which, does not have the force and effect of law.

15.     I don't know what to make of these circumstances, which is precisely why I submitted a FOIA request seeking agency records. I'm concerned that after the Supreme Court unequivocally held that DEA must accommodate religious exemptions to the CSA, the agency is engaging in gamesmanship to avoid taking a substantive position, protect its guidance from judicial review, deny religious adherents a federal forum for grievances rooted in sincere religious beliefs, and render its exemption process one giant black box to give itself unfettered discretion. And while it's true that some or all records I've requested may be shielded from disclosure under the deliberative process privilege, the acknowledgement that records exists would itself communicate important information to me about process. The unusual circumstances policy and unlawful structuring of the FOIA office thus deprives me of this information that is owed to me.

16.     I declare under penalty of perjury that the foregoing is true and correct.

Executed in Harris County, Texas on the 24th day of February 2023.


*/s/ Matthew C. Zorn*
Matthew C. Zorn

# Exhibit A

ETHAN P. DAVIS
Acting Assistant Attorney General
BRIGHAM J. BOWEN
Assistant Branch Director
KEVIN P. HANCOCK
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-3183
Fax: (202) 616-8470
E-mail: kevin.p.hancock@usdoj.gov

*Attorneys for the Federal Agency Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIZONA YAGÉ ASSEMBLY, NORTH AMERICAN ASSOCIATION OF VISIONARY CHURCHES, and CLAY VILLANUEVA,<br><br>        Plaintiffs,<br><br>    v.<br><br>WILLIAM BARR, Attorney General of the United States; TIMOTHY J. SHEA, Acting Administrator of the U.S. Drug Enforcement Administration; CHAD F. WOLF, Acting Secretary of the Department of Homeland Security; MARK A. MORGAN, Acting Commissioner of the U.S. Customs and Border Protection; THOMAS PREVOZNIK, Deputy Assistant Administrator of the DEA Department of Diversion Control, in his personal capacity; the UNITED STATES OF AMERICA; the STATE OF ARIZONA; MARK BRNOVICH, Arizona Attorney General; MARICOPA COUNTY, a political subdivision of the State of Arizona; and, MATTHEW SHAY,<br><br>        Defendants. | No. 3:20-cv-3098-WHO<br><br><br>**FEDERAL AGENCY DEFENDANTS' MOTION TO STAY OR IN THE ALTERNATIVE TO ENLARGE TIME TO RESPOND TO THE COMPLAINT**<br><br><br>Date: September 9, 2020<br>Time: 2:00 pm<br>Place: Courtroom 2, 17th Floor<br>Honorable William H. Orrick |

1
2

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on September 9, 2020, at 2:00 p.m. before the Honorable

3
William H. Orrick, in Courtroom 2 of the 17th Floor of the Philip E. Burton Courthouse and

4
Federal Building, 450 Golden Gate Avenue, San Francisco, California, 94102, Defendants

5
William Barr, Attorney General of the United States; Timothy Shea,[1] Acting Administrator of

6
the U.S. Drug Enforcement Administration ("DEA"); Chad Wolf, Acting Secretary of the

7
Department of Homeland Security ("DHS"); Mark A. Morgan, Acting Commissioner of U.S.

8
Customs and Border Protection ("CBP"); and the United States of America (collectively, the

9
"Federal Agency Defendants"), by and through undersigned counsel, will move the Court to stay

10
further proceedings in this case against the Federal Agency Defendants pending the Supreme

11
Court's review of *Tanvir v. Tanzin*, 889 F.3d 72 (2d Cir. 2018), *cert. granted sub. nom*, *Tanzin v.*

12
*Tanvir*, 140 S. Ct. 550 (Nov. 22, 2019), or in the alternative, to enlarge the Federal Agency

13
Defendants' time to file a responsive pleading.  The Federal Agency Defendants respectfully

14
request that the Court decide this motion on the papers submitted, without oral argument,

15
pursuant to Civil L.R. 7-1(b).

16
17

### MOTION TO STAY OR IN THE ALTERNATIVE TO ENLARGE TIME TO RESPOND TO THE COMPLAINT

18
The Federal Agency Defendants hereby move to stay further proceedings against them in

19
this case pending the Supreme Court's review of *Tanvir*, or in the alternative to enlarge the

20
Federal Agency Defendants' time to file a responsive pleading.[2]  Should the Court grant the

21
Federal Agency Defendants' requested stay, the Federal Agency Defendants further respectfully

22
request that they be permitted, within two weeks of the Supreme Court's resolution of *Tanvir*, to

23
file a status report indicating whether this case and all proceedings should continue to be held in

24
25
26

[1]    Plaintiffs named the DEA's former Acting Administrator Uttam Dhillon in his official capacity as a defendant, *see* ECF No. 1, but Dhillon was succeeded by Timothy J. Shea on May 19, 2020.  *See* https://www.dea.gov/press-releases/2020/05/19/attorney-general-barr-announces-timothy-j-shea-new-acting-administrator.  Under Federal Rule of Civil Procedure 25(d), Shea in his official capacity is "automatically substituted as a party" for Dhillon.

27
28

[2]    The Federal Agency Defendants further request that a stay in their favor be granted without prejudice to their ability, after the conclusion of a stay, to assert any available defenses under Federal Rule of Civil Procedure 12(b), including but not limited to lack of subject-matter jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.

abeyance or proposing a schedule for continuing the litigation. The reasons for this Motion are set forth in the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs' complaint asserts claims under the Religious Freedom Restoration Act of 1993 ("RFRA") and the Administrative Procedure Act ("APA") against the United States and, in their official capacities, the most senior officials at DOJ, DEA, DHS, and CBP. Those claims allege that the DEA has maintained an illegal policy of denying applications for religious exemptions under RFRA to the Controlled Substances Act ("CSA") filed by groups such as Plaintiffs, which allege that their members drink a tea containing a Schedule I controlled substance as part of their religious activities.

On the basis of closely related legal and factual allegations, Plaintiffs also assert a RFRA claim seeking monetary damages from Thomas Prevoznik ("DAA Prevoznik"), a Deputy Assistant Administrator of DEA's Diversion Control Division, in his individual capacity. On July 15, 2020, DAA Prevoznik separately moved this Court for a stay of the RFRA claim against him pending the Supreme Court's review of *Tanvir*, which is scheduled for argument on October 6, 2020 and which squarely presents the issue of whether RFRA authorizes suits seeking money damages against individual federal employees.

If the Court stays the RFRA claim against DAA Prevoznik pending the Supreme Court's ruling in *Tanvir*, the Court should also extend that stay to all claims against the Federal Agency Defendants. Four reasons support that conclusion.

First, a stay would allow the DEA to make substantial progress on, if not conclude, a rulemaking currently underway that would moot Plaintiffs' RFRA and APA claims by replacing the religious-exemption application process being challenged here.

Second, the requested stay would also allow the parties and the Court to avoid piecemeal litigation of the intertwined RFRA and APA claims in this case, preventing the duplication of effort and waste of resources that would result if two rounds of discovery and dispositive briefing were required for these substantially identical claims.

Third, the stay would prevent hardship and injury to DAA Prevoznik by ensuring that, during the pendency of any stay he might be granted, he would not be burdened by litigation against the Federal Agency Defendants that might affect his interests, as he is entitled to seek qualified immunity, which is designed to shield government officials from such burdens.

Finally, the requested stay would cause no harm to Plaintiffs, especially given that they have never filed a petition for a religious-exemption with the DEA and thus have not been affected by the process they challenge as violating RFRA and the APA.

Counsel for Plaintiffs has stated that Plaintiffs will oppose this motion to stay.

## **BACKGROUND**

### I.     Statutory and Regulatory Background

The Controlled Substances Act ("CSA"), regulates the importation, manufacture, distribution, and use of psychotropic substances. 21 U.S.C. § 801 *et seq.* (2000 ed. and Suppl. I). "Schedule I" substances under the CSA are those that have the highest potential for abuse and which are therefore subject to the most comprehensive restrictions, including a ban on nearly all importation and use. The CSA grants the Attorney General the power to register an applicant to import, distribute, or manufacture a Schedule I controlled substance so long as doing so is consistent with the public interest. *Id.* § 823(b). The Attorney General has delegated its registration authority to the DEA, whose Office of Diversion Control reviews registration applications. *See* 21 C.F.R. § 1301.31.

RFRA provides that the federal government may not substantially burden a person's sincere exercise of religion, unless doing so is the least restrictive means of advancing a compelling interest. 42 U.S.C. § 2000bb–1(b). To establish a *prima facie* violation of RFRA, a plaintiff must present sufficient evidence to allow a trier of fact to rationally find that the plaintiff's activities are a sincere "exercise of religion" and that the Government action "substantially burdens" the plaintiff's exercise of religion. *Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1068-69 (9th Cir. 2008).

In 2006, the Supreme Court held that government action taken pursuant to the CSA is subject to RFRA. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418,

432-33 (2006). After a subsequent increase in requests for religious exemptions from the CSA, the DEA publicly issued guidelines in 2009 to serve as an "interim measure intended to provide guidance to parties who wish to petition [the DEA] for a religious exemption to the CSA" (the "2009 Guidance").[3] The 2009 Guidance directs a petitioner to provide information demonstrating that the application of the CSA to its activities would "(1) be a substantial burden on (2) his/her sincere (3) religious exercise," and information detailing the petitioner's planned use and handling of the controlled substance. *Id.* Following review of a religious exemption petition, the DEA's Deputy Assistant Administrator of Diversion Control Division (currently, DAA Prevoznik) issues a written final determination granting or denying the petition. *Id.* That determination is a final agency decision subject to judicial review in a United States Court of Appeals. 21 U.S.C. § 877.

The DEA is currently updating and revising its regulations implementing the CSA for the purpose of describing the procedures by which the DEA will evaluate applications for religious exemptions under RFRA. *See* Ex. A (Decl. of Scott A. Brinks ("Brinks Decl.") ¶¶ 4-6). When implemented, these revised regulations would supersede the 2009 Guidance. *Id.* ¶ 5. Once a draft regulation replacing the 2009 Guidance is approved by the DEA, the agency must then submit that draft to the Department of Justice's Office of Legal Policy and the Office of Management and Budget for regulatory review. *Id.* ¶ 6. While subject to extension under some circumstances, the period for OMB Office of Information and Regulatory Affairs (OIRA) review of a draft regulation is limited under Executive Order 12866 to 90 days. *Id.* Following DOJ and OMB review, the DEA expects to publish a Notice of Proposed Rulemaking ("NPRM") in the Federal Register to obtain the views of the regulated community and the public at large. *Id.* ¶ 7. By the NPRM, DEA will open a public comment period, likely of 60 days, in accordance with DEA's typical practice. *Id.* DEA will consider any comments received, make any needed revisions, and then publish a Final Rule in the Federal Register. *Id.*

---

[3]    *See* Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act, at https://www.deadiversion. usdoj.gov/GDP/(DEA-DC-5)%20Guidance%20Regarding%20Petitions%20for%20Religious %20Exemptions.pdf.

