# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

MATTHEW C. ZORN,

        *Plaintiff,*

      v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

        *Defendants.*

Civil Action No. 4-22-02396

## DEFENDANTS' MOTION TO DISMISS IN PART

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................2

    I.     LEGAL BACKGROUND ........................................................................2

         A.    Chief FOIA Officer Provision ........................................................2

         B.    First Amendment and DEA Administrative Proceedings ............3

    II.    PLAINTIFF, HIS CLAIMS, AND HIS ALLEGED INJURIES...........................4

ARGUMENT ........................................................................................................6

    I.     PLAINTIFF LACKS STANDING TO OBTAIN THE RELIEF HE
        SEEKS.......................................................................................6

         A.    Counts 3, 4, and 5 Should Be Dismissed Because Plaintiff Has No
             Standing to Litigate the Appointment of a Chief FOIA Officer. ...............7

             1.    No standing based on challenges to FOIA policies and
                  practices that a hypothetical Chief FOIA Officer might
                  change ................................................................................7

             2.    No standing based on FOIA requests for documents that a
                  hypothetical Chief FOIA Officer might generate .........................10

         B.    Plaintiff Lacks Standing to Seek the Wide-ranging Relief He Pleads
             on his First Amendment Claim....................................................11

             1.    No standing based on speculative need for information about
                  unspecified DEA proceedings ........................................11

              2.    No standing to obtain requested sweeping relief based on
                  particular FOIA requests for records................................13

    II.    PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF
        CAN BE  GRANTED...................................................................14

         A.    Counts 3, 4, and 5 Fail to State a Claim Because FOIA Does Not
             Require DEA to Appoint a Chief FOIA Officer. ........................15

1.      FOIA's requirement for agencies to appoint Chief FOIA Officers refers to executive departments like DOJ, not components like DEA.......................................................................................16

2.      In any event, Congress has ratified the executive branch interpretation that the Chief FOIA Officer provision does not apply to components of executive departments.......................20

B.      Count 6 Fails to State a Claim Because the First Amendment's Logic and Experience Test Does Not Apply to DEA Proceedings and Records and Has Not Been Met Regardless..........................................24

1.      The experience and logic test does not apply to administrative agency proceedings or records. ..........................................................25

2.      Even if the experience and logic test applied, Plaintiff has failed to plausibly allege he meets it. ................................................26

CONCLUSION ..........................................................................................................28

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................ 14, 15

*Bates v. United States,*
  522 U.S. 23 (1997) ........................................................................................ 19

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..................................................................................... 14

*Calder v. I.R.S.,*
  890 F.2d 781 (5th Cir. 1989) ............................................................... 25, 26, 27

*Calogero v. Shows, Cali & Walsh, LLP,*
  970 F.3d 576 (5th Cir. 2020) ...................................................................... 15

*Center for Biological Diversity, Inc. v. BP American Production Co.,*
  704 F.3d 413 (5th Cir. 2013) .................................................................. 12, 13

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ................................................................................. 8, 12

*Clark v. Rameker,*
  573 U.S. 122 (2014) ..................................................................................... 18

*Corley v. United States,*
  556 U.S. 303 (2009) ..................................................................................... 18

*Ctr. for Nat'l Sec. Stud. v. U.S. Dep't of Just.,*
  331 F.3d 918 (D.C. Cir. 2003) ................................................................... 26

*Dep't of Homeland Security v. MacLean,*
  574 U.S. 383 (2015) ..................................................................................... 19

*Detroit Free Press v. Ashcroft,*
  303 F.3d 681 (6th Cir. 2002) ...................................................................... 27

*Duarte v. Mayorkas,*
  27 F.4th 1044 (5th Cir. 2022) ................................................................. 23, 24

*Federal Election Comm'n v. Akins,*
  524 U.S. 11 (1998) ................................................................................. 10, 12

*Forest Grove Sch. Dist. v. T.A.*,
　557 U.S. 230 (2009) ..................................................................................23

*Forsham v. Harris*,
　445 U.S. 169 (1980) ..................................................................................11

*Gill v. Whitford*,
　138 S. Ct. 1916 (2018) ..............................................................................14

*Houchins v. KQED, Inc.*,
　438 U.S. 1 (1978) ............................................................................... 25, 26

*Jersey Media Grp., Inc. v. Ashcroft*,
　308 F.3d 198 (3d Cir. 2002) .....................................................................27

*Lewis v. Casey*,
　518 U.S. 343 (1996) ..................................................................................14

*Lorillard v. Pons*,
　434 U.S. 575 (1978) ........................................................................... 23, 24

*Loughrin v. United States*,
　573 U.S. 351 (2014) ..................................................................................19

*Lujan v. Defs. of Wildlife*,
　504 U.S. 555 (1992) ................................................................... 6, 7, 8, 13

*McBurney v. Young*,
　569 U.S. 221 (2013) ........................................................................... 25, 26

*Morales v. Trans World Airlines, Inc.*,
　504 U.S. 374 (1992) ..................................................................................18

*Morgan v. Medtronic, Inc.*,
　172 F. Supp. 3d 959 (S.D. Tex. 2016) ......................................................15

*New York v. Meta Platforms, Inc.*,
　66 F.4th 288 (D.C. Cir. Apr. 27, 2023)......................................................21

*Press-Enter. Co. v. Superior Ct. of Cali. for Riverside Cty.*,
　478 U.S. 1 (1986) ....................................................................... 25, 27, 28

*Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
　878 F.3d 371 (D.C. Cir. 2017) ..................................................................10

*Public Citizen v. U.S. Dep't of Justice,*
    491 U.S. 440 (1989) ................................................................................. 10, 13

*Republic of Sudan v. Harrison,*
    139 S. Ct. 1048 (2019) ..................................................................................... 19

*Richmond Newspapers, Inc. v. Virginia,*
    448 U.S. 555 (1980) ......................................................................................... 27

*Russello v. United States,*
    464 U.S. 16 (1983) ........................................................................................... 19

*Rutila v. U.S. Dep't of Transportation,*
    72 F.4th 692 (5th Cir. 2023) ............................................................................ 11

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ........................................................................................... 6

*Town of Chester, N.Y. v. Laroe Estates, Inc.,*
    581 U.S. 433 (2017) ...................................................................................... 6, 14

*U.S. Dep't of Justice v. Tax Analysts,*
    492 U.S. 136 (1989) ......................................................................................... 10

*United States v. Brown,*
    250 F.3d 907 (5th Cir. 2001) ........................................................................... 25

*United States v. Jicarilla Apache Nation,*
    564 U.S. 162 (2011) ......................................................................................... 16

*Valve Corp. v. Ironburg Inventions Ltd.,*
    8 F.4th 1364 (Fed. Cir. 2021) .......................................................................... 21

*Warth v. Seldin,*
    422 U.S. 490 (1975) ........................................................................................... 6

## STATUTES

5 U.S.C. § 101 ..................................................................................................... 3, 16

5 U.S.C. § 103 ........................................................................................................ 16

5 U.S.C. § 551 ........................................................................................................ 18

5 U.S.C. § 552 ................................................................................................. *passim*

