# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| MATTHEW C. ZORN, | |
| *Plaintiff,* | |
| v. | Civil Action No. 4-22-02396 |
| U.S. DEPARTMENT OF JUSTICE, *et al.,* | |
| *Defendants.* | |

## DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS IN PART AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................1

I.      PLAINTIFF LACKS STANDING TO PURSUE THE FAR-REACHING
RELIEF HE SEEKS ON HIS CHIEF FOIA OFFICER AND FIRST
AMENDMENT CLAIMS. .............................................................................1

      A.      Chief FOIA Officer Claims (Counts 3, 4, and 5) .....................................1

            1.      Plaintiff's new standing theories fail. ................................................2

                  a.      Procedural rights. ................................................................3

                  b.      Structural claims. ................................................................5

            2.      Plaintiff fails to bolster the prior standing theories. .......................5

                  a.      No standing based on FOIA policies and practices that a
hypothetical Chief FOIA Officer might change. ...............................6

                  b.      No standing based on documents that a hypothetical Chief
FOIA Officer might generate. .............................................9

      B.      First Amendment Claim (Count 6) ......................................................10

II.     PLAINTIFF FAILS TO STATE A CLAIM. ....................................................13

      A.      Counts 3–5 Should Be Dismissed Because DEA Need Not Appoint a
Separate Chief FOIA Officer. ..........................................................13

            1.      Text, context, and legislative history ................................................15

             2.      Congressional ratification of executive branch practice .........................17

      B.      Count 6 Should Be Dismissed Because It Has No Basis in the First
Amendment. ....................................................................................19

CONCLUSION .................................................................................................22

i

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

*Alliance for Hippocratic Medicine v. FDA,*
    78 F.4th 210 (5th Cir. 2023) ..................................................................................6

*Axon Enterprise, Inc. v. FTC,*
    598 U.S. 175 (2023) ...............................................................................................5

*Bostock v. Clayton Cty., Ga.,*
    140 S. Ct. 1731 (2020) .........................................................................................16

*Calder v. IRS,*
    890 F.2d 781 (5th Cir. 1989) ...............................................................................20

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ...............................................................................................6

*Court Addressing Bulk Collection of Data under the Foreign Intel. Surveillance Act,*
    2017 WL 5983865 (FISA Nov. 9, 2017) .............................................................11

*Court Interpreting Sec. 215 of the Patriot Act,*
    2013 WL 5460064 (FISA 2013) ..........................................................................11

*Danco Labs., LLC v. Alliance for Hippocratic,*
    Med., 143 S. Ct. 1075 (2023) ................................................................................6

*Detroit Free Press v. Ashcroft,*
    303 F.3d 681 (6th Cir. 2002) ...............................................................................21

*Digital Realty Trust, Inc. v. Somesr,*
    583 U.S. 149 (2018) .............................................................................................17

*Duarte v. Mayorkas,*
    27 F.4th 1044 (5th Cir. 2022) ..............................................................................18

*El Vocero de Puerto Rico (Caribbean Int'l News Corp.) v. Puerto Rico,*
    508 U.S. 147 (1993) .............................................................................................20

*Federal Election Commission v. Akins,*
    524 U.S. 11 (1998) .................................................................................................9

*Flynt v. Rumsfeld,*
    355 F.3d 697 (D.C. Cir. 2004) .............................................................................10

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
    561 U.S. 477 (2010) ...............................................................................................5

*Hall v. Hall*,
    138 S. Ct. 1118 (2018) ................................................................................................18

*Houchins v. KQED, Inc.*,
    438 U.S. 1 (1978) .......................................................................................................19

*In re Opinions & Orders of this Court Addressing Bulk Collection of Data under the Foreign Intel. Surveillance Act*,
    2017 WL 5983865, at *2 (FISA Nov. 9, 2017) .........................................................11

*In re Orders of this Court Interpreting Sec. 215 of the Patriot Act*,
    2013 WL 5460064, at *4 (FISA 2013) .....................................................................11

*Jersey Media Grp., Inc. v. Ashcroft*,
    308 F.3d 198 (3d Cir. 2002) ...............................................................................21, 22

*Lorillard v. Pons*,
    434 U.S. 575 (1978) ..................................................................................................18

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................3, 4

*Meyer v. Bush*,
    981 F.2d 1288 (D.C. Cir. 1993) ...............................................................................16

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ..................................................................................................15

*N.Y. Civil Liberties Union v. N.Y.C. Transit Authority*,
    684 F.3d 286 (2d. Cir. 2012) .........................................................................11, 20, 21

*Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville*,
    508 U.S. 656 (1993) ....................................................................................................4

*Republic of Sudan v. Harrison*,
    139 S. Ct. 1048 (2019) ..............................................................................................15

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) ..................................................................................................20

*Sackett v. EPA*,
    598 U.S. 651 (2023) ..................................................................................................19

*Seila Law LLC v. CFPB*,
    140 S. Ct. 2183 (2020) ................................................................................................5

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ....................................................................................................13

*Stenberg v. Carhart,*
    530 U.S. 914 (2000)..............................................................................................17

*Sullo & Bobbit, P.L.L.C. v. Milner,*
    765 F.3d 388 (5th Cir. 2014)...............................................................................20

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009)................................................................................................3

*Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.,*
    778 F.3d 502 (5th Cir. 2015).................................................................................7

*Taggart v. Lorenzen,*
    139 S. Ct. 1795 (2019).........................................................................................18

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021).........................................................................................12

*United States v. Brown,*
    250 F.3d 907 (5th Cir. 2001)...............................................................................19

*United States v. Texas,*
    599 U.S. 670 (2023)................................................................................................4

*Xerox Corp. v. Genmoora Corp.,*
    888 F.2d 345 (5th Cir. 1989).................................................................................7

## Statutes

5 U.S.C. § 551(1).......................................................................................................15

