UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW C. ZORN, | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:22-cv-02396 |
| U.S. DEPARTMENT OF JUSTICE, ET AL. | § § § | **Oral Hearing Requested** |
| Defendants. | § § § | |

**SUR-REPLY OPPOSING MOTION TO DISMISS AND
REPLY IN SUPPORT OF SUMMARY JUDGMENT**

I.      **Chief FOIA Officer and Whether DEA is an Agency Under § 552(f)**

The Government incorrectly proposes that deciding Chief FOIA Officer standing for it disposes of my cross-motion. Not so. Whether DEA is an "agency" under § 552(f) is live regardless because the issue is relevant to all claims, including unchallenged Claim 1. As I lay out in my cross-motion, if DEA is not an "agency" then it is also not a proper defendant in a FOIA lawsuit; under § 552(a)(4)(B), courts can only enjoin *agencies*. So, if DEA is not an "agency" under § 552(f), Claim 1 against DEA should also be dismissed for lack of jurisdiction.

   A.     **Standing**

**Facial/factual**. The Government describes its attack as facial, not factual. Reply 7. Thus, being on pleadings, "*general factual allegations of injury resulting from the defendant's conduct may suffice*, for on a motion to dismiss [courts] presume that *general allegations embrace those specific facts that are necessary to support the claim*." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The Government does not get the benefit of inferences; those are drawn in my favor.

For example, in *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997), petitioners alleged injury based on reduced water for irrigation traced to a Fish and Wildlife Service biological opinion. The government, on the pleadings, argued no standing because diminution in the *aggregate* amount of available water did not necessarily establish that petitioners would receive less water. The Court rejected the pleading-dismissal-argument and pointed to the standard of general embracing specific. Given a general allegation that less water would be available, specific facts on water distribution by which ranchers and districts would be injured could be presumed.

Given this same standard, my burden is "relatively modest at this stage." *Id.* at 171. Indeed, many Government arguments here are indistinguishable from failed ones in *Bennett*. For example, it points out that the Chief FOIA Officer's recommendations are subject to approval by the agency head. In *Bennett*, too, the Bureau was "technically free" to disregard the Service's biological

opinions. Nonetheless, there was standing because the biological opinion played a central role in the agency's decision-making process, just as the Chief FOIA Officer does with FOIA.

Despite declaring its attack to be facial, the Government repeatedly and improperly seeks inferences drawn in its favor. It labels points "speculative" when I have had no opportunity to develop a record, for example, it says "it is wholly *speculative* whether the official chosen by DEA pursuant to Plaintiff's requested judicial relief *would have personal access to records subject to any pending or certainly impending FOIA request from Plaintiff.*" Reply 9. Also, given the detailed facts I've alleged, is it really *implausible* that having *anyone* as an agency Chief FOIA Officer – as opposed to *nobody* – would lead to better or simply different FOIA implementation?

These "speculative" arguments at the dismissal phase are all premature. Notably, after the government made similar gestures in *Texas v. Mayorkas*, 2023 WL 5616184, at *2 (S.D. Tex. Aug. 29, 2023), this Court concluded that standing "was better resolved at the summary judgment stage where the Court can consider extra-record discovery evidence for standing." So too here.

**Documents in custody/control of Chief FOIA Officer under § 552(j)(2).** The Government frames the existence of these records as hypothetical or speculative. Not so. The statute *requires* the Chief FOIA Officer perform duties that would inherently result in creating/maintaining records related to FOIA performance/compliance. FOIA does not require agencies to create records *in response to FOIA requests*. But independent of FOIA request provisions, an agency Chief FOIA Officer *must perform the duties in § 552(j)(2)*, which duties compel the creation of documents, recommendations, and reports related to FOIA administration.

The Government's argument improperly imports proximate causation into standing, when "Article III requires no more than de facto causality." *Dep't of Comm. v. New York*, 139 S. Ct. 2551, 2566 (2019) (quot. omitted). Here, there is no genuine dispute that my inability to get records related to FOIA implementation/compliance—such as basic record management policies—is

causally related to there being no Chief FOIA Officer. Likewise, the Government's analysis wrongly equates "injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation." *Bennett*, 520 U.S. at 168.

Tellingly, rather than address § 552(j)(2), the Government leans into obfuscation, referring to "FOIA" writ large and conflating responses to records requests with mandatory § 552(j) duties that exist independent of FOIA request provisions. That both are in § 552 has no legal significance to but-for causality. If obligations to create/maintain records arose elsewhere, the result is the same. For example, if another statute (1) required an agency to have a Chief Safety Officer (CSO); (2) required the CSO to monitor implementation of safety protocols and produce reports; and (3) in response to a FOIA request, the agency said it can't produce records *because* it has no CSO, a person with a concrete interest in safety records would have standing to challenge the arrangement.

