United States District Court
Southern District of Texas

**ENTERED**

May 21, 2024

Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Matthew C. Zorn, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-22-2396 |
| | § | |
| U.S. Department of Justice, et al., | § | |
| *Defendants.* | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court are Defendants' Motion to Dismiss in Part, ECF No. 83, and Plaintiff's Cross-Motion for Summary Judgment on whether the DEA is an Agency under 5 U.S.C. §§ 552(f) and (j), ECF No. 86. This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 59. The court recommends that Defendants' motion be **GRANTED,** and that Plaintiff's motion be **DENIED** as moot.

## *1. Background[1]*

Plaintiff Matthew Zorn is a lawyer who represents clients in matters before the Drug Enforcement Administration (DEA).[2] 4th Am. Compl. ¶¶ 9, 45, ECF No. 82. He also "regularly writes stories and news pieces on drug policy history and current

---

[1] Zorn executed two declarations, one dated July 26, 2023, ECF No. 65-1, and one dated August 18, 2023, ECF No. 71-1. Defendants filed a motion to strike the August 18, 2023 declaration, which Zorn had filed in connection with supplemental briefing on standing. ECF No. 73. The court denied Defendants' motion as moot. ECF No. 81. Zorn's Fourth Amended Complaint attaches and incorporates by reference both the July 2023 and August 2023 declarations and the facts asserted therein. 4th Am. Compl. ¶ 117, ECF No. 82. Defendants have not re-urged their motion to strike the August 18, 2023 declaration. The court relies on Zorn's August 2023 declaration only to the extent that his sworn statements clarify his arguments on standing.

[2] The DEA is within the U.S. Department of Justice (DOJ). *See* ECF No. 83 at 24; ECF No. 86 at 34.

events." *Id.* Zorn alleges that he frequently relies on the Freedom of Information Act (FOIA) for disclosure of information and has submitted numerous requests to the DEA, including requests for documents in the possession of the Chief FOIA Officer regarding various policies and practices. *See id.* ¶¶ 45–48, 56–57; 118–120.

Zorn alleges that the DEA has automatically categorized his requests as raising "unusual circumstances."[3] 4th Am. Compl. ¶¶ 46, ECF No. 82; *see also id.* ¶¶ 51, 56. The DEA informed Zorn that "it was 'DEA policy' to mark ***all*** incoming FOIA requests that required contacting any office within DEA other than the FOIA office as raising 'unusual circumstances.'" *Id.* ¶ 51 (emphasis in original).  In addition to the DEA's procedures for processing FOIA requests, Zorn complains that the DEA's FOIA Officer does not meet statutory requirements and that, among other things, the DEA's redaction policy, its failure to make materials publicly available in electronic format, and its secreting records of ALJ adjudications violate FOIA. *See id.* ¶¶ 60–116.

Zorn concedes that a few of his FOIA requests were given expedited treatment, that he has received redacted copies of documents, and that, since the filing of this lawsuit, the DEA has resolved some of his requests or notified him that no responsive records existed. 4th Am. Compl. ¶¶ 46 n.12, 52, ECF No. 82. In his Fourth Amended Complaint, Zorn does not allege that any request for existing documents has been explicitly denied but, more generally, that he "has been repeatedly denied access to records and proceedings due to unlawful and unconstitutional policies and practices under FOIA and the First Amendment."[4]

---

[3] An agency determination that unusual circumstances apply extends the agency's statutory response time. *See* 5 U.S.C. § 552(a)(4)(A)(viii)(II)(aa).

[4] For example, Zorn alleges that "he has been denied records that would exist in the possession, custody, or control of a Chief FOIA Officer." 4th Am. Compl., ¶ 149, ECF No. 82.

*Id.* ¶ 9. Zorn also alleges that, since the filing of his Third Amended Complaint, the DEA has "lawlessly closed requests that would shed light on how DEA's FOIA Office is processing his pending requests." *Id.* ¶ 121 (quoting a DEA notice to Zorn stating that the FOIA office was administratively closing a request for "processing notes" related to a prior request for information filed by Zorn because the FOIA office was in the midst of processing the prior FOIA request and stating that Zorn could refile the request after the FOIA office completed the initial request). *Id.*

Zorn filed this lawsuit on July 19, 2022, raising one claim for unlawful policy and pattern or practice under FOIA and seeking declaratory and injunctive relief to correct what he alleges are the DEA's unlawful policies and practices. *See* ECF No. 1. Zorn has since amended his complaint four times. *See* ECF Nos. 7, 21, 61, 82. As Zorn has amended his complaint, he has added and subtracted various claims and various requests for declaratory and injunctive relief. *See* ECF Nos. 1, 7, 21, 61, 82. The only claim common to the original complaint and all its amendments is a claim under FOIA challenging Defendants' application of the "unusual circumstances" policy.

