UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW C. ZORN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-02396 |
| | § | |
| U.S. DEPARTMENT OF JUSTICE, ET AL. | § | |
| | § | |
| | § | |
| Defendants. | § | |

**OBJECTIONS TO MEMORANDUM AND RECOMMENDATION** (Dkt. 100)

Dispositive motions are reviewed de novo. Fed. R. Civ. P. 72(b). That standard is appropriate here because the Memorandum leaves some of my points and arguments unaddressed.

1. **The Memorandum Erroneously Concludes That the First Amendment's Right of Access Can Never Apply Outside of Criminal Trials.**

The Memorandum correctly concludes I have standing to raise a First Amendment access-to-records claim to DEA's adjudicatory records. Dkt. 100 ("Mem.") at 14-16. But it errs in concluding that I fail to state a claim. *Id.* at 16-20.

The Memorandum's conclusion hinges on misinterpreting *Calder v. IRS*, 890 F.2d 781, 783 (5th Cir. 1989). In *Calder*, the plaintiff sought documents pertaining to IRS investigations of Al Capone. *Id.* at 782. Presented with that issue, the Fifth Circuit declined to extend the reasoning of *Richmond Newspapers, Inc.* to the requested IRS records.

As I noted in my briefing and as the Memorandum acknowledges, since *Calder*, other circuits have arrived at different conclusions specifically as to records in administrative proceedings. Mem. 20. Moreover, the Sixth Circuit in *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 699 (6th Cir. 2002) specifically distinguished *Calder*, seeing its holding as support no First

Amendment right to "government-held investigatory information," which is different from "information relating to a governmental adjudicative process."

The Memorandum agrees that *Calder* "only addressed the right to access the IRS investigatory records." Mem. 19. But it then reads past the holding. It contends, "other statements in *Calder* indicate that the Fifth Circuit's opinion is broader than that." Mem. 20. It notes how the Fifth Circuit in *Calder* quoted a Justice O'Connor concurrence (joined by no other justices) where she did not interpret *Richmond Newspapers*'s holding to reach beyond the criminal context. Mem. 20 (citing *Calder*, 830 F.2d at 783). Based on this, the Memorandum concludes that the *Free Enterprise* experience/logic test *per se* cannot apply beyond criminal proceedings.

Justice O'Connor's concurrence as to *Richmond Newspapers'* precise holding is correct. But it hardly explains how most jurists have viewed *Richmond Newspapers* and its progeny. Indeed, while the *holding* of *Richmond Newspaper*'s only applied to criminal trials, the full slate of opinions shows more. Start with *Richmond Newspapers* itself. The plurality opinion notes that "that historically both civil and criminal trials have been presumptively open*." Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980). Justice Stevens, for himself, remarked that "the First Amendment protects the public and the press from abridgment of their rights of access to information about the operation of their government, including the Judicial Branch." *Id.* at 583-84. Justice Brennan, with Justice Marshall, noted "the special nature of a claim of First Amendment right to gather information," that the First Amendment "has a structural role to play in securing and fostering our republican system of self-government," and the role of the First Amendment in civil litigation. *Id.* at 584-98. Justice Stewart, concurring, stated the proposition directly: "Whatever the ultimate answer to that question may be with respect to pretrial

suppression hearings in criminal cases, the First and Fourteenth Amendments clearly give the press and the public a right of access to trials themselves, civil as well as criminal." *Id.* at 598-601.

These observations about how the First Amendment protects commenting on government affairs and operations are hardly new. They are timeless. In *Mills v. Alabama*, 384 U.S. 214, 218 (1966), for example, a unanimous Court opined that "[w]hatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs." "[S]peech concerning public affairs … is the essence of self-government," *Garrison v. Louisiana*, 379 U.S. 64, 75 (1964), after all. The cancerous growth of the administrative state ought not to be grounds to forget these ideals.

Neither does the First Amendment's text provide such grounds for distinguishing criminal from other governmental proceedings. Unlike the Sixth Amendment's text, the text of the First makes no mention of criminal trials. It prohibits "abridging the freedom of speech, or of the press" and protects the right to "petition the Government for a redress of grievances." If a right to access judicial or adjudicatory records inheres in these core freedoms, as the Supreme Court has concluded, a textual approach to the issue could not support a conclusion that a right-of-access is somehow inherent in the context of criminal trials but in not any other.  Rather, a textual approach would suggest the same qualified right of right-of-access applies to all government proceedings. (Of course, the standard used to assess a right-of-access may lead to different conclusions in a criminal versus civil context.)

