UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW C. ZORN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-02396 |
| | § | |
| U.S. DEPARTMENT OF JUSTICE, ET | § | |
| AL. | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Table of Contents .................................................................................................... i

Table of Authorities ................................................................................................ ii

Introduction ............................................................................................................ 1

Statutory Background ............................................................................................. 2

Procedural History .................................................................................................. 4

Facts ....................................................................................................................... 5

Summary of the Argument....................................................................................... 9

Argument ................................................................................................................ 9

Conclusion .............................................................................................................. 22

## TABLE OF AUTHORITIES

**Cases**

*A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 496 (1945) ............................................. 15

*Am. Broad. Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431, 458 (2014) ........................................ 18

*Am. Soc'y for Prevention of Cruelty to Animals v. APHIS*, 2023 WL 2026831 (2d Cir. 2023) .. 11

*Animal Legal Def. Fund v. United States Dep't of Agric.*, 933 F.3d 1088 (9th Cir. 2019) ....... 9, 10

*Atchafalaya Basinkeeper, Inc. v. United States Army Corps of Engineers*, 2022 WL 219050 (E.D. La. Jan. 25, 2022) ................................................. 10

*Azar v. Allina Health Servs.*, 587 U.S. 566 (2019) ........................................ 21

*BedRoc Ltd., LLC v. United States*, 541 U.S. 176 (2004) ........................................ 12

*BNSF Ry. Co. v. United States*, 775 F.3d 743 (5th Cir. 2015) ........................................ 16

*Bostock v. Clayton Cnty., Georgia,* 140 S. Ct. 1731 (2020) ........................................ 18

*CREW v. FEC*, 711 F.3d 180 (D.C. Cir. 2013) ................................................. 3, 13, 18

*Daniel v. Paul*, 395 U.S. 298 (1969) ........................................ 15

*Dep't of Air Force v. Rose*, 425 U.S. 352 (1976) ........................................ 2

*Digital Realty Tr., Inc. v. Somers*, 138 S.Ct. 767 (2018) ........................................ 18

*EPA v. Mink*, 410 U.S. 73 (1973) ........................................ 2

*Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019) ........................................ 15

*Hibbs v. Winn*, 542 U.S. 88 (2004) ........................................ 17

*Judicial Watch, Inc. v. DHS*, 895 F.3d 770 (D.C. Cir. 2018) ........................................ passim

*Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50 (2004) ........................................ 18

*Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976) ............. 4

*Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) ........................................ 9

*Rose v. Dep't of Air Force*, 495 F.2d 261 (2d Cir. 1974) ........................................ 2

*Texas v. United States*, 40 F.4th 205 (5th Cir. 2022) ........................................ 11

**Statutes**

5 U.S.C. § 552 ................................................................................................. passim

5 U.S.C. § 702 ................................................................................................. 11

5 U.S.C. § 704 ................................................................................................. 11

**Other**

Conf. Rep. 93-1380 ................................................................................................. 20

Rep. No. 93-876 at 126 ................................................................................................. 19

S. Rep. No. 93-854 ................................................................................................. 19

Webster's New Twentieth Century Dictionary of the English Language, Unabridged (2d ed.) (1970) ................................................................................................. 12, 15

## INTRODUCTION

Can federal agencies routinely delay providing timely statutory determinations by invoking FOIA's "unusual circumstances" exception (5 U.S.C. § 552(a)(6)(B)(i)) any time requested records are in an office other than the agency's FOIA office itself? That is issue presented:

> Whether Defendants' policy of invoking FOIA's "unusual circumstances" exception to avoid rendering a determination by the default 20-day deadline any time a FOIA request calls for records outside of the FOIA office is unlawful.

Based on the text, structure, and history of FOIA, the answer is *no*.

There are no material factual disputes. Plaintiff, in addition to being an attorney, publishes a newsletter in the realm of drug policy issues. Both for his practice and as a journalist, he frequently uses FOIA to seek records from Defendants DOJ and DEA, as well as other federal agencies. Now around two years ago, he uncovered Defendants' policy or practice of deeming nearly all FOIA requests as raising "unusual circumstances," allowing the agency to defer issuing a determination according to the default 20-day statutory deadline.

How has this exception swallowed the default rule? As Plaintiff learned through the Court ordered January 2023 corporate deposition, Defendants have adopted a peculiar interpretation of the "unusual circumstances" statutory exception. The exception permits agencies to take more time to issue a determination on a FOIA request when there is a "need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request," 5 U.S.C. § 552(a)(6)(B)(iii)(I), but  "only to the extent reasonably necessary to the proper processing of the particular requests." 5 U.S.C. § 552(a)(6)(B)(iii). Defendants have adopted a reading of the statute whereby "other establishments that are separate from the office processing the request" means *any* other office, group, collection, or what not that other than the agency FOIA office. Put simply, they made a loophole to fabricate delay.

1

As discussed below, Defendants' interpretation runs contrary to the statutory text and leads to bizarre conclusions. As Defendants conceded in the deposition, under their reading, a FOIA request that calls for records 10-feet outside the door of the FOIA office or down the hallway on the same floor merits "unusual circumstances" treatment and indefinite delay.

