# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

MATTHEW C. ZORN,

_Plaintiff,_

v.

U.S. DEPARTMENT OF JUSTICE, _et al.,_

_Defendants._

Civil Action No. 4:22-CV-02396

# DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY <u>JUDGMENT</u>

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

LEGAL AND FACTUAL BACKGROUND ...................................................................... 2

I.      The FOIA Process ................................................................................................ 2

II.     DEA's Invocation of the Unusual Circumstances Provision ................................ 4

III.    Procedural History .............................................................................................. 4

LEGAL STANDARDS ...................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

I.      The Court Lacks Jurisdiction Over Plaintiff's FOIA Claim ................................ 7

       A.      Plaintiff Purports to Challenge an Alleged Agency Policy, Not Any
              Withholding of Agency Records ................................................................ 7

       B.      Plaintiff Fails to Show Any Injury Traceable to the Alleged Policy at Issue ......... 9

       C.      Plaintiff Fails to Establish Redressability .............................................. 11

II.     The Court Lacks Jurisdiction Over Plaintiff's APA Claim ................................ 12

III.    Plaintiff Fails to Establish any FOIA or APA Violation .................................... 14

       A.      DEA May Lawfully Invoke the Unusual Circumstances Provision When
              Records Must Be Collected From Offices Outside of DEA's FOIA Office ......... 14

             1.      DEA's Practices Are Fully Consistent with the FOIA's Unusual
                     Circumstances Provision ...................................................... 14

             2.      Plaintiff's Cited Legislative History Is Inconsistent and Does Not
                     Change the Meaning of the Clear Statutory Text ..................................... 19

             3.      Plaintiff's Policy Argument Does Not Change the Meaning of the
                     Clear Statutory Text ............................................................ 21

       B.      The Court Should Reject Plaintiff's Attempt to Introduce A New Claim
              Through His Summary Judgment Motion .............................................. 21

CONCLUSION .................................................................................................................. 22

## TABLE OF AUTHORITIES

**Cases**

*Am. Ctr. for Law & Justice v. U.S. Dep't of State,*
    289 F. Supp. 3d 81 (D.D.C. 2018) ...................................................................... 9

*Am. Soc'y for the Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv.,*
    60 F.4th 16 (2d Cir. 2023) ........................................................................... 7, 8, 14

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ...................................................................................... 6

*Animal Legal Def. Fund v. United States Dep't of Agric.,*
    2018 U.S. Dist. LEXIS 88535 (N.D. Cal. May 25, 2018) ...................................... 9

*Animal Legal Def. Fund v. United States Dep't of Agric.,*
    933 F.3d 1088 (9th Cir. 2019) ......................................................................... 9

*Animal Legal Def. Fund v. Vilsack,*
    110 F. Supp. 3d 157 (D.D.C. 2015) ................................................................ 13

*Atchafalaya Basinkeeper, Inc. v. U.S. Army Corps of Eng'rs,*
    2022 U.S. Dist. LEXIS 12948 (E.D. La. Jan. 20, 2022) ......................................... 7

*Azar v. Allina Health Servs.,*
    587 U.S. 566 (2019) .................................................................................... 19

*Bank One Chi., N.A. v. Midwest Bank & Tr. Co.,*
    516 U.S. 264 (1996) .................................................................................... 20

*Bostock v. Clayton Cnty.,*
    590 U.S. 644 (2020) .................................................................................... 21

*Californians v. EPA,*
    2018 U.S. Dist. LEXIS 56105 (N.D. Cal. Mar. 30, 2018) ............................... 13, 14

*Cause of Action Inst. v. Eggleston,*
    224 F. Supp. 3d 63 (D.D.C. 2016) .................................................................... 9

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ...................................................................................... 6

*Chamber of Com. of U.S. v. Whiting,*
    563 U.S. 582 (2011) ................................................................................ 19, 20

*Citizens for Responsibility & Ethics in Wash. (CREW) v. Fed. Election Comm'n,*
    711 F.3d 180 (D.C. Cir. 2013) .................................................................. 2, 3, 11

*Clapper v. Amnesty Int'l USA,*

568 U.S. 398 (2013) ......................................................................................... 6

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
   144 S. Ct. 2440 (2024) .............................................................................. 16, 17

*Del Monte Fresh Produce N.A., Inc. v. United States*,
   706 F. Supp. 2d 116 (D.D.C. 2010) ......................................................... 13, 14

*Doe v. Doe Agency*,
   608 F. Supp. 2d 68 (D.D.C. 2009) .................................................................. 19

*Elec. Privacy Info. Ctr. v. DOJ*,
   15 F. Supp. 3d 32 (D.D.C. 2014) .................................................................... 12

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
   545 U.S. 546 (2005) ....................................................................................... 20

*Friends of the Earth, Inc. v. Laidlaw Env. Serv.*
   (TOC), Inc., 528 U. S. 167 (2000) ................................................................... 6

*Garland v. Cargill*,
   602 U.S. 406 (2024) ....................................................................................... 15

*Gen. Land Office of Tex. v. Biden*,
   2024 U.S. Dist. LEXIS 40880 (S.D. Tex. Mar. 8, 2024) ............................... 19

*Hajro v. U.S. Citizenship & Immigr. Servs.*,
   811 F.3d 1086 (9th Cir. 2016) ....................................................................... 10

*Int'l Bhd. of Elec. Workers, Local Union No. 474, AFL-CIO v. N.L.R.B.*,
   814 F.2d 697 (D.C. Cir. 1987) ................................................................. 20, 21

*Irving v. Meridian Sec. Ins. Co.*,
   649 F. Supp. 3d 293 (N.D. Tex. 2022) ........................................................... 22

*Ivey v. Wells Fargo, N.A.*,
   2014 U.S. Dist. LEXIS 148249 (W.D. Tex. Oct. 16, 2014) ........................... 20

*Judicial Watch, Inc. v. United States Dep't of Homeland Sec.*,
   895 F.3d 770 (D.C. Cir. 2018) ......................................................................... 9

*Koons Buick Pontiac GMC, Inc. v. Nigh*,
   543 U.S. 50 (2004) .................................................................................... 17, 18

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .............................................................................. 6, 10, 22

*Lujan v. Nat. Wildlife Fed'n*,
   497 U.S. 871 (1990) ....................................................................................... 13

