UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MATTHEW C. ZORN,<br><br>   *Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE, *et al.*,<br><br>   *Defendants*. | Civil Action No. 4:22-CV-02396 |

**DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**
ARGUMENT ..........................................................................................................................................1

    I.     Plaintiff Fails to Establish Jurisdiction for A FOIA "Policy or Practice" Claim ..........................................................................................................................1

    II.    Plaintiff Lacks Standing to Pursue His FOIA or APA Claims .........................................3

    III.   The Court Lacks Jurisdiction Over Plaintiff's APA Claim ................................................5

    IV.   Plaintiff Fails to Show Any Violation of Law ....................................................................7

        A.    Plaintiff's Statutory Interpretation Is Unsupported by the Statutory Text and Should Be Rejected .................................................................................7

        B.    Plaintiff's Remaining Arguments Fail to Show Any Violation of Law ..............9

CONCLUSION ..................................................................................................................................10

# **TABLE OF AUTHORITIES**

**CASES**

*Al Otro Lado, Inc. v. Nielsen*,
  327 F. Supp. 3d 1284 (S.D. Cal. 2018) ...................................................................................7

*Am. Ctr. for L. & Just. v. U.S. Dep't of State*,
  289 F. Supp. 3d 81 (D.D.C. 2018) ..........................................................................................2

*Am. Soc'y for the Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Servs.*,
  60 F.4th 16 (2d Cir. 2023) .......................................................................................................3

*Animal Legal Def. Fund v. U.S. Dep't of Agric.*,
  2018 U.S. Dist. LEXIS 88535 (N.D. Cal. May 25, 2018) ......................................................2

*Animal Legal Def. Fund v. U.S. Dep't of Agric.*,
  933 F.3d 1088, (9th Cir. 2019) ................................................................................................2

*Bennett v. Spear*,
  520 U.S. 154 (1997) ................................................................................................................5

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*,
  507 F. Supp. 3d 228 (D.D.C. 2020) ........................................................................................6

*Citizens for Resp. & Ethics in Wash. v. FEC*,
  711 F.3d 180 (D.C. Cir. 2013) ................................................................................................4

*Ctr. for Auto Safety & Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
  452 F.3d 798 (D.C. Cir. 2006) ................................................................................................6

*Del Monte Fresh Produce N.A. v. United States*,
  706 F. Supp. 2d 116 (D.D.C. 2010) ................................................................................... 6, 7

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
  601 U.S. 42 (2024) ..................................................................................................................9

*Frost Brown Todd LLC v. Ctrs. for Medicare*,
  2024 U.S. Dist. LEXIS 19303 (D.D.C. Feb. 5, 2024) ............................................................7

*Hajro v. U.S. Citizenship & Immigr. Servs.*,
  811 F.3d 1086 (9th Cir. 2016) .................................................................................................2

*Ivey v. Wells Fargo, N.A.*,
  2014 U.S. Dist. LEXIS 148249 (W.D. Tex. Oct. 16, 2014) ...................................................9

*Jud. Watch, Inc. v. Dep't of Homeland Sec.*,
　895 F.3d 770 (D.C. Cir. 2018) .................................................................................................. 2

*Lujan v. Defs. of Wildlife*,
　504 U.S. 555 (1992) .................................................................................................................. 3

*Murthy v. Missouri*,
　603 U.S. 43 (2024) .................................................................................................................... 4

*RCM Techs., Inc. v. U.S. Dep't of Homeland Sec.*,
　614 F. Supp. 2d 39 (D.D.C. 2009) ........................................................................................ 5, 6

*Snell v. United Specialty Ins. Co.*,
　102 F.4th 1208 (11th Cir. 2024) ................................................................................................ 7

### STATUTES

5 U.S.C. § 552(a)(4)(B) .................................................................................................................. 2

5 U.S.C. § 552(a)(6)(B)(iii)(I) ................................................................................................... 8, 10

5 U.S.C. § 552(a)(6)(B)(iii)(III) ..................................................................................................... 5

Plaintiff's Opposition to Defendants' Cross-Motion for Summary Judgment fails to overcome the numerous fatal deficiencies in Plaintiff's legal theories. For the reasons discussed in the Cross-Motion and below, the Court should enter judgment in favor of Defendants.