## II.    Plaintiffs' Allegations

Plaintiff Arizona Yagé Assembly ("Arizona Yagé") alleges that it is a "religious nonprofit corporation[]," First Am. and Suppl. Compl. ("Compl.") ¶ 6 (Jun. 15, 2020), ECF No. 12, that was established "as a visionary church in 2015," and which uses "Ayahuasca" as its communion sacrament, *id.* ¶ 47.  Ayahuasca is a tea that contains the hallucinogen dimethyltryptamine ("DMT"), a Schedule I controlled substance under the CSA.  *Id.* ¶ 6.  Ayahuasca is made "by brewing leaves from DMT-containing plants jointly with slices of *Banisteriopsis Caapi*, the 'yagé' vine."  *Id.* ¶ 43.  Arizona Yagé does not allege that it has stopped using ayahuasca or that it is not currently using ayahuasca in its activities by virtue of the CSA's prohibitions on ayahuasca.  Plaintiff North American Association of Visionary Churches ("NAAVC") describes itself an "interdenominational association of visionary churches."  Compl. ¶ 62.  NAAVC claims that its "central act of Free Exercise is initiating a lawful system for importing and sharing sacramentally-prepared Ayahuasca with visionary churches at reasonable cost[.]"  *Id.* ¶ 64.  Plaintiff Clay Villaneuva is a member of NAAVC's board of directors.  *Id.* ¶ 7.

On May 5, 2020, Arizona Yagé and NAAVC filed the original complaint, which contains three claims.  ECF No. 1.  On June 16, 2020, Plaintiffs filed a First Amended and Supplemental Complaint ("Complaint"), adding two new claims based on events allegedly occurring on May 17, 2020, without moving the Court to do so.  ECF No. 12 ("Compl."); *see* Fed. R. Civ. P. 15(d) (requiring a "motion and reasonable notice" for a "supplemental pleading setting out any" alleged fact "that happened after the date of the pleading to be supplemented").

The first of Plaintiffs' original three claims alleges that the United States and the DEA violated the APA by maintaining an alleged policy, furthered by the DEA's 2009 Guidance, of refusing to grant religious exemptions under RFRA to "visionary churches" such as Arizona Yagé (the "Policy").  Compl. ¶¶ 76, 172.  Plaintiffs also claim that the DEA violated the APA by failing to replace the 2009 Guidance with "a system of providing regulatory services to visionary churches[.]" *Id.* ¶ 172.  None of the Plaintiffs alleges that it has filed a petition for a religious exemption with the DEA.

Second, Arizona Yagé and NAAVC allege that they are entitled under RFRA to a blanket exemption from the CSA's prohibitions on ayahuasca. Compl. ¶¶ 128-52. This claim is asserted against the Federal Agency Defendants and DAA Prevoznik in his personal capacity, and asks the Court to hold DAA Prevoznik liable for damages. *Id.* pp. 36, 70. The Complaint alleges, in a conclusory fashion, that "Prevoznik has been responsible during the last two years for the maintenance of the [DEA's] Policy, which he has expressed in the DEA's refusal to review and rescind the Guidance[.]" *Id.* ¶ 151; *see also id.* ¶ 152 (alleging that Plaintiffs "have been damaged by the acts . . . that Thomas Prevoznik took pursuant to the [DEA's] Policy and in violation of RFRA, to keep the Policy and the Guidance in place, and to continue denying regulatory services to visionary churches").

Third, Plaintiffs claim they are entitled to a declaration "stating the rights and relations of the parties" under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. Compl. ¶¶ 234-38.

As relief for these three claims, Plaintiffs seek, in addition to damages against DAA Prevoznik, a declaratory judgment and an injunction requiring the Federal Agency Defendants to, among other things, rescind the 2009 Guidance and register Arizona Yagé and NAAVC under the CSA to import, manufacture, dispense, and use ayahuasca. *See* Compl. ¶¶ 65-70.

The two claims added to this case by the First Amended and Supplemental Complaint are alleged by Plaintiff Villanueva, against four new Defendants: the State of Arizona, the Arizona Attorney General, Maricopa County, Arizona, and a Maricopa County detective ("Arizona Defendants"). *See* Compl. First, Villanueva and the NAACV assert a claim under 42 U.S.C. § 1983 against the Arizona Defendants, who allegedly conspired to deprive Villanueva and NAAVC of their constitutional rights by directing law enforcement to seize ayahuasca from Villanueva's home on May 17, 2020. *Id.* ¶¶ 173-222. Plaintiffs also assert a section 1983 claim against "Mark A. Morgan on behalf of the DEA, and unnamed DEA agents." *Id.* p. 46. Second, Villanueva alleges that he is entitled under Arizona law to an exemption from Arizona state regulations of ayahuasca. *Id.* ¶¶ 223-32.

### III. The Supreme Court's Writ of Certiorari in *Tanvir v. Tanzin*

On November 22, 2019, the U.S. Supreme Court granted a petition for writ of *certiorari* to review the U.S. Court of Appeals for the Second Circuit's ruling in *Tanvir v. Tanzin*, which held that "RFRA permits a plaintiff to recover money damages against federal officials sued in their individual capacities for violations of RFRA's substantive protections[.]" 894 F.3d at 453. *Tanvir* is scheduled for argument on October 6, 2020 and for decision during its October 2020 term.[4] In light of the question presented in *Tanvir*, DAA Prevoznik has moved this Court to stay Plaintiffs' RFRA claim against him until the Supreme Court decides *Tanvir*. *See* Def. Prevoznik's Notice of Mot. to Stay Proceedings Pending the Supreme Court's Decision in *Tanvir v. Tanzin* and Mem. of Points and Authorities (July 15, 2020) ("Prevoznik Mot."), ECF No. 17.

### STANDARD OF REVIEW

A district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936). To determine whether to exercise its discretion to grant a stay, a district court must consider: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55).

---

[4] *See* https://www.supremecourt.gov/oral_arguments/argument_calendars/
MonthlyArgumentCalOctober2020.pdf.

## ARGUMENT

## I. THE COURT SHOULD STAY THIS CASE AGAINST THE FEDERAL AGENCY DEFENDANTS UNTIL THE SUPREME COURT'S DECISION IN *TANVIR*

### A. The Requested Stay Would Allow the DEA to Make Substantial Progress on, if not Complete, a Rulemaking Already Underway Which Will Likely Moot Plaintiffs' Claims Against the Federal Agency Defendants

The orderly course of justice would be served if the Court stayed the claims against the Federal Agency Defendants, because the DEA's ongoing rulemaking will likely moot the claims against them, or at the very least, alter or narrow the issues to be resolved.

The Ninth Circuit has held that, under *Landis*, a district court may, "with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case," including "administrative" proceedings. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (citing *Landis*, 299 U.S. at 254-55). In particular, courts have stayed cases where the pending administrative proceeding would moot claims by superseding the alleged agency action or policy being challenged. *See Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1122-24 (9th Cir. 1997) (explaining that "any challenge to the 1994-1998 Biological Opinion is moot" after it was "superseded by the 1995 Biological Opinion," which the agency issued after the district court granted a stay); *see also Nat'l Wildlife Fed'n v. EPA*, 925 F.2d 470, 473 (D.C. Cir. 1991) (staying case to allow agency to complete new rulemaking because it "carried the prospect of mooting . . . procedural attacks and of changing the substance to be reviewed").

Here, the DEA is in the midst of a rulemaking that will replace the 2009 Guidance, *see* Brinks Decl. ¶¶ 4-7, which is directly challenged by Plaintiffs' RFRA and APA claims. Indeed, no fewer than 79 paragraphs of the Complaint are dedicated to detailing the 2009 Guidance's alleged deficiencies. *See* Compl. ¶¶ 15, 90-102, 110, 113-15, 117, 119-27, 149-52, 154-56, 159-61, 163-64, 166, 168, 172, 184, 236m-u, 236w, 236y-ee; Prayer for Relief ¶ 1. Findings ¶¶ m-v, x, z-ee; Prayer for Relief ¶ 1.Wherefore ¶ a. For instance, the Complaint's RFRA claim alleges that Plaintiffs' religious exercise has been "substantially burdened by the DEA's use of the

Guidance," Compl. ¶ 150, and establishing a substantial burden is an essential element of Plaintiffs' *prima facie* case, *see Navajo Nation*, 535 F.3d at 1068. Similarly, Plaintiffs' APA claim alleges that the "DEA agency action and inaction due to the Policy and the Guidance . . . was arbitrary, capricious, an abuse of discretion, [and] not in accordance with law," and that the DEA should be compelled to replace the 2009 Guidance with a new "system of providing regulatory services." Compl. ¶ 172.

Replacing the 2009 Guidance is precisely the goal of the DEA's ongoing rulemaking, *see* Brinks Decl. ¶ 5, although the agency disputes Plaintiffs' assertions about the legality of the process currently in place. The rulemaking aims to implement a regulatory regime governing the agency's evaluation of applications for religious exemptions under RFRA. *See id.* ¶¶ 4-5. Although there are additional layers of review that must be completed before an NPRM can be published, once complete, the rulemaking will supersede the 2009 Guidance, *id.* ¶¶ 5-7, almost certainly rendering Plaintiffs' RFRA and APA claims moot, or at the very least substantially affecting those claims, *see Leyva*, 593 F.2d at 863-64 (explaining that it is "not require[d] that the issues in such proceedings [be] necessarily controlling of the action before the court" to justify a stay under *Landis*).[5]

The duration of the requested stay is reasonable. The Federal Agency Defendants request that the stay end following the Supreme Court's decision in *Tanvir*, to coincide with any stay that may be granted in favor of DAA Prevoznik. The Supreme Court's ruling in *Tanvir* will likely occur no later than the conclusion of the October 2020 term in the summer of 2021. *Cf. Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066-67 (9th Cir. 2007) (explaining that stays should "last only for a reasonable time" and reversing stay that had already lasted for two years and that "provide[d] no specific deadline for when the stay will terminate"). By the time the Court issues a ruling, the DEA will likely either have issued or made significant

---

[5] Any stay should also extend to the section 1983 claim that Plaintiffs have asserted against the DEA and Mark Morgan, since Plaintiffs improperly supplemented the original complaint with that claim (which is based on alleged facts occurring after the original complaint) without a motion, *see* Fed. R. Civ. P. 15(d), and because that claim patently lacks merit under blackletter law. *Buckley v. Meis*, 76 F. App'x 192, 194 (9th Cir. 2003) (stating that "§ 1983 does not apply to federal officials").

progress on issuing a Notice of Proposed Rulemaking, and the propriety of continuing the litigation in light of the status of the rulemaking could be reevaluated at that time.