5 U.S.C. §§ 553–59 ...................................................................................................................18

Pub. L. No. 110-175, 121 Stat. 2529 (Dec. 31, 2007) ..........................................................22

Pub. L. No. 114-185, 130 Stat. 542 (June 30, 2016).............................................................22

Reorganization Plan No. 2 of 1973,
    Pub. L. No. 93-253, 87 Stat. 1091, as amended Pub. L. No. 93-253, 88 Stat. 50 (1974)....... 3, 16

**RULES**

Fed. R. Civ. P. 12.............................................................................................................. 1, 14

**REGULATIONS**

21 C.F.R. § 1308.41 .................................................................................................................4

21 C.F.R. §§ 1301.41–46 ........................................................................................................3

21 C.F.R. §§ 1309.51–55 ........................................................................................................3

21 C.F.R. §§ 1312.41–47 ........................................................................................................3

21 C.F.R. §§ 1313.51–57 ........................................................................................................3

21 C.F.R. §§ 1315.50–62 ........................................................................................................4

28 C.F.R. Pt. 16 .............................................................................................................3, 16, 19

Executive Order 13,392,
    70 Fed. Reg. 75373 (Dec. 14, 2005) ................................................................... 20, 21, 22

**OTHER AUTHORITIES**

Statement of Daniel J. Metcalfe, Dir., Office of Info. & Privacy, Dep't of Justice, *Implementing
    FOIA – Does the Bush Administration Executive Order Improve Processing?: Hearing Before the Subcomm.
    on Gov't Mgmt., Finance, & Accountability, of the H. Comm. on Gov't Reform* (July 26, 2006),
    https://www.justice.gov/archive/oip/metcalfe_foia_testimony07252006.pdf ................. 20, 21

*Summary of Agency Chief FOIA Officer Reports for 2012*, Dep't of Justice Office of Info. Policy,
    https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/sum-2012-chief-foia-
    officer-rpt.pdf .................................................................................................................22

*Summary of Agency Chief FOIA Officer Reports for 2014*, Dep't of Justice Office of Info. Policy,
    https://www.justice.gov/sites/default/files/pages/attachments/2014/09/12/2014_cfo_
    summary_and_assessment_0.pdf.........................................................................................22

*Summary of Agency Chief FOIA Officer Reports for 2018*, Dep't of Justice Office of Info. Policy, https://www.justice.gov/OIP/Reports/2018Summary%26Assessment/download#2018 ..... 23

U.S. Dep't of Justice, *Chief FOIA Officers Designated Under E.O. 13,392* (as accessible on June 15, 2006), https://web.archive.org/web/20060615024129/http://www.usdoj.gov:80/04foia/chieffoiaoff icers.html ............................................................................................................................. 21

*U.S. Dep't of Justice 2023 Chief FOIA Officer Report*, https://www.justice.gov/oip/page/file/1573561/download ..................................................... 23

Defendants move to dismiss in part Plaintiffs' Fourth Amended Complaint, under Fed. R. Civ. P. 12(b)(1) and (6), for lack of jurisdiction and for failure to state a claim. For the following reasons, counts 3–6 of the Fourth Amended Complaint should be dismissed.

## INTRODUCTION

This case began with a straightforward, albeit legally deficient, premise: that the Drug Enforcement Administration ("DEA") has an alleged policy to treat nearly all Freedom of Information Act ("FOIA") requests as subject to the "unusual circumstances" provision provided by the statute. Defendants moved to dismiss that claim because the legal theory upon which it is based—a "policy or practice" claim—is not recognized in this Circuit and Plaintiff has not plausibly alleged such a claim even if it were the law of this Circuit. The Court, Judge Hughes then presiding, nonetheless permitted Plaintiff to pursue a limited amount of discovery and the Parties thereafter agreed on a schedule for dispositive motions based on the assembled evidentiary record. Defendants remain ready to proceed to summary judgment on that original policy or practice claim, now reflected in counts 1 and 2 of the Fourth Amended Complaint.

Plaintiff has since sent this case on a tortuous path, variously expanding and contracting its claims, venturing into areas far afield of the initial allegations to encompass a litany of alleged deficiencies in the FOIA operations of DEA and the Department of Justice ("DOJ"). *See generally* Defs.' Mot. to Dismiss in Part re 2d Am. Compl., Doc. No. 42. The newest version of this lawsuit, the Fourth Amended Complaint, presents two sets of claims in addition to the original policy or practice claim: a group of claims challenging DEA's compliance with FOIA's Chief FOIA Officer provision and a First Amendment claim seeking records of and the creation of a docketing system regarding all DEA administrative proceedings. As with the various claims that Plaintiff has voluntarily discarded over the past months, Doc. Nos. 44, 64 ¶ 3, these additional causes of action

represent irrelevant detours that should not pass the dismissal threshold.  Plaintiff lacks standing to pursue the expansive relief he seeks in them and fails to state any violation of law.  The Court should return this case to its original form, limited to counts 1 and 2, so that it may be promptly resolved at summary judgment.

## BACKGROUND

## I.    LEGAL BACKGROUND

Plaintiff's Fourth Amended Complaint puts at issue two unrelated portions of FOIA: (1) the timing requirements for agencies to make a determination about responding to FOIA requests; and (2) the requirement for each agency to appoint a Chief FOIA Officer.  The former aspect of FOIA is put at issue in counts 1 and 2 and is not the subject of this motion.  The latter Chief FOIA Officer provision is raised in counts 3–5 of the complaint and summarized briefly below.  Count 6 concerns the relationship between the Constitution's First Amendment and DEA administrative proceedings, which is also briefly outlined below.

### A.    Chief FOIA Officer Provision

In addition to the core obligation to "make available to the public information" covered by the statute, 5 U.S.C. § 552(a), FOIA requires agencies to designate a Chief FOIA Officer.  FOIA provides that this officer has various duties and powers regarding training, monitoring, educating, and making proposals with respect to agency FOIA operations.  *See id.* § 552(j)(2).  The Chief FOIA Officer for each agency must be a "senior official," which the statute defines parenthetically as a person "at the Assistant Secretary or equivalent level."  *Id.* § 552(j)(1).  Despite this seniority, the Chief FOIA Officer's various powers are all "subject to the authority of the head of the agency."  *Id.* § 552(j)(2).  Additionally, as to "agency practices, policies, personnel, and funding" concerning FOIA implementation, the Chief FOIA Officer may do no more than "recommend

2

to the head of the agency such adjustments" as the Officer believes "may be necessary." *Id.* §
552(j)(2)(C).

FOIA assigns the responsibility to designate a Chief FOIA Officer, as with other duties
and obligations, to each "agency." *Id.* § 552(j)(2). FOIA defines the term "agency" at section
552(f)(1) as follows: "'agency' as defined in section 551(1) of this title includes any executive
department, military department, Government corporation, Government controlled corporation,
or other establishment in the executive branch of the Government (including the Executive Office
of the President) or any independent regulatory agency." A preceding section of Title 5 defines
"Executive department" as referring to the fifteen Cabinet-level executive departments of the
United States, including the Department of Justice. *Id.* § 101. DEA was established by law as a
component of DOJ. *See* Reorganization Plan No. 2 of 1973 § 4, 87 Stat. 1091, as amended Pub.
L. No. 93-253, 88 Stat. 50 (1974) (establishing "*in* the Department of Justice an agency which shall
be known as the Drug Enforcement Administration" (emphasis added)). DOJ's FOIA regulations
confirm that DEA is a component of DOJ for purposes of FOIA. *See* 28 C.F.R. Pt. 16, App. I—
Components of the Department of Justice (listing DEA as among the "Department
components" and identifying its FOIA office).