5 U.S.C. § 552(f)(1).............................................................................................14, 16

5 U.S.C. § 552(j)..............................................................................................3, 9, 10

5 U.S.C. § 552(j)(1)....................................................................................................9

## Other Authorities

*H.R. Rep. 93-1380 at 232 (Sept. 25, 1974),*
    https://nsarchive2.gwu.edu/nsa/foialeghistory/H.%20R.%20Rep.%2093-
    1380%20(Sept.%2025,%201974)%20Conf.%20Report.pdf.......................................17

*S. Rep. No. 93-854 at 185 (May 16, 1974),*
    https://nsarchive2.gwu.edu/nsa/foialeghistory/S.%20Rep.%20No.%2093-
    854%20(May%2016,%201974).pdf............................................................................17

*U.S. Department of Justice, 2023 Chief FOIA Officer Report at 5,*
    https://www.justice.gov/oip/page/file/1573561/download.......................................................14

*U.S. Department of Justice, Organizational Chart,*
    https://www.justice.gov/agencies/chart/map.................................................................................9

## INTRODUCTION

Plaintiff's brief in opposition to Defendants' Motion to Dismiss in Part the Fourth Amended Complaint cobbles together a litany of grievances about Freedom of Information Act ("FOIA") operations at the Department of Justice ("DOJ") and the Drug Enforcement Administration ("DEA").  *See generally* Pl.'s Response to Mot. to Dismiss and Cross-Mot. for Summ. J. on Whether DEA is an Agency, Doc. No. 86 ("Opp'n").  But largely missing from that brief or counts 3 through 6 of the complaint are the essential features of any federal lawsuit: demonstration of an Article III case or controversy and allegation of a plausible right to relief. Indeed, although he repeatedly assails the Government's arguments as "absurd," he fails to point to any case that has upheld claims remotely similar to the ones he presses here.  Plaintiff identifies no court that has ever ordered the appointment of a Chief FOIA Officer and none that has ever ordered the creation of an expansive new document disclosure and records management regime based on the First Amendment.  Such sea changes in the law are not supported in this lawsuit and counts 3 through 6 should therefore be dismissed.  Additionally, for the same reasons that Plaintiff fails to state a claim that DEA must appoint a separate Chief FOIA Officer, his cross-motion for summary judgment on that issue should be denied.

## ARGUMENT

I.   **PLAINTIFF LACKS STANDING TO PURSUE THE FAR-REACHING RELIEF HE SEEKS ON HIS CHIEF FOIA OFFICER AND FIRST AMENDMENT CLAIMS.**

A.   **Chief FOIA Officer Claims (Counts 3, 4, and 5)**

Plaintiff lacks standing to bring counts 3–5 of the complaint, regarding the alleged lack of a properly appointed Chief FOIA Officer at DEA, as he has failed to allege any cognizable injury that is traceable to any deficiencies in Defendants' compliance with the Chief FOIA Officer

1

statute. Defs.' Mot. to Dismiss in Part at 7–11, Doc. No. 83 ("MTD"). Nor has he alleged that

the relief requested as to these claims would likely redress any asserted injuries he has suffered.

*Id.* More specifically, Plaintiff's complaint and his prior briefing in this case have appeared to rely

on two principal theories for standing, neither of which suffices. First, Plaintiff points to policies

or practices of the agency that might change if a Chief FOIA Officer were in place. MTD at 7–

9. That stacks speculation upon speculation, however, requiring the Court to presume that a Chief

FOIA Officer appointed by DEA in response to an order of the Court would use their discretion

to recommend policy changes, that these changes would be adopted by DOJ or DEA, and that

such changes would ultimately bear on Plaintiff's concrete interests. *Id.* Such attenuated chains

of speculation cannot support standing. *Id.* Second, Plaintiff alleges that he is injured because

DEA would generate and then produce certain records under FOIA if a Chief FOIA Officer were

in place. That, too, fails because FOIA creates no duty to generate records and, therefore, supplies

no basis for informational injury as to a purported failure to produce non-existent documents.

MTD at 10–11. Plaintiff's brief in opposition attempts to rebut these arguments, but his efforts

are unsuccessful.

### 1. *Plaintiff's new standing theories fail.*

Plaintiff responds, in part, by proposing yet more standing theories. But Plaintiff stretches

mightily to apply a series of irrelevant standing theories to this case and misapplies them in any

event. None of them saves the Chief FOIA Officer claims from dismissal.

**a.    Procedural rights.**    Plaintiff contends that he has certain "procedural" rights

that create standing, such that he should be subject to more relaxed standing requirements. Opp'n

at 10–12. But the Chief FOIA Officer provision creates no procedural rights for any member of

the public; by its express terms, it simply establishes an officer within each agency that has various

2

duties and powers.  *See* 5 U.S.C. § 552(j).  None of those duties and powers references particular procedures that could even theoretically vest in any particular member of the public, *e.g.*, a right to a hearing or a right to comment.  *See id.*  Nor does the Chief FOIA Officer provision create any cause of action or other indication that Congress intended to vest individual members of the public with the power to enforce the Chief FOIA Officer provision.  These points alone are sufficient to reject this standing theory as simply inapposite.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (explaining that, at minimum, this doctrine only applies where a "person" has "been accorded a procedural right").

Even if this theory could apply as a categorical matter, Plaintiff's resort to it would fail because he has not shown any impact of the asserted failure to appoint a Chief FOIA Officer on his concrete interests.  The Supreme Court has made clear that "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing."  *Id.* at 496.  Thus, Plaintiff cannot rely on the contention that the Government is failing to follow the law—even law that vests him with a procedural right by statute—unless that violation affects some concrete interest of his.  As explained in the Government's opening brief, Plaintiff relies on impermissibly attenuated chains of speculation to show any relationship between his concrete interests and the Chief FOIA Officer's identity.  MTD at 7–11.