**Structural/procedural standing.** The Government avoids discussion or disagreement with *Judicial Watch, Inc. v. DHS*, 895 F.3d 770, 775-76 (D.C. Cir. 2018), in which the D.C. Circuit opined that the Chief FOIA Officer statute is an important structural bulwark among others that ensures compliance with FOIA's dictates. Section 552(j)'s Chief FOIA Officer provisions are part of a "two-part scheme" that Congress implemented to ensure agencies make records "promptly available." Given the facts I've alleged about my interests, my allegations that violation of this protection is plainly sufficient "at the dismissal stage." *E.g.*, *PETA v. DOA*, 797 F.3d 1087, 1094 (D.C. Cir. 2015) (group had standing to challenge agency's failure to apply the AWA's general animal welfare regulations to birds that resulted in a "denial of access to bird-related AWA information" and "'perceptibly impaired [PETA's] ability' to both bring AWA violations to the attention of the agency charged with preventing avian cruelty and continue to educate the public'").

The Government's attempt to distinguish *Alliance for Hippocratic Medicine v. FDA*, 78 F.4th 210 (5th Cir. 2023) is thin. That the case primarily deals with associational standing—weaker

than and derivative of individual standing—is a distinction of no import. In any event, the case also reached individual standing. And that just leaves the Government to say the decision is wrong.

The Government then says my argument "proves too much" because it would vest "every person with rights to superintend agency FOIA operations through the courts." Reply 4. But of course, following *TransUnion*, "mere denial of information, without more, is insufficient to establish injury in fact under Article III." *Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 940 (5th Cir. 2022) (Ho, J. concurring) (quote omitted; discussing FOIA standing following *TransUnion*). "[A] plaintiff must identify what downstream consequences they will suffer from failing to receive the required information." *Id.* I did that, identifying an inability to cover news, advocate for policy, frustrations in my attorney work, etc. All are concrete interests and downstream consequences undergirding the statutory FOIA right that allows me to pursue a procedural/structural claim under *Lujan*.[1] Not every member of the public can make one those claims let alone all three and more.

The Government notes that *Northeastern Florida Chapter of the Associated Gen. Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993) arises under equal protection as opposed to statute. So what? While the Court has stated that standing is more capacious with structural/procedural challenges, it has never held that a concrete interest is different based on the substantive right being asserted. The principle is the same. Where an agency refuses to implement a statutory protection, a party has injury if she can show that the absence of that protection makes it more difficult to obtain the benefits of the statute—here that records be made "promptly available." My pleadings show FOIA policies created/implemented without a lawfully designated Chief FOIA Officer that impede my access to information related to my concrete interests.

The Government also oddly contends I lack standing because I am not "subject to an … *adjudication* that is presided over by an improperly appointed official or unconstitutionally

---

[1] The notion that anyone "could sue about" FOIA operations is correct insofar as (1) the suit pertains to agency action/inaction, *see* 5 U.S.C. § 702, and (2) the suing party had concrete interests impeded.

structured agency." Reply 5. But of course, FOIA decisions *are* 5 U.S.C. § 551(7) "adjudications," and I'm Plaintiff because *my* FOIA requests are before DEA's unlawfully structured FOIA Office, and *I* have been subjected to the policies/practices of this unlawfully constituted FOIA Office.

**B.    Merits**

That no appellate court decision has ever read this statute in the manner the Government proposes—and read the § 552(f) as I do—bears repeating. The Reply does not distinguish this chorus of cases. Nor does it explain how to reconcile treating components of Departments as non-agencies with decades of cases and decisions where they were named defendants in FOIA suits. Instead, the Reply advances four other points: (1) misapplication of the specific/general canon; (2) misconstruing FOIA's reporting requirements; (3) misapplication of the congressional ratification; and (4) selectively cropping unfavorable words out of the statutory history.

**First**, the specific/general canon finds no application here. The canon most frequently arises in statutes in which a general permission/prohibition is overridden by a specific prohibition/permission. *See, e.g.*, *Morton v. Mancari*, 417 U.S. 535, 550–551 (1974). It does not apply, however, when a statute uses "*includes*" to provide add, clarify, or remove ambiguity. Syntactically, the canon "has traditionally required the broad catchall language to *follow* the list of specifics." Scalia & Garner, Reading Law: The Interpretation of Legal Texts 166 (2012). "Authorities have traditionally agreed that the specific-general sequence is required, and that the rule does not apply to a general-specific sequence." *Id.* at 167. Section 552(f), of course, is the latter: it starts with importing the general § 551(1) definition and then adds to it.

The notion that "Congress has not included in FOIA's more specific definition of agency the language upon which [I] rel[y]" is of no moment either. Reply 15. Congress had no reason to repeat provisions the § 551(1) definition because the phrase "agency as defined in § 551(1)" *incorporates the entire § 551(1) definition of "agency"*—lock, stock, and barrel.