The Fourth Amended Complaint, Zorn's live pleading, raises six claims:

1. a claim under FOIA, 5 U.S.C. § 552(a)(6)(B)(iii)(I), for unlawful policy, pattern, practice, or procedure in the DEA's application of the "unusual circumstances" policy;

2. a claim under the Administrative Procedures Act, 5 U.S.C. § 706(2), for violation of FOIA in its policy, pattern, and practice of the "unusual circumstances" policy;

3. a claim under FOIA, 5 U.S.C. § 552(j)(1), for appointing a Chief FOIA Officer who does not meet statutory requirements;

4. a claim under the Appointments Clause, U.S. Const. art. 2, § 2, cl. 2, for appointing a Chief FOIA Officer who is not an inferior Officer of the United States;

5. a claim under the APA, 5 U.S.C. § 706(1), for violation of FOIA by appointing a Chief FOIA Officer who does not meet statutory requirements;

6. a claim under the First Amendment, U.S. Const. amend. I, for violating Zorn's right to timely access to records of administrative proceedings and notice of the existence of adjudicatory proceedings.

4th Am. Compl. ¶¶ 126–69, ECF No. 82. Zorn requests declaratory and injunctive relief:

- "[o]rder Defendants to comply with FOIA;"
- declare unlawful and enjoin the "unusual circumstances" policy;
- order the DEA to make reasonably accessible in a timely manner its adjudicatory records from administrative proceedings;
- order the DEA to make public the existence of adjudications;
- declare that Defendants violated 5 U.S.C. § 552(j);
- declare that the DEA's processing of FOIA requests is "unlawful" and must be "adjudicated or supervised by an inferior Officer of the United States[]" and that the "DEA's processing of FOIA requests is unlawful;"
- order Defendant Merrick Garland or Defendant Anne Milgram to designate a "lawful" Chief FOIA Officer for the DEA;

- "[o]rder Defendants to implement a corrective action plan to prevent and correct the FOIA violations and abuses" that Zorn alleges.

*Id.* at 42.

In Defendants' motion to dismiss the Fourth Amended Complaint, they seek dismissal of the third, fourth, and fifth claims alleging that the DEA does not have a properly appointed Chief FOIA Officer and the sixth claim alleging that the DEA has denied Zorn's First Amendment right of timely access to records and to notice of adjudicatory proceedings. *See* ECF No. 83. Defendants do not move to dismiss Zorn's two claims focused on the DEA's "unusual circumstances" policy. *See id.* In Zorn's response, he twice (in the motion title and the last sentence) mentions that he seeks a summary judgment ruling that the DEA is an agency under FOIA, but, although he discusses the agency issue, he dedicates no portion of his brief to a discussion of his entitlement to summary judgment.[5] *See* ECF No. 86 at 1, 52.[6]

Defendants' overarching challenge in the motion to dismiss is that Zorn lacks standing to bring the Chief FOIA Officer and First Amendment claims. Because "Article III jurisdiction is always first[,]" the court begins there. *E.T. v. Paxton*, 41 F.4th 709, 714 (5th Cir. 2022) (quoting *Shrimpers & Fishermen of RGV v. Tex. Comm'n on Env't Quality*, 968 F.3d 419, 426 (5th Cir. 2020)).

---

[5] Zorn filed a motion for summary judgment on the agency issue in February 2023. *See* ECF No. 28. In October 2023, after granting Zorn's motion for leave to file a fourth amended complaint, the court denied as moot Zorn's motion for summary judgment. ECF No. 81.

[6] The agency issue is therefore not properly before the court and summary judgment should be denied for that reason. As will be discussed in Part 2.A., below, the agency issue is also rendered moot by other rulings herein.