Not surprisingly, appeals courts have rejected the position the Memorandum embraces, *i.e.*, that the experience/logic test of *Richmond Newspapers* and its progeny can only ever find application in the context of criminal trials. *See, e.g.*, *Doe v. Pub. Citizen*, 749 F.3d 246, 269 (4th

Cir. 2014); *NYCLU v. N.Y. City Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001); *In re Reps. Comm. for Freedom of the Press*, 773 F.2d 1325, 1331 (D.C. Cir. 1985); *In re Continental Ill. Secs. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984); *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 661 (8th Cir. 1983). The mainstream view is to use the experience/logic test, as the D.C. Circuit stated in *Freedom of the Press*, for example:

> Since the Supreme Court has not spoken to the existence of a First Amendment right to court records of civil proceedings, we must resolve the question on the basis of the analysis which the Court has brought to bear in this general field. In deciding whether the public has a First Amendment right of access to judicial proceedings, the Court has made two inquiries: (1) whether the proceeding has historically been open, and (2) whether the right of access plays an essential role in the proper functioning of the judicial process and the government as a whole.

The *Doe v. Sante Fe Indep. Sch. Dist.*, 933 F. Supp. 647, 649-51 (S.D. Tex. 1996) court, after reviewing Fifth Circuit law, also concluded that *Richmond Newspapers* found application outside of the criminal context. The Memorandum therefore recommends dismissal based on a reading of case law that is at odds with a broader view of Supreme Court statements, decisions from the vast majority, and precedent from this District.

Finally, as I noted in my briefing, the implications of embracing a notion that there is never any First Amendment access records to administrative proceedings is dangerous. Can a law enforcement agency really remove violations of a criminal statute from public view to its own administrative courts and then make those proceedings statements? In adjudications, where property is at stake, party lawyers can't access agency law and precedents but the agency lawyers can? Sounds like a Star Chamber to me, especially with the tumorous overgrowth of today's

administrative state.[1] *See* Dkt. 86 at 31 (describing DEA adjudications as Constitutional trash and citing pleading authored by former DOJ Deputy Attorney General arguing that DEA proceedings violate due process because the accused can't obtain exculpatory information).

In sum, whatever value a dicta citation to a single-Justice concurrence may have, considering (1) what the Supreme Court has stated time and time again with clarity (2) the overwhelming weight of authority to the contrary, and (3) the text of the First Amendment itself the conclusion ought to be that the First Amendment's qualified right-of-access applies to any governmental proceeding related to the free discussion of affairs. That is especially so the public's business today being conducted paper and shuttled away to the malignant administrative state. Despite *Calder*'s holding related to IRS investigatory records—a matter that has little to do with a free discussion of government affairs—there is no reason to believe the Fifth Circuit, squarely presented with a claim to adjudicatory records core to how an agency conducts public business— would see it differently from other Circuits. [2]

## 2. <u>The Memorandum Errs by Denying My Motion for Summary Judgment as Moot</u>

The Memorandum erroneously recommends denying summary judgment motion as moot. As I explained in the first paragraph my sur-reply, it is not moot because whether DEA is an

---

[1]     Allowing DEA adjudications to take place in secret has real consequences. As I note in my papers, DEA's enforcement (or lack of enforcement) against the opioid industry has been de facto concealed from the public. My interest in this claim and legal question is not academic; it relates to my work and particularly, a desire and need to understand more about these proceedings as they relate to the opioid epidemic, including with advocates of alternative treatments to opioids.

[2]     I sought a preliminary injunction on my First Amendment claim back in July 2023. Dkt. 65. The Court denied it in February 2024 based on an "interest in conserving judicial and party resources" and ordered an expedited trial on the merits. Dkt. 91 at 2. Relying on that representation, I did not appeal, and therefore, forfeited a right to an immediate appeal to the Fifth Circuit on a matter I consider to be causing irreparable harm and of significant public interest. The Court did not render a decision on the pending motions, however, until three months later and will no longer hold an expedited trial. If the Court rules against me, I ask it enter final judgment under Rule 54(b) so I can take an immediate appeal.

"agency" remains relevant to whether it is a proper defendant in a FOIA case. Dkt. 88 at 2. Notwithstanding my explanation, the Memorandum appears to arrive at moot for two reasons.

*First*, it claims the issue is not properly before the Court. It states that although I discuss the agency issue, I "dedicate[ ] no portion of [my] brief to a discussion of his entitlement to summary judgment." Mem. 5. The Memorandum is difficult to comprehend on this point.

Whether DEA is an agency under Section 552(f) is a matter of statutory construction for the Court to decide. If I'm right, I'm entitled to summary judgment. That's basic as there's no dispute of fact with statutory construction. The Memorandum also concedes that I did, in fact, move for summary judgment conspicuously. Mem. 5. My conclusion concisely states entitlement to summary judgment. Dkt. 86 at 52. Hence, my filing states: "There is *no genuine dispute of material fact* that DEA is an "agency" under all of FOIA. This is purely a matter of statutory construction that can be resolved on the papers." Dkt. 86 at 27. Rule 56 does not require more.