None of this is what Congress intended when it commanded agencies to make requested records "promptly available" and put timelines in place. Put simply, Defendants' countertextual policy and practice is a statutory hack for federal agencies to give the thumb to transparency. And because it is unlawful, it should be enjoined.

**STATUTORY BACKGROUND**

The Freedom of Information Act (FOIA) "reflect[s] 'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.' " *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (quoting S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)).

Congress enacted FOIA to displace the disclosure portions of the Administrative Procedure Act. *EPA v. Mink*, 410 U.S. 73, 79 (1973). *Id.* Due to vague exemptions like one related to records related to "any function of the United States requiring secrecy in the public interest," the pre-FOIA APA "came to be looked upon more as a withholding statute than a disclosure statute." *Id.* Against this backdrop, Congress enacted FOIA "to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *Id.* at 80. "The Act's remedial purpose was to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Rose v. Dep't of Air Force*, 495 F.2d 261, 263 (2d Cir. 1974).

In 1974, a key issue arose related to timeliness. As the legislative history to the 1974 FOIA amendments explains, "information is often only useful if it is timely" and "[e]xcessive delay by

2

the agency in its response is often tantamount to denial." To fulfill its purpose, FOIA requires requests for records be made "promptly available." 5 U.S.C. § 552(a)(3)(A). This proved to be insufficient, so in 1974, Congress established reticulated deadlines to ensure the timely processing of FOIA requests.

After receiving a request for records, by default, FOIA requires each agency to determine within 20 business days after receipt of a request whether to comply. 5 U.S.C. § 552(a)(6)(A). The agency must immediately notify the requestor of the "determination and the reasons therefor," *id.*, and while it need not produce the records at the exact time of a determination, as noted above, it must make records "promptly available." "[P]romptly available" "typically means within days or a few weeks of a 'determination', not months or years." *CREW v. FEC*, 711 F.3d 180, 188–89 (D.C. Cir. 2013) (Kavanaugh, J.) (cleaned up).

There is an exception, however—the exception at issue in this case. In the case of "unusual circumstances," an agency can extend its time to respond. 5 U.S.C. § 552(a)(6)(B)(i). "Unusual circumstances" includes "the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request," 5 U.S.C. § 552(a)(6)(B)(iii)(I), but "only to the extent reasonably necessary to the proper processing of the particular requests," 5 U.S.C. § 552(a)(6)(B)(iii). The agency must issue a written notice that sets forth the unusual circumstances and the date on which a determination is expected. 5 U.S.C. § 552(a)(6)(B)(i). The unusual circumstances exception extends the determination deadline by ten business days, or indefinitely "if the request cannot be processed within [that] time limit," 5 U.S.C. § 552(a)(6)(B)(i), (ii).

As Judge Leventhal carefully explained in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 617 (D.C. Cir. 1976) (Leventhal, J. concurring), these timetables "were

deliberately drafted to force increased expedition in the handling of FOIA requests." They "took into account the objections of such agencies as the Justice Department, by providing that a ten-working-day extension could be allowed for 'unusual circumstances,' such as where the requested records come *from separate field facilitie*s, where the agency must 'search for, collect and examine a voluminous amount of separate and distinct records demanded in a single request,' or where consultation with another agency is necessary." *Id.* (emphasis added). And, over objections from the federal government, "Congress even rejected a 30-day extension provision, narrowly drafted to take account of the special exigencies facing such agencies as the Immigration and Naturalization Service (INS) which processes an average of 90,000 formal requests for records each year, seeking access to one or more of the twelve million individual files scattered among and frequently transferred between field offices and Federal Records Centers." *Id.* at 617-618.

## PROCEDURAL HISTORY

Plaintiff sued along with former Plaintiffs in July 2022 alleging a single cause of action that DEA had a policy and pattern or practice of marking FOIA requests as "complex" and raising "unusual circumstances" as described herein is contrary to law. Dkt. 1. Defendants moved to dismiss on several grounds, including that Plaintiffs failed to plead facts plausibly establishing that the agency is "actually improperly engaged in a policy or practice of finding "unusual circumstances" whenever another office needs to be searched. Because Defendants did not admit to the policy or practice, the Court ordered Defendants be deposed. *See* Dkt. 13.

Plaintiff took that deposition of Defendants in January 2023, which witness confirmed and admitted the existence of the alleged policy. *See* Dkt. 21; Dkt. 28-2 ("Dep.") (deposition transcript). Plaintiff also took other discovery. Plaintiff amended his pleadings in view of the deposition testimony and discovery. *See id.* He also added claims. *See id.*

4

The parties then filed a flurry of motions from March to December 2023, and the Court held several status conferences. *See generally* Dkt. 28-105. The Court ultimately granted the Defendants' motion to dismiss the additional claims. *Zorn v. DOJ*, No. 2024 WL 2989733, at *1 (S.D. Tex. May 21, 2024), report and recommendation adopted, 2024 WL 3855682 (S.D. Tex. Aug. 16, 2024). What remains are the originally pleaded pattern or practice claims.