*Murthy v. Missouri*,

144 S. Ct. 1972 (2024) ........................................................................... 6, 9, 11

*Norton v. S. Utah Wilderness All.,*
542 U.S. 55 (2004)  ........................................................................... 12, 13

*Payne Enters., Inc. v. United States,*
837 F.2d 486 (D.C. Cir. 1988) ........................................................... 8, 9

*Pitts v. City of Madison,*
2017 U.S. Dist. LEXIS 198579 (S.D. Miss. Dec. 4, 2017) ................... 22

*Prisology, Inc. v. Fed. Bureau of Prisons,*
852 F.3d 1114 (D.C. Cir. 2017) .......................................................... 7

*Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.,*
733 F. Supp. 2d 1172 (E.D. Cal. 2010) .............................................. 13

*Raines v. Byrd,*
521 U.S. 811 (1997)  ........................................................................... 6

*Sierra Club v. Peterson,*
228 F.3d 559 (5th Cir. 2000) ............................................................ 12, 13

*Tanzin v. Tanvir,*
592 U.S. 43 (2020)  ........................................................................... 15

*Texas v. U.S. Dep't of Homeland Sec.,*
2023 U.S. Dist. LEXIS 212676 (W.D. Tex. Nov. 29, 2023) ................... 13

*United States Dep't of Justice v. Tax Analysts,*
492 U.S. 136 (1989)  ........................................................................... 7

*United States v. Moore,*
71 F.4th 392 (5th Cir. 2023) ............................................................ 19

*Voinche v. F.B.I.,*
999 F.2d 962 (5th Cir. 1993) (per curiam) ....................................... 3

*Wilderness Soc'y v. Norton,*
2005 U.S. Dist. LEXIS 18734 (D.D.C. Jan. 10, 2005) ....................... 13

**U.S. Constitution**

Article III of the Constitution  ........................................................... 6

**Statutes**

5 U.S.C. § 552 ...................................................................................... *passim*

5 U.S.C. § 706 ...................................................................................... 12

**Rule**

Fed. R. Civ. P. 56 ........................................................................................................ 6

**Regulation**

28 C.F.R. § 16.8 ........................................................................................................ 3

**Other Authorities**

H. Rep. No. 93-876 .................................................................................................. 20

S. Rep. No. 93-854 ................................................................................................... 20

## INTRODUCTION

Following the Court's earlier dismissal of several claims in this lawsuit, two claims remain.  The Court should enter summary judgment in favor of Defendants and deny Plaintiff's motion for summary judgment as to those remaining claims.  Both claims purport to challenge an alleged Drug Enforcement Administration policy regarding application of the "unusual circumstances" provision to certain Freedom of Information Act requests.  The "unusual circumstances" provision allows all federal agencies, including DEA, to extend by ten days the timeline to make a FOIA determination if certain conditions are met.

The Court, however, lacks subject matter jurisdiction over Plaintiff's claims.  Claim one purports to be brought under the FOIA, a statute that allows a person who has requested and been denied information to sue to gain access to records improperly withheld.  In this lawsuit, however, Plaintiff does not seek disclosure of any particular agency records.  Instead, he asks the Court to declare DEA's alleged "policy" relating to the "unusual circumstances" provision to be unlawful.  Although Plaintiff insists that his claim is cognizable as a FOIA "policy or practice" claim, the Fifth Circuit has never recognized such a claim, and other circuits that have done so allow them only in narrow circumstances which are not met here.  For similar reasons, jurisdiction is lacking for Plaintiff's Administrative Procedure Act claim.  The APA permits suits challenging discrete agency actions, not broad programmatic practices.  Plaintiff also lacks standing because he fails to show any injury that is traceable to the alleged policy he is challenging, or redressable by a ruling in his favor.

Plaintiff's claims also fail on the merits.  The unusual circumstances provision applies when an agency must search for and collect requested records from "field facilities or other establishments that are separate from the office processing the request."  5 U.S.C. § 552(a)(6)(B)(iii)(I).  Therefore, under the FOIA's plain language, the provision is satisfied so long as a facility or establishment that needs to be searched is "separate" from the specific "office" processing the request.  Plaintiff's

1

alternative reading—that the provision applies only when records are located some unspecified physical distance from the office processing the request—finds no support in the statutory text. Perhaps for that reason Plaintiff relies heavily on legislative history, but consideration of such history is disfavored in this circuit. Moreover, the legislative materials in question are not probative of the statutory meaning because they do not clarify any ambiguity in the FOIA statute. Indeed, they offer mutually incompatible interpretations of the statute, thus demonstrating their ineffectiveness as interpretive tools. Accordingly, summary judgment in favor of Defendants is appropriate.

**LEGAL AND FACTUAL BACKGROUND**

**I.   The FOIA Process**

Under the FOIA, agencies must make "promptly available" to any person records upon submission of a proper request. 5 U.S.C. § 552(a)(3)(A). By default, the FOIA directs agencies to "determine within 20 [business] days. . . after the receipt of any such request whether to comply with such request" and then notify the requester of such determination. 5 U.S.C. § 552(a)(6)(A)(i). The 20-business day determination "timeline is not absolute." *Citizens for Responsibility & Ethics in Wash. (CREW) v. Fed. Election Comm'n*, 711 F.3d 180, 184 (D.C. Cir. 2013). After all, "it would be a 'practical impossibility for agencies to process all FOIA requests completely within twenty days.'" *Id.*

When "unusual circumstances" apply, an agency can extend for an additional 10 days the 20-business day time limit for processing a FOIA request by written notice to the requester. 5 U.S.C. § 552(a)(6)(B)(i). The statute defines "unusual circumstances" as follows:

> As used in this subparagraph, "unusual circumstances" means, but only to the extent reasonably necessary to the proper processing of the particular requests—
>
> (I) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request;
>
> (II) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or

2

> (III) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

5 U.S.C. § 552(a)(6)(B)(iii).  If a request cannot be processed within the extended time limit, the agency must allow the requester an opportunity to modify his or her request, or to arrange for an alternative time frame for processing the request.  5 U.S.C. § 552(a)(6)(B)(ii).   Consequently, the FOIA contemplates that at times determinations will not be made within 30 business days.  *See id.*