## ARGUMENT

### I. Plaintiff Fails to Establish Jurisdiction for a FOIA "Policy or Practice" Claim

Plaintiff concedes that the Fifth Circuit has never recognized the type of FOIA claim he attempts to bring in this case. Opp'n, ECF No. 114, at 8. Nevertheless, he insists that his "policy or practice" claim should be permitted here because it is allegedly consistent with precedent from the D.C. and Ninth Circuits. *Id.* at 5-8. But that is incorrect. As Defendants' Motion explained, courts that recognize "policy or practice" FOIA claims typically describe them as a narrow exception to the principle that FOIA lawsuits become moot once the agency releases the requested records at issue in the case. Cross-Mot., ECF No. 111, at 8-9. Here, however, there are no requested records at issue. Plaintiff does not seek to compel Defendants to disclose particular records, but rather asks the Court to review an alleged DEA FOIA policy and declare it unlawful. Although Plaintiff's Opposition discusses various FOIA requests he made to DEA, none of those requests is at issue in this case and the details regarding their processing are not in the record before the Court. Opp'n at 3-5. Plaintiff's cursory discussion of those FOIA requests—without citations to any evidence[1]—raises as many questions as it answers, and it underscores why a FOIA policy or practice claim is particularly unsuited to a case that does not involve the application of a policy to a specific FOIA request, but rather seeks to challenge the policy or practice in the abstract.

Plaintiff disputes that courts describe policy or practice claims as an exception to mootness, and he argues that those claims may be brought even when unrelated to any request for agency records.

---

[1] *See* Court Procedures of Hon. Drew B. Tipton, ¶ 16(f) (requiring pinpoint citations for all citations to evidence).

Opp'n at 6-8. But the only circuit-level decisions Plaintiff cites support Defendants' position, not Plaintiff's. In *Judicial Watch, Inc. v. Department of Homeland Security*, 895 F.3d 770 (D.C. Cir. 2018), the D.C. Circuit explained that "FOIA lawsuits generally become moot once an agency has made available requested non-exempt records, whether voluntarily or after court order" but that "[t]his court has recognized an exception to mootness where an agency has a 'policy or practice' that 'will impair the party's lawful access to information in the future.'" *Id.* at 777. Moreover, in that case, the plaintiff sought injunctive relief "in addition to seeking an order that the Secret Service produce requested records[.]" *Id.* at 774. Similarly, in *Hajro v. U.S. Citizenship & Immigration Services*, 811 F.3d 1086 (9th Cir. 2016), the plaintiff sought access to records allegedly wrongfully withheld. *Id.* at 1095; *see also id.* at 1102 (discussing "the district court's finding with respect to Hajro's specific FOIA request"). And in *Animal Legal Defense Fund v. United States Department of Agriculture*, 933 F.3d 1088 (9th Cir. 2019), the plaintiff not only sought prospective declaratory and injunctive relief, but also sought the records it had requested through the FOIA. *Id.* at 1092-93; *see also Animal Legal Def. Fund v. United States Dep't of Agric.*, 2018 U.S. Dist. LEXIS 88535, at *4 (N.D. Cal. May 25, 2018) ("[P]laintiff had not yet received records or a response regarding its appeal, and it filed this action seeking the records" and other relief). By contrast, here, Plaintiff purports to challenge an alleged FOIA policy or practice without establishing the jurisdictional prerequisites that are necessary for any FOIA claim.

Plaintiff's argument based on the text of the FOIA is no more persuasive. Opp'n at 8-9. Specifically, Plaintiff notes that a delay in producing records can constitute a withholding and points to language in the FOIA authorizing courts to enjoin agencies from "withholding agency records." *Id.* at 8 (quoting 5 U.S.C. § 552(a)(4)(B)). But the "agency records" subject to the jurisdiction of the court would be records responsive to the "FOIA requests submitted by" the plaintiff that are "actually at issue in the case." *See Am. Ctr. for Law & Justice v. U.S. Dep't of State*, 289 F. Supp. 3d 81, 87 (D.D.C. 2018). Here, there are no particular FOIA requests or records at issue.