It would be inefficient and wasteful to proceed with the claims against the Federal Agency Defendants in light of the DEA's rulemaking.  During the rulemaking process, Plaintiffs and other stakeholders will have the opportunity to submit comments regarding whether and how the DEA's procedure for evaluating religious exemptions should be modified and to influence the rule that the DEA ultimately adopts.  If this litigation were to proceed in parallel with that process, the parties would be briefing, and the Court judging, the legality of a procedure that is likely to change and may even be influenced by Plaintiffs' comments during the rulemaking.  Also, any Court decision during this time would risk prejudging the regulatory options available to the DEA before the agency has a chance to issue an NPRM, consider comments, finalize the rule, and explain its reasons for the course it ultimately chooses.  *Cf. Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) ("To obtain judicial review under the APA, [a plaintiff] must challenge a final agency action.").  Finally, even assuming Plaintiffs' challenges to the DEA's current process could be fully adjudicated before the DEA's rulemaking is complete, any decision likely would be rendered inapplicable once the DEA finalizes its new rule.  Thus, the stay requested here is appropriate to mitigate the possibility that the Court and the parties will unnecessarily expend resources litigating claims that are likely to be overtaken by events.

**B.      The Requested Stay Would Prevent Inefficient and Duplicative Piecemeal Litigation of the Closely Related Claims Asserted Against DAA Prevoznik and the Federal Agency Defendants**

In the event DAA Prevoznik is granted his requested stay, a corresponding stay of the claims against the Federal Agency Defendants would promote the orderly course of justice for an additional reason:  it would prevent the closely related claims Plaintiffs have asserted against DAA Prevoznik and the Federal Agency Defendants from proceeding piecemeal, which would result in duplicative litigation and the inefficient use of judicial resources.

When determining whether the orderly course of justice weighs in favor of a stay, "considerations of judicial economy are highly relevant" and such considerations weigh in favor

of a stay where "conducting further proceedings" could cause the "unnecessary expenditure of judicial resources." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-cv-01846-LHK, 2016 WL 9021536, at *2 (N.D. Cal. Mar. 22, 2016) (citation omitted). For instance, district courts have ordered broad stays to avoid "piecemealing claims," which would "require duplication of efforts to resolve closely related issues on separate occasions." *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1096 (E.D. Cal. 2008); *see, e.g.*, *Calvillo Manriquez v. DeVos*, No. 17-CV-07210-SK, 2018 WL 5316174, at *3 (N.D. Cal. Aug. 30, 2018) ("The Court finds that a stay is appropriate because the Court will be forced to address the summary judgment claims in piecemeal fashion[.]").

Here, if the litigation against DAA Prevoznik is stayed pending the Supreme Court's consideration of *Tanvir*, but is allowed to proceed against the Federal Agency Defendants, it would likely result in an inefficient and duplicative two rounds of discovery and two rounds of merits briefing on identical or substantially similar issues. Plaintiffs' RFRA and APA claims against the agencies rest in part upon alleged acts by DAA Prevoznik. *See supra* p. 5. As a result, if only DAA Prevoznik receives a stay, once that stay is complete, and assuming the case against him resumes, additional motions practice and discovery would likely be necessary, *see, e.g.*, Prevoznik Mot. at 7-8 (stating entitlement to assert qualified immunity if claim against him survives *Tanvir*), even though by that time, the case against the Federal Agency Defendants might have moved on to a different stage of proceedings. The requested stay would limit the possibility of such disjointed and inefficient litigation. Moreover, if the Court granted DAA Prevoznik a stay, but did not stay the case for the Federal Agency Defendants, it would be difficult—if not impossible—to complete discovery without entangling DAA Prevoznik in the process; avoiding such entanglement is essential to "protect[ ] the substance of the qualified immunity defense." *Crawford-El v. Britton*, 523 U.S. 574, 597 (1998). *See infra* Section I.C.

**C.  The Requested Stay Would Prevent Hardship and Inequity to DAA Prevoznik by Ensuring He Is Not Subject to Burdensome Litigation Pending His Claim of Qualified Immunity**

Heeding the Supreme Court's entanglement concern, many district courts have stayed discovery against all defendants on all related claims until it could be determined if a subset of those claims were barred due to a meritorious qualified immunity defense.  *See e.g.*, *Skinner v. Ard*, No. CV 19-66-JWD-EWD, 2020 WL 2245179, at *5 (M.D. La. May 7, 2020) ("A stay is mandated as to the federal claims to which qualified immunity applies," and, "[b]ecause the pendent state law claims are factually intertwined with the federal claims, the purpose of staying discovery when the qualified immunity defense is raised, as well as judicial economy, support a stay of discovery as to the state law claims as well."); *M.G. v. Metro. Interpreters & Translators, Inc.*, No. 12CV460-JM (MDD), 2013 WL 690833, at *2 (S.D. Cal. Feb. 26, 2013) (staying all discovery where the "Federal defendants" asserted qualified immunity, noting their conduct was "inextricably intertwined with the allegations against the non-Federal defendants[,]" who were not asserting qualified immunity);[6] *A.A. ex rel. Archuletta v. Martinez*, No. 12-CV-00732-WYD-KMT, 2012 WL 5974170, at *2 (D. Colo. Oct. 9, 2012) (stating that "it is very clear[] that the Supreme Court believes discovery should be stayed in the case as a whole even when only one defendant is asserting qualified immunity"); *Rainsaw v. United States*, No. 10CV1672, 2011 WL 1752160, at *2 (N.D. Ohio May 5, 2011) (staying discovery on a Federal Tort Claims Act claim against the United States because, *in a separate case* involving overlapping claims, individual-capacity defendants had asserted a yet-to-be decided sovereign immunity defense).

---

[6]    In *Mendia v. Garcia*, a court in this District distinguished *M.G.* and allowed piecemeal discovery in a case against the United States (which had not asserted sovereign immunity), despite staying discovery against the federal official co-defendants (who had asserted qualified immunity), in part because the defendants were all represented by the same attorneys, who would "be in a position to ensure that the Defendants' individual positions are not prejudiced, and that they are not unduly burdened" as the case proceeded against only the United States.  No. 10-CV-03910-MEJ, 2016 WL 3249485, at *5 (N.D. Cal. June 14, 2016).  In so holding, the *Mendia* court admitted that the Supreme Court's "concerns about the burdens that discovery proceedings can impose on parties asserting qualified immunity" expressed in *Iqbal* were "potentially significant," but nevertheless dismissed those concerns as "dicta."  *Id.* at *3.  In any event, this case is distinguishable from *Mendia* since DAA Prevoznik and the Federal Agency Defendants are represented by separate attorneys, working in different branches of the Department of Justice's Civil Division. *Compare infra at* 17 *with* Prevoznik Mot. at 10.

Here, the Federal Agency Defendants' co-defendant, DAA Prevoznik, has claimed that he is entitled to qualified immunity against the RFRA claim against him. Prevoznik Mot. at 7-8. Even if the Court granted his stay, if the RFRA claim against the Federal Agency Defendants proceeded to discovery or to trial, DAA Prevoznik would likely be required to participate directly as a fact witness, despite the claim against him technically being stayed. This would undermine the effectiveness of DAA Prevoznik's stay (if granted) and the protections of the qualified immunity defense.

Because summary judgment or a trial on the claims against the Federal Agency Defendants would also significantly affect DAA Prevoznik's rights and require his attention regardless of whether he receives a stay, a stay of all proceedings, and not just discovery, for the Federal Agency Defendants is necessary to avoid undermining the qualified immunity defense. *See Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (stating that qualified immunity protects an official from the burdens of all "litigation," including "trial," and not just discovery).[7]

### D. Plaintiffs Will Suffer No Prejudice or Harm from the Granting of the Requested Stay

Finally, while granting the requested stay would further the orderly course of justice and prevent hardship or inequity to a party, the stay would result in no prejudice or harm to Plaintiffs.

First, the Complaint provides no reason to believe that Plaintiffs, who have not sought preliminary injunctive relief, are suffering any present or ongoing harm to their ability to practice their religion that would continue during a stay. Arizona Yagé admits that it has been using ayahuasca since it was founded five years ago and does not claim that it has stopped using ayahuasca at any time. *See, e.g.*, Compl. ¶ 47 ("After working with Ayahuasca for six years, the founder (the "Founder") established [Arizona Yagé] as a visionary church in 2015, using Ayahuasca as [Arizona Yagé]'s communion sacrament."); ¶ 49 ("In [Arizona Yagé], healing

---

[7]    In many cases, a stay of only discovery and not all proceedings is sufficient to protect a defendant who has asserted qualified immunity because the qualified immunity question would be settled in a pending motion to dismiss or interlocutory appeal, *see, e.g.*, *M.G. v. Metro. Interpreters & Translators, Inc.*, No. 12CV460-JM (MDD), 2013 WL 690833, at *1 (S.D. Cal. Feb. 26, 2013) (explaining that the federal defendants moved to stay discovery "pending the outcome of their motion to dismiss" in which they had asserted sovereign and qualified immunity), which would not be the case here if DAA Prevoznik's motion for a stay is granted.

takes place in sacred communion by means of drinking sacramental Ayahuasca.").  Arizona Yagé and NAAVC also admit in the Complaint to attempting to import ayahuasca as recently as April 2020.  Compl. ¶ 135.