## B.    First Amendment and DEA Administrative Proceedings

Plaintiff also pursues a First Amendment claim regarding a purported right to obtain
records and notice of DEA administrative proceedings. DEA administrative proceedings arise
under numerous legal provisions. Many of them center on registrations to possess and distribute
controlled substances. 21 C.F.R. §§ 1301.41–46, 1309.51–55. Others involve applications for
permits to import or export controlled substances. 21 C.F.R. §§ 1312.41–47, §§ 1313.51–57. Still
others involve hearings regarding DEA's authority to establish yearly production quotas for various

controlled substances.   21 C.F.R. §§ 1315.50–62.   Hearings may also arise "on the issuance, amendment, or repeal of rules" promulgated pursuant to section 811 of the Controlled Substances Act.   *See* 21 C.F.R. § 1308.41.

## II.   PLAINTIFF, HIS CLAIMS, AND HIS ALLEGED INJURIES

Plaintiff Matthew Zorn alleges six causes of action, which fall into roughly three buckets. The first two claims are rooted in an alleged DEA policy to "apply the [FOIA] 'unusual circumstances' exception any time a component FOIA office does not 'have access' to the records and must go 'outside' the office to gain access to the records."  4th Am. Compl. ¶ 129, Doc. No. 82; *see also id.* ¶¶ 126–42.  Those claims are not at issue in this motion.

The second bucket—the third, fourth, and fifth claims—are based on FOIA's Chief FOIA Officer provision.  *Id.* ¶¶ 143–59.  Count 3 seeks a declaratory judgment that Defendants are violating that provision by DEA's alleged failure to "designate[] a 'senior official' at the 'Assistant Secretary or equivalent' level as its Chief FOIA Officer."  *Id.* ¶¶ 147, 150.   Count 4 seeks a declaratory judgment that the Chief FOIA Officer within an agency must be appointed in a manner consistent with the Constitution's Appointments Clause and that DEA has allegedly failed to make such a constitutionally compliant appointment.  *Id.* ¶¶ 152, 155.  And Count 5 seeks an order under section 706(1) of the Administrative Procedure Act, alleging that the Defendants have "unlawfully withheld the designation of a statutorily compliant Chief FOIA Officer" for DEA.  *Id.* ¶ 158.  In sum, Plaintiff's three claims regarding the Chief FOIA Officer statute are rooted in an alleged statutory duty of DEA to appoint a Chief FOIA Officer and DEA's alleged failure to appoint one at the "Assistant Secretary or equivalent" level.

Third, Plaintiff's sixth claim alleges violations of the First Amendment based on a purported denial of the "right to timely access records from administrative proceedings and notice

4

of the existence of adjudicator proceedings." *Id.* ¶¶ 160–69. Plaintiff argues that "DEA administrative proceedings are similar to criminal proceedings" and thus are subject to a purported First Amendment right of access requiring "DEA to make adjudicatory records from DEA proceedings timely available or accessible to the public, for example, through an electronic docketing system or any other appropriate means." *Id.*

Plaintiff roots these claims and his requests for relief in a few different standing theories. In support of all his claims, Plaintiff alleges that he is an attorney and journalist who has submitted a number of FOIA requests to DEA, "some" of which have been resolved. *Id.* ¶¶ 9, 46 & n.12. Zorn states that he "intends to continue to use FOIA to seek government documents related to drug policy to facilitate his work as an attorney and journalist." *Id.* ¶ 9 & n.3.

Specifically as to his First Amendment claim, Zorn further alleges that he "has made multiple requests for filings in administrative proceedings and intends to request filings in administrative proceedings in the future." *Id.* ¶ 118. Plaintiff seeks disclosures of records from *all* DEA administrative proceedings pursuant to this claim, however, not only the ones subject to his past FOIA requests or any particular requests he plans to make. This is on the ground that "he cannot identify what proceedings exist" at DEA because of DEA's purported failure of disclosure, "mak[ing] it difficult if not impossible for [Plaintiff] to request records through FOIA." *Id.* Thus, Plaintiff contends that his injury can only be redressed by judicial relief establishing a DEA-wide disclosure regime regarding all its administrative proceedings, such as the creation of an electronic docketing system. *See id.* ¶ 169.

Plaintiff also makes additional allegations particular to his Chief FOIA Officer claim. Plaintiff argues that he "has filed multiple FOIA requests seeking records that would necessarily be in possession, custody, and control of the DEA's Chief FOIA Officer—if it had one." *Id.* ¶

119.  Essentially, Plaintiff asserts that he is injured because certain records do not exist at DEA and he speculates that if DEA had a Chief FOIA Officer, those records would exist and he would be entitled to obtain them under FOIA.

## ARGUMENT

Plaintiff's Chief FOIA Officer and First Amendment claims should be dismissed. Plaintiff fails to allege standing to obtain the expansive and abstract relief he seeks as to those claims.  And he fails to state any claim under either theory because he has not alleged any violation of law.

## I.   PLAINTIFF LACKS STANDING TO OBTAIN THE RELIEF HE SEEKS.

As the party invoking federal jurisdiction, Plaintiff bears the burden of establishing the three elements that constitute the "irreducible constitutional minimum of standing," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)—namely, that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing.  *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Additionally, because "standing is not dispensed in gross," "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."  *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (citation omitted).  Thus, although the Government does not challenge standing as to counts 1 and 2 at this time, Plaintiff must still separately allege a basis for standing to pursue his other claims and forms of relief.

**A.      Counts 3, 4, and 5 Should Be Dismissed Because Plaintiff Has No Standing to Litigate the Appointment of a Chief FOIA Officer.**

Counts 3, 4, and 5 allege that DEA does not have a statutorily or constitutionally compliant Chief FOIA Officer.  But Plaintiff has failed to allege any sufficient basis for standing to bring these claims and the Court therefore lacks jurisdiction to hear them.

Plaintiff complains that a failure to comply with the Chief FOIA Officer statute fails to meet Congress's intent to "inject[] a modicum of democratic accountability" into the FOIA process.  4th Am. Compl. ¶ 87.  But Plaintiff cannot base his claim upon a "generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan*, 504 U.S. at 573–74.  Plaintiff must do more than allege a purported violation of law the vindication of which he has no more stake in than any other member of the public who may wish to strengthen "democratic accountability" in governmental institutions.

Plaintiff nonetheless contends that he has established standing because he "intends to continue to use FOIA to seek government documents related to drug policy to facilitate his work as an attorney and journalist" and that Defendants' actions prevent him from obtaining such documents.  *See* 4th Am. Compl. ¶ 9.  Plaintiff appears to have a couple of different theories for how his status as a repeat FOIA requester, attorney, and journalist supports his standing as to the absence of a Chief FOIA Officer at DEA.  Neither suffices.