Plaintiff's argument is akin to the procedural injury theory that was roundly rejected in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), for its "remarkable nature."  *See id.* at 572–73. The Court there rejected an attempt to invoke a statutory right in "persons" to sue for "violation of any provision" of a statute, based on the Government's alleged failure to engage in interagency consultation required by that statute.  *See id.*  Even in the face of an express congressionally

conferred right to sue, the Court rejected procedural standing to enforce this interagency consultation requirement.  That is because the suit did not involve any "procedural requirement the disregard of which could impair a separate concrete interest of [the plaintiffs] (*e.g.*, the procedural requirement for a hearing prior to denial of their license application, or the procedural requirement for an environmental impact statement before a federal facility is constructed next door to them)."  *Id.*  Instead, the suit concerned an "abstract, self-contained, noninstrumental 'right' to have the Executive observe the procedures required by law."  *Id.* at 573.  That was a "generally available grievance about government" that has been "consistently" rejected.  *See id.* at 573–74.

Plaintiff is doing the same thing here, by asking the Court to simply order the Government to follow his understanding of the law without any adequate showing that doing so would have any effect on his concrete and particularized interests.  And Plaintiff's reliance on the idea that Congress established the Chief FOIA Officer provision to improve the general functioning of FOIA operations—illustrated by his metaphor of the "FOIA dam"—proves too much.  Opp'n at 11.  Under that approach to standing, any member of the public could sue about any aspect of agency FOIA operations on the theory that Congress established FOIA and its requirements to ensure "timely production of non-exempt records," *id.*, and thereby vested every person with rights to superintend agency FOIA operations through the courts.  The Supreme Court has never sanctioned such a roving, generalized approach to standing.  *See, e.g.*, *United States v. Texas*, 599 U.S. 670, 704 (2023) (Gorsuch, J., concurring) (recognizing that while "[t]he Constitution affords federal courts considerable power, [] it does not establish 'government by lawsuit'").

Plaintiff's citation of *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993), in this section of his brief is even further afield.  *See*

Opp'n at 10.  That case arose under the Constitution's equal protection clause.  The Supreme Court's longstanding equal protection jurisprudence holds that the relevant "injury in fact in an equal protection case of this variety is the denial of equal treatment . . ., not the ultimate inability to obtain the benefit."  *Ne. Fla. Chapter of the Assoc. Gen. Contractors of Am.*, 508 U.S. at 666.  The nature of that theory of injury is why equal protection plaintiffs need not show what would happen in the "counterfactual" scenario; such a plaintiff "need only demonstrate that . . . a discriminatory policy prevents it from [competing] on an equal basis."  *See id.*  There is no basis to say that a violation of the Chief FOIA Officer provision, standing alone, can create an injury-in-fact as may occur with a violation of equal protection alone.

      **b.**     **Structural claims.**    Plaintiff also invokes cases that have concerned "structural claims."  Opp'n at 11 (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 512 n.12 (2010); *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2196 (2020)).  Here, Plaintiff is referencing cases that challenged administrative investigations or adjudicatory proceedings because of the structure of the agency bringing and hearing the matter or the validity of presiding officials' appointment.  Those cases are inapposite.  Although Plaintiff alleges a constitutional challenge to Defendants' compliance with the Chief FOIA Officer provision, 4th Am. Compl. ¶¶ 151–55, he fails to show that the appointment of a Chief FOIA Officer has anything to do with *him*.  Some cases have found an "injury of subjection to an unconstitutionally structured decisionmaking process" where a person is subject to an administrative investigation or adjudication that is presided over by an improperly appointed official or unconstitutionally structured agency.  *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 192 (2023).  That is the scenario presented by the cases Plaintiff cites.  *See Free Enter. Fund*, 561 U.S. at 487 (claims that agency was unconstitutionally structured and therefore could not pursue formal investigation of firm); *Seila Law*, 140 S. Ct. at 2194–96 (standing found where

plaintiff claimed a civil investigative demand to which it was subject was void because it issued from an unconstitutionally structured agency).  But no such administrative adjudication presided over or pursued by an improperly appointed official or unconstitutionally structured agency is alleged here, which is the circumstance the Supreme Court has recognized can involve a "here-and-now injury."  *See Axon*, 598 U.S. at 191 (quoting *Seila Law*, 140 S. Ct. at 2196).  Unlike those cases, Plaintiff is left with nothing more than attenuated causal chains in attempting to show that the presence or absence of a Chief FOIA Officer at DEA has any relationship to his concrete interests.

### 2.   *Plaintiff fails to bolster the prior standing theories.*

Plaintiff also makes a series of rejoinders to Defendants' arguments about the two standing theories discussed in Defendants' opening brief.

### a.   No standing based on FOIA policies and practices that a hypothetical Chief FOIA Officer might change.

First, as to Plaintiff's speculation about policies or practices of the agency that might change if a Chief FOIA Officer were in place, Plaintiff heavily relies on *Alliance for Hippocratic Medicine v. FDA*, 78 F.4th 210 (5th Cir. 2023), *cert. pending*, Nos. 23-235, 23-236, 23-395.  That case has little to do with the Chief FOIA Officer claims here.  *Alliance* dealt with physicians and national associations who obtained preliminary relief against the FDA regarding the agency's approval and certain post-approval actions as to a drug that terminates pregnancies (mifepristone).  The Fifth Circuit thereafter affirmed the district court's order in part and vacated in part.  The plaintiff physicians and associations in *Alliance* "chiefly reli[ed] on associational standing."  *Id.* at 228.  Plaintiff here is an individual, not an association, and he has not provided the sort of statistical evidence that the Fifth Circuit found could support associational standing in *Alliance*.  *See id.* at 229–32.  Plaintiff also fails to identify any concrete and non-speculative injury that the asserted

absence of a Chief FOIA Officer at DEA causes him, whether in the past or in the "certainly impending" future.  Plaintiff's Chief FOIA Officer claims instead rely on a chain of speculation to establish harm and redressability.  That is an impermissible theory, as the Supreme Court has long emphasized. *See id.* at 227 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)).  In any event, the *Alliance* decision is incorrect and has been stayed pending further proceedings in the Supreme Court in light of a prior order of the Court staying the district court's order in full. *See Danco Labs., LLC v. Alliance for Hippocratic Med.*, 143 S. Ct. 1075 (2023); *see also Alliance*, 78 F.4th at 256 (noting the stay).