-5-

**Second**, the construction I advocate for creates some "overlap/redundancy." But *some* overlap/redundancy is *not* superfluity. The reporting requirement ensures that large agencies with several components must report data on a component-by-component basis so that Congress has usable data for effect FOIA oversight, for example, that large component agencies like DEA (part of DOJ) or FDA (part of HHS) that themselves have components must report FOIA data for those agency components. The statute is hardly superfluous under my reading. It merely means that component agencies must provide more granular data as well as be reported on an aggregate basis within the Departments. Having both sets of data and some overlap in reporting makes total sense for effective FOIA oversight of Departments and major agencies alike.[2]

**Third**, the Government doubles down on misapplying the ratification canon. It should not apply given the text. Also, "a few isolated statements in the thousands of pages of legislative documents" is not a basis to apply the canon. *SEC v. Sloan*, 436 U.S. 103, 121 (1978). Its use should be considered only where consensus is "broad and unquestioned." *Jama v. ICE*, 543 U.S. 335, 349 (2005). With agency interpretations, that would mean a codified rule or one frequently applied. What the Government identifies decidedly does not qualify: An implicit interpretation in an Executive Order later conveyed in congressional testimony and posted on the internet.

**Finally**, on legislative history, the Government's position could not be more wrong. To start, it selectively crops out the beginning of the sentence it quotes. In full, it reads, "*Expansion of the definition of 'agency' in this subsection* is intended to broaden applicability of the [FOIA] but it is not intended that the term 'agency' be applied to subdivisions, offices or units within an agency." Next, consider the 1974 Attorney General's memorandum interpreting the legislative history currently on DOJ's website under **II-E. REDEFINITION OF "AGENCY"** [3]:

---

[2] The agency's failure to report data properly is another concrete injury given my FOIA problems.

[3] *See* https://www.justice.gov/oip/attorney-generals-memorandum-1974-amendments-foia.

-6-

> It seems *clear from the legislative history* that the new provision of the Act defining "agency" is intended chiefly to *clarify and expand* the class of organizational entities to be doomed "agencies" so that their records will be subject to the Act.

The whole section—*from the Attorney General* right after the amendment—confirms the reading I advance and other courts have long espoused. For example, that "in some of the larger Government departments, there may be 'agencies' within 'agencies.'" Unlike the obscure indirect reference the Government cites for ratification, this contemporary on-point DOJ interpretation of "agency" is entitled some deference.

The Government notes that the purpose of re-defining "agency" was to assure FOIA applied to the Postal Service and other publicly funded corporations. Precisely right. Prior to the amendment, DEA and agency components of departments were "agencies" under § 551(1) but there were questions about the Postal Service. They still are.

## II. First Amendment

### A. Standing

The Government's argument that an attorney/journalist that practices in and writes on the controlled substance area lacks standing to assert a right-of-access claim to DEA adjudicatory record remains without merit. Again, "courts have uniformly found standing to bring a First Amendment right-of-access suit so long as plaintiffs allege an invasion related to judicial proceedings." *In re Opinions & Ords. of this Ct. Addressing Bulk Collection of Data under the Foreign Intel. Surveillance Act*, 2017 WL 5983865, at *6 (FISA Nov. 9, 2017) (surveying court decisions). "That is so no matter how novel or meritless the claim may be." *Id.*

Here, the Government asserts I lack such as an interest because I've not identified a *particular* proceeding. Again, this is not what "particularized" means in standing parlance. It means particular to *me* as opposed to the general public. As to that, no doubt. I need access to precedents from DEA adjudications writ large (1) to understand precedents and the working law of the agency as an attorney in the area and (2) as a journalist that has a demonstrable record of

writing about drugs. As to the latter, we need access to DEA adjudications to report to readers (some of whom pay us). It should be self-evident that a group that covers a judicial/administrative body has standing to challenge general secrecy practices that impede a right-of-access.

Also, the Government's confusing of the *scope* or breadth of relief requested with *forms* of relief is more erroneous standing analysis. A plaintiff must show "standing for each claim that they press and for *each form* of relief that they seek (*for example, injunctive relief and damages*)." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). Thus, a plaintiff may have standing to seek damages (one form) but not an injunction (another). *E.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (standing to pursue damages, not injunction). This does not mean plaintiffs must show, at the pleadings, entitlement to exact relief scope. That goes to the merits. Taken to its logical conclusion, the Government's argument that I must prove entitlement to the full scope of relief—as opposed to the *form* of relief—is like arguing that a plaintiff must plead and prove a specific quantum of damages at the pleading stage. Here, too, the correct inquiry looks to whether I've shown standing to pursue the *form* of relief—an injunction—not whether I am entitled to the precise injunctive relief I pleaded. Under any rubric, assuming my allegations, I have standing to seek an injunctive relief because the violation I identify is current, ongoing, and not disputed.