## 2. *Subject Matter Jurisdiction—Standing*

"Federal courts must determine that they have jurisdiction before proceeding to the merits" of a case. *Lance v. Coffman*, 549 U.S. 437, 439 (2007). Federal courts' subject matter jurisdiction extends "only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting U.S. Const. art. III, § 2). "The law of Article III standing . . . serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

Constitutional "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy" and is an "essential component[] of federal subject matter jurisdiction [that] can be raised at any time by either party or the court." *Spokeo, Inc.*, 578 U.S. at 338; *McCall v. Dretke*, 390 F.3d 358, 361 (5th Cir. 2004). The elements of constitutional standing are that the plaintiff: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc.*, 578 U.S. at 338; *see also E.T.*, 41 F.4th at 714 (referring to these elements as "the familiar tripartite test for Article III standing").

To have an injury in fact, the plaintiff must have suffered "an invasion of a legally protected interest that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *E.T.*, 41 F.4th at 714 (quoting *Spokeo, Inc.*, 578 U.S. at 339). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist[, and it must be] . . . 'real[]' and not 'abstract.'" *Spokeo, Inc.*, 578 U.S. at 340. An injury is particularized when it "affect[s] the plaintiff in a personal and individual way." *Id.* at 339. The actual or imminent requirement is met by "certainly impending harm or substantial risk of harm." *E.T.*, 41 F.4th

at 715 (quoting *Shrimpers*, 968 F.3d at 424). The court "must consider plaintiffs' *actual injury*—not the labels plaintiffs put on that injury." *Texas v. U.S. Dep't of Homeland Sec.*, No. 6:23-CV-00007, 2024 WL 1021068, at *15 (S.D. Tex. Mar. 8, 2024) (quoting *E.T.*, 41 F.4th at 717). "This is because 'the law of standing is fraught with the danger that plaintiffs will engage in "artful pleading" to make an end-run around the strictures of Article III.'" *Id.* (quoting *E.T.*, 41 F.4th at 717). At the pleading stage, however, "general factual allegations of injury resulting from the defendant's conduct may suffice" because, on a motion to dismiss, the court presumes "that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

For an injury to be fairly traceable to the defendant's conduct, there must be "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *E.T.*, 41 F.4th at 718 (quoting *Lujan*, 504 U.S. at 560). The redressability element is met if the injury is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38, 43 (1976)).

Federal courts do not have jurisdiction to hear a "generally available grievance about government[.]" *Lujan*, 504 U.S. at 573–74. A plaintiff who raises a "generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws[] and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Id.*; *see also Viera v. Hudman*, No. 23-40325, 2024 WL 111353, at *1 (5th Cir. Jan. 10 , 2024).

Defendants' motion to dismiss articulates a facial challenge to Zorn's assertion of jurisdiction, arguing that Zorn "has failed to allege any sufficient basis for standing[.]" ECF No. 83 at 15; *see also Satanic Temple Inc. v. Young*, Civil Action No. 4:21-cv-00387, ___ F. Supp. 3d ___, 2023 WL 4317185, at *3 (July 3, 2023) (emphasis omitted) ("In a facial challenge, the defendant argues simply that the allegations in the complaint are insufficient to support jurisdiction."). To invoke standing at the pleading stage, Zorn must plausibly allege facts for each of his claims showing that he meets all three of the standing elements: injury in fact; traceability; and redressability. *See Spokeo, Inc.*, 578 U.S. at 338; *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.") (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)).

### A. Chief FOIA Officer Claims

The court addresses first Zorn's standing to bring the Chief FOIA Officer claims. Zorn alleges that he has been injured because he has been denied timely access to the requested DEA records for use in his legal and journalistic professional endeavors. 4th Am. Compl. ¶ 9, ECF No. 82; *see also id.* ¶¶ 143–59. Zorn argues that various policies and procedures employed by the DEA in processing FOIA claims have delayed or denied his access to notice and to records of administrative proceedings. *See* 4th Am. Compl. ¶¶ 6, 86–125, 143–159, ECF No. 82. Zorn attributes these alleged shortcomings to the DEA's designation of a Chief FOIA Officer who does not meet the statutory prerequisites for the position. *Id.* ¶¶ 35–95, 120, ECF No. 82. FOIA requires that "(e)ach agency . . . designate a Chief FOIA Officer who shall be a senior official of such agency (at the Assistant Secretary or equivalent level)." 5 U.S.C. § 552(j)(1). The