Beyond this, it is unclear what the Memorandum means by "dedicat[ing]" a portion of a brief to a "discussion of [my] entitlement summary judgment." If we're talking about substance briefing, the Memorandum is clearly wrong. I spent many, many pages explaining why I am entitled to summary judgment on the "agency" issue. Dkt. 86 at 27-35.

*Second*, and alternatively, the Memorandum asserts that "the agency issue is also rendered moot by other rulings herein." Mem. 5 at n.6. This point is not explained further. And, as I explained in my sur-reply, it is wrong. Because I have a live PPP claim against DEA, the issue of whether DEA is an "agency" under FOIA—and thus, a proper defendant—remains.

Because the issue is not moot and I showed in my papers why I am entitled to judgment as a matter of law on the issue of whether DEA is an "agency" under FOIA, the should examine the issue in the first instance and then enter summary judgment on the issue in my favor.

### 3. __The Memorandum Does Not Address Arguments on Chief FOIA Officer Standing__

The Memorandum concludes that I lack standing to raise a Chief FOIA Officer claim but does not fully address my arguments. The Court should review the underlying briefing, reject the recommendation, and deny the motion to dismiss for two reasons.

*First*, the Memorandum concedes that the agency could not fulfill my FOIA request for "[e]mails between DEA's Chief FOIA Officer and Administrator Anne Milgram recommending any adjustments to agency practices, policies, personnel or funding to improve FOIA functioning from January 1, 2023 to August 15, 2023" precisely because DEA does not have a Chief FOIA Officer—my exact claim in this case. That concession ought to establish traceability and redressability, and end the inquiry.

The Memorandum instead concludes that "[i]t is mere speculation that any of the documents Zorn requested would have existed if the DEA had a properly designated Chief FOIA Officer." Mem. at 12. But the Memorandum errs because it omits addressing the lynchpin of my argument: FOIA ***requires*** that the Chief FOIA Officer have these records. *See* Dkt. 86 at 14-16. FOIA requires a Chief FOIA Officer of each agency to "recommend to the head of the agency such adjustments to agency practices, policies, personnel, and funding as may be necessary to improve its implementation of this section" and "review and report to the Attorney General, through the head of the agency, at such times and in such formats as the Attorney General may direct, on the agency's performance in implementing this section." 5 U.S.C. § 552(j)(2). Thus, as I argued in my sur-reply, "[t]he statute requires the Chief FOIA Officer perform duties that would inherently result in creating/maintaining records related to FOIA performance/compliance." Dkt. 88 at 3. This is not speculation. It is what the law unambiguously requires. This case is no different than *Akins* where the Supreme Court found standing under the Federal Election Campaign Act to seek information the statute required be made public. *See* Dkt. 86 at 21.

The Memorandum says I must "plead facts showing that a properly designated Chief FOIA Officer 'will likely react in predictable ways.'" I agree. But assuming that a properly appointed Chief FOIA Officer would follow the law and report as FOIA requires is the definition of "predictable." Mem. 13. And so, if there were a DEA Chief FOIA Officer, DEA would be able to produce the records I requested and I would obtain disclosure. The reason it can't is because it doesn't have a Chief FOIA Officer. By the Memorandum's own reasoning, considering the statute and relevant law, I have shown standing.

*Second*, the Memorandum omits addressing other aspects of my standing arguments. For example, my papers discuss structural standing and related precedent at length. *See* Dkt. 86 at 13-18; Dkt. 88 at 4-5. Although the Memorandum discusses *Consumer Product Safety Commission*, 91 F.4th 342, 347 (5th Cir. 2024), it does not address my broader discussion of structural/procedural standing and precedents/opinions such as *Judicial Watch, Inc. v. DHS*, 895 F.3d 770, 775-76 (D.C. Cir. 2018) or *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010) and related cases. Simply put, there is no reason to believe that precedent regarding standing to assert structural/procedural rights in administrative processes is different based on the substantive right being asserted (constitutional vs. statutory).

The same is true with my record balkanization argument. Dkt. 86 at 16-19. The Memorandum lacks any substantive discussion addressing this argument as well.

## Conclusion

The Memorandum's recommendation should be rejected and the Motion to Dismiss should be denied.

Dated: June 4, 2024                    Respectfully submitted,

                                       /s/ Matthew C. Zorn
                                       Matthew C. Zorn
                                       YETTER COLEMAN LLP
                                       mzorn@yettercoleman.com
                                       811 Main Street, Suite 4100
                                       Houston, TX 77002
                                       T: (713) 632-8000
                                       F: (713) 632-8002


### CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                       /s/ Matthew C. Zorn
                                       Matthew C. Zorn


### WORDS

I hereby certify that this document has 2,564 words, excluding caption, certificates, and

signature blocks.

                                       /s/ Matthew C. Zorn
                                       Matthew C. Zorn