FACTS

<u>The following facts are relevant to the parties before the Court:</u>

1.      Plaintiff Matthew C. Zorn is a partner at Yetter Coleman LLP in Houston, TX. His practice focuses on commercial and IP litigation. He also has a nationally recognized practice in cannabis and psychedelics. *See* https://www.yettercoleman.com/our-people/matthew-c-zorn/; Dkt. 65-1 (7/26/23 Zorn Decl.) at 3).

2.      Plaintiff publishes an online newsletter entitled "On Drugs" at ondrugs.substack.com. Most material on the newsletter is released for free. The newsletter has thousands of subscribers. *See* Dkt. 65-1.

3.      DEA has granted Plaintiff media status certain FOIA requests. Dep. 203:3-17. (Dkt. 28-2)

4.      Plaintiff also teaches a course of drug law as an adjunct faculty member at the University of Houston. *See* https://www.law.uh.edu/schedule/class_information.asp?cid=21839.

5.      Plaintiff is a frequent FOIA user and intends to continue using FOIA to obtain records from Defendants. *See generally* Dkt. 65-1, 71-1, Ex. A.

6.      Defendant DOJ and DEA are federal agencies subject to FOIA.

<u>The following general facts are relevant to how Defendants process FOIA requests:</u>

7.      DOJ has a decentralized system for responding to FOIA requests. Each DOJ component designates a component FOIA office to process records. 28 C.F.R. § 16.3(a)(1). A DOJ

5

component is a "separate bureau, office, division, commission, service, center, or administration that is designated by the Department as a primary organizational entity." 28 C.F.R. § 16.1(b).

8.    DEA is a DOJ component. DEA's FOIA Office has three sub-units: intake, processing, and legal/external affairs.

9.    Whenever DEA's FOIA Office receives a request, it drafts a search memo and sends that memo to the other sections of DEA that have the records. The DEA FOIA Office does not determine the initial set of what records are responsive. Other DEA sections do. Dep. 99:8-11.

10.    FOIA requests are generally placed in one of three tracks: simple, complex, and expedited. Within these tracks, requests are handled on a first-in-first out basis. Requests with more than 20-pages are generally deemed complex. Dep. 105:1-106:4, 168:17-169:2.

    The following facts are relevant to the policy at-issue in this case:

11.    Defendants has a policy or practice of invoking "unusual circumstances" any time a FOIA office needs "to search for records that are physically outside" of the responding FOIA Office, based on their interpretation of the statute. Dep. 68:15-20, 77:7-11, 121:12-122:11. [1]

12.    Under this policy or practice, a document 10 feet away outside the FOIA Office would raise "unusual circumstances." Dep. 70:14-71:7.[2] In brief, no matter how far outside the FOIA office one is, whether in "cyberspace or physically," if the records are outside the FOIA office—even "in the same building"—Defendants deem the "unusual circumstances" exception

---

[1]    DOJ's corporate witness consulted with DOJ's Office of Information Policy, the component that administers FOIA, prior to testifying and confirmed that her testimony spoke for DOJ and DEA. Dep. 77:7-20, 121:1-124:2.

[2] "Q. And the way I understand what you're saying is that the agency interprets unusual circumstances to mean -- across the hallway is unusual circumstances if that's not the DEA FOIA office; is that fair? A. Yes. Q. Okay. So if I had a -- if I took my outline here and walked across the hallway and put it in someone else's office and that person worked in some other division, we're now in -- in -- we're now outside the FOIA office, right? A Uh-huh. Correct. Q. Okay. And that's like 10 feet away. A Correct. Q. Is that fair? A. Correct. Q. Okay. So this is a game of inches, right? MR. RODRIGUEZ: Objection. Argumentative.")

apply. Dep. 71:17-72:1. Defendants apply this practice without regard to examining convenience, time or expense. *See* Dep. 73:15-74:19. (explaining that electronic request where transfer is electronic and there's no additional cost or time may still raise unusual circumstances).

13.     Data reflecting roughly how often DOJ and DEA invoke "unusual circumstances" can be gleaned annual FOIA report. Dep. 58:7-16; Ex. 4, FY 2022 Report Raw Data.csv (DEA000356). According to the agency, "30 days indicates [it has] invoked the unusual circumstances for those cases for that particular fiscal year." Dep. 58:13-16. Defendant DEA invoked "unusual circumstances" in response to FOIA requests ***84% of the time*** in the FY 2022 table.

| Row Labels | Count of Days Allowed |
|---|---|
| 20 | 488 |
| 30 | 2619 |
| (blank) | |
| **Grand Total** | **3107** |

14.     Federal agencies must manage and maintain all email in an electronic format that supports record management and litigation requirements, which includes "the capability to identify, retrieve, and retain the records for as long as they are needed." *See* https://www.archives.gov/files/records-mgmt/m-12-18.pdf.