A requester receiving a timely and adverse determination in response to a request must, generally before filing suit, appeal it administratively.  *Voinche v. F.B.I.*, 999 F.2d 962, 963 (5th Cir. 1993) (per curiam) ("[FOIA] requires exhaustion of administrative remedies prior to seeking judicial review"); 28 C.F.R. § 16.8(e).  However, if the agency fails to adhere to FOIA's timelines, the "penalty" is that the requester is then "deemed to have exhausted his administrative remedies" and may generally then seek judicial review of the contested action without filing an administrative appeal.  5 U.S.C. § 552(a)(6)(C)(i); 5 U.S.C. § 552(a)(4)(B); *see also CREW*, 711 F.3d 189-90.  Failure to adhere to FOIA's timelines does not entitle the requester to judgment in its favor on the merits of the FOIA claim. Indeed, in this circuit, a suit brought based on failure to comply with FOIA's timelines under 5 U.S.C. § 552(a)(6)(C) "challenges only the timeliness of an agency's response" not "whether the requestor should have ultimate access to the records."  *Voinche*, 999 F.2d at 963.

Once suit is filed, the agency may receive additional time to process the request if it shows that its failure to meet the statutory time limits is the result of "exceptional circumstances" and that it has exercised "due diligence" in processing the request.  5 U.S.C. § 552(a)(6)(C)(i).

The FOIA also expressly authorizes agencies to promulgate regulations providing for "multitrack processing" of their FOIA requests—which allows agencies to process requests on a first-in, first-out basis within each track, and also permits them to respond to relatively simple requests more quickly than requests involving complex and/or voluminous records.  5 U.S.C. § 552(a)(6)(D).

3

The express permission to create multi-track systems further contemplates that some FOIA requests take a substantial amount of time to process.

## II. DEA's Invocation of the Unusual Circumstances Provision

On January 5, 2023, DEA's then Chief of the Freedom of Information and Privacy Act Unit ("DEA FOIA Chief") provided deposition testimony in this case. Ex. A. In response to a question asking if DEA considers unusual circumstances to be presented "any time a record that is requested in a FOIA request . . . is not in the FOIA office," the DEA FOIA Chief explained in an errata: "Most of the time, yes, as a majority of FOIA requests received by DEA require us to search for records located outside of our own office. However, each FOIA request is considered on a case-by-case basis. DEA does not assert unusual circumstances for every FOIA request that implicates potential records outside of my office." *Id.*, Errata Sheet at 2.[1] For example, the DEA FOIA Chief testified that if the FOIA Office knows from the beginning that there are no responsive records for a request, it would not invoke the unusual circumstances provision. *Id.* at 81:13-20; 102:13-103:6. Also, the FOIA Office staff has access to certain records relating to investigative matters and the staff generally handles certain types of requests for investigative matters themselves. *Id.* at 98:2-12. DEA generally invokes the unusual circumstances provision when requested records are not within the FOIA Office due to the need to coordinate with personnel in other offices to collect the records, which takes time. *Id.* at 57:12-17, 62:2-17, 75:6-12.

## III. Procedural History

When Plaintiff first filed suit, he alleged that DEA has a policy to deem nearly all FOIA requests as falling under the "unusual circumstances" provision of the FOIA, 5 U.S.C. §

---

[1] The DEA FOIA Chief initially responded "[c]orrect" to that question, Ex. A at 57:21-58:2; *see also id.* at 56:7-11, 68:15-20 (providing similar testimony), but the revised response more accurately reflects DEA's practices.

552(a)(6)(B)(i-iv).  *See generally* Compl., ECF No. 1.  Plaintiff has since amended his complaint four times, adding and removing various claims based upon on a variety of legal theories.  ECF Nos. 7, 21, 61, 82.

Plaintiff filed the operative complaint—the Fourth Amended and Supplemental Complaint—on October 13, 2023.  ECF No. 82.  That complaint includes six claims.  The first two claims challenge, under the FOIA and APA, an alleged DEA policy to "apply the [FOIA] 'unusual circumstances' exception any time a component FOIA office does not 'have access' to the records and must go 'outside' the office to gain access to the records."  *Id.* ¶ 129; *see also id.* ¶¶ 126–42.  Claims three, four, and five allege that DEA is an "agency" for purposes of a FOIA provision requiring agencies to appoint a Chief FOIA Officer, and that DEA failed to appoint one at the "Assistant Secretary or equivalent" level.  *See id.* ¶¶ 143-59.  Claim six alleges violations of the First Amendment based on a purported denial of the "right to timely access records from administrative proceedings and notice of the existence of adjudicator proceedings."  *Id.* ¶¶ 160–69.

On May 21, 2024, Magistrate Judge Bray issued a memorandum recommending the Court grant Defendants' motion to dismiss claims three through six and deny Plaintiff's summary judgment motion.  ECF No. 100.  On August 16, 2024, the Court issued an Order adopting Magistrate Judge Bray's recommendations, over Plaintiff's objections.  ECF No. 105.  Accordingly, only claims one and two remain in this action.  On September 30, 2024, Plaintiff filed his Motion for Summary Judgment.  ECF No. 108.

## LEGAL STANDARDS

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248. A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

Article III of the Constitution limits the judicial power to "Cases" and "Controversies"—a requirement that is "fundamental to the judiciary's proper role in our system of government." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). As part of the case-or-controversy requirement, a plaintiff must have standing to sue. The "constitutional minimum of standing," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992), has three requirements: (1) an injury-in-fact, that is (2) "fairly traceable to the challenged action," (3) and "redressable by a favorable ruling." *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). At the summary judgment phase a plaintiff cannot rest on "'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,'" establishing his or her standing. *Lujan*, 504 U.S. at 561.

To obtain forward-looking relief, a plaintiff must establish a substantial risk of future injury that is traceable to the defendants and likely to be redressed by an injunction against them. *Murthy*, 144 S. Ct. at 1993. To carry that burden, the plaintiff must proffer evidence that the defendants' "allegedly wrongful behavior w[ould] likely occur or continue." *Friends of the Earth, Inc. v. Laidlaw Env. Serv. (TOC), Inc.*, 528 U. S. 167, 190 (2000).