Finally, Plaintiff offers no substantive response to the well-reasoned, concurring opinion in *American Society for the Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Services*, 60 F.4th 16 (2d Cir. 2023). There, Judge Menashi explained why the existence of a FOIA "policy or practice" claim is inconsistent with the fact that another federal statute—the Administrative Procedure Act—already "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Id.* at 23 (Menashi, J., concurring).[2]

## II. Plaintiff Lacks Standing to Pursue His FOIA or APA Claims

Defendants' Motion explained that Plaintiff has not shown any delay in receiving records that are traceable to a decision by DEA to invoke the unusual circumstances provision, the alleged policy at issue here. Cross-Mot. at 9-11. Nothing in Plaintiff's Opposition undermines that point. Plaintiff's Opposition accuses DEA of "indefinite" delays in FOIA processing, Opp'n at 10, but Plaintiff has not shown that those alleged delays were caused by the agency invoking the unusual circumstances provision. As Defendants have explained, the time required to process a particular request and release responsive records depends on numerous factors, such as the complexity of the search for responsive records, the volume of potentially responsive records that need to be reviewed, the extent to which the agency must consult with other agencies about the records, and the extent to which the records must be redacted prior to release. Cross-Mot. at 11. Those factors do not change based on whether the agency has invoked the unusual circumstances provision. Plaintiff presents no evidence showing that DEA's invocation of the unusual circumstances provision is likely to delay the release of records responsive to a pending or future FOIA request of Plaintiff. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555,

---

[2] Plaintiff states that "under the logic of the concurring opinion, I have an APA claim." Opp'n at 9 n.1. But the fact that the APA provides procedures to challenge certain agency policies does not mean that any claim styled as an APA claim is well-pled. Indeed, Judge Menashi discussed some the particular requirements that must be satisfied to bring an APA claim, including the need to "identify a specific final agency action[.]" 60 F.4th at 24 (Menashi, J., concurring). As discussed in the Motion (at 12-14) and below (at 5-7), Plaintiff fails to identify any specific final agency action here.

3

561 (1992) (at summary judgment, plaintiff must present "evidence" of "specific facts" establishing standing). In other words, Plaintiff can only speculate that invoking the unusual circumstances exception has caused delays in the past and will cause such delays in the future, but such speculation is wholly insufficient to establish standing. *See Murthy v. Missouri*, 603 U.S. 43, 69 (2024) (rejecting standing theory that was based on speculation as to traceability of injury).

The significance of the unusual circumstances provision is that it defers, by ten days, the date by which the requestor can file a lawsuit to compel disclosure of records sought, without first appealing administratively. *See Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 185 (D.C. Cir. 2013) ("If the agency does not make a 'determination' within the relevant statutory time period, the requester may file suit without exhausting administrative appeal remedies."). Plaintiff nods in the direction of an argument that he is harmed by the brief deferral of his ability to bring a lawsuit, Opp'n at 10, but he cites no case for the proposition that such a delay constitutes an Article III injury. Moreover, Plaintiff has not shown that he ever intended to file a FOIA lawsuit but was precluded from doing so by DEA invoking the unusual circumstances provision, much less that he is likely to imminently want to file suit but will be precluded by DEA from doing so.

Plaintiff's remaining arguments fail to show any traceable injury. Plaintiff states that "any delay in a determination also means delay in being able to seek an administrative appeal[.]" Opp'n at 10. But, as explained above, the time necessary to make a determination is based on a variety of factors that are independent of whether DEA has invoked unusual circumstances provision. The fact that a particular FOIA request might involve a longer processing time—and a delayed opportunity to administratively appeal—is not traceable to the policy Plaintiff challenges here. Plaintiff also complains of a "risk of document loss" resulting from delay. *Id.* That, too, is part and parcel of Plaintiff's argument that he is harmed by processing delays, which, again, he has not shown are attributable to DEA's decision to invoke the unusual circumstances provision.