Moreover, even though the Complaint devotes dozens of paragraphs to detailing the alleged deficiencies of the DEA's 11-year-old guidance and process for evaluating petitions for religious exemption, Plaintiffs themselves have never subjected themselves to that process or had a petition for religious exemption adjudicated by the DEA.  It is not true, as Plaintiffs assert, that the DEA "has a policy of denying regulatory services to visionary churches and refusing all requested religious exemptions from the CSA," Compl. ¶ 76, and Plaintiffs proffer no allegation of even a single such denial.  But even if the DEA had such a policy, it could not have harmed Plaintiffs since they have not applied for a religious exemption.  *See, e.g.*, *Bova v. City of Medford*, 564 F.3d 1093, 1096-97 (9th Cir. 2009) (holding that plaintiff lacked standing to challenge city's policy of discontinuing post-retirement health-care insurance to city employees because plaintiff had yet to retire or be denied benefits).

Second, as discussed above, during the requested stay, the DEA's rulemaking would proceed and would at some point provide Plaintiffs with an opportunity to raise their apparent generalized grievances with the 2009 Guidance during the comment period for the new rule. Even if that guidance had injured Plaintiffs in some manner, the rulemaking already underway is likely to moot Plaintiffs' claims before they could be finally resolved, and thus a stay of the case pending that rulemaking would not harm Plaintiffs.

Third, Plaintiffs will suffer no harm from a stay of their section 1983 claim.  Plaintiffs improperly supplemented the original complaint with that claim, which is based on events occurring after the date of the original pleading, *see supra* p. 6, without a "motion and reasonable notice," as required under Rule 15(d).  Moreover, the section 1983 claim patently lacks merit to the extent it is asserted against the DEA and "unnamed DEA agents," Compl. p. 46, given that the Ninth Circuit's "case law clearly establishes that a § 1983 action is not available to redress actions taken under color of federal law."  *Buckley v. Meis*, 76 F. App'x 192, 194 (9th Cir. 2003) (stating that "§ 1983 does not apply to federal officials").

Finally, and in any event, even if a stay would cause some harm to Plaintiffs, the benefits to judicial economy that the requested stay would confer outweigh any conceivable harm. *See Landis*, 299 U.S. at 254-55 (explaining that the Court "must weigh competing interests and maintain an even balance" when determining whether to stay a case); *id.* at 256 (stating that a party "may be required to submit to delay not immoderate in extent and not oppressive in its consequences if . . . convenience will thereby be promoted"). The 2009 Guidance has been in place for 11 years, and Plaintiffs have not filed a petition with the DEA under that guidance. It is sensible to permit the status quo to continue for a reasonable duration while the DEA completes the ongoing rulemaking, at which time Plaintiffs may attempt to challenge any aspects of the final rule to which they object.

## II. IN THE ALTERNATIVE, THE FEDERAL AGENCY DEFENDANTS MOVE FOR AN ENLARGEMENT OF TIME TO RESPOND TO THE AMENDED AND SUPPLEMENTAL COMPLAINT

In the alternative, if the Court declines to grant the stay requested by DAA Prevoznik and the stay requested by this motion, the Federal Agency Defendants respectfully move under Civil Local Rule 6-3 for an extension of their deadline to respond to Plaintiffs' Complaint to 60 days after service of process upon DAA Prevoznik (who has yet to be served, *see* ECF No. 11, ¶ 12), so that the federal defendants' responsive pleading deadlines will coincide. *See* Fed. R. Civ. P. 12(a)(3). The Federal Agency Defendants also request that the Court vacate the current July 16, 2020 deadline to meet and confer and file an ADR certificate, the July 30, 2020 deadline for the parties' Rule 26(f) report and initial disclosures, *see* ECF No. 8, the August 4, 2020 deadline for the parties' case management statement, and the August 11, 2020 case management conference, *see* ECF No. 10, and reset those deadlines to coincide with the federal defendants' new responsive pleading deadline.

If the Court grants the stay requested by DAA Prevoznik but denies the stay requested by the Federal Agency Defendants, the Federal Agency Defendants respectfully request that their responsive pleading deadline be extended to the later of September 30, 2020 or 60 days from the Court's ruling on this motion. The Federal Agency Defendants also request that the Court grant an extension for a corresponding period of time of the current July 16, 2020 deadline to meet and

confer and file an ADR certificate, the July 30 deadline for the parties' Rule 26(f) report and initial disclosures, *see* ECF No. 8, the August 4 deadline for the parties' case management statement, and the August 11 case management conference, *see* ECF No. 10.

There is good cause for these requested extensions, without which the Federal Agency Defendants would suffer substantial harm or prejudice.  First, the Federal Agency Defendants have moved in good faith for the stay requested by this motion; if that stay is denied, the requested extensions would provide them with sufficient time to prepare a response to the First Amended and Supplemental Complaint and to meet the case management deadlines.  *See* Ex. B. (Decl. of Kevin P. Hancock ("Hancock Decl.") ¶¶ 8-9.)

Second, the requested extension would allow the Federal Agency Defendants sufficient time to prepare a response in light of the substantial length of the First Amended and Supplemental Complaint, which is 73-pages long and contains more than 300 paragraphs of allegations.  *See* Hancock Decl. ¶ 10.

Third, the time that the Federal Rules provide for Defendants to respond to the Complaint, *see* Fed. R. Civ. P. 12(a)(2), was effectively shortened when Plaintiffs substantially amended and supplemented their original complaint 21 days after it was served on Defendants, *see* ECF No. 12, which was the last day Plaintiffs could file an amendment without seeking consent or leave, *see* Fed. R. Civ. P. 15(a)(1)(A).  The additions to the Complaint included one new plaintiff, two new claims, four new defendants, almost 20 pages, and approximately 70 paragraphs of new allegations.  The requested extension would provide the Federal Agency Defendants with sufficient time to formulate any needed responses to Plaintiffs' lengthy new allegations and claims.  *See* Hancock Decl. ¶ 11.

Fourth, as of today, DAA Prevoznik has yet to be served with either complaint, and a certificate of service has yet to be filed on the case docket for the four new non-federal defendants.  The requested extension would allow time for Plaintiffs to effect service upon these co-defendants and for Federal Agency Defendants subsequently to consult with their non-federal co-defendants to the extent necessary for their response to the First Amended and Supplemental Complaint.  *See* Hancock Decl. ¶ 12.

Fifth, and finally, the requested extension would account for undersigned counsel's scheduled time away from work during the latter half of August, which time will include travel and pre-paid accommodations.  *See* Hancock Decl. ¶ 13.

There have been no previous time modifications in this case and the requested modification would not otherwise affect the schedule for this case.  *See* Hancock Decl. ¶ 14. Undersigned counsel asked counsel for Plaintiffs by telephone on July 16, 2020 if Plaintiffs would agree to the extension requested by this alternative motion.  Counsel for Plaintiffs responded that Plaintiffs would not oppose an extension of 30 days from the date of any denial of the motion to stay.  *See* Hancock Decl. ¶ 15.

## **CONCLUSION**

For the foregoing reasons, the Federal Agency Defendants request that the Court stay the claims against them concurrently with any stay granted to Defendant DAA Prevoznik pending the Supreme Court's ruling in *Tanvir v. Tanzin*.  In the alternative, the Federal Agency Defendants request that the Court extend their deadline to respond to the Amended Complaint.

DATED: July 16, 2020                    Respectfully submitted,


                                        ETHAN P. DAVIS
                                        Acting Assistant Attorney General

                                        BRIGHAM J. BOWEN
                                        Assistant Branch Director

                                        */s/  Kevin P. Hancock*
                                        KEVIN P. HANCOCK
                                        Trial Attorney
                                        U.S. Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L Street NW
                                        Washington, DC 20005
                                        (202) 514-3183 (phone)
                                        (202) 616-8470 (fax)
                                        kevin.p.hancock@usdoj.gov

                                        *Counsel for the Federal Agency Defendants*

# Exhibit B

# Submit New Request

## Requester Details

To modify request details please update your requester profile or contact the our office for assistance.

**Mr. Matthew Zorn**
Attorney
Yetter Coleman LLP

mzorn@yettercoleman.com

Requester Default Category: Commercial

## General Information

| | |
|---|---|
| Request Type | FOIA |
| Requester Category | News Media |
| Delivery Mode | E-mail |

## Mailing Address

| | |
|---|---|
| Street1 | ██████████ |
| Street2 | |
| City | Houston |
| State | Texas |
| Country | United States |
| Zip Code | ███████ |

## Description of Records

| | |
|---|---|
| Description of Record Request | All records related to DEA's formation or structuring of a psychedelic sacramental use advisory council under the Federal Advisory Committee Act.<br><br>All records related to the promulgation of formal rules to govern applying for exemptions to the CSA under RFRA. |
| Date Range for Record Search:From | 01/01/2020 |
| Date Range for Record Search:To | 06/11/2022 |
| Description Document | |
| Consent Attachment | |
| Proof of Identity Attachment | |

## Fee Information

| | |
|---|---|
| Willing Amount | $25 |
| Check to Request a Fee Waiver | Yes |
| Reason for Waiver Request | The disclosure of the information requested would shed light on government activities and further the public's understanding of how DEA intends to process RFRA exemptions. I intend to publish documents received under the FOIA for the public at no charge. |
| Willing to Pay All Fees | No |

## Expedite Information

| | |
|---|---|
| Expedite Requested | Yes |
| Expedite Reason | Standard II: Needed to inform the regulated public on the status of agency activities re: religious exemptions under RFRA. This is an emerging area in the psychedelic space and guidance on whether and what DEA is doing to address the issue is needed. |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW C. ZORN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-02396 |
| | § | |
| U.S. DEPARTMENT OF JUSTICE, ET AL. | § | |
| | § | |
| Defendants. | § | |

**DECLARATION OF MATTHEW C. ZORN**

1.      My name is Matthew C. Zorn. I am over 18 years of age, of sound mind and fully competent to make this Declaration. I have never been convicted of a felony or a crime of moral turpitude. I have personal knowledge of all the facts stated herein, and they are true and correct to the best of my knowledge. I am the Plaintiff.

2.      I incorporate my prior declaration by reference, Dkt. 28-1, which to my knowledge, is still true and correct.

**General Background**

3.      I am a partner at Yetter Coleman LLP in Houston, TX. I graduated from Columbia Law School in 2012. Following graduation, I worked for 3.5 years as a litigator at Paul, Weiss, Rifkind, Wharton & Garrison. From 2016 to 2017, I served as a judicial law clerk for Chief Judge Rodney Gilstrap of the Eastern District of Texas. Following the clerkship, I began my practice at Yetter Coleman LLP in 2017 and was elected partner in 2022. The American Lawyer named me a finalist for Young Lawyer of the Year (Litigation) in 2021, and the American Inns of Court named me a 2020 Pegasus Scholar.