**1.      No standing based on challenges to FOIA policies and practices that a hypothetical Chief FOIA Officer might change**

Plaintiff contends that the absence of a Chief FOIA Officer injures him because the Officer's responsibilities "impact regular requestors of records." *Id.* ¶ 149.  In prior briefing in

this case, Plaintiff elaborated two ways that this purportedly occurs.

First, Plaintiff has argued that appointment of a Chief FOIA Officer would provide redress concerning his unusual circumstances claims, *i.e.* counts 1 and 2. Those claims allege that DEA always applies FOIA's unusual circumstances provision—which permits DEA to briefly extend the period in which it can respond to a request—whenever a request seeks records residing outside the FOIA office itself. Plaintiff theorizes that a sufficiently senior Chief FOIA Officer would have personal access to at least some records that are responsive to Plaintiff's requests and that, in those circumstances, DEA would not invoke unusual circumstances and would accordingly respond to his requests more quickly. *See* Pl.'s Opp'n to Defs.' MTD re 2d Am. Compl. at 5–7, Doc. No. 48.

This theory falls well short. To begin, Chief FOIA Officers are not responsible for responding to FOIA requests and, thus, any argument about what records the Chief FOIA Officer would have access to avails Plaintiff of nothing. *See* 5 U.S.C. § 552(j)(2) (establishing duties and powers regarding training, monitoring, and making proposals with respect to agency FOIA operations). In any event, this theory of standing relies on a chain of speculation that cannot suffice to support a finding that redressability is "likely" if judicial relief is provided. *See Lujan*, 504 U.S. at 561, 590 (Plaintiff must show it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" (citation omitted)); *cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410–11, 414 (2013) (rejecting standing premised on a "speculative chain of possibilities" and "speculation about the decisions of independent actors"). Plaintiff would have the Court presume that (1) a Chief FOIA Officer would be appointed from a DEA office having records responsive to one of Plaintiff's requests, (2) that such Officer would be personally involved in responding to such request or that DEA would adopt an organizational structure that

merged the FOIA Office with any preexisting office of the hypothetical Chief FOIA Officer, *and* (3) that the unusual circumstances provision of FOIA would not otherwise be appropriately invoked as to whatever hypothetical request of the Plaintiff passed hurdles 1 and 2.  To describe this rickety remedial structure is to topple it.  Plaintiff has alleged policy-or-practice claims regarding the unusual circumstances provision of FOIA that will be judged at summary judgment; Article III standing principles foreclose the speculative attempt to obtain a ruling on his Chief FOIA Officer claims by way of those policy-or-practice claims.

Second, Plaintiff has raised grievances about other DEA FOIA policies, such as DEA's manner of calculating FOIA review fees.  Pl.'s Opp'n to Defs.' MTD re 2d Am. Compl. at 8–9.  Plaintiff argues that the involvement of a sufficiently "knowledgeable, politically accountable" Chief FOIA Officer at DEA would improve these policies in some fashion.  *See id.*  But contentions about the content of other DEA FOIA policies also do not support standing to sue for the installation of a Chief FOIA Officer.  The Chief FOIA Officer statute imparts no independent authority to promulgate regulations or set FOIA policies, regarding fees or anything else.  At most, a Chief FOIA Officer may "recommend to the head of the agency such adjustments to agency practices [or] policies . . . as may be necessary to improve its implementation of this section."  5 U.S.C. § 552(j)(2)(C).  Plaintiff's standing theory, therefore, relies on speculation that (1) a Chief FOIA Officer for DEA would recommend a change to a relevant FOIA policy, (2) DOJ or DEA would then take further action to revise that policy, and (3) such revision (in whatever form) would redress some injury to Plaintiff in future FOIA requests.  That is another impermissible chain of speculation.

In sum, Plaintiff lacks any basis to plead standing to bring his Chief FOIA Officer claims based on grievances about DEA FOIA operations.

### 2.   *No standing based on FOIA requests for documents that a hypothetical Chief FOIA Officer might generate*

Plaintiff also identifies FOIA requests that he has submitted to DEA seeking various records "in the custody or control of" or "in possession of DEA's Chief FOIA Officer," as well as "[e]mails between DEA's Chief FOIA Officer and Administrator Milgram." 4th Am. Compl. ¶ 119. He alleges that "DEA has not produced any records in response to these requests" and that this is attributable to the absence of a Chief FOIA Officer. *Id.* ¶ 120. He further alleges that he is injured "because he has been denied records that *would* exist in the possession, custody, or control of a Chief FOIA Officer." *Id.* ¶ 149 (emphasis added).

This also cannot suffice to support counts 3–5. Plaintiff here seems to be asserting an informational injury, a kind of injury that the Supreme Court has recognized can be concrete and particular where the "plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Federal Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998); *see also Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449–50 (1989) (informational injury may exist where person has "requested, and been refused" information to which they are entitled by a statute, such as FOIA); *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) ("a sufficiently concrete and particularized informational injury" depends on a showing that, *inter alia*, the plaintiff "has been deprived of information that . . . a statute requires the government or a third party to disclose"). Informational injury may, therefore, be shown under FOIA "where an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (articulating the elements of a FOIA claim) (citation omitted).

But Plaintiffs' theory of injury here is *not* that DEA is withholding records that it must produce under FOIA. Instead, it is essentially that the Court should order DEA to appoint a

Chief FOIA Officer so that DEA might *create* records that could be responsive to Plaintiff's FOIA requests. 4th Am. Compl. ¶ 149 (claiming that his requested records "would exist" if DEA had a Chief FOIA Officer). That injury theory has no basis in FOIA, which "imposes no duty on an agency to create records." *Rutila v. U.S. Dep't of Transportation*, 72 F.4th 692, 697 (5th Cir. 2023) (quoting *Forsham v. Harris*, 445 U.S. 169, 186 (1980)). In sum, FOIA creates concrete informational injury where an agency has failed to produce records it was obligated to release under FOIA; it does not establish standing to demand an agency appoint a certain official so that that person may generate a document to release.

### B. Plaintiff Lacks Standing to Seek the Wide-ranging Relief He Pleads on his First Amendment Claim.

Plaintiff also lacks standing to pursue the wide-ranging relief he seeks on his First Amendment claim. Specifically, Plaintiffs "seeks [1] a declaration that DEA has violated the First Amendment and [2] an injunction ordering DEA to make adjudicatory records from DEA proceedings timely available or accessible to the public, for example, through an electronic docketing system or any other appropriate means, and all other appropriate relief." 4th Am. Compl. ¶ 169; *see also id.* at 42 ¶ 3. He also seeks an order requiring "DEA to make the existence of its adjudications public." *Id.* at 42 ¶ 4. There are two bases for standing to seek this relief pleaded.