Plaintiff also contends that dismissal is inappropriate because Defendants' motion relies on factual disputes with the complaint's allegations.  Opp'n at 12–14.  That argument finds no basis in Defendants' motion, which does not raise a factual challenge to Plaintiff's standing allegations.  Instead, Defendants' motion accepts the non-conclusory factual allegations of the Complaint as true and explains why those allegations do not plausibly allege standing.  Plaintiff indicates, Opp'n at 12, that some of the Supreme Court's standing cases have been resolved at summary judgment but that is no response to the fundamental requirement that the *complaint* itself must allege standing to sue.  *See Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989) (standing must be shown "on the face of the complaint").  Plaintiff also argues that *Lujan* refers to standing as a "factual" issue but that does not mean it cannot be resolved on a motion to dismiss.  To the contrary, even factual disputes about standing are appropriately resolved through a Rule 12(b)(1) motion.  *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (explaining that a "motion to dismiss for lack of standing may be either facial or factual," the latter of which involves submission of "affidavits, testimony, or other evidentiary materials").  But again, Defendants have raised a facial, not factual, challenge to standing—the

complaint's allegations simply do not establish standing, even taken as true and drawing reasonable inferences in Plaintiff's favor.

Plaintiff next recounts a series of assertions based on parts of a deposition transcript from this case, which he contends show that "it is not implausible (indeed, it is likely) that I can prove that having a senior official who is Chief FOIA Officer reporting to the Administrator would redress at least some of my harm and result in a different or favorable policy/practice changes." Opp'n at 13. Plaintiff's proffer only underlines the speculative nature of Plaintiff's theory of redressability. At best, this passage of Plaintiff's brief makes allegations that an employee in DEA's FOIA office previously "request[ed]" that a reorganization of DEA's FOIA office be made and that this official implemented certain FOIA policies affecting Plaintiff. *See id.* That does not plausibly show that an order from the Court for DEA to install a Chief FOIA Officer— identity unknown at present—would cause that hypothetical new Chief FOIA Officer to exercise discretion to recommend any policy changes at all, let alone show that such changes would be adopted by DEA or DOJ officials or that those changes would be relevant to Plaintiff's interests. Defendants are not quibbling with the facts; they are holding Plaintiff to his obligation to plausibly allege standing and Plaintiff is coming up short.

Plaintiff later returns to his complaints about DEA's purported unusual circumstances policy, claiming that he has standing based on impermissible "record balkanization." Opp'n at 16–19. Much of this discussion contains an irrelevant airing of Plaintiff's grievances on the merits of counts 1 and 2. Opp'n at 16–17. The merits of those contentions will be adjudicated at summary judgment and are not at issue in this motion. What matters for present purposes is whether Plaintiff's Chief FOIA Officer claims have a sufficient relationship to the purported

unusual circumstances policy to satisfy the traceability and redressability requirements.   And Plaintiff does nothing in his reply to resolve that problem.

Plaintiff claims that Defendants have missed his point, arguing that appointment of an official like DEA's Deputy Administrator as Chief FOIA Officer would mean that such an official's office would no longer be an "establishment" that is "separate from the office processing the request," thereby changing the way DEA's purported unusual circumstances policy works. Opp'n at 18–19.  This speculation simply has no basis in the statute.  The Chief FOIA Officer can be any "senior official . . . at the Assistant Secretary or equivalent level."  5 U.S.C. § 552(j)(1). So, as an initial matter, it is wholly speculative whether the official chosen by DEA pursuant to Plaintiff's requested judicial relief would have personal access to records subject to any pending or certainly impending FOIA request from Plaintiff.  Additionally, there is no basis in the statute to say DEA must reorganize its FOIA office to be a component of some other office at DEA by virtue of the Chief FOIA Officer's appointment.  For example, the Associate Attorney General is DOJ's Chief FOIA Officer but that does not mean that the numerous FOIA offices within DOJ components and offices are part of the Office of the Associate Attorney General.  *See* https://www.justice.gov/agencies/chart/map (organizational chart for the Department of Justice).  In short, the Chief FOIA Officer provision does not mandate a particular manner of organizing an agency's FOIA office, nor does it create any role for Chief FOIA Officers in responding to FOIA requests.  Plaintiff's unusual circumstances claims, counts 1 and 2, have nothing to do with his Chief FOIA Officer claims.

**b.     No standing based on documents that a hypothetical Chief FOIA Officer might generate.**     Plaintiff also returns to his standing theory that the Court should require the appointment of a Chief FOIA Officer because that person might generate records to which

Plaintiff would be entitled under FOIA. Opp'n at 14–16. To begin, Plaintiff recognizes that FOIA does not compel agencies to create records in response to a FOIA request. Opp'n at 14. That point is fatal to this standing theory, which is premised on the idea that Plaintiff has informational standing under FOIA based on his lack of access to records that do not yet exist. *See* MTD at 10–11. FOIA does not entitle him to such non-existent records and there is accordingly no standing on this basis.

Plaintiff argues, Opp'n at 15–16, that his standing is supported by the Supreme Court's decision in *Federal Election Commission v. Akins*, 524 U.S. 11 (1998). Not so. *Akins* concerned an "inability to obtain information . . . that, on respondents' view of the law, the statute requires" to be made "public." *Id.* at 21. That was sufficient to show standing under precedent that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Id.* There is no statutory duty under FOIA for the Government to create records so that they can be released in response to a FOIA request, as Plaintiff admits. Nor does the Chief FOIA Officer provision say anything about mandatory creation of records or release thereof. *Compare* 5 U.S.C. § 552(j) *with* Opp'n at 15. *Akins* is of no help to Plaintiff here.