But in all events, the point is academic. As I previously argued, my injury goes to all DEA adjudications; so, rightfully, the injunctive relief I requested goes to all adjudications as well.

### B. Merits

Before the ballooning of the administrative state, the Fifth Circuit held in *Calder* that there is no constitutional right to agency records. But as I previously argued and as the Sixth Circuit recognized in *Detroit Free Press v. Ashcroft*, *Calder* addressed a claimed "right[ ] of access to, or disclosure of, government-held investigatory information and *not access to information relating to a governmental adjudicative process*." 303 F.3d 681, 699 (6th Cir. 2002). The Government now argues *Calder*'s "reasoning" should compel rejecting any access right to agency adjudicatory

records. But *Calder*'s reasoning tells us nothing more. The question of access to agency adjudicatory records was simply never presented. In contrast, courts that have considered whether *Richmond Newspapers* applies beyond criminal trials have concluded that it does. *E.g.*, *Delaware Coal. for Open Gov't, Inc. v. Strine*, 733 F.3d 510, 514 (3d Cir. 2013). Indeed, the Fifth Circuit in *Sullo & Bobbitt, P.L.L.C. v. Milner*, 765 F.3d 388, 392 (5th Cir. 2014) implicitly recognized that *Richmond Newspapers* applies to "court proceedings"—not just criminal trials.

**Experience**. The Government appears to argue that the statement in *El Vocero de Puerto Rico (Caribbean Int'l News Corp.) v. Puerto Rico*, 508 U.S. 147, 150 (1993) that experience looks "to the experience in that type or kind of hearing throughout the United States'" is "context" limited. Courts conclude as I do, however. *See, e.g.*, *New York C.L. Union v. New York City Transit Auth.*, 684 F.3d 286, 301 (2d Cir. 2012) (applying *El Vocero* to determine if administrative hearings were of the "type or kind" of hearing typically public in US).

I agree the Court must apply Fifth Circuit over Second Circuit law. But the Government overstates *Calder*. Whether this country has a history of openness with *tax records* is far afield from whether there is a history of openness with respect to records related to the adjudication of public law. Interestingly, the Government cites *Milner*, which implicitly treats "[c]ourt records" as different from agency records and subject to the experience/logic test. My point is that DEA adjudicatory proceedings walk and talk like historically open court proceedings. They involve enforcement of public rights in a criminal statute and impose serious consequences.

**Logic**. Dismissing my response as "long on rhetoric but short on analysis," the Government says I treat the logic portion of the test as "self-evident." If that were truly the case, I would have moved for summary judgment. My burden on the pleadings is to allege, not prove, a plausible claim. And here, I put forward ample and detailed facts to show that the logic portions of the

*Richmond Newspapers* are plausibly met. The merits and "analysis" the Government has prematurely demanded are for a bench trial.[4]

**Relief Scope**. The Government again raises the irrelevant matter of the *scope* of requested Just like with standing, this is not a basis to dismiss for failure state a claim. It is elementary that "an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type." Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1255. "Nor is the court limited by the demand for judgment if a deviation seems appropriate at any point after the interposition of the pleading." This "theory of the pleadings" argument rests on a "mentality has no place under federal practice." *Id.* § 1219. "[U]nder [Rule] 12(b)(6), if it appears from the complaint that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely are not appropriate." *Id.* "[T]he federal rules—and the decisions construing them—evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage." *Id.*

The Government also continues to insist that I seek "release of records from all DEA adjudications" including "publicly revealing information bearing on privacy and law enforcement equities." Reply 22. This is improper "theory of the pleadings" argument, and in any event, wrong. I pleaded a right-of-access claim, and I seek access to adjudicatory records *commensurate with the scope and limitations to that qualified right*. This is inherent to pleading a right-of-access claim, which allows, for example, sealing or withholding records bearing on those equities.

## Conclusion

The Court should deny the Government's motion and grant my cross-motion.

---

[4] Reinforcing the point, in the one case the Government cites, *N. Jersey Media Grp., Inc. v. Ashcroft*, 308 F.3d 198, 217 (3d Cir. 2002), where "the Government presented substantial evidence that open deportation hearings would threaten national security," which the court considered. *See, e.g.*, *id.* at 217-19 & nn. 13, 14. But here, the Government has put on *no* evidence to substantiate its points.

Dated: December 11, 2023          Respectfully submitted,

         */s/ Matthew C. Zorn*
         Matthew C. Zorn
         YETTER COLEMAN LLP
         mzorn@yettercoleman.com
         811 Main Street, Suite 4100
         Houston, TX 77002
         T: (713) 632-8000
         F: (713) 632-8002

         PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

         */s/ Matthew C. Zorn*
         Matthew C. Zorn