court assumes for purposes of this discussion only that the DEA does not have a Chief FOIA Officer who complies with 5 U.S.C. § 552(j)(1). Zorn alleges that the requirement of a "sufficiently senior" Chief FOIA Officer at each agency injects "a modicum of democratic accountability into an otherwise detached burea[u]cratic system to ensure that agencies would take their FOIA issues and responsibilities seriously and not relegate them to the backburner of the federal administration." 4th Am. Compl. ¶ 88, ECF No. 82. He also alleges that multiple of his FOIA record requests "would necessarily be in possession, custody, and control of DEA's Chief FOIA Officer—if it had one." *Id.* ¶ 119.

Zorn's allegations that the DEA improperly delayed or denied access to records Zorn requested in accordance with FOIA procedures are sufficient at this stage of the proceeding to show an actual injury particularized to him. Moreover, his allegation that he will continue to submit FOIA requests that will be subject to the same policies and procedures is also sufficient to show an imminent injury of future delays and denials.

Traceability and redressability, on the other hand, present hurdles that Zorn does not clear. To satisfy the traceability element, Zorn must show a causal connection between the DEA's failure to appoint a statutorily compliant Chief FOIA Officer and the denials or delays of the DEA's responses to Zorn's FOIA requests. *Cf. E.T.*, 41 F.4th at 718 (requiring a causal connection between the challenged action of the defendant and the alleged injury). Zorn fails to do so.

Even assuming that the DEA should have but does not have a Chief FOIA Officer meeting the 5 U.S.C. § 552(j) requirements, Zorn's complaint about that failure is a "generally available grievance about government[,]" on which Zorn cannot base standing. *Lujan*, 504 U.S. at 573–74. To avoid this result and satisfy the traceability element, Zorn must plead facts that

causally link the DEA's improperly designated Chief FOIA Officer to the denial or delay of his FOIA requests. Zorn fails to plead sufficient facts to show that causal connection between the DEA's failure to designate a Chief FOIA Officer and the establishment of the policies and procedures to which Zorn objects, much less to his resulting injury. Rather, Zorn's theory of traceability is based on speculation that the absence of a properly qualified Chief FOIA Officer for the DEA means that no one is fulfilling the Chief FOIA Officer duties. *See* 4th Am. Compl. ¶ 149, ECF No. 82 ("Plaintiff is aggrieved by the absence of lawfully appointed Chief FOIA Officers, whose responsibilities [under] 5 U.S.C. § 552(j)(2) impact regular requestors of records.") Zorn does not, however, allege facts showing any tie between the absence of a properly designated Chief FOIA Officer and the policies about which he complains. There are no facts to suggest that a properly designated Chief FOIA Officer would not follow the very same policies about which Zorn complains. The court notes that the Defendants in this case include the Attorney General, the Chief FOIA Officer of the Department of Justice, and the Administrator of the DEA, all of whom are currently defending the very policies that Zorn complains about. It is pure speculation to say that another person appointed to the Chief FOIA Officer position would not also defend the policies about which Zorn complains. The harm that Zorn alleges is not traceable to DEA's alleged failure to appoint a proper Chief FOIA Officer.[7]

The Fifth Circuit's recent decision, *Consumers' Research v. Consumer Product Safety Commission*, 91 F.4th 342, 347 (5th Cir. 2024), does not help Zorn. *Cf.* ECF No. 89 (arguing that

---

[7] Those policies about which Zorn complains will be addressed later in the case in connection with "unusual circumstances" claims that are not at issue here.