15.     Nonetheless (or perhaps by design), DEA's FOIA office does not have access to hundreds of IT system that DEA uses. Dep. 59:21-3.

16.     Indeed, DEA's FOIA office does not have access to "the majority of records that are requested by the public." Dep. 61:14-15.

17.     Plaintiff has made more than 30 FOIA requests with Defendants over the past two years, and his ability to write timely articles and essays regarding contemporaneous issues related

to drug policy and DEA has been stymied considerably by DEA's delays.[3] Other than requests for records for FOIA processing notes, consistent with its admitted practice and policy, DEA has invoked the unusual circumstances exception to delay a timely determination across the board. For example, it has invoked unusual circumstances exception to delay timely determinations of single documents, 23-1043-F (copy of the letter sent by Rachel Levine to Anne Milgram containing HHS's recommendation that marijuana be rescheduled from August 1, 2023 to August 31, 2023), administrative court filings 23-00911-F (ALJ Mulrooney's order denying the issuance of subpoenas described in paragraph 68 of the attached document; The Government's filing described in paragraph 112 of the attached document, from January 1, 2023 to August 1, 2023). Plaintiff made a request in December 2022 for "[t]he 2022 electronic calendar/scheduler of Administrator Milgram and Deputy Administrator Milione (e.g., a Calendar export from Outlook) from January 1, 2022 to December 31, 2022," in early 2023, which DEA deemed raised unusual circumstances with its form e-mail. Ex. 1. More than a year later, on April 10, 2024, the agency denied the request in its entirety, did not produce reasonably segregable records, and essentially asserted that every word and every meeting of these documents implicated an exemption or could not be segregated from material that implicated an exemption. Ex. 2 (April 2024 DEA response).[4]

18.     Due to the unusual circumstances practice or policy, Plaintiff has had to wait more than a year to get determinations on his FOIA requests. Indeed, one of Plaintiff's oldest requests

---

[3] *E.g.*, 22-00488-F, 22-00560-F, 22-00563-F, 22-00577-F, 22-00580-F, 22-00585-F, 22-00806-F, 22-00845-F, 22-01012-F, 23-00213-F, 23-00347-F, 23-00733-F, 23-00734-F, 23-00735-F, 23-00736-F, 23-00797-F, 23-00911-F, 23-00912-F, 23-00952-F, 23-00953-F, 23-00954-F, 23-01035-F, 23-01043-F, 23-01116-F, 23-01118-F, 24-00174-F, 24-00475-F, 24-00476-F, 24-00477-F, 24-00507-F.

[4]     Seeking calendar information of agency administrators or commissioners is a standard request. *E.g.*, *Inst. for Energy Rsch. v. FERC*, 2023 WL 61218781 (D.D.C. Sept. 19, 2023). There was no plausible basis for DEA's wholesale denial. *See, e.g.*, *Ecological Rts. Found. v. EPA*, 2021 WL 535725, at *25 (D.D.C. Feb. 13, 2021) (rejecting argument "that releasing the locations at which Administrator Wheeler ate lunch or dinner and the particulars of his travel arrangements" would implicate FOIA exemptions).

for "[c]ommunications between DEA and FDA regarding Adderall shortages described in 87 Fed. Reg. 74168," requested on 2/14/13, received expedited treatment and remains outstanding. Ex. 3.

SUMMARY OF THE ARGUMENT

Whether adjudicated as a PPP (Claim 1) or an APA claim (Claim 2), Defendant's policy and practice of manufacturing delay by invoking the "unusual circumstances" exception to FOIA's normal deadlines to respond is unlawful. Similarly, Defendants' practice of not providing dates by which a determination is expected to be made is unlawful.

Congress enacted FOIA to promote transparency and disclosure. And in the wake of Watergate and inordinate bureaucratic delays, Congress amended FOIA to add reticulated timelines to ensure the timely processing of FOIA requests to promote FOIA's goals.

Defendants' policy or practice flouts these timelines. Under their practice of invoking "unusual circumstances," agencies defer responding to FOIA requests any time a record is not in an agency's FOIA office. This is nearly always the case. Not surprisingly, the statutory text and structure refutes Defendants' machination. So does unambiguous legislative history. The Court should grant summary judgment and declare Defendants' policy or practice contrary to law.

ARGUMENT

## I.     Claims 1 and/or 2 State a Cause of Action

Claims 1 and 2 are substantively identical. Claim 1 is styled as a FOIA pattern, practice, or policy (PPP) claim, i.e., that Defendants have a "policy or practice will impair the party's lawful access to information in the future." *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988). *Accord Animal Legal Def. Fund v. United States Dep't of Agric.*, 933 F.3d 1088, 1092 (9th Cir. 2019). Claim 2 is styled as an Administrative Procedure (APA) claim.

The Fifth Circuit has never addressed a FOIA PPP claim. *See Atchafalaya Basinkeeper, Inc. v. United States Army Corps of Engineers*, 2022 WL 219050, *10 (E.D. La. Jan. 25, 2022).