**ARGUMENT**

**I.  The Court Lacks Jurisdiction Over Plaintiff's FOIA Claim**

**A.  Plaintiff Purports to Challenge an Alleged Agency Policy, Not Any Withholding of Agency Records**

The Court lacks jurisdiction over Plaintiff's FOIA claim.  The FOIA confers district courts with subject matter "jurisdiction to enjoin [federal agencies] from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  Accordingly, "federal jurisdiction is dependent on a showing that an agency has (1) improperly (2) withheld (3) agency records."  *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (internal quotation marks omitted).  "Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements."  *Id.*  In other words, a person who has "requested and been denied information" has standing to sue under the FOIA.  *Prisology, Inc. v. Fed. Bureau of Prisons*, 852 F.3d 1114, 1117 (D.C. Cir. 2017).  In this lawsuit, however, Plaintiff does not seek to compel Defendants to disclose any particular agency records.  Instead, Plaintiff seeks judicial review of an alleged DEA FOIA policy, and the relief Plaintiff requests is to "declare the policy or practices at issue to be unlawful."  Pl's Mot. for Summ. J., ECF No. 108 ("Mot.") 22.

Plaintiff insists that the Court has jurisdiction over his FOIA claim because it "is styled as a FOIA pattern, practice, or policy (PPP) claim[.]"  Mot. 9.  But Plaintiff concedes that the Fifth Circuit has never recognized such a claim.  *Id.* (citing *Atchafalaya Basinkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 2022 U.S. Dist. LEXIS 12948, at *29 (E.D. La. Jan. 20, 2022)).  As for courts outside of the Fifth Circuit, last year the Second Circuit rejected a purported FOIA policy or practice claim where—like here—the plaintiff did "not ask [the court] to adjudicate its claims over particular documents or to order the disclosure of documents improperly withheld[.]"  *Am. Soc'y for the Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv.*, 60 F.4th 16, 22 (2d Cir. 2023).  Judge Menashi's

concurring opinion in that case squarely concluded that "a 'policy or practice' claim is not cognizable under the FOIA." *Id.* at 23 (Menashi, J., concurring). That is because the FOIA "statutory scheme authorizes a federal district court to provide the narrow remedies of enjoining an agency from improperly withholding records and ordering it to disclose the requested records that were improperly withheld." *Id.* "It does not authorize a court to superintend the policies and practices of that agency." *Id.*

Judge Menashi also highlighted a critical defect underlying any FOIA policy or practice claim: a different federal statute—the APA—already "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *ASPCA*, 60 F.4th at 23. Thus, the "proper avenue for challenging the policies and practices of agencies is the APA[.]" *Id.* at 24. It would be incongruous to interpret the FOIA—a statute governing the disclosure of federal records—to provide a cause of action to challenge agency policies, given that the APA already reflects Congress's carefully crafted set of procedures and limitations for challenging such policies. Allowing such a cause of action under the FOIA would encourage plaintiffs to file FOIA-based challenges to federal policies while evading the APA's legal requirements, such as the need to identify a final agency action. *See id.*

While some other circuit courts have recognized policy or practice claims, they have done so only in narrow circumstances that are unlike those presented here. For instance, in the D.C. Circuit, a "policy or practice" claim under FOIA is a narrow exception to the principle that FOIA lawsuits become moot once the agency releases the requested documents. *See Payne Enters., Inc. v. United States*, 837 F.2d 486, 490-91, 494 (D.C. Cir. 1988). Generally, "once all requested records are surrendered" in response to a FOIA request, "'federal courts have no further statutory function to perform' with respect to the particular records that were requested." *Id.* at 490-91 (citation omitted). The "policy or practice" exception recognized by the D.C. Circuit allows a court to maintain jurisdiction after the

plaintiff receives the requested records, so that the court can order relief aimed at preventing the agency from denying access to records in the future. *See id.* at 491 ("[E]ven though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future.") (emphasis in original). In the D.C. Circuit, therefore, Article III standing under a "policy or practice" theory is limited to the specific "FOIA requests submitted by" the plaintiff that are "actually at issue in the case." *See Am. Ctr. for Law & Justice v. U.S. Dep't of State*, 289 F. Supp. 3d 81, 87 (D.D.C. 2018) (quoting *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 71 (D.D.C. 2016)).[2]

Here, Plaintiff does not invoke the concept of a "policy or practice" as an exception to mootness. Instead, his lawsuit more broadly asks the Court to review the lawfulness of an alleged DEA FOIA policy without seeking disclosure of any agency records—*i.e.*, without first establishing the necessary predicate for jurisdiction under the FOIA. The Court should decline Plaintiff's invitation to expand FOIA jurisdiction in this manner, particularly given the absence of any Fifth Circuit authority supporting Plaintiff's sweeping view of the FOIA.

### B.  Plaintiff Fails to Show Any Injury Traceable to the Alleged Policy at Issue

Plaintiff also fails to establish any Article III injury that is traceable to the alleged policy at issue. *See Murthy*, 144 S. Ct. at 1993. The injury Plaintiff is claiming is delay in receiving records in response to his FOIA requests. Mot. 7-8. But Plaintiff has not shown any delays in receiving records

---

[2] None of the decisions cited by Plaintiff suggests he may challenge an alleged FOIA policy independently of any claim seeking the disclosure of specific agency records. For example, in *Animal Legal Defense Fund v. United States Department of Agriculture*, 933 F.3d 1088, 1092-93 (9th Cir. 2019), the plaintiff not only sought prospective declaratory and injunctive relief, but also sought the records it had requested through the FOIA. *See also Animal Legal Def. Fund v. United States Dep't of Agric.*, 2018 U.S. Dist. LEXIS 88535, at *4 (N.D. Cal. May 25, 2018). Similarly, in *Judicial Watch, Inc. v. United States Department of Homeland Security*, 895 F.3d 770, 774 (D.C. Cir. 2018), the plaintiff sought injunctive relief "in addition to seeking an order that the Secret Service produce requested records[.]" In contrast, here, Plaintiff purports to challenge an alleged FOIA policy or practice without establishing the jurisdictional prerequisites that are necessary for any FOIA claim.

that are traceable to a decision by DEA to invoke the unusual circumstances provision, the alleged policy at issue here. Therefore, Plaintiff has failed to meet his burden of proof to demonstrate standing. *See Lujan*, 504 U.S. at 561 (at summary judgment, plaintiff must present evidence of "specific facts" establishing standing).