4

As to redressability, Plaintiff concedes that, even if DEA's practices for invoking the unusual circumstances provision were to change, the provision could still apply to at least some of his future requests. Opp'n at 13. Although Plaintiff claims that it is "certain at least one request will no longer meet the unusual circumstances criteria if DEA's policy is changed" because he has "requests pending for non-voluminous records," the only example he gives is a request for "DEA official Outlook calendars," *id.*, which could certainly be voluminous and require time-consuming review if sought for a lengthy time period. Moreover, Plaintiff does not, and cannot, speak to whether the processing of these calendars would require consultation with another agency, such as if they contain potentially exempt information about meetings with other agencies, and might therefore inevitably involve unusual circumstances under the third prong of the statute. *See* 5 U.S.C. § 552(a)(6)(B)(iii)(III).

### III. The Court Lacks Jurisdiction Over Plaintiff's APA Claim

Defendants' Motion explained that the APA provides jurisdiction for courts to hear challenges to a discrete agency action, not to a broad "policy or practice" of agency action. Cross-Mot. at 12-14. In response, Plaintiff argues his APA claim is cognizable because it supposedly "targets a single, specific policy." Opp'n at 14. Plaintiff is mistaken. For purposes of the APA, the test for a "final agency action" is as follows: "First, the action must mark the 'consummation' of the agency's decision making process – it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). "Rights or obligations are 'determined' by a policy when it is a 'binding rule.'" *RCM Techs., Inc. v. U.S. Dep't of Homeland Sec.*, 614 F. Supp. 2d 39, 45-46 (D.D.C. 2009). "If a policy is 'permissive' or if officials are 'free to exercise their discretion' pursuant to the policy – even if officials are 'encouraged' to act a certain way – then 'rights or obligations' have not been determined." *Id.* at 46; *see also Ctr. for Auto Safety & Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 807-08 (D.C. Cir. 2006) ("The guidelines are nothing more

5

than general policy statements with no legal force.").

Here, Plaintiff does not even contend that DEA's alleged policy for invoking the unusual circumstances provision is binding on FOIA officers. In other words, Plaintiff does not argue that DEA *must* invoke the unusual circumstances provision whenever records exist outside of the DEA FOIA office. And the deposition testimony of the then Chief of the Freedom of Information and Privacy Act Unit establishes that DEA FOIA officers exercise discretion when deciding whether to invoke the provision. Cross-Mot. at 4. Accordingly, DEA's practices for invoking the unusual circumstances provision do not represent a final agency action. *See RCM Techs., Inc.*, 614 F. Supp. 2d at 46 (policy was not a final agency action where it did not require adjudicators to apply it "in all cases"). Instead, those practices essentially represent DEA's legal interpretation of the unusual circumstances provision, not a rule directing the FOIA Office to handle FOIA requests in a particular way. "Courts stand ready to entertain appeals from specific, concrete agency adjudications. But absent that, courts have neither the resources nor the expertise to superintend agency policy-making." *Id.*

The one case cited by Plaintiff on this topic does not alter the conclusion that Plaintiff fails to identify a discrete final agency action. In *Citizens for Responsibility & Ethics in Washington v. United States Department of Homeland Security*, 507 F. Supp. 3d 228, 242 (D.D.C. 2020), the plaintiff challenged two formal written agency policies—not a nonbinding, informal practice as here. *See CREW*, 507 F. Supp. 3d at 236. Plaintiff, moreover, fails to meaningfully distinguish the several cases cited in Defendants' Motion rejecting similar attempts by plaintiffs to challenge broad agency practices under the APA. In particular, Plaintiff incorrectly asserts that *Del Monte Fresh Produce N.A. v. United States*, 706 F. Supp. 2d 116 (D.D.C. 2010) was overruled by *Judicial Watch*. The plaintiff in *Del Monte* alleged a pattern and practice of unreasonable delay under the APA, and the court found the claims nonjusticiable for failure to challenge a discrete agency action. *Id.* at 118-20. Nothing in *Judicial Watch*—which did not involve an APA claim—undermines that ruling. And contrary to Plaintiff's

suggestion, *Frost Brown Todd LLC v. Centers for Medicare*, 2024 U.S. Dist. LEXIS 19303 (D.D.C. Feb. 5, 2024), did not conclude that *Judicial Watch* overruled *Del Monte*. *Frost Brown Todd* stated that *Judicial Watch* overruled "any inconsistent aspects" in *Del Monte* and another decision, without concluding whether any aspects were actually inconsistent. Accordingly, *Del Monte* remains persuasive authority. *See Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1312 (S.D. Cal. 2018) (concluding, post-*Judicial Watch*, that *Del Monte* and another decision "caution this Court to take a closer look at the practice allegations in this case to ensure that they do not constitute an impermissible broad-based programmatic attack").