4.      I am recognized as an authority on issues relating to the federal Controlled Substance Act. I speak about it frequently. Over approximately the past year, I've done at least 5 podcasts and been a speaker at 5 industry conferences. Also, with Shane Pennington, I recently published an article on the unconstitutionality of 21 U.S.C. § 811(d) entitled The Controlled Substances Act: An International Private Delegation That Goes Too Far, 100 Wash. U. L. Rev. (2023).

5.      In addition to my private practice, I publish on an online newsletter entitled "On Drugs" at ondrugs.substack.com, which I co-founded with Shane Pennington. Thousands read On Drugs. Most material is free. Topics range from IP to taxes to issues about the Controlled Substances Act. In writing for On Drugs, I apply my niche expertise in controlled substances to distill legal filings, including administrative filings, for those interested in legal developments in drug policy. Although I have no way to prove this, On Drugs may be the most widely read

publication that has a specific focus on legal issues in the controlled-substances space. DEA has granted me media status for at least some of my FOIA requests. And I have been given press credentials at an industry conference.

6.      Although DEA proceedings nominally default to public—i.e., nothing prevents the media or members of the public from attending hearings—unlike a court case or proceedings before other agencies engaged in enforcement, the existence of DEA proceedings is not disclosed on any website or publicly accessible medium that I am aware of. Nor are the dockets or case filings. If I knew about filings in these proceedings and the records could be obtained in timely fashion without having to pay thousands or tens of thousands of dollars to get them, I might write essays breaking down legal concepts discussed therein as I have with many other legal topics in the drug-policy space. I could also inform others about the agency law.

7.      Over the past year, I have made more than a dozen FOIA requests to DEA. The DEA FOIA portal lists 16 requests going back to 2022. Some remain open and pending. Some have been "Assigned for Processing," and some are "In Process." My December 2022 request for "the 2022 electronic calendar/scheduler of Administrator Milgram and Deputy Administrator Milione (e.g., a Calendar export from Outlook) from January 1, 2022 to December 31, 2022," for example (Request No. 23-00213-F), is "In process."[1]

8.      Below, I discuss some of these requests relevant to my pending claims and background/circumstances relating to them and my filing of this action.

### DEA's Star Chamber

9.      I have personal knowledge of DEA proceedings and how they are conducted having recently participated in one, as outlined below. Here is a quick rundown. Filings are done through e-mail, ECF-DEA@DEA.gov. There is no central docket like PACER. There is no publicizing of the hearings, except as provided in the Federal Register. Prehearing conferences are often conducted off-the-record. There is no discovery. Exculpatory evidence need not be disclosed. *See generally Miami-Luken, Inc. v. DOJ/DEA*, 2018 WL 5283938, at *2 (S.D. Ohio Oct. 24, 2018) (explaining process).[2] The Government didn't turn over its exhibits until around 10 weeks before the hearing according to a disclosure deadline, even though I had FOIA requests directly calling for many of them and they were easy to transmit.

10.      One peculiar procedural point about these proceedings deserves highlighting and explanation. Under 21 CFR § 1316.62, any party in a DEA proceeding may seek interlocutory review by the Administrator of *any* ALJ decision. A party must first request consent from the ALJ. But even if the presiding ALJ denies an interlocutory appeal, the determination is routed to the Administrator for discretionary review. The DEA Administrator may then determine an appeal is warranted under the section, accept the interlocutory appeal, and overrule the ALJ's ruling.

---

[1]      On December 27, 2022, the agency deemed my rote request for an Outlook export of the calendar to raise "unusual circumstances."

[2]      *See also Miami-Luken, Inc. v. DOJ*, 2016 WL 3855205, at *9 (S.D. Ohio July 15, 2016).

11.     In this way, all ALJ rulings in a DEA enforcement hearing are subject to review by DEA's Administrator. All the Government must do is ask.

12.     Whether this odd arrangement comports with Due Process is an interesting question. It likely violates the 5 U.S.C. § 554(d) of the APA, which provides that an employee presiding over the reception of evidence under § 556 cannot be "subject to the supervision or direction of an employee or agent engaged in the performance of investigative or prosecution functions for an agency" and an employee or agent engaged in the performance of investigative or prosecuting functions for an agency may not participate or advise in a decision, recommendation, or agency review under § 557. DEA's Administrator and the Administrator's office are likely involved in the performance of investigative and prosecuting functions in nearly every case. So, by subjecting all ALJ rulings to supervision by the DEA Administrator before the issuance of a recommended decision, DEA's unique process appears to violate § 554(d).

*13.*     Equally important, 21 C.F.R. § 1316.62 is a recent addition to DEA's regulations, and its origins are quite instructive and illustrative. In the *Miami-Luken* matter, the ALJ denied a request for an interlocutory appeal by DEA's counsel seeking to quash a subpoena issued by the ALJ. DEA's Acting Administrator stepped in and issued an order that purported to quash the subpoena—after a federal district court had ordered DEA to comply. *See Miami-Luken, Inc. v. DEA*, 900 F.3d 738, 739-41 (6th Cir. 2018). DEA was unsuccessful in overturning the ALJ's subpoena in federal district court. Despite being ordered by a federal judge to produce the documents, DEA disregarded the order, prompting the court to remark that "DEA's brazen disregard of this Court's previous Orders and actions in this case border on sanctionable." *Miami-Luken, Inc. v. DOJ*, 2019 WL 78990, at *1 (S.D. Ohio Jan. 2, 2019). *See also Miami-Luken, Inc*, 2018 WL 5283938, at *12 ("[T]he DEA moves beyond vigorously advocating its position and comes dangerously close to violating Fed. R. Civ. Proc. Rule 11").

14.     Hence, the promulgation of 21 C.F.R. § 1316.62 months later (84 Fed. Reg. 18138), which now allows the Administrator to overrule *any* ALJ decision (such as a subpoena requiring the production of potentially exculpatory evidence) upon request by the agency, thus sidestepping the annoyance of federal-court supervision and meaningful judicial review.[3]

### The Five Tryptamines Rulemaking

15.     From January to August 2022, I represented two biotech/pharmaceutical startups developing technology related to psychedelic medicine in a public, formal rulemaking proceeding. 87 Fed. Reg. 2376. In brief, DEA initiated a rulemaking to place five substances onto Schedule I. Not only was the evidence supporting the decision remarkably thin, but the Administrator's actions were plainly *ultra vires*. The Administrator proposed placing these substances on Schedule I in 2022 based on an outdated *2012* medical/scientific evaluation from HHS, even though the plain text of the Controlled Substances Act requires DEA to obtain an evaluation with *current*

---

[3]     I further note that the agency promulgated the new interlocutory appeal rule that effectively gives the Administrator plenary review and made it effective immediately. As a rule of agency procedure or practice that purportedly did not "create any substantive right in a party beyond those already existing under 21 C.F.R. 1316.62," did not submit the rule to the normal notice-and-comment process. 84 Fed. Reg. at 18139.

medical/scientific evidence before initiating scheduling proceedings. *See* 21 U.S.C. § 811(b), (c) (requiring DEA to seek HHS evaluation/recommendation on factors that include "*current* scientific knowledge" and "*current* pattern of abuse").

16.    On April 4, 2022, I raised a procedural issue with DEA's attorney about the agency's compliance with 21 C.F.R. § 1308.43(f), which requires the notice of any proposed rulemaking "include a statement of the time, place, and nature of any hearings on the proposal in the event a hearing is requested pursuant to § 1308.44." DEA's notice had not included this important information, which would inform the public of the time/place of the hearing and their right to participate in it. *See* 21 C.F.R. § 1308.44. Along the lines of the Supreme Court's *Niz-Chavez* decision, I informed the Government that the notice was defective because it had to include all the required information, so it needed to publish a new one.

17.    The tribunal held an off-the-record status conference on April 26, 2022 in which the issue was discussed. The Government lawyer explained that DEA was in the process of publishing a compliant notice of hearing in the Federal Register.

18.    Not so. By June 13, DEA had published nothing. So, the ALJ ordered DEA to publish a notice with the following text:

> The Drug Enforcement Administration is convening a hearing on the Notice of Proposed Rulemaking, 87 Fed. Reg. 2376 (2022), proposing to place 4-hydroxy-*N,N*-diisopropyltryptamine (4-OH-DiPT), 5-methoxy-*alpha*-methyltryptamine (5-MeO-AMT), 5-methoxy-*N*-methyl-*N*-isopropyltryptamine (5-MeO-MiPT), 5-methoxy-*N,N*-diethyltryptamine (5-MeO-DET), and *N,N*-diisopropyltryptamine (DiPT) in schedule I of the Controlled Substances Act. Notice is hereby given that a hearing in connection with the proposed scheduling action will commence on August 22, 2022 at 9 a.m. Eastern Time at the Drug Enforcement Administration Hearing Facility in Arlington, Virginia. The hearing date is subject to change to a later date and no additional announcement will be published. *See* 21 C.F.R. § 1316.53.

19.    DEA did not do this, so the ALJ called for an on-the-record status conference. At the June 27 conference, as the Ex. 1 shows, DEA's counsel disclosed that someone from the Administrator's office (and perhaps the Administrator herself) instructed DEA's counsel to disregard the ALJ's order. Hearing a Government attorney state that the head of a federal agency expressly instructed him to disregard an ALJ's order—an order that merely required DEA to publish a document disclosing the time/date of a proceeding to allow others to participate—is possibly the single most bizarre and mystifying thing I've witnessed in my decade's worth of practicing law. Three days after DEA's counsel disclosed the instruction, he withdrew from the case, subsequently left DEA, and started working at another position within DOJ.

20.    Following distribution of the on-the-record status conference, on July 27, 2022, DEA terminated the proceeding. 87 Fed. Reg. 45076. Thus, it is no longer pending. DEA terminated the hearing days after (a) an investigative reporter from Newsweek reached out to DEA after reading the July transcript and (b) I filed this lawsuit.

21.    During the proceedings, I made several FOIA requests to support my clients. Many simply requested important documents in DEA's administrative file, which I knew it had, were readily accessible, and could be produced with a click. DEA used the "unusual circumstances" policy, however, to defer my request and otherwise refused to disclose those documents to me until the disclosure deadline.