#### 1. No standing based on speculative need for information about unspecified DEA proceedings

Plaintiff relies on his status as a FOIA requester, attorney, and journalist that wishes to obtain information about DEA administrative proceedings. Plaintiff asserts that "he cannot identify what proceedings exist" at DEA because of DEA's purported failure of disclosure, "mak[ing] it difficult if not impossible for [Plaintiff] to request records through FOIA" or to

11

otherwise obtain records of such proceedings. *Id.* ¶ 118. This theory fails to establish standing for at least two reasons.

First, the injury in fact element of standing requires that an injury be "certainly impending," which demands more than conjecture about injuries that could be "possible" or even subject to an "objectively reasonable likelihood." *Clapper*, 568 U.S. at 409–10. But conjecture about what is possible or even likely is what Plaintiff is offering here: his theory of injury is that there are surely DEA proceedings of relevance to his work as an attorney and journalist that he is not getting access to because of the asserted secrecy of those proceedings. *See* 4th Am. Compl. ¶ 118 (asserting harm because "he cannot identify what proceedings exist"). But Article III demands more than such conjecture about what proceedings may exist to which Plaintiff may be unable to gain access. This theory fails because it is not rooted in a lack of access to any particular DEA proceeding in which Plaintiff has a concrete interest or any showing that this outcome is certainly impending.

Second, Plaintiff's generic demand for information under this standing theory is not sufficiently concrete and particularized to constitute injury in fact in the absence of any specific allegations about the proceedings to which he needs access and the basis for such need. Although deprivation of information to which there is a legal entitlement may constitute an injury in fact, a plaintiff pleading such an injury must show at a minimum that *he* needs *particular* information to which he claims to be legally entitled. Thus, in *Federal Election Commission v. Akins*, the Supreme Court held that plaintiffs had adequately shown injury where they identified particular withheld information that was relevant to their status as voters and to their interest in "evaluat[ing] candidates for public office." 524 U.S. at 21. Similarly, in *Center for Biological Diversity, Inc. v. BP American Production Co.*, 704 F.3d 413 (5th Cir. 2013), the Fifth Circuit found "concrete"

informational injury where the plaintiff was exposed to environmental impacts of an oil spill and sought information that a statute required be provided about the "types of substances" released. *Id.* at 429–30.

But on this theory, Plaintiff does no more than point generically to *all* DEA administrative proceedings and contend that the First Amendment requires information about and records of these proceedings to be publicly available.  It is not enough, however, to simply allege that the Defendants are not complying with the law by failing to post information.  That kind of allegation is a classic generalized grievance not subject to federal court review, which claims "only harm to his and every citizen's interest in proper application of the Constitution and laws."  *Lujan*, 504 U.S. at 573–74.  That deficiency is all the more pronounced because DEA administrative proceedings and hearings arise in numerous contexts, many of which are not even mentioned in Plaintiff's complaint or his pending Motion for Preliminary Injunction.  *See* Background Pt. I.B; Pl.'s Mot. for PI & Trial on Merits, Doc No. 65.

### 2. No standing to obtain requested sweeping relief based on particular FOIA requests for records

Plaintiff also alleges that he "has made multiple requests for filings in administrative proceedings and intends to request filings in administrative proceedings in the future."  4th Am. Compl. ¶ 118.

To begin, insofar as this paragraph of the complaint references particular FOIA requests for DEA records, Defendants do not dispute that Plaintiff would have standing to pursue *FOIA* claims regarding these FOIA requests.  But Plaintiff does not plausibly show how standing to assert informational injury created by a statute—FOIA—gives him a broader standing to seek relief directly under the First Amendment.  *See Public Citizen*, 491 U.S. at 449–50 (holding that a statutory right to obtain information may create informational injury).

In all events, Plaintiff does not seek relief regarding the information he seeks in particular FOIA requests. Plaintiff instead sweepingly seeks disclosure of and release of records concerning all DEA administrative proceedings, as well as creation of some kind of docketing system regarding the same. 4th Am. Compl. ¶ 169. Even if the Court accepted Plaintiff's FOIA requests as a basis for standing for his First Amendment claims, it would not support this expansive request. Article III demands that "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) (citation omitted). Put another way, a "remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). This is in keeping with the broader rule that "standing is not dispensed in gross" and that "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Laroe Estates, Inc.*, 581 U.S. at 439. And as discussed in the preceding section, Plaintiff's broader standing theory regarding his need for information about all DEA proceedings fails to conform to Article III principles.

In short, Plaintiff's standing to sue regarding particular FOIA requests does not conjure standing to bring a far more expansive First Amendment claim regarding all DEA proceedings for which he has not shown any concrete or certainly impending informational injury.

## II.   PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The Court should also dismiss counts 3–6 pursuant to Rule 12(b)(6), for failure to state a claim. To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This requires that the complaint contain factual allegations that, taken as true, "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It is not enough that the

allegations are "consistent with" or show a "sheer possibility" of liability. *Iqbal*, 556 U.S. at 678. And courts need not accept as true those allegations that are mere legal conclusions or that are stated in conclusory fashion. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Although review on a motion to dismiss is generally limited to the allegations in the complaint, a court may also consider "documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *Calogero v. Shows, Cali & Walsh, LLP*, 970 F.3d 576, 579 n.1 (5th Cir. 2020). Judicial notice may be taken of, among other matters, "public government records that are not subject to reasonable dispute," *see Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959, 965 n.4 (S.D. Tex. 2016), such as the government publications referenced below at Argument Part II.A.2.

### A. Counts 3, 4, and 5 Fail to State a Claim Because FOIA Does Not Require DEA to Appoint a Chief FOIA Officer.

Counts 3, 4, and 5 are all rooted in the contention that DEA is required by FOIA to have a Chief FOIA Officer, pursuant to 5 U.S.C. § 552(j)(1). *See* 4th Am. Compl. ¶ 147 (count 3); *id.* ¶¶ 152–53 (count 4); *id.* ¶ 158 (count 5). But this essential component of each claim is rooted in a misapprehension of the law. Contrary to Plaintiff's understanding, only "agencies" have an obligation under FOIA to designate a Chief FOIA Officer. And as to executive departments, like DOJ, only the department itself is an agency with the responsibility to appoint such an officer. The components of executive departments, like DEA, are not considered separate agencies for the purposes of the Chief FOIA Officer provision—both based on the text and structure of FOIA and in light of repeated Congressional ratification of this uniform Executive Branch interpretation.

1.    *FOIA's requirement for agencies to appoint Chief FOIA Officers refers to executive departments like DOJ, not components like DEA.*

Section 552(j)(1) requires that each "agency" designate a Chief FOIA Officer.  5 U.S.C. § 552(j)(1).  FOIA defines the term "agency" at section 552(f)(1) as follows: "'agency' as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President) or any independent regulatory agency."  *Id.* § 552(f)(1).  FOIA accordingly defines the term agency by reference to certain kinds of entities, among them an "executive department."  A preceding section of Title 5 defines "Executive department" as referring to the fifteen Cabinet-level executive departments of the United States, including DOJ.  *See id.* § 101.