### B.     First Amendment Claim (Count 6)

Plaintiff also lacks standing to pursue his First Amendment claim, which seeks wide-ranging relief that would mandate the indiscriminate release of "adjudicatory records from DEA proceedings," including potentially the creation of a judicially supervised electronic docketing system at DEA. MTD at 11 (quoting 4th Am. Compl. ¶ 169). As explained in Defendants' opening brief, Plaintiff situates this staggering request for relief on two thin reeds. First, Plaintiff alleges that he is a FOIA requester, attorney, and journalist, such that he is entitled to such vast disclosure because he cannot identify the proceedings to which he needs access by virtue of DEA's

purported secrecy.  MTD at 11–13.  That does not work—standing requires a certainly impending injury, which is not satisfied by speculation about the likelihood that DEA proceedings bearing on Plaintiff's concrete interests exist to which he is not getting access.  *Id.*  Second, Plaintiff points to FOIA requests he has made for records of DEA administrative proceedings.  MTD at 13–14. Whatever informational standing Plaintiff would have to pursue FOIA claims on those FOIA requests, he pleads no basis to pursue far-reaching First Amendment claims about *all* DEA proceedings based on his FOIA requests for records from *specific* DEA proceedings.  *Id.*

Plaintiff's opposition brief responds to these arguments first with a lengthy recounting of various out-of-circuit cases that found standing to pursue First Amendment claims.  Opp'n at 19– 22.  But these cases further demonstrate the defects of Plaintiff's attempts to pursue records of all DEA adjudicatory proceedings without any showing that such relief bears on his concrete interests.  Many of the cases were premised on specific denials of access or requests to gain access to particular proceedings.  *See Flynt v. Rumsfeld*, 355 F.3d 697, 702 (D.C. Cir. 2004) ("[Plaintiffs] asked for immediate access to accompany U.S. troops in combat . . . and that access was not granted."); *In re Opinions & Orders of this Court Addressing Bulk Collection of Data under the Foreign Intel. Surveillance Act*, 2017 WL 5983865, at *2 (FISA Nov. 9, 2017) (litigation regarding the release of four judicial opinions).  Or the cases referred to cognizable interests that would be impaired if the full relief sought was not granted. *N.Y. Civil Liberties Union v. N.Y.C. Transit Authority*, 684 F.3d 286, 295 (2d. Cir. 2012) (explaining that plaintiff's "interest in open access to TAB hearings" was a "matter of professional responsibility to clients" because the organization needed to "observ[e] TAB hearings" to prepare for its representations of clients); *In re Orders of this Court Interpreting Sec. 215 of the Patriot Act*, 2013 WL 5460064, at *4 (FISA 2013) (organization was an "active participa[nt] in the legislative and public debates about the proper scope of Section 215 and the

advisability of amending that provision" and release of opinions interpreting that provision would aid organization in that debate).

Plaintiff's claim does not resemble these cases.  He does not seek relief for access to particular proceedings or to overturn particular denials of access.  Nor does he show that granting him the full expansive relief he seeks, concerning numerous types of proceedings at the agency, would sufficiently bear on any cognizable interest particular to him.

Plaintiff goes on to pursue a series of more specific responses to the Government's opening brief.  Plaintiff claims he not only has a certainly impending injury but a current one because DEA adjudications are purportedly secret right now.  Opp'n at 23.  That is not responsive to the standing problem Defendants have identified, which is that Plaintiff's standing theory is premised on his assumption that among these ostensibly secret proceedings are any that bear on his concrete interests.  *That* is where Plaintiff has failed to allege an actual or certainly impending injury; it is not enough to simply say that there are secret DEA proceedings full stop.  *Cf. TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021) ("An asserted informational injury that causes no adverse effects cannot satisfy Article III." (citation omitted)).

Plaintiff next contends that his injuries are particularized, citing his need to obtain DEA precedents in support of his legal work before it.  Opp'n at 23–24.  He also claims that he is seeking "documents and information related to [Controlled Substances Act] proceedings, particularly those against opioid pharmaceutical companies, to report on them."  *Id.*  These assertions do not solve Plaintiff's failure to show that there is any proceeding relevant to his work that he cannot get access to and, in all events, do not justify the far broader relief Plaintiff seeks. Plaintiff is not just asking for ALJ opinions, and he is not just asking for records of a specific type of DEA adjudication.  He is asking the Court to order release of records from *all* DEA

adjudications and to implement injunctive relief governing recordkeeping practices with respect to all such adjudications moving forward.  *See* 4th Am. Compl. ¶ 169; *id.* at 42 ¶¶ 3, 4.  He has not shown any basis for standing to pursue that kind of relief.

Plaintiff goes on to directly address the scope of remedy issue, construing Defendants' argument to be that Plaintiff lacks standing where "the public might also benefit from a remedy." Opp'n at 26.  That is not the point; it is undoubtedly true that remedies in public law cases may have consequences far beyond the parties to the case.  The issue is whether the relief sought is tailored to the injury that *Plaintiff* has plausibly alleged (whatever ancillary impact it could have on the broader public).  Plaintiff has not shown any standing of his own to support the far-reaching relief he seeks.  Plaintiff also accuses the Government of overstating the relief he seeks, claiming that he only asks to "mak[e] *adjudicatory records* available."  Opp'n at 27 n.8.  That contention does not clarify things and, if anything, confirms the exceedingly expansive relief Plaintiff is seeking.  As Defendants pointed out in their motion, DEA proceedings arise in numerous contexts pursuant to numerous legal authorities.  *See* MTD at 3–4.  Plaintiff has made no effort to show that each and every one of them bears on his concrete interests.