the case confirms that Defendants' standing arguments lack merit). The plaintiff in that case argued that the statute creating the Consumer Product Safety Commission, which allowed removal of a member of the Commission only for cause, violated the separation-of-powers doctrine of Article II of the Constitution. *Consumers' Research*, 91 F.4th at 346-47. The plaintiffs sought to have a recently enacted rule set aside as having been promulgated by an unconstitutionally structured agency, a declaration that the Commission was unconstitutionally structured, and an order setting aside the denial of the plaintiff's FOIA requests. *Id.* at 347. Addressing standing, the Fifth Circuit first noted that "'being compelled to participate in an invalid administrative process' can constitute injury in fact." *Id.* at 349 (citing *Texas v. United States*, 497 F.3d 491, 496–97 (5th Cir. 2007)). The court went on to explain that the separation-of-powers violation *plus* the plaintiff's concrete interest in the information it was seeking from the Commission combined to satisfy the "injury" element of the standing analysis. *Id.* at 350. Under the unique circumstances of the case, the court further held that traceability and redressability flow directly from a showing of a concrete injury in fact. That is because a "'litigant challenging governmental action as void on the basis of the separation of powers is not required to prove that the Government's course of conduct would have been different in a 'counterfactual world' in which the government had acted with constitutional authority.'" *Id.* at 351 (quoting *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S.Ct. 2183, 2196 (2020)). Under *Seila Law*, it is sufficient to show injury at the hands of an executive act that exceeds the official's authority. *Id.* Redressability also flows directly from the finding of injury in the specific context of a violation of separation-of-powers because a declaration that the Commission's structure violates the

Constitution directly redressed the separation-of-powers problem that the plaintiff alleged. *Id.*

The facts and posture of this case are distinguishable from *Consumers' Research*. Zorn is not complaining about an unconstitutional rule or regulation with which he is being forced to comply. Instead, he is complaining that the DEA is not following otherwise lawful rules. Accordingly, Zorn must tie DEA's failure to follow the rules to his injury. He cannot do so. As discussed, it is speculative to say that the DEA would reverse its "unusual circumstances" policy were it to appoint a statutorily qualified Chief FOIA Officer.

Zorn also alleges that a statutorily qualified Chief FOIA Officer necessarily would be in "possession, custody, and control" of certain records that would be responsive to multiple of Zorn's FOIA requests. *See* 4th Am. Compl. ¶ 119, ECF No. 82. In support, Zorn points to a DEA response to his request for "[e]mails between DEA's Chief FOIA Officer and Administrator Anne Milgram recommending any adjustments to agency practices, policies, personnel or funding to improve FOIA functioning from January 1, 2023 to August 15, 2023." ECF No. 82 at 89; *see also* 4th Am. Compl. ¶ 120, ECF No. 82. The DEA responded, "Please be advised that the DEA does not have a Chief FOIA Officer as mentioned in 5 U.S.C. § 552(j). We do not have any responsive records pertaining to the subject of your request." ECF No. 82 at 89. This response does not "make clear" that the DEA's failure to produce requested records is connected to the designation of a Chief FOIA Officer. Zorn asked for the emails *of the DEA's "Chief FOIA Officer*[.]" *Id.* The DEA could not fulfill the request because it does not have a Chief FOIA Officer. In other words, the documents requested do not exist. It is mere speculation that any of the documents Zorn requested would have existed if the DEA had a properly designated Chief FOIA Officer.

Zorn points to the Fifth Circuit's recent decision, *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461 (5th Cir. 2024) in support of his standing in this case. *See* ECF No. 89 at 1 (arguing that the case confirms that Defendants' standing arguments "lack merit"). In that case, the Department of Energy issued a rule reimposing stricter energy and water restrictions on consumer washing machines. Louisiana argued several standing theories, including "that the 'lost opportunity to purchase' products precluded by regulation constitutes an injury in fact." 90 F.4th at 467. The Fifth Circuit found that Louisiana had established that it suffered the injury of "lost . . . opportunity to purchase faster and more efficacious appliances[,]" that it would replace its appliances with more efficacious appliances given the opportunity, and that the court's ability to review the lawfulness of the Department of Energy's rule satisfied redressability. *Id.* at 468–69. The court finds nothing in that case to aid Zorn's cause here.