9

The D.C. and Ninth have. They have determined that one exists. This Court should as well. It follows from the text of the jurisdictional statute: district courts have "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). This "authorizes district courts to stop the agency from holding back records it has a duty to make available." *See Animal Legal Def. Fund*, 935 F.3d at 86. When an agency engages in a pattern, practice, or policy of delay in a manner contrary to the statute, it unlawfully "withhold[s] agency records," and so courts have jurisdiction to enjoin the unlawful practice. That is squarely the case here.

Previously, Defendants argued that "[n]o court sitting in the Fifth Circuit should construe FOIA PPP claims to sweep more broadly than the D.C. Circuit has." Dkt. 8 at 9. But the asserted claims about delay do not sweep more broadly than D.C. Circuit's precedent. They mirror those recently presented in *Judicial Watch, Inc. v. DHS*, 895 F.3d 770, 777–78 (D.C. Cir. 2018). In that case, Judicial Watch brought a pattern or practice claim against DHS based "repeated, prolonged, and unexplained delays have prevented Judicial Watch from gathering complete records for its reports to the public on federally funded VIP travel." *Id.* at 776. The D.C. Circuit rejected the notion that Judicial Watch did not state a pattern or practice claim, opining that "it is settled law that informal agency conduct resulting in long delays in making requested non-exempt records available may serve as the basis for a policy or practice claim." *See also id.* 779-80 (describing argument that "failures to adhere to FOIA's pre-litigation requirements, including response deadlines and records management provisions needed to enable "prompt" determinations, do not establish a FOIA violation and consequently cannot be the basis for a policy or practice claim" as untenable"). Put simply, "a plaintiff states a plausible policy or practice claim under *Payne* by

alleging prolonged, unexplained delays in producing non-exempt records that could signal the agency has a policy or practice of ignoring FOIA's requirements." *Id.* at 780.

The claims at issue are the same. They seek to declare unlawful a policy or practice of delaying FOIA determination based on the agency ignoring FOIA's statutory requirements. This case therefore falls squarely within what other courts have deemed legitimate matter to raise as a PPP claim.

If, however, FOIA itself does not provide a cause of action, the APA does. The APA provides that any "adversely affected or aggrieved by agency action" may challenge a policy or practice under the APA "if there is no other adequate remedy in a court." 5 U.S.C. §§ 702, 704. *See also Am. Soc'y for Prevention of Cruelty to Animals v. APHIS*, 2023 WL 2026831, at *5 (2d Cir. 2023) (Menashi, J. concurring). As noted above, DOJ's unusual circumstances policy is a fully fleshed out (indeed admitted) practice and policy. Therefore, it is final agency action. *See Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022); *see also* Dep. at 121:12-124:2. And, based on the facts of this case, this policy has been in effect for some time.

## II.     A Practice of Invoking the "Unusual Circumstances" Exception Any Time a FOIA Request Seeks Records Outside the FOIA Office is Unlawful.

Defendants admit that under its policy or practice, any FOIA request that seeks records outside of an agency FOIA processing office raised "unusual circumstances." This is true whether a request seeks documents from a Montana field office or documents 10-feet outside of the FOIA Office, but not physically within it. Whether adjudicated as a PPP (Claim 1) or an APA claim (Claim 2), the end-result is the same: this practice is contrary to the law and should be enjoined.

### A.     The text confirms that (1) the unusual circumstances exception cannot swallow the default rule and (2) an "*establishment* separate from the office processing the request" must be a physically separate establishment, not a cubicle down the hall.

Statutory interpretation "begins with the statutory text." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). It "ends there as well if the text is unambiguous." *Id.* And, a natural place to begin is the ordinary meaning of the text. *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018).

    **1.**    Start with "*unusual* circumstances." Unusual means *not* usual, *not* routine, *not* habitual. Here's what Webster's New Twentieth Century Dictionary of the English Language, Unabridged (2d ed.) (1970) has to say:

> **un·ū′·ṣu·ặl** (-zhü-), *a.* not usual or common; strange; rare; exceptional.

Now consider Defendants' policy. Under it, the "unusual circumstances" exception is *usual* or *common*. Any request for records not in the FOIA Office or its systems—physically or electronically—are deemed in an "other establishment separate from the office processing the request." As Defendants admitted in the corporate deposition, this describes "vast majority" of requests because, of course, most requests do not seek records already held in the FOIA Office because, as Defendants also admit, the only records in the FOIA Office are those records that have been previously requested. *See* Dep. at 59:10-61:19, 190:5-12. Therefore, the only records not subject to the "unusual circumstances" exception are those requests that exactly seek previously requested records.

That's preposterous. When Congress chose the words "*unusual* circumstances" to describe an exception, it did so on purpose. As discussed below, the legislative history makes this abundantly clear. And, how can something described as *unusual* apply more than 50% of the time let alone 80% of the time? It cannot. Defendants' reading flips the "unusual circumstances"

exception on its head. "[S]afety valve"? *CREW*, 711 F.3d at 187. Hardly. Under Defendant's reading, it's the main valve.