Plaintiff's motion references four FOIA requests for which he contends the agency improperly invoked the unusual circumstances provision, but none of those instances suggests any delay in releasing records was attributable to invoking that provision. Mot. 8. As to two of those requests (request numbers 23-1043-F and 23-00911-F), Plaintiff says nothing at all about the processing timeline, and therefore fails to demonstrate any delays caused by invoking the unusual circumstances provision. *Id.* As to another request (request number 23-00213-F), Plaintiff concedes that DEA denied the request, so there was no document release, much less any delayed release. *Id.* As to the fourth request, Plaintiff states only that it "remains outstanding" since its submission (in February 2023). *Id.* 8-9.[3] That fact alone, however, fails to establish that invoking the unusual circumstances provision was the cause of any delay. Indeed, that request broadly seeks all communications between two federal agencies "regarding Adderall shortages" over a more than one-year period. Mot. Ex. 3. It is not surprising that DEA requires significant time to respond to that expansive request. Accordingly, Plaintiff lacks standing because he has not shown that he was "personally harmed" by the alleged agency policy he challenges here. *See Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2016) (a plaintiff claiming "a pattern or practice of FOIA violations" shows "injury in fact if he demonstrates," *inter alia*, that "plaintiff was personally harmed by the alleged policy").[4]

---

[3] Plaintiff's Motion mistakenly states that the request was submitted in 2013, Mot. 9, but his exhibit three makes clear that it was actually submitted in 2023, *see* Mot. Ex. 3.

[4] Plaintiff's motion also lists the request numbers associated with several other FOIA requests, but Plaintiff offers no evidence—or even argument—to show how those requests establish any injury that is traceable to the challenged policy. Mot. 8 n.3.

A further flaw in Plaintiff's theory of standing is that it misunderstands the significance of the FOIA's 20 or 30-day deadline. That deadline requires only that the agency make a "determination" within the applicable deadline, not that it release responsive records. As then-Judge Kavanaugh concluded, "[i]n order to make a 'determination' within the statutory time periods and thereby trigger the administrative exhaustion requirement, the agency need not actually produce the documents within the relevant time period." *CREW*, 711 F.3d at 182. And when, in any given case, the agency "does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Id.* at 189. In other words, the statutory timeline—and an agency's failure to meet that timeline—simply sets forth a condition that must be met before a court may exercise jurisdiction over the underlying FOIA claim.

Accordingly, a delay in making a FOIA determination does not equate to a delay in releasing documents. Extending the determination date by ten days simply defers the date by which the requestor can file a lawsuit to compel disclosure of the records sought. It does not affect the release timeline, which depends on several factors such as the complexity of the search for responsive records, the volume of potentially responsive records that need to be reviewed, the extent to which the agency must consult with other agencies about the records, and the extent to which the records must be redacted prior to release. Thus, Plaintiff has not shown that DEA's invocation of the unusual circumstances provision has caused any delay in disclosing records to him (or any other conceivable injury). Plaintiff therefore lacks standing.

### C. Plaintiff Fails to Establish Redressability

Plaintiff's alleged injury also would not be "redressable by a favorable ruling." *Murthy*, 144 S. Ct. at 1986. The relief Plaintiff is seeking is for the Court to "declare the policy or practices at issue to be unlawful." Mot. 22. But if DEA were to change its practices for invoking the unusual circumstances provision, that would not affect the timeframe for releasing responsive documents,

which is the injury Plaintiff is claiming.  At most, for some FOIA requests, Plaintiff could become eligible to file a lawsuit in federal court after 20 working days instead of 30 days.  *See Elec. Privacy Info. Ctr. v. DOJ*, 15 F. Supp. 3d 32, 41 (D.D.C. 2014) ("[T]he impact of blowing the 20-day deadline relates *only to the requester's ability to get into court*.") (emphasis in original).  And it would have no impact whatsoever in situations where the agency could still invoke the unusual circumstances provision.  For instance, if a request required the agency to search for and review a voluminous number of records, unusual circumstances would exist regardless of where the records were located.  *See* 5 U.S.C. § 552(a)(6)(B)(iii).  Plaintiff has not shown that he is likely to submit FOIA requests to DEA that meet the criteria for the unusual circumstances provision under current DEA practices but would not if those practices were to change.  Accordingly, Plaintiff's purported injury is not redressable, and Plaintiff lacks standing.

## II.  The Court Lacks Jurisdiction Over Plaintiff's APA Claim

Plaintiff also asserts a claim under the APA that is "substantively identical" to his purported FOIA claim.  Mot. 9; *see also* Fourth Am. Compl. ¶¶ 138-42.  The APA claim suffers from the same traceability and redressability problems discussed above.  But jurisdiction over the APA claim is lacking for another reason as well: the APA does not authorize any such "policy or practice" claim in this circumstance.

The APA authorizes courts to compel "agency action" that has been unlawfully withheld or unreasonably delayed and to set aside "agency action" found to be in violation of the APA.  5 U.S.C. § 706.  As the Supreme Court has explained, "agency actions" under the APA are "properly understood to be limited . . . to a discrete action."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004).  Thus, a plaintiff cannot expand the APA beyond such a "discrete action" to embrace an alleged "policy or practice" of agency action.  *See Sierra Club v. Peterson*, 228 F.3d 559, 567 (5th Cir. 2000) (rejecting APA programmatic challenge and explaining that plaintiffs could not "challenge an

entire program by simply identifying specific allegedly-improper final agency actions within that program"). Furthermore, Plaintiff's "policy or practice" claim appears designed to result in programmatic changes to DEA's FOIA management practices. But the Supreme Court has squarely held that this type of programmatic claim cannot be sustained. *See Lujan v. Nat. Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (rejecting claim that "violation of the law is rampant within this program" and explaining that an APA plaintiff "cannot seek wholesale improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made" (emphasis in original)); *see also Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*, 733 F. Supp. 2d 1172, 1183 (E.D. Cal. 2010) ("Courts may determine whether particular actions violate broad mandates, but the APA does not permit courts to oversee agencies wholesale."); *Texas v. U.S. Dep't of Homeland Sec.*, 2023 U.S. Dist. LEXIS 212676, at *47 (W.D. Tex. Nov. 29, 2023) ("courts take great care not to confuse final agency action with . . . broader programmatic decisions").