### IV. Plaintiff Fails to Show Any Violation of Law

#### A. Plaintiff's Statutory Interpretation Is Unsupported by the Statutory Text and Should Be Rejected

Plaintiff's first merits argument is that certain artificial intelligence tools supposedly support Plaintiff's statutory interpretation. Opp'n at 16-18. But Plaintiff offers no authority holding that courts should rely on artificial intelligence to decide the meaning of statutes. The only decision cited by Plaintiff on this topic is a concurrence in an out-of-circuit case in which the author merely recommended that courts "consider—*consider*— . . . whether and how AI-powered large language models . . . might—*might*—inform the interpretive analysis." *Snell v. United Specialty Ins. Co.*, 102 F.4th 1208, 1221 (11th Cir. 2024) (Newsom, J., concurring; emphasis in original). Such a tentative suggestion that artificial intelligence "might have something useful to say" about statutory terms, *id.* at 1234, is hardly a basis to embrace it here.

In any event, counsel for Defendants offered the same prompts to each of the tools used by Plaintiff, and received results that differed in key ways from the results reported by Plaintiff. Google's response to Defendants' counsel did not use the "geographically distinct" phrase that it did when responding to Plaintiff, instead offering a definition that is closer to Defendants' interpretation: "'Field facilities or other establishments separate from the office processing the request' refers to locations

7

or entities outside the main office where the requested information might be stored or handled." Decl. of Joshua M. Kolsky ¶ 3. ChatGPT also did not use the phrase "geographically separate" that it did in its response to Plaintiff, instead defining the statute to refer to "locations or physical sites that are distinct from the central or primary office handling a specific request or task." *Id.* ¶ 4. And Grok responded in part that OSHA "defines a federal establishment as a single physical location *or separate activities at that location*," *id.* ¶ 2 (emphasis added), which supports Defendants' interpretation. The fact that these tools provided significantly different responses to Plaintiff and Defendants' counsel further undermines whatever usefulness they might have in theory.

Next, Plaintiff asserts that Defendants "muster[] no substantive response" to Plaintiff's argument that the unusual circumstances provision is an exception and therefore "can't apply more than 50% of the time[.]" Opp'n at 18. But Defendants did respond to that argument, explaining that the meaning of the key statutory phrase—"the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request"— does not somehow change based on the number of FOIA requests an agency happens to receive that meet those criteria. Cross-Mot. at 15.

Plaintiff also insists that "other establishments" means "'establishments' with characteristics like field facilities." Opp'n at 19. But Plaintiff simply ignores the text following "other establishments," which clarifies its meaning: "other establishments *that are separate from the office processing the requests*." 5 U.S.C. § 552(a)(6)(B)(iii)(I) (emphasis added). Accordingly, the statute itself indicates that an "establishment" is "separate from the office processing the requests." The statute's use of "office" here indicates that an "establishment" can exist at the level of a particular "office," as opposed to a building or geographic region. Moreover, Plaintiff's reading of "establishments" as being essentially synonymous with "field facilities" would make those terms duplicative and redundant. *See Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 53 (2024) ("Proper respect for Congress

8

cautions courts against lightly assuming that any of the statutory terms it has chosen to employ are 'superfluous' or 'void' of significance."). Relatedly, Defendants' interpretation would not render the phrase "field facilities" unnecessary, as Plaintiff contends (Opp'n at 19). Congress likely included the phrase "field facilities" to identify an example of an "establishment" that is "separate from the office processing the requests," and thereby illustrate the meaning of "establishment."