22.    Another of my requests, No. 22-00560-F sought "all *filings* from the proceedings in Administrative Law Judge (ALJ) Docket No. 10-46 described in 76 Fed. Reg. 77329 (Docket No. DEA-333), including briefs filed and all ALJ orders, such as the ALJ decision (Date Range for Record Search: January 13, 2015 to January 13, 2011)." I made this request because the records related to a prior formal rulemaking involving a different substance (i.e., it was precedent I could use and learn from).

23.    As was the case with all my requests during this time, DEA stated that my request raised unusual circumstances and that it would not respond within the default statutory time limits. It provided a response on September 16, 2022, a true and correct copy of which is attached as Ex. 2 to this declaration. In the response, DEA asserts that my request for public filings was for a "commercial use" and demanded I pay a check or money order up front in the amount of $41,960 to access these public administrative proceeding records.

24.    My inability to obtain these records and information from other DEA proceedings directly interfered with my advocacy and the interests of clients in concrete, tangible ways. For example, after DEA challenged one of my client's standing in the rulemaking proceeding, I needed to submit confidential business information to substantiate standing and show that my client was engaged in relevant research. Needless to say, a startup's research data and plans are sensitive information.

25.    So, I tried to find information regarding other cases where ALJs had entered administrative protective orders to protect such information. I had difficulty locating actual precedent protective orders, however, because prior DEA proceedings and records from those proceeding are not practically available. I ended up filing a motion for an administrative protective order on April 28, 2022, making oblique references to decisions in the Federal Register that indirectly referenced protective orders. The next day, the ALJ denied the motion, asserting in substance that the tribunal lacked authority to enter protective orders. *But see* 21 C.F.R. § 1316.52 (giving presiding officer the power "to take all necessary action to avoid delay, and to maintain order" and "all powers necessary to these ends").

**Efforts to Seek Information Relating to Other Matters**

26.    Apart from my work as an advocate before the agency, I also have made several FOIA requests in support of my journalistic pursuits.

27.    As I explained in my February 2023 declaration, for example, in June 2022, I made a request for "[a]ll records related to DEA's formation or structuring of a psychedelic sacramental use advisory council under the Federal Advisory Committee Act; and all records related to the promulgation of formal rules to govern applying for exemptions to the CSA under [the Religious

Freedom for Restoration Act." The agency denied my request for expedited treatment, Ex. 3, and per the "unusual circumstances policy," the request has since been relegated to the backburner.[4]

28.     On February 14, 2023, I requested communications between DEA and FDA regarding Adderall shortages described in 87 Fed. Reg. 74168 (Date range for search: January 1, 2022 to February 14, 2023). I requested expedited treatment because I am trying to write an article on the Adderall shortage and seek information regarding quotas. DEA agreed, as reflected in Ex. 4 where it granted my request for expedited treatment. But it is unclear whether DEA expedited anything. Days after DEA agreed that there is "an urgency to inform the public about an actual or alleged federal government activity," DEA informed me that my request raised "unusual circumstances" and extended the time limit indefinitely. Almost 5 months later, despite granting expedited treatment to my request, I have not received any records from DEA, nor have I received a response to my request.

29.     I have also sought records from administrative proceeding records. On June 8, 2023, I filed a FOIA request (23-00733-F) for "All records that have been previously produced under FOIA in response to a FOIA request regarding the Morris & Dickson administrative proceedings." DEA searched its case management system and was unable to locate any responsive records pertaining to the subject of my request.

30.     On June 27, 2023, I filed a FOIA request (23-00797-F) for "A copy of the August 29, 2019, ALJ Recommended Decision described at 88 Fed. Reg. 34523; and a copy of the transcript of the May 13 to 16, 2019 proceedings described at 88 Fed. Reg. 34523."

31.     I requested expedited treatment for Request No. 23-00797-F under the second standard, "an urgency to inform the public about an actual or alleged federal government activity" and the request was "made by a person who is primarily engaged in disseminating information." DEA denied my request for expedited treatment on grounds that I did not show "an urgency to inform the public about an actual or alleged federal government activity."

32.     Days later, DEA's Number 2 (Milione) official resigned.[5] In the article "Revolving Door: DEA's No. 2 quits amid reports of previous consulting work for Big Pharma" published on July 19, 2023, the AP writes that "[he] left the DEA again in late June just four days after AP sought comment from the Justice Department about his prior work for Purdue."[6] The article references his work for Morris & Dickson in the proceeding.

---

[4]     I explained in my February 2023 declaration why DEA's failure to put forward rules for religious freedom exemptions and the records I seek are important and troubling. The issue is best saved for another day because it is not immediately relevant to the issues before the Court.

[5]     *See*         https://web.archive.org/web/20230701043350/https://www.dea.gov/about/dea-leadership.

[6]     *See*           https://apnews.com/article/opioids-oxycontin-fentanyl-purdue-pharma-dea-72726613cd30be246905fe1f171c2ed8

33.     I also requested expedited treatment under the fourth standard, noting that my request concerned "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." DEA denied my request for expedited treatment under the second standard and per regulations, routed a determination under the fourth standard to DOJ's Director of Public Affairs.[7]

34.     I believe DEA's conduct with respect to the Morris & Dickson matter speaks for itself and that my request for proceeding records has not been handled in good faith.

35.     As it happens, I have a copy of the ALJ's decision, a true and correct copy of which is attached as Ex. 5, although I am not aware of it being publicly available before its filing in the Fifth Circuit case. I did not leak it to AP or anyone else, and I have no relevant knowledge about the alleged leak. As stated above, the FOIA Office did not produce records to me showing that it has been previously made available under FOIA. Indeed, it appears it was DEA FOIA policy *not* to make the quintessentially public record available.

36.     Although I have the decision, I don't have a copy of the transcript, which the decision references and cites pervasively.[8] For example, the decision cites the transcript where the Government raised an ethics/conflict-of-interest issue in its cross-examination of Milione but does not discuss the matter in any level of detail. The transcript provides important context to the information discussed in the decision. It also details the work Milione did for DEA in conjunction with Morris & Dickson before leaving the agency in 2017, and the consulting he did for Morris & Dickson immediately after he left.

37.     That Milione left the public sector and began working for regulated entities (a well-trodden path) is unremarkable. It does not give me pause. Indeed, quite the opposite. That an individual with Milione's background and deep experience began assisting companies with compliance issues gives me comfort.

38.     The issue that bothers and harms me is the *secrecy*. Separate and apart from the other FOIA issues I have identified, absent national security interests or matters that purely pertain to an individual (e.g., immigration or social security proceedings) or the like, agency proceedings and records from those proceedings should be accessible. Treating a four-year old "administrative file *as FOIA exempt* until after issuance of a final order," as is stated in Ex. 6, the Walden Declaration (*Morris & Dickson Co., LLC v. DEA*, Case No. 23-60284, Dkt. 9 at 60 (5th Cir.) beggars belief. And it confirms my concerns about the ongoing First Amendment violations and the unlawfulness of DEA's conduct. I have never heard of a FOIA exemption for pending enforcement proceedings. What federal agencies do, especially in pending enforcement proceedings, is presumptively the public's business and essential to accountability/oversight,

---

[7]     I note that more than 10 working days have elapsed since my request was routed to the DOJ's Director of Public Affairs, and I have not received a response. *But see* 28 C.F.R. § 16.5(e)(1)(iii) (2022) (time for making an expedited determination is 10 days from receipt).

[8]     The current *Morris & Dickson* case discloses a few pages of the transcript at Dkt. 10.

whether in the press or Congress. Neither the public nor Congress can know if a system is functioning—or not—if it operates outside of public view.

39.     All this is particularly true of DEA, which is charged with preventing the illegal trafficking of controlled substances that Congress has deemed has "a substantial and detrimental effect on the health and general welfare of the American people," 21 U.S.C. § 802(2). Presumably, when DEA initiates an administrative proceeding, the matter relates to the "health and general welfare of the American people."

40.     The failure of the agency to make its precedents and case records public also results in structural injustice to the detriment of the regulated public. The agency, having litigated these matters, has access to these records. Litigants and their attorneys do not.

41.     When an agency makes proceedings and precedents unavailable to litigants and advocates, makes arbitrary rulings, can overrule the presiding ALJ at will, interferes with ALJ proceedings—*and* can also shield those proceedings from public access, scrutiny, and oversight to boot—the First Amendment and the rule of law become dead letters.

42.     The docket from the Morris & Dickson case, the ALJ recommended decision, and the transcript of the merits hearings should be publicly accessible today. Records from *all* enforcement proceedings and rulemaking—and particularly those that result in a trial-like hearing involving opioid manufacturers or distributors, as is the case with DEA Docket No. 18-31—should be publicly disclosed or reasonably accessible today. The year is 2023. No agency[9] in the Executive Branch—particularly one in the United States Department of Justice and headed by the Attorney General—should be running a modern-day Star Chamber.

Executed in Harris County, Texas on July 26, 2023.

/s/ Matthew C. Zorn
Matthew C. Zorn

---

[9]     Yes, DEA is an agency. *See* Dkt. 28.

# Exhibit A



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW C. ZORN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-02396 |
| | § | |
| U.S. DEPARTMENT OF JUSTICE, ET AL. | § | |
| | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF MATTHEW C. ZORN

1.      My name is Matthew C. Zorn. I am over 18 years of age, of sound mind and fully competent to make this Declaration. I have never been convicted of a felony or a crime of moral turpitude. I have personal knowledge of all the facts stated herein, and they are true and correct to the best of my knowledge. I am the Plaintiff.

2.      I incorporate my July 26, 2023, declaration by reference, which to my knowledge, is still true and correct. Here, I provide supplemental information about recent events since June 2023 that have occurred.

### Supplemental Information

3.      Consistent with my earlier statements, I have submitted additional FOIA requests to DEA. Since 2022, DEA's FOIA portal shows that I have made 21 FOIA requests from DEA. Around half remain pending. I have also submitted requests to other DOJ components.

4.      Because of the issues I have described in my declarations, I have had to devote substantial time and resources away from my regular law practice, including litigating this case. These policies also prevent me from gaining timely access to information to write timely stories for my newsletter.

5.      On June 8, 2023, I requested a copy of "DEA's current policy for retaining e-mails and/or its General Records Schedule 6.1." In July 2022, regarding (now closed) Request 22-00580-F, DEA's Chief of the Freedom of Information and Privacy Act Unit (CCAR), explained that DEA was unable to search for emails prior to 2019 for non-Senior Executive Service employees because agency policy is to retain employee e-mails going only three years back.