FOIA's definition of "agency" treats DEA as a component of the executive department in which it sits, DOJ, *not* as a separate agency.  DEA fits within none of the other entities specified in FOIA's definition of agency.  *See id.* § 552(f)(1).  DEA is not a military department.  Nor is it a Government corporation or Government controlled corporation: DEA is not a corporation.  *See id.* § 103 (1), (2) (both terms defined by reference to corporate status).  Nor is DEA an "independent regulatory agency"—it is a component of the Department of Justice. Reorganization Plan No. 2 of 1973 § 4; 28 C.F.R. Pt. 16, App. I—Components of the Department of Justice.  And as for the reference to "other establishment[s] in the executive branch of the Government," this catch-all provision does not encompass entities of the Executive branch that are already captured by one of the prior, more specific entities.  *Cf. United States v. Jicarilla Apache Nation*, 564 U.S. 162, 185 (2011) ("When Congress provides specific statutory obligations, we will not read a 'catchall' provision to impose general obligations that would include those specifically

16

enumerated." (citation omitted)).  This is shown in part by the statute's specific statement that the catch-all "other establishment" refers to the "Executive Office of the President," a component of the Executive branch that is not encompassed by any executive department or other entity identified in the statute.

Another aspect of FOIA—its requirement that agencies prepare and submit to the Attorney General and the Director of Government Information Services an annual report regarding various aspects of their FOIA operations, 5 U.S.C. § 552(e)(1)—further shows that FOIA does not define a departmental component like DEA as a separate agency.  FOIA specifically contemplates that such annual submissions by agencies will not be undertaken separately by departmental components of those agencies.  Section 552(e)(1) requires "each agency" to "submit . . . a report which shall cover the preceding fiscal year and which shall include" various data regarding the volume of requests the agency has received, how it has resolved them, and the amount of time taken in responding.  *Id.* § 552(e)(1).  The statute goes on to specify that this annual report should be "expressed in terms of each principal component of the agency and for the agency overall."  *Id.* § 552(e)(2).  Thus, section 552(e)(2) specifically contemplates that each "agency" will submit *one* report that encompasses its "principal components."

The statute thereby acknowledges that "principal components" of agencies are encompassed within an "agency" for purpose of the FOIA annual reporting requirement and are not separate agencies themselves.  After all, if such components were separate agencies, Congress would not need to specify that data about these components should be highlighted in each agency's annual FOIA reports; those components would be submitting their *own separate* reports.  An interpretation of FOIA that would deem departmental components like DEA as "agencies" renders this aspect of the annual report requirement superfluous.  It is a settled canon of statutory

17

interpretation that "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous." *Clark v. Rameker*, 573 U.S. 122, 131 (2014) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).

In prior briefing in this case, Plaintiff has argued that DEA is encompassed by a second definition of "agency," found at section 551(1), which provides that an "agency" is "each authority of the Government of the United States, whether or not it is within or subject to review by another agency." 5 U.S.C. § 551(1). Plaintiff argues that DEA is an "authority of the Government of the United States" and that section 551(1) encompasses a component like it that is "subject to review by another agency." Pl.'s Mot. for Partial Summ. J. at 9–10, Doc. No. 28.

But Plaintiff is mistaken that this definition controls under FOIA. To be sure, FOIA's definition of agency at section 552(f)(1) makes reference to section 551(1), but it does so specifically to clarify that "agency" has a distinct, more specific definition under FOIA than it does under section 551(1). *See* 5 U.S.C. § 552(f)(1) ("'agency' as defined in section 551(1) of this title includes" various specified types of entities). It is a "commonplace of statutory construction that the specific governs the general." *See Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384 (1992). And here, FOIA has provided a specific definition of agency applicable to that statute, while section 551(1) provides a definition of the term applicable to a broader set of subject matter, most significantly the Administrative Procedure Act. *See* 5 U.S.C. §§ 553–59. Moreover, that the definitions of agency in these two statutes are distinct is also shown by section 551(1) itself, which provides that certain entities are agencies for purposes of FOIA but *not* agencies for any other purposes of section 551(1). *See id.* § 551(1). Put another way, section 551(1), just like FOIA itself, recognizes that FOIA provides a different and more specific definition of agency.

18

Nor should the Court read into FOIA the provision of section 551(1) defining an agency to include an entity "whether or not it is within or subject to review by another agency." This language from section 551(1) is *not* included in FOIA's definition of "agency." "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another." *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1058 (2019) (quoting *Dep't of Homeland Security v. MacLean*, 574 U.S. 383, 391 (2015)). Therefore, "when Congress includes particular language in one section of a statute but omits it in another," courts "presume[] that Congress intended a difference in meaning.'" *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (citation omitted); *Bates v. United State*s, 522 U.S. 23, 29–30 (1997) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))). Incorporating this language from section 551(1) into FOIA itself ignores Congress's decision to omit this language from FOIA's specific definition of agency.

In sum, section 552(j)(1) establishes that only "agencies" need appoint a Chief FOIA Officer and section 552(f)(1) defines "agency" in a manner that does not identify departmental components like DEA. To be clear, the Government does not mean to suggest that components of executive departments are somehow exempt from FOIA. Far from it. Each executive department's responsibility to make non-exempt records subject to FOIA promptly available to the public encompasses all the records under its authority, including those records belonging to the department's constituent components. Consistent with that principle, it is *DOJ* that has promulgated one set of FOIA regulations that govern FOIA operations on a department-wide basis. *See* 28 C.F.R. Pt. 16; *id.* § 16.1 ("This subpart contains the rules that the Department of

Justice follows in processing requests for records under the [FOIA].").  And it is by virtue of *DOJ's* FOIA regulations that DEA and other DOJ components separately receive and respond to FOIA requests.  *See id.* § 16.3(a)(1) (establishing a "decentralized system for responding to FOIA requests" that delegates this responsibility to components of the Department).  But as to the "agency" responsibility of issuing an annual FOIA report and appointing a Chief FOIA Officer, it is DOJ alone that bears the task of acting on behalf of the Department as a whole, including on behalf of components like DEA.

> **2.  In any event, Congress has ratified the executive branch interpretation that the Chief FOIA Officer provision does not apply to components of executive departments.**

In any event, the Court should reject Plaintiff's position that DEA and other departmental components are obligated to appoint separate Chief FOIA Officers because Congress has ratified a uniform Executive Branch practice of appointing Chief FOIA Officers only at the departmental level, not within sub-departmental components.

The Chief FOIA Officer provision has its origin in Executive Order 13,392, issued by President Bush in 2005.  Executive Order 13,392, 70 Fed. Reg. 75373 (Dec. 14, 2005), https://www.govinfo.gov/content/pkg/FR-2005-12-19/pdf/05-24255.pdf.  Section 2(a) of Executive Order 13,392 required, in terms substantially similar to the current statute, that the "head of each agency" designate "a senior official of such agency (at the Assistant Secretary or equivalent level) to serve as the Chief FOIA Officer of that agency."  *Id.*  Pursuant to that Executive Order, in 2006 DOJ compiled and publicly "posted a comprehensive list of all agency Chief FOIA Officers" from across the Government.  *See* Statement of Daniel J. Metcalfe, Dir., Office of Info. & Privacy, Dep't of Justice at 3, *Implementing FOIA – Does the Bush Administration Executive Order Improve Processing?: Hearing Before the Subcomm. on Gov't Mgmt., Finance, & Accountability,*

*of the H. Comm. on Gov't Reform* (July 26, 2006), https://www.justice.gov/archive/oip/metcalfe_foia_testimony07252006.pdf ("Metcalfe Statement").