## II.   PLAINTIFF FAILS TO STATE A CLAIM.

The Court should begin and end its inquiry as to counts 3–6 with Plaintiff's lack of standing.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (explaining that courts must establish their jurisdiction before reaching the merits).  But if the Court finds Plaintiff has standing to pursue any aspect of these counts, they should be dismissed for failure to state a claim.

### A.   Counts 3–5 Should Be Dismissed Because DEA Need Not Appoint a Separate Chief FOIA Officer.

A necessary, but not sufficient, condition for Plaintiff to prevail on counts 3, 4, and 5, is that DEA be required by law to have a separate Chief FOIA Officer.  Defendants' motion

explained that FOIA does not require this, and Plaintiff accordingly fails to state a claim. MTD at 15–24. FOIA's text defines the term "agency"—the kind of entity that must have a Chief FOIA Officer—at 5 U.S.C. § 552(f)(1) by reference to a series of types of entities. MTD at 16–17. DEA does not fit within any of those categories. *Id.* Instead, FOIA provides that "executive department[s]" like DOJ are agencies, not the components of those departments, like DEA. *Id.* That textual understanding is reinforced by FOIA's provision that agencies must submit annual reports regarding their FOIA operations and must do so by reference to their "principal components." MTD at 17–18. Treating the components of executive departments as separate agencies renders this part of FOIA surplusage. *Id.* Moreover, Congress has ratified the uniform interpretation of the executive branch that departmental components need not have separate Chief FOIA Officers by lifting, without relevant change, this office from an Executive Order and by later re-enacting the relevant portion FOIA's Chief FOIA Officer provision, both times with presumptive knowledge of the executive's uniform interpretation of the position. MTD at 20–24.

The role of DOJ's Chief FOIA Officer is occupied by the Associate Attorney General and her role covers the entirety of DOJ, including all of its component organizations, such as DEA. *See U.S. Dep't of Justice 2023 Chief FOIA Officer Report* at 5, https://www.justice.gov/oip/page/file/1573561/download (Chief FOIA Officer report identifying the ASG as Chief FOIA Officer and reporting on DOJ's components, including DEA). DOJ's Chief FOIA Officer is necessarily also DEA's Chief FOIA Officer because she is the Chief FOIA Officer for the entirety of the Department. But DEA has no separate Chief FOIA Officer from DOJ because FOIA does not require that; DEA is not a separate "agency" from DOJ under the statute.

Plaintiff's various responses lack merit.

### 1.    *Text, context, and legislative history*

First, as to text, Plaintiff contends that a separate section of the U.S. Code, 5 U.S.C. §
551(1), defines agency in a manner that would include DEA.  Opp'n at 28–29.  He argues that
section 552(f)(1) necessarily defines agency to include DEA as well because section 552(f)(1)
references section 551(1)'s definition in its definition of agency.  *Id.*  But contrary to Plaintiff's
argument, Defendants are not asking the Court to strike words from the definition of agency
contained within section 552(f)(1) or ignore its reference to section 551(1).  *See* Opp'n at 29.
Rather, the Court should simply apply ordinary canons of statutory interpretation, which operate
contrary to Plaintiff's interpretation and militate against incorporating the full scope of the section
551(1) definition of agency into FOIA.  Those canons include that "the specific governs the
general"—here, a specific definition of agency in FOIA governs over a different definition
applicable to a broader context.  MTD at 18 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S.
374, 384 (1992)).  They also include the canon that "Congress generally acts intentionally when it
uses particular language in one section of a statute but omits it in another"—as here, where
Congress has not included in FOIA's more specific definition of agency the language upon which
Plaintiff relies.  MTD at 19 (quoting *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1058 (2019)).

Plaintiff also adheres to his approach even though he recognizes that it creates
"overlap/redundancy," Opp'n at 31, in the annual FOIA reporting requirement by mandating
repetitive FOIA reports from executive departments and their components.  Opp'n at 31.  The
Court should not embrace an interpretation of "agency" that would create, by Plaintiff's own
admission, incoherent redundancies in one of the statute's key provisions.  Indeed, in an attempt
to resolve this difficulty, Plaintiff proposes parsing among the components of executive

departments, claiming that some are agencies and some are not. *See* Opp'n at 30–31. But there is no sound basis in the statute to do this. Plaintiff argues that some parts of agencies are not an "authority of the Government," and thereby not "agencies," but his analysis of how that test is intended to operate is largely nonexistent beyond simply declaring that some components are and are not agencies under it. *See id.*

Plaintiff next attacks Defendants' argument that DEA is not separately identified as an agency by section 552(f)(1). Opp'n at 31–32. He contends, instead, that DEA is an "establishment in the executive branch of the Government" and, therefore, should be treated as a separate agency from DOJ. *Id.* But he omits that section 552(f)(1) refers to "*other* establishment[s] in the executive branch," not simply *any* establishment at all. *See* 5 U.S.C. § 552(f)(1) (emphasis added). The best understanding of this portion of section 552(f)(1) is accordingly that it refers to entities that have not already been captured by one of the prior more specific categories of agency, such as "executive department" in the case of DOJ and its components. That is consistent with the *Soucie* test that Plaintiff references, Opp'n at 32, which has been deployed to determine whether executive branch entities that are not already part of any FOIA-defined agency are themselves agencies under the statute. *See Meyer v. Bush*, 981 F.2d 1288, 1291–93 (D.C. Cir. 1993) (describing history of applying this test to distinct entities within the Executive Office of the President).