To satisfy the redressability element in this case, Zorn must plead facts showing that a properly designated Chief FOIA Officer "will likely react in predictable ways," such that appointing a proper Chief FOIA Officer would result in the change in policy that Zorn seeks. *See E.T.*, 41 F.4th at 720 (quoting *California v. Texas*, 593 U.S. 659, 675 (2021)). He may not rely on speculation about the choices that a proper Chief FOIA Officer might make. *See id.*

Zorn seeks relief in the form of a judgment declaring that the DOJ and the DEA have violated and willfully continue to violate 5 U.S.C. §552(j)(1) and have violated the Appointments Clause and an order directing the DOJ and the DEA to comply with 5 U.S.C. §552(j)(1). 4th Am. Compl. ¶¶ 150, 155, 159, ECF No. 82. Zorn's alleged injury is the denial and delay of responses to his FOIA requests, but his requested relief is to declare that the DOJ and DEA have violated the statute that requires

agencies to designate a Chief FOIA Officer. Zorn's requested relief is not *likely* to redress the denials or delays of his FOIA requests or to redress the alleged flaws in DEA's FOIA review process about which Zorn complains. The connection between his injury and his requested relief is not just attenuated; it is nonexistent.[8]

Because Zorn has failed to allege sufficient facts to establish traceability and redressability on his Chief FOIA Officer claims, he has not shown that he has standing to bring those claims. For this reason, the Chief FOIA Officer claims should be dismissed. This conclusion renders moot Defendants' motion to dismiss the Chief FOIA Officer claims for failure to state a claim and Zorn's cross-motion for summary judgment on whether the DEA is an agency under 5 U.S.C. §§ 552(f) and (j).

### B. First Amendment Claim

Zorn alleges that, as a journalist, he has been injured by "the DEA's actual and constructive denial of access to its adjudicatory proceedings and records." 4th Am. Compl. ¶ 168, ECF No. 82; *see also id.* ¶¶ 9, 169–69. Zorn argues that "[t]he First Amendment protects the public against the government's 'arbitrary interference with access to important information.'" *Id.* ¶ 163. Zorn alleges that "DEA administrative proceedings are similar to criminal proceedings, operate under procedures modeled on those of the courts, and impose official and practical consequences upon members of society[]" and that the "DEA's recordkeeping practices and FOIA administration effectively

---

[8] Again, it is not at all clear that a properly appointed Chief FOIA Officer would not just continue the status quo. The propriety of the policies that are being implemented will be addressed later in connection with the first two claims relating to the "unusual circumstances" policy.

make the agency's proceedings non-public and have denied the public timely access to important information." *Id.* ¶¶ 165–66.

Zorn's factual allegations are sufficient to plead an actual injury and an imminent injury regarding the Zorn's properly submitted FOIA requests for the same reasons discussed in section 2.A.[9] Zorn's claim for right-of-access to notice of the DEA's adjudicatory proceedings also alleges an actual injury—the denial of access to information. *See, e.g., United States ex re Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 577 (5th Cir. 2023) (citing *United States v. Aldawsari*, 683 F.3d 660, 665 (5th Cir. 2012) (finding that a journalist had standing to challenge a gag order)) ("Alleged violations of the public right to access judicial records and proceedings and to gather news are cognizable injuries-in-fact sufficient to establish standing.").

Defendants argue that Zorn must identify the "particular information to which he claims to be entitled." ECF No. 83. Zorn alleges generally that he seeks records relevant to his efforts to "monitor[], review[], and distill[] cases and agency actions involving [the] DEA for clients and the public." 4th Am. Compl. ¶¶ 9, 26–30 ECF No. 82. For example, he alleges that he filed a FOIA request for records related to the DEA's Religious Freedom Restoration Act (RFRA) that had been outstanding for more than a year at the time of his filing the Fourth Amended Complaint. Zorn alleges that he intends to write about the DEA's RFRA rules in his newsletter and that they are relevant to legal work he is performing. The court finds that Zorn has articulated a particularized need for access to records of the DEA adjudicatory proceedings for use in his journalistic and legal endeavors. At the

---

[9] Defendants agree that Zorn has standing to pursue FOIA claims based on the FOIA requests he has submitted. ECF No. 83 at 21.

pleading stage, Zorn's allegations are sufficient to meet the injury-in-fact element of standing on his right-of-access claim.

Defendants do not challenge Zorn's ability to meet the traceability element but argue that the remedy he seeks is too broad. "Zorn seeks a declaration that [the] DEA has violated the First Amendment and an injunction ordering [the] DEA to make adjudicatory records from DEA proceedings timely available or accessible to the public, for example, through an electronic docketing system or any other appropriate means." 4th Am. Compl. ¶ 169, ECF No. 82. At this point, the court need only decide whether Zorn's injury is likely to be redressed by a favorable decision; the court need not fashion the appropriate remedy at this time. If the court were to find that the DEA violates the First Amendment right-to-access, a remedy requiring greater access to administrative records would redress Zorn's injury. At this point, that is enough for Zorn to meet the redressability element of standing.