Now consider statutory structure. "In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). Structurally, "unusual circumstances" is an *exception*. There's a default timeline for determination (20 business days) and exceptions. Two in fact. 5 U.S.C. § 552(a)(6)(B)(iii) (unusual circumstances) & (C) (exceptional circumstances). Default processing times apply *unless* "unusual" or "extraordinary" circumstances are present. Structurally, the statute makes no sense if "unusual circumstances" is the norm. If Congress wanted that to be the case, "unusual circumstances" would be the default and the 20-day response requirement would be an exception for when a requestor seeks records already in the FOIA Office.

Consider, too, the second "unusual circumstances" condition: "the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request." 5 U.S.C. § 552(a)(6)(B)(iii)(II). If the first condition can apply any time a FOIA processing office must look outside itself, as Defendants' say, what's the point of the second? If nearly all FOIA requests demand records outside of the FOIA office (because they haven't been previously requested) then the exception for voluminous "separate and distinct records" becomes superfluous because either (1) the FOIA office already had the voluminous records having previously produced them to another requestor and the agency not need any extension of time to make a duplicate determination for previously produced records or (2) if the FOIA office did not have the voluminous records, then the records would be outside the FOIA office, the first exception would apply, and there would be no need for a second. Under the

13

Defendants' policy and practice, the second condition serves no point. This weighs heavily against its reading.

As does FOIA's mandate of making records "promptly available to any person." No different than the D.C. Circuit explained in *Judicial Watch*: if agencies can routinely delay responding to FOIA requests on grounds that requested records are not in or can be immediately accessed by a FOIA Office—and again, that describes nearly all FOIA requests (or at least a significant majority)—then "FOIA's mandate of 'prompt' response[s]" becomes "superfluous, *i.e.*, a dead letter." *Judicial Watch*, 895 F.3d at 774.

An additional absurdity under Defendants' practice? They admit that the only way the FOIA office has access to a record in its systems is if the FOIA office had received "[t]hat exact request and exact timeline previously." Dep. 63:15-19. That means, in practice, Defendants apply default timelines to process FOIA requests only the *second* time someone places a request that is exactly the same as a former request. But under an affirmative disclosure provision, FOIA requires agencies to affirmatively post for public inspection records that have been released and requested "3 or more times," so no request is needed. 5 U.S.C. § 552(a)(2)(D). Thus, Defendants' practice boils down to a rule of seconds: the only time anyone can get a timely response to a request is if it is the *second* time an *exact* request is made. The third time, the records must be publicly posted. This is not how the scheme operates.

**2.** The core textual problem in Defendants' interpretation lies in how they interpret "establishment" and relatedly, "separate."

"Establishment" meant in 1974 what it does now: a "place where a person is settled for residence or for transacting business; a person's residence and everything connected with it, as furniture, servants, grounds, etc.; a public or private institution." Webster's New Twentieth

Century Dictionary of the English Language, Unabridged (2d ed.). *Cf. Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2363 (2019) (construing the undefined FOIA term "confidential" to mean "private" or "secret" using contemporary dictionaries). *See also, e.g.*, *Milner v. Department of Navy*, 562 U.S. 562, 569 (2011) (looking at ordinary, contemporary, common meaning of FOIA terms at the time of enactment). The ordinary meaning of "establishment" at describes an *institution*, a *functional unit*, or a physically distinct *facility*. Succinctly stated, either in 1974 or today, "establishment" has never meant and cannot mean an office 10-feet across from the FOIA Office that is under the auspices of the same agency and on the same floor. *Cf. Daniel v. Paul*, 395 U.S. 298, 302 (1969) ("establishment" in 1964 Civil Rights Act described as "a place of public accommodation"). Put another way, an office ***across the hallway*** is not an *establishment* that is *separate* from the office processing the request. It is in the same establishment.

Nor did "establishment" mean anything different at any other time. In *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 496 (1945), the Court explained that "establishment" as "normally used in business and in government" means "a distinct physical place of business." It rejected the notion that the word "establishment" referred to an *entire* business or enterprise but noted in footnote 6 that "establishment" was a common term used "in the sense of physical place of business by many census reports, business analyses, administrative regulations, and state taxing and regulatory statutes." *Id.* at n.6.

Applying the ordinary meaning of "establishment," an "establishment" that is "separate" from the office processing the request cannot include an office down the hall. It cannot include e-mails on a central server separated only by fiberoptic wires. For an agency to properly invoke an exception pertaining to documents in an establishment that is "separate" from the office processing the request, the requested documents must be in a different place.

15

The maxim that "different words within the same statute should, if possible, be given different meanings" reinforces this conclusion. *BNSF Ry. Co. v. United States*, 775 F.3d 743, 755 n.86 (5th Cir. 2015) (citation omitted). Presumably, "office" and "establishment" describe different things. But under the Defendants' policy, they merge. "Establishment" means "office." Defendants' want to say the unusual circumstances exception applies when documents are in the *same establishment* but found in another *office* separate from the FOIA Office (i.e., the office processing the request). But Congress intentionally used a different word—*establishment*— precisely to avoid an outcome where an *exception* becomes the rule.