For these reasons, courts have not hesitated to reject purported "policy or practice" claims under the APA based on agency delay. For instance, in *Del Monte Fresh Produce N.A., Inc. v. United States*, the plaintiff alleged a "pattern and practice" of delay, claiming that the Food and Drug Administration allowed too much time to pass before inspecting imported fruits or vegetables. 706 F. Supp. 2d 116, 118 (D.D.C. 2010). The district court held that a purported "pattern and practice" claim was not justiciable under the APA: "broad review of agency operations is just the sort of 'entanglement' in daily management of the agency's business that the Supreme Court has instructed is inappropriate." *Id.* at 119 (citing *Norton*, 542 U.S. at 66-67); *see also Animal Legal Def. Fund v. Vilsack*, 110 F. Supp. 3d 157, 161 (D.D.C. 2015) (rejecting plaintiff's challenge to a "'pattern and practice of licensing' decisions" and noting that such a claim is not justiciable under the APA); *Wilderness Soc'y v. Norton*, 2005 U.S. Dist. LEXIS 18734, *67 (D.D.C. Jan. 10, 2005) (dismissing APA claim alleging a pattern or practice); *Californians v. EPA*, 2018 U.S. Dist. LEXIS 56105, at *59 (N.D. Cal. Mar. 30,

2018) ("Plaintiffs have failed to persuasively establish that a pattern and practice claim is cognizable under the APA."). The Court therefore lacks jurisdiction over Plaintiff's second claim for relief. *See Del Monte*, 706 F. Supp. 2d at 118 n.3.[5]

### III. Plaintiff Fails to Establish any FOIA or APA Violation

Even if Plaintiff had established jurisdiction for a "policy or practice" FOIA or APA claim, any such claim would fail on the merits. Plaintiff's contention that the unusual circumstances provision can apply only where records are located in a location distant from the processing office is contrary to the statutory text. And Plaintiff's resort to arguments based on legislative history and policy do not change the conclusion that Plaintiff has failed to establish any legal violation by Defendants.

### A. DEA May Lawfully Invoke the Unusual Circumstances Provision When Records Must Be Collected From Offices Outside of DEA's FOIA Office

#### 1. DEA's Practices Are Fully Consistent with the FOIA's Unusual Circumstances Provision

The FOIA states that "unusual circumstances" include "the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request." 5 U.S.C. § 552(a)(6)(B)(iii)(I). Therefore, under the FOIA's plain language, so long as a facility or establishment that needs to be searched is separate from the specific office processing the request, "unusual circumstances" exist. Thus, DEA may properly invoke the unusual circumstances provision when a request seeks records located outside of DEA's FOIA office—"the office processing the request."

---

[5] As noted above, Judge Menashi in *ASPCA* concluded that the "proper avenue for challenging the policies and practices of agencies is the APA[.]" *ASPCA*, 60 F.4th at 24. But Judge Menashi did not suggest that the APA may be used to challenge every alleged agency "policy or practice." On the contrary, he explained that the plaintiff in *ASPCA* had not filed an APA claim because the plaintiff would have had to "identify a specific final agency action" and meet other APA requirements, *id.*, which it likely could not do.

None of Plaintiff's arguments undercuts that conclusion.  Plaintiff first cites dictionaries to argue that the phrase "unusual circumstances" must necessarily refer to a practice that is uncommon. Mot. 12-13.  But the phrase "unusual circumstances" is a specifically defined term in the FOIA statute, and that statutory definition controls over any dictionary definition.  *See* 5 U.S.C. § 552(a)(6)(B)(iii) ("As used in this subparagraph, 'unusual circumstances' means, but only to the extent reasonably necessary to the proper processing of the particular requests" "the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request," among other defined circumstances).  When, as here, "Congress takes the trouble to define the terms it uses, a court must respect its definitions as virtually conclusive." *Garland v. Cargill*, 602 U.S. 406, 428 n.9 (2024); *Tanzin v. Tanvir*, 592 U.S. 43, 47 (2020) ("'When a statute includes an explicit definition, we must follow that definition,' even if it varies from a term's ordinary meaning.").

Relatedly, although Plaintiff insists that the "unusual circumstances" provision necessarily cannot "apply more than 50% of the time," Mot. 12, whether DEA has properly invoked that provision in a particular situation cannot be answered by simply counting the frequency with which the agency invokes the provision to FOIA requests generally.  That is because the meaning of the key statutory phrase—"the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request"—does not somehow change based on the number of FOIA requests an agency happens to receive that meet those criteria. If the criteria are satisfied for a particular request, the provision applies.  Similarly, the fact that Plaintiff considers the unusual circumstances provision to be an exception to the default timeline for processing FOIA requests says nothing about whether the provision applies in any particular situation.  Mot. 13.

Plaintiff's narrow focus on the phrase "unusual circumstances" therefore misses the mark. The appropriate question is not what the dictionary definition of that phrase is, but rather what it

means for there to be a "need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request." 5 U.S.C. § 552(a)(6)(B)(iii). Plaintiff offers no coherent answer to that question, instead suggesting a variety of interpretations that are untethered to the statutory text and appear to reflect only Plaintiff's desired outcome. For instance, Plaintiff insists that an "establishment" must be "in a different zip-code" than the agency headquarters, Mot. 16, even though the statute says nothing about zip codes. He argues that an "establishment" necessarily cannot include an office "10-feet across from the FOIA Office," *id.* 15, even though the statute does not impose any minimum physical separation requirement before an office can be considered a "separate" "establishment."

At bottom, Plaintiff's position seems to be that an "establishment" is necessarily physically distant from "the office processing the request," but nothing in the statute itself supports that conclusion. The statute requires only that the "establishment" and "office processing the request" be "separate," but it imposes no physical distance requirement. 5 U.S.C. § 552(a)(6)(B)(iii). Also, by defining the relevant processing entity at the "office" level—instead of defining it by, for example, building or zip code—the statute suggests that "other establishments" can include offices. If "other establishments" was intended to refer only to other geographic locations, Congress could easily have made that clear. *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2458 (2024) ("Congress could have chosen different language in [the statute] . . . [I]t did not.").[6] Further, the fact that the statute refers to "field facilities" as being distinct from "other establishments" indicates that "other establishments" can include locations that are not in the field but rather are at headquarters.