As for legislative history, Plaintiff does not dispute that the two reports on which he relies offer inconsistent interpretations of the statute. Opp'n at 21. Nevertheless, Plaintiff argues that both reports indicate that records must "be kept in some different geographical location" for the unusual circumstances provision to apply. *Id.* (emphasis omitted). But the fact that the authors of the reports had inconsistent understandings of the statute underscores that those understandings were not based on the statutory language. That makes the legislative reports useless in determining the meaning of the statutory text because "legal principles may not be gleaned solely from legislative history that has no statutory reference point." *Ivey v. Wells Fargo, N.A.*, 2014 U.S. Dist. LEXIS 148249, at *7-8 (W.D. Tex. Oct. 16, 2014). Indeed, Plaintiff's resort to legislative history only highlights the fundamental deficiency in his statutory analysis—that nothing in the statutory text itself supports his core position that an "office" and "establishment" "must be geographically separate." Opp'n at 20. The statutory text requires only that they be "separate," and Plaintiff cannot show that "separate" should be read to refer only to geographic separation.

### B. Plaintiff's Remaining Arguments Fail to Show Any Violation of Law

As to Plaintiff's claim that DEA does not conduct an individualized assessment of the need to invoke the unusual circumstances provision for each FOIA request, Plaintiff tries but fails to rebut the testimony showing otherwise. Cross-Mot. at 18-19. Plaintiff states that DEA invoked the unusual circumstances provision based on the need to search for records in another office and then ultimately concluded that that were no responsive records. Opp'n at 21-22. Plaintiff believes it is "unlawful"

9

for DEA to invoke "unusual circumstances before running any type of search." *Id.* at 22 (emphasis omitted). But the statutory text of the FOIA itself confirms that the unusual circumstances provision will be invoked prior to a search—it defines "unusual circumstances" to include "*the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request.*" 5 U.S.C. § 552(a)(6)(B)(iii)(I) (emphasis added). Indeed, it is common sense that conducting a search for files in a large agency with millions of records can be time consuming, regardless of whether responsive records are ultimately located. Plaintiff also concedes that the DEA FOIA Chief's testimony described certain investigative records for which DEA does not invoke the unusual circumstances provision, even though they are located outside of the FOIA office. Opp'n at 22. Plaintiff complains that "the witness provided no detail," *id.*, but the testimony is sufficient to refute Plaintiff's allegation that DEA fails to consider each FOIA request on a case-by-case basis.

Lastly, Plaintiff fails to establish a legal violation based on an alleged policy or practice of not providing an expected FOIA determination date—a claim that does not exist in the operative complaint. Opp'n at 23. Plaintiff asserts that Defendant previously recognized this claim, *id.*, but that was in response to an earlier iteration of the complaint which expressly included such a claim within the first cause of action. ECF No. 7 ¶ 75. Plaintiff also offers no clear explanation of how the lack of an expected determination date causes any Article III injury, claiming that he suffers a "procedural injury" that "connects to the other injuries described herein[.]" Opp'n at 24. That is wholly insufficient to establish standing.

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in favor of Defendants on claims one and two.

10

DATED: December 20, 2024

        Respectfully Submitted,

        *s/Jimmy A. Rodriguez*
        Jimmy A. Rodriguez
        Assistant United States Attorney
        Southern District of Texas
        Attorney in Charge
        Texas Bar No. 24037378
        Federal ID No. 572175
        1000 Louisiana, Suite 2300
        Houston, Texas 77002
        Tel: (713) 567-9532
        Fax: (713) 718-3303
        jimmy.rodriguez2@usdoj.gov

        BRIAN M. BOYNTON
        Principal Deputy Assistant Attorney General

        ELIZABETH J. SHAPIRO
        Deputy Branch Director

        *s/Joshua Kolsky*
        Joshua M. Kolsky
        Senior Trial Counsel
        Civil Division, Federal Programs Branch
        U.S. Department of Justice
        Texas Bar No. 24092989
        1100 L Street, NW
        Washington, DC 20005
        Tel: (202) 305-7664
        joshua.kolsky@usdoj.gov

        Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I certify that on December 20, 2024, a true and correct copy of the foregoing was filed with the United States District Clerk for the Southern District of Texas and electronically served on all counsel of record via the District's ECF system.

*s/ Joshua Kolsky*
Joshua M. Kolsky
Senior Trial Counsel