6.      This preservation relates to one of my outstanding requests from June 2022 seeking records from January 2020 regarding DEA's formation or structuring of a psychedelic sacramental use advisory council under the Federal Advisory Committee Act. At the time I made that request, all records would be within the three-year retention window. Today, that is not so. I made this

request based on indirect information I had learned about DEA requesting the formation of an advisory council in 2021.

7.      Weeks after having not received DEA's e-mail retention policy through my June 2023 FOIA request—indeed, that request raised "unusual circumstances" indicating that DEA's e-mail retention policies are not in its FOIA Office—I reached out to the Government in this case to ensure that e-mails relevant to that request would be preserved. The Government confirmed that they would be preserved but added that if I want "further details on the status of this or other FOIA requests" to go "through the normal FOIA channels at DEA."

8.      Of course, I had basically done just that, but was unable to get a timely response to my FOIA request because of unlawful FOIA policies and practices—even for a record that a statutorily compliant Chief FOIA Officer would have in her possession, custody, or control. Indeed, the Capstone Approach DEA purportedly follows as laid out by NARA expressly contemplates the intersection of record preservation and FOIA.[1] And, according to a NARA white paper, "NARA's existing regulations and guidance contain several requirements for the proper documentation of an agency's use of the Capstone GRS and the Capstone approach in general," which includes "[p]osting of the agency's records management directive on the agency's website **per the FOIA, 5 USC 552(a)(1)(D)**."[2]

9.      On August 1, 2023, I requested ALJ Mulrooney's order denying the issuance of subpoenas and the Government's filing pertaining to Postmeds, Inc., from January 1, 2023 to August 1, 2023. The agency marked that request for a single administrative order as raising "unusual circumstances."  The order I requested relates to a case currently pending in the Eastern District of Virginia, *Postmeds, Inc. v. DEA*, 1:23-cv-00648-TSE-JFA. The plaintiff, Postmeds, is represented by, among other attorneys, former Deputy Attorney General Jim Cole.

10.      In the case, Postmeds alleges in its Complaint that "In answering DEA's charge, it is essential that Hayward be able to examine and use the records of DEA's interactions with Hayward in 2019. *When asked for that information, however, DEA refused to provide it. And when Hayward asked the ALJ to issue subpoenas for those records, the ALJ ruled that DEA's regulations did not empower him to do so*." Accordingly, the plaintiff alleges "after being made the target of DEA's first and only attempt to enforce the online-pharmacy requirement, Hayward faces a hearing in which it cannot obtain exculpatory evidence." The plaintiff then asserts that DEA proceedings are unconstitutional because "DEA regulations provide no mechanism by which respondents in DEA administrative proceedings can obtain documents and information to vindicate their due process rights." The complaint quotes the ALJ's remark in that case: "As CALJ Mulrooney conceded during a preliminary hearing, 'if an agency withholds discovery to a point where it affects due process, it can constitute error. An issue for you is that there's no mechanism to make that work.'"

11.      The conduct of DEA in these administrative proceedings—particularly the disclosure policies surrounding and within them—is of particular interest to me. The allegations

---

[1]      https://www.archives.gov/records-mgmt/grs/grs06-1-faqs.html
[2]      https://www.archives.gov/files/records-mgmt/email-management/final-capstone-white-paper.pdf

made in this lawsuit are consistent with my experience and consistent with my description of DEA proceedings as a "Star Chamber," where DEA does not turn over exculpatory evidence.

12.     On August 15, 2023, I made FOIA requests for documents relating to DEA's implementation of FOIA in the custody or control of its Chief FOIA Officer. One request, Request 23-00952-F, for example, seeks "Communications between DEA's Chief FOIA Officer and Administrator Anne Milgram recommending any adjustments to agency practices, policies, personnel or funding to improve FOIA functioning."

13.     Because DEA has no Chief FOIA Officer, however, I do not expect DEA to be able to respond to these requests and any produce records. Of course, if DEA had a statutory compliant Chief FOIA Officer that did the duties listed under 5 U.S.C. § 555(j), there is an overwhelming probability at least some records would exist. The inability of DEA to produce such records causes me concrete harm in many ways, including depriving me of information regarding DEA's implementation of FOIA that would normally be available to the public by request through FOIA. That information would be useful to me, for example, to use in this lawsuit or in writing about FOIA issues. In furtherance of my legal and journalistic enterprises, I expect to continue to make requests for records that would be in the custody or control of DEA's Chief FOIA Officer.

14.     My coverage of DEA and drug policy issues—which includes my FOIA exploits—garner significant attention in the industry media. Recently, for example, my FOIA requests relating to marijuana rescheduling was republished by several industry publications, including Marijuana Moment (https://www.marijuanamoment.net/biden-admin-has-no-record-of-marijuana-letter-cited-by-dea-head-in-congressional-testimony/). Beyond industry publications, the On Drugs newsletter also has many subscribers from mainstream news outlets, including subscribing reporter at the Wall Street Journal, Washington Post, MSNBC, and New York Times.

15.     In the past two weeks, I informally consulted with one such reporter on DEA's improper FOIA response to his FOIA request, which comprised less than 100 pages and yet took approximately *4 years* to process. In response, DEA made several "non-responsive" redactions, such as the one depicted below where the "below email chain" has been redacted:



16.     The D.C. Circuit in *American Immigration Lawyers Association v. EOIR*, stated that "non-responsive redactions . . . find no home in FOIA's scheme." So, "once an agency identifies a record it deems responsive to a FOIA request, the statute compels disclosure of the responsive record—i.e., as a unit—except insofar as the agency may redact information falling within a statutory exemption." *Id.* This is not an obscure point of law or fact pattern that a properly appointed Chief FOIA Officer properly supervising an agency's FOIA arm would be unaware of. Indeed, I copy and pasted this text right out of OIP's FOIA manual at https://www.justice.gov/oip/oip-guidance/defining_a_record_under_the_foia. According to the manual, "After the court's decision in *AILA* it is not permissible to redact information within a record as 'non-responsive.'" Although FOIA gives agencies some room to define what a "record" is—in some cases the e-mail and its attachment may be two "records" not one—"ordinary practice leaves very little wiggle room in generally requiring an email with attachments to be kept together as a single record." *Judge Rotenberg Educ. Ctr., Inc. v. FDA*, 376 F. Supp. 3d 47, 62 (D.D.C. 2019) (citing cases). So too, with e-mails earlier in a chain that later e-mails subject to the FOIA

request. DEA's "non-responsive" redactions go far beyond the limits of what contemporary FOIA jurisprudence allows. [3]

Executed in Harris County, Texas on August 18, 2023August 18, 2023.

*/s/Matthew C. Zorn*
Matthew C. Zorn

---

[3] To be clear, I'm not trying to litigate this issue, which belongs to another and is completely tangential. Rather, I merely wish to illustrate how deep and far-reaching DEA's FOIA non-compliance goes in furtherance of my Chief FOIA Officer claim. Having a statutory compliant politically accountable Chief FOIA Officer (i.e., the statutory supervision Congress intended) would mitigate against obvious and flagrant FOIA violations and are types of issues that a Chief FOIA Officer should be held to account for.



**U.S. Department of Justice**
Drug Enforcement Administration
FOIA and Privacy Act Unit
8701 Morrissette Drive
Springfield, Virginia 22152

September 11, 2023

Case Number: 23-00952-F

Subject: Emails between DEA's Chief FOIA Officer and Administrator Anne Milgram recommending any adjustments to agency practices, policies, personnel or funding to improve FOIA functioning from January 1, 2023 to August 15, 2023

Matthew Zorn
Partner
Yetter Coleman LLP
811 Main Street, Suite 4100
Houston, Texas 77002
*Sent via e-mail:* mzorn@yettercoleman.com

Dear Matthew Zorn:

This letter responds to your Freedom of Information Act/Privacy Act (FOIA/PA) request letter dated August 15, 2023, addressed to the Drug Enforcement Administration (DEA), FOIA/PA Unit, seeking access to DEA records pertaining to the above subject.

Please be advised that the DEA does not have a Chief FOIA Officer as mentioned in 5 U.S.C § 552 (j). We do not have any responsive records pertaining to the subject of your request.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. *See* 5 U.S.C. § 552(c). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

You may contact our FOIA Public Liaison at (571) 776-2300 for any further assistance and to discuss any aspect of your request. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at (202) 741-5770; toll free at 1-877-684-6448; or facsimile at (202) 741-5769.

Case Number: 23-00952-F                                                    Page 2

If you are not satisfied with DEA's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.  Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request.  If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

If you have any questions regarding this letter, you may contact our FOIA Requester Service Center at (571) 776-2300.

Sincerely,


Yvette D. Davis, Chief
Intake Sub-Unit
Freedom of Information and Privacy Act Unit



**U.S. Department of Justice**
Drug Enforcement Administration
FOIA and Privacy Act Unit
8701 Morrissette Drive
Springfield, Virginia 22152

September 11, 2023September 11, 2023

Case Number: 23-00953-F

Subject: Any presentations, guidelines, or documents in the custody or control of DEA's Chief FOIA Officer regarding the "unusual circumstances" exception, how to distinguish between complex and simple requests, policies or methods by which DEA calculates fee estimates, and how DEA applies (b)(6) exemptions.
(Date Range for Record Search: January 1, 2022 – August 15, 2023)

Matthew Zorn
Partner
Yetter Coleman LLP
811 Main Street, Suite 4100
Houston, Texas 77002
*Sent via e-mail:* mzorn@yettercoleman.com

Dear Matthew Zorn:

This letter responds to your Freedom of Information Act/Privacy Act (FOIA/PA) request letter dated August 15, 2023, addressed to the Drug Enforcement Administration (DEA), FOIA/PA Unit, seeking access to DEA records pertaining to the above subject.

Please be advised that the DEA does not have a Chief FOIA Officer as mentioned in 5 U.S.C § 552 (j). With regard to your request for presentations, guidelines, or documents in the custody or control of DEA's FOIA Officer regarding the "unusual circumstances" exception, how to distinguish between complex and simple requests, and policies or methods by which DEA calculates fee estimates, please be advised that the information was released to you before your deposition with the DEA's former FOIA/PA Unit Chief  Kelleigh Miller. No other information is available to you.