This list showed that, for the 15 executive departments, including DOJ, no separate Chief FOIA Officer was appointed for any constituent component of those departments.  U.S. Dep't of Justice, *Chief FOIA Officers Designated Under E.O. 13,392* (as accessible on June 15, 2006), https://web.archive.org/web/20060615024129/http://www.usdoj.gov:80/04foia/chieffoiaofficers.html.[1]  Thus, no separate Chief FOIA Officer was appointed for DOJ's DEA, Bureau of Alcohol, Tobacco, and Firearms, or Federal Bureau of Investigation; nor for the Department of Health & Human Services' Food and Drug Administration or Centers for Medicare & Medicaid Services; nor for the Department of Homeland Security's Customs and Border Protection or Immigration and Customs Enforcement; and so on and so forth, across the numerous and often large and significant institutions functioning within each executive department.  The Department of Justice's Chief FOIA Officer was then, as it is now, the Associate Attorney General.  *See id.*

In 2007, Congress enacted the Chief FOIA Officer requirement into law, amending FOIA through the Openness Promotes Effectiveness in our National (OPEN) Government Act of 2007.  Specifically, the OPEN Government Act amended FOIA to add a section (j), providing that "[e]ach agency shall designate a Chief FOIA Officer who shall be a senior official of such

---

[1] Then-Director Metcalfe's testimony before the House Subcommittee cited above includes a hyperlink to this 2006 list of Chief FOIA Officers.  *See* Metcalfe Statement at 3 & n.3.  That link no longer works.  However, an Internet archival service—the Wayback Machine—shows what this webpage had published contemporaneous with Director Metcalfe's testimony.  The link provided in the text above is to this Wayback Machine archival copy.  The "contents of webpages available through the Wayback Machine" constitute "facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *New York v. Meta Platforms, Inc.*, 66 F.4th 288, 303 (D.C. Cir. Apr. 27, 2023) (quoting *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1374 (Fed. Cir. 2021)).

agency (at the Assistant Secretary or equivalent level)." *See* Pub. L. No. 110-175 § 10(a), 121 Stat. 2529 (Dec. 31, 2007), https://www.govinfo.gov/content/pkg/PLAW-110publ175/pdf/PLAW-110publ175.pdf. The Executive Branch thereafter continued interpreting the Chief FOIA Officer appointment requirement in the same manner as it had under Executive Order 13,392, specifically by continuing to construe the term "agency" to refer, *inter alia*, to the 15 executive departments, not their constituent components. This is shown by, for example, numerous reports by DOJ summarizing the Chief FOIA Officer reports submitted by all agencies. These summary reports show that in all cases, executive departments have designated a Chief FOIA Officer, *not* the components of such departments. *See, e.g.*, *Summary of Agency Chief FOIA Officer Reports for 2012* at 18–25, Dep't of Justice Office of Info. Policy, https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/sum-2012-chief-foia-officer-rpt.pdf; *Summary of Agency Chief FOIA Officer Reports for 2014* at 19–23, Dep't of Justice Office of Info. Policy, https://www.justice.gov/sites/default/files/pages/attachments/2014/09/12/2014_cfo_summary_and_assessment_0.pdf.

In 2016, Congress amended FOIA once again, through the FOIA Improvements Act of 2016. This statute amended, among other things, the Chief FOIA Officer provision, adding additional duties for such officers and creating a new Chief FOIA Officer Council to serve as a forum for collaboration within the Government to improve FOIA administration. *See* Pub. L. No. 114-185 § 2(6), 130 Stat. 542 (June 30, 2016), https://www.congress.gov/114/plaws/publ185/PLAW-114publ185.pdf. These amendments to the Chief FOIA Officer provision did not, however, modify the definition of "agency" or the obligation of "[e]ach agency" to "designate a Chief FOIA Officer." *Id.* Across the Executive Branch, the Government has since continued to interpret the Chief FOIA Officer provision to not require the separate designation of Chief

FOIA Officers for components of executive departments. *See, e.g., Summary of Agency Chief FOIA Officer Reports for 2018* at 33–34, 37–39, Dep't of Justice Office of Info. Policy, https://www.justice.gov/OIP/Reports/2018Summary%26Assessment/download#2018. DOJ's current Chief FOIA Officer is Associate Attorney General Vanita Gupta. *See U.S. Dep't of Justice 2023 Chief FOIA Officer Report* at 5, https://www.justice.gov/oip/page/file/1573561/download. Plaintiff has conceded that, consistent with FOIA, she is an official "at the Assistant Secretary level or equivalent level." 4th Am. Compl. ¶ 11 (quoting 5 U.S.C. § 552(j)(1)).

It is a long-established canon of statutory interpretation that "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978); *see also, e.g., Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 244 n.11 (2009). This principle applies even to new laws, not simply re-enactments. Thus, where "Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *Lorillard*, 434 U.S. at 580. The same principle applies to new Congressional enactments that incorporate administrative agency understanding of a particular term. *See Duarte v. Mayorkas*, 27 F.4th 1044, 1059 (5th Cir. 2022) (presuming Congressional awareness of the administrative agency definition of a term and thus its incorporation in a subsequently enacted statute).

The application of these principles to the foregoing history demonstrates that Congress has twice ratified the Executive Branch's understanding that the Chief FOIA Officer provision does not require the appointment of such officers by the components of executive departments. The requirement that each "agency" appoint a senior official as a Chief FOIA Officer was largely lifted without change from an Executive Order, which had been interpreted not to require the

components of executive departments to appoint such officers. That interpretation was conveyed to Congress in testimony and posted publicly on the Internet. *See supra*. Thus, the Court may presume that Congress was aware of this administrative interpretation of the term "agency" in the context of the Chief FOIA Officer provision in light of Congress's incorporation of that Executive Order in its subsequent amendment of FOIA in the OPEN Government Act of 2007. *See Lorillard*, 434 U.S. at 580; *Duarte*, 27 F.4th at 1059.

That ratification was doubled just under ten years later, when Congress acted again to amend FOIA. Although Congress amended the Chief FOIA Officer provision—adding duties to the position and creating a council of such officers to foster interagency collaboration— Congress did not touch the requirement that agencies appoint a Chief FOIA Officer or amend the definition of "agency" under FOIA. Once again, Congress was presumptively aware of the Executive Branch-wide interpretation of the appointment requirement and ratified that interpretation by re-enacting this portion of FOIA without changing its appointment requirement. In short, components of executive departments have never appointed separate Chief FOIA Officers and Congress has blessed that arrangement by twice ratifying in law this Executive Branch interpretation.

### B. Count 6 Fails to State a Claim Because the First Amendment's Logic and Experience Test Does Not Apply to DEA Proceedings and Records and Has Not Been Met Regardless.