Plaintiff also argues by resort to legislative history. Opp'n at 32–33. To begin, "legislative history can never defeat unambiguous statutory text," *Bostock v. Clayton Cty., Ga.*, 140 S. Ct. 1731, 1750 (2020), and here, the text of FOIA unambiguously shows that components like DEA are not separate agencies for purposes of the Chief FOIA Officer provision. In any event, the legislative history cited by Plaintiff is far more supportive of *Defendants'* interpretation. The Conference Report for the 1974 amendments to FOIA specifically states that Congress did not

"intend[] that the term 'agency' be applied to subdivisions, offices or units within an agency." H.R. Rep. 93-1380 at 232 (Sept. 25, 1974), https://nsarchive2.gwu.edu/nsa/foialeghistory/H.%20R.%20Rep.%2093-1380%20(Sept.%2025,%201974)%20Conf.%20Report.pdf. Instead, the purpose of re-defining "agency" in FOIA appears to have been principally to "assure FOIA application to the Postal Service and also to include publicly funded corporations established under the authority of the United States," not any attempt to apply various FOIA requirements separately to components of executive departments. *See* S. Rep. No. 93-854 at 185 (May 16, 1974), https://nsarchive2.gwu.edu/nsa/foialeghistory/S.%20Rep.%20No.%2093-854%20(May%2016,%201974).pdf. Legislative history either has no relevance here or further militates against Plaintiff's position.

### 2.   *Congressional ratification of executive branch practice*

Finally, Plaintiff disputes the application of the ratification canon here, which conclusively shows that Congress twice adopted the executive branch's uniform interpretation that the Chief FOIA Officer position is appointed at the level of executive departments, not separately within their components. Plaintiff's primary response is to dispute that ratification can apply at all here because FOIA contains a definition of agency. Opp'n at 33–34. But he cites two cases for this proposition that did not deal with the ratification issue at all. *See Digital Realty Trust, Inc. v. Somesr*, 583 U.S. 149 (2018); *Stenberg v. Carhart*, 530 U.S. 914 (2000). Ratification principles readily apply here. *See* MTD at 23.

Plaintiff also argues that ratification only applies to agency interpretation of a statute, not its interpretation of, *e.g.*, an executive order. Opp'n at 34. This argument is not responsive to the second ratification that Defendants have identified as occurring in 2016. *See* MTD at 22–23. That ratification undoubtedly reflects congressional blessing of the executive branch's interpretation of

a statute, namely its interpretation of the Chief FOIA Officer provision in FOIA.  And that second

ratification is sufficient, alone, to support Defendants' point.

Plaintiff's argument instead solely concerns the first ratification of executive branch

practice that Congress caused when it originally created the Chief FOIA Officer position by lifting

that position without material change from an Executive Order.  *See* MTD at 20–22.  As to that

ratification, Plaintiff raises no principled basis to say that courts can presume congressional

awareness of executive interpretation of statutes and not interpretation of directly related

executive action.  Either way, the "longstanding interpretive principle" should apply the same:

"When a statutory term is 'obviously transplanted from another *legal source*,' it 'brings the old soil

with it.'"  *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (emphasis added) (quoting *Hall v. Hall*,

138 S. Ct. 1118, 1128 (2018)).  Congress "exhibited . . . a detailed knowledge" of the executive

order creating the Chief FOIA Officer position when it largely incorporated that order in FOIA.

*Cf. Lorillard v. Pons*, 434 U.S. 575, 581 (1978).  That makes application of the presumption of

congressional awareness and ratification of the executive branch interpretation of that order here

"particularly appropriate."  *Cf. id.*

Plaintiff also contends that the cited history of executive branch interpretation of the Chief

FOIA Officer position is not sufficiently clear, longstanding, or formalized.  Opp'n at 34.  But

here Plaintiff applies a stringency for application of the ratification test that is inconsistent with

how it has been applied by the Fifth Circuit.  In *Duarte v. Mayorkas*, 27 F.4th 1044 (5th Cir. 2022),

the Court of Appeals accepted congressional awareness and ratification of an agency interpretation

that was 11 years old when the ratification occurred and was reflected in an opinion of the Bureau

of Immigration Appeals, not an extensive set of regulations as Plaintiff demands.  *See id.* at 1059

(presuming congressional awareness in 1991 of an interpretation extending back to 1980).

Plaintiff cites *Sackett v. EPA*, 598 U.S. 651 (2023), as contrary precedent, but that case involved an Army Corps of Engineers definition that was "promulgated mere months" before Congress acted and which was not adopted by another relevant agency, EPA, until years later. *See id.* at 683. That is far different from the uniform executive branch practice and interpretation at issue here.

**B.     Count 6 Should Be Dismissed Because It Has No Basis in the First Amendment.**

Plaintiff also fails to state a claim under the First Amendment because "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." MTD at 25 (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) (plurality op.); *United States v. Brown*, 250 F.3d 907, 915 (5th Cir. 2001)). Plaintiff invokes a test for First Amendment access—the experience and logic test—that has never been extended to administrative agency proceedings or records by either the Supreme Court or the Fifth Circuit. MTD at 25–26. And even if that test applied, Plaintiff has not plausibly pleaded either part of the test, both of which are necessary—a sufficient tradition of access to DEA proceedings or a showing that unfettered access to all types of DEA adjudicatory proceedings would have a significant positive role in the functioning of those proceedings. MTD at 26–28.

Plaintiff first argues that the experience and logic test applies to records of executive branch adjudications, walking through a few out-of-circuit decisions finding that it may in particular circumstances. Opp'n at 35–36. But those decisions should not be accorded weight by this Court where the Fifth Circuit itself has already rejected application of this First Amendment test to administrative agency records in *Calder v. IRS*, 890 F.2d 781, 783–84 (5th Cir. 1989). Plaintiff rejects application of *Calder* here, claiming that the case did not address a First Amendment right of access to "agency ***adjudication records***." Opp'n at 37. But even if *Calder*'s

facts specifically concerned investigatory records, its reasoning forecloses Plaintiff's attempt to apply the experience and logic test to any kind of administrative agency records, investigatory or otherwise.  *See Calder*, 890 F.2d at 783–84.  *Calder* reasoned that it is a task for the legislative branch to determine "who should have access to particular government held information" and it explained that a different test applied in the particular context of criminal trials, where "a presumption of openness inheres in the very nature of a criminal trial under our system of justice."  *Id.* (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980)); *see also Sullo & Bobbit, P.L.L.C. v. Milner*, 765 F.3d 388, 392 (5th Cir. 2014) (reiterating that the First Amendment does not "mandate a right of access to government information" but stating that a different test applies as to "court proceedings").  The Fifth Circuit's reasoning—rooted in the absence of a First Amendment right to government information and in separation of powers principles regarding the fundamentally legislative task of weighing the propriety of access to different kinds of government information—fully applies to the context of agency adjudicatory records.

Even if the experience and logic test applied, however, Plaintiff's rebuttal to Defendants' application of it is unavailing.  First, Plaintiff argues that he need not show a history of unfettered access in DEA proceedings (which he does not) but can, instead, rely on analogies to criminal prosecutions and adjudications by other agencies.  Opp'n at 39–42.  Plaintiff cites a Supreme Court opinion, *El Vocero de Puerto Rico (Caribbean Int'l News Corp.) v. Puerto Rico*, 508 U.S. 147, 150 (1993)), that did not involve application of the experience and logic test to administrative proceedings but, rather, to aspects of a criminal judicial proceeding.  In that particular context, the Supreme Court holds that the experience test is not judged as to the "particular practice of any one jurisdiction."  *See id.*

As for courts that have applied the experience prong to agency proceedings, Defendants' opening brief showed that they generally look to the history of access more specifically in that agency.  MTD at 27 (citing *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 701 (6th Cir. 2002); *N. Jersey Media Grp., Inc. v. Ashcroft*, 308 F.3d 198, 201 (3d Cir. 2002)).  Most significantly, the Fifth Circuit explained in *Calder*, in an alternative holding, that the experience prong was not met where "the type of IRS records at issue was not routinely available."  *See Calder*, 890 F.2d at 784.  Plaintiff claims that the Second Circuit has used his preferred approach of analogizing between one agency's proceedings and other contexts.  But this Court should follow the Fifth, not the Second Circuit.  Moreover, the Second Circuit in *New York Civil Liberties Union v. New York City Transit Authority*, 684 F.3d 286 (2d Cir. 2012), relied in part on the showing that the "*process*" for "determination of whether a respondent has violated a Transit Authority Rule" had been "presumptively open from the inception of the Rules system in 1966, when such proceedings were heard only in open criminal courts."  *Id.* at 301–02.  Plaintiff makes no similar showing that all types of DEA adjudications have similar histories of openness.

Plaintiff also repeatedly accuses the Government of constructing a strawman and overstating his claims.  Opp'n at 38–39, 41, 43–44.  That is mistaken.  Plaintiff's complaint plainly seeks, without limitation, "an injunction ordering DEA to make adjudicatory records from DEA proceedings timely available or accessible to the public, for example, through an electronic docketing system or any other appropriate means."  4th Am. Compl. ¶ 169.  That relief, contrary to Plaintiff's revisions in his opposition brief, is not limited to "CSA adjudications presided over by ALJs" or even more narrowly to producing the "working law" of the agency or mere "notice" of particular adjudicatory proceedings through publication of lists of proceedings or docket sheets.  *See* Opp'n at 41.  Plaintiff now may wish to walk away from the startling reach of his

Complaint but that does not change what it contains.  And what it contains is a request for indiscriminate release of records and judicial superintendence of agency recordkeeping practices that has no basis in FOIA, to say nothing of the First Amendment.

Finally, Plaintiff presents a lengthy application of the "logic" prong of the access test that is long on rhetoric but short on analysis of the various categories of proceedings and records to which his claim applies.  *See* Opp'n at 42–46.  Plaintiff instead treats as essentially self-evident that a First Amendment claim will prevail on this part of the test.  *See* Opp'n at 42 (claiming there "should be no dispute that public access 'enhances the quality' of adjudications that involve enforcing drug laws and public rights").  But then the experience and logic test would be a one-prong inquiry, concerning experience alone.  It is not.  *See N. Jersey Media Grp., Inc. v. Ashcroft*, 308 F.3d 198, 217–20 (3d Cir. 2002) (finding access to a particular type of agency proceeding failed the logic prong).  And as actually pleaded (not refashioned in his brief), Plaintiff's claim seeks the release of records from all DEA adjudications even where that may have significant negative consequences by publicly revealing information bearing on privacy and law enforcement equities that Congress specifically protected in FOIA exemptions.  MTD at 28.  Plaintiff has pleaded a far-reaching claim and he has failed to plausibly allege that the logic prong has been satisfied as to that claim.

## CONCLUSION

For the foregoing reasons, the Court should dismiss counts 3–6 of the Fourth Amended Complaint and deny Plaintiff's cross-motion for summary judgment.

 DATED: December 4, 2023                    Respectfully Submitted,


                                           ALAMDAR HAMDANI
                                           United States Attorney

*s/ Jimmy A. Rodriguez*
Jimmy A. Rodriguez
Assistant United States Attorney
Southern District of Texas
Attorney in Charge
Texas Bar No. 24037378
Federal ID No. 572175
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9532
Fax: (713) 718-3303
jimmy.rodriguez2@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ James Powers*
James R. Powers
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
Texas Bar No. 24092989
1100 L Street, NW
Washington, DC 20005
Tel: (202) 353-0543
James.r.powers@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

## CERTIFICATE OF SERVICE

I certify that on December 4, 2023, a true and correct copy of the foregoing was filed with the United States District Clerk for the Southern District of Texas and electronically served on all counsel of record via the District's ECF system.

*s/ James Powers*
James R. Powers
Trial Attorney

23