### 3. *Failure to State a Claim*

Finding that Zorn has pleaded standing to bring the First Amendment claim, the court turns to Defendants' motion to dismiss that claim.

Federal Rule of Civil Procedure 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 580 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This plausibility standard "does not impose

a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Twombly*, 550 U.S. at 556.

Courts accept "all well-pleaded facts as true" and "view[] them in the light most favorable to the plaintiff." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 177 (5th Cir. 2018) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable[.]" *Id.* at 556.

Zorn alleges that he has a right to access the DEA's adjudicatory records based on the U.S. Supreme Court's holdings in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), and *Hannah v. Larche*, 363 U.S. 420 (1960). 4th Am. Compl. ¶ 163–64 & nn.77–78, ECF No. 82. In *Richmond Newspapers, Inc.*, the Supreme Court held that "the right to attend criminal trials is implicit in the guarantees of the First Amendment; without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and 'of the press could be eviscerated.'" 448 U.S. at 580 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)). In *Hannah*, the Supreme Court stated that, "when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process." 363 U.S. at 442 (discussing due process rights).

In their motion to dismiss, Defendants raise two arguments: (1) that the First Amendment does not provide a right of access to government information; and (2) that the line of cases on which Zorn relies limits First Amendment right-of-access "to criminal trials and certain criminal proceedings." ECF No. 83 at 33; *see also id.* at 32–36. The issue, for purposes of Defendants' motion to dismiss, is whether the right of access extends to the DEA's adjudicatory proceedings. Defendants argue that, under Fifth Circuit law, it does not.

As to Defendants' first argument, both the Supreme Court and the Fifth Circuit have stated, in no uncertain terms, that the First Amendment does not mandate a right of access to government information. *United States v. Brown*, 250 F.3d 907, 915 (5th Cir. 2001) (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) (alteration added) ("[N]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control.").

As to Defendants' second argument, the Supreme Court has stated, "The right to an open public trial is a shared right of the accused and the public, the common concern being the assurance of fairness." *Press-Enterprise Co. v. Super. Ct. of Cal. for the Cnty. of Riverside*, 478 U.S. 1, 7 (1986). The Supreme Court set out "two complementary considerations" in deciding a "First Amendment right of access to criminal proceedings." *Id.* at 8. The first is "whether the place and process have historically been open to the press and the general public." *Id.* The second is "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* These considerations have come to be known as the "experience and logic" test. *See, e.g., In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 175 (5th Cir. 2011). Over time, the test has been applied to

various aspects of criminal proceedings. *See, e.g., id.* at 175–77 (citing cases) (recognizing a right of access to other aspects of criminal prosecutions and applying the experience and logic test to sentencing hearings); *Tex. Tribune v. Caldwell Cnty*, No. 1:23-CV-910-RP, 2024 WL 420160, at *5–6 (W.D. Tex. Feb. 5, 2024) (applying the experience and logic test to bail determinations); *Sullo & Bobbitt, PLLC v. Abbott*, Civil Action No. 3:11-CV-1926-D, 2012 WL 2796794, at *11–12 (N.D. Tex. July 10, 2012), *aff'd in part sub nom Sullo & Bobbitt P.L.L.C. v. Abbott*, 536 F. App'x 473 (5th Cir. 2013) (finding that the experience and logic test applied to municipal court misdemeanor records and documents).

In 1989, the Fifth Circuit considered whether the First Amendment created a right of access to records in the hands of an administrative agency. *Calder v. Internal Rev. Serv.*, 890 F.2d 781, 783 (5th Cir. 1989). There, the plaintiff sought documents pertaining to the Internal Revenue Service's (IRS) investigations of Al Capone. *Id.* at 782. The plaintiff acknowledged before the court both that *Richmond Newspapers, Inc.*, and its progeny considered the scope of the right of access only in the context of criminal trials and other criminal proceedings and that the Supreme Court had not addressed the question of a right of access to administrative agency records. *Id.* at 783. The Fifth Circuit declined to extend the reasoning of *Richmond Newspapers, Inc.*, beyond criminal proceedings to other governmentally held information. *Id.*

Here, Zorn acknowledges that the Supreme Court has not decided whether the experience and logic test applies to administrative proceedings. *See* ECF No. 86 at 41. Zorn disagrees, however, that the Fifth Circuit's opinion in *Calder* should be understood to preclude applying the experience and logic test in this case, arguing that *Calder* only addressed the right to access the IRS investigatory records that were sought in

that case. *See id.* at 43. Be that as it may, other statements in *Calder* indicate that the Fifth Circuit's opinion is broader than that. *See Calder,* 890 F.2d 783. The Fifth Circuit quoted Justice O'Connor as indicating that she did not interpret *Richmond Newspapers, L.L.C.,* to reach beyond the context of criminal trials. *Id.* The Fifth Circuit further acknowledged that the Supreme Court had not applied the experience and logic test to any area other than criminal proceedings. *Id.* This court thus understands the Fifth Circuit's position to preclude the extension of the First Amendment right of access beyond criminal proceedings. [10]

Zorn cites other circuits that have applied the experience and logic test to administrative proceedings. *E.g.*, *Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002) (applying it to deportation proceedings); *N.Y. Civ. Liberties Union v. New York Transit Auth.*, 684 F.3d 286, 300 (2d Cir. 2012) (applying it to hearings conducted by a Transit Adjudication Bureau). In the absence of Supreme Court guidance and in light of the Fifth Circuit's strong suggestion that the First Amendment right of access is limited to criminal proceedings, the court concludes that Zorn may not pursue a First Amendment claim for access to the DEA's adjudicatory records. Defendants' motion to dismiss count six should be granted.

### 4. Denial of Leave to Amend

"Dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified." *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014)

---

[10] The court notes that *Calder* was decided after many other cases had extended the experience and logic test to contexts outside the realm of criminal proceedings. *See Detroit Free Press*, 303 F.3d at 695 (citing cases decided before 1989 that applied the test in non-criminal contexts). The Fifth Circuit could have followed these other circuits but chose not to.

(quoting *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)). But a party seeking leave to amend "must give the court at least some notice of what [the] amendments would be and how those amendments would cure the initial complaint's defects." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (citation omitted). The court also may deny leave to amend when amendment would be futile or when the party chooses to stand on the complaint and argues that it satisfies the pleading requirements. *See Khoury v. Thota*, No. 20-20578, 2021 WL 3919248, at *4 (5th Cir. 2021) (affirming the district court's denial of leave to amend when the plaintiff chose to stand on his complaint and argued that it satisfied the pleading requirements); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (discussing futility of amendment as justification for denying leave to amend).

Zorn filed this lawsuit on July 19, 2022, raising one claim for unlawful policy and pattern or practice under the Freedom of Information Act (FOIA) and seeking declaratory and injunctive relief to correct the DEA's unlawful policies and practices. *See* ECF No. 1. Zorn has since amended his complaint four times. *See* ECF Nos. 7, 21, 61, 82. As Zorn has amended his complaint, he has added and subtracted various claims and various requests for declaratory and injunctive relief. *See* ECF Nos. 1, 7, 21, 61, 82. In between amendments, Defendants have filed several motions to dismiss, which became moot by amendment before the court issued a ruling. *See* ECF Nos. 6–8, 22, 42, 81; Mar. 3, 2023 Minute Entry.

In total, Zorn has had five opportunities to plead this case, most in response to pending motions to dismiss. Zorn thus has known for a very long time what weaknesses Defendants have identified in his pleadings and the arguments they have raised in support of dismissal. In response to Defendants' most recent

motion to dismiss, Zorn did not move for leave to amend but rather stood on his Fourth Amended Complaint and fully argued that the Fourth Amended Complaint met the pleading requirements. Zorn has had sufficient opportunities to plead all relevant facts. To the extent that this Memorandum and Recommendation discusses the legal insufficiency of the Fourth Amended Complaint, no amount of amending has or can overcome those shortcomings. Granting leave to amend, therefore would be futile, and the court declines to do so.

### 5. Conclusion

The court recommends that Defendants' motion to dismiss be **GRANTED** and that Zorn's cross-motion for summary judgment be **DENIED** as moot.

The parties have fourteen days from service of this memorandum and recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on May  21 , 2024.

_____
Peter Bray
United States Magistrate Judge