The words "field facilities" provide more instructive context. In the text, "other establishments that are separate from the office processing the request" follows "field facilities." Per *ejusdem generis*, the phrase "other establishments that are separate from the office processing the request" are akin to the enumerated item: a field facility. *See, e.g.*, *Walmart Inc. v. DOJ*, 21 F.4th 300, 310 (5th Cir. 2021) (interpreting "*other* compulsory or restrictive action" in 5 U.S.C. § 551(10) to mean a sanction akin to those enumerated). That, not surprisingly, returns us back to ordinary meaning: an "establishment" that is "separate from the office processing the request" means a building or place that is separate from the headquarters, i.e., in a different zip-code, from where the FOIA office is located. It cannot mean merely walking across the hallway, sending an e-mail, or a rote communication to IT to pull e-mails from a server.

We could also look elsewhere in the same statute for more clarity. In 5 U.S.C. § 552(f)(1), "agency" includes "any executive department, military department, Government corporation, Government controlled corporation, or *other establishment* in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." Obviously, "establishment" in this definition isn't so broad so that "agency" includes

16

subcomponents like an agency's FOIA Office or HR division. "Other establishment" means some other distinct legal entity akin to another agency—both in 5 U.S.C. § 552(f)(1) and (a)(6).

Next, even if Defendants could navigate all the above textual roadblocks with 5 U.S.C. § 552(a)(6)(B)(iii)(I), there's the matter of the precatory text. The "unusual circumstances" exception does not mean meeting the circumstances described in 5 U.S.C. § 552(a)(6)(B)(iii)(I) without any further qualification. Rather, per the precatory text, an agency may invoke the exception applies "only to the extent reasonably necessary to the proper processing of the particular requests." The denotation of "*particular* requests"—as opposed to "requests" generally— contemplates a particularized, not generalized inquiry. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (presumption that no part of statute should be rendered inoperative, superfluous, void or insignificant). That means that even if somehow a tailored but rote request for an Outlook calendar kept on a mail server did, for some reason, implicate the "unusual circumstances" exception (it does not), invoking "unusual circumstances" would be improper because nothing about the near instantaneous collection or transmission would be "necessary to the proper processing of [that] particular request."

So, when an agency can rightfully invoke the "unusual circumstances," it must do so on a case-by-case basis as a matter of discretion. Defendants' policy, however, is not based on discretion. The statute prohibits a blanket and indiscriminate practice such as the FOIA office doesn't have it, you've got "unusual circumstances," whether more processing time is actually needed for that "particular" request or not. Defendants' policy cannot be squared with the statutory text that demands a particularized inquiry.

In sum, a central office or headquarters is an "establishment." Other physical places of conducting agency business are also establishments. When the office processing the request is in

one establishment (say, headquarters) and responsive records are elsewhere in headquarters, they are not in establishments *separate* from the office processing the request. Rather, they are in the same establishment. Records (such as e-mails) that can be electronically collected and transmitted from a shared server also do not generally raise "unusual circumstances." And in invoking the exception, the FOIA office must make some inquiry into whether an extension is needed to process that particular request, which is consistent with FOIA's overall design. *Cf. CREW*, 746 F.3d at 1095 (rejecting categorical rule to applying exemption).

### B.   Unambiguous legislative history refutes Defendants' reading.

Use of legislative history in statutory interpretation is a touchy subject. Some say bollocks. *See, e.g.*, *Am. Broad. Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431, 458 (2014) (Scalia, J. dissenting). Others see a limited role for it. *Bostock v. Clayton Cnty., Georgia,* 140 S. Ct. 1731, 1750 (2020) (Gorsuch, J.); *Milner v. Department of Navy*, 562 U.S. 562, 574 (2011) ("Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it."). Yet others give it significant weight when there is ambiguity. *See, e.g.*, *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 65 (2004) (Stevens, J. concurring); *Digital Realty Tr., Inc. v. Somers*, 138 S.Ct. 767, 783 (2018) (Sotomayor, J., concurring) ("[E]ven when, as here, a statute's meaning can clearly be discerned from its text, consulting reliable legislative history can still be useful ....")

There isn't ambiguity here, so legislative history need not be consulted. That said, it is noteworthy. Rarely is it as lucid as it is here at speaking to the disputed issue.

As noted above, Congress established time limits because excessive delay often is tantamount to denial:

H. Rep. No. 93-876 at 126.[5]

The Senate Report is even clearer. S. Rep. No. 93-854.[6] Problem area number one? Bureaucratic delays.[7] *Id.* at 155. Indeed, "delaying tactics" of a "secrecy-minded" executive branch and a "lack-of-priority by top-level administrators" and a "more positive attitude in support of 'open access'" featured as problem areas five and six:



In a section entitled *"Administrative Deadlines,"* the report describes testimony that "uniformly decried delays in agency responses as being of epidemic proportion, often tending to be tantamount to refusal to provide information" and identified "delay as the major obstacle to use of the FOIA by the press and urged strict guidelines." *Id.* at 176-77. "Too often agencies realize

---

[5]    Available    at    https://nsarchive2.gwu.edu/nsa/foialeghistory/H.R.%20Rep.%20No.%2093-876%20(Mar.%205,%201974).pdf.

[6]    Available    at    https://nsarchive2.gwu.edu/nsa/foialeghistory/S.%20Rep.%20No.%2093-854%20(May%2016,%201974).pdf.

[7]    Notably, although technology has improved, delays I've documented are 10 to 20 times what Congress felt was so urgent to address in 1974.

19

that a delay in responding to a press request for records can often moot the story being investigated and will ultimately blunt the reporter's desire to utilize the provisions of the Act." *Id.* Nearly every public witness testified about "inordinate delays" following initial requests. In other words, "delays are tantamount to denials." *Id.*

Against this backdrop, the Senate Report then describes the then-proposed "unusual circumstances" exception at issue in this case. *Id.* at 179. Extensions up to 10 days would be permitted in just four defined types of "unusual circumstances" and "only to the extent 'reasonably necessary to the proper processing of the particular request." *Id.* Particularly relevant here, the report rebukes the exact policy Defendants have implemented:

> The need to research for and collect records from field facilities or 'other establishments that are separate from the office processing the request' ***does not permit an extension while such an office obtains the records <u>from the agency's own file, records, or administrative division</u>*** when located <u>in the same city as the processing office</u>."

It continues:

> Rather, this [exception] is intended to cover ***the collection of records from <u>other cities</u>***, *or* ***<u>from a federal records center</u> or <u>other facility which is not part of the agency</u>***."

Finally, the Conference Report confirms that Congress intended "unusual circumstances" to apply in situation where the agency "must search for and collect the requested records from field facilities separate from the office processing the request," just as the s[8]tatute says. Conf. Rep. 93-1380 at 227-28. "Other establishments" isn't some loophole.

---

[8]   Available at https://nsarchive2.gwu.edu/nsa/foialeghistory/H.%20R.%20Rep.%2093-1380%20(Sept.%2025,%201974)%20Conf.%20Report.pdf.

### III.     Defendants' Pattern/Practice of Not Providing Dates with Determinations is Unlawful

Independent of the above points, Defendants' routine use of the "unusual circumstances" exception is unlawful because, as their responses show, Defendants do not provide a "date on which a determination is expected to be dispatched." Providing an expected date *with* the determination is plainly required by any reasonable reading statute. says that an agency must provide a "written notice" that "specify a date" for unusual circumstances to apply. 5 U.S.C. § 552(a)(6)(B)(i).

This is important—and not just because Congress commanded it. An expected date allows for orderly administrative appeals (*see* 5 U.S.C. § 552(a)(6)(B)(ii)) and judicial review, for example, to determine the reasonableness of the agency's self-determined extension. Providing expected dates for determination also facilitates FOIA oversight.

### VI.     Policy Considerations Weigh Against Defendants' Unlawful Practices.

Policy arguments, of course, never carry the day over text. *See, e.g.*, *Azar v. Allina Health Servs.*, 587 U.S. 566, 581 (2019) ("[C]ourts aren't free to rewrite clear statutes under the banner of our own policy concerns."). But even if they could, Defendants' policy arguments here wouldn't have "much force even on their own terms." *Id.*

Whatever complaints Defendants may have about the burdens of complying with the statute or the necessity of writing an indefinite extension into FOIA, as the D.C. Circuit noted in *Judicial Watch*, much of this is self-inflicted. "Congress contemplated meaningful agency engagement upon receipt of a FOIA request." *Judicial Watch*, 895 F.3d at 775. That "engagement" is an active and continuing duty: it "is premised on agencies improving records management systems to enable 'prompt' responses." *Id.*

Complying with the duty to issue timely determinations for non-voluminous requests is far from impossible, provided an agency does not structure itself in a way that makes it impossible to comply with FOIA. By way of analogy, corporations that frequently engage in litigation have no problem have no problem meeting tight review and production deadlines. Here, however, the record suggests that DEA and DOJ have made FOIA compliance low priorities. For example, DEA's FOIA Office apparently does not have access "to the hundreds of IT systems that DEA uses."

In 2024—the age of the cloud and centralized e-mail servers—given Congress's mandate to all agencies to make their records promptly available, statutes that govern good record management, and various executive directives regarding same, that Defendants' FOIA offices are unable to easily access agency e-mails strewn across "150 different IT systems" defies explanation.

## CONCLUSION

The Court should grant Plaintiff summary judgment and declare the policy or practices at issue to be unlawful.

Dated: September 30, 2024                    Respectfully submitted,


                                             /s/ Matthew C. Zorn
                                             Matthew C. Zorn
                                             YETTER COLEMAN LLP
                                             mzorn@yettercoleman.com
                                             811 Main Street, Suite 4100
                                             Houston, TX 77002
                                             T: (713) 632-8000
                                             F: (713) 632-8002

                                             PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Matthew C. Zorn*
Matthew C. Zorn