Accordingly, Plaintiff's belief that "separate" "establishments" refers only to establishments

---

[6] Contrary to Plaintiff's argument, Mot. 16, the terms "office" and "establishment" do not "merge" under Defendants' interpretation. "Establishment" is the broader term which can include an "office." The statute's use of "establishment" reflects the fact that records potentially could be held in something other than an "office," such as a warehouse.

that exceed some minimum physical distance from the office processing the request, is unsupported and incorrect. Notably, at some points in his brief, Plaintiff offers interpretations of the statute that require only that the records be located outside of the FOIA office, which match Defendants' interpretation. Specifically, Plaintiff states that "the requested documents must be in a different place" from the office processing the request, and he defines "establishment" to include simply "[o]ther physical places of conducting agency business." Mot. 15, 17. Similarly, Plaintiff's dictionary and judicial definitions for the term "establishment" do not preclude an office within agency headquarters from qualifying as a "separate" "establishment." For example, the Webster's Dictionary definition— defining "establishment" as a "place where a person is settled . . . for transacting business"—could certainly include an office within the headquarters building, such as DEA's Office of Chief Counsel or its Office of Compliance. Mot. 14 (quoting Webster's New Twentieth Century Dictionary of the English Language, Unabridged (2d ed.)). Likewise, the judicial definition of "establishment" as "a distinct physical place of business" also would encompass particular agency offices. *Id.* 15 (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 496 (1945)).

Plaintiff's arguments ignore that it would make little sense for Congress to have made the applicability of the provision turn only on the physical distance of the records. *See Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 63 (2004) ("[T]here is no canon against using common sense in construing laws as saying what they obviously mean"). There are obvious practical difficulties associated with having to search for and collect records from another office that is separate from the office processing the request, even if that other office is near the location of processing. The need to coordinate with personnel in the other office (who might not be familiar with FOIA collection procedures) to determine what records might be responsive, where such records are located within that office's potentially unique records systems, and how to efficiently access and retrieve such records, impose meaningful constraints on an agency's ability to make prompt FOIA determinations and justify

17

invoking the unusual circumstances provision. Plaintiff's contrary interpretation—considering only the physical distance of the records from DEA's FOIA office—ignores this reality.

Plaintiff's remaining arguments are no more cogent in their analysis. Plaintiff notes that the statute separately defines "agency" to include, *inter alia*, an "other establishment in the executive branch" and therefore reasons that "establishment" in the unusual circumstances provision must be "akin to another agency[.]" Mot. 16-17. But that reading is contrary to the plain statutory text, which Plaintiff recognizes establishes unusual circumstances when records are located in field facilities that are part of the same agency. *Id.* 16. Far from supporting Plaintiff's interpretation, the use of the term "establishment" to define "agency" reflects that "establishment" is a broad, catch-all term that is flexible enough to encompass a particular separate headquarters office.

Plaintiff also argues that the second unusual circumstances provision—for requests involving voluminous records—would be superfluous under Defendants' interpretation. Mot. 13. But the second provision would still apply to requests for voluminous records held by the FOIA Office. Plaintiff's argument also ignores that the FOIA is not specific to DEA but rather applies to all federal agencies generally, and not every agency uses the same structure for FOIA processing as DEA. An agency with decentralized FOIA processing occurring throughout the agency would likely invoke the first unusual circumstances provision less frequently than an agency, like DEA, with a designated FOIA office for processing all of the agency's FOIA requests, and would therefore have more frequent occasion to apply the second provision.

Lastly, Plaintiff argues that DEA fails to conduct an individualized inquiry into whether invoking the unusual circumstances provision is "reasonably necessary to the proper processing of the particular requests." Mot. 17 (quoting 5 U.S.C. § 552(a)(6)(B)(iii)). But Plaintiff cites no evidence supporting that assertion, and the testimony of the DEA FOIA Chief refutes it. Specifically, the DEA FOIA Chief explained that "each FOIA request is considered on a case-by-case basis" and that

"DEA does not assert unusual circumstances for every FOIA request that implicates potential records outside of [the FOIA] office."  Ex. A, Errata Sheet at 2.  For instance, if the FOIA Office knows from the beginning that there are no responsive records, it would not invoke the unusual circumstances provision.  *Id.* at 81:13-20; 102:13-103:6.  Also, the FOIA Office staff has access to certain records relating to investigative matters, and the staff generally handles certain types of requests for investigative matters themselves.  *Id.* at 98:2-12.  To be sure, DEA does invoke the provision "[m]ost of the time" when requested records are not maintained within the FOIA Office, *id.*, Errata Sheet at 2, but that is because of the need to coordinate with personnel in other offices to collect the records, which takes time, *id.* at 57:12-17, 62:2-17, 75:6-12.  In any event, Plaintiff's contention that DEA does not make individualized determinations could not establish any policy or practice violation because it says nothing about whether the unusual circumstances provision has been improperly invoked in any particular situation.  In other words, whether DEA makes an individualized determination does not determine whether unusual circumstances in fact exist for a specific request.  *See Doe v. Doe Agency*, 608 F. Supp. 2d 68, 72 (D.D.C. 2009) (rejecting APA pattern or practice claim in part because whether the agency acted lawfully "depends on the facts of the particular case").

### 2.  Plaintiff's Cited Legislative History Is Inconsistent and Does Not Change the Meaning of the Clear Statutory Text

Plaintiff insists that his interpretation of the statute is supported by legislative history.  Mot. 18-20.  But "legislative history is not the law."  *Azar v. Allina Health Servs.*, 587 U.S. 566, 579 (2019); *see also Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 599 (2011) ("[A]s we have said before, Congress's 'authoritative statement is the statutory text, not the legislative history.'").  And consideration of legislative history is "generally discouraged in this circuit[.]"  *Gen. Land Office of Tex. v. Biden*, 2024 U.S. Dist. LEXIS 40880, at *51-52 (S.D. Tex. Mar. 8, 2024) (Tipton, J.) (quoting *United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023)).

"Whatever the usefulness of relying on legislative history materials in general, the arguments

19

against doing so are particularly compelling here." *Whiting*, 563 U.S. at 599 (rejecting party's reliance on congressional committee report absent a textual basis for the party's statutory interpretation). This is for two principal reasons. First, Plaintiff relies on reports by congressional committees to purportedly show the understanding of Congress as a whole. Mot. 18-20. But "[l]egislative history that does not represent the intent of the whole Congress is nonprobative[.]" *Bank One Chi., N.A. v. Midwest Bank & Tr. Co.*, 516 U.S. 264, 280 (1996) (Scalia, J., concurring in part and concurring in judgment); *id.* at 279 (rejecting the idea that "the intent of a few committee members is . . . dispositive"). Plaintiff has not shown, nor could he, that each of the legislators who voted for the bill in question and the president who signed it into law shared the understanding of whomever drafted the committee reports.

Second, "[e]xtrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). But the committee reports cited by Plaintiff do not inform the meaning of any ambiguous term. The House report refers to circumstances where requested information is stored "outside the country," but nothing in the statutory text suggests that the unusual circumstances provision applies only where records are located outside the United States. H. Rep. No. 93-876, at 126. The Senate Report suggests a different meaning of the unusual circumstances provision—that it does not apply when records are located "in the same city as the processing office." S. Rep. No. 93-854, at 179. Again, there is no textual hook for that interpretation because the statute says nothing about records located in the same or a different city as the processing office. "[A]lthough legislative history may give meaning to ambiguous statutory provisions, legal principles may not be gleaned solely from legislative history that has no statutory reference point." *Ivey v. Wells Fargo, N.A.*, 2014 U.S. Dist. LEXIS 148249, at *7-8 (W.D. Tex. Oct. 16, 2014) (quoting *Int'l Bhd. of Elec. Workers, Local Union No. 474, AFL-CIO v. N.L.R.B.*, 814 F.2d 697, 708

(D.C. Cir. 1987); *see also Bostock v. Clayton Cnty.*, 590 U.S. 644, 674 (2020) ("'Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it.'").  Also, the fact that the two committee reports offer two distinct meanings—one finding unusual circumstances when records are located outside the country and the other when records are located outside the city—strongly undermines their usefulness as interpretive tools.

### 3. Plaintiff's Policy Argument Does Not Change the Meaning of the Clear Statutory Text

Plaintiff's Motion includes a short section purportedly discussing "policy considerations," which claims that "DEA and DOJ have made FOIA compliance low priorities."  Mot. 22.  The only example Plaintiff offers to support that sweeping accusation is that "DEA's FOIA Office apparently does not have access 'to the hundreds of IT systems that DEA uses.'"  *Id.*  Plaintiff does not describe the factual basis for his belief that a small group of FOIA professionals could reasonably operate and navigate the roughly 150 different IT systems that DEA uses.  As the DEA FOIA Chief explained at her deposition:

> [W]e are not the subject matter experts in all the various things that DEA does.  So if I had to, for example, go to the Office of Diversion to pull material – I mean, we would have to become experts in all the various offices, their record systems.  You know, we'd have to have a thorough understanding of the content of those records.  That is just not feasible with a staff of 18.

Ex. A at 65:21-66:8; *see also id.* at 62:2-14.

At bottom, Plaintiff's "policy" argument is nothing more than his critique of the way that DEA has organized its FOIA office.  Plaintiff offers no basis to conclude that he is qualified to opine on this subject, and his personal views here are irrelevant to the legal questions before the Court.

### B. The Court Should Reject Plaintiff's Attempt to Introduce A New Claim Through His Summary Judgment Motion

In two short paragraphs near the end of his Motion, Plaintiff attempts to introduce an entirely new claim into the litigation.  In a cursory manner, Plaintiff argues that DEA does not "provide a date

on which a determination is expected to be dispatched" when invoking the unusual circumstances provision. Mot. 21. The Court should reject that claim for several reasons. First, the claim is absent from Plaintiff's operative complaint, and Plaintiff cannot use his summary judgment motion to amend his complaint to add a new claim. *See Pitts v. City of Madison*, 2017 U.S. Dist. LEXIS 198579, at *19 (S.D. Miss. Dec. 4, 2017) (a plaintiff "cannot amend her Complaint by adding new claims in her summary judgment briefs."). Indeed, Plaintiff has already amended his complaint four times, so the time to add new claims has long passed. Second, the claim is inadequately briefed. *See Irving v. Meridian Sec. Ins. Co.*, 649 F. Supp. 3d 293, 299 (N.D. Tex. 2022) ("The Court cannot grant summary judgment on an issue that is inadequately briefed."). Third, Plaintiff fails to establish standing—he does not show any injury resulting from the alleged absence of an expected determination date. *Lujan*, 504 U.S. at 560-61. Fourth, policy or practice FOIA claims are unrecognized in the Fifth Circuit and courts do not permit APA claims to challenge broad alleged agency practices. *See supra* at 7-9. Fifth, Plaintiff fails to show instances in which DEA failed to provide the expected determination date, and thus fails to establish the existence of any policy or practice. The Court should therefore reject Plaintiff's attempt to add a new, unpled claim into this case at the eleventh hour.

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in favor of Defendants on claims one and two and deny Plaintiff's motion for summary judgment.


DATED: November 6, 2024

Respectfully Submitted,

*s/ Jimmy A. Rodriguez*
Jimmy A. Rodriguez
Assistant United States Attorney
Southern District of Texas
Attorney in Charge

Texas Bar No. 24037378
Federal ID No. 572175
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9532
Fax: (713) 718-3303
jimmy.rodriguez2@usdoj.gov


BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*s/ Joshua Kolsky*
Joshua M. Kolsky
Senior Trial Counsel
Civil Division, Federal Programs Branch
U.S. Department of Justice
Texas Bar No. 24092989
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-7664
joshua.kolsky@usdoj.gov

Attorneys for Defendants




**CERTIFICATE OF SERVICE**

I certify that on November 6, 2024, a true and correct copy of the foregoing was filed with

the United States District Clerk for the Southern District of Texas and electronically served on all

counsel of record via the District's ECF system.


*s/ Joshua Kolsky*
Joshua M. Kolsky
Senior Trial Counsel


23