Additionally, with regard to your request for presentations, guidelines, or documents in the custody or control of DEA's FOIA Officer regarding how the DEA applies (b)(6) exemptions, please be advised that the DEA follows the Department of Justice, Office of Information Policy's guidance. The information you seek is available to the public online at the Office of Information Policy | Department of Justice Guide to the Freedom of Information Act.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. *See* 5 U.S.C. § 552(c). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

Case Number: 23-00953-F                                                Page 2

You may contact our FOIA Public Liaison at (571) 776-2300 for any further assistance and to discuss any aspect of your request.  Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at (202) 741-5770; toll free at 1-877-684-6448; or facsimile at (202) 741-5769.

If you are not satisfied with DEA's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website:  https://www.justice.gov/oip/submit-and-track-request-or-appeal.  Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request.  If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

If you have any questions regarding this letter, you may contact our FOIA Requester Service Center at (571) 776-2300.

Sincerely,


Yvette D. Davis, Chief
Intake Sub-Unit
Freedom of Information and Privacy Act Unit



**U.S. Department of Justice**
Drug Enforcement Administration
FOIA and Privacy Act Unit
8701 Morrissette Drive
Springfield, Virginia 22152

September 11, 2023

Case Number: 23-00954-F

Subject: Documents in possession of DEA's Chief FOIA Officer sufficient to show DEA's policy of treating records from pending administrative enforcement proceedings as FOIA exempt.
(Date Range for Record Search: January 1, 2022 – August 15, 2023)

Matthew Zorn
Partner
Yetter Coleman LLP
811 Main Street, Suite 4100
Houston, Texas 77002
*Sent via e-mail:* mzorn@yettercoleman.com

Dear Matthew Zorn:

This letter responds to your Freedom of Information Act/Privacy Act (FOIA/PA) request letter dated August 15, 2023, addressed to the Drug Enforcement Administration (DEA), FOIA/PA Unit, seeking access to DEA records pertaining to the above subject.

Please be advised that the DEA does not have a Chief FOIA Officer as mentioned in 5 U.S.C § 552 (j).  After reviewing your request, we conducted a search of the DEA's FOIA Office.  As a result of our query, we were unable to locate any responsive records pertaining to the subject of your request.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  *See* 5 U.S.C. § 552(c).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

You may contact our FOIA Public Liaison at (571) 776-2300 for any further assistance and to discuss any aspect of your request.  Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at (202) 741-5770; toll free at 1-877-684-6448; or facsimile at (202) 741-5769.

Case Number: 23-00954-F                                                    Page 2

     If you are not satisfied with DEA's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website:  https://www.justice.gov/oip/submit-and-track-request-or-appeal.  Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request.  If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

     If you have any questions regarding this letter, you may contact our FOIA Requester Service Center at (571) 776-2300.

                  Sincerely,


                  Yvette D. Davis, Chief
                  Intake Sub-Unit
                  Freedom of Information and Privacy Act Unit

## Submit New Request

### Requester Details

To modify request details please update your requester profile or contact the our office for assistance.

**Mr. Matthew Zorn**
Attorney
Yetter Coleman LLP

mzorn@yettercoleman.com

Requester Default Category: Commercial

### General Information

| | |
|---|---|
| Request Type | FOIA |
| Requester Category | News Media |
| Delivery Mode | E-mail |

### Mailing Address

| | |
|---|---|
| Street1 | 5458 Crooms St. |
| Street2 | |
| City | Houston |
| State | Texas |
| Country | United States |
| Zip Code | 77007 |

### Description of Records

| | |
|---|---|
| Description of Record Request | All records related to DEA's formation or structuring of a psychedelic sacramental use advisory council under the Federal Advisory Committee Act.<br><br>All records related to the promulgation of formal rules to govern applying for exemptions to the CSA under RFRA. |
| Date Range for Record Search:From | 01/01/2020 |
| Date Range for Record Search:To | 06/11/2022 |
| Description Document | |
| Consent Attachment | |
| Proof of Identity Attachment | |

### Fee Information

| | |
|---|---|
| Willing Amount | $25 |
| Check to Request a Fee Waiver | Yes |
| Reason for Waiver Request | The disclosure of the information requested would shed light on government activities and further the public's understanding of how DEA intends to process RFRA exemptions. I intend to publish documents received under the FOIA for the public at no charge. |
| Willing to Pay All Fees | No |

### Expedite Information

| | |
|---|---|
| Expedite Requested | Yes |
| Expedite Reason | Standard II: Needed to inform the regulated public on the status of agency activities re: religious exemptions under RFRA. This is an emerging area in the psychedelic space and guidance on whether and what DEA is doing to address the issue is needed. |



**U.S. Department of Justice**

Drug Enforcement Administration

FOIA and Privacy Act Unit

8701 Morrissette Drive

Springfield, Virginia  22152

August 17, 2022

Case Number: 22-00806-F

Subject: All records related to DEA's formation or structuring of a psychedelic sacramental use advisory council under the Federal Advisory Committee Act, and all records related to the promulgation of formal rules to govern applying for exemptions to the CSA under RFRA.
Date Range for Record Search: January 1, 2020 to June 11, 2022

Matthew Zorn, Esq.
5458 Crooms St.
Houston, Texas 77007
*Sent via e-mail:* mzorn@yettercoleman.com

Dear Matthew Zorn:

        This letter responds to your Freedom of Information Act/Privacy Act (FOIA/PA) request dated June 27, 2022, addressed to the Drug Enforcement Administration (DEA), FOIA/PA Unit, seeking access to information regarding the above subject.  Your request was opened and assigned the above case number.  Please include this case number when communicating with this office.

        With regard to the first portion of your request for "All records related to DEA's formation or structuring of a psychedelic sacramental use advisory council under the Federal Advisory Committee Act," this office has proceeded to search for documents that you may be seeking. Record searches have been sent to the Diversion Control Division (DC) and the Office of Chief Counsel (CC) which are the offices within DEA most likely to have records responsive to your request.  DEA intends to proceed with the search it has taken and will process the documents located by DC and CC.

        With regard to the second portion of your request for "All records related to the promulgation of formal rules to govern applying for exemptions to the CSA under the RFRA," please note, this portion of your request is too broad and does not comport with the Department of Justice rules, contained at 28 C.F.R. § 16.3(b).  Requests must provide enough detail to enable DEA personnel to locate records "with a reasonable amount of effort."  The subject of the request and the phrase "related to" in this context are too expansive, and additional information about the records being sought has not been provided.  See, e.g., CNN v. FBI, 271 F.Supp.3d 108, 112 (D.D.C. 2017) (phrase "relate in any way" too vague to reasonably describe records sought and citing other cases); Pinson v. Dept. of Justice, 245 F. Supp. 3d 225, 244-45 (D.D.C. 2017) (request for "documents 'concerning the activities of the California Mexican Mafia and Aryan brotherhood gangs within federal prisons generated since 2007'" not reasonably described).

Case Number: 22-00806-P                                                                    Page 2

DEA requests that you provide more information identifying the specific records you seek such as the title of the records and author.  Please note, DEA's rulemaking file is where the DEA section responsible for rulemaking maintains records significant to the rulemaking process.  Please advise this office if you would modify the request to seek the records maintained in the rulemaking file.  Modifying your request to seek records in the rulemaking file will enable this office to conduct a search with a reasonable amount of effort.

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required to inform you of your right to an administrative appeal of this determination.  If you are not satisfied with DEA's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website:  https://www.justice.gov/oip/submit-and-track-request-or-appeal.  Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

To this end, no further action will be initiated on the second portion of your request until we are in receipt of a reasonable description of records sought.  If this office does not receive your reformulated request within 30 business days, DEA will assume that you do not wish to pursue this matter and we will take no further action on the second portion of your request.  Please e-mail your response to DEA.FOIA@dea.gov.

You may contact our FOIA Public Liaison at (571) 776-2300 for any further assistance and to discuss any aspect of your request.  Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at (202) 741-5770; toll free at 1-877-684-6448; or facsimile at (202) 741-5769.

If you have any questions regarding this letter, you may contact FOIA/PA Unit representative Rickey L. Polk, Jr. at (571) 776-3325 or via e-mail at Rickey.L.PolkJr@dea.gov.

Sincerely,


Kelleigh A. Miller, Chief
Freedom of Information and Privacy Act Unit
Administrative and General Law Section
Office of Chief Counsel



**U.S. Department of Justice**

Drug Enforcement Administration

FOIA and Privacy Act Unit

8701 Morrissette Drive

Springfield, Virginia  22152

August 26, 2022

Case Number: 22-00695-F

Subject: All records (including) related to the receipt and processing of FOIA request
          22-00592-F (Date Range of Request: February 1, 2022 to present)

Kathryn Tucker, Esq.
Emerge Law Group
621 Southwest Morrison Street, Suite 900
Portland, Oregon 97205
*Sent via e-mail:* kathryn@emergelawgroup.com

Dear Kathryn Tucker:

    This letter responds to your Freedom of Information Act/Privacy Act (FOIA/PA) request
dated May 31, 2022, addressed to the Drug Enforcement Administration (DEA), FOIA/PA Unit,
seeking access to information regarding the above subject.

    By letter dated July 13, 2022, my office advised you that we were processing records
responsive to FOIA request 22-00592-F; therefore, we administratively closed your request for the
processing notes.  We further advised you to resubmit your request for the processing notes upon
completion of the processing of FOIA request 22-00592-F.

    I have reconsidered your request.  My office reopened your case and will begin processing
the requested case notes.  We estimate completion of the processing within 90 business days and
will send you a final determination once complete.

    The rules and regulations of the DEA applicable to FOIA/PA requests are contained in the
Code of Federal Regulations, Title 28, Part 16, as amended.  They are published in the Federal
Register available to the public (see https://www.ecfr.gov/current/title-28/chapter-I/part-16).

    You may contact our FOIA Public Liaison at (571) 776-2300 for any further assistance and
to discuss any aspect of your request.  Additionally, you may contact the Office of Government
Information Services (OGIS) at the National Archives and Records Administration to inquire
about the FOIA mediation services they offer.  The contact information for OGIS is as follows:
Office of Government Information Services, National Archives and Records Administration,
Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov;
telephone at (202) 741-5770; toll free at 1-877-684-6448; or facsimile at (202) 741-5769.

Case Number: 22-00695-F                                                    Page 2

      If you have any questions regarding this letter, you may contact our Requester Service Center at (571) 776-2300 or via e-mail at DEA.FOIA@dea.gov.

                                          Sincerely,


                                          Kelleigh A. Miller, Chief
                                          Freedom of Information and Privacy Act Unit
                                          Administrative and General Law Section
                                          Office of Chief Counsel