Plaintiff's count 6 alleges a broad First Amendment "right to timely access records from administrative proceedings and notice of the existence of adjudicatory proceedings." 4th Am. Compl. at 40. That claim has no basis in the Constitution and should accordingly be dismissed.

      **1.**     **The experience and logic test does not apply to administrative agency proceedings or records.**

To begin, "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) (plurality op.); *United States v. Brown*, 250 F.3d 907, 915 (5th Cir. 2001). The Supreme Court has therefore "repeatedly made clear that there is no constitutional right to obtain all the information provided by [the] FOIA laws." *McBurney v. Young*, 569 U.S. 221, 232 (2013). "The determination of who should have access to particular government held information and what constitutes a legitimate use of such information" belongs to the political branches of government. *Calder v. I.R.S.*, 890 F.2d 781, 784 (5th Cir. 1989) (quoting *Houchins*, 438 U.S. at 12)

Plaintiff bases his First Amendment claim on a line of Supreme Court precedent that, as interpreted by the Fifth Circuit, only "establish[es] and define[s] the scope of the first amendment right of access to *criminal trials* and certain *criminal proceedings*." *See Calder*, 890 F.2d at 783 (emphasis added). This "experience and logic" test governing the "right of access to criminal proceedings" asks (1) "whether the place and process have historically been open to the press and general public" and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. Co. v. Superior Ct. of Cali. for Riverside Cty.*, 478 U.S. 1, 8–9 (1986).

The Fifth Circuit has rejected extension of the experience and logic test to administrative agency records. In doing so, the Court of Appeals reasoned that "the right to speak and publish does not carry with it an unrestricted license to gather information" and that the "determination of who should have access to particular government held information and what constitutes a legitimate use of such information is 'clearly a legislative task which the Constitution has left to

the political processes.'" *Calder*, 890 F.2d at 784 (quoting *Houchins*, 438 U.S. at 12)); *see also Ctr. for Nat'l Sec. Stud. v. U.S. Dep't of Just.*, 331 F.3d 918, 934 (D.C. Cir. 2003).  The *Calder* court therefore rejected any basis for a First Amendment right to the IRS investigatory records sought in that case.  *See Calder*, 890 F.2d at 784.

Plaintiff's invocation of the experience and logic test to seek records of DEA proceedings is, therefore, inconsistent with Fifth Circuit law.  The default rule applies, which provides that the First Amendment *does not* provide a general right of access to executive branch information.

Moreover, even if the experience and logic test conceivably could apply here, Plaintiff has failed to show that the First Amendment compels the expansive injunctive relief he seeks. Plaintiff asks the Court to superintend the creation of an external docketing system and to compel DEA to proactively disclose, without regard to the content of such documents, all records of DEA administrative proceedings.  Plaintiff cites nothing supporting such sweeping relief even for criminal judicial proceedings.   And the relief he seeks makes little sense where the kinds of proactive disclosures he demands are not even required by FOIA, a statute that imposes disclosure obligations on the Government far beyond that which are required by the Constitution.  *See* 5 U.S.C. § 552(a)(1), (2) (establishing proactive disclosure obligation as to certain categories of records); *see also McBurney*, 569 U.S. at 232 (Supreme Court has "repeatedly made clear that there is no constitutional right to obtain all the information provided by [the] FOIA laws").  Whatever the applicability of the experience and logic test to administrative proceedings, it does not expansively require a judicially supervised proactive disclosure regime.

> **2.    Even if the experience and logic test applied, Plaintiff has failed to plausibly allege he meets it.**

Even if the experience and logic test did apply to administrative agency records, Plaintiff's complaint does not plausibly allege that the test is met here.  Again, the "experience and logic"

test asks (1) "whether the place and process have historically been open to the press and general public" and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. Co.*, 478 U.S. at 8–9.

First, Plaintiff has not shown that there is any tradition of openness in all DEA administrative proceedings, and the records thereof. The Supreme Court found the "experience" prong met with respect to criminal judicial proceedings based on a tradition of openness in such proceedings extending back centuries. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980). The courts of appeals that have applied the experience and logic test to administrative proceedings have, therefore, looked for historical openness in considering the application of this test. In *Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002), the Sixth Circuit recognized the need for a "historical tradition of at least some duration" and found this prong met where the category of administrative proceeding at issue had "historically . . . been open" for decades. *See id.* at 701. In contrast, the Third Circuit found a First Amendment right did not attach to certain administrative proceedings where plaintiff did not show "the type of 'unbroken, uncontradicted history' that *Richmond Newspapers* and its progeny require to establish a First Amendment right of access." *N. Jersey Media Grp., Inc. v. Ashcroft*, 308 F.3d 198, 201 (3d Cir. 2002). And the Fifth Circuit in *Calder*, in an alternative holding, similarly evaluated the absence of a consistent "history of access" to certain administrative records as a basis to reject satisfaction of the experience and logic test, "[e]ven assuming that" the test applied. *See Calder*, 890 F.2d at 784.

Plaintiff here presents nothing in the complaint to show the requisite tradition of openness in DEA administrative proceedings, let alone that such a tradition of openness exists in all kinds of DEA proceedings and with respect to all records of them. To the contrary, the very premise of Plaintiff's claim is that DEA is *not* sufficiently open and never has been. *See* 4th Am.

27

Compl. ¶ 166.  Plaintiff's own argument defeats his attempt to pass the "experience" portion of the test.

Second, Plaintiff has failed to plausibly allege that unfettered access to all records of DEA proceedings would satisfy the logic prong of the test, which asks "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. Co.*, 478 U.S. at 8–9.  Plaintiff's request for relief would ignore Congress's express decision to exempt specific categories of information from public disclosure under FOIA, including as potentially relevant here, information bearing on substantial privacy interests and various categories of information compiled for law enforcement purposes.  *See* 5 U.S.C. § 552(b)(6), (7).  And the complaint fails to account for the variety of DEA administrative proceedings and fails to address whether unfettered access to all information about each would satisfy the test.  Plaintiff fails to state a First Amendment claim concerning every type of DEA administrative proceeding.

## CONCLUSION

For the foregoing reasons, the Court should dismiss counts 3–6 of the Fourth Amended Complaint.

 DATED: October 27, 2023                    Respectfully Submitted,


                                            ALAMDAR HAMDANI
                                            United States Attorney

                                            *s/ Jimmy A. Rodriguez*
                                            Jimmy A. Rodriguez
                                            Assistant United States Attorney
                                            Southern District of Texas
                                            Attorney in Charge
                                            Texas Bar No. 24037378
                                            Federal ID No. 572175
                                            1000 Louisiana, Suite 2300
                                            Houston, Texas 77002
                                            Tel: (713) 567-9532

Fax: (713) 718-3303
jimmy.rodriguez2@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*s/ James R. Powers*
James R. Powers
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
Texas Bar No. 24092989
1100 L Street, NW
Washington, DC 20005
Tel: (202) 353-0543
James.r.powers@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

## CERTIFICATE OF SERVICE

I certify that on October 27, 2023, a true and correct copy of the foregoing was filed

with the United States District Clerk for the Southern District of Texas and electronically served

on all counsel of record via the District's ECF system.

*s/ James R. Powers*
James R. Powers
